Christopher D. Jaime, Esq.
Nevada Bar No. 4640
Maupin, Cox & LeGoy
4785 Caughlin Parkway
P.O. Box 30000
Reno, Nevada  89520
Telephone:  (775) 827-2000
Fax: (775) 827-2185
E-mail: cjaime@mclrenolaw.com
Attorneys for Class B Members of
Harbor Structured Finance, LLC,
the Sole Shareholder of Western
Funding Incorporated

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| IN RE: | Case No: BK-13-17588-led |
| WESTERN FUNDING INCORPORATED, | Chapter 11 |
| Debtor. | Hearing Date:  OST PENDING |
| | Hearing Time: OST PENDING |

**MOTION TO DISMISS CHAPTER 11 CASE FILED WITHOUT CORPORATE
AUTHORIZATION AND GRANTING RELATED RELIEF**

Class B Members of Harbor Structured Finance, LLC ("Harbor"), the sole shareholder of

Western Funding Incorporated ("WFI"), hereby move this Court for an order dismissing the

above-captioned bankruptcy case.[1]  This motion is made pursuant to 11 U.S.C. §§ 105(a), 305,

and 1112(b), Fed. R. Bankr. P. 1017, Local Rule 1002(b), the papers on file herein and attached

---

[1]Class B Members also request the Court to take judicial notice of the attached exhibits pursuant to Fed. R. Evid. 201, to the extent they are documents filed in this Court and in the State Court (as defined herein).  See U.S. v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980) (citations omitted); Ins. Co. of North America v. Hilton Hotels, Inc., 908 F. Supp. 809, 812 n. 1 (D. Nev. 1995), aff'd, 110 F.3d 715 (9th Cir. 1997); In re Heritage Bond Litig., 546 F.3d 667, 670 n.1 (9th Cir. 2008); see also U.S. ex. Rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992).

AUPIN, COX & LeGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

hereto, and the declaration of Philipp D. Nick ("Nick Declaration") filed herewith. It is based on the grounds in the below Memorandum of Points and Authorities.[2]

Dated this 16th day of September, 2013.

MAUPIN, COX & LeGOY

By:  /s/ Christopher D. Jaime
Christopher D. Jaime, Esq.
Attorneys for Class B Members

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

1.    WFI filed a *Voluntary Petition* (the "Petition") on September 4, 2013, pursuant to which it purported to seek relief under Chapter 11 of the Bankruptcy Code. See Exhibit 1. WFI filed the Petition almost immediately after the Clark County District Court ("State Court") entered an *Order Appointing Receiver* ("Receivership Order").[3]  See Exhibit 2.  The Receivership Order is an order granting a *Petition for the Appointment of a Receiver on Order Shortening Time* ("Receivership Petition") filed by BMO Harris Bank N.A. ("BMO") and appointing a receiver for WFI's affairs in an action styled *BMO Harris Bank N.A., a national association, v. Western Funding Incorporated, a California corporation*, Case No. A-13-687299-B ("State Court Action").  See Exhibit 3.  Based on WFI's wrongful pre-petition acts that included an intentional diversion of corporate funds in order to place those funds beyond BMO Harris Bank's reach, the State Court heard the Receivership Petition and entered the Receivership Order on shortened notice. Id. at pp. 1-4.

---

[2]Unless otherwise noted, further references to "§" are references to Title 11, U.S. Code ("Bankruptcy Code").

[3]As noted on the respective exhibits, the Petition was filed at 2:37 p.m. and the Receivership Order was filed at 11:56 a.m., both on September 4, 2013.

AUPIN, COX & LeGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

2.    The Petition is invalid because it is not authorized by a valid corporate resolution. The corporate resolution is invalid because, as discussed in detail below, under the applicable organizational and operating documents Fredrick A. Cooper and Katherine H. Cooper (collectively, unless otherwise noted, the "Coopers") are not "all of the members of the Board of Directors ... of Western Funding Incorporated" as they represented under penalty of perjury when they signed the Petition. See Exhibit 1 at pp. 84-85. For that reason, Class B Members move pursuant to Bankruptcy Code § 1112(b) to dismiss WFI's Chapter 11 case.

3.    WFI's proposed bankruptcy counsel was aware that the Petition was not approved by two of the four "Board of Managers" of Harbor (as defined below) resulting in a corporate deadlock. See Exhibit 4. Before the Petition was filed, WFI's attorney was also provided with a copy of the Court's recent published opinion in In re Blue Pine Group, Inc., 448 B.R. 267 (Bankr. D. Nev. 2010), aff'd, 457 B.R. 64 (9th Cir. BAP 2011), aff'd, 2013 WL 2151387 (9th Cir. 2013) and was further informed of a deadlock with respect to a bankruptcy filing by WFI. See Exhibit 5.

4.    In addition, the timing of WFI's filing is suspect. Filed immediately after the State Court entered the Receivership Order it appears the Petition was filed not to administer WFI's assets but, instead, was timed to avoid the Coopers' surrender of WFI to the receiver appointed by the State Court and to hinder ongoing disputes between the Coopers on the one hand and BMO Harris Bank, $6,700,000 in subordinated debt holders, and the Class B Members on the other hand. Therefore, Class B Members respectfully urge the Court to dismiss this improperly filed bankruptcy case and to further reserve jurisdiction to consider sanctions for the improper and unauthorized filing.

## II.    STATUTORY PREDICATE FOR RELIEF REQUESTED

5.    The statutory predicates for the relief requested herein are §§ 105(a), 305(a), and 1112(b) of the Bankruptcy Code and Fed. R. Bankr. P. Rule 1017.  The Court may enter a final judgment in this matter and the Class B Members consent to the entry of a final judgment by the bankruptcy judge.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.    STATEMENT OF FACTS

6.    WFI is a wholly-owned subsidiary of Harbor in that Harbor owns 100% of WFI.  See Exhibit 1 at p. 7; see also *Amended and Restated Limited Liability Company Agreement, Harbor Structured Finance, LLC, a Delaware Limited Liability Company* dated October 11, 2010 ("Amended and Restated Harbor LLC Agreement") at ¶ 1.3 attached as Exhibit 6.  The Coopers own 55% of Harbor with the remaining 45% owned by the Class B Members pursuant to a $3,000,000 secured obligation incurred to the Class B Members in exchange for their 45% interest investment.  Id. at ¶¶ 1.9, 2.1.

7.    WFI is a statutory close corporation as permitted by the California Corporations Code.  See *Certificate of Amendment of Articles of Incorporation* attached as Exhibit 7, *Actions by Unanimous Written Consent of the Board of Directors* attached as Exhibit 8, and *Actions by Unanimous Written Consent of the Sole Shareholder* attached as Exhibit 9.

8.    WFI has no Board of Directors.  See *Amendment to the Amended and Restated Bylaws of Western Funding Incorporated, a California corporation* ("WFI Bylaws Amendment") attached as Exhibit 10.  Specifically, the WFI Bylaws Amendment states as follows:

> **Section 2.01.  No Directors.**  **Unless otherwise determined by a vote of the outstanding shares of the Corporation, the Corporation shall have no Board of Directors.**

9.    The WFI Bylaws Amendment further provides that WFI's shareholders shall for all purposes serve as WFI's board of directors.  In relevant part, it states as follows:

> **Section 2.02.  Shareholders as Directors.  The shareholders, for the purposes of any statute or rule of law relating to corporations, are deemed to be the directors and to have all of the liabilities, immunities, defenses, and indemnifications of directors with respect to any action or inaction of the shareholders of the Corporation.**

10.    Since Harbor owns 100% of the shares of WFI, as WFI's sole shareholder Harbor is WFI's sole director.

11.    According to the Amended and Restated Harbor LLC Agreement, Harbor acts and operates only through a "Board of Managers."  In relevant part, Section 6.1 of the Amended and Restated Harbor LLC Agreement states as follows:

> **6.1.  *Management Vested in the Board of Managers.*  The business, property and affairs of [Harbor] shall be managed exclusively by a Board of Managers[.] ... [T]he Board of Managers shall have full, complete and exclusive authority, power, and discretion to manage and control the business, property and affairs of [Harbor], to make all decisions regarding those matters and to perform any and all other acts or activities customary or incident to the management of [Harbor's] business, property and affairs, including determining [Harbor's] business strategies, financing strategies, accounting policies and procedures, and practices it deems necessary.  In addition, it is understood and agreed that the Board of Managers shall have all of the rights and powers of a manager as provided in the Act and as otherwise provided by law, and any action taken by the Board of Managers or its authorized agent or agents shall constitute the act of and serve to bind [Harbor].**

12.    Harbor's Board of Managers operates and acts only by a "Majority."  In relevant part, Section 6.2 of the Amended and Restated Harbor LLC Agreement states as follows:

> **6.2    *Authority of the Board of Managers.*  Subject to the foregoing, the Board of Managers acting only by a Majority is hereby granted the right, power and authority to do on behalf of [Harbor] all things, which, in its sole judgment, are necessary, proper or desirable to carry out the aforementioned duties and responsibilities. ... No Manager acting individually has the power or authority to bind [Harbor].**

13.    As applicable to an action by the Board of Managers, the term "Majority" is further defined in Section 1.9 of the Amended and Restated Harbor LLC Agreement as follows:

> **[A]s to any matter requiring or permitting a vote or other action of the Board of Managers, the affirmative vote of Managers who constitute at least 51% of the Managers then in office.**

14.    The Board of Managers may act without a meeting; however, in such circumstances the consent of all Managers comprising the Board of Managers is required. Section 6.17 of the Amended and Restated Harbor LLC Agreement states as follows:

> ***Action without Meeting.*** **Any action required or permitted to be taken at a meeting of the Board of Managers may be taken without a meeting and without a vote if a written consent describing the action so taken is signed by all of the Managers.**

15.    Four individuals currently serve on Harbor's Board of Managers: (1) Frederick H. Cooper, (2) Katherine A. Cooper, (3) James B. Hadden ("Mr. Hadden"), and (4) Mark Finston ("Mr. Finston"). <u>See</u> Nick Declaration at pp. 2-3. The resolution that purports to authorize the Petition filed on September 4, 2013, is signed only by the Coopers.

## IV.    RELIEF REQUESTED

16.    By this motion, Class B Members seek the entry of an order dismissing the above-captioned bankruptcy case with prejudice and the retention of jurisdiction for purposes of seeking sanctions under Fed. R. Bankr. P. 9011 and/or the Court's inherent authority.

## V.    BASIS FOR RELIEF

### A.    <u>The Resolution That Purports to Authorize WFI to File a Voluntary Chapter 11 Petition is Not Valid.</u>

17.    The Bankruptcy Code does not set forth specific requirements for a corporation to file bankruptcy, other than requiring the petition to be "voluntary." <u>See</u> § 301; <u>In re Quarter Moon Livestock Co.</u>, 116 B.R. 775, 778 (Bankr. D. Idaho 1990) (citations omitted). The

AUPIN, COX & LEGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

bankruptcy court therefore looks to "the instruments of the corporation and applicable state law" to determine if a corporate bankruptcy petition is authorized. Quarter Moon Livestock, 116 B.R. at 778 (citation omitted); see generally 2 Collier on Bankruptcy ¶ 301.04-[7][b] (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev. 2008).

18.     A corporate petition filed in this district must include a valid resolution that authorizes the corporation to file the petition. See LR 1002(b); see also Blue Pine Group, 448 B.R. 269. The resolution attached to the Petition that purports to authorize WFI to file the Petition is not valid because it does not comply with the requirements set forth in WFI's and Harbor's organization and operating documents.

19.     The resolution attached to the Petition that purports to authorize WFI to file the Petition states that the Coopers are "all of the members of the Board of Directors of [WFI]" and, as such, they authorized WFI to file the Petition. There are two problems with that statement: (1) The Coopers are not all of the members of the board of directors of WFI; and (2) Harbor is the sole director of WFI.

20.     As noted above, the WFI Bylaws Amendment states that WFI has no board of directors and that WFI's sole shareholder, *i.e.,* Harbor, is the only director of WFI. Harbor, in turn, acts through a Board of Managers. The Board of Managers includes the Coopers **and** Messrs. Hadden and Finston. Since Harbor's Board of Managers can act only by a Majority at a duly called meeting and unanimously in writing without a meeting, a valid written resolution by WFI authorizing it to file the Petition without a meeting would, in addition to the Coopers' signatures, require signatures of ***both*** Mr. Hadden and Mr. Finston. See Amended and Restated Harbor LLC Agreement at ¶ 6.17. It is plain from the face of the resolution itself that neither Mr. Hadden nor Mr. Finston signed WFI's resolution. They also informed WFI's proposed

AUPIN, COX & LEGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

bankruptcy counsel that they did not authorize or approve of a bankruptcy filing by WFI.

21.    Since the Coopers cannot act for or on behalf of Harbor's Board of Managers, the Coopers could not authorize WFI to file the Petition.    See generally 15A William Meade Fletcher, Fletcher Cyclopedia of the Law of Corporations § 7631.39 (rev. ed. 2008) ("For the bankruptcy filing to be properly authorized, the board must have been lawfully constituted and acting lawfully when it authorized the filing of a bankruptcy petition.") (internal footnotes, collecting cases, omitted).  Put another way, the resolution attached to the Petition that purports to authorize WFI to file the Petition, to the extent it only includes the Coopers' signatures, is not a unanimous act, or even an act by a Majority, of Harbor's Board of Managers and, consequently, is not a formal act of Harbor as the director of WFI.  For that reason, the resolution that purports to authorize WFI to file the Petition is invalid because it is not effective under "the instruments of the corporation and applicable state law." Quarter Moon Livestock Co., 116 B.R. at 778.

B.    As an Unauthorized Petition Not Supported by a Valid Resolution, the Petition Should be Dismissed for "Cause" Pursuant to Bankruptcy Code § 1112(b).

22.    Section § 1112(b) of the Bankruptcy Code provides that, "on request of a party in interest, and after notice and a hearing, the court shall ... dismiss a case under [Chapter 11 of the Bankruptcy Code] ... for cause ..." 11 U.S.C. § 1112(b)(1).  Section§ 105(a) of the Bankruptcy Code also provides, in pertinent part, that "[t]he court may issue ay order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."

23.    The determination of whether "cause" exists to dismissal a Chapter 11 case pursuant to § 1112(b) rests with the bankruptcy court's broad discretion. Rand v. Porsche Fin. Servs. (In re Rand), 2010 Bankr. LEXIS 5076 at *10 (9th Cir. BAP 2010) (citing Pioneer

AUPIN, COX & LEGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

Liquidating Corp. v. United States Tr. (In re Consol. Pioneer Mortg. Entities), 248 B.R. 368, 375 (9th Cir. BAP 2000)).

24.    Lack of jurisdiction is cause for dismissal and, in the case of an unauthorized voluntary petition filed by a corporate debtor due to the absence of a valid corporate resolution, the bankruptcy court lacks jurisdiction. See Matter of Century City, Inc., 8 B.R. 25, 30 (Bankr. D. N.J. 1980).  This is not something new.  In Price v. Gurney, 324 U.S. 100 (1945), the U.S. Supreme Court held that the filing of a corporate bankruptcy is left to those who have the power of management under applicable law and the relevant documents and when a corporate petition is filed without the requisite authority it must be dismissed.  In fact, courts regularly find that a bankruptcy case must be dismissed if it is not authorized by a valid corporate resolution.  In re Arkco Properties, Inc., 207 B.R. 624, 628 (Bankr. E.D. Ark. 1997) (citing cases); Matter of Giggles Restaurant, Inc., 103 B.R. 549, 554 (Bankr. N.J. 1989) (absence of quorum and majority vote of directors authorizing filing of Chapter 11 case rendered corporate resolution authorizing filing invalid and cause for dismissal); Matter of Great Northwest Development Co., 28 B.R. 141, 143 (Bankr. E.D. Mich. 1983) (dismissing voluntary petition when requisite number of directors did not vote in favor of petition); In re Autumn Press, Inc., 20 B.R. 60, 62 (Bankr. D. Mass. 1982) (dismissing case in which single director authorized filing but where debtor corporation's bylaws and applicable state law required a minimum of three directors to act); In re Al-Wyn Food Distributors, Inc., 8 B.R. 42, 43 (Bankr. M.D. Fla. 1980) (dismissing voluntary Chapter 11 petition filed without authorization of the corporate debtor's board of directors); see also In re Real Homes, LLC, 352 B.R. 221, 225, 228 (Bankr. D. Idaho 2005) (dismissing petition filed without authority of LLC and noting that "[i]t is generally accepted that a bankruptcy case filed on behalf of an entity by one without authority under state law to so act for that entity is

improper and must be dismissed.").

25.     As noted above, the resolution filed with the Petition is invalid because it is not a formal or official act of Harbor's Board of Managers under the relevant operating and organizational documents and, as a result, it is not a formal or official act of WFI's director. Given that the overwhelming weight of authority requires dismissal of an unauthorized corporate filing, it is astounding that the Coopers would file a voluntary petition on behalf of WFI, particularly, in light of this Court's recent published opinion in Blue Pine Group, supra.  In any event, because the resolution that purports to authorize WFI to file the Petition, signed by the Coopers alone, is invalid Petition itself is invalid which means the Court lacks jurisdiction over this proceeding.  Dismissal for cause is therefore warranted.

## VI.    CONCLUSION

26.     For all the foregoing reasons, the above-captioned Chapter 11 case should be dismissed in its entirety.

Dated this 16th day of September, 2013.

MAUPIN, COX & LeGOY

By:   /s/ Christopher D. Jaime
      Christopher D. Jaime, Esq.
      Attorneys for Class B Members of
      Harbor Structured Finance, LLC, the
      Sole Shareholder of Western Funding
      Incorporated

<u>CERTIFICATE OF SERVICE</u>

I certify under penalty of perjury that I am an employee of MAUPIN, COX  & LeGOY, Attorneys at Law, and that on the date indicated below, I served the foregoing document(s) described as follows:

**MOTION TO DISMISS CHAPTER 11 CASE FILED WITHOUT CORPORATE AUTHORIZATION AND GRANTING RELATED RELIEF**

on the party(s) set forth below by:

_____     Placing an original or true copy thereof in a sealed envelope placed for collection and mailing in the United States Mail, at Reno, Nevada, postage paid, following ordinary business practices, addressed as follows:

__XXX__     Electronic filing via the U.S. Bankruptcy Court CM/ECF filing system, to all those persons listed on the United States Bankruptcy Court ECF Confirmation Sheet.

DATED this 16th day of September, 2013.


_____/s/ Karen Bernhardt_____
KAREN BERNHARDT

# EXHIBIT 1

# EXHIBIT 1

# EXHIBIT 1

B1 (Official Form 1)(04/13)

| United States Bankruptcy Court<br>District of Nevada | Voluntary Petition |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**Western Funding Incorporated** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN<br>(if more than one, state all)<br>95-2398043 | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all) |
| Street Address of Debtor (No. and Street, City, and State):<br>**3915 E. Patrick Lane**<br>**Las Vegas, NV**<br><br>ZIP Code **89120** | Street Address of Joint Debtor (No. and Street, City, and State):<br><br>ZIP Code |
| County of Residence or of the Principal Place of Business:<br>**Clark** | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):<br><br>ZIP Code | Mailing Address of Joint Debtor (if different from street address):<br><br>ZIP Code |
| Location of Principal Assets of Business Debtor<br>(if different from street address above): | |

### Type of Debtor
(Form of Organization) (Check one box)
- ☐ Individual (includes Joint Debtors)
  *See Exhibit D on page 2 of this form.*
- ☐ Corporation (includes LLC and LLP)
- ☑ Partnership
- ☐ Other (if debtor is not one of the above entities, check this box and state type of entity below.)

### Chapter 15 Debtors
Country of debtor's center of main interests:

Each country in which a foreign proceeding by, regarding, or against debtor is pending:

### Nature of Business
(Check one box)
- ☐ Health Care Business
- ☐ Single Asset Real Estate as defined in 11 U.S.C. § 101 (51B)
- ☐ Railroad
- ☐ Stockbroker
- ☐ Commodity Broker
- ☐ Clearing Bank
- ☑ Other

### Tax-Exempt Entity
(Check box, if applicable)
- ☐ Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code).

### Chapter of Bankruptcy Code Under Which the Petition is Filed (Check one box)
- ☐ Chapter 7
- ☐ Chapter 9
- ☑ Chapter 11
- ☐ Chapter 12
- ☐ Chapter 13
- ☐ Chapter 15 Petition for Recognition of a Foreign Main Proceeding
- ☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding

### Nature of Debts
(Check one box)
- ☐ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."
- ☑ Debts are primarily business debts.

### Filing Fee (Check one box)
- ☑ Full Filing Fee attached
- ☐ Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.
- ☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B.

### Chapter 11 Debtors
Check one box:
- ☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).
- ☑ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).

Check if:
- ☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,490,925 (amount subject to adjustment on 4/01/16 and every three years thereafter).

Check all applicable boxes:
- ☐ A plan is being filed with this petition.
- ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

| Statistical/Administrative Information    *** Matthew C. Zirzow 7222 *** | THIS SPACE IS FOR COURT USE ONLY |
|---|---|
| ☑ Debtor estimates that funds will be available for distribution to unsecured creditors.<br>☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors. | |

Estimated Number of Creditors

| ☐<br>1-49 | ☐<br>50-99 | ☐<br>100-199 | ☑<br>200-999 | ☐<br>1,000-5,000 | ☐<br>5,001-10,000 | ☐<br>10,001-25,000 | ☐<br>25,001-50,000 | ☐<br>50,001-100,000 | ☐<br>OVER 100,000 |
|---|---|---|---|---|---|---|---|---|---|

Estimated Assets

| ☐<br>$0 to $50,000 | ☐<br>$50,001 to $100,000 | ☐<br>$100,001 to $500,000 | ☐<br>$500,001 to $1 million | ☐<br>$1,000,001 to $10 million | ☐<br>$10,000,001 to $50 million | ☑<br>$50,000,001 to $100 million | ☐<br>$100,000,001 to $500 million | ☐<br>$500,000,001 to $1 billion | ☐<br>More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|

Estimated Liabilities

| ☐<br>$0 to $50,000 | ☐<br>$50,001 to $100,000 | ☐<br>$100,001 to $500,000 | ☐<br>$500,001 to $1 million | ☐<br>$1,000,001 to $10 million | ☑<br>$10,000,001 to $50 million | ☐<br>$50,000,001 to $100 million | ☐<br>$100,000,001 to $500 million | ☐<br>$500,000,001 to $1 billion | ☐<br>More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|

B1 (Official Form 1)(04/13)                                                                                             Page 2

| Voluntary Petition | Name of Debtor(s): |
| *(This page must be completed and filed in every case)* | **Western Funding Incorporated** |

### All Prior Bankruptcy Cases Filed Within Last 8 Years (If more than two, attach additional sheet)

| Location Where Filed: **- None -** | Case Number: | Date Filed: |
| Location Where Filed: | Case Number: | Date Filed: |

### Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor (If more than one, attach additional sheet)

| Name of Debtor: **Western Funding Inc. of Nevada** | Case Number: *13-17586* | Date Filed: **9/04/13** |
| District: **Nevada** | Relationship: **Affiliate** | Judge: *LED* |

| Exhibit A | Exhibit B |
|---|---|
| (To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.) <br><br> ☐ Exhibit A is attached and made a part of this petition. | (To be completed if debtor is an individual whose debts are primarily consumer debts.) <br><br> I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I delivered to the debtor the notice required by 11 U.S.C. §342(b). <br><br> X_____ <br> Signature of Attorney for Debtor(s)        (Date) |

### Exhibit C

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐ Yes, and Exhibit C is attached and made a part of this petition.

■ No.

### Exhibit D

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

☐ Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

☐ Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

### Information Regarding the Debtor - Venue
(Check any applicable box)

■ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

■ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐ Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

### Certification by a Debtor Who Resides as a Tenant of Residential Property
(Check all applicable boxes)

☐ Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____
(Name of landlord that obtained judgment)

_____
(Address of landlord)

☐ Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐ Debtor has included with this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐ Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)).

BI (Official Form 1)(04/13)                                                                                                    Page 3

| Voluntary Petition | Name of Debtor(s): |
|---|---|
| *(This page must be completed and filed in every case)* | **Western Funding Incorporated** |

<strong>Signatures</strong>

| **Signature(s) of Debtor(s) (Individual/Joint)** | **Signature of a Foreign Representative** |
|---|---|

**Signature(s) of Debtor(s) (Individual/Joint)**

I declare under penalty of perjury that the information provided in this petition is true and correct.
[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7. [If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. §342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
Signature of Debtor

X _____
Signature of Joint Debtor

_____
Telephone Number (If not represented by attorney)

_____
Date

**Signature of a Foreign Representative**

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only one box.)

☐ I request relief in accordance with chapter 15 of title 11. United States Code. Certified copies of the documents required by 11 U.S.C. §1515 are attached.

☐ Pursuant to 11 U.S.C. §1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

X _____
Signature of Foreign Representative

_____
Printed Name of Foreign Representative

_____
Date

**Signature of Attorney***

X _____
Signature of Attorney for Debtor(s)

__Matthew C. Zirzow 7222__
Printed Name of Attorney for Debtor(s)

**LARSON & ZIRZOW, LLC**
Firm Name

**810 S. Casino Center Blvd. #101**
**Las Vegas, NV 89101**

_____
Address

zlarson@lzlawnv.com / mzirzow@lzlawnv.com
**(702) 382-1170  Fax: (702) 382-1169**
Telephone Number

__9/3/13__
Date

*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect.

**Signature of Non-Attorney Bankruptcy Petition Preparer**

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.

_____
Printed Name and title, if any, of Bankruptcy Petition Preparer

_____
Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.)(Required by 11 U.S.C. § 110.)

_____
Address

X _____

_____
Date

Signature of bankruptcy petition preparer or officer, principal, responsible person,or partner whose Social Security number is provided above.

Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual:

**Signature of Debtor (Corporation/Partnership)**

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
Signature of Authorized Individual

**Frederick A. Cooper**
Printed Name of Authorized Individual

**President, Chief Executive Officer, and Director**
Title of Authorized Individual

__9/3/2013__
Date

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. §110; 18 U.S.C. §156.*

B4 (Official Form 4) (12/07)

# United States Bankruptcy Court
## District of Nevada

In re   **Western Funding Incorporated**

Debtor(s)

Case No. _____

Chapter    **11**

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

Following is the list of the debtor's creditors holding the 20 largest unsecured claims. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this chapter 11 [*or chapter 9*] case. The list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101, or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims. If a minor child is one of the creditors holding the 20 largest unsecured claims, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

| (1) Name of creditor and complete mailing address including zip code | (2) Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | (3) Nature of claim (trade debt, bank loan, government contract, etc.) | (4) Indicate if claim is contingent, unliquidated, disputed, or subject to setoff | (5) Amount of claim [if secured, also state value of security] |
|---|---|---|---|---|
| Adrianna F. Merrell & Timothy Trust 35940 Camelot Circle Wildomar, CA 92595 | Adrianna F. Merrell & Timothy Trust 35940 Camelot Circle Wildomar, CA 92595 | Subordinated Note | | 1,163,474.91 |
| Autos Unlimited Inc. Attn: Bankruptcy Dept / Managing Agent 3112 E. Freemont Street Las Vegas, NV 89104 | Autos Unlimited Inc. Attn: Bankruptcy Dept / Managing Agent 3112 E. Freemont Street Las Vegas, NV 89104 | Dealer agreement | Contingent Subject to Setoff | 113,328.93 |
| Bobbie Fae Clare 5351 Tazewell Pointe Way Knoxville, TN 37918 | Bobbie Fae Clare 5351 Tazewell Pointe Way Knoxville, TN 37918 | Subordinated Note | | 192,754.79 |
| Cope Family Ventures 920 Essex Ave Henderson, NV 89015 | Cope Family Ventures 920 Essex Ave Henderson, NV 89015 | Subordinated Note | | 4,198,536.73 |
| Credit Express Attn: Bankruptcy Dept / Managing Agent PO Box 425 Waterflow, NM 87421 | Credit Express Attn: Bankruptcy Dept / Managing Agent PO Box 425 Waterflow, NM 87421 | Dealer agreement | Contingent Subject to Setoff | 630,503.64 |
| Danielle Merrell 37444 Hydrus Place Murrieta, CA 92563 | Danielle Merrell 37444 Hydrus Place Murrieta, CA 92563 | Subordinated Note | | 260,479.45 |
| Deals with Wheels, LLC Attn: Bankruptcy Dept. / Managing Agent 4610 W. Main Street Farmington, NM 87401 | Deals with Wheels, LLC Attn: Bankruptcy Dept. / Managing Agent 4610 W. Main Street Farmington, NM 87401 | Dealer agreement | Contingent Subject to Setoff | 158,119.41 |
| Guerin B Senter 2314 Prometheus Court Henderson, NV 89074 | Guerin B Senter 2314 Prometheus Court Henderson, NV 89074 | Employee | Disputed | 318,892.00 |
| H E or Trina Lobaugh 12534 Sun Glow Dr El Cajon, CA 92021 | H E or Trina Lobaugh 12534 Sun Glow Dr El Cajon, CA 92021 | Subordinated Note | | 104,191.80 |

B4 (Official Form 4) (12/07) - Cont.

In re __Western Funding Incorporated_____     Case No. _____

Debtor(s)

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS
(Continuation Sheet)

| (1)<br><br>*Name of creditor and complete mailing address including zip code* | (2)<br><br>*Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted* | (3)<br><br>*Nature of claim (trade debt, bank loan, government contract, etc.)* | (4)<br><br>*Indicate if claim is contingent, unliquidated, disputed, or subject to setoff* | (5)<br><br>*Amount of claim [if secured, also state value of security]* |
|---|---|---|---|---|
| Holland & Hart<br>Attn: Bankruptcy Dept/ Managing Agent<br>PO Box 17283<br>Denver, CO 80217-0283 | Holland & Hart<br>Attn: Bankruptcy Dept/ Managing Agent<br>PO Box 17283<br>Denver, CO 80217-0283 | Professional - Legal | Disputed | 197,847.26 |
| J.C. Bromac Corp<br>Attn: Bankruptcy Dept /<br>Managing Agent<br>11860 S La Cienega<br>Hawthorne, CA 90250 | J.C. Bromac Corp<br>Attn: Bankruptcy Dept / Managing Agent<br>11860 S La Cienega<br>Hawthorne, CA 90250 | Dealer agreement | Contingent Subject to Setoff | 106,218.18 |
| Jerry Willis Motors LLC<br>Attn: Bankruptcy Dept /<br>Managing Agent<br>2892 Hwy 178 E<br>Tupelo, MS 38804 | Jerry Willis Motors LLC<br>Attn: Bankruptcy Dept / Managing Agent<br>2892 Hwy 178 E<br>Tupelo, MS 38804 | Dealer agreement | Contingent Subject to Setoff | 519,238.67 |
| Lois E. West<br>1000 N Star Dr #25<br>Stillwater, OK 74075 | Lois E. West<br>1000 N Star Dr #25<br>Stillwater, OK 74075 | Subordinated Note | | 104,191.80 |
| MAS Motors<br>Attn: Bankruptcy Dept /<br>Managing Agent<br>1505 I-45 S<br>Conroe, TX 77301 | MAS Motors<br>Attn: Bankruptcy Dept / Managing Agent<br>1505 I-45 S<br>Conroe, TX 77301 | Dealer agreement | Contingent Subject to Setoff | 105,233.31 |
| Monzon Auto Sales<br>Attn: Bankruptcy Dept /<br>Managing Agent<br>4245 East 8th Ave<br>Hialeah, FL 33013 | Monzon Auto Sales<br>Attn: Bankruptcy Dept / Managing Agent<br>4245 East 8th Ave<br>Hialeah, FL 33013 | Dealer agreement | Contingent Subject to Setoff | 300,321.63 |
| NM Autos Direct<br>Attn: Bankruptcy Dept /<br>Managing Agent<br>9200 Central Ave SE<br>Albuquerque, NM 87123 | NM Autos Direct<br>Attn: Bankruptcy Dept / Managing Agent<br>9200 Central Ave SE<br>Albuquerque, NM 87123 | Dealer agreement | Contingent Subject to Setoff | 132,179.68 |
| Patricia A Cousino<br>17-777 Langlois Rd SP71<br>Desert Hot Springs, CA 92241 | Patricia A Cousino<br>17-777 Langlois Rd SP71<br>Desert Hot Springs, CA 92241 | Subordinated Note | | 105,233.72 |
| Sharon L. Hoops<br>9320 Dillon Dr.<br>La Mesa, CA 91941 | Sharon L. Hoops<br>9320 Dillon Dr.<br>La Mesa, CA 91941 | Subordinated Note | | 150,000.00 |
| Timothy J. Salas<br>4246 Conrad Ave<br>San Diego, CA 92117 | Timothy J. Salas<br>4246 Conrad Ave<br>San Diego, CA 92117 | Subordinated Note | | 764,073.06 |
| Virginia Hall<br>333 MT. View #108<br>Talent, OR 97540 | Virginia Hall<br>333 MT. View #108<br>Talent, OR 97540 | Subordinated Note | | 104,191.80 |

Software Copyright (c) 1996-2013 CCH INCORPORATED - www.bestcase.com

Best Case Bankruptcy

B4 (Official Form 4) (12/07) - Cont.
In re    **Western Funding Incorporated**                                            Case No. _____

_____
Debtor(s)

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS
(Continuation Sheet)

## DECLARATION UNDER PENALTY OF PERJURY
## ON BEHALF OF A CORPORATION OR PARTNERSHIP

I, the President, Chief Executive Officer, and Director of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing list and that it is true and correct to the best of my information and belief.

Date ____ 9/3/2013 ____                Signature _____

Frederick A. Cooper
President, Chief Executive Officer, and Director

*Penalty for making a false statement or concealing property*: Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§ 152 and 3571.

## United States Bankruptcy Court
### District of Nevada

In re  **Western Funding Incorporated**

_____
                                    Debtor

Case No._____

Chapter_____**11**_____

## LIST OF EQUITY SECURITY HOLDERS

Following is the list of the Debtor's equity security holders which is prepared in accordance with Rule 1007(a)(3) for filing in this chapter 11 case.

| Name and last known address or place of business of holder | Security Class | Number of Securities | Kind of Interest |
| --- | --- | --- | --- |
| **Harbor Structured Finance, LLC C/o The Corporation Trust Co. Corporate Trust Center 1209 Orange Street Wilmington, DE 19801** | | | **100% shareholder** |

## DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

I, the President, Chief Executive Officer, and Director of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing List of Equity Security Holders and that it is true and correct to the best of my information and belief.

Date____**9/3/2013**_____        Signature_____

                                    **Frederick A. Cooper**
                                    **President, Chief Executive Officer, and Director**

_Penalty for making a false statement or concealing property:_  Fine of up to $500,000 or imprisonment for up to 5 years or both.
                              18 U.S.C §§ 152 and 3571.

**0**____ continuation sheets attached to List of Equity Security Holders

## United States Bankruptcy Court
### District of Nevada

In re    **Western Funding Incorporated**                                Case No. _____

                                         Debtor(s)                   Chapter    **11**

## VERIFICATION OF CREDITOR MATRIX

I, the President, Chief Executive Officer, and Director of the corporation named as the debtor in this case, hereby verify that the attached list of creditors is true and correct to the best of my knowledge.

Date:    9/3/2013                                                                   

**Frederick A. Cooper/President, Chief Executive Officer, and Director**
Signer/Title

## WRITTEN CONSENT OF THE BOARD OF DIRECTORS OF
## WESTERN FUNDING INCOPORATED, a California corporation

The undersigned, being all of the members of the Board of Directors (the "Board") of Western Funding Incorporated, a California corporation (the "Company"), hereby approves and adopts the following resolutions effective as of September 3, 2013:

WHEREAS, BMO Harris Bank N.A. (the "Bank") has declared an event of default under the Credit Agreement dated as of March 14, 2012, as amended, between the Bank, and the Company (the "Credit Agreement"), has accelerated the obligations due thereunder, has filed litigation in Nevada state court, and sought and obtained the appointment of a receiver over WFI therein, thereby resulting in the potential seizure of the collateral securing the Company's obligations under the Credit Agreement, which actions, if allowed to proceed, would cause significant and irreparable harm on the Company and its creditors;

NOW, THEREFORE, BE IT RESOLVED, that the Board, having considered all relevant matters thereto; that in the judgment of the Company, it is desirable and in the best interests of the Company, its creditors, employees, and other interested parties that a petition be filed by the Company seeking relief under the provisions of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

RESOLVED FURTHER, any officer of the Company (the "Authorized Person") shall be authorized, empowered and directed, in the name, and on behalf of the Company, to execute and verify a petition and amendments thereto under chapter 11 of the Bankruptcy Code and to cause the same to be filed in the United States Bankruptcy Court for the District of Nevada at such time as such Authorized Person executing the same shall determine;

RESOLVED FURTHER, that Frederick Cooper shall be designated as the Company's responsible person in the Company's chapter 11 bankruptcy case;

RESOLVED FURTHER, that the law firm of Larson & Zirzow, LLC is engaged and shall continue its engagement as attorneys for the Company in the chapter 11 case as general reorganization counsel, subject to any requisite bankruptcy court approval;

RESOLVED FURTHER, that each Authorized Person, and such other persons as the Authorized Persons shall from time to time designate, and any employees or agents (including counsel) designated by or directed by any such person, be, and each hereby is, authorized, empowered and directed, in the name and on behalf of the Company, to execute and file all petitions, schedules, motions, lists, applications, pleadings and other papers, and to take and perform any and all further acts and deeds which he or she deems necessary, proper or desirable in connection with the chapter 11 case, with a view to the successful prosecution of such case;

RESOLVED FURTHER, that each Authorized Person, and such other persons as the Authorized Persons shall from time to time designate, and any employees or agents (including counsel) designated by or directed by any such Authorized Persons, be, and each hereby are, authorized, empowered and directed, in the name and on behalf of the Company, to cause the Company to enter into, execute deliver, certify, file and/or record, and perform such agreements,

1

instruments, motions, affidavits, declarations, applications, certificates or other documents, and to take such other action as in the judgment of such person shall be or become necessary, proper, and desirable to effectuate a successful Chapter 11 reorganization of the business of the Company;

RESOLVED FURTHER, that, any and all past actions heretofore taken by the Authorized Persons of the Company in the name and on behalf of the Company in furtherance of any or all of the preceding resolutions be, and the same hereby are, ratified, confirmed, and approved; and

RESOLVED FURTHER, that this Written Consent may be executed in one or more counterparts, and may be delivered by facsimile or electronic transmission, each of which will be an original and when all of the members of the Board have executed at least one counterpart hereof, the foregoing shall be deemed to be adopted and in full force and effect, as of the date first above written.

IN WITNESS WHEREOF, the undersigned, constituting all of the members of the Board of the Company, by execution hereof, hereby approve this Written Consent as of the date first above written.

WESTERN FUNDING INCOPORATED,
a California corporation:

By: _____
Frederick A. Cooper, Director

By: _____
Katherine H. Cooper, Director

2

# EXHIBIT 2

# EXHIBIT 2

# EXHIBIT 2

Electronically Filed
09/04/2013 11:56:55 AM

*[signature]*

CLERK OF THE COURT

1  **ORDR**
Rodney M. Jean, NBN 1395
2  *rjean@lionelsawyer.com*
Ryan A. Andersen, NBN 12321
3  *randersen@lionelsawyer.com*
Mark J. Gardberg, NBN 10879
4  *mgardberg@lionelsawyer.com*
5  300 S. 4th St., Ste. 1700
Las Vegas, Nevada 89101
6  Telephone: 702-383-8888
Facsimile: 702-383-8845
7
8  *Attorneys for Petitioner*
*BMO Harris Bank N.A.*
9

10                    **DISTRICT COURT**
              **CLARK COUNTY, NEVADA**
11

|  |  |
|---|---|
| BMO HARRIS BANK N.A., a national association, | Case No.: A-13-687299-B<br>Dept. No.: XIII |
| Plaintiff, | **ORDER APPOINTING RECEIVER** |
| v. | Date:   September 3, 2013<br>Time:   9:00 a.m. |
| WESTERN FUNDING INCORPORATED, a California Corporation, | |
| Defendant. | |

18

19     The Petition for Appointment of a Receiver on Order Shortening Time (the "Petition") of

20  BMO HARRIS BANK N.A., a national association ("Plaintiff"), came before the Court at the

21  date and time set forth above.   The Court, having read and considered the Petition, the

22  Opposition filed by WESTERN FUNDING INCORPORATED, a California corporation

23  ("Defendant"), the Plaintiff's Reply brief, and any other papers and pleadings on file herein, and

24  being otherwise fully advised, determines that the Plaintiff has shown good cause for the

25  appointment of a receiver pursuant to NRS 32.010, and thus rules as follows:

26                              **ORDER**

27     IT IS HEREBY ORDERED that Plaintiff's Petition be, and the same hereby is,

28  GRANTED, and Larry Singer (of Larry Singer, LLC) ("Receiver"), with an address at 2317 Calle

RECEIVED
SEP 0 4 2013
DISTRICT COURT DEPT. #13

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

1    de Nuevo, Las Vegas, NV 89102, is appointed as receiver of and over Defendant and all of its

2    property and is granted possession and powers over and to all of Defendant's property (the

3    "Property"), including without limitation Defendant's personal, tangible and intangible, intellectual

4    and commercial property, commercial paper, and its proceeds, cash accounts, and business

5    contracts and goodwill.

6        IT IS FURTHER ORDERED that the Receiver is empowered to:

7        (a)    *Possession.*  Take immediate and exclusive possession of the Defendant's Property,

8    and Defendant's business and hold, operate, and manage the same, including but not limited to

9    acquiring and/or servicing auto loans; take all commercially reasonable efforts to diligently

10   analyze, evaluate, report with regard to, organize and categorize information relating to the

11   Defendant, Property, and Defendant's business; and preserve the same from loss, removal, material

12   injury, destruction, substantial waste, and loss of income therefrom;

13       (b)    *Contractors.*  Employ agents, employees, attorneys, contractors, management

14   personnel, security, maintenance personnel, loan servicing personnel, and other persons to carry

15   out the receiver's powers and duties;

16       (c)    *Funds.*  Take possession and control of any and all funds and accounts ( subject to

17   Plaintiff's deposit account control agreements), and any funds maintained or held by Defendant

18   and all of Defendant's subsidiaries and affiliated companies with respect to the operation,

19   administration, leasing, supervision, and management of the Defendant, Property, and Defendant's

20   business, including funds advanced by Plaintiff, and employ such funds only in the administration,

21   management, and supervision of the Defendant, Property, and Defendant's business;

22       (d)    *Legal Compliance.*  Take commercially reasonable steps to cause the Defendant,

23   Property, and Defendant's business to comply with applicable local, county, state, and federal laws,

24   ordinances, codes, regulations, and other requirements, and to pay taxes, assessments, payroll,

25   utility, and other fees generated by and associated with the Defendant, Property, and Defendant's

26   business out of the funds maintained by the Receiver.  Such commercially reasonable efforts may

27   include engaging experts or relying upon experts now engaged to assist in ensuring such

28   compliance;

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

2

1    (e)    *Contracts.* Enter into any and all contracts, leases or agreements for the benefit of

2    the Defendant, Property, and Defendant's business, including the procurement of appropriate

3    insurance, and terminate, as appropriate, any and all contracts for cause or pursuant to the terms of

4    said contracts or leases;

5    (f)    *Proceedings.* Initiate, prosecute, defend, settle, and/or compromise all legal

6    proceedings and claims involving the Defendant, Property, and Defendant's business as the

7    Receiver deems desirable or necessary, including suits for any payments now due or hereinafter

8    due, and employ counsel for the protection or proper care of the Defendant, Property, and

9    Defendant's business;

10    (g)    *Borrowings.* Request and receive funds from Plaintiff to undertake and execute the

11    Receiver's duties and obligations under this Order, and that such funds shall (i) constitute further

12    obligations of Defendant under the Loan documents and (ii) be secured under the Security

13    Agreement (provided, however, that this is not intended to obligate Plaintiff to provide any

14    additional funds);

15    (h)    *Business.* Without further order of the Court, operate, administer, and supervise the

16    Defendant, Property, and Defendant's business and run them in the ordinary and usual course of

17    business. The Receiver may not materially operate the same outside of the ordinary and usual

18    course of business without further order of the Court. The Receiver is authorized to (i) purchase

19    materials, supplies, and services and to pay therefor at ordinary and usual rates and prices out of

20    funds that shall come into his possession; (ii) compromise debts; and (iii) as Receiver, do all things

21    and incur the risks and obligations ordinarily incurred by entities engaged in the same business as

22    Defendant. Except in the event of the Receiver's gross negligence or willful misconduct, any such

23    risk or obligation incurred in his role as Receiver shall not be the personal risk or obligation of the

24    Receiver, but shall be a risk or obligation solely of Defendant. The Property, including

25    receivership funds, may not be expended (A) outside the ordinary and usual course of business

26    without the authorization of this Court nor (B) in contravention of the Loan documents;

27    (i)    *Records.* Maintain, inspect and/or review any and all books and records relating to

28    the Defendant, Property, and Defendant's business maintained by Defendant and/or Defendant's

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

3

1    respective agents, employees, professionals, and independent contractors, and the Receiver shall

2    have reasonable access to all such items or individuals, including, but not limited to, the right to

3    copy any or all parts of Defendant's business records, and Defendant shall relinquish to Receiver

4    all keys needed for access to any real property and all parts or portions thereof occupied by

5    Defendant;

6        (j)    *Operations*.   Generally act in the stead of Defendant, including with respect to

7    employees, contractors, customers, suppliers, and other third parties, and establish and update

8    operating budgets, contracts, leases, schedules, and controls;

9        (k)    *Business Activities*.   Engage in and perform or conduct appropriate marketing and

10   other sales and purchasing activity in order to maintain, preserve, add to and protect the value of

11   the Defendant, the Property, and Defendant's business; and

12       (l)    *Inherent Powers*.   Exercise any and all other powers specifically enumerated or

13   inherent in the Receiver's duties and obligations herein or by law.

14       IT IS FURTHER ORDERED that Defendant, and its shareholders, officers, directors,

15   affiliates, subsidiaries, employees, representatives, partners, managers, agents, and all other

16   persons acting in concert or participating with Defendant shall not interfere in any manner

17   whatsoever with the possession, operation, or management by the Receiver of the Defendant,

18   Property, and Defendant's business in the discharge by the Receiver of his powers and duties

19   pursuant to this Order and further Orders of the Court;

20       IT IS FURTHER ORDERED that the Receiver shall receive payment and be

21   compensated for his actions hereunder at a flat monthly rate of $4,000, as well as reimbursement

22   of all of the Receiver's reasonable administrative costs and out-of-pocket expenses;

23       IT IS FURTHER ORDERED that the Receiver shall each month prepare and serve on the

24   parties and file with this Court an accounting of the income and expenses incurred in connection

25   with the administration of the Defendant, the Property, and Defendant's business, including the

26   Receiver's fees and costs.  Thirty days after such filing, unless proscribed by the Court, the

27   Receiver may pay from the receivership funds the Receiver's own fees and costs and any

28   budgeted expenses (e.g., the fees of the Receiver's agents, employees, attorneys, contractors,

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

4

1   management personnel, security, maintenance personnel, and other persons); provided, however,

2   such fees and costs shall be subject to the Court's approval of the Receiver's Final Account and

3   Report ("Final Account and Report");

4        IT IS FURTHER ORDERED that the Receiver shall render a Final Account and Report

5   which shall be filed with the Court, with copies thereof delivered to the parties' attorneys of

6   record; and that after the Receiver files the Final Account and Report, he shall be discharged

7   from his powers and duties as Receiver herein; and

8        IT IS FURTHER ORDERED that the Receiver may serve without posting or filing any

9   bond.

10   Dated this 4th day of September, 2013.

11

12                                         _____

13                                         District Court Judge MARK R. DENTON

14   Respectfully submitted,

15   LIONEL SAWYER & COLLINS

16

17   By: _____

18        Rodney M. Jean, NBN 5395
        Ryan A. Andersen, NBN 12321

19        Mark J. Gardberg, NBN 10879

20   *Attorneys for Plaintiff BMO Harris Bank N.A.*

21

22   Reviewed:

23   LARSON & ZIRZOW, LLC

24

25   By: _____

26        Matthew C. Zirzow, NBN 7222
        Zachariah Larson, NBN 7787

27

28   *Attorneys for Defendant Western Funding Incorporated*

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

5

# EXHIBIT 3

# EXHIBIT 3

# EXHIBIT 3

**PET**
Rodney M. Jean, NBN 1395
*rjean@lionelsawyer.com*
Ryan A. Andersen, NBN 12321
*randersen@lionelsawyer.com*
Mark J. Gardberg, NBN 10879
*mgardberg@lionelsawyer.com*
300 S. 4th St., Ste. 1700
Las Vegas, Nevada 89101
Telephone: 702-383-8888
Facsimile: 702-383-8845

*Attorneys for Petitioner*
*BMO Harris Bank N.A.*

DEPARTMENT XIII
NOTICE OF HEARING
DATE 9/3/13  TIME 9:00 Am
APPROVED BY _____

## DISTRICT COURT
## CLARK COUNTY, NEVADA

| | |
|---|---|
| BMO HARRIS BANK N.A., a national association, <br><br> Plaintiff, <br><br> v. <br><br> WESTERN FUNDING INCORPORATED, a California Corporation, <br><br> Defendant. | Case No.: A687299 <br> Dept. No.: XIII <br><br> **PETITION FOR THE APPOINTMENT** <br> **OF A RECEIVER** <br> **ON ORDER SHORTENING TIME** <br><br> Date: OST Requested <br> Time: OST Requested |

BMO HARRIS BANK N.A., a national association ("**Plaintiff**"), hereby petitions the Court for (i) an Order Shortening Time and (ii) an Order Appointing Larry Singer as Receiver of and for Defendant Western Funding Incorporated, a California corporation qualified to do business in Nevada ("**Defendant**").

This Petition is made and based on the following Memorandum of Points and Authorities, the pleadings and papers on file, the attached exhibits, and any oral argument which may be considered by the Court.

///

RECEIVED

AUG 21 2013

DISTRICT COURT DEPT# 13

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101

## DECLARATION OF MARK J. GARDBERG IN SUPPORT OF ORDER SHORTENING TIME

STATE OF NEVADA )
) ss
COUNTY OF CLARK )

I, MARK J. GARDBERG, declare as follows:

1.     I am an attorney licensed in the State of Nevada under Bar No. 10879 and am in good standing. I work at the law firm Lionel Sawyer & Collins, counsel for Plaintiff in this action.

2.     I have personal knowledge of the facts recited herein, or, alternatively, state these facts to be true based upon information and belief, and I am competent and willing to testify to them if called to do so. As described in more detail in the Memorandum of Points and Authorities below:

3.     Defendant is in the business of buying consumer loans from used car dealerships in multiple jurisdictions, including, without limitation, the Las Vegas metropolitan area, at a discount, and services those loans through direct contacts with consumers. Plaintiff has financed Defendant's business by providing tens of millions of dollars in credit (the "Loan"), with approximately $31.4 million in principal due and outstanding as of today's date. The Loan is secured by virtually all the personal property of Defendant, including the consumer loans and proceeds thereof.

4.     Defendant has been in default on the Loan since February 28, 2013. Plaintiff entered into an original forbearance arrangement and four separate amendments starting on May 29, 2013, June 18, 2013, July 1, 2013, July 5, 2013, and August 5, 2013. Plaintiff agreed to temporarily forego exercise of UCC remedies and other enforcement proceedings (e.g., a guarantor action) while Defendant attempted to correct its defaults.

5.     Defendant remains in default under the Loan and has now breached the forbearance arrangements.

6.     On or around August 7, 2013, in violation of the parties' security agreement, Defendant, without notice to Plaintiff and while the forbearance agreement was still in effect, began diverting cash collateral away from the specific deposit accounts to which those funds are

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

2

supposed to be posted (and which accounts are subject to deposit account agreements that allow Plaintiff, in the event of a breach, to take control of those funds). Because of this diversion, Plaintiff has no way of knowing with certainty where its collateral is located, and more importantly, no control over its collateral. The only information Plaintiff has is that some amounts of diverted funds are now in an account at Wells Fargo bank and that a significant amount of Plaintiff's collateral—i.e., $225,000—may have been further transferred to Defendant's legal counsel and/or legal counsel to the principals of Defendant, Fred and Katherine Cooper.

7.      In a telephone call on August 15, 2013, Defendant's counsel advised Plaintiff's counsel that Defendant intentionally diverted the funds away from the controlled deposit accounts described in paragraph 6, and that it refused to account for those funds. That constitutes a knowing and deliberate breach of the parties' Loan documents. That same day, Plaintiff's counsel sent a letter to Defendant's counsel memorializing that conversation, demanding the Funds be returned, and insisting upon an immediate reconciliation of all monies received by Defendant since August 1, 2013. Defendant's counsel responded to that letter later in the day on August 15, 2013, generally denying the statements made in the Demand Letter, but without any specific denial of the diversion of funds without notice to the Plaintiff.

8.      An order shortening time is necessary because Defendant has defaulted on its loan agreement and owes $31.4 million, and *more critically, Defendant has deliberately breached the parties' security arrangements by diverting cash collateral to accounts outside of the parties' security structure, presenting a serious and immediate risk of loss, waste, or potential fraud.*

9.      It is imperative that a receiver be appointed *as soon as possible* to ensure that the Collateral is properly accounted for, that no waste, loss, or fraud occur, and that the funds not be moved offshore or to other accounts effectively beyond the reach of (i) this Court and (ii) Plaintiff's lawful attempts to preserve and enforce its security interest.

10.      If this Petition is not heard on an Order Shortening Time, that will undoubtedly complicate the Receiver's eventual attempts to forensically determine what Defendant has been doing with the diverted funds and whether all funds are accounted for.

11.      This request for an Order Shortening Time is made in good faith and without an

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

3

1    improper motive.

2        12.   I declare under penalty of perjury under the law of the State of Nevada that the

3    foregoing is true and correct.

4        Executed on August 21, 2013.

6                                         MARK J. GARDBERG

7                        **ORDER SHORTENING TIME**

8        Upon good cause shown, please take notice that the hearing before the above-titled Court

9    on Plaintiff's **PETITION FOR THE APPOINTMENT OF A RECEIVER** shall be heard on

10   shortened time on the 3d day of September, 2013, at 9:00 a.m., or as soon

11   thereafter as counsel may be heard.

12        Plaintiff shall serve this Petition for the Appointment of a Receiver on Defendant no later

13   than on the 26th day of August, 2013. Defendant shall file an Opposition brief, if it

14   wishes to do so, no later than on the ___ day of ___, 2013. Plaintiff shall file a

15   Reply brief, if it wishes to do so, no later than on the ___ day of ___, 2013.

16        Dated this 21st day of August, 2013.

19                        DISTRICT COURT JUDGE

20         **MEMORANDUM OF POINTS AND AUTHORITIES**

21                **I.**     **INTRODUCTION**

22        This might have been an ordinary case, not deserving of any urgent or special treatment, if

23   Defendant were merely another company facing hard times, unable to repay a loan, and subject to

24   a foreclosure or bankruptcy action. This is not an ordinary case.

25        Defendant owes Plaintiff, its lender, approximately $31.4 million in principal alone. In the

26   loan agreements entered into just eighteen months ago, the parties agreed to an extensive security

27   arrangement, including a requirement that all collateral proceeds be funneled into bank accounts

28   governed by standard deposit account control agreements. In the event of a default, Plaintiff could

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

1    take control of those accounts, giving it the ability to safeguard the Funds and preserve its

2    collateral.

3        In February of 2013, Defendant defaulted on the loan. On five separate occasions in late

4    Spring and this Summer, Plaintiff granted Defendant forbearance to give Defendant a chance to

5    right its financial affairs. Instead, Defendant not only has now stopped making payments on the

6    $31.4 million in principal still due on the Loan, but has diverted the cash collateral to a destination

7    known to Defendant and controlled solely by the Defendant. Plaintiff has no direct knowledge of

8    where the money is now going (other than not into the contractually-agreed deposit accounts, and

9    other than a significant sum, at least $225,000, being earmarked to Defendant's attorneys and the

10    attorneys for Defendant's principals). Defendant has rebuffed requests for a detailed accounting of

11    these diverted funds.

12        Defendant can now redirect Plaintiff's collateral to an unknown destination, possibly

13    beyond this Court's jurisdiction, for questionable ends (especially given that Defendant's principals

14    recently agreed to settle fraud, conspiracy and breach-of-fiduciary-duty claims made in an Ohio

15    suit brought by members of the parent company that owns 100% of the Defendant, for the payment

16    of $6 million).[1] At the very least, there are no proper justifications for Defendant's knowing and

17    deliberate actions. Plaintiff asks this Court for an immediate order placing Defendant and its

18    assets in receivership. Plaintiff is entitled to such urgent relief: (i) under NRS 32.010(2), since the

19    secured collateral is plainly in "danger of being lost, removed or materially injured"; (ii) under

20    NRS 32.010(5), since the Defendant may be in "imminent danger" of insolvency if action is not

21    taken to place control of Defendant's assets in the hands of a competent receiver, so that all of

22    Defendant's assets can be accounted for and managed appropriately; (iii) under NRS 32.010(6), on

23    equitable grounds, given Defendant's unfair appropriation of Plaintiff's collateral; and (iv) under

24    the parties' contracts, given provisions in the Credit and Security Agreements contemplating just

25

26        [1] The Ohio lawsuit contains numerous allegations of fraud and breaches of fiduciary duty
    committed by the principals of Defendant, which resulted in the execution of a settlement
27    agreement for $6 million. See Ex. A-7. Plaintiff is informed and expects that the parties that filed
    the Ohio state-court action will be in full support of the receivership request sought by the Plaintiff
28    herein.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

5

such a receivership and the seizure of the relevant collateral in the event of a default. Plaintiff hopes that the receiver will neither wind up and dissolve Defendant nor suspend its business, but will simply operate Defendant in a responsible manner, consistent with the agreed-upon security arrangements, until the Court can properly oversee Plaintiff's recourse for Defendant's loan defaults.

## II.    STATEMENT OF FACTS

### A.    Defendant's Business.

Defendant's business consists of (i) buying consumer loans from used car dealerships in multiple jurisdictions, including, without limitation, the Las Vegas, Nevada metropolitan area at a discount, thereby building a portfolio of subprime loans, and (ii) servicing those loans through direct dealings with local consumers.

### B.    The Loan.

On March 14, 2012, Plaintiff agreed to refinance another bank's loan to Defendant as a workout for Defendant's capital financing. Plaintiff has extended more than thirty million dollars in credit (the "Loan") to Defendant, pursuant to the terms and conditions set forth in a Credit Agreement dated March 14, 2012 by and among Defendant, Plaintiff (as lender and administrative agent), and certain guarantors (as amended, the "Credit Agreement"). *See* Exhibit A-1 (Credit Agreement).

As a condition precedent to Plaintiff's entering into the Credit Agreement, Defendant, Plaintiff, and certain guarantors simultaneously entered into a Security Agreement dated March 14, 2012 (the "Security Agreement"). *See* Exhibit A-2 (Security Agreement). Pursuant to the Security Agreement, Defendant and those guarantors granted Plaintiff a first-priority security interest in all or virtually all of its personal property, both then-owned or existing and thereafter created, acquired or arising. The Collateral includes, without limitation, all Deposit Accounts, Accounts, Chattel Paper, Instruments, Documents, General Intangibles, Letter-of-Credit Rights, Inventory, Equipment, and the Proceeds of Collateral, all as defined in the Security Agreement (collectively, the "Collateral").

As provided for in Section 4.3 of the Credit Agreement, and as further required by the

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

6

Forbearance Agreements described below, as amended, all funds representing the proceeds of the Plaintiff's Collateral are required to be deposited in a Bank account or accounts controlled by Plaintiff, as follows:

> *Section 4.3. Depository Banks.* Within 90 days of the Closing Date, each Loan Party shall maintain the Administrative Agent (or one of its Affiliates) as its primary depository bank, including for its principal operating, administrative, cash management, lockbox arrangements, collection activity, and other deposit accounts for the conduct of its business. Except as otherwise provided in Section 4.2(i) hereof, all deposit accounts shall be maintained with the Administrative Agent or such other bank(s) reasonably acceptable to the Administrative Agent subject to deposit account control agreements in favor of Administrative Agent on terms reasonably satisfactory to Administrative Agent (all such deposit accounts maintained with the Administrative Agent or with such other bank(s) subject to a deposit account control agreement being hereinafter collectively referred to as the *"Assigned Accounts"*). Each Loan Party shall make such arrangements as may be reasonably requested by the Administrative Agent to assure that all proceeds·of the Collateral are deposited (in the same form as received) in one or more Assigned Accounts. Any proceeds of Collateral received by any Loan Party shall be promptly deposited into an Assigned Account and, until so deposited, shall held by it in trust for the Administrative Agent and the Lenders. The Loan Parties acknowledge and agree that the Administrative Agent has (and is hereby granted to the extent it does not already have) a Lien on each Assigned Account and all funds contained therein to secure the Secured Obligations. The Administrative Agent agrees with the Loan Parties that if and so long as no Default or Event of Default has occurred or is continuing, amounts on deposit in the Assigned Accounts will (subject to the rules and regulations as from time to time in effect applicable to such demand deposit accounts) be made available to the relevant Loan Party for use in the conduct of its businesses. Upon the occurrence and during the continuation of a Default or an Event of Default, the Administrative Agent may apply the funds on deposit in any and all such Assigned Accounts to the Secured Obligations (whether or not then due).

To Plaintiff's knowledge, Defendant does not engage in any business other than the one which is funded through Plaintiff's Loan facility. Ex. A, ¶3.

**C.    Defendant's Breach.**

Defendant subsequently breached the Credit Agreement and Security Agreement.   On April 23, 2013, Plaintiff sent a Notice of Defaults and Reservation of Rights advising Borrower of three separate defaults that occurred as of February 28, 2013.  The defaults consisted of breaches of Sections 8.25(a), (c) and (d) of the Credit Agreement, which involve Defendant's minimum Adjusted Tangible Net Worth, Interest Coverage Ratio, and Minimum Loss Reserves covenants,

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

7

1    respectively.

2       Defendant and Plaintiff thereafter entered into a Forbearance Agreement dated May 29,

3    2013,[2] as amended by a First Amendment to Forbearance Agreement dated June 18, 2013, a

4    Second Amendment to Forbearance Agreement dated July 1, 2013, a Third Amendment to

5    Forbearance Agreement dated July 15, 2013, and a Fourth Amendment to Forbearance Agreement

6    dated August 5, 2013 (as amended, the "Forbearance Agreement"). *See* Exhibit A-3 (Fourth

7    Amendment). Under the Forbearance Agreement and amendments, Plaintiff agreed to temporarily

8    forbear from enforcing its rights and remedies as a result of the subject defaults. Ex. A, ¶9.

9       Plaintiff also issued Notices of Standstill Termination and Reservation of Rights dated

10   July 1, 2013, July 23, 2013, and August 12, 2013. Among other things, in the July 1, 2013 Notice,

11   Plaintiff issued a "disposition notice" to Citibank N.A. directing that available funds in the Citi

12   Accounts be wire transferred to Plaintiff. In addition, in the July 1 and August 12, 2013 Notices,

13   Plaintiff instructed Defendant that all Collateral proceeds are to be held in trust for Plaintiff's

14   account and promptly deposited either directly with Plaintiff or into an account with a depositary

15   bank subject to an deposit account control agreement. Ex. A, ¶12.

16      Despite the forbearances, Defendant's economic situation has failed to improve. By June

17   2013, Defendant notified Plaintiff that without a release of additional Funds by Plaintiff,

18   Defendant could not make payroll. Ex. A, ¶10. In the First Amendment to Forbearance

19   Agreement dated June 18, 2013, Plaintiff extended a borrowing base over-advance in the amount

20   of $250,000 so that Defendant could, among other things, pay its employees. Ex. A, ¶10. Most

21   recently on August 14, 2013, Plaintiff agreed to allocate a portion of its cash collateral proceeds to

22   assist the Defendant in meeting, among other things, its payroll obligations. Ex. A, ¶10.

23      Defendant remains in default under the Loan and has compounded the problem by

24

25   ――――――――――――――
        [2] Perhaps not coincidentally, around the time of the default, Defendants' principals entered
26   into a settlement agreement relating to the aforementioned Ohio lawsuit. The members of an LLC
     that owns all of the shares of Defendant sued the Defendant's principals on fraud, conspiracy, and
27   breach-of-fiduciary-duty claims. To settle that lawsuit, Defendant's principals agreed to buy out
     the claimants' membership interests at a value of nearly $6 million. Ex. A, ¶7. As stated above,
28   Plaintiff expects that the plaintiffs in the Ohio lawsuit will fully support the appointment of a
     receiver as requested herein.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

8

breaching the forbearance arrangements. Beginning on or around August 7, 2013 without notice to Plaintiff and before the Forbearance Agreement had expired, Defendant began diverting funds that constitute the proceeds of Collateral (the "Funds") away from the specific deposit accounts to which those Funds were supposed to be posted (and which were governed by deposit account control agreements). Ex. A, ¶13. The last transfers of cash Collateral to the proper accounts were on August 7, 2013 (transfer of Funds from Wells Fargo and Citibank accounts) and August 9, 2013 (FNBO merchant card services transfer of funds). Ex. A, ¶14. Plaintiff is informed that Defendant has already redirected at least $508,000.00 in proceeds into a Wells Fargo Bank account. Ex. A, ¶15.

Moreover, the forbearance arrangements required Defendant to employ an independent financial advisor to monitor Defendant's financials. Plaintiff has learned that Defendant terminated that financial advisor. Ex. A, ¶24.

On August 13, 2013, after the forbearance period had expired, Plaintiff sent Defendant a Notice of Acceleration and Demand for Payment. *See* Exhibit A-5 (notice). That Notice advised Defendant that all Collateral proceeds (including, without limitation, proceeds of finance contracts) must be paid over to Plaintiff and, until paid over, must be held by the Defendant in trust for Plaintiff's account. Ex. A-5. The Notice stated that the Standstill Period under the Forbearance Agreement expired as of the close of business on August 9, 2013, and as a result, a Standstill Termination had occurred. Ex. A-5.

On August 13, 2013, Plaintiff "swept" the Defendant's accounts maintained with Plaintiff, and which were under the Plaintiff's control in accordance with the terms of the Security Agreement. Ex. A, ¶17. Plaintiff issued a Notice of Application of Funds confirming to Defendant that Plaintiff applied those funds to reduce Defendant's debt obligations. Ex. A, ¶17.

In a telephone call on August 15, 2013, Defendant's counsel confirmed to Plaintiff's counsel that Defendant had begun diverting the Funds away from the controlled deposit accounts, in breach of their agreements with Plaintiff, and without notice to Plaintiff. That same day, Plaintiff's counsel sent a letter to Defendant's counsel memorializing that conversation, demanding the Funds be returned, and insisting upon an immediate reconciliation of all monies received by

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

9

1   Defendant since August 1, 2013 (the "Demand Letter").  *See* Exhibit A-6 (Demand Letter).

2   Defendant's counsel responded to that letter later in the day on August 15, 2013, generally denying

3   the statements made in the Demand Letter, but without any specific denial of the diversion of

4   Funds without notice to the Plaintiff. Ex. A, ¶20.

5       Defendant's attorney also initially refused to divulge the name of the bank to which those

6   Funds have been diverted. Ex. A, ¶20. Plaintiff has subsequently come to learn that at least a

7   portion of the diverted Funds have been deposited with Wells Fargo Bank, with at least $225,000

8   of the Funds then being transferred to three law firms as "retainers." Ex. A, ¶21.

9       Plaintiff's counsel thereafter approached a local branch of Wells Fargo Bank in an effort to

10  find and gain control of the diverted Funds, but that bank advised Plaintiff that without a Court

11  order, it could not confirm whether it held any Funds, much less take any action. Ex. A, ¶22.

12  Plaintiff has notified Defendant's attorneys that the $225,000 in their possession must be held in

13  trust for Plaintiff's account. Ex. A, ¶23.

14      As of the date hereof, the Defendant owes Plaintiff approximately $31,413,841.58 in

15  principal due on the Loan—with interest, fees, and costs separately continuing to accrue. Ex. A,

16  ¶25. In Plaintiff's opinion, its interests as secured lender would likely be best protected not by a

17  receiver suspending the Defendant's business activities and winding it up, but for the time being,

18  by a receiver continuing to operate the business within the parameters of the parties' agreed-upon

19  security structure. Ex. A, ¶26.

20                  III.    ARGUMENT

21      Under Nevada law, a receiver is "an indifferent person between the parties to a cause,

22  appointed by the court to receive and preserve the property or fund in litigation *pendente lite*, when

23  it does not seem reasonable to the court that either party should hold it." *Bowler v. Leonard*, 70

24  Nev. 370, 382-383, 269 P.2d 833, 839 (1954) (internal citation omitted). The use of a receiver

25  pendent lite is an ancillary remedy used to preserve the value of the assets pending the outcome of

26  the principal case. *Johnson v. Steel, Inc.*, 100 Nev. 181, 183, 678 P.2d 676, 678 (1984), *overruled*

27  *on other grounds by Shoen v. SAC Holding Corp.*, 122 Nev. 621, 137 P.3d 1171 (2006).

28

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

A.    **Plaintiff Is Entitled to Appointment of a Receiver on Contractual Grounds.**

"When a contract is clear, unambiguous, and complete, its terms must be given their plain meaning and the contract must be enforced as written." *Ringle v. Burton*, 120 Nev. 82, 93, 86 P.3d 1032, 1039 (2004); *see also University of Nevada, Reno v. Stacey*, 116 Nev. 428, 433, 997 P.2d 812, 815 (Nev. 2000) (absent any ambiguity, the "plain meaning of the language of [the] contract controls our analysis"); *State of Nevada, University and Community College System v. Sutton*, 120 Nev. 972, 980, 103 P.3d 8, 13 (Nev. 2004) (same).

Here, the Credit Agreement among the parties implicitly corroborates Plaintiff's right to seek appointment of a receiver. Section 11.11 of the Credit Agreement states:

> ...no Lender (or its Affiliates), other than the Administrative Agent, shall the right to institute any suit, action or proceeding in equity or at law for the foreclosure or other realization upon any Collateral or for the execution of any trust or power in respect of the Collateral or for the ***appointment of a receiver*** or for the enforcement of any other remedy under the Collateral Documents...

Ex. A-1, Sec. 11.11 (emphasis added). Plaintiff, as Administrative Agent, has the unambiguous right to seek appointment of a receiver in light of Defendant's default.

Moreover, Section 10(c) of the Security Agreement gives the Plaintiff comprehensive authority to take possession and control of the Collateral upon the occurrence of a default, so surely it is permissible for Plaintiff to ask the Court for a neutral, independent receiver to exercise such right. Section 10(c) states:

> (c) Without in any way limiting the foregoing, upon the occurrence and during the continuation of any Event of Default hereunder, in addition to all other rights provided herein or by law, (i) ***the Agent shall have the right to take physical possession of any and all of the Collateral and anything found therein,*** the right for that purpose to enter without legal process any premises where the Collateral may be found (provided such entry be done lawfully), and the right to maintain such possession on the relevant Debtor's premises (each Debtor hereby agreeing, to the extent it may lawfully do so, to lease such premises without cost or expense to the Agent or its designee if the Agent so requests) or to remove the Collateral or any part thereof to such other places as the Agent may desire, (ii) the Agent shall have the right to direct any intermediary at any time holding any Investment Property or other Collateral, or any issuer thereof, to deliver such Collateral or any part thereof to the Agent and/or to liquidate such Collateral or any part thereof and deliver and deliver the proceeds thereof to the Agent (including, without limitation, the right to deliver a notice of control with respect to any Collateral held in a securities account or commodities account and deliver all entitlement orders with respect thereto), (iii)

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

1  the Agent shall have the right to exercise any and all rights with respect to all
2  Deposit Accounts of each Debtor, including, without limitation, the right to direct
   the disposition of the funds in each Deposit Account and to collect, withdraw, and
3  receive all amounts due or to become due or payable thereunder, and (iv) each
   Debtor shall, upon the Agent's demand, promptly assemble the Collateral and make
4  it available to the Agent at a place reasonably designated by the Agent. If the Agent
   exercises its right to take possession of the Collateral, each Debtor shall also at its
5  expense perform any and all other steps requested by the Agent to preserve and
   protect the security interest hereby granted in the Collateral, such as placing and
6  maintaining signs indicating the security interest of the Agent, appointing overseers
7  for the Collateral and maintaining Collateral records.

8  Ex. A-2, Sec. 10(c) (emphasis added).   In other words, Section 10(c) gives the Plaintiff an

9  unfettered right to take control of the Collateral upon an Event of Default.  By implication, that

10  contractual provision gives the Court the authority to appoint a neutral, independent receiver, as an

11  officer of the Court, to take control of the Collateral at Plaintiff's request.

12      The Supreme Court of Nevada has confirmed the contractual right of a party to appoint a

13  receiver.  In *Lynn v. Ingalls*, the parties' lease granted the lessors, upon an event of default and

14  commencement of litigation, the right to appointment of a receiver during the pendency of the

15  litigation, and even to seek the sale of lessee's business.  *Lynn v. Ingalls*, 100 Nev. 115, 117-20,

16  676 P.2d 797, 799-800 (Nev. 1984).  Recognizing the lessors' contractual right to a neutral

17  receiver to preserve the value of the property, the Supreme Court affirmed the trial judge's

18  appointment of a receiver "to maintain and preserve the value of the business until it was

19  ultimately determined by the court that the lessors were entitled to resort to the secured assets in

20  satisfaction of [a] judgment." *Id.* ("[T]here is nothing violative of public policy in permitting a

21  [party] to seek the appointment of a receiver to conduct business operations while the lease

22  termination is being litigated.")

23      Similarly, this Court should appoint a receiver to manage the Collateral in furtherance of

24  Plaintiff's contractual rights.  Both Section 10(c) of the Security Agreement and Section 11.11 of

25  the Credit Agreement give the Court a contractual basis for appointing a receiver to preserve, as in

26  *Lynn*, the Defendant's business pending determination of the ultimate suit.

27  **B.    Plaintiff Is Entitled to Appointment of a Receiver on Statutory Grounds.**

28      Nevada law empowers this Court to appoint a receiver on facts like those presented here.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

12

NRS 32.010 provides:

> A receiver may be appointed by the court in which an action is pending, or by the judge thereof:
> [...]
>    2. In an action by a mortgagee for the foreclosure of the mortgage and sale of the mortgaged property, where it appears that the mortgaged property is in danger of being lost, removed or materially injured, or that the condition of the mortgage has not been performed, and that the property is probably insufficient to discharge the mortgage debt.
> [...]
>    5. In the cases when a corporation has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights.
>
>    6. In all other cases where receivers have heretofore been appointed by the usages of the courts of equity.

There are thus two prerequisites for this Court to have the authority to appoint a receiver under NRS 32.010: (i) there must be an action pending in which the application is made, and (ii) the petition must state sufficient facts under any one subsection to justify the appointment. *State ex rel. Nenzel v. Second Judicial Dist. Court in and for Washoe County*, 49 Nev. 145, 241 P. 317, 320-21 (Nev. 1925).

Although only one of those three subsections needs to be triggered for this Court to grant a receivership, all three subsections are satisfied here.

**(1)    Plaintiff Is Entitled to a Receiver under NRS 32.010(2).**

NRS 32.010(2) can apply to security interests in both real or personal property. That statute instructs the Court to appoint a receiver when "the mortgaged property is in danger of being lost, removed or materially injured, or that the condition of the mortgage has not been performed, and that the property is probably insufficient to discharge the mortgage debt." NRS 32.010(2); *Costa Casa Property Management, Inc. v. Thompson*, 2013 WL 3283958 (Nev. 2013) (slip copy) (receivership granted because of a risk of loss, waste, and mismanagement).[3] By that provision's plain language, the Court only needs to recognize a "danger" of loss, not proof of a loss itself.

---

[3] The statute requires a pending foreclosure. Plaintiff has filed the instant lawsuit. Defendant has unfortunately thwarted Plaintiff's foreclosure efforts by diverting Collateral proceeds to bank accounts outside the control of Plaintiff, making it impossible for Plaintiff to foreclose upon the secured property by giving notice to the appropriate bank.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

13

1    Here, it is beyond dispute Defendant has breached the Loan and Security Agreements and

2    placed the Collateral at risk.  Defendant has been in breach of the Credit Agreement since February

3    and owes $31.4 million in principal alone.  Ex. A, ¶25.  Adding insult to injury, Defendant began

4    diverting Collateral proceeds away from the deposit accounts which are subject to Plaintiff's

5    security controls to accounts that are solely under the control of Defendant, and the location and

6    balances of which have not been fully disclosed to Plaintiff.  Ex. A, ¶13; *see also* Ex. A-5, A-6.

7    Plaintiff estimates that Defendant has already redirected approximately $508,000.00 in such

8    proceeds.  Ex. A, ¶15.  Defendant also unlawfully diverted $225,000 to three law firms without

9    Plaintiff's consent, in an effort to improperly bankroll its litigation defenses and possible

10   bankruptcy plans.  Defendant has also diverted resources away such that the payment of basic

11   obligations, including employee salaries, are uncertain, putting its entire business at risk.  Ex. A,

12   ¶21.  Finally, Defendant fired the independent financial advisor that it was obligated to employ

13   under the forbearance arrangements.  Ex. A, ¶24.

14   In sum, the Collateral is clearly at significant "danger" of loss.  This Court and Plaintiff

15   now have no way of knowing whether the Funds are, for example, being diverted to foreign

16   accounts (beyond the jurisdiction of this Court), to wasteful expenditures on hotels, cars, vacations,

17   consumer purchases, or to other illegitimate charges by Defendant or its principals (who recently

18   settled fraud and other causes of action with a promise to pay approximately $6 million dollars).

19   Ex. A, ¶7.

20   On similar facts, courts across the country have not hesitated to appoint a receiver to stop a

21   diversion of funds (i) away from a lender in violation of the loan documents, *see, e.g., New York*

22   *Life Ins. Co. v. Watt West Inv. Corp.*, 755 F. Supp. 287, 292-93 (E.D. Cal. 1991); and (ii) in

23   particular, to halt diversions to the wrongdoer's attorneys undertaken to help in the wrongdoer's

24   defense, *see, e.g., Chase Manhattan Bank v. Turabo Shopping Ctr., Inc.*, 683 F.2d 25, 27 (1st Cir.

25   1982).  Indeed, it is well settled that hard proof of fraud or other misconduct is not required to

26   support a court's discretionary decision to appoint a receiver; instead, the movant must simply

27   present some evidence indicating that fraud or other misconduct may be underway.  *See, e.g., New*

28   *York Life Ins.*, 755 F. Supp. at 293 n.9 (diversion allegation appeared in plaintiff's sworn affidavit);

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

14

1    *Citronelle-Mobile Gathering, Inc. v. Watkins*, 934 F.2d 1180, 1188-89 (11th Cir. 1991)

2    ("egregious" transfers and funneling of money warranted receivership). Here, Defendant's

3    knowing diversion of Funds demands that the Court institute a receivership.

4            (2)     **Plaintiff Is Entitled to a Receiver under NRS 32.010(5).**

5         A receivership is appropriate if an entity is merely "in imminent danger of insolvency."

6    NRS 32.010(5). Under Nevada law, a debtor is insolvent if its debts are "greater than all of the

7    debtor's assets," and by statute, that is presumed true when the debtor is "generally not paying [its]

8    debts as they become due." NRS 112.160.

9         Defendant's actions have all the hallmarks of a company which is on the verge of

10   insolvency. In February 2013, less than fifteen months after Loan origination (and such Loan was

11   itself a workout refinancing), Defendant defaulted on that Loan, prompting the need for

12   forbearance. Ex. A, ¶6. Plaintiff agreed to no fewer than five separate forbearance arrangements

13   over a span of 72 days, *see* Ex. A-3—but Defendant still defaulted. On multiple occasions from

14   mid-June through mid-August 2013, Plaintiff made loans and/or proceeds of Plaintiff's collateral

15   available to Defendant to, among other things, allow it to make payroll. Throughout the summer,

16   Defendant could not pay its Loan obligation to Plaintiff as its payment became due, thereby raising

17   a statutory presumption of insolvency. *See* Ex. A-6. There is no question a receiver is appropriate

18   here because Defendant is plainly in imminent danger of insolvency.

19           (3)     **Plaintiff Is Entitled to a Receiver under NRS 32.010(6).**

20        Even if none of the other statutory or contractual grounds for a receivership were met, NRS

21   32.010(6) permits the Court to appoint a receiver if equity so requires. NRS 32.010(6); *Kraemer v.*

22   *Kraemer*, 79 Nev. 287, 293, 382 P.2d 394, 397 (Nev. 1963) (equity required the appointment of a

23   receiver).

24        When a court sits in equity, it acts on a case-by-case basis, looking at the whole situation in

25   each case, and grants or withholds relief as "good conscience dictates." *Rauscher v. City of*

26   *Lincoln*, 269 Neb. 267, 275, 691 N.W.2d 844, 852 (Neb. 2005); *Stewart v. Hunt*, 303 Mich. 161,

27   166, 5 N.W.2d 737, 739 (Mich. 1942); CJS Equity (2009), §96; CJS Equity (2009), §97. The

28   equity court considers factors which may be irrelevant in actions at law, such as the unfairness of

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

15

the moving party's conduct, its delay in bringing or continuing the action, a preference for allowing the presentation of all claims and defenses, and the hardship created in granting or denying relief. *Katz v. Pierce*, 732 P.2d 92, 93 (Utah 1986); *Warren v. Dixon Ranch Co.*, 123 Utah 416, 419, 260 P.2d 741, 742 (Utah 1953). In exercising its discretion in furtherance of justice, the court must "incline toward granting relief in a doubtful case to the end that the party may have a hearing." *Warren*, 123 Utah at 420, 260 P.2d at 743.

Here, without notice or consent, Defendant stopped making payments on the Loan, fired its independent financial advisor, and diverted Collateral proceeds from protected accounts, in blatant violation of the parties' security and forbearance arrangements. Ex. A, ¶¶13, 24. Defendant has unlawfully transferred $225,000 in Collateral to its and its principals' attorneys. Ex. A, ¶21. Defendant has offered no legitimate justification for such actions, and it is easy to speculate on the many illegitimate reasons why it might divert the Funds to its own purposes. Equity does not just tilt the case in favor of a receivership—it demands such relief.

**C.    Larry Singer is an Appropriate Choice as Receiver.**

The proposed receiver, Larry Singer, is well qualified to act as a Court-appointed receiver over Defendant and Defendant's property. Exhibit A-8 is a copy of Mr. Singer's curriculum vitae. Mr. Singer has almost 20 years experience as a court appointed receiver and bankruptcy trustee, including receiverships involving vacant land, apartment complexes, retail, office and industrial properties. *See* Ex. A-8. His recent receiverships covered, for example, Oquendo Properties LLC, Rainbow Professional Office Park, Stonegate Office Properties, Snappy Cheyenne Convenience Store and restaurant development, Playa Vista Apartments, and Durango Professional Plaza I, Craig Valley Plaza. *Id.* Mr. Singer has also served on the Las Vegas Chamber of Commerce's Council and Board of Trustees, as Chairman of the Lied Institute of Real Estate Studies' Executive Committee, and on the Board of Directors of the United Way. *Id.*

Because of the specialized nature of Defendant's business, Mr. Singer intends to hire an independent contractor to manage many day-to-day activities, pursuant to terms and conditions to be approved by the Court. Mr. Singer has indicated he would retain Jay Stone and other necessary personnel from Hilco Receivables, LLC, a nationally renowned commercial and consumer

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702)383-8888

16

1    accounts receivables portfolio manager. *See* Ex. A-9.

2    Regarding the scope of the receivership, Mr. Singer should be appointed to take possession

3    and control of all of Defendant's property (the "Property"), including without limitation

4    Defendant's personal, tangible and intangible, intellectual and commercial property, cash accounts,

5    and business contracts and goodwill. Mr. Singer should be empowered to, among other things, and

6    as more fully described in the draft Court Order attached as Exhibit B:

7    (1)    Take immediate and exclusive possession of the Property and hold, operate, and

8    manage the Property and Defendant's business; take all commercially reasonable

9    efforts to diligently analyze, evaluate, report with regard to, organize and categorize

10    information relating to the Property and Defendant's business; and preserve the

11    Property and Defendant's business from loss, removal, material injury, destruction,

12    substantial waste, and loss of income therefrom;

13    (2)    Employ agents, employees, attorneys, contractors, management personnel, security,

14    maintenance personnel, and other persons to carry out the receiver's powers and

15    duties, pursuant to terms and conditions set forth in the draft Court Order attached

16    as Exhibit B;

17    (3)    Take possession and control of any and all funds and accounts (other than the

18    accounts subject to Plaintiff's deposit account control agreements), and any funds

19    maintained or held by Defendant and all of Defendant's subsidiaries and affiliated

20    companies with respect to the operation, administration, leasing, supervision, and

21    management of the Property and Defendant's business, including funds advanced by

22    Plaintiff, and employ such funds only in the administration, management, and

23    supervision of the Property and Defendant's business;

24    (4)    Take commercially reasonable steps to cause the Property and Defendant's business

25    to comply with applicable local, county, state, and federal laws, ordinances, codes,

26    regulations, and other requirements, and to pay taxes, assessments, payroll, utility,

27    and other fees generated by and associated with the Property and Defendant's

28    business out of the funds maintained by the Receiver;

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

17

(5)   Enter into any and all contracts, leases or agreements for the benefit of the Property and Defendant's business and terminate, as appropriate, any and all contracts for cause or pursuant to the terms of said contracts or leases;

(6)   Initiate, prosecute, defend, and/or compromise all legal proceedings and claims involving the Property and Defendant's business as the receiver deems desirable or necessary, including suits for any payments now due or hereinafter due, and employ counsel for the protection or proper care of the Property and Defendant's business; and

(7)   Exercise any and all other powers specifically enumerated in the Proposed Order Appointing Receiver to be filed on or after the date of this Petition.

Mr. Singer's authority should include the additional powers set forth in the draft Court Order attached as Exhibit B.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court appoint Mr. Larry Singer as Receiver for Defendant, and grant the Receiver the authority to perform the actions described herein.

DATED August ⅂⅂, 2013

LIONEL SAWYER & COLLINS

By: _____
Rodney M. Jean, NBN 1395
Ryan A. Andersen, NBN 12321
Mark J. Gardberg, NBN 10879

*Attorneys for Petitioner*
*BMO Harris Bank N.A.*

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

18

# EXHIBIT 4

# EXHIBIT 4

# EXHIBIT 4

Murray Murphy Moul + Basil LLP

## Re: BMO v. WFI Litigation

1 message

**Mark Finston** <mfinston2@cox.net>                                    Wed, Sep 4, 2013 at 7:36 PM
To: "Hadden, James B." <JHadden@porterwright.com>
Cc: Matt Zirzow <Matt@lzlawnv.com>, Phil Nick <pnick@franklinresearch.net>, "<basil@mmmb.com>"
<basil@mmmb.com>, "<murray@mmmb.com>" <murray@mmmb.com>, "FCooper@westernfundinginc.com"
<FCooper@westernfundinginc.com>, "Katherine Cooper (kcooper@westernfundinginc.com)"
<kcooper@westernfundinginc.com>, Greg Garman <ggarman@gordonsilver.com>

I as well declined all motions for a bk. I also called for the dismissal of Matt Zirzow

Mark Finston

Sent from my iPhone
Kind regards
Mark

On Sep 4, 2013, at 4:12 PM, "Hadden, James B." <JHadden@porterwright.com> wrote:

I neither authorized, was consulted nor approved.

On Sep 4, 2013, at 6:47 PM, "Matt Zirzow" <Matt@lzlawnv.com> wrote:

For your information and records, attached please find voluntary petitions for relief
under chapter 11 of the Bankruptcy Code filed earlier today in the U.S. Bankruptcy
Court for the District of Nevada, Las Vegas on behalf of Western Funding
Incorporated, Western Funding Inc. of Nevada, and Global Track GPS, LLC. I have also
attached the applicable notices of bankruptcy for each of these debtors as well. My
firm is proposed general reorganization counsel to the above-referenced debtors as
debtors in possession. To the extent you are contending that the approval of Mr.
Finston or Mr. Hadden were required to authorize these filings, that they are valid
Board members of one or more of the foregoing entities, that these filings could not
be filed over an objection by them due to the facts and circumstances present in
these cases, and/or that these filings were not in the best interests of these
companies, those contentions are disputed. Additionally, I would encourage
everyone to direct future actions through the Bankruptcy Court and that legal
process, not arguments via e-mail. Thanks.


<image003.jpg>

Matthew C. Zirzow, Esq.

LARSON & ZIRZOW, LLC

810 S. Casino Center Blvd., Suite 101

Las Vegas, Nevada 89101

Direct: (702) 476-5941

Office: (702) 382-1170

Facsimile: (702) 382-1169

www.lzlawnv.com


<WFIN Notice of Bankruptcy.pdf>

<#1 2013-09-04 Petition of WFIN.PDF>

<#1 2013-09-04 Petition of WFI.PDF>

<WFI Notice of Bankruptcy.pdf>

<GPS Notice of Bankruptcy.pdf>

<#1 2013-09-04 petition of GPS.PDF>


**James B. Hadden**

614-227-2168    614-227-2100    800-533-2794    jhadden@porterwright.com

# porterwright


**********Notice from Porter Wright Morris & Arthur LLP**********
This message may be protected by the attorney-client privilege. If you believe that it has been sent to
you in error, do not read, print or forward it. Please reply to the sender that you have received the
message in error. Then delete it. Thank you.

To comply with certain U.S. Treasury regulations, we inform you that any federal tax advice contained in
this message, including attachments, is not a covered opinion as described in Treasury Department
Circular 230 and therefore cannot be relied upon to avoid any tax penalties or to support the promotion
or marketing of any federal tax transaction.
*******************End of Notice*******************

# EXHIBIT 5

# EXHIBIT 5

# EXHIBIT 5

Murray Murphy Moul ╬ Basil ʟʟᴘ

Brian Basil <basil@mmmb.com>

## Re: BMO v. WFI Litigation

1 message

**Phil Nick** <pnick@franklinresearch.net>                                   Fri, Aug 23, 2013 at 3:04 PM
To: Matt Zirzow <Matt@lzlawnv.com>
Cc: "Basil Brian A." <basil@mmmb.com>, "Murray Joseph F." <murray@mmmb.com>

Whether you find Brian's email cryptic or not is not my concern. I do suggest, however, that you read the cases cited. For your information and records, the Class B managers are not in favor of a bankruptcy filing and have voted against such a filing on behalf of Western, Harbor and or GPS on several occasions. The board is deadlocked on this matter, and the case law addresses your responsibilities to the company and all of its creditors and members under these circumstances.

As to why you were hired, I have been provided no credible information on your engagement. Please forward your engagement letter to me, the Class B managers, or Basil. Mr. Garman was also introduced to our board as the Company's so-called "bankruptcy counsel" and latter ended up representing the Coopers personally.

As for Garman, we were told by Mace that he no longer represented the Coopers. This was shortly before Mace resigned as company counsel, the forth firm/attorney to do so.

I expect your engagement letter by Monday.

-from Phil Nick's mobile

On Aug 23, 2013, at 2:38 PM, Matt Zirzow <Matt@lzlawnv.com> wrote:

> Mssrs. Basil, Murray, Nick, Hadden and Finston: For your information and records, please see attached litigation commenced by BMO against WFI earlier this week in Nevada State Court. In addition to the complaint, there is an application for the appointment of a receiver, with a hearing on the receiver application presently set on shortened time for September 3, 2013.

> Additionally, should you have anything you need to discuss with or relay to me in my capacity as potential workout or reorganization counsel for WFI and GPS, please put it in writing and be specific. For example, sending me a cryptic e-mail with some cases attached to it and asking me to call you is not specific or helpful.

> If you have something with respect to the Coopers personally, I would ask that you please direct that to their personal counsel, Greg Garman of the Gordon Silver law firm (who is copied on this e-mail along with the Coopers). I am not the Coopers' personal counsel and have only been brought in to assist WFI and GPS as company counsel with a potential workout or bankruptcy.

> <image002.jpg>

Murray Murphy Moul + Basil LLP Mail – Re: BMO v. WFI Litigation

9/9/13, 9:31 PM

Matthew C. Zirzow, Esq.

LARSON & ZIRZOW, LLC

810 S. Casino Center Blvd., Suite 101

Las Vegas, Nevada 89101

Direct:  (702) 476-5941

Office:  (702) 382-1170

Facsimile:  (702) 382-1169

www.lzlawnv.com

<Complaint - filed & stamped 08-20-13.pdf>

<13 08 21 Petition for Appointment of a Receiver Signed by Judge Denton.pdf>

<Petition Exhibits.pdf>

9/9/13, 9:33 PM

Murray Murphy Moul + Basil LLP

## Some Cases
1 message

**Brian Basil** <basil@mmmb.com>                                        Thu, Aug 22, 2013 at 9:39 PM
To: Matt Zirzow <Matt@lzlawnv.com>, "macej@gtlaw.com" <macej@gtlaw.com>
Bcc: Joseph Murray <murray@mmmb.com>, Phil Nick <pnick@franklinresearch.net>

Matt/Jim, I left each of you a voice message today. Please take a look at the attached and call me to discuss. Thanks

--
Brian A. Basil
Murray Murphy Moul + Basil LLP
1533 Lake Shore Drive
Columbus, Ohio 43204
(614) 488-0400 x4
(fax) 488-0401
basil@mmmb.com
www.mmmb.com

**2 attachments**

**In re  Blue Pine Group Inc., 448.pdf**
152K

**In re  Blue Pine Group Inc., 457 (1).pdf**
157K

# EXHIBIT 6

# EXHIBIT 6

# EXHIBIT 6

## AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT

### Harbor Structured Finance LLC

### A Delaware Limited Liability Company

### AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT

THIS AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT (this "Agreement") of Harbor Structured Finance LLC f/k/a Harbor Truck Structured Finance One LLC, a Delaware limited liability company (the "Company"), is dated to be effective as of October 11, 2010 (the "Effective Date") by and among the undersigned Members (the "Members").

### RECITALS

WHEREAS, the initial members of the Company executed that certain Operating Agreement of the Company dated as of March 1, 2007 (the "Initial Operating Agreement");

WHEREAS, the Members desire to enter into this Agreement to make certain desirable changes to the Initial Operating Agreement; and

WHEREAS, this Agreement replaces and supersedes the Initial Operating Agreement in its entirety.

### AGREEMENT

NOW, THEREFORE, in consideration of the mutual covenants and subject to the terms and conditions of this Agreement, the Members do agree as set forth below.

### SECTION 1.    THE LIMITED LIABILITY COMPANY

1.1    *Formation.* The Company was formed as a limited liability company under the Delaware Limited Liability Company Act, as amended from time to time (the "Act") on May 3, 2006. The Members agree to file with the appropriate agency within the State of Delaware charged with processing and maintaining such records all documentation required for the formation and continuation of the Company. The rights and obligations of the parties are as provided in the Act except as otherwise expressly provided in this Agreement.

1.2    *Name.* The business of the Company will be conducted under the name Harbor Structured Finance L.L.C., or such other name upon which the Board of Managers may agree.

1.3    *Purpose.* The purpose of the Company is to own 100% of the stock in Western Funding Incorporated, a California corporation ("Western") and to engage in any lawful act or activity for which a limited liability company may be formed within the State of Delaware.

1.4    *Office.* The Company will maintain its principal business office within the State of Ohio at the following address: 2000 W. Henderson Rd., Suite 130, Columbus, OH 43220, or at such other location as shall be specified from time to time by the Board of Managers.

1.5    *Registered Agent.* CT Corporation is the Company's initial registered agent in the State of Delaware, and the registered office of the Company in the State of Delaware is Corporation Trust Center, 1209 Orange Street, in the City of Wilmington, Delaware 19801. The Board of Managers may from time to time change the registered agent or the registered office of the Company.

1.6    *Term.* The term of the Company commenced on May 3, 2006 and shall continue perpetually unless sooner terminated as provided in this Agreement.

1.7    *Names and Addresses of Members.* The Members' names and addresses are attached as Schedule 1 to this Agreement, as such Schedule 1 may be amended from time to time by agreement of the Members.

1.8    *Admission of Additional Members.* Except as otherwise expressly provided in this Agreement, no additional members may be admitted to the Company through issuance by the Company of a new interest in the Company without the prior unanimous written consent of the Members. Any issuance by the Company of any new interest in the Company shall dilute the interests of the then-existing Members ratably in accordance with their interests in the Company. Any proposed additional member shall execute and deliver to the Company a counterpart to this Agreement agreeing to be bound by the terms of this Agreement.

1.9    *Defined Terms.* Initially capitalized terms used in this Agreement and not otherwise defined herein shall have the meanings specified in this Section 1.9. When used in this Agreement, the following terms shall have the following meanings:

"Class A Interests" means the interests designated as "Class A Interests" in Section 2.1.

"Class A Manager" means a Manager appointed by the Class A Members.

"Class A Member" means a Member owning Class A Interests.

"Class B Interests" means the interests designated as "Class B Interests" in Section 2.1.

"Class B Manager" means a Manager appointed by the Class B Members.

"Class B Member" means a Member owning Class B Interests.

"Class B Preferred Capital" means, with respect to each Class B Member, an amount equal to the product of (i) such Class B Member's Class B Participating Percentage, multiplied by (ii) Three Million Dollars ($3,000,000).

"Class B Participating Percentage" means the percentage equal to the quotient of (i) the Class B Interests actually held by a Member, divided by (ii) the total Class B Interests actually outstanding.

"Class B Preferred Return" means, with respect to each Class B Member, a cumulative return of seven and one-half percent (7.5%) on such Class B Member's Unreturned Class B Preferred Capital, compounded semi annually. Such Class B Preferred Return shall accrue whether or not distributions have been declared and whether or not there are profits, surplus, or other funds of the Company legally available for payment of such distributions. All distributions constituting Class B Preferred Return accruing on the Class B Interests shall be paid by October 11, 2014.

"Interests" means the limited liability company interests (as defined in the Act) that are designated by the Company as Class A Interests and Class B Interests in accordance with Section 2.1.

"Majority" means, (i) as to any matter requiring or permitting a vote or other action of the Members or the Class A Members or Class B Members voting as separate classes, Members or Class A Members or Class B Members, as the case may be, who, in the aggregate, own greater

2

than 50% of the Interests, Class A Interests, or Class B Interests, as the case may be, voting on such matter and (ii) as to any matter requiring or permitting a vote or other action of the Board of Managers, the affirmative vote of Managers who constitute at least 51% of the Managers then in office. Whenever an action is required to be taken by the Members or the Managers, unless otherwise provided in this Agreement, the Company's Certificate of Formation, or the Act, such action shall require the action of a Majority of the Members or the Managers then in office

"Members" has the meaning given such term in the preamble and shall include the Class A Members and the Class B Members.

"Permanent Disability" means the failure of a Member to perform his/her duties and responsibilities hereunder or as an officer of the Company or Western for a total of twelve (12) weeks or more, not including approved vacations or holidays, regardless of whether such days are consecutive, during any fifty two (52) consecutive weeks.

"Unreturned Class B Preferred Capital" means, with respect to each Class B Member, an amount equal to the remainder of (i) such Class B Member's Class B Preferred Capital, minus (ii) any distributions previously made to such Class B Member pursuant to Section 3.2(b), but excluding any tax distributions made to such Class B Member.

## SECTION 2.   INTERESTS; CAPITAL CONTRIBUTIONS

2.1     *Interests.* The Interests in the Company shall be divided into two (2) classes, designated as Class A Interests and Class B Interests. Fifty-five percent (55%) of the Interests shall be Class A Interests and shall be held by Frederick A. Cooper and Katherine H. Cooper in such proportion as they shall determine among themselves. Forty-five percent (45%) of the Interests shall be Class B Interests and shall be held by Philipp D. Nick, members of his family, or trusts set up for their benefit, as Philipp D. Nick shall determine in his sole and absolute discretion.

2.2     *Initial Contributions.* Upon formation of the Company, the Members initially contributed or agreed to contribute or cause to be contributed to the Company capital as described in Schedule 2 attached to this Agreement.

2.3     *Additional Contributions.* No Member shall be obligated to make any additional contribution to the Company's capital without the prior unanimous written consent of the Members.

2.4     *No Interest on Capital Contributions.* Members are not entitled to interest or other compensation for or on account of their capital contributions to the Company except to the extent, if any, expressly provided in this Agreement.

## SECTION 3.   ALLOCATION OF PROFITS AND LOSSES; DISTRIBUTIONS

3.1     *Profits/Losses.* For financial accounting and tax purposes, the Company's net profits or net losses shall be determined on an annual basis and shall be allocated to the Members in proportion to each Member's relative ownership interest in the Company as set forth in Schedule 2 as amended from time to time in accordance with U.S. Department of the Treasury Regulation 1.704-1.

3.2     *Distributions.* The Board of Managers shall determine and distribute available funds semi-annually or at more frequent intervals as they see fit. Available funds, as referred to herein, shall mean the net cash of the Company available after appropriate provision for expenses and liabilities, as determined by the Board of Managers. Distributions, if any, shall be distributed to the Members in the following order and priority:

3

(a)     First, to the Class B Members, pro rata in accordance with their respective Class B Participating Percentages, until each Class B Member has received distributions pursuant to this Section 3.2(a) equal to such Class B Member's accrued but unpaid Class B Preferred Return;

(b)     Second, to the Class B Members, pro rata in accordance with their respective Class B Participating Percentages, until each Class B Member has received distributions pursuant to this Section 3.2(b) equal to such Class B Member's Unreturned Class B Preferred Capital; and

(c)     Thereafter, to the Members in proportion to each Member's relative ownership interest in the Company.

3.3     *Distribution of Liquidation Proceeds.* Distributions in liquidation of the Company shall be made in accordance with the positive capital account balances pursuant to U.S. Department of the Treasury Regulation 1.704.1(b)(2)(ii)(b)(2). To the extent a Member shall have a negative capital account balance, there shall be a qualified income offset, as set forth in U.S. Department of the Treasury Regulation 1.704.1(b)(2)(ii)(d). Thereafter, distributions in liquidation of the Company shall be made to the Members in accordance with Section 3.2.

3.4     *No Right to Demand Return of Capital.* No Member has any right to any return of capital or other distribution except as expressly provided in this Agreement. No Member has any drawing account in the Company.

SECTION 4.   INDEMNIFICATION

The Company shall indemnify any person who was or is a party defendant or is threatened to be made a party defendant, pending or completed action, suit or proceeding, whether civil, criminal, administrative, or investigative (other than an action by or in the right of the Company) by reason of the fact that he is or was a Member, Manager, officer, employee or agent of the Company, or is or was serving at the request of the Company, against expenses (including attorney's fees), judgments, fines, and amounts paid in settlement actually and reasonably incurred in connection with such action, suit or proceeding if the Members determine that he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interest of the Company, and with respect to any criminal action proceeding, has no reasonable cause to believe his/her conduct was unlawful. The termination of any action, suit, or proceeding by judgment, order, settlement, conviction, or upon a plea of "no lo contendere" or its equivalent, shall not in itself create a presumption that the person did or did not act in good faith and in a manner which he reasonably believed to be in the best interest of the Company, and, with respect to any criminal action or proceeding, had reasonable cause to believe that his/her conduct was lawful.

SECTION 5.   POWERS AND DUTIES OF MEMBERS

5.1     *Participation in Management.* The Members, in their capacities as such, shall not participate in the management or control of the Company's business, transact any business for the Company, or have the power to act for, speak on behalf of, or bind the Company, except as otherwise expressly set forth herein and except to the extent set forth in the Company's Certificate of Formation or as required by the Act, said powers being vested solely and exclusively in the Board of Managers. The Members may have other business interests and may engage in other activities in addition to those relating to the Company, provided that such activities are not competitive with the Company's business. Neither any Member nor, except as required by the Act, the Company shall have any right, by virtue of this Agreement, to share or participate in such other investments or activities of the Members or to the income or proceeds derived from such investments or activities.

4

5.2     *Meetings.* Meetings of the Members shall be held on an annual basis or more frequently as specified by the Board of Managers from time to time. A special meeting of the Members may be called for any purpose at any time by the Board of Managers or by Members holding not less than 25% of the Interests. Meetings of the Members shall be held at the principal office of the Company unless otherwise agreed in writing by all the Members.

5.3     *Notice of Meeting.* Written notice stating the place, day and hour of the meeting and, in the case of a special meeting, the purpose for which the meeting is called, shall be delivered not less than ten (10) nor more than sixty (60) days before the date of the meeting, personally, by facsimile or by mail, by or at the direction of the Board of Managers or the Members calling the meeting, to each Member entitled to vote at such meeting.

5.4     *Voting; Decisions by Members.* The affirmative vote or written consent of Members holding a Majority of the Interests present at any meeting thereof shall be the act of the Members with respect to any matter considered at any meeting of the Members, unless the vote of another percentage is required by the Act, the Company's Certificate of Formation, or this Agreement.

5.5     *Proxies.* A Member may appoint a proxy to vote or otherwise act for such Member at any meeting of the Members by signing an appointment form and delivering it to the person so appointed. Such proxy shall be filed with the Board of Managers before or at the time of the meeting. Unless otherwise provided in the proxy, any proxy may be revoked at any time prior to the vote pursuant to such proxy by written notice delivered to the Board of Managers, and no proxy shall be valid after six (6) months from the date of its execution.

5.6     *Action without Meeting.* Any action required or permitted to be taken at a meeting of the Members may be taken without a meeting and without a vote if a written consent describing the action so taken is signed by the Members entitled to vote thereon and holding at least the number of Interests that would be necessary to authorize or take such action at a meeting of the Members. If such consent is signed by less than all Members, the Board of Managers shall deliver prompt written notice of the taking of such action without a meeting to those Members who did not sign such consent.

5.7     *Electronic Participation.* Any Member may participate and act at any meeting through the use of a conference telephone or other communications equipment by means of which all persons participating in the meeting can hear each other.

5.8     *Withdrawal by a Member.* A Member has no power to withdraw from the Company, except as otherwise provided in Section 9.

## SECTION 6. BOARD OF MANAGERS

6.1     *Management Vested in the Board of Managers.* The business, property and affairs of the Company shall be managed exclusively by a Board of Managers (collectively, the "Board of Managers" and individually a "Manager"). Except for situations in which the approval of the Members is expressly required by this Agreement, the Company's Certificate of Formation, or the Act, the Board of Managers shall have full, complete and exclusive authority, power, and discretion to manage and control the business, property and affairs of the Company, to make all decisions regarding those matters and to perform any and all other acts or activities customary or incident to the management of the Company's business, property and affairs, including determining the Company's business strategies, financing strategies, accounting policies and procedures, and practices it deems necessary. In addition, it is understood and agreed that the Board of Managers shall have all of the rights and powers of a manager as provided in the Act and as otherwise provided by law, and any action taken by the Board of Managers or its authorized agent or agents shall constitute the act of and serve to bind the Company.

5

6.2    *Authority of the Board of Managers.* Subject to the foregoing, the Board of Managers acting only by a Majority is hereby granted the right, power and authority to do on behalf of the Company all things, which, in its sole judgment, are necessary, proper or desirable to carry out the aforementioned duties and responsibilities. In dealing with the Board of Managers, any Manager or any authorized agent or agents acting on behalf of the Company, no person shall be required to inquire into the authority of the Board of Managers to bind the Company. Persons dealing with the Company are entitled to rely conclusively on the power and authority of the Board of Managers as set forth in this Agreement. No Manager acting individually has the power or authority to bind the Company.

6.3    *Manager Duties.* The Managers shall not be required to manage the Company as the Managers' sole and exclusive function and the Managers may have other business interests and may engage in other activities in addition to those relating to the Company, provided that such activities are not competitive with the Company's business. Neither any Member nor, except as required by the Act, the Company shall have any right, by virtue of this Agreement, to share or participate in such other investments or activities of the Managers or to the income or proceeds derived from such investments or activities. The Managers shall perform such duties and engage in such activities, and only such duties and activities, as are (A) specified in this Agreement, (B) directed in writing from time to time by the Members in a manner not contrary to the terms hereof related ministerial activities. No Manager shall be answerable or accountable hereunder under any circumstances, except for his own willful misconduct or gross negligence. In particular, but not by way of limitation:

(i)    the Managers shall not be liable with respect to any action taken or omitted to be taken by it in accordance with the instructions of the Members in accordance with this Agreement;

(ii)    no provision of this Agreement shall require the Managers to expend or risk funds or otherwise incur any financial liability in the performance of any of their rights or powers hereunder if the Managers shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured or provided to them; and

(iii)    no Manager shall be liable for the default or misconduct of any Member or any other Manager and no Manager shall have any obligation or liability to perform the obligations of any Member or any other Manager under this Agreement.

6.4    *Appointment of Officers.* The Board of Managers may appoint officers of the Company and of Western at such time, for such term, with such power and authority and for such compensation and other benefits (if any), all as the Board of Managers shall determine in its discretion. Each officer shall hold such officer's office for the term for which such officer is appointed. Any individual may hold any number of offices. No officer need be a Member, resident of any state or citizen of the United States. The officers shall perform such duties and have such powers as the Board of Managers shall determine or delegate from time to time. Unless the Board of Managers decides otherwise, if the title of an officer is one commonly used for officers of a business corporation, the assignment of such title shall constitute the delegation to such officer of the authority and duties that are normally associated with that office, subject to (i) any specific delegation of authority and duties made to such officer by the Board of Managers pursuant to this section, or (ii) any delegation of authority and duties made to the Board of Managers pursuant to other provisions of this Agreement. Any officer may resign as such at any time. Such resignation shall be made in writing and shall take effect at the time specified therein, or if no time be specified, at the time of its receipt by the Board of Managers. The acceptance of a resignation shall not be required to make it effective, unless expressly so provided in the resignation. Any officer may be removed, either with or without cause, by the Board of Managers whenever in its judgment the best interests of the Company or Western will be served thereby;

6

provided, however, that such removal shall be without prejudice to the contract rights, if any, of the person so removed. Designation of an officer shall not of itself create contract rights. Initially, the officers of Western shall be as follows: Frederick A. Cooper – President and Chief Executive Officer; and Katherine H. Cooper – Executive Vice President and Chief Operating Officer.

6.5    *Delegation of Functions.* Any of the duties and responsibilities of the Board of Managers under this Agreement may be delegated, assigned or subcontracted by the Board of Managers, on whatever terms and conditions may be acceptable to the Board of Managers at any time, to any person, who in the judgment of the Board of Managers is capable of performing the same. If the Board of Managers assigns, delegates or subcontracts any of its duties and responsibilities hereunder, the Board of Managers shall continue to be primarily responsible for the fulfillment of all of the obligations as set forth herein.

6.6    *Reimbursement of Expenses.* Each Manager and officer shall be entitled to reimbursement from the Company of all expenses of or for the benefit of the Company reasonably incurred and paid by any such Manager or officer as such on behalf of the Company so long as such expenditures are authorized, ratified or otherwise approved by the Board of Managers.

6.7    *Composition of the Board of Managers.*

(a)    The Board of Managers shall initially consist of two (2) Class A Managers and two (2) Class B Managers for a total of four (4) Managers; provided, however, that at any time following the occurrence of certain triggering events as unanimously agreed to by the Members (each, a "Triggering Event"), the Class B Members shall have the right to appoint one (1) additional Class B Manager (a total of three (3) Class B Managers appointed by the Class B Members) for a total of five (5) Managers.

(b)    If at any time either Frederick A. Cooper or Katherine H. Cooper is no longer employed by Western for any reason, the Class A Members shall have the right to appoint only one (1) Class A Manager and the Class A Members shall, at the request of the Class B Members, promptly remove a Class A Manager from the Board of Managers so that only one (1) Class A Manager is then on the Board of Managers.

6.8    *Removal of Managers, Vacancies.* A Manager may be removed by the Members in the same manner the Manager was appointed according to the terms of Section 6.7. Any vacancy on the Board of Managers shall be filled by the Members that had appointed the individual to the position that has become vacant.

6.9    *Resignation of Manager.* Any Manager of the Company may resign for any reason by giving written notice to the Board of Managers of the Company. The resignation of a Manager shall take effect upon receipt of notice thereof or at such later time as shall be specified in such notice; and, unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective. The resignation of a Manager who is also a Member shall not affect the Manager's rights as a Member and shall not constitute a dissociation of a Member.

6.10    *Manager Compensation.* Managers shall receive such fees or other compensation for their services as shall be determined from time to time by the Board of Managers (provided such determination does not constitute gross negligence, willful misconduct, fraud or a wasting of Company assets by the Managers).

6.11    *Tax Elections.* The Board of Managers may make any tax elections for the Company allowed under the Code or the tax laws of any state or other jurisdiction having taxing jurisdiction over the Company. Anything to the contrary herein notwithstanding, the Company shall not elect to be taxed as a corporation under and pursuant to Regulations Section 301.7701-

7

3.  Katherina H. Cooper is hereby designated the "tax matters partner" of the Company (as such term is defined for purposes of Code Section 6231).

6.12    *Limitation of Liability*.  No Manager (nor the Member who designated such Manager to serve on the Board of Managers) shall be personally liable for monetary damages to the Company or any Member for breach of fiduciary duty as a Manager except (i) for any breach of the Manager's duty of loyalty to the Company or its Members; (ii) for acts or omissions not in good faith or which involve intentional misconduct or knowing violation of law; (iii) the payment by the Company of any unlawful distribution to any Member or the unlawful redemption or repurchase by the Company of any of its Units or (iv) for any transaction from which the Manager derives an improper personal benefit.  Except as otherwise required by the Act, the Members specifically acknowledge, that neither the "tax matters partner" designated in Section 6.11 hereof nor any Manager shall be liable, responsible or accountable in damages or otherwise to the Company or any Member with respect to any action taken by the Board of Managers or such "tax matters partner" in conjunction with an audit of the Company for income tax or other purposes.

6.13    *Meetings*.  Meetings of the Board of Managers shall be held at such times as determined by the Board of Managers.  A special meeting of the Board of Managers may be called for any purpose at any time with the consent of any two Managers.  Meetings of the Board of Managers shall be held at the principal office of the Company unless otherwise agreed in writing by all Managers then in office.

6.14    *Notice of Meeting*.  Written notice stating the place, day and hour of the meeting and, in the case of a special meeting, the purpose for which the meeting is called, shall be delivered not less than two (2) nor more than thirty (30) days before the date of the meeting, personally, by facsimile or by mail, by or at the direction of the Board of Managers or the Managers calling the meeting, to each Manager entitled to vote at such meeting.

6.15    *Voting*.

(a)    At any time there are three (3) or fewer Managers then in office, the affirmative vote of all Managers then in office shall be the act of the Board of Managers on any matter at any meeting of the Board of Managers, except as otherwise required by the Act, the Company's Certificate of Formation or this Agreement.

(b)    At any time there are more than three (3) Mangers then in office, the affirmative vote of a Majority of the Managers then in office shall be the act of the Board of Managers on any matter at any meeting of the Board of Managers, except as otherwise required by the Act, the Company's Certificate of Formation or this Agreement.

6.16    *Proxies*.  A Manager may appoint a proxy to vote or otherwise act for such Manager at any meeting of the Board of Managers by signing an appointment form and delivering it to the person so appointed.  Such proxy shall be filed with the Board of Managers before or at the time of the meeting.  Unless otherwise provided in the proxy, any proxy may be revoked at any time prior to the vote pursuant to such proxy by written notice delivered to the Board of Managers, and no proxy shall be valid after six (6) months from the date of its execution.

6.17    *Action without Meeting*.  Any action required or permitted to be taken at a meeting of the Board of Managers may be taken without a meeting and without a vote if a written consent describing the action so taken is signed by all of the Managers.

6.18    *Electronic Participation*.  Any member of the Board of Managers may participate and act at any meeting through the use of a conference telephone or other communications equipment by means of which all persons participating in the meeting can hear each other.

8

SECTION 7.    SALARIES, REIMBURSEMENT, AND PAYMENT OF EXPENSES

7.1    *Organization Expenses.* All expenses incurred in connection with organization of the Company will be paid by the Company.

7.2    *Salary.* No salary will be paid to a Member for the performance of his or her duties under this Agreement unless the salary has been approved in writing by a Majority of the Members.

7.3    *Legal and Accounting Services.* The Company may obtain legal and accounting services to the extent reasonably necessary for the conduct of the Company's business.

SECTION 8.    BOOKS OF ACCOUNT, ACCOUNTING REPORTS, TAX RETURNS,
                       FISCAL YEAR, BANKING

8.1    *Method of Accounting.* The Company will use the method of accounting previously determined by the Members for financial reporting and tax purposes.

8.2    *Fiscal Year; Taxable Year.* The fiscal year and the taxable year of the Company is the calendar year.

8.3    *Capital Accounts.* The Company will maintain a Capital Account for each Member on a cumulative basis in accordance with federal income tax accounting principles.

8.4    *Banking.* All funds of the Company may be deposited in a separate bank account or in an account or accounts of a savings and loan association in the name of the Company as determined by the Members. Company funds will be invested or deposited with an institution, the accounts or deposits of which are insured or guaranteed by an agency of the United States government.

SECTION 9.    TRANSFER OF MEMBERSHIP INTEREST

9.1    *Sale or Encumbrance Prohibited.* Except as otherwise permitted in this Agreement, no Member may voluntarily or involuntarily transfer, sell, convey, encumber, pledge, assign, or otherwise dispose of (collectively, "Transfer") an interest in the Company without the prior written consent of a majority of the other non-transferring Members determined on a per capita basis.

9.2    *Right of First Refusal.* Notwithstanding Section 9.1, a Member may transfer all or any part of the Member's interests in the Company as follows:

9.2.1    The Member desiring to transfer his or her interest first must provide written notice (the "Notice") to the other Members, specifying the price and terms on which the Member is prepared to sell the interest (the "Offer").

9.2.2    For a period of 30 days after receipt of the Notice, the Members may acquire all, but not less than all, of the interests at the price and under the terms specified in the Offer. If the other Members desiring to acquire the interest cannot agree among themselves on the allocation of the interest among them, the allocation will be proportional to the interests of those Members desiring to acquire the interest.

9.2.3    Closing of the sale of the interest will occur as stated in the Offer; provided, however, that the closing will not be less than 45 days after expiration of the 30-day notice period.

9.2.4    If the other Members fail or refuse to notify the transferring Member of their

9

desire to acquire all of the Interest proposed to be transferred within the 30-day period following receipt of the Notice, then the Members will be deemed to have waived their right to acquire the interest on the terms described in the Offer, and the transferring Member may sell and convey the interest consistent with the Offer to any other person or entity; provided, however, that notwithstanding anything in Section 9.2 to the contrary, should the sale to a third person be at a price or on terms that are more favorable to the purchaser than stated in the Offer, then the transferring Member must reoffer the sale of the interest to the remaining Members at that other price or other terms; provided, further, that if the sale to a third person is not closed within six months after the expiration of the 30-day period describe above, then the provisions of Section 9.2 will again apply to the Interest proposed to be sold or conveyed.

9.2.5   Notwithstanding the foregoing provisions of Section 9.2, should the sole remaining Member be entitled to and elect to acquire all the interests of the other Members of the Company in accordance with the provisions of Section 9.2, the acquiring Member may assign the right to acquire the interests to a spouse, lineal descendent, or an affiliated entity if the assignment is reasonably believed to be necessary to continue the existence of the Company as a limited liability company.

9.3   *Substituted Parties.* Any transfer in which the Transferee becomes a fully substituted Member is not permitted unless and until:

(1)   The transferor and assignee execute and deliver to the Company the documents and instruments of conveyance necessary or appropriate in the opinion of counsel to the Company to effect the transfer and to confirm the agreement of the permitted assignee to be bound by the provisions of this Agreement; and

(2)   The transferor furnishes to the Company an opinion of counsel, satisfactory to the Company, that the transfer will not cause the Company to terminate for federal income tax purposes or that any termination is not adverse to the Company or the other Members.

9.4   *Death, Incompetency, Permanent Disability, or Bankruptcy of Member.* On the death, adjudicated incompetence, Permanent Disability, or bankruptcy of a Member, unless the Company exercises its rights under Section 9.5, the successor in interest to the Member (whether an estate, bankruptcy trustee, or otherwise), or the guardian or personal representative of an incompetent Member, or the Permanently Disabled Member, as the case may be, will receive only the economic right to receive distributions whenever made by the Company and the Member's allocable share of taxable income, gain, loss, deduction, and credit (the "Economic Rights") unless and until a majority of the other Members determined on a per capita basis admit the transferee as a fully substituted Member in addition to compliance with the provisions of Section 9.3.

9.4.1   Any transfer of Economic Rights pursuant to Section 9.4 will not include any right to participate in management of the Company, including any right to vote, consent to, and will not include any right to information on the Company or its operations or financial condition. Following any transfer of only the Economic Rights of a Member's Interest in the Company, the transferring Member's power and right to vote or consent to any matter submitted to the Members will be eliminated, and the Ownership interests of the remaining Members, for purposes only of such votes, consents, and participation in management, will be proportionately increased until such time, if any, as the transferee of the Economic Rights becomes a fully substituted Member.

9.5   *Death Buy Out.* Notwithstanding the foregoing provision of Section 9, the Members covenant and agree that on the death of any Member, the Company, at its option, by providing written notice to the estate of the deceased Member within 180 days of the death of the

10

Member, may purchase, acquire, and redeem the interest of the deceased Member in the Company pursuant to the provision of Section 9.5.

9.5.1    The value of each Member's interest in the Company will be determined on the date this Agreement is signed, and the value will be endorsed on Schedule 3 attached and made a part of this Agreement. The value of each Member's interest will be redetermined unanimously by the Members annually, unless the Members unanimously decide to redetermine those values more frequently. The Members will use their best efforts to endorse those values on Schedule 3. The purchase price for a decedent Member's interest conclusively is the value last determined before the death of such Member; provided, however, that if the latest valuation is more than two years before the death of the deceased Member, the provisions of Section 9.5.2 will apply in determining the value of the Member's interest in the Company.

9.5.2    If the Members have failed to value the deceased Member's interest within the prior two-year period, the value of each Member's interest in the Company on the date of death, in the first instance, will be determined by mutual agreement of the surviving Members and the personal representative of the estate of the deceased Member. If the parties cannot reach an agreement on the value within 30 days after the appointment of the personal representative of the deceased Member, then the surviving Members and the personal representative each must select a qualified appraiser within the next succeeding 30 days. The appraisers so selected must attempt to determine the value of the Company interest owned by the decedent at the time of death based solely on their appraisal of the total enterprise value of the Company (taking into account all obligations of the Company). The appraisal may not consider and discount for the sale of a minority interest in the Company. In the event the appraisers cannot agree on the value within 30 days after being selected, the two appraisers must, within 30 days, select a third appraiser. The value of the interest of the decedent in the Company and the purchase price of it will be the average of the two appraisals nearest in amount to one another. That amount will be final and binding on all parties and their respective successors, assigns, and representatives. The costs and expenses of the third appraiser and any costs and expenses of the appraiser retained but not paid for by the estate of the deceased Member will be offset against the purchase price paid for the deceased Member's interest in the Company.

9.5.3    Closing of the sale of the deceased Member's interest in the Company will be held at the office of the Company on a date designated by the Company, not be later than 90 days after agreement with the personal representative of the deceased Member's estate on the fair market value of the deceased Member's interest in the Company; provided, however, that if the purchase price are determined by appraisals as set forth in Section 9.5.2, the closing will be 30 days after the final appraisal and purchase price are determined. If no personal representative has been appointed within 60 days after the deceased Member's death, the surviving Members have the right to apply for and have a personal representative appointed.

9.5.4    At closing, the Company will pay the purchase price for the deceased Member's interest in the Company. If the purchase price is less than $1,000.00, the purchase price will be paid in cash; if the purchase price is $1,000.00 or more, the purchase price will be paid as follows:

(1)    $1,000.00 in cash, bank cashier's check, or certified funds wire or assets as agreed upon;

(2)    The balance of the purchase price by the Company executing and delivering its promissory note for the balance, with interest at the prime interest rate stated by primary banking institution utilized by the Company, its successors and assigns, at the time of the deceased Member's death. Interest will be payable monthly, with the principal sum being due and payable in three equal annual installments. The promissory note will be unsecured and will

11

contain provisions that the principal sum may be paid in whole or in part at any time, without penalty.

9.5.5    At the closing, the deceased Member's estate or personal representative must assign to the Company all of the deceased Member's interest in the Company free and clear of all liens, claims, and encumbrances, and, at the request of the Company, the estate or personal representative must execute all other instruments as may reasonably be necessary to vest in the Company all of the deceased Member's right, title, and interest in the Company and its assets. If either the Company or the deceased Member's estate or personal representative fails or refuses to execute any instrument required by this Agreement, the other party is hereby granted the irrevocable power of attorney which, it is agreed, is coupled with an interest, to execute and deliver on behalf of the failing or refusing party all instruments required to be executed and delivered by the failing or refusing party.

9.5.6    On completion of the purchase of the deceased Member's interest in the Company, the Ownership Interests of the remaining Members will increase proportionately to their thenexisting Ownership Interests.

9.6    *Tag Along Rights.*

(a)    No Member or group of Members (hereinafter the "Transaction Member") shall, in any one transaction or any series of similar transactions, directly or indirectly sell to any third party or otherwise dispose of more than fifty percent (50%) of the Interests owned by him unless the terms and conditions of such sale or other disposition to such third party shall include an offer to the remaining Members (the "Included Members") to include, at each Member's own option, in the sale or other disposition to the third party, such remaining Member's ratable share of the Interests covered by such disposition. If a Transaction Member receives a bona fide offer from a third party to purchase or otherwise acquire more than fifty percent (50%) of the Interests owned by him, the Transaction Member shall then cause the third party's offer to be reduced to writing (which writing shall include an offer to purchase or otherwise acquire Interests from Included Member according to the terms and conditions of Section 9.6(b) below) and shall send written notice of the third party's offer (the "Inclusion Notice") to the Included Member. The Inclusion Notice shall be accompanied by a true and correct copy of the third party's offer. At any time within thirty (30) days after receipt of the Inclusion Notice, each Included Member may accept the offer included in the Inclusion Notice for up to his proportionate share by furnishing written notice of such acceptance to the Transaction Member and delivering to the Transaction Member such documents as required by the third party offer to be delivered with respect to the Interests to be sold or otherwise disposed of pursuant to such offer by the Included Member (which documents shall be held in escrow pending the consummation of the sale), together with a limited power-of-attorney authorizing the Transaction Member to sell or otherwise dispose of such Interests pursuant to the terms of such third party's offer.

(b)    The purchase from the Included Members pursuant to this Section 9.6 shall be on the same terms and conditions, including the per Interest price (which shall in all events be paid directly to the Included Members by bank cashier's or certified check or by wire transfer of immediately available funds) and the date of sale or other disposition, as are received by the Transaction Member and stated in the Inclusion Notice provided to the Included Members by the Transaction Member.

(c)    Simultaneously with the consummation of the sale or other disposition of the Interests of all Members to the third party pursuant to the third party's offer, the Transaction Member shall notify the Included Members of the consummation of the sale, shall cause the purchaser to remit directly to the Included Members the total sales price of the Included Member's Interests sold or otherwise disposed of pursuant thereto and the Transaction Member shall

12

furnish such other evidence of the completion and time of completion of such sale or other disposition and the terms thereof as may be reasonably requested by the Included Members.

(d)    If within thirty (30) days after the receipt of the Inclusion Notice, any of the Included Members has not accepted the offer contained in the Inclusion Notice, such Included Member shall be deemed to have waived any and all rights with respect to the sale or other disposition of the interests described in the Inclusion Notice and the Transaction Member shall have sixty (60) days after receipt of the Inclusion Notice in which to sell or otherwise dispose of not more than the amount of interests described in the Inclusion Notice, on terms not more favorable to the Transaction Member than were set forth in the Inclusion Notice. If the sale or disposition is not consummated within sixty (60) days, the Transaction Member shall comply with the provisions of this Section 9.6 for all proposed future sales or dispositions that are described in Section 9.6(a). If, at the end of ninety (90) days following the receipt of the Inclusion Notice (or, if earlier, upon such date as such sale is abandoned by the Transaction Member), the Transaction Member has not completed the sale or other disposition of his interests and those of the Included Members in accordance with the terms of the third party's offer, the Transaction Member shall return all certificates of the Included Members documents related to the interests which the Included Members delivered for sale or other disposition pursuant to this Section 9.6, and all the restrictions on sale or other disposition contained in this Agreement with respect to interests owned by the Transaction Member shall again be in effect.

9.7    *Termination of Employment.*  If either Frederick A. Cooper or Katherine H. Cooper is no longer employed by Western for any reason, then the Company, at its option, may purchase, acquire, and redeem up to 54.54% of the Class A interests held by the Class A Members ratably in proportion to the Class A interests held by each Class A Member; provided, however, that the Class A Members shall be entitled to retain at least 25% of the total interests. The value of the Class A interests in the Company for purposes of this Section 9.7 and the closing of such purchase and sale will be determined in accordance with Sections 9.5. of this Agreement.

9.8    *Permissible Transfers.*  It is expressly understood and agreed that Phillip D. Nick is permitted and authorized to convey, transfer, assign and deliver all or any portion of his membership interest in the Company to members of his family or trusts set up for their benefit, as Phillip D. Nick shall determine in his sole and absolute discretion. Notwithstanding any of the foregoing, no such transfer shall trigger any of the rights or obligations described in Sections 9.2 or 9.6. The assignees of any such interest from Phillip D. Nick shall be admitted as members of the Company without the necessity of approval of the then existing Members. These assignees shall receive all the rights and benefits that Phillip D. Nick had relative to such interests.

SECTION 10.    DISSOLUTION AND WINDING UP OF THE COMPANY

10.1    *Dissolution.*  Notwithstanding anything to the contrary contained in the Act, the Company will be dissolved only on upon the unanimous written agreement of all Members.

10.2    *Winding Up.*  On the dissolution of the Company (if the Company is not continued), the Members must take full account of the Company's assets and liabilities, and the assets will be liquidated as promptly as is consistent with obtaining their fair value, and the proceeds, to the extent sufficient to pay the Company's obligations with respect to the liquidation, will be applied and distributed, after any gain or loss realized in connection with the liquidation has been allocated in accordance with Section 3 of this Agreement, and the Members' Capital Accounts have been adjusted to reflect the allocation and all other transactions through the date of the distribution, in the following order:

10.2.1  To payment and discharge of the expenses of liquidation and of all the Company's debts and liabilities to persons or organizations other than Members;

13

10.2.2  To the payment and discharge of any Company debts and liabilities owed to Members;

10.2.3  To the Members in accordance with Section 3.2; and

10.2.4  To Members in the amount of their respective adjusted Capital Account balances on the date of distribution.

## SECTION 11.   GENERAL PROVISIONS

11.1  *Amendments.* Amendments to this Agreement may be proposed by any Member. A proposed amendment will be adopted and become effective as an amendment only on the written approval of all of the Members.

11.2  *Governing Law.* This Agreement and the rights and obligations of the parties under it are governed by and interpreted in accordance with the laws of the State of Delaware (without regard to principles of conflicts of law).

11.3  *Entire Agreement; Modification.* This Agreement constitutes the entire understanding and agreement between the Members with respect to the subject matter of this Agreement. No agreements, understandings, restrictions, representations, or warranties exist between or among the members other than those in this Agreement or referred to or provided for in this Agreement. No modification or amendment of any provision of this Agreement will be binding on any Member unless in writing and signed by all the Members.

11.4  *Attorney Fees.* In the event of any suit or action to enforce or interpret any provision of this Agreement (or that is based on this Agreement), the prevailing party is entitled to recover, in addition to other costs, reasonable attorney fees in connection with the suit, action, or arbitration, and in any appeals. The determination of who is the prevailing party and the amount of reasonable attorney fees to be paid to the prevailing party will be decided by the court or courts, including any appellate courts, in which the matter is tried, heard, or decided.

11.5  *Further Effect.* The parties agree to execute other documents reasonably necessary to further effect and evidence the terms of this Agreement, as long as the terms and provisions of the other documents are fully consistent with the terms of this Agreement.

11.6  *Severability.* If any term or provision of this Agreement is held to be void or unenforceable, that term or provision will be severed from this Agreement, the balance of the Agreement will survive, and the balance of this Agreement will be reasonably construed to carry out the intent of the parties as evidenced by the terms of this Agreement.

11.7  *Captions.* The captions used in this Agreement are for the convenience of the parties only and will not be interpreted to enlarge, contract, or alter the terms and provisions of this Agreement.

11.8  *Notices.* All notices required to be given by this Agreement will be in writing and will be effective when actually delivered or, if mailed, when deposited as certified mail, postage prepaid, directed to the addresses first shown above for each Member or to such other address as a Member may specify by notice given in conformance with these provisions to the other Members.

11.9  *Representation.* The law firm of Murray Murphy Moul + Basil LLP ("MMM+B") represents Phillip D. Nick in the transaction contemplated by this Agreement and no other person or entity, each of which are hereby advised to procure separate counsel. MMM+B may rely upon this provision.

14

**11.10** *Close Corporation Agreement.* Promptly following the acquisition of Western by the Company, the Board of Managers shall cause Western to enter into an agreement whereby all the affairs of Western are managed exclusively by the Company in accordance with this Agreement.

*Remainder of page intentionally left blank.*

IN WITNESS WHEREOF, the parties to this Agreement execute this Operating Agreement as of the date and year first above written.

MEMBERS:

_____
Katherine H. Cooper, Class A Member

_____
Frederick A. Cooper, Class A Member

_____
Philipp D. Nick, Class B Member

Listing of Members – Schedule 1

AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT
OF HARBOR STRUCTURED FINANCE  LLC
LISTING OF MEMBERS

As of the 11th day of October, 2010 the following is a list of the Members of the Company:

NAME:                                          ADDRESS:

Katherine H. Cooper, Class A Member           2000 W. Henderson Rd. #130
                                              Columbus, OH 43220

Frederick A. Cooper, Class A Member           2000 W. Henderson Rd. #130
                                              Columbus, OH 43220

Philipp D. Nick, Class B Member               2000 W. Henderson Rd. #130
                                              Columbus, OH 43220

Authorized by Member(s) to provide Member Listing as of this 11th day of October, 2010.

_____
Katherine H. Cooper, Class A Member

_____
Frederick A. Cooper, Class A Member

_____
Philipp D. Nick, Class B Member

17

**Listing of Capital Contributions – Schedule 2**

AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT
OF HARBOR STRUCTURED FINANCE LLC
CAPITAL CONTRIBUTIONS

| NAME: | CONTRIBUTION: | % OWNERSHIP: |
|---|---|---|
| Katherine H. Cooper | $200,000 | 27.50% |
| Frederick A. Cooper | $200,000 | 27.50% |
| Philipp D. Nick | $3,000,000 | 45.00% |

SIGNED AND AGREED as of the 11th day of October, 2010.

_____
Katherine H. Cooper, Class A Member

_____
Frederick A. Cooper, Class A Member

_____
Philipp D. Nick, Class B Member

18

**Value of the Company – Schedule 3**

**AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT**
**OF HARBOR STRUCTURED FINANCE LLC**
**VALUE OF THE COMPANY**

For purposes of Section 9.5 of the Agreement, the value of the Company is $3,400,000 as of the date set forth below, comprised of $400,000 of value allocated to the Class A Interests, and $3,000,000 of value allocated to the Class B Interests.

SIGNED AND AGREED as of the 11th day of October, 2010.

_____
Katherine H. Cooper, Class A Member

_____
Frederick A. Cooper, Class A Member

_____
Phillipp D. Nick, Class B Member

19

# EXHIBIT 7

# EXHIBIT 7

# EXHIBIT 7

AU721258

CERTIFICATE OF AMENDMENT OF
ARTICLES OF INCORPORATION

**ENDORSED - FILED**
in the office of the Secretary of State
of the State of California

OCT 1 3 2011

The undersigned certify that:

1.    They are the president and the executive vice president, respectively of and Secretary
Western Funding Incorporated, a California corporation.

2.    The Restated Articles of Incorporation of this corporation are amended to
insert the following new Article VII to read as follows:

ARTICLE VII

This corporation is a Close Corporation.  All of the corporation's issued
shares of stock, of all classes, shall be held of record by not more than 35
persons.

3.    The forgoing amendment of Restated Articles of Incorporation has been
duly approved by the board of directors.

4.    The foregoing amendment of Restated Articles of Incorporation has been
duly approved by the required vote of shareholders in accordance with Section 902,
California Corporations Code.  The total number of outstanding shares of the corporation
is 1,083,677 shares of Class A Common Stock and 0 shares of Class B Common Stock.
The number of shares voting in favor of the amendment equaled or exceeded the vote
required. The percentage vote required was 100%.  Shareholder approval was unanimous.

We further declare under penalty of perjury under the laws of the State of California that
the matters set forth in this certificate are true and correct to our own knowledge.

Date: October 11, 2010

_____
Frederick A. Cooper, President

_____
Katherine H. Cooper, Executive Vice President and Secretary

# EXHIBIT 8

# EXHIBIT 8

# EXHIBIT 8

**WESTERN FUNDING INCORPORATED**
Action by Unanimous Written Consent of the Board of Directors

October 15, 2010

The undersigned, being all of the members of the Board of Directors of Western Funding Incorporated, a California corporation (the "Corporation"), do hereby adopt and approve as of the date set forth above the following resolutions by this unanimous written consent, with the same force and effect as if they had been unanimously adopted and approved at a duly convened meeting of the Board of Directors of the Corporation:

WHEREAS, the Board of Directors has determined that it is in the best interests of the Corporation and its sole shareholder (the "Shareholder") that the Corporation elect to be a statutory close corporation as permitted by the California Corporations Code;

WHEREAS, certain amendments to the Corporation's Articles of Incorporation and Bylaws are required as a result of the Corporation's election to be a statutory close corporation;

NOW THEREFORE, BE IT RESOLVED, that the Board of Directors recommends to the Shareholder that the Articles of Incorporation and Bylaws of the Corporation be amended in substantially the form presented to the Board of Directors to cause the Corporation to be a statutory close corporation.

FURTHER RESOLVED, that following the Shareholder's approval of the amendments to the Corporation's Articles of Incorporation and Bylaws, the officers of the Corporation, be, and each hereby is, authorized, directed, and empowered to do and perform, or cause to be done and performed, all such acts, deeds, and things and to make, execute, and deliver, or cause to be made, executed, and delivered such other agreements, undertakings, documents, instruments, or certificates in the name of and on behalf of the Corporation, or otherwise, as they may deem necessary or appropriate to effectuate or carry out fully the purpose and intent of the foregoing resolutions.

FURTHER RESOLVED, that all acts and deeds heretofore done by any officer of the Corporation, for and on behalf of the Corporation, in entering into, executing, acknowledging, or attesting any arrangements, agreements, instruments, or documents, or in carrying out the terms and intentions of the foregoing resolutions, are hereby ratified, approved and confirmed.

IN WITNESS WHEREOF, the undersigned, being all of the directors of the Corporation, have executed these resolutions as of the date first above written.

_____
Philipp D. Nick

_____
Frederick A. Cooper

_____
Katherine H. Cooper

# EXHIBIT 9

# EXHIBIT 9

# EXHIBIT 9

**WESTERN FUNDING INCORPORATED**
Action by Unanimous Written Consent of the Sole Shareholder

_____, 201__

The undersigned, being the sole shareholder of Western Funding Incorporated, a California corporation (the "Corporation"), does hereby adopt and approve as of the date set forth above the following resolutions by this unanimous written consent, with the same force and effect as if they had been unanimously adopted and approved at a duly convened meeting of the sole shareholder of the Corporation:

WHEREAS, the Board of Directors has determined that it is in the best interests of the Corporation that the Corporation elect to be a statutory close corporation as permitted by the California Corporations Code;

WHEREAS, the Board of Directors recommends that the sole shareholder approve certain amendments to the Corporation's Articles of Incorporation and Bylaws required as a result of the Corporation's election to be a statutory close corporation;

NOW THEREFORE, BE IT RESOLVED, that the Articles of Incorporation and Bylaws of the Corporation be amended in substantially the form presented to the sole shareholder to cause the Corporation to be a statutory close corporation.

FURTHER RESOLVED, that the officers of the Corporation, be, and each hereby is, authorized, directed, and empowered to do and perform, or cause to be done and performed, all such acts, deeds, and things and to make, execute, and deliver, or cause to be made, executed, and delivered such other agreements, undertakings, documents, instruments, or certificates in the name of and on behalf of the Corporation, or otherwise, as they may deem necessary or appropriate to effectuate or carry out fully the purpose and intent of the foregoing resolutions.

FURTHER RESOLVED, that all acts and deeds heretofore done by any officer of the Corporation, for and on behalf of the Corporation, in entering into, executing, acknowledging, or attesting any arrangements, agreements, instruments, or documents, or in carrying out the terms and intentions of the foregoing resolutions, are hereby ratified, approved and confirmed.

IN WITNESS WHEREOF, the sole shareholder of the Corporation has executed these resolutions as of the date first above written.

Harbor Structured Finance LLC

By: _____
Name: _____
Title: _____

# EXHIBIT 10

# EXHIBIT 10

# EXHIBIT 10

**AMENDMENT
TO THE AMENDED AND RESTATED BYLAWS
OF
WESTERN FUNDING INCORPORATED,
a California corporation**

Effective as of _____, 20____ (the "Effective Date"), the Amended and Restated Bylaws (the "Bylaws") of Western Funding Incorporated, a California corporation, are amended as follows:

1.    <u>Amendment to Section 1.01.</u> Section 1.01 of the Bylaws shall be amended by deleting the second sentence thereof in its entirety.

2.    <u>Amendment to Article II.</u> Article II of the Bylaws, other than Section 2.25, shall be deleted in its entirety and the following shall be inserted in lieu thereof and Section 2.25 shall be renumbered as Section 2.04:

### ARTICLE II – DIRECTORS

<u>Section 2.01. No Directors.</u> Unless otherwise determined by a vote of the outstanding shares of the Corporation, the Corporation shall have no Board of Directors.

<u>Section 2.02. Shareholders as Directors.</u> The shareholders, for the purposes of any statute or rule of law relating to corporations, are deemed to be the directors and to have all of the liabilities, immunities, defenses, and indemnifications of directors with respect to any action or inaction of the shareholders or the Corporation.

<u>Section 2.03. Voting.</u> Except to the extent that the voting rights of the shares of a class are increased, limited, or denied by the Articles of Incorporation or these Bylaws, each outstanding share, regardless of class, shall entitle its holder to one vote on each matter, including any matter normally voted on by directors, that is property submitted to the shareholders for their vote, consent, waiver, release, or other action.

3.    <u>Amendment to Section 7.07(b).</u> Section 7.07(b) of the Bylaws is amended to (i) amend and restated Section 7.07(b)(3) of the Bylaws in its entirety to read as set forth below and (ii) insert as a new Section 7.07(b)(6) the provision set forth below:

(3)    The fact that the shares are subject to a voting agreement under Section 706(a) of the California Corporations Code or an irrevocable proxy under Section 705(e) of the California Corporations Code or restrictions on voting rights contractually imposed by the corporation.

(6)    The legend required by Section 418(c) of the California Corporations Code.

4.   Amendment to Section 9.08.  Section 9.08(a) of the Bylaws shall be amended to delete the language "holding at least five percent of the outstanding shares of any class" appearing in the first sentence of such Section 9.08(a).

5.   Amendment to Section 10.02.  Section 10.02 of the Bylaws shall be amended and restated in its entirety to read as follows:

   Section 10.02.   Adoption, Amendment, Repeal of Bylaws by Shareholders.  These Bylaws may, from time to time and at any time, be amended or repealed, and new or additional Bylaws adopted, by approval of the outstanding shares of the corporation, as that term is defined in Section 152 of the California Corporations Code; provided, however, that such Bylaws may not contain any provision in conflict with law or with the Articles of Incorporation of the Corporation.

6.   Amendment to Section 10.03.  Section 10.03 of the Bylaws is deleted in its entirety.

7.   New Article XII.  The Bylaws shall be amended to insert a new Article XII to read as follows:

ARTICLE XII – CLOSE CORPORATION

   Section 12.01.   Shareholders' Agreement.  The Corporation is a close corporation under the California Corporations Code.  These Bylaws are also a shareholders' agreement as provided by Section 300(b) of the California Corporations Code.

   Section 12.02 California Corporations Code. Notwithstanding anything in these Bylaws to the contrary, if any term or other provision of these Bylaws is contrary to or inconsistent with the terms of Sections 158, 417, 418, 500, 501, 1111, 1201(e), 2009, 2010 and 2011, or of Chapters 15, 16, 18 and 22 of the California Corporations Code, the provisions of the California Corporations Code shall control and supersede any such contrary or inconsistent provision contained in these Bylaws.

8.   Amendment.  From and after the Effective Date, except for references appearing in Sections 2.01, 2.02, or 2.03, all references in the Bylaws to the Board, the Board of Directors, or the Directors, shall be deemed to be references to the shareholders.

9.   No Other Amendments.  Except to the extent expressly set forth above, the Bylaws shall remain in full force and effect.

[Signature page follows]

2

IN WITNESS WHEREOF, the sole shareholder of the Corporation has executed this Amendment as of the Effective Date.

Harbor Structured Finance LLC

By: _____

Name: _____

Title: _____

3