Christopher D. Jaime (NV SBN 4640)
MAUPIN, COX & LEGOY, P.C.
4785 Caughlin Parkway
Reno, Nevada 89519
Telephone: (775) 827-2000
Facsimile: (775) 827-2185
E-mail: cjaime@mclrenolaw.com
Attorneys for Class B Members of
Harbor Structured Finance, LLC,
the Sole Shareholder of Western
Funding Incorporated

Joseph F. Murray (OH BN 0063373)
MURRAY MURPHY MOUL+ BASIL LLP
1533 Lake Shore Drive
Columbus, Ohio   43204
Telephone: (614) 488-0400
Facsimile: (614) 488-0401
Email:   murray@mmmb.com
Attorneys for Class B Members of
Harbor Structured Finance, LLC,
the Sole Shareholder of Western
Funding Incorporated

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEVADA

| | | |
|---|---|---|
| In re:<br><br>WESTERN FUNDING INCORPORATED,<br><br>    Debtor. | )<br>)<br>)<br>)<br>)<br>)<br>) | Case No. BK-S-13-17588-LED<br>Chapter 11<br>(Joint Administration) |
| In re:<br><br>WESTERN FUNDING INC. OF NEVADA,<br><br>    Debtor. | )<br>)<br>)<br>)<br>)<br>)<br>) | Case No. BK-S-13-17586-LED<br>Chapter 11 |
| In re:<br><br>GLOBAL TRACK GPS, LLC,<br><br>    Debtor. | )<br>)<br>)<br>)<br>)<br>) | Case No. BK-S-13-17589-led<br>Chapter 11<br><br>Hearing Date: November 1, 2013<br>Hearing Time: 9:30 a.m. |

## REPLY OF CLASS B MEMBERS OF HARBOR STRUCTURED FINANCE TO DEBTORS' OMNIBUS OPPOSITION TO MOTION TO DISMISS CHAPTER 11 CASE AND JOINDER THEREIN

# Table of Contents

**Page**

I.    INTRODUCTION............................................................    1

II.   THE DISMISSAL OPPOSITION INCLUDES FALSE, INACCURATE,
      AND MISLEADING BACKGROUND INFORMATION.............................    3

III.  LEGAL ARGUMENT AND ANALYSIS..........................................    8

      A.    Class B Members and Managers Have Standing..................    8

      B.    The Bylaws Amendment is Valid and Enforceable and the Debtors
            Have Not Demonstrated Otherwise................................    17

      C.    The Debtors Have Failed to Demonstrate a "Complete Disregard"
            of all Corporate Formalities Required Before the Court May Apply
            Principles of Ratification, Waiver, and Estoppel to Find the Coopers
            the Sole de facto Directors of WFI..............................    19

      D.    The Court Lacks Jurisdiction Over the Petition and it Need
            Not Reach Section 305 and Bad Faith Under Section 1112(b).......    23

      E.    The Coopers Have No Authority to Vote Individually at the
            Harbor Level....................................................    23

IV.   CONCLUSION............................................................    24

i

AUPIN, COX & LeGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

## Table of Authorities

**Cases**                                                                                                    **Page**

In re American Globus Corp., 195 B.R. 263 (Bankr. S.D. N.Y. 1996)……………………..…..20

In re Carolina Park Assoc., 430 B.R. 744 (Bankr. D.S.C. 2010)……………………………..…10

In re Cloverleaf Properties, 78 B.R. 242 (9th Cir. BAP 1987)…………………………………12, 13

In re Consolidated Auto Recyclers, Inc., 123 B.R. 130 (Bankr. Me. 1991)……………..9, 10, 14

In re Giggles Restaurant, Inc., 103 B.R. 549 (Bankr. D. N.J. 1989)……………………….....9, 10

In re Gucci, 174 B.R. 401 (Bankr. S.D. N.Y. 1994)…………………………………………....8, 9

In re Orchard at Hansen Park, 347 B.R. 822 (Bankr. N.D. Tex. 2006)…………....…...10, 11, 12, 14

Matter of Verazzano Towers, Inc., 10 B.R. 387 (Bankr. E.D.N.Y. 1981)………………………13

Royal Indemnity Co. v. American Bond & Mortg. Co., 289 U.S. 165 (1933)…………...8, 9, 10, 13

SEC v. United States Realty and Improvements Co., 310 U.S. 434 (1940)………………....13, 14

Sumida v. Yumen, 409 F.2d 654 (9th Cir. 1969)……………………………………………..…13

Tally v. Fox Film Corp. (In re Fox W. Coast Theatres), 88 F.2d 212 (9th Cir. 1937)……...8, 9, 10


**Statutes**

11 U.S.C. § 305………………………………………………………………………….23
11 U.S.C. § 1109(b)……………………………………………………………………10, 12
11 U.S.C. § 1112(b)………………………………………………………………...…10, 12, 23
11 U.S.C. § 1112(b)(1)……………………………………………………………………12

California General Corporate Law, Section 300(b)……………………………………………19
California Corporate Code, Section 301(a)………………………………………………18,19

ii

Class B Members ("Class B Members") of Harbor Structured Finance, LLC ("Harbor") submit the below Memorandum of Points and Authorities in reply to the *Debtors' Omnibus Opposition to Motion to Dismiss Chapter 11 Case and Joinder Therein* [Dkt. 223] (the "Dismissal Opposition") filed by Western Funding Incorporated ("WFI"), Western Funding Inc. of Nevada ("WFIN"), and Global Track, LC ("GPS") (collectively, unless otherwise noted, the "Debtors").[1]    In addition to the below Memorandum of Points and Authorities, this Reply is supported by the concurrently filed *Declaration of Philipp D. Nick in Support of Reply of Class B Members of Harbor Structured Finance to Debtors' Omnibus Opposition to Motion to Dismiss Chapter 11 Case and Joinder Therein* ("Reply Declaration") and all other documents and declarations filed in support of the Class B Members' *Motion to Dismiss Chapter 11 Case Filed Without Corporate Authorization and Granting Related Relief* (the "Dismissal Motion") [Dkt. 57].[2]

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The Debtors, as instructed by the Fredrick Cooper and Katherine Cooper (collectively, unless otherwise noted, the "Coopers"), want to make the Dismissal Motion about something, anything, other than whether the petition was filed without the requisite authorization.    Since the requisite authorization was plainly lacking, Debtors much prefer to create another issue,

---

[1] Footnote 1 of the Dismissal Opposition includes a blatant misrepresentation by the Debtors.    Specifically, the Debtors maintain that Class B Members have not complied with the disclosure requirements of Rule 2019.    See Dis. Opp. at 3 n.1.    Verified Rule 2019 statements were filed on October 9, 2013, as Dkts. 178 and 179.

[2] Where necessary, Class B Members also clarify the Dismissal Motion filed on September 16, 2013 and, thus, filed on one (1) business days' notice in response to the Debtors' "first day motions" heard on shortened time on September 17, 2013.

AUPIN, COX & LeGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

albeit an irrelevant one; namely, the Class B Members' motive.    Although motive is wholly irrelevant, the Class B Members are happy to address it as well as all the other diversions the Debtors seek to create and which the Court might entertain.    Ultimately though, this Court is compelled to dismiss Debtors' petition because there is no valid resolution authorizing the respective filings and, therefore, this Court lacks jurisdiction.

The Dismissal Motion is not about trying to save liens or preserve an investment as the Debtors repeatedly state and would like the Court to believe.    Although perhaps a fight for another day, Class B Members are quite confident that the liens they hold on WFI's real property located in Las Vegas, Nevada, San Jose, California, and Houston, Texas, and the obligations those liens secure, have all the necessary attributes of indebtedness.    Those obligations were characterized and structured as indebtedness, the Coopers and WFI ratified and affirmed that characterization on several occasions, and there is judicial authority within this Circuit that recognizes preferred equity can be characterized as secured debt.    In short, recharacterization and loss of the Class B Members' liens is not the foregone conclusion the Debtors attempt to portray and protection of liens is not the motivation for seeking dismissal of this Chapter 11 case.

Indeed, the Debtors' accusation that the Class B Members seek dismissal to preserve their liens on WFI's real property lacks credibility because an action to recharacterize those liens is not exclusive to a bankruptcy proceeding.    In other words, there is absolutely no correlation between WFI's status as a debtor and its ability to maintain an action in which it attempts to recharacterize the Class B Members' liens on its real property.    The Debtors could bring the same action without a pending Chapter 11 case.    Class B Members are, therefore, not motivated

by an improper purpose in their effort to have this case dismissed on jurisdictional grounds.

Aside from the fact that a bankruptcy court lacks jurisdiction over a petition that is not filed with the requisite corporate authorization, Class B Members seek dismissal because there are alternatives to bankruptcy that benefit all constituencies and not just the Coopers who seek to take from WFI as much financially as they possibly can.[3]   For example, Messrs. Nick and Finston traveled to Atlanta, Georgia, to meet with a potential buyer of WFI who actually submitted a letter of intent to purchase WFI.   Similar efforts to find a beneficial transaction by the Class B Members were routinely stifled by the Coopers who did not stand to benefit financially from any of the proposed transactions.   Testimony at the time of the evidentiary hearing, will show other similar instances.

The point is, the Dismissal Motion serves two purposes - one jurisdictional and the other practical.   It asks the Court to address a fatal jurisdictional defect over a voluntary petition filed without authorization.   It also seeks to provide an avenue that will allow WFI to find a transaction that will benefit all affected constituencies rather than a transaction that will inure to the benefit of the Coopers and their self-serving financial interests.   Neither purpose is improper.

## II.   THE DISMISSAL OPPOSITION INCLUDES FALSE, INACCURATE, AND MISLEADING BACKGROUND INFORMATION

The background "facts" recited in the Dismissal Opposition are, for the most part,

---

[3]Perhaps the best example of this is the exuberant salaries the Coopers have paid themselves for years.   Even the Unsecured Creditors Committee has expressed concern that Mr. Cooper pays himself an annual salary in the neighborhood of $300,000, Mrs. Cooper pays herself an annual salary believed to be around $275,000, and the Coopers pay their daughter an annual salary of about $195,000. [Dkt. 210].

3

AUPIN, COX & LeGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

inaccurate and misleading.[4]    For example, the Debtor's contention that the Class B Members provided only some of the financing to fund Harbor's purchase of WFI is misleading and inaccurate.    In fact, the Class B Members provided 100% of the equity, $3,000,000, required by Bank of America ("B of A") in order for the B of A to extend credit to WFI on the terms negotiated.    The Coopers have previously suggested that they contributed $400,000 of equity to Harbor.    However, an investigation by the Class B Members and their professional advisors has revealed no evidence of any such capital contribution.    In the course of that investigation, specific requests were made of the Coopers to provide evidence of any equity contribution to Harbor.    They came forward with nothing, however.

The Dismissal Opposition also misrepresents the nature and extent of contact between Mr. Nick and B of A.    Any contact between B of A and Mr. Nick related to WFI, Harbor, and the Coopers was extremely limited.    Mr. Nick had one telephone conversation with the bank's representative, sent him two emails, received two emails from him, and replied to both of those emails.    None of those communications were improper.

The purposes of the foregoing communications with B of A were twofold.    First, Mr. Nick shared with the bank a concern that the Coopers had spent company money to purchase an airplane without authorization from WFI/Harbor's Board, and B of A, both of which Mr. Nick believed and still believe were required.    In addition, Mr. Nick and his counsel inquired as to the accuracy of representations made by the Coopers that the bank was threatening to terminate WFI's credit facility prior to the expiration of its term.    The bank's representative informed Mr.

---

[4]The Debtors' purported "facts" are refuted in the *Supplemental Declaration of Philipp D. Nick in Support of Motion to Dismiss Chapter 11 Case Filed Without Corporate Authorization and Granting Related Relief* [Dkt. 147] ("Supplemental Nick Declaration") which is set forth in this Section II.

4

AUPIN, COX & LEGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

Nick that it had no such intent.    Furthermore, during a meeting of the WFI/Harbor Board of Managers, which occurred on August 25, 2011, Mr. Cooper himself stated that in "recent talks with B of A where they reaffirmed their commitment to the [letter of credit] for another 2 years, but it's not clear if there will be [a] long term relationship."    Mr. Cooper acknowledged that the relationship with B of A was "rocky" and he attributed this to his belief that "B of A has a hard time understanding [WFI's] business and their accounting."    Mr. Cooper also reported that WFI had begun looking for a new lender.    A true and correct copy of the Board of Managers Annual Meeting Minutes (12.15.11) is attached as Exhibit F to the Supplemental Nick Declaration.

Never in any communications with any representative of the B of A did Mr. Nick make any statement indicating that the Coopers had engaged in dishonest and criminal enterprises or that the bank should not extend credit to the Coopers or entities controlled or operated by them. B of A also never withdrew its funding from WFI as the Dismissal Opposition suggests. Rather, WFI terminated B of A's credit facility because, at the Coopers direction, WFI sought and received substitute financing from BMO Harris Bank N.A. ("BMO Harris").    The Coopers and/or WFI's Chief Investment Officer advised the WFI/Harbor Board that the BMO Harris credit facility was superior to that provided by B of A.    It bears mention that the Coopers had personally guaranteed the B of A credit facility, which was approximately $35,000,000, but negotiated away their personal guarantees under the terms of the credit facility provided by BMO Harris.

The Debtors' statement that the Class B Members were required to approve the BMO Harris credit facility is also false and the suggestion that their failure to do so caused some harm

5

is misleading.   The Class B Members approval of the BMO Harris credit facility was not required.    There were agreements in place from the inception of the Class B investment that required WFI to provide the Class B Members with a security interest in WFI's real property if ever WFI renewed or replaced the B of A credit facility.    The Coopers tried to force the Class B Members to relinquish their right to receive security interests in WFI's real property.    They threatened the Class B Members that if they did not accept the terms of the BMO Harris credit facility, which did not initially recognize their right to receive those security interests, then WFI would go out of business.    Ultimately, BMO Harris agreed to enter into the credit facility while affording the Class B Members with the security interests that had been pledged to them from the beginning.    The deeds of trust on WFI's San Jose, Las Vegas, and Houston properties referenced in the Dismissal Opposition were issued in favor of the Class B Members to secure WFI's repayment of a $3,000,000 indebtedness, not "just under $500,000" as sworn by Mr. Cooper in his omnibus declaration [Dkt. 53] at ¶ 39, which is now due and payable as a result of WFI's default on the BMO Harris credit facility.

Mr. Nick also never attempted to or caused any disruption to WFI's source or sources of funding as the Dismissal Opposition suggests.    In addition, Mr. Nick never took any wrongful action to control any of WFI's property, including its customer list or hardware.    On October 12, 2010, the Coopers pledged to cause Harbor and or WFI to enter into a lease agreement for office space that Mr. Nick owned/controlled.    A true and correct copy of the Coopers' pledge is attached as Exhibit G to the Supplemental Nick Declaration.    The Coopers caused WFI's property, including computer servers and communication equipment, to be installed and stored at

LAUPIN, COX & LeGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

that location.   But, they never caused Harbor or WFI to enter into the contemplated lease agreement or make any lease payments.   After making multiple demands that the Coopers fulfill their commitments, which were rejected or ignored, Mr. Nick was forced to initiate litigation.   He never prohibited WFI's representatives from retrieving WFI's property from the site.   Rather, Mr. Nick advised them that they were prohibited from doing so in his absence. He also made himself available to WFI's representative and allowed him to remove all of WFI's property within a reasonable period of time of his request being made.   WFI ultimately paid Mr. Nick $50,000 in exchange for a release of liability related to the Coopers' pledge to enter into a lease agreement.

Mr. Nick did not take or authorize, and to the best of his knowledge none of the other Class B Members took or authorized any action designed to interfere with or cause harm to WFI, Harbor, or the Coopers.   To the contrary, Class B Members have diligently sought to supervise and protect their investment in Harbor and WFI, as well as protect the best interests of those entities.   Mr. Nick authorized the filing of the Ohio Action referenced in the Dismissal Opposition only after the Coopers failed to answer numerous inquiries regarding their use of company resources.   A true and correct copy of the complaint filed in Ohio on October 9, 2012 is attached as Exhibit H to the Supplemental Nick Declaration.   A true and correct copy of the amended complaint, which was filed on September 25, 2013 is attached as Exhibit I to the Supplemental Nick Declaration.

As is evidenced by their filing of this Chapter 11 case without proper authorization and their false representation that they are the sole directors of WFI for purposes of invoking this

7

AUPIN, COX & LeGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

Court's jurisdiction, a fraud unto itself, the Coopers have engaged in a pattern of self-dealing that has compromised the value and viability of the Debtor entities, WFI in particular. The Coopers have placed their financial self-interests ahead of the best interests of WFI, its shareholder, and its creditor partners, including BMO Harris.  Indeed, even after Mr. Nick initiated the Ohio Action, the Coopers continued their pattern of pursuing their own self-interests by refusing to negotiate or meaningfully consider a proposal presented by the Class B Members that would have enabled WFI to secure additional capital, cure the only balance sheet default that then existed under the terms of the BMO Harris credit facility, and continue operations without the threat of bankruptcy or receivership.  Yet, again, because those proposals would not produce a substantial financial benefit to the Coopers individually they were, as with previous proposals, summarily blocked, rejected and, therefore, never presented to, or considered by, the full and duly-appointed Board of Managers/Board of Directors.

## III.    LEGAL ARGUMENT AND ANALYSIS

A.    Class B Members and Managers Have Standing.

The Debtors maintain that by virtue of their deeds of trust on the WFI's San Jose, Las Vegas, and Houston properties Class B Members are a secured creditor of WFI.   The Debtors further maintain that as a secured creditor the Class B Members lack standing to contest the voluntary petition that WFI filed on September 4, 2013, as unauthorized because only shareholders have such standing.  To support their position, the Debtors rely exclusively on Tally v. Fox Film Corp. (In re Fox W. Coast Theatres), 88 F.2d 212 (9th Cir. 1937), Royal Indemnity Co. v. American Bond & Mortg. Co., 289 U.S. 165 (1933), and In re Gucci, 174 B.R

AUPIN, COX & LEGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

401 (Bankr. S.D.N.Y. 1994).    The Debtors' reliance on those cases is misplaced and, as explained below, their argument lacks merit.

Any suggestion that creditors lack standing to challenge the filing of a voluntary petition as unauthorized in Tally is dicta because, in Tally, the directors' authority to file a voluntary petition on the debtor's behalf was not at issue.    Only the directors' motives for filing the petition were at issue.    Indeed, although the court mentioned Royal Indemnity, immediately after doing so it stated that "[i]n the case at bar the power of the directors to pass the resolution in bankruptcy is not attacked, but it is conceded[.]."    Id. at 225.    Thus, to the extent the court in Tally referred to Royal Indemnity it did so only to support its conclusion that the creditor in the case before it could not attack the directors' reasons for filing.    Put another way, the court in Tally made no ruling on any challenge to the directors' authority to file because the directors' authority was not even at issue and, in fact, was conceded.

Royal Indemnity is itself distinguishable for at least two reasons.    A creditor has standing to contest a petition as unauthorized where the creditor has a sufficient stake in the case or, in other words, unlike Royal Indemnity (and therefore Tally by implication) the creditor is more than a general creditor who is a stranger to the debtor or the estate.    See e.g., In re Consolidated Auto Recyclers, Inc., 123 B.R. 130, 137-138 (Bankr. Me. 1991) (challenge by creditor of debtor parent and proposed debtor subsidiary and also shareholder of subsidiary); In re Giggles Restaurant, Inc., 103 B.R. 549, 555-556 (Bankr. D. N.J. 1989).[5]    At least one court has stated that "[i]t appears the better rule that creditors have standing to seek dismissal of

_____

[5] In this regard, In re Gucci, 174 B.R. 401 (Bankr. S.D. N.Y. 1994), the only other case on standing cited by the Debtors, actually supports creditor standing in this case.    In Gucci, the court recognized that a creditor who also holds an equity interest in an affiliate of a debtor has a sufficient interest and, thus, standing to seek dismissal based upon the filing of an unauthorized petition.    Id. at 412.

9

AUPIN, COX & LEGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

bankruptcy cases on the basis of the absence of authority to file the petition." In re Carolina Park Assoc., 430 B.R. 744, 748-749 (Bankr. D.S.C. 2010), vacated on other grounds, 2010 WL 3893628 (D.S.C. 2010).    These courts point to several factors that give a creditor standing. They note that Congress enacted 11 U.S.C. § 1109(b) in 1978 and, thus, provided a statutory basis in the Bankruptcy Code for creditors to be heard on any issue in a Chapter 11 case long after, and therefore fully aware of, Royal Indemnity (and by implication Tally).    See Consolidated Auto, 123 B.R. at 137; Giggles Restaurant, 103 B.R. at 555-556.    These courts also note that 11 U.S.C. § 1112(b) allows a creditor to move for dismissal based upon a non-exhaustive list of "cause" which, as noted in the Dismissal Motion and hereinbelow, includes the lack of jurisdiction resulting from a petition filed without proper corporate authorization.    Id.    In re Orchard at Hansen Park, 347 B.R. 822 (Bankr. N.D. Tex. 2006), perhaps best highlights this analysis.

In Orchard, the court addressed whether a creditor had standing to raise the issue of authority to file a bankruptcy petition and to pursue a motion to dismiss when a limited liability company filed for bankruptcy without approval of all its members, as required by the company's operating agreement. The bankruptcy court held that, in such an instance, creditors have standing to bring such a claim.

The debtor in Orchard was a Washington limited liability company created to acquire, own, hold, maintain, and operate a 212-unit apartment complex located in Kennewick, Washington.    HSM-Kennewick ("HSM") and WO-Kennewick ("WOK") were Orchard's members, with HSM controlling 90 percent and WOK controlling 10 percent. Orchard's

10

AUPIN, COX & LeGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

operating agreement required the consent of all members and managers before Orchard could file bankruptcy.    Disregarding that restriction, Orchard, through an attorney retained exclusively by HSM and without the consent of WOK, filed a voluntary Chapter 11 petition, again, without WOK's consent.

Shortly after the petition was filed, GDW Capital Partners ("GDW"), a creditor of Orchard owed approximately $2.4 million under a mezzanine loan, filed a motion to dismiss Orchard's Chapter 11 petition arguing, in part, that Orchard's operating agreement required the consent of all members of Orchard to validly file a voluntary petition.    HSM filed a motion to strike GDW's motion to dismiss and in that motion argued that GDW, as a creditor of Orchard, lacked standing to raise the issue of HSM's authority to file a bankruptcy petition on behalf of Orchard.    Not only did the bankruptcy court find that GDW had standing to raise the issue of HSM's authority to file a voluntary petition on Orchard's behalf, but, it granted GDW's motion to dismiss after finding that HSM had filed the petition without the unanimous consent of Orchard's members as required by Orchard's operating agreement.

In support of its decision that GDW, a creditor, had standing to raise the issue of authority to file a bankruptcy petition and that GDW could legally prosecute a motion to dismiss HSM's bankruptcy petition based upon the filing of an unauthorized petition, the bankruptcy court relied on precedent from other jurisdictions, as well as express language contained within the Bankruptcy Code.    The bankruptcy court first pointed out that numerous other courts have held that a creditor in a Chapter 11 case has standing to challenge a bankruptcy filing.    The bankruptcy court then turned to the relevant provisions of the Bankruptcy Code, including

11

ꓘAUPIN, COX & LeGOY
ATTORNEYS AT LAW
P.O. BOX 30000
ꓘENO, NEVADA 89520
(775) 827-2000

sections 1109(b) and 1112(b).   The court noted that pursuant to section 1109(b), any party in interest - including a creditor as an entity with a pecuniary interest directly affected by the bankruptcy proceedings - may raise and appear and be heard on any issue in a case under Chapter 11.   Accordingly, the court concluded that section 1109(b) allows any party with a financial interest in the outcome of the case to participate in the proceedings in order to protect that interest.   The court also noted that section 1112(b)(1) provides that a party in interest, including a creditor, may object to a bankruptcy filing and request dismissal of the case for "cause."

The bankruptcy court further reasoned that when determining whether a creditor has standing to seek dismissal, the court should consider whether the creditor has a sufficient stake in the case.   Despite the fact the bankruptcy court felt the debtor's situation "crie[d] out for bankruptcy relief," much like the claim the Debtors make here, the court found that GDW had a sufficient stake and pecuniary interest in Orchard's bankruptcy case to give GDW standing to pursue the motion to dismiss. Specifically, GDW was Orchard's second largest creditor and, although the mezzanine loan provided by GDW was unsecured as to the debtor, it was secured by the members' equity interests in the debtor.   Accordingly, and despite the fact that GDW stood to benefit from dismissal, the court nevertheless found that GDW had standing because it was in a "far different position than a general creditor of the estate who is otherwise a stranger to the debtor['s] entities," id. at 825, and further held dismissal was warranted because the filing of the petition was unauthorized.

A challenge to an unauthorized petition also raises jurisdictional issues.   In <u>In re</u>

12

Cloverleaf Properties, 78 B.R. 242, 246 (9th Cir. BAP 1987), the BAP reversed a turnover order and remanded with instructions for the bankruptcy court to dismiss a voluntary petition filed by one of three general partners for lack of jurisdiction.    Id. at 246.    The U.S. Supreme Court recognized this as early as 1940.    Specifically, seven years after the Supreme Court decided Royal Indemnity it decided SEC v. United States Realty and Improvements Co., 310 U.S. 434 (1940), in which it recognized that a creditor has standing to challenge the bankruptcy court's jurisdiction over an unauthorized voluntary petition.    The Supreme Court stated:

> And it has long been the practice of bankruptcy courts to permit creditors or others not entitled to file pleadings or otherwise contest the allegations of a petition, to move for the vacation of an adjudication or the dismissal of a petition on grounds, whether strictly jurisdictional or not, that the proceeding ought not be allowed to proceed.

Id. at 457-458.

In an appeal involving a motion to dismiss a Chapter XII proceeding filed by secured creditor, the Ninth Circuit in Sumida v. Yumen, 409 F.2d 654 (9th Cir. 1969), stated that "[a] creditor may move to dismiss a Chapter XII petition on the ground that the court does not have jurisdiction of the debtor; ... and a court on its own initiative can examine the facts before it to determine whether or not it has the jurisdiction to hear the proceeding."    Id. at 657 (internal citation omitted).    Similarly, in Matter of Verazzano Towers, Inc., 10 B.R. 387 (Bankr. E.D.N.Y. 1981), the court relied on U.S. Realty to hold that a secured creditor had standing to challenge the bankruptcy court's jurisdiction over an invalid petition even though the creditor's jurisdictional challenge required the court to consider and determine if the petition was authorized by the appropriate members of the debtor's board of directors.    The court explained

13

AUPIN, COX & LeGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

as follows:

> It is thus abundantly clear that, when faced with allegation by a creditor of lack of jurisdiction, or fraud, the court may inquire into the bona fides of a voluntary petition seeking relief under the bankruptcy laws, and that courts, at least in this circuit, should be loath to dismiss any such attacks by creditors without hearing their substance[.].

Id. at 392 (emphasis added).

Based on the foregoing authority, Class B Members have standing because they have an interest and stake in the case greater than a general creditor and they certainly are no stranger to the Debtors or their estates.   In addition to their status as a secured creditor of WFI, Class B Members also own 45% of WFI's shareholder, Harbor.   Additionally, they have the right to appoint two of four board members of the Harbor/WFI Board, which has exclusive managerial authority over all major decisions of both Harbor and WFI.   Thus, Class B Members have both a secured claim and an equity interest involved in WFI's Chapter 11 case.   That interest provides Class B Members with sufficient standing to contest WFI's voluntary petition as unauthorized.   See Orchard, 347 B.R. at 825-826 (creditor and equity interest sufficient to establish standing to challenge petition as unauthorized); In re Consolidated Auto, 123 B.R. at 138 (accord).

The Dismissal Motion also presents and frames the issue of the Coopers' lack of authority to file a voluntary petition on WFI's behalf as a jurisdictional issue.   See Dismissal Motion at ¶ 19; ¶ 24 ("Lack of jurisdiction is cause for dismissal and, in the case of an unauthorized voluntary petition filed by a corporate debtor due to the absence of a valid corporate resolution, the bankruptcy court lacks jurisdiction."); ¶ 25 ("In any event, because the

14

resolution that purports to authorize WFI to file the Petition, signed by the Coopers alone, is invalid [the] Petition itself is invalid which means the Court lacks jurisdiction over this proceeding.    Dismissal for cause is therefore warranted.").    Indeed, the jurisdictional nature of the Dismissal Motion was emphasized when the parties appeared before the Court for the initial hearing on WFI's "first day motions" held on September 17, 2013.    As the transcript of that proceeding, a copy of the relevant pages of which are attached as Exhibit 1, reflects:

> MR. JAIME: I would agree.
> My only concern was that -- two things. It might
> make sense for the Court -- and the Court can certainly
> schedule it as it sees fit -- to determine whether the
> petition was even valid to begin with before granting
> any final relief --
>
> THE COURT: Um-h'm.
>
> MR. JAIME: -- No. 1.
>
> And if final relief is granted on any of these
> first-day motions, that it not prejudice the ability to
> seek dismissal or that the Court not assume that it has
> jurisdiction --
>
> THE COURT: Um-h'm.
>
> [Tr. at 63:18-64-].
>
> THE COURT: But I do appreciate that you want
> to get this on soon.
> It's just with the volume of cases and things that
> we have I think we get both of them on track and be
> prepared to make a ruling as soon as possible after the
> 17th.
>
> MR. JAIME: Just so long as that counsel agrees
> that there is no -- I mean, I don't want to concede
> jurisdiction is what I don't want to happen.

15

[Id. at 65:3-11].

The Debtors also concede that a shareholder has standing to contest the filing of a voluntary petition as unauthorized.   The sole shareholder of WFI is Harbor.   Pursuant to Section 6.1 of the Amended and Restated Harbor LLC Agreement, Harbor's Managers have the exclusive authority to manage its business, property, and affairs.   Stated another way, Harbor, the shareholder, can only "speak" through its Managers, who also serve as representatives of the respective membership interests in the limited liability company.   In this case, two Managers of Harbor have objected to WFI's voluntary petition and seek to have it dismissed.   Since those Managers are vested with exclusive authority over Harbor's affairs, "speak" for Harbor, and were appointed by the Class B Members to represent their interests in Harbor, independent of Class B Members' standing as a creditor, shareholder standing also exists.

The Debtors must recognize this fact because when faced with the dilemma that the Harbor Board was "deadlocked on this issue -- with the A Managers (the Coopers) supporting a bankruptcy filing of Harbor (sic), and the B Managers of Harbor (Messrs. Finston and Hadden) refusing to support a bankruptcy filing of Harbor (sic)" [Dismissal Opposition at ¶ 65], the Debtors make a statement that is inappropriate and out of place -- "Harbor did not and need not have ever authorized WFI's bankruptcy filing; rather that authority lies solely with WFI's board of directors." [Id.].   This statement is inappropriate because Debtors are required to demonstrate that the Coopers are the sole directors of WFI, which they have not done, and not merely ask this Court to assume it.   And Debtors' statement is out of place because it makes little sense to point out something everyone acknowledges -- that the authority to file rests with the WFI Board -- in

16

a paragraph in which the Debtors are arguing that the Class B Managers do not have standing to object to the unauthorized bankruptcy filing.

In short, because they have a sufficient stake at issue, because the Dismissal Motion concerns the Court's jurisdiction over an invalid petition, and through shareholder standing Class B Members have standing to present and prosecute the Dismissal Motion.   In addition, Class B Managers have also objected in the *Joinder to Motion to Dismiss Chapter 11 Case Filed Without Corporate Authorization and Granting Related Relief* [Dkt. 202] and by that joinder Class B Managers – speaking for the sole shareholder – have independent standing.   Notably, the Debtors cite no relevant authority that supports their position that the Class B Members and the Class B Managers in this case lack standing.

B.    The Bylaws Amendment is Valid and Enforceable and the Debtors Have Not Demonstrated Otherwise.

After years of operating WFI through Harbor's Board of Managers and recognizing that Harbor's four Managers are indeed WFI's Board of Directors, the Debtors now claim the document that established that relationship, *i.e.*, the Bylaws Amendment, is invalid.   The Debtors claim the Bylaws Amendment is invalid for one of three reasons: (1) WFI must have at least one director of its own; (2) Directors of a California corporation must be individuals and not an entity; (3) Director duties cannot be delegated to a shareholder.   As explained below, each of these arguments lack merit.

First, WFI has at least one director.   In fact, WFI has four directors.   Section 2.02 of the Bylaws Amendment cannot be read in a vacuum.   It operates necessarily in tandem with Section 6.1 of the Amended and Restated Harbor LLC Agreement.   Section 2.02 of the Bylaws

17

Amendment states that WFI's shareholder is WFI's director.    Section 6.01 says that the affairs of the shareholder are managed exclusively by the four person Board of Managers of Harbor. In other words, the individuals who serve as Harbor's Board of Managers also serve as WFI's Board of Directors.    This is proven up by the fact that, functionally, all the Harbor Board of Managers ever did was manage the affairs of WFI as its Board.    Indeed, the meeting notice attached to the Finston [Dkt. 146] and Hadden [Dkt. 133] declarations is just one example of WFI's and the Coopers' recognition of this relationship, the role of the Board of Managers in WFI affairs, and the validity of the Bylaws Amendment.    Additional examples are noted in Section C below and additional evidence will be introduced at the time of the evidentiary hearing on the Dismissal Motion demonstrating that WFI adopted, accepted, and otherwise acted in accordance with the Bylaws Amendment such that the affairs of WFI were governed by Harbor's Managers as its Board of Directors.

Second, the directors of WFI are natural persons.    They are the four Managers of Harbor for the reasons and upon the basis explained above.    In other words, they are the individuals who under Section 6.1 of the Amended and Restated Harbor LLC Agreement manage the affairs of Harbor and, in that capacity, operate as the directors of WFI.    Notably, the Debtors (or the Coopers) have not produced one document that states or otherwise provides any legitimate basis for the claim that the Coopers are the sole directors of WFI.    Indeed, during the § 341 meeting held on October 10, 2013, Mr. Cooper testified there is not now nor has there ever been any corporate document that authorizes him and/or Mrs. Cooper to act as the sole director(s) of WFI. Such a document is also notably absent from the Dismissal Opposition.    Furthermore, Section

18

301(a) of the California corporations code states that "at each annual meeting of shareholders (aka Harbor), directors shall be elected to hold office until the next annual meeting."   When did WFI's shareholder (Harbor) elect the Coopers as the sole directors? Never.

Finally, the Debtors' statement of California law that duties of directors cannot be delegated or surrendered found in ¶ 71 of the Dismissal Opposition represents at best a misunderstanding of California's close corporations statute and at worst a misrepresentation of the same.   The cases cited by the Debtors are from the years 1933 and 1953, respectively.   The provisions that specifically apply to statutory close corporation - and to WFI in the instant case - were enacted as part of the broader adoption of the General Corporation Law in 1975.   The statute expressly contradicts the Debtors' assertions in Section 300(b) by stating as follows:

> Notwithstanding subdivision (a) or any other provision of this division, but subject to subdivision (c), no shareholders' agreement, which relates to any phase of the affairs of a close corporation, including but not limited to management of its business, division of its profits or distribution of its assets on liquidation, shall be invalid as between the parties thereto on the ground that it so relates to the conduct of the affairs of the corporation as to interfere with the discretion of the board or that it is an attempt to treat the corporation as if it were a partnership or to arrange their relationships in a manner that would be appropriate only between partners.

C.    The Debtors Have Failed to Demonstrate a "Complete Disregard" of all Corporate Formalities Required Before the Court May Apply Principles of Ratification, Waiver, and Estoppel to Find the Coopers the Sole de facto Directors of WFI.

The Debtors next maintain the Court should disregard corporate law, ignore corporate documents, and simply declare the Coopers to be the sole de facto directors of WFI based on what they contend were "outward manifestations" that the Coopers were the sole directors of WFI.   Stated another way, the Debtors contend that the Class B Members have ratified, waived

19

\UPIN, COX & LeGOY
ATTORNEYS AT LAW
P.O. BOX 30000
{ENO, NEVADA 89520
(775) 827-2000

and/or should be estopped from denying the Coopers are WFI's sole directors.    The Debtors rely primarily on In re American Globus Corp., 195 B.R. 263 (Bankr. S.D.N.Y. 1996), for this argument.

American Globus stands for the proposition that one who ignores the corporate formalities cannot rely upon them only when convenient.    Notably, however, American Globus reached that conclusion only after finding a "complete disregard" of all corporate formalities. In Orchard, supra, the court found that the American Globus "complete disregard" of corporate formalities standard was negated by corporate acts as minimal as sending out regular meeting notices and filing appropriate corporate tax returns.    Id. at 826-827 (citing American Globus, 195 B.R. at 266).    Here, the American Globus standard is nowhere close to being met.    In fact, if anything, it is WFI who failed to observe corporate formality by not obtaining requisite Board consent for the present bankruptcy filing.    In any event, in an attempt to meet the "complete disregard" standard, the Debtors point to three events.

The first supposed "outward manifestation" is identified as a written consent of the board of directors of WFI executed in order to authorize it to enter into the $40,000,000 Credit Agreement with BMO Harris in March of 2012.    The Class B Members were never provided with that resolution.    In fact, counsel for the Class B Members requested that resolution from the bank's counsel in connection with the BMO Harris refinancing transaction but the bank's counsel refused to provide the Class B Members with a copy because the Coopers refused to give their consent to allow disclosure to the Class B Members.    Moreover, WFI's directors are to be appointed under California law by Harbor, as provided above, which never happened.    The

20

point is, the Class A Members of Harbor, *i.e.*, the Coopers, do not become directors of WFI because they provide a resolution to BMO Harris saying they are - without Class B Member or Manager knowledge, consent, approval, or any disclosure whatsoever, especially when they hide the resolution from Class B Members.

The Dismissal Motion also refers to annual corporate lists filed with the Nevada and California Secretaries of State.    Again, Class B Members were not informed that the Coopers filed those documents and they were not made aware that the Coopers unilaterally listed themselves as WFI's sole directors in those documents because those documents were not provided to Class B Members or the Class B Managers on behalf of Class B Members.    The same is true with respect to business licenses and other documents that permit WFI to do business in various jurisdictions.    Moreover, these documents would normally be signed by the officers of the entity, not the so-called "directors."

In short, the Debtors identify not one single outward manifestation of intent that demonstrates the Class B Members or Class B Managers acquiesced to the Coopers acting as the sole directors of WFI.    Indeed, as noted above, during the initial § 341 meeting held in this case on October 10, 2013, Fred Cooper was unable to identify a single document (corporate or otherwise) or any other formal action that appointed the Coopers as the sole directors of WFI. But, perhaps the best and most probative evidence that the Coopers were not the sole directors of WFI - and that they knew and understood they were not the sole directors of WFI - are statements to that effect by the Coopers themselves.    For example;

> (a)    In an email dated December 5, 2011, discussing the banking arrangement between WFI and B of A, Mrs. Cooper stated as follows: **"As one of four board members** I understand that although, an individual

21

director, . . .I am part of a whole[.]"

(b)    In an email dated February 29, 2012 discussing the credit arrangement between WFI and BMO, Mr. Cooper stated "**that, in fact, in the present makeup of the Board there must be complete agreement on the Board for a decision of any kind to be enacted.   As you said, 'Fred and Katherine cannot act without us.'   No, we can't.**"

(c)    Significantly, a letter mis-dated January 29, 2012 (which date according to the accompanying email should be January 29, 2013) from the Coopers' attorney providing notice of the Coopers' intent to not renew their employment agreements is addressed to **James B. Hadden and Mark Finston** as members of **"The Board of Directors of WESTERN FUNDING INCORPORATED."**

Moreover, except for the Coopers' unauthorized filing of a voluntary petition on behalf of WFI on September 4, 2013, corporate formalities were regularly observed at both the Harbor and WFI levels.   For example, notices of WFI's Board meetings were regularly sent to Harbor's Managers, regular Board meetings of WFI were held at which Harbor's Managers were recognized as WFI's Board of Directors, minutes of regular and annual meetings were properly kept, and meeting minutes reflect that the four Managers of Harbor were recognized as WFI's Board of Directors for purposes of action and decisions by WFI.

At best, the Debtors have simply made unsupported and unsupportable allegations that Class B Member "allowed" the foregoing filings because Mr. Nick was unwilling to engage in substantial financial disclosures in the states where WFI operated.   That too is false.   Mr. Nick never declined to be a director of WFI.   There was never to be a board of WFI because all affairs of WFI were always to be governed by Harbor's Board of Managers as WFI's Board of Directors.   There were never any licensure issues which would have prevented Mr. Nick from serving on any board affiliated with WFI and, in fact, Mr. Nick was a member of the Board of

22

AUPIN, COX & LeGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

Managers of Harbor, which required him to undergo significant background checks conducted by B of A with the assistance of Mrs. Cooper.    He was asked for information to facilitate those background checks by Mrs. Cooper after which she acknowledged the background check performed by B of A was completely satisfactory.

        D.      <u>The Court Lacks Jurisdiction Over the Petition and it Need Not Reach Section 305 and Bad Faith Under Section 1112(b).</u>

The Court lacks jurisdiction over the invalid petition the Coopers filed on behalf of WFI and, thus, filed without corporate authority on September 4, 2013.    Accordingly, the Court need not determine if dismissal is also warranted under section 305 and/or for bad faith under section 1112(b).

        E.      <u>The Coopers Have No Authority to Vote Individually at the Harbor Level.</u>

Finally, although the Dismissal Opposition correctly state that the Coopers own 55% of Harbor with Class B Members holding the remaining 45%, ownership of a 55% percentage would not allow the Coopers to carry a vote at the Harbor level or otherwise control the affairs of Harbor without the concurrence of the Class B Members.    All Harbor's affairs are conducted by Harbor's Board of Managers and their authority to control and govern Harbor's affairs is exclusive under the limited liability operating agreement.    Harbor was intentionally structured in this manner precisely to avoid the claim the Coopers now make in the Dismissal Opposition that they could simply vote their shares in Harbor against the will of Class B Members.

WFI was also structured so that it was managed exclusively by the Harbor/WFI Board as shown in documents before the Court.    Further, it was specifically negotiated and agreed in the Harbor operating agreement that all decisions at both levels were to be made by the

AUPIN, COX & LeGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

50/50-controlled Board and none by the 45-55 percentage of membership interests. Stated another way, the Coopers alone have no control over major decision of Harbor or WFI as this was specifically negotiated and agreed to by the parties after contentious discussions and debate. Harbor and WFI were intentionally structured so that the Coopers could appoint two members of the Board, with the Coopers appointing themselves, and so that Class B Members could likewise appoint two Board members, who are currently Messrs. Finston and Hadden. The Coopers were well aware of these provisions.

## IV.    CONCLUSION

WFI has four individual directors on its Board of Directors, not two as the Coopers would like the Court to believe. WFI's four directors are the four individuals who serve as Managers of WFI's shareholder, *i.e.,* Harbor. These directors are Mr. Cooper, Mrs. Cooper, Mr. Hadden, and Mr. Finston. The Coopers offer no credible evidence which demonstrates they were the sole directors of WFI. In fact, by their own admissions, the Coopers were not WFI's sole directors, they knew they were not WFI's sole directors, and they knew they could not act alone as WFI's directors. Yet, acting alone, the Coopers signed a voluntary petition under penalty of perjury on behalf of WFI knowing that the corporate resolution that purported to authorize WFI the petition was invalid. In short, the Coopers fraudulently invoked the jurisdiction of this

///

///

///

///

AUPIN, COX & LEGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

Court and, for that reason, the voluntary petition the Coopers filed on behalf of WFI on September 4, 2013, should be dismissed.    The Court should further reserve jurisdiction for any necessary and appropriate sanction proceedings.

DATED this 25th day of October, 2013.

MAUPIN, COX & LEGOY

By___*/s/ Christopher D. Jaime*___
    Christopher D. Jaime, Esq.

Attorneys for Class B Members of Harbor Structured Finance, LLC

25

<u>CERTIFICATE OF SERVICE</u>

I certify under penalty of perjury that I am an employee of MAUPIN, COX   & LeGOY, Attorneys at Law, and that on the date indicated below, I served the foregoing document(s) described as follows:

**REPLY OF CLASS B MEMBERS OF HARBOR**
**STRUCTURED FINANCE TO DEBTORS' OMNIBUS OPPOSITION**
**TO MOTION TO DISMISS CHAPTER 11 CASE AND JOINDER THEREIN**

on the party(s) set forth below by:

_____    Placing an original or true copy thereof in a sealed envelope placed for collection and mailing in the United States Mail, at Reno, Nevada, postage paid, following ordinary business practices, addressed as follows:

<u>XXX</u>    Electronic filing via the U.S. Bankruptcy Court CM/ECF filing system, to all those persons listed on the United States Bankruptcy Court ECF Confirmation Sheet.

DATED this 25th day of October, 2013.

_____*/s/ Karen Bernhardt*_____
Employee

AUPIN, COX & LeGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

# EXHIBIT 1

# EXHIBIT 1

# EXHIBIT 1

1

1          UNITED STATES BANKRUPTCY COURT

2               DISTRICT OF NEVADA

3               LAS VEGAS, NEVADA

4   In re:  WESTERN FUNDING        )   E-Filed:  09/26/13
    INCORPORATED,                  )
5                                  )
             Debtor.               )   Case No.
6                                  )   BK-S-13-17588-LED
    _____)   Chapter 11
7

8

9

10

11            TRANSCRIPT OF PROCEEDINGS
                       OF
12            HEARING RE: MOTIONS
                    VOLUME 1
13      BEFORE THE HONORABLE LAUREL E. DAVIS
          UNITED STATES BANKRUPTCY JUDGE
14
              Tuesday, September 17, 2013
15
                     4:00 p.m.
16

17

18

19

20

21

22

23   Court Recorder:      Helen C. Smith

24
    Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.

```
 1              THE CLERK:  Oh.

 2              THE COURT:  The status conferences that I set

 3    on new 11s is at 10:30.

 4              THE CLERK:  Okay.

 5              THE COURT:  Sorry.  I'm not reading my

 6    handwriting very well.

 7        I appreciate that you want to have your motion to

 8    dismiss heard quickly.  I have not carefully reviewed

 9    it.  I simply reviewed the application for order

10    shortening time.

11              UNIDENTIFIED SPEAKER:  But --

12              THE COURT:  My thinking process was that I

13    would like to set it for October 17th in the event that

14    we do have to have an evidentiary hearing.

15        My concern is that the matters that you raise in

16    your motion are inherently fact based and that we would

17    need to have some evidence.

18              MR. JAIME:  I would agree.

19        My only concern was that -- two things.  It might

20    make sense for the Court -- and the Court can certainly

21    schedule it as it sees fit -- to determine whether the

22    petition was even valid to begin with before granting

23    any final relief --

24              THE COURT:  Um-h'm.

25              MR. JAIME:  -- No. 1.
```

1     And if final relief is granted on any of these

2  first-day motions, that it not prejudice the ability to

3  seek dismissal or that the Court not assume that it has

4  jurisdiction --

5           THE COURT:  Um-h'm.

6           MR. JAIME:  -- subject to the motion being

7  heard and determined.

8           THE COURT:  I understand.

9     My challenge is that this is a large, complex case

10  with more than one battling party, and I feel like doing

11  this on an interim basis and addressing the

12  cash-collateral issues is equally important, and I have

13  limited time on my calendar.

14     So I think that the most efficient thing for my

15  calendar would be to put it on the 17th at 1:30.

16           MR. JAIME:  That's fine with us.

17           THE COURT:  And with the understanding that

18  this would be a full evidentiary hearing.

19           MR. JAIME:  Okay.

20           THE COURT:  And I notice that certainly your

21  motion on a preliminary basis attached a number of

22  documents.

23     We would want those to be authenticated and

24  presented with a declaration for Direct.  That's fine if

25  it works among counsel producing the witnesses for

1    cross-examination.

2           MR. JAIME:  Not a problem.

3           THE COURT:  But I do appreciate that you want

4    to get this on soon.

5        It's just with the volume of cases and things that

6    we have I think we get both of them on track and be

7    prepared to make a ruling as soon as possible after the

8    17th.

9           MR. JAIME:  Just so long as that counsel agrees

10   that there is no -- I mean, I don't want to concede

11   jurisdiction is what I don't want to happen.

12       He can dispute that --

13          MR. ZIRZOW:  I don't know what to say to that.

14   Everything is disputed.

15       So, your Honor, with respect to briefing --

16          THE COURT:  Um-h'm.

17          MR. ZIRZOW:  -- did you want the normal

18   LR 9014 14 days for our opposition and 7 days for the

19   reply?

20          THE COURT:  I would.

21          MR. ZIRZOW:  Okay.

22          THE COURT:  I mean, it's not lost on me that

23   that's a full month from now, so we're looking at those

24   time periods.

25          MR. ZIRZOW:  Okay.

1     I certify that the foregoing is a correct

2 transcript from the electronic sound recording of the

3 proceedings in the above-entitled matter.

4

5

6

/s/ Biljana Garotic            09/26/13

7 _____      _____

8 Biljana Garotic, Transcriptionist    Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25