Christopher D. Jaime (NV SBN 4640)
MAUPIN, COX & LEGOY
4785 Caughlin Parkway
Reno, Nevada 89519
Telephone: (775) 827-2000
Facsimile: (775) 827-2185
E-mail: cjaime@mclrenolaw.com
Attorneys for Class B Members of
Harbor Structured Finance, LLC,
the Sole Shareholder of Western
Funding Incorporated

Joseph F. Murray (OH BN 0063373)
MURRAY MURPHY MOUL + BASIL
1533 Lake Shore Drive
Columbus, Ohio   43204
Telephone: (614) 488-0400
Facsimile: (614) 488-0401
E-mail: murray@mmmb.com
Attorneys for Class B Members of
Harbor Structured Finance, LLC,
the Sole Shareholder of Western
Funding Incorporated

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>WESTERN FUNDING INCORPORATED,<br><br>    Debtor. | Case No. BK-S-13-17588-LED<br>Chapter 11<br>(Joint Administration) |
| In re:<br><br>WESTERN FUNDING INC. OF NEVADA,<br><br>    Debtor. | Case No. BK-S-13-17586-LED<br>Chapter 11 |
| In re:<br><br>GLOBAL TRACK GPS, LLC,<br><br>    Debtor. | Case No. BK-S-13-17589-led<br>Chapter 11<br><br>Hearing Date: Nov. 1 & 4, 2013<br>Hearing Time: 9:00 a.m. |

**POST-EVIDENTIARY HEARING BRIEF OF CLASS B MEMBERS OF HARBOR STRUCTURED FINANCE, LLC**

"Class B Members" of Harbor Structured Finance LLC ("Harbor") submit the below Memorandum of Points and Authorities as their post-evidentiary hearing brief in further support

1

of their *Motion to Dismiss Chapter 11 Case Filed Without Corporate Authorization and Granting Related Relief* (the "Dismissal Motion") [Dkt. No. 57], their *Reply of Class B Members of Harbor Structured Finance to Debtors' Omnibus Opposition to Motion to Dismiss Chapter 11 Case and Joinder Therein* (the "Dismissal Reply") [Dkt. No. 242], the *Joinder to Motion to Dismiss Chapter 11 Case Filed Without Corporate Authorization and Granting Related Relief* [Dkt. No. 202] and the *Joinder to Reply of Class B Members of Harbor Structured Finance to Debtors' Omnibus Opposition to Motion to Dismiss Chapter 11 Case and Joinder Therein* [Dkt. No. 242] filed by "Class B Managers" Mark Finston ("Mr. Finston") and James B. Hadden ("Mr. Hadden"), as well as all related declarations and the evidentiary hearing on those matters entertained by the Court on November 1 and 4, 2013, all of which are incorporated herein and made a part hereof by this reference.

MAUPIN, COX & LeGOY

By: /s/ Christopher D. Jaime
Christopher D. Jaime, Esq.
Attorneys for Class B Members of
Harbor Structured Finance, LLC, the
Sole Shareholder of Western Funding
Incorporated

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This matter involves a narrow and limited issue; specifically, whether the Court has jurisdiction over the Chapter 11 case of Western Funding Incorporated ("WFI") commenced

pursuant to a voluntary petition filed on September 4, 2013 (the "Petition"). Class B Members and the Class B Managers of Harbor have moved to dismiss WFI's Chapter 11 case because the Petition was not authorized by a unanimous - or even a majority - vote of the Board of Managers of Harbor who, under the governing and operating documents of Harbor and WFI, as well as by course of practice and conduct, also served, functioned, and were universally recognized as WFI's directors. Stated otherwise, the Petition is unauthorized because the corporate resolution that purports to authorize the filing of the Petition is invalid as it is signed by only two of four directors of WFI. Consequently, the Court lacks subject matter jurisdiction.

Over the course of a day and a half beginning on November 1, 2013, and concluding on November 4, 2013, the Court heard four witnesses testify consistently that the four Managers on the Board of Managers of Harbor, *i.e.*, Mr. Hadden, Mr. Finston, Frederick Cooper ("Mr. Cooper") and Katherine Cooper ("Mrs. Cooper") (Mr. And Mrs. Cooper being referred to herein, as necessary, as the "Coopers") served, functioned, and were universally recognized as WFI's directors. Class B Member Philipp D. Nick ("Mr. Nick") testified this was consistent with his understanding of the structure and organization of Harbor and WFI under the respective governing documents and as a matter of practice.[1] Messrs. Hadden and Finston, two of

---

[1] The governing documents include, but are not necessarily limited to, the Amended and Restated Limited Liability Company Agreement / Harbor Structured Finance / a Delaware Limited Liability Company dated to be effective as of October 11, 2010 [Ex. 6] (the "Amended and Restated Harbor LLC Agreement"), the Amended and Restated Bylaws of Western Funding Incorporated [Ex. 5], the Amendment to the Amended and Restated Bylaws of Western Funding Incorporated [Ex. 4], the Certificate of Amendment of Articles of Incorporation dated October 11, 2010 and endorsed-filed in the Office of the Secretary of State of California October 13, 2011 [Ex. 3], the Western Funding Incorporated Action by Unanimous Written Consent of the Sole Shareholder [Ex. 33], and the Western Funding Incorporated Action by Unanimous Consent of the Board of Directors dated October 15, 2010 [Ex. 1].

3

Harbor's Managers, testified that over the course of several years WFI operated without a separate board of directors; instead its affairs were and must be managed exclusively by Harbor's Board of Managers. Even Mr. Cooper, whose testimony for the most part lacks credibility, conceded that Harbor's Board of Managers, which includes Messrs. Hadden and Finston, was entitled to vote on all matters that concerned Harbor's economic interests. Mr. Cooper further conceded that a bankruptcy petition filed by WFI is a matter that concerns the economic interests of Harbor. And, in so doing, Mr. Cooper acknowledged that the Petition required the approval of Messrs. Hadden and/or Finston, which was not obtained. Mr. Cooper, Mr. Finston, and Mr. Hadden each testified that Harbor's Board of Managers voted with approval only to retain counsel to "prepare" a bankruptcy petition for possible future use in the event a defensive bankruptcy filing became desirable. In short, testimony by each of these witnesses is consistent with the operating and governing documents referenced in footnote 1 that set forth the structure of WFI and Harbor and that make Harbor's Managers the directors of WFI, as well as California's close corporation law which is discussed below.

Messrs. Hadden, Finston, and Cooper also testified that Messrs. Hadden and Finston did not vote to authorize the Petition the Coopers signed and filed on behalf of WFI or, in other words, that the Petition was authorized by only two of four directors. Messrs. Hadden, Finston, and Cooper all testified that two voting directors do not constitute a majority for voting purposes. In that respect, regardless of whether the Court finds that Harbor's Managers are WFI's directors or that Harbor's Mangers are WFI's directors for WFI matters that affect Harbor's "economic interests" as Mr. Cooper stated, the result is the same. The corporate resolution that purports to

4

authorize WFI to file the Petition on September 4, 2013, is invalid, the Petition was not authorized, and the Court lacks jurisdiction. Dismissal is therefore required.

## II. ATTORNEY-CLIENT PRIVILEGE

The Court requested briefing on the waiver of the attorney-client privilege. As explained below, any attorney-client privilege held by WFI was waived during the course of the evidentiary hearing held on November 1 and 4, 2013.

The attorney-client privilege attaches to corporations. Upjohn v. U.S., 449 U.S. 383, 389-390 (1981). However, as an inanimate object "[a] corporation cannot speak directly to its lawyers." Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 348 (1985). In fact, "[a]s fictitious entities, corporations can seek and receive legal advice and communicate with counsel only through individuals empowered to act on behalf of the corporation." Admiral Ins. Co. v. U.S. Dist. Court, 881 F.2d 1486, 1492 (9th Cir. 1989) (citation omitted). Thus "the power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors." Commodity Futures, 471 U.S. at 348.

Here, there are three bases upon which the Court may find a waiver of the attorney-client privilege held by WFI. First, despite repeated prompting by the Court, the privilege was never invoked or asserted by WFI, its corporate counsel, or its proposed reorganization counsel at any time during the course of the evidentiary hearing. Second, Messrs. Hadden, Finston, and Cooper all testified extensively (and, again, without objection or any assertion of the privilege) about verbal communications each had with WFI's corporate counsel and proposed reorganization counsel. Third, both parties also offered, and the Court admitted, emails and

5

AUPIN, COX & LEGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

other written communications between Messrs. Hadden, Finston, and Cooper, on the one hand, and WFI's corporate and proposed reorganization counsel, on the other hand.

### III. STANDING

A. <u>Class B Members and Class B Managers Have Standing Under § 1109(b)</u>.

WFI contends that Class B Members are secured creditors who lack standing to challenge the Petition as unauthorized. WFI also contends that the Class B Managers lack standing although they are the individuals through whom Harbor, WFI's sole shareholder, "speak" and are the disenfranchised WFI directors who did not approve the filing of the Petition. WFI disputes that 11 U.S.C. § 1109(b) grants the Class B Members standing to seek dismissal of the Petition as unauthorized.[2] WFI's argument is contradicted by controlling Ninth Circuit authority and by the Third and Sixth Circuits. Moreover, WFI says nothing about Class B Members' and Class B Managers' standing to seek dismissal on the basis the Court lacks jurisdiction.

On November 1, 2013, WFI's proposed counsel referred the Court to <u>Royal Indemnity Co. v. American Bond & Mortg. Co.</u>, 289 U.S. 165 (1933) and the unpublished memorandum decision of Judge Myers in <u>In re Sterling Mining Co.</u>, 2009 WL 2475302 (Bankr. D. Idaho 2009). WFI's proposed counsel noted that in <u>Royal Indemnity</u> the Supreme Court concluded that the creditors in that case lacked standing to seek dismissal of a petition on the basis the petition was unauthorized. However, the creditors in <u>Royal Indemnity</u> sought dismissal based on a statute that was enacted not for their protection but was enacted specifically for the protection of shareholders. The Supreme Court denied standing to the creditors who sought

---

[2] Further references to "§" are, unless otherwise noted, references to the cited section of Title 11, U.S. Code.

6

dismissal because they were not within the class of persons the legislature intended to protect under the statute upon which the creditors relied for relief. See Id. at 171 ("Statutes such as the one relied on are intended for the protection of stockholders and have nothing to do with the interests or rights of creditors."). That is not the case here.

Initially, it is important to recognize that the Supreme Court in Royal Indemnity did not hold that in all instances creditors lack standing to challenge a petition as unauthorized. Rather, it held only that creditors lack standing when they rely upon statutes not enacted for their protection. That is not the case with respect to creditors under § 1109(b). Class B Members have identified numerous cases in which the courts relied on § 1109(b), enacted in 1978 and thus enacted by Congress well after and with full knowledge of Royal Indemnity, as a basis for creditor standing to challenge a voluntary petition as unauthorized. These include: In re Carolina Park Assoc., 430 B.R. 744, 748-749 (Bankr. D.S.C. 2010), vacated on other grounds, 2010 WL 3893628 (D.S.C. 2010); In re Orchard at Hansen Park, 347 B.R. 822, 825-826 (Bankr. N.D. Tex. 2006); In re Gucci, 174 B.R. 401, 412 (Bankr. S.D.N.Y. 1994); In re Consolidated Auto Recyclers, Inc., 123 B.R. 130, 137-138 (Bankr. D. Me. 1991); In re Giggles Restaurant, Inc., 103 B.R. 549, 555-556 (Bankr. D.N.J. 1989). As noted above, WFI's proposed counsel disputes the authority of § 1109(b) and, in particular, disputes that § 1109(b) grants what he referred to as "legal standing." To support that position WFI's proposed counsel referred the Court to Sterling Mining which, in turn, relied exclusively on Still v. Fundsnet, Inc. (In re Southwest Equipment Rental), 152 B.R. 207 (Bankr. E.D. Tenn. 1992). At best, Sterling Mining and Southwest Equipment are dubious, non-binding authority for the proposition for

AUPIN, COX & LEGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

which they are cited for several reasons.

First, Sterling Mining's conclusion that § 1109(b) is not a standing statute is at odds with recent Ninth Circuit, binding authority. In Motor Vehicle Cas. Co. v. Thorp Insulation Co. (In re Thorpe Insulation Co.), 677 F.3d 869 (9th Cir. 2012), the Ninth Circuit held that § 1109(b) grants parties in interest who have suffered an injury in fact likely to be redressed by judicial action and who have an interest or right affected by a bankruptcy proceeding such that they fall within the "zone of interests" Congress intended § 1109(b) to protect standing in a bankruptcy case.[3]  Id. at 888-889. Indeed, as the Ninth Circuit explained: "Congress intended § 1109(b) to confer broad standing so that those whose rights would be affected by reorganization proceedings could participate and protect their rights." Id. at 888. In that respect, the majority position cited above and explained in detail in the Dismissal Reply is consistent with this Circuit's view of § 1109(b) expressed in Thorpe and supports Class B Members' standing. WFI's Chapter 11 case affects the Class B Members' contractual rights, their equity interests, and even possibly their litigation rights in court. That harm is directly traceable to the unauthorized Petition and can be redressed by judicial action such as dismissal. Moreover, as secured creditors, Class B Members fall within the "zone of interests" that Congress intended § 1109(b) to protect and, in that respect, the Class B Members are unlike the creditors in Royal Indemnity who attempted to seek relief under a statute not enacted for their protection or, in other words, fell outside the "zone of interests" protected by the statute relied upon. See

---

[3] Notably, the Sixth Circuit considers § 1109(b) to be a standing statute. See e.g., In re Lee, 467 B.R. 906, 916 (6th Cir. BAP 2012) ("Section 1109(b) 'was intended to confer broad standing at the trial level' in chapter 11 cases." (Citation omitted)). The Third Circuit does as well. See e.g., In re Globus Indus. Techs., Inc., 645 F.3d 201, 211 (3d Cir. 2011) ("Standing in bankruptcy cases is also governed by the terms of 11 U.S.C. 1109(b)[.]").

8

Thorpe, 677 F.3d at 888.

Second, even if Sterling Mining was correctly decided (which it was not in light of Thorpe) it would fall within the minority position. Other than a notation in footnote 1 of In re Cabernet Holdings, LLC, 2010 WL 2540116 (Bankr. M.D.N.C. 2010), discussing different positions courts have taken on this issue, Sterling Mining has not been followed or cited by any court for the proposition for which it is cited by WFI in this case. This Court should not be the first to follow a decision that by all accounts is a minority position inconsistent with Ninth Circuit law at best, and, at worst is likely bad law in light of Thorpe.

Third, although the movant in Sterling Mining alleged the Court lacked jurisdiction because the petition in that case was not authorized, prior to filing its motion to dismiss it had alleged in an adversary proceeding against the debtor that the Court had jurisdiction under 28 U.S.C. § 1334, that the matter was a "core proceeding" under 28 U.S.C. § 157(b), that venue was proper under 28 U.S.C. § 1409, and that the court had "personal jurisdiction" over the debtor. See Sterling, 2009 WL at *4 n. 13. None of those allegations were made here and, in fact, as set out in detail in the Dismissal Reply, the Class B Members have repeatedly objected to the Court's jurisdiction and have done so from the inception of this case when WFI sought affirmative relief on its "first day motions."

In short, Class B Members have significant interests affected by the WFI bankruptcy case and, unlike the creditors in Royal Indemnity who were not within the class the legislature intended to protect by the statutory scheme relied upon in that case, here, as creditors the Class B Members fall squarely within the zone of interests Congress intended to protect in a Chapter 11

case through § 1109(b). Furthermore, inasmuch as the Petition and WFI's Chapter 11 case affect the rights of Class B Members and dismissal would remedy that injury, the elements of standing under § 1109(b) are met. Accordingly, Class B Members have sufficient standing under § 1109(b) to seek dismissal of this case on the basis the Petition was not authorized.

Additionally, WFI concedes that a shareholder has standing to contest the filing of a voluntary petition as unauthorized. The sole shareholder of WFI is Harbor. Pursuant to § 6.1 of the Amended and Restated Harbor LLC Agreement, Harbor's Managers have the exclusive authority to manage its business, property, and affairs. Stated another way, Harbor, the shareholder of WFI, can only "speak" through its Managers. Here, two Managers of Harbor have objected to the Petition and also seek to have it dismissed. Since those Managers are vested with exclusive authority over Harbor's affairs and "speak" for Harbor, independent of Class B Members' standing as a creditor, shareholder standing for the Class B Managers also exists. Indeed, WFI's argument to the contrary, if accepted, would produce an absurd result because it would lead to the conclusion that no one has standing to challenge the unauthorized actions of the Coopers. Certainly, those with the voice of the shareholder do and, without a doubt, the Class B Managers as the disenfranchised directors of WFI do as well.

B. Class B Members and Class B Managers Have Standing to Address the Court's Lack of Jurisdiction *Independent* of § 1109(b).

Seven years after the Supreme Court decided Royal Indemnity it decided SEC v. United States Realty and Improvements Co., 310 U.S. 434 (1940), in which it addressed the inherent authority of the bankruptcy court to dismiss a petition for lack of jurisdiction, and the standing of a creditor to move for dismissal on the basis of such jurisdictional defect, when the jurisdiction

10

of the bankruptcy court is improperly invoked.    In SEC, the Supreme Court stated as follows:

> And it has long been the practice of bankruptcy courts to permit creditors or others not entitled to file pleadings or otherwise contest allegations of a petition, to move for the vacation of an adjudication or the dismissal of a petition on grounds, whether strictly jurisdictional or not, that the proceeding ought not to be allowed to proceed.

Id. at 457-458.

As noted in the Dismissal Reply, the court in Matter of Verazzano Towers, Inc., 10 B.R. 387 (Bankr. E.D.N.Y. 1981), recognized the distinction between Royal Indemnity and SEC and found creditor standing to seek the dismissal of a petition for lack of jurisdiction even if the jurisdictional analysis requires the court to consider whether the petition is unauthorized. Id. at 392. In that respect, Verazzano Towers is consistent with authority in this Circuit which recognizes that an unauthorized petition raises jurisdictional issues, In re Cloverleaf Properties, 78 B.R. 242 (9th Cir. 1987), and "[a] creditor may move to dismiss a [bankruptcy] petition on the ground that the court does not have jurisdiction of the debtor; ... and a court on its own initiative can examine the facts before it to determine whether or not it has the jurisdiction to hear the proceeding."  Sumida v. Yumen, 409 F.2d 654, 657 (9th Cir. 1969).

The point is, when the bankruptcy court's jurisdiction is at issue because it was wrongly or fraudulently invoked, as in this case, a creditor's standing to raise that issue and seek dismissal is not confined to or limited by § 1109(b). In fact, when advised of a jurisdictional defect the bankruptcy court has an independent obligation to determine if it has jurisdiction which includes the obligations to hear and consider all facts that bear upon the jurisdictional issue. In re Alternate Fuels, Inc., 2010 WL 4866690 (Bankr. D. Kan. 2010).

AUPIN, COX & LEGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

Alternate Fuels involved a motion to dismiss brought by an individual claiming to be the director of the corporate debtor and alleging that the individual who signed the petition as president of the debtor lacked authority to file the case. Id. at *1. In response to the trustee's and debtor's oppositions to the motion to dismiss which included arguments that the movant lacked standing under § 1109(b), the court artfully explained as follows:

> The Trustee and Debtor make additional alternative arguments which the Court rejects as misplaced. The issue raised by the Second Motion to Dismiss is whether the Court has subject matter jurisdiction. This issue is unique because 'not only is it impossible to foreclose the assertion of this defense by the passage of time or the notion of estoppel, but also it is impossible to cure or waive a defect of subject matter jurisdiction by consent of the parties.' [Footnote omitted].
>
> As stated above, '[i]f the... Court finds that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, it has no alternative but to dismiss the petition.' [Footnote omitted][.]
>
> Likewise, the Court rejects the assertion that [movant] is not a party in interest with standing to raise the question of subject matter jurisdiction. '[B]ecause of the fundamental and systemic nature of the defense..., lack of subject matter jurisdiction may be asserted any time by the court, sua sponte, either at the trial or appellate level.' [Footnote omitted]. In fact, the Court has an obligation to see that it has jurisdiction, and jurisdiction cannot be conferred by the action of the parties. [Footnote omitted]. Therefore, once the possible absence of subject matter jurisdiction has been brought to the attention of the Court, it has a duty to rule on the issue, notwithstanding the niceties of the rules about parties in interest. [Movant's] failure to file a proof of interest and his possible failure to be a party in interest pursuant to § 1109(b) are not relevant.
>
> For the same reason, Debtor's and the Trustee's arguments that even if [movant] prevails on his argument that the filing was unauthorized, the Court should not dismiss the case because of the best interests of creditors is beside the point. Either the Court has subject matter jurisdiction or it does not; the interests of creditors do not figure in the equation.

Id. at *13-14.

AUPIN, COX & LEGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

12

The Court in In re Comscape Telecommunications, Inc., 423 B.R. 816 (Bankr. S.D. Ohio 2010), expressed a similar sentiment with respect to dismissal under § 1112(b), stating that:

> It is well-established that lack of authority to commence a bankruptcy case constitutes cause for dismissal. However, the Court need not rely on § 1112(b) for authority to dismiss this case. Whenever a court 'finds that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, it has no alternative but to dismiss the petition.' The Court, therefore, would be required to dismiss an unauthorized filing even if § 1112(b) were not in the Bankruptcy Code.

Id. at 829-830 (internal citations omitted).

In short, when the issue is jurisdictional and dismissal is sought based on a lack of jurisdiction resulting from an unauthorized Chapter 11 petition, a creditor has standing to raise the issue and prosecute dismissal independent of § 1109(b) and § 1112(b), the bankruptcy court has an obligation to consider the facts that place its jurisdiction in question, and if the bankruptcy court determines that it lacks jurisdiction because a petition was unauthorized it must dismiss the case without regard to whether dismissal is in the best interest of creditors or the estate. Here, as set forth in the Dismissal Reply, from the inception of this case the Class B Members, joined by the Class B Managers, have consistently maintained that the Court lacks jurisdiction on the basis the Petition was not authorized by a valid corporate resolution because the resolution that purports to authorize the Petition was signed by only two of four directors when unanimity or, at a minimum, a majority is required. As set forth in the Dismissal Reply, Class B Members have framed the Dismissal Motion as jurisdictional and they raised the court's lack of jurisdiction when the Court heard WFI's "first day motions" on shortened time on September 17, 2013. Since then, Class B Members, joined by the Class B Managers, have continued to object to other

13

requests by WFI for substantive relief on the basis the Court lacks jurisdiction because the Petition was not authorized. This argument culminated with and was confirmed by overwhelming evidence introduced during the evidentiary hearing held on November 1 and 4, 2013. And because that evidence demonstrates the Court lacks jurisdiction over the unauthorized Petition the Coopers filed on September 4, 2013, any testimony by Mr. Cooper regarding the need to file a petition because of a purported "emergency," that a sale will supposedly benefit creditors, or that a sale to Carfinco is in the best interest of the creditors and the estate is entitled to no weight because it is not relevant in the jurisdictional analysis.

IV. **OTHER LEGAL ISSUES THAT REQUIRE LIMITED DEVELOPMENT**

   A. <u>California Close Corporation Law</u>.

WFI is a California close corporation and is qualified as such under California law and by virtue of the Certificate of Amendment of Articles of Incorporation signed by Fred Cooper and filed with the California Secretary of State. Harbor, as WFI's sole shareholder, was appointed and agreed to act as WFI's sole director. Insofar as Harbor acts exclusively by and through its Board of Managers, the individuals appointed to Harbor's Board of Managers function and serve as WFI's Board of Directors. This arrangement was expressly agreed upon by all of Harbor's owners at the time of its acquisition of WFI and is entirely consistent with California close corporation law.

Section 300(b) of the California Corporations Code authorizes shareholders of a statutory close corporation, such as WFI, to enter into a shareholders' agreement that relates to "any phase" of its affairs including, expressly, "management of its business" even though such an

14

agreement "so relates to the conduct of the affairs of the corporation as to interfere with the discretion of the board" or that it "is an attempt to treat the corporation as if it were a partnership." The **only** limitations on the ability of a close corporation to alter its management structure are found in § 300(c), none of which are applicable here. In fact, noticeably absent from § 300(c) is any restriction on the ability of a close corporation to modify who may be a director. In other words, the only limitations on the right of a California close corporation under § 300(b) to enter into "any" agreement concerning its management are found in § 300(c) and nowhere does § 300(c) prohibit a close corporation from having an entity as a director. Put yet another way, §§ 300(b) and 300(c) trump any requirement under the general California Corporations Code that a director of a California close corporation must be a natural person.[4]

If the governing documents evidencing that Harbor, through its Board of Managers, has the exclusive authority to manage WFI are deemed unenforceable for any reason, then who has such authority? It is certainly not the Coopers alone. Mr. Cooper readily admitted that he can point to no governing document giving the Coopers authority to manage WFI. He testified that there is no document evidencing that either he or Mrs. Cooper was properly appointed as a director of WFI. Thus, the Court would be left with two choices. It could determine whether there is a de facto board. Alternatively, it could order that a board to be elected in accordance with the procedures required by the California Corporation Code and afford those directors the opportunity to consider whether to authorize a petition. Both alternatives produce the same

---

[4] Of course, here, the ones who function and serve as WFI's directors are natural persons. Harbor acts only through a Board of Managers. Harbor's Amended and Restated Limited Liability Agreement expressly requires as much. Ex. 6 at § 6.1. Harbor's Board of Managers consists of the individuals appointed pursuant to § 6.7 of Amended and Restated Limited Liability Agreement, which currently include Messrs. Finston, Hadden, Cooper and Mrs. Cooper.

15

AUPIN, COX & LEGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

result; namely, that the Petition was not and would not be authorized.

Any analysis as to who, in practice, functioned as WFI's board of directors leads inevitably to the conclusion that WFI's board of directors includes four persons, Messrs. Finston, Hadden, and Cooper and Mrs. Cooper. The testimony and exhibits overwhelmingly evidence as much, including, of course, the testimony that it was these same four persons that considered and voted on the decision to retain bankruptcy counsel and prepare, but not file, a petition.

The process required by the California Corporation Code for selecting directors would produce the same result – a four person board of directors consisting of Messrs. Finston, Hadden, Cooper and Mrs. Cooper which has not and would not authorize the filing of a petition. Section 301(a) of the California Corporations Code requires that directors are to be elected by the shareholder(s) at each annual meeting. In this instance, Harbor would be empowered to elect WFI's directors. Mr. Cooper, of course, testified that such an election has never taken place. If Harbor were compelled to appoint directors, it would surely appoint a four person board consisting of Messrs. Finston, Hadden, and Cooper and Mrs. Cooper. After all, Harbor is governed by a Board of Managers made up of those same four persons. See Ex. 6 at § 6. Once appointed, a majority of them would have to approve of the filing of a petition on behalf of WFI. The testimony already given confirms that a majority vote would be unobtainable, which is precisely why the Coopers attempted an end-run.

B.   Evidentiary Standard.

Class B Members need only demonstrate by a preponderance of the evidence that the Petition the Coopers filed on behalf of WFI was unauthorized. See Comscape, 423 B.R. at 830.

16

AUPIN, COX & LEGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

At a very minimum, the testimony by Messrs. Hadden, Finston, and Cooper is consistent insofar as Harbor's Managers functioned as WFI's board at the very least with respect to all WFI matters that affected Harbor's economic interests. Mr. Cooper testified that a bankruptcy filing by WFI undoubtedly affects Harbor's economic interests which means that, at a very minimum, authorization to file the Petition required the approval of Messrs. Hadden and Finston which authorization the evidence overwhelming confirms was never obtained and would not have been provided in any event.

## V. ADDITIONAL EVIDENTIARY RULINGS OR OBJECTIONS

Without waving any objections made, the Class B Members are not seeking any further evidentiary rulings at this time.

## VI. CONCLUSION

The evidence admitted during the evidentiary hearing and contained in the briefs and related declarations overwhelmingly demonstrates that Harbor's Board of Managers functioned, served, and were universally recognized as WFI's directors. Even if the testimony of Mr. Cooper is to be believed, Harbor's Board of Managers functioned as WFI's directors in all WFI matters in which Harbor held an economic interest, which would include, of course a bankruptcy petition – which Mr. Cooper expressly acknowledged. Both the Petition and the corporate resolution that purports to authorize the Petition were signed by only two of the four directors. Thus, not only is the corporate resolution that serves as the Coopers' basis for the bankruptcy filing invalid, the Petition was never authorized and the absence of an authorized petition divests the Court of subject matter jurisdiction over this proceeding. Therefore, and regardless of

AUPIN, COX & LEGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

whether there are or may be other options, regardless of whether WFI has secured a letter of intent for the purchase of its portfolio, assets, or stock, and regardless of any purported emergency that may or may not have existed on September 4, 2013, the Court's lack of jurisdiction over WFI's Chapter 11 case leaves the Court with no option but to dismiss that proceeding. Indeed, as Judge Beesley very recently held in In re B & M Land and Livestock, LLC, 498 B.R. 262 (Bankr. D. Nev. 2013), which, incidentally, involved a creditor's request for dismissal of an unauthorized petition, "[w]here a bankruptcy petition has been filed on behalf of an entity by a party who lacks authorization to file on the entity's behalf, dismissal of the bankruptcy case is the appropriate remedy." Id. at 268. This, of course, leads back to the Supreme Court's holding in Price v. Gurney, 324 U.S. 100 (1945), that an unauthorized petition must be dismissed or, as the Supreme Court stated, the bankruptcy court "has no alternative but to dismiss the petition." Id. at 106.

In sum, the evidence before this Court overwhelmingly demonstrates that the Dismissal Motion should be granted and the Petition that the Coopers filed on behalf of WFI and all proceedings thereon dismissed.

DATED this 8th day of November, 2013.

          MAUPIN, COX & LEGOY

          By:   */s/ Christopher D. Jaime*
                Christopher D. Jaime, Esq.

          Attorneys for Class B Members of Harbor Structured Finance, LLC

# CERTIFICATE OF SERVICE

I certify under penalty of perjury that I am an employee of MAUPIN, COX & LeGOY, Attorneys at Law, and that on the date indicated below, I served the foregoing document(s) described as follows:

**POST-EVIDENTIARY HEARING BRIEF OF CLASS B MEMBERS OF HARBOR STRUCTURED FINANCE, LLC**

on the party(s) set forth below by:

_____  Placing an original or true copy thereof in a sealed envelope placed for collection and mailing in the United States Mail, at Reno, Nevada, postage paid, following ordinary business practices, addressed as follows:

__XXX__  Electronic filing via the U.S. Bankruptcy Court CM/ECF filing system, to all those persons listed on the United States Bankruptcy Court ECF Confirmation Sheet.

DATED this 8th day of November, 2013.

_____ */s/ Karen Bernhardt*
Employee

19