LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzlawnv.com
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Telephone: (702) 382-1170
Fascimile: (702) 382-1169
Attorneys for Debtors

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>WESTERN FUNDING INCORPORATED,<br>Debtor. | Case No.: BK-S-13-17588-LED<br>Chapter 11<br>(Jointly Administered) |
| In re:<br>WESTERN FUNDING INC. OF NEVADA,<br>Debtor. | Case No.: BK-S-13-17586-LED<br>Chapter 11 |
| In re:<br>GLOBAL TRACK GPS, LLC,<br>Debtor. | Case No.: BK-S-13-17589-LED<br>Chapter 11 |

### JOINT DISCLOSURE STATEMENT FOR JOINT PLAN OF REORGANIZATION

THIS DISCLOSURE STATEMENT AND THE ACCOMPANYING JOINT PLAN OF REORGANIZATION HAVE NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT. A HEARING IS REQUIRED AND HAS BEEN SCHEDULES TO CONSIDER THE ADEQUACY OF THIS DISCLOSURE STATEMENT UNDER BANKRUPTCY CODE § 1125. THE DEBTORS RESERVE THE RIGHT TO AMEND, MODIFY, OR SUPPLEMENT THIS DISCLOSURE STATEMENT AND THE ACCOMPANYING JOINT PLAN OF REORGANIZATION BEFORE AND UP TO THE DATE OF SUCH HEARING.

NOTE: THE DEBTORS BELIEVE THAT ACCEPTANCE OF THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT IS IN THE BEST INTERESTS OF THE DEBTORS' ESTATES AND THEIR CREDITORS. **ACCORDINGLY, THE DEBTORS RECOMMEND THAT YOU VOTE TO APPROVE THE PLAN.**

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

## TABLE OF CONTENTS

[To be Inserted]

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

## **EXHIBITS TO DISCLOSURE STATEMENT**

Exhibit A ...........................................................................................Joint Plan of Reorganization

Exhibit B ...........................................................................................Disclosure Statement Order

Exhibit C ................................................................................................ Stalking Horse SPA

Exhibit D ...........................................................................................Liquidation Analysis

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

## DISCLAIMER

THIS DISCLOSURE STATEMENT CONTAINS A SUMMARY OF CERTAIN PROVISIONS OF THE JOINT PLAN OF REORGANIZATION (THE "PLAN"), A COPY OF WHICH IS ATTACHED AS **EXHIBIT A**, PROPOSED BY WESTERN FUNDING INCORPORATED, WESTERN FUNDING INC. OF NEVADA, AND GLOBAL TRACK GPS, LLC (COLLECTIVELY, THE "DEBTORS") IN THESE CHAPTER 11 CASES.    THIS DISCLOSURE STATEMENT ALSO CONTAINS SUMMARIES OF CERTAIN OTHER DOCUMENTS RELATING TO THE CONSUMMATION OF THE PLAN OR THE TREATMENT OF CLAIMS AND INTERESTS AND CERTAIN FINANCIAL INFORMATION RELATING THERETO.[1]

THIS DISCLOSURE STATEMENT INCLUDES CERTAIN EXHIBITS, EACH OF WHICH ARE INCORPORATED INTO AND MADE A PART OF THIS DISCLOSURE STATEMENT AS IS SET FORTH IN FULL HEREIN.    THE STATEMENTS AND OTHER INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT WERE MADE AS OF THE DATE HEREOF, UNLESS OTHERWISE SPECIFIED. HOLDERS OF CLAIMS AND INTERESTS REVIEWING THIS DISCLOSURE STATEMENT SHOULD NOT INFER THAT THE FACTS SET FORTH HEREIN HAVE NOT CHANGED SINCE THE DATE SET FORTH ON THE COVER PAGE HEREOF. HOLDERS OF CLAIMS AND INTERESTS MUST RELY ON THEIR OWN EVALUATION OF THE DEBTORS AND THEIR OWN ANALYSIS OF THE TERMS OF THE PLAN IN DECIDING WHETHER TO ACCEPT OR REJECT THE PLAN.

ALL HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ AND CAREFULLY CONSIDER THIS ENTIRE DISCLOSURE STATEMENT, INCLUDING RISK FACTORS CITED HEREIN AND THE PLAN ATTACHED HERETO, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

THE DEBTORS ARE PROVIDING THE INFORMATION IN THIS DISCLOSURE STATEMENT SOLELY FOR PURPOSES OF SOLICITING HOLDERS OF CLAIMS AND INTERESTS TO ACCEPT OR REJECT THE PLAN. NOTHING IN THIS DISCLOSURE STATEMENT MAY BE USED BY ANY PERSON OR FOR ANY OTHER PURPOSE. THE CONTENTS OF THIS DISCLOSURE STATEMENT SHALL NOT BE DEEMED AS PROVIDING ANY LEGAL, FINANCIAL, SECURITIES, TAX, OR BUSINESS ADVICE.

THE DEBTORS URGE EACH HOLDER OF A CLAIM OR INTEREST TO CONSULT WITH THEIR OWN ADVISORS WITH RESPECT TO ANY SUCH LEGAL, FINANCIAL, SECURITIES, TAX, OR BUSINESS ADVICE IN REVIEWING THIS

---

[1] This proposed Disclosure Statement has not yet been approved under Bankruptcy Code § 1125 by the Bankruptcy Court as containing "adequate information" for use in connection with the solicitation of acceptances or rejections of the Plan described herein.    Accordingly, the filing and dissemination of this Disclosure Statement is not intended and should not in any way be construed as solicitation of those on the Plan, nor should the information contained herein be relied upon for any purposes before a determination by the Bankruptcy Court that the proposed Disclosure Statement contains "adequate information."

DISCLOSURE STATEMENT AND PLAN. MOREOVER, THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE, AND MAY NOT BE CONSTRUED AS, AN ADMISSION OF FACT, LIABILITY, STIPULATION, OR WAIVER. THE SUMMARY OF THE PLAN AND OTHER DOCUMENTS DESCRIBED IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE ACTUAL DOCUMENTS THEMSELVES AND THE EXHIBITS THERETO.

THE DEBTORS BELIEVE THAT THE INFORMATION HEREIN IS ACCURATE, BUT ARE UNABLE TO WARRANT THAT IT IS NOT WITHOUT ANY INACCURACY OR OMISSION. THE DEBTORS HAVE NOT AUTHORIZED ANY PARTY TO GIVE ANY INFORMATION ABOUT OR CONCERNING THE PLAN OR THE DEBTORS OR THE VALUE OF THEIR PROPERTY, OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. HOLDERS OF CLAIMS AND INTERESTS SHOULD NOT RELY UPON ANY OTHER INFORMATION, REPRESENTATIONS, OR INDUCEMENTS MADE TO OBTAIN ACCEPTANCE OR REJECTION OF THE PLAN.

THE BANKRUPTCY COURT'S APPROVAL OF THE ADEQUACY OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE PLAN. NEITHER THIS DISCLOSURE STATEMENT NOR THE PLAN HAS BEEN FILED OR REVIEWED BY THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION (THE "SEC") UNDER THE SECURITIES ACT OF 1933 (THE "SECURITIES ACT"), OR ANY SECURITIES REGULATORY AUTHORITY OF ANY STATE UNDERANY STATE SECURITIES LAW ("BLUE SKY LAW"). THIS DISCLOSURE STATEMENT AND THE PLAN HAVE NOT BEEN APPROVED OR DISPROVED BY THE SEC OR ANY STATE SECURITIES COMMISSION AND NEITHER THE SEC NOR ANY STATE SECURITIES COMMISSION HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN OR THEREIN. NEITHER THE OFFER NOR THE SALE OF ANY SECURITIES PURSUANT TO THE PLAN HAS BEEN REGISTERED UNDER THE SECURITIES ACT OR ANY SIMILAR STATE SECURITIES OR "BLUE SKY" LAWS. ANY SUCH OFFER OR SALE IS BEING MADE IN RELIANCE ON THE EXEMPTIONS FROM REGISTRATION THEREUNDER SPECIFIED IN BANKRUPTCY CODE § 1145, OR OTHER APPLCIABLE LAW REQUIRING REGISTRATION BEFORE THE OFFERING, ISSUANCE, DISTRIBUTION OR SALE OF SECURITIES; PROVIDED THAT IF THE ISSUANCE OF THE SECURITIES DOES NOT QUALITY FOR AN EXEMPTION UNDER BANKRUPTCY CODE § 1145, THE SECURITIES SHALL BE ISSUED IN A MANNER, WHICH QUALIFIES FOR ANY OTHER AVAILABLE EXEMPTION FROM REGISTRATION WHETHER AS A PRIVATE PLACEMENT UNDER RULE 5 OF THE SECURITIES ACT, SECTION 4(2) OF THE SECURITIES ACT, OR OTHER APPLICABLE LAW.

THIS DISCLOSURE STATEMENT SUMMARIZES CERTAIN PROVISIONS OF THE PLAN, CERTAIN OTHER DOCUMENTS, AND CERTAIN FINANCIAL INFORMATION. THE DEBTORS BELIEVE THAT THESE SUMMARIES ARE FAIR AND ACCURATE. IN THE EVENT OF ANY INCONSISTENCY OR DISCREPANCY BETWEEN A DESCRIPTION CONTAINED IN THIS DISCLOSURE STATEMENT AND THE TERMS AND PROVISIONS OF THE PLAN OR OTHER DOCUMENTS OR FINANCIAL INFORMATION INCORPORATED HEREIN BY REFERENCE, THE PLAN, OR SUCH OTHER DOCUMENTS, AS APPLICABLE, SHALL GOVERN FOR ALL PURPOSES.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

EACH HOLDER OF AN IMPAIRED CLAIM THAT IS ALLOWED TO VOTE SHOULD REVIEW THE ENTIRE PLAN BEFORE CASTING A BALLOT. NO PARTY IS AUTHORIZED BY THE BANKRUPTCY COURT TO PROVIDE ANY INFORMATION WITH RESPECT TO THE PLAN OTHER THAN THAT CONTAINED IN THIS DISCLOSURE STATEMENT.

THIS DISCLOSURE STATEMENT CONTAINS PROJECTED FINANCIAL INFORMATION REGARDING THE DEBTORS AND CERTAIN OTHER FORWARD-LOOKING STATEMENTS, ALL OF WHICH ARE BASED ON VARIOUS ESTIMATES AND ASSUMPTIONS AND WILL NOT BE UPDATED TO REFLECT EVENTS OCCURRING AFTER THE DATE HEREOF. SUCH INFORMATION AND STATEMENTS ARE SUBJECT TO INHERENT UNCERTAINTIES AND TO A WIDE VARIETY OF SIGNIFICANT BUSINESS, ECONOMIC, AND COMPETITIVE RISKS, INCLUDING AMONG OTHERS, THOSE DESCRIBED HEREIN. CONSEQUENTLY, ACTUAL EVENTS, CIRCUMSTANCES, EFFECTS AND RESULTS MAY VARY SIGNIFICANTLY FROM THOSE INCLUDED IN OR CONTEMPLATED BY SUCH PROJECTED FINANCIAL INFORMATION AND SUCH OTHER FORWARD-LOOKING STATEMENTS. CONSEQUENTLY, THE PROJECTED FINANCIAL INFORMATION AND OTHER FORWARD-LOOKING STATEMENTS CONTAINED HEREIN SHOULD NOT BE REGARDED AS REPRESENTATIONS BY THE DEBTORS OR ANY OTHER PERSON THAT THE PROJECTED FINANCIAL CONDITION OR RESULTS CAN OR WILL BE ACHIEVED.

THE FINANCIAL INFORMATION CONTAINED IN OR INCORPORATED BY REFERENCE INTO THIS DISCLOSURE STATEMENT HAS NOT BEEN AUDITED, EXCEPT AS SPECIFICALLY INDICATED OTHERWISE. THE FINANCIAL PROJECTIONS AND DESCRIBED IN THIS DISCLOSURE STATEMENT, HAVE BEEN PREPARED BY THE DEBTORS' MANAGEMENT. THE FINANCIAL PROJECTIONS, WHILE PRESENTED BY NUMERICAL SPECIFICITY, ARE NECESSARILY BASED ON A VARIETY OF ESTIMATES AND ASSUMPTIONS WHICH, THOUGH CONSIDERED REASONABLE BY THE DEBTORS' MANAGEMENT AND THEIR ADVISORS, MAY NOT ULTIMATELY BE REALIZED, AND ARE INHERENTLY SUBJECT TO SIGNIFICANT BUSINESS, ECONOMIC, COMPETITIVE, INDUSTRY, REGULATORY, MARKET, AND FINANCIAL UNCERTAINTIES AND CONTINGENCIES, MANY OF WHICH ARE BEYOND THE DEBTORS' CONTROL. THE DEBTORS CAUTION THAT NO REPRESENTATIONS CAN BE MADE AS TO THE ACCURACY OF THE PROJECTIONS OR THE ABILITY TO ACHIEVE THE PROJECTED RESULTS.

INFORMATION INCORPORATED BY REFERENCE INTO THIS DISCLOSURE STATEMENT SPEAKS AS OF THE DATE OF SUCH INFORMATION OR THE DATE OF THE REPORT OR DOCUMENT IN WHICH SUCH INFORMATION IS CONTAINED OR AS OF A PRIOR DATE AS MAY BE SPECIFIED IN SUCH REPORT OR DOCUMENT. ANY STATEMENT CONTAINED IN A DOCUMENT INCORPORATED BY REFERENCE HEREIN SHALL BE DEEMED TO BE MODIFIED OR SUSPENDED FOR ALL PURPOSES TO THE EXTENT THAT A STATEMENT CONTAINED IN THIS DISCLOSURE STATEMENT OR IN ANY OTHER SUBSEQUENTLY FILED DOCUMENT, WHICH IS ALSO INCORPORATED OR DEEMED TO BE INCORPORATED BY REFERENCE, MODIFIES OR SUPERSEDES SUCH STATEMENT. ANY STATEMENT SO MODIFIED

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

OR SUPERSEDED SHALL NOT BE DEEMED, EXCEPT AS SO MODIFIED OR SUPERSEDED, TO CONSTITUTE A PART OF THIS DISCLOSURE STATEMENT.

SOME ASSUMPTIONS INEVITABLY WILL NOT MATERIALIZE. FURTHER, EVENTS AND CIRCUMSTANCES OCCURRING SUBSEQUENT TO THE DATE ON WHICH THE FINANCIAL PROJECTIONS WERE PREPARED MAY BE DIFFERENT FROM THOSE ASSUMED OR, ALTERNATIVELY, MAY HAVE BEEN UNANTICIPATED, AND, THUS, THE OCCURRENCE OF THESE EVENTS MAY AFFECT FINANCIAL RESULTS IN A MATERIALLY ADVERSE OR MATERIALLY BENEFICIAL MANNER. THEREFORE, THE FINANCIAL PROJECTIONS MAY NOT BE RELIED UPON AS A GUARANTY OR OTHER ASSURANCE OF THE ACTUAL RESULTS THAT WILL OCCUR.

## ARTICLE I

## INTRODUCTION

**Section 1.01    Overview of Chapter 11**

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. The commencement of a chapter 11 case creates an "estate" comprised of all the legal and equitable interests of a debtor. Unless the bankruptcy court orders otherwise, a chapter 11 debtor may continue to operate its business and control the assets of its estate as a "debtor in possession."

The filing of a chapter 11 case also triggers the application of Bankruptcy Code § 362, which provides for an automatic stay of all attempts to collect upon claims against a debtor that arose before a bankruptcy filing. Generally speaking, the automatic stay prohibits interference with a debtor's property or business.

Formulation and confirmation of a plan of reorganization is the principal purpose of chapter 11 case. Unless a trustee is appointed, only the debtor may file a plan of reorganization during the first 120 days of the chapter 11 case. A creditor or party in interest may file a plan only after that 120-day exclusive period has expired or has terminated pursuant to a court order. If a debtor files its plan within the 120 day period, it has an additional 60 days to solicit acceptances of its plan. The bankruptcy court can reduce or enlarge the solicitation and the exclusive periods for cause shown.

A plan of reorganization sets forth the means for satisfying all claims against, and interests in, a debtor. Although usually referred to as a plan of reorganization, a plan may provide for the liquidation of assets. Generally, a claim against a debtor arises from a normal debtor/creditor transaction, such as a promissory note or a trade credit relationship, but may also arise from other contractual agreements or from alleged torts. An interest in a debtor is held by a party that owns the debtor, such as a shareholder.

Subject to certain limited exceptions, the bankruptcy court order confirming a plan of reorganization discharges a debtor from any debt that arose before the date of confirmation of the plan and provides for the treatment of such debt in accordance with the terms of the confirmed plan of reorganization.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

Before soliciting acceptances of a plan of reorganization, Bankruptcy Code § 1125 requires a plan proponent to prepare a disclosure statement containing information of a kind, and in sufficient detail, to enable a hypothetical investor to make an informed judgment regarding acceptance of the plan of reorganization. This Disclosure Statement is submitted in accordance with Bankruptcy Code § 1125.

The Bankruptcy Code provides that creditors and shareholders are to be grouped into "classes" under a plan and that they are to vote to accept or reject a plan by class. As a general matter, creditors with similar legal rights are placed together in the same class and equity holders with similar legal rights are placed together in the same class. For example, creditors entitled to similar priority under the Bankruptcy Code should commonly be grouped together.

The Bankruptcy Code does not require that each claimant or equity holder vote in favor of a plan in order for the court to confirm the plan. Rather, the plan must be accepted by each class of claimants and shareholders (subject to an exception discussed below). A class of claimants accepts the plan if, of the claimants in the class who actually vote on the plan, such claimants holding at least two-thirds in dollar amount and more than one-half in number of allowed claims vote to accept the plan. For example, if a hypothetical class has ten creditors that vote and the total dollar amount of those ten creditors' claim is $1,000,000, then for such class to have accepted the plan, six or more of those creditors must have voted to accept the plan (a simple majority) and the claims of the creditors voting to accept the plan must total at least $666,667 (a two-thirds majority).

The Bankruptcy Court may confirm a plan even though fewer than all classes of claims and equity interests vote to accept such plan. In such instance, the plan must be accepted by at least one "impaired" class of claims, without including any acceptance of the plan by an "insider." Bankruptcy Code § 1124 defines "impairment" and generally provides that a claim as to which legal, equitable or contractual rights are altered under a plan is deemed to be "impaired."

If all impaired classes of claims under the plan do not vote to accept the plan and at least one impaired class of claims votes to accept the plan, a debtor is entitled to request that the court confirm the plan pursuant to the "cramdown" provisions of Bankruptcy Code § 1129(b). These "cramdown" provisions permit the plan to be confirmed over the dissenting votes of classes of claims or equity interests if the Bankruptcy Court determines that the plan does not discriminate unfairly and is fair and equitable with respect to each impaired, dissenting class of claims or equity interests.

Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan must provide that holders of administrative and priority claims (other than tax claims) be paid in full in cash on the effective date of the plan, and that holders of priority tax claims receive on account of such claims deferred cash payments, over a period not exceeding five (5) years after the petition date, of a value, as of the effective date of the plan, equal to the allowed amount of such claim (Bankruptcy Code § 1129(a)(9)).

Independent of the acceptance of the plan as described above, to confirm a plan the bankruptcy court must determine that the requirements of Bankruptcy Code § 1129(a) have been satisfied.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

## Section 1.02   The Debtors' Plan of Reorganization

The Debtors believe that the Plan satisfies the confirmation requirements of the Bankruptcy Code.  Confirmation of the Plan makes the Plan binding upon the Debtors, the Reorganized Debtors, all holders of Claims and Interests, and other parties-in-interest, irrespective of whether they have filed Proofs of Claim or Interests and/or they have voted to accept or reject the Plan.

## Section 1.03   The Disclosure Statement

The Debtors are furnishing this Disclosure Statement ("Disclosure Statement")[2] to the holders of Claims against and Interests in the Debtors pursuant to Section 1125 of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in connection with the solicitation of ballots for the acceptance of the *Joint Plan of Reorganization* (the "Plan") dated November ___, 2013, a copy of which is attached as **Exhibit A**.  The Plan was formulated after extensive negotiations with the holders of the Senior Secured Claims and the Stalking Horse.  This Disclosure Statement describes the Debtors' business operations, certain aspects of the Plan, including but not limited to, the treatment of holders of Claims and Interests, the proposed transaction relating to the Debtors to be effected pursuant to the Plan, significant events that the Debtors believe will occur in these Chapter 11 Cases, and related matters.

The purpose of this Disclosure Statement is to provide "adequate information" to Persons who hold Claims to enable them to make an informed decision before exercising their right to vote to accept or reject the Plan.  By order of the Bankruptcy Court entered on November ___, 2013 (the "Disclosure Statement Order"), this Disclosure Statement was approved and held to contain adequate information.  A true and correct copy of the Disclosure Statement Order is attached as **Exhibit B.**

This Disclosure Statement sets forth certain detailed information regarding the Debtors' history and significant events expected to occur during the Chapter 11 Cases.  This Disclosure Statement also describes the Plan, effects of Confirmation of the Plan, and the manner in which Distributions will be made under the Plan.  Additionally, this Disclosure Statement discusses the confirmation process and the voting procedures that Holders of Claims must follow for their votes to be counted.

THIS DISCLOSURE STATEMENT CONTAINS SUMMARIES OF CERTAIN PLAN PROVISIONS, STATUTORY PROVISIONS, DOCUMENTS RELATED TO THE PLAN, AND OF THE CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN.   THESE SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN (AS WELL AS THE EXHIBITS ATTACHED THERETO AND DEFINITIONS THEREIN).   A COPY OF THE PLAN IS ATTACHED AS **EXHIBIT A**.

THE PLAN ITSELF AND THE DOCUMENTS REFERRED TO THEREIN CONTROL THE ACTUAL TREATMENT OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS UNDER THE PLAN AND WILL, UPON OCCURRENCE OF THE EFFECTIVE DATE, BE

---

[2] Except as otherwise indicated, capitalized terms used in this Disclosure Statement and not defined herein shall have their respective meanings set forth in the Plan or, if not defined in the Plan, as defined in the Bankruptcy Code.

BINDING UPON ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS, THEIR ESTATES, THE REORGANIZED DEBTORS, ALL PARTIES RECEIVING PROPERTY UNDER THE PLAN, AND OTHER PARTIES-IN-INTEREST. IN THE EVENT OF ANY CONFLICT BETWEEN THIS DISCLOSURE STATEMENT, ON THE ONE HAND, AND THE PLAN OR ANY OTHER OPERATIVE DOCUMENT, ON THE OTHER HAND, THE TERMS OF THE PLAN AND/OR SUCH OTHER OPERATIVE DOCUMENT WILL CONTROL.

THE APPROVAL BY THE BANKRUPTCY COURT OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE BANKRUPTCY COURT OF THE PLAN OR A GUARANTEE OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN. THE MATERIAL CONTAINED HEREIN IS INTENDED SOLELY FOR THE USE BY HOLDERS OF CLAIMS AND INTERESTS IN EVALUATING THE PLAN AND BY HOLDERS OF CLAIMS IN VOTING TO ACCEPT OR REJECT THE PLAN AND, ACCORDINGLY, MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN THE DETERMINATION OF HOW TO VOTE ON THE PLAN. THE PLAN IS SUBJECT TO NUMEROUS CONDITIONS AND VARIABLES AND THERE CAN BE NO ASSURANCE THAT THE PLAN WILL BE EFFECTUATED.

**Section 1.04    Sources of Information**

Unless otherwise stated herein, the statements contained in this Disclosure Statement are made as of the date hereof, and the information contained in this Disclosure Statement is as of the date hereof and neither the delivery of this Disclosure Statement nor the distribution of any securities pursuant to the Plan will, under any circumstance, create any implication that the information contained herein is correct at any time subsequent to the date hereof, or such other date as described herein. Any estimates of Claims or Interests set forth in this Disclosure Statement may vary from the amounts of Claims or Interests determined by the Debtors or ultimately Allowed by the Bankruptcy Court, and an estimate shall not be construed as an admission of the amount of such Claim.

Information incorporated by reference into this Disclosure Statement speaks as of the date of such information or the date of the report or document in which such information is contained or as of a prior date as may be specified in such report or document. Any statement contained in a document incorporated by reference herein shall be deemed to be modified or superseded for all purposes to the extent that a statement contained in this Disclosure Statement or in any other subsequently filed document which is also incorporated or deemed to be incorporated by reference, modifies or supersedes such statement. Any statement so modified or superseded shall not be deemed, except as so modified or superseded, to constitute a part of this Disclosure Statement.

No statements concerning the Debtors, the value of the Debtors' property, or the value of any benefit offered to the holder of a Claim or Interest in connection with the Plan should be relied on other than as set forth in this Disclosure Statement. In arriving at a decision, parties should not rely on any representation or inducement made to secure their acceptance or rejection that is contrary to information contained in this Disclosure Statement, and any such additional representations or inducements should be immediately reported to counsel for the Debtors, Larson & Zirzow, LLC, 810 S. Casino Center Blvd., Suite 101, Las Vegas, Nevada

89101 (Attention: Matthew C. Zirzow, Esq.), Telephone: (702) 382-1170, E-mail: mzirzow@lzlawnv.com.

## Section 1.05    Rules of Interpretation

The following rules for interpretation and construction shall apply to this Disclosure Statement: (1) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference in this Disclosure Statement to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (3) unless otherwise specified, any reference in this Disclosure Statement to an existing document, schedule, or exhibit, whether or not filed, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (4) any reference to a person or entity as a holder of a Claim or Interest includes that person or entity's successors and assigns; (5) unless otherwise specified, all references in the Disclosure Statement to Articles are references to Articles of the Disclosure Statement; (6) unless otherwise specified, all references in the Disclosure Statement to exhibits are references to exhibits to the Disclosure Statement; (7) the words "herein," "hereof," and "hereto" refer to the Disclosure Statement in its entirety rather than to a particular portion of the Disclosure Statement; (8) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Disclosure Statement; (9) unless otherwise set forth in the Disclosure Statement, the rules of construction set forth in Bankruptcy Code § 102 shall apply; (10) any term used in capitalized form in the Disclosure Statement that is not otherwise defined in the Disclosure Statement, Plan, or exhibits to the Disclosure Statement Order, but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (11) all references to docket numbers of documents filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, unless otherwise stated; (13) in computing any period of time prescribed or allowed, the provisions of Bankruptcy Rule 9006(a) shall apply, and if the date on which a transaction may occur pursuant to this Disclosure Statement shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day; and (14) unless otherwise specified, all references in this Disclosure Statement to monetary figures shall refer to currency of the United States of America.

## Section 1.06    Solicitation Package

Accompanying this Disclosure Statement for the purpose of soliciting votes on the Plan are copies of (i) the notice of, among other things, the time for submitting Ballots to accept or reject the Plan, the date, time, and place of the hearing to consider the confirmation of the Plan (the "Confirmation Hearing") and related matters, and the time for filing objections to the confirmation of the Plan, and (ii) a Ballot or Ballots (and return envelope(s)) that you must use in voting to accept or to reject the Plan, or a notice of non-voting status, as applicable. If you did not receive a Ballot and believe that you should have, please contact the Balloting Agent (as

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

defined below) at the address or telephone number set forth in the next subsection.

**Section 1.07    Voting Procedures, Ballots, And Voting Deadline**

After carefully reviewing the Plan and this Disclosure Statement, and the exhibits thereto, and the detailed instructions accompanying your Ballot, holders of Claims in Classes A2, A4, A5, B2, B4, C2 and C4 should indicate their acceptance or rejection of the Plan by voting in favor of or against the Plan on the enclosed Ballot. Holders should complete and sign their Ballot and return it in the envelope provided so that it is *received* by the Voting Deadline (as defined below).

Each Ballot has been coded to reflect the Class of Claims it represents. Accordingly, in voting to accept or reject the Plan, you must use only the coded Ballot or Ballots sent to you with this Disclosure Statement.

If you have any questions about the procedure for voting your Claim or with respect to the packet of materials that you have received, please contact Larson & Zirzow, LLC (the "Balloting Agent") (i) telephonically; (ii) in writing by (a) hand delivery, (b) overnight mail, (c) first class mail, or (d) facsimile; or (iii) via e-mail, using the information below:

Larson & Zirzow, LLC
Attn: Matthew C. Zirzow, Esq
810 S. Casino Center Blvd., Suite 101
Las Vegas, Nevada 89101
Telephone: (702) 382-1170
Facsimile: (702) 382-1169
E-mail: mzirzow@lzlawnv.com

**THE BALLOTING AGENT MUST *RECEIVE* ORIGINAL BALLOTS ON OR BEFORE 5:00 P.M. PREVAILING PACIFIC TIME, ON DECEMBER ___, 2013 (THE "VOTING DEADLINE")** AT THE APPLICABLE ADDRESS ABOVE. EXCEPT TO THE EXTENT ALLOWED BY THE BANKRUPTCY COURT OR DETERMINED OTHERWISE BY THE DEBTORS, BALLOTS RECEIVED AFTER THE VOTING DEADLINE WILL NOT BE ACCEPTED OR USED IN CONNECTION WITH THE DEBTORS' REQUEST FOR CONFIRMATION OF THE PLAN OR ANY MODIFICATION THEREOF.

The Debtors reserve the right to amend the Plan. Amendments to the Plan that do not materially and adversely affect the treatment of Claims or Interests may be approved by the Bankruptcy Court at the Confirmation Hearing without the necessity of re-soliciting votes. In the event re-solicitation is required, the Debtors will furnish new solicitation packets that will include new ballots to be used to vote to accept or reject the Plan, as amended.

**Section 1.08    The Confirmation Hearing And Objection Deadline**

**THE BANKRUPTCY COURT HAS SCHEDULED DECEMBER 20, 2013, AT 9:30 A.M., PREVAILING PACIFIC TIME** as the date and time for the hearing on confirmation of the Plan and to consider any objections to the Plan. **The confirmation**

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

12

hearing will be held at the United States Bankruptcy Court, Foley Federal Building, 300 Las Vegas Blvd., South, Las Vegas, Nevada 89101, Courtroom III, before the Honorable Laurel E. Davis.  THE DEBTORS WILL REQUEST CONFIRMATION OF THE PLAN AT THE CONFIRMATION HEARING.

THE BANKRUPTCY COURT HAS FURTHER FIXED <u>DECEMBER     , 2013</u> AS THE DEADLINE (THE "<u>OBJECTION DEADLINE</u>") FOR FILING OBJECTIONS TO CONFIRMATION OF THE PLAN WITH THE BANKRUPTCY COURT.

ANY OBJECTION TO CONFIRMATION OF THE PLAN MUST BE IN WRITING AND (A) MUST STATE THE NAME AND ADDRESS OF THE OBJECTING PARTY AND THE AMOUNT OF ITS CLAIM OR THE NATURE OF ITS INTEREST AND (B) MUST STATE WITH PARTICULARITY THE NATURE OF ITS OBJECTION.  ANY CONFIRMATION OBJECTION NOT TIMELY FILED AND SERVED AS SET FORTH HEREIN SHALL BE DEEMED WAIVED AND SHALL NOT BE CONSIDERED BY THE BANKRUPTCY COURT.

**Section 1.09**    **Voting Tabulation**

Under the Bankruptcy Code, for purposes of determining whether the requisite acceptances have been received, only Holders who are entitled to vote and actually vote will be counted.  The failure of a Holder to deliver a duly executed Ballot will be deemed to constitute an abstention by such Holder with respect to voting on the Plan and such abstentions will not be counted.

Unless otherwise ordered by the Bankruptcy Court, Ballots that are signed, dated, and timely received, but on which a vote to accept or reject the Plan has not been indicated, will not be counted.  The Debtors, in their sole discretion, may request that the Balloting Agent attempt to contact such voters to cure any such defects in the Ballots.

Except as provided below, unless the applicable Ballot is timely submitted to the Balloting Agent before the Voting Deadline, together with any other documents required by such Ballot, the Debtors may, in their sole discretion, reject such Ballot as invalid and decline to count such vote or to utilize it in connection with seeking Confirmation of the Plan.

A vote may be disregarded if the Bankruptcy Court determines, pursuant to Bankruptcy Code § 1126(e), that it was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

If a Ballot is signed by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or another acting in a fiduciary or representative capacity, such Person should indicate such capacity when signing and, unless otherwise determined by the Debtors, must submit proper evidence satisfactory to the Debtors of authority to so act.

The period during which Ballots with respect to the Plan will be accepted by the Debtors will terminate on the Voting Deadline.  Except to the extent permitted by the Bankruptcy Court, Ballots that are received after the Voting Deadline will not be counted or otherwise used by the Debtors in connection with the Debtors' request for Confirmation of the Plan (or any

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

permitted modification thereof). IN NO CASE SHOULD A BALLOT BE DELIVERED TO ANY ENTITY OTHER THAN THE BALLOTING AGENT.

**Section 1.10    Agreements Upon Furnishing Ballots**

The delivery of an accepting Ballot to the Balloting Agent by a Holder pursuant to the procedures set forth above approved by the Bankruptcy Court, will constitute the agreement of such Holder to accept (i) all of the terms of, and conditions to, the solicitation and voting procedures; and (ii) the terms of the Plan; *provided, however,* all parties-in-interest retain their right to object to Confirmation of the Plan pursuant to Bankruptcy Code § 1128.

**Section 1.11    Recommendation of the Debtors to Approve Plan**

The Debtors approved the solicitation of acceptances of the Plan and all of the Transactions contemplated thereunder. In light of the benefits to be attained by the Holders of Claims pursuant to consummation of the Transactions contemplated under the Plan, the Debtors recommend that such Holders of Claims vote to accept the Plan. The Debtors have reached this decision after considering the alternatives to the Plan that are available to the Debtors and the possible effect on the Debtors' business operations. These alternatives include liquidation under chapter 7 of the Bankruptcy Code or reorganization under chapter 11 of the Bankruptcy Code with an alternative plan of reorganization. The Debtors determined, after consulting with their financial and legal advisors and the Senior Secured Lender and/or such other procedures that the Transactions contemplated in the Plan would likely result in a distribution of greater value to creditors and shareholders than would a liquidation under chapter 7.

THE DEBTORS AND THE SENIOR SECURED LENDER SUPPORT THE PLAN AND RECOMMEND ALL HOLDERS OF CLAIMS WHOSE VOTES ARE BEING SOLICITED TO TIMELY SUBMIT BALLOTS TO ACCEPT THE PLAN.

## ARTICLE II

## HISTORICAL BACKGROUND AND PRE-PETITION BUSINESS OPERATIONS

**Section 2.01    Overview of the Debtors' Business**

WFI is a specialized consumer finance company providing automobile financing to borrowers with limited access to traditional credit. WFI acquires and services installment loan contracts originated by its national, network of over 3,000 approved automobile dealers. Currently, WFI operates a series of branch offices across the United States, which allows it to work with local dealers in each regional area.

WFI does not lend directly to auto consumers but rather elects to participate with dealerships to make financing available to sub-prime customers of such dealers. WFI purchases either individual or bulk loan contracts by advancing a portion of the loan amount (between 60% and 80% depending on dealer preferences, the amount finances, the terms of contracts, and status of the vehicles) to the dealer and placing the remaining 20% to 40% of the total principal in a reserve specific to that dealer. WFI then calculates a "reserve index" by dividing the dealer reserve by the outstanding principal balance. This reserve index is for the dealer's entire portfolio at WFI and not specific to any one loan. As borrowers pay interest and principal on

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

their auto loans, which are serviced by WFI, the reserve index increases. When the reserve index reaches a certain percentage (typically 10% in excess of the reserve index at the time of purchase), the dealer receives a payment from WFI for this excess reserve. WFI's unique "partnership" approach to dealer relations cultivates an energetic, committed, and incentivized participating dealer base, and made WFI a leader with buy-here-pay-here dealers nationwide.

WFI's loan programs for used vehicles are geared towards the sub-prime borrower unable to access traditional lending credit because of the age of the vehicle being financed or the customer's employment and credit history. Customers will typically make down payments, in the form of cash or trade-in, typically from 5% to 20% of the purchase price. The balance of the purchase price plus taxes, title fees and, if applicable, extended service contracts and insurance, is financed. WFI's loan receivables carry an average contract annual percentage rate (APR) of 23%. WFI purchases contracts from dealers at discounts ranging from 10% to 50%, depending on the risk profile of the borrower and the age/value of the automobile, however, the advance never exceeds 115% of wholesale book value and is limited to 100% of that value.

WFI utilizes a multi-faceted approach to loan servicing by combining branch staff collectors and home office collection staff. Each staff member possesses a minimum of two years' experience in sub-prime auto loan collection at the time of hire. The branch staff is responsible for the collection work to 60 days delinquent; accounts more than 60 days past due are serviced by staff at the home office in Las Vegas. All accounts in repossession are the responsibility of a special collection team also located in Las Vegas.

WFI's corporate headquarters and principal place of business are 3915 E. Patrick Lane, Las Vegas, Nevada. WFI has branch managers at each of its branch locations, and also has credit verifiers, purchasers in charge of processing contract packages for purchase and balancing daily customer payment receipts, and various collections staff.

Since 2010, WFI invested in upgrading technology, including the use of global positioning system starter interruption devices on vehicles to further secure is collateral. These systems enable WFI to track the location of its collateral and, when necessary in cases of severe delinquency, deactivate the ignition system, thus reducing repossession costs and incentivizing borrowers to make timely payments. The foregoing global position system collateral recovery technology is owned by WFI's affiliate, GPS.

WFIN was incorporated on January 3, 1995. WFIN is a wholly-owned subsidiary of WFI, but has no operations or employees.

## Section 2.02    Debtors' Corporate Structure

WFI is a California corporation incorporated on January 16, 1962. WFI is a wholly-owned subsidiary of Harbor Structured Finance, LLC, a Delaware limited liability company, f/k/a Harbor Truck Structured Finance One ("Harbor").

Frederick Cooper ("Mr. Cooper") is the Chief Executive Officer and a director of WFI, the President and a director of WFIN, and a manager and a member of GPS. From 1992 to 2004, Mr. Cooper was the President, Chief Executive Officer and director of SeaWest Financial Corporation, based in Los Angeles, California, which he founded and grew to $250,000,000 in

receivables, 230 employees, and an approved dealer network in excess of 1,000 dealers in 48 states.

Katherine H. Cooper ("Mrs. Cooper" and together with Mr. Cooper, the "Coopers"), is Mr. Cooper's wife and is WFI's President, Chief Operating Officer, Secretary, and Treasurer, and is also a director. Mrs. Cooper is also the Secretary and Treasurer of WFIN, and its only other director. Mrs. Cooper has over twelve years of experience in overseeing and managing vital company operations within the financial services industry, including the evaluation and acquisition of indirect sub-prime auto finance portfolios and the management of related functions. Prior to her tenure with WFI, Mrs. Cooper held similar responsibilities with various other financial companies.

Harbor is managed by a Board of Managers presently comprised of the Coopers, Mark Finston, and James B. Hadden, Esq. Mr. Finston has been a managing partner of Rock Consulting, LLC since 2010, wherein he provides financial consulting services. Prior to that, Mr. Finston was the Chief Financial Officer, President, and a Board Member of Hudson Keyse, LLC, a defaulted debt buyer, which filed for Chapter 7 bankruptcy in September 2010. Mr. Hadden is an attorney with the law firm of Porter Wright in Columbus, Ohio wherein he practices primarily in government and regulatory affairs, and lobbying. Mssrs. Finston and Hadden are the representatives appointed to the Harbor Board by the Class B Members (as hereinafter defined) of Harbor (the "Class B Managers").

Collectively, the Coopers own 55% of the membership interests in Harbor as Class A members. Philipp D. Nick ("Mr. Nick"), Ellen H. Hardymon, the Suzanne H. Nick Irrevocable Family Trust One, the Suzanne H. Nick Irrevocable Family Trust Two, the Thomas F. Havens Irrevocable Family Trust One; the Thomas F. Havens Irrevocable Family Trust Two (collectively with Mr. Nick, the "Class B Members"), together either directly or indirectly own or control 45% of the membership interests in Harbor as Class B Members.

GPS was organized on June 1, 2011. Mr. Cooper is the sole manager of GPS and the Coopers are its sole members. The Coopers executed a Contribution Agreement relating to the transfer of their interest in GPS to Harbor and/or WFI, however, Harbor's Board never finally affirmed the Contribution Agreement, and thus neither Harbor nor WFI technically owns or controls GPS or its assets.

WFIN was incorporated on January 3, 1995. The Coopers are WFIN's sole directors, Mr. Cooper is its President, and Mrs. Cooper is its Secretary and Treasurer.

**Section 2.03    Debtors' Existing Capital Structure**

**(a)    The Senior Secured Lender.**

On March 14, 2012, WFI, as borrower, and BMO Harris, as administrative agent for various lenders ("BMO Harris"), entered into a Credit Agreement (the "Credit Agreement") for a total commitment of up to $40,000,000 (the "BMO Obligation"). Harbor, WFIN, and GPS all guaranteed the BMO Obligation. The BMO Obligation was evidenced by a Revolving Note, and secured and perfected in substantially all of Debtors' personal property including, without limitation, all accounts, chattel paper, instruments, documents, general intangibles, deposit

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

accounts, investment property, goods (including all equipment, fixtures and inventory), and all proceeds and products of the foregoing, whether now existing or thereafter arising or acquired (collectively, the "BMO Collateral").

On April 23, 2013, BMO Harris delivered to WFI a written notice of defaults and a reservation of rights (the "Notice of Default") under the Credit Agreement. Specifically, the Notice of Default alleged that as of February 28, 2013, WFI was not in compliance with respect to the Adjusted Tangible Net Worth covenant, the Interest Coverage Ratio covenant, and the Minimum Loss Reserves covenants as set forth in Sections 8.25(a), (c) and (d) of the Credit Agreement resulting in separate Events of Default under Section 9.1(b) of the Credit Agreement (collectively, the "Asserted Defaults").

Thereafter, beginning in May 2013, the parties to the Credit Agreement entered into a series of forbearance agreements. After four additional forbearance agreements through August 2013, BMO Harris refused to provide any further forbearances. On August 13, 2013, BMO Harris sent Debtors a Notice of Acceleration and Demand for Payment, which indicated that any remaining standstills and forbearances had expired and declaring the principal and all accrued interest of the BMO Obligation was accelerated and immediately due and payable.

On August 20, 2013, BMO Harris filed a *Complaint* in the Eighth Judicial District Court, Clark County, Nevada (the "Nevada State Court"), thereby commencing case number A-13-687299-B (the "State Court Case") and asserting claims for declaratory relief for the appointment of a receiver, breach of the Credit Agreement, and breach of the covenant of good faith and fair dealing. On August 21, 2013, BMO Harris filed a *Petition for the Appointment of a Receiver on Order Shortening Time* (the "Receiver Petition"). On September 4, 2013, the Nevada State Court entered an Order Appointing Receiver (the "Receiver Order"), and within a matter if hours thereafter, Debtors filed their Bankruptcy Cases in order to avoid imminent loss of its portfolio and control of its business, and also to preserve value for the benefit of creditors.

As of the Petition Date, the principal balance owing to BMO Harris was not less than $30,870,301.70.

**(b)    The Subordinated Debt Holders.**

As part of the original purchase of WFI in 2010, various original founders of WFI took back certain notes as part of the purchase price, and were owed, in the aggregate as of the Petition Date, $6,706,000 in principal amount of subordinated debentures of WFI (the "Subordinated Debt Holders"). Approximately $4,000,000 of this debt is owed to Cope Family Ventures, LP, a Nevada limited partnership, over which Donnella M. Cope serves as manager, and $1,950,000 of this debt is owed to Timothy J. Salas and Adrianna Merrell, in their capacity as trustees of various trusts. The remaining Subordinated Debt is held by approximately eleven (11) other holders in various sums ranging from $12,000 to $250,000. The Subordinated Debt Holders are general unsecured creditors of WFI.

**(c)    The Real Property.**

The BMO Collateral does not include various real property of Debtors, including specifically three (3) parcels of real property located in Las Vegas, Nevada; San Jose, California;

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

and Houston, Texas respectively (collectively, the "Real Property") with an estimated fair market value in the aggregate of approximately $2,000,000.00.

At or around the loan transaction with BMO Harris in 2012, the Class B Members of Harbor required the Class A Members (the Coopers) to agree to a First Amendment to the Amended and Restated Operating Agreement of Harbor, which, among other matters, provided for the payment to the Class B Members of a preferred return. The Real Property is encumbered by certain recorded deeds of trust in favor of the Class B Members of Harbor to secure this preferred return. Debtors assert that the deeds of trust held by the Class B Members may be avoidable transfers, or subject to recharacterization, subordination or other challenge, however, such allegations are disputed by the Class B Members, and remain untested and unproven to date.

## Section 2.04   Debtors' Board Members and Management

The current members of WFI board of directors are Frederick Cooper and Katherine Cooper. The current senior management group of WFI includes Frederick Cooper as Chief Executive Officer, Katherine Cooper as President, Treasurer and Secretary, and Edward Bentzen as Chief Financial Officer.

## Section 2.05   Events Leading to Chapter 11

In addition to the default and acceleration of the BMO Obligation, an additional factor contributing to the deterioration of WFI and its business has been infighting among various parties involved in either the direct or indirect management of the company. Specifically, from and after the closing of the Harbor transaction in October 2010, the Coopers and their management team assumed control of the day-to-day operations of WFI. Since the closing, the management team sought to make significant improvements to WFI's operations in order to establish a platform to facilitate organic growth and expansion through acquisition, enhance long-term profitability of the business, and significantly improve the credit quality of loan assets. Specifically, management has migrated the entire loan portfolio to the Megasys™ software system, sold its commercial truck loan portfolio, overhauled the entire collection process, expanded the bulk purchasing program, developed new products, rationalized WFI's branch office network, increased the use of outside dealer marketing representatives, revamped the repossession and recovery process, and reestablished robust credit underwriting standards.

Within months after the close of the Harbor transaction in October 2010, significant management disputes between the Class A Members of Harbor and the Class B Members, and the relationship among these parties became more adversarial. In October 2012, Class B Members filed an action in the Court of Common Pleas, Franklin County, Ohio, Civil Division, as Case No. 12 CV 012749 against the Coopers and Harbor, which made various allegations of mismanagement and financial impropriety. In December 2012 the Coopers filed an action in the Eighth Judicial District Court, Clark County, Nevada as Case No. A-12-673394 against the Class B Members, which was later removed to the United States District Court for the District of Nevada in January 2013 as Case No. 2:13-cv-00036-JCM-GWF, and which asserted various claims  against one or all of the Class B Members for conversion, breach of fiduciary duties, intentional interference with contractual relations, intentional interference with prospective economic advantage, civil conspiracy, fraudulent inducement, defamation, defamation per se, business disparagement, abuse of process, declaratory relief, and injunctive relief. The foregoing

actions remain pending, some of the claims may be derivative claims that are property of the Debtors' bankruptcy estates, and all of the allegations remain unproven and subject to significant dispute.

**Section 2.06    Reorganization Strategy**

To facilitate its goal of maximizing the value of its assets, the Debtors and the Senior Secured Lender has been discussing restructuring alternatives for the Debtors' business. The Debtors (with the consent of the Pre-Petition Agent) entered into that certain Stock Purchase Agreement (the "Stalking Horse SPA")[3] with Carfinco WFI, Inc., a Delaware corporation (the "Stalking Horse") dated November ___, 2013, in which WFI and GPS agreed to sell and the Stalking Horse agreed to purchase and acquire all of the newly-issued and outstanding capital stock of WFI and GPS for a purchase price equal to seventy percent (70%) of the net finance receivables, subject to adjustment as provided in the Stalking Horse SPA, and in accordance with the Bid Procedures Order, and the Sale Order and/or Confirmation Order. The Stalking Horse is a subsidiary of Carfinco Financial Group, a Canadian public company based in Edmonton, Alberta, Canada.

Debtors also intend to seek the sale of the Real Property on a timely basis, and are entering into that certain Real Property Purchase Agreement with the Stalking Horse dated November ___, 2013, in which WFI agreed to sell and the Stalking Horse agreed to purchase the Las Vegas Property for a purchase price of $500,000.000, subject to various adjustments, and in accordance with the Las Vegas Property Purchase Agreement and the Las Vegas Property Bid Procedures Order. Debtors or the Liquidating Trustee, as the case may be, will also seek to sell Debtors' other Real Property on a timely basis as well.

## ARTICLE III

## ASSETS AND LIABILITIES OF THE DEBTORS

**Section 3.01    The Debtors' Scheduled Assets**

The Debtors' assets as of the Petition Date are described in the Bankruptcy Schedules and SOFAs Filed with the Bankruptcy Court on October 2, 2013, as amended on November 7, 2013, and any amendments thereafter (collectively, the "Bankruptcy Schedules"), and reference should be made thereto for information concerning such assets. Copies of the Bankruptcy Schedules and any amendments thereto Filed in this Case may be viewed online at any time through the Bankruptcy Court's PACER System at www.nvb.uscourts.gov.

As of the Petition Date, the Debtors' principal assets included $44,871,137.12 in finance receivables, $1,525,184.01 in land and building assets, $400,000 in real property, and $754,278.07 in furniture, fixtures and equipment.

The Bankruptcy Schedules Filed by the Debtors in their respective Cases included intercompany receivables between and amongst the Debtors. The Plan provides that all such

---

[3] The Stalking Horse SPA contemplates the sale of the New Interests to the Stalking Horse subject to higher and better offers pursuant to the Bid Procedures Order and the Sale Order and/or the Confirmation Order.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

inter-Debtor receivables will be cancelled on the Effective Date.

**Section 3.02    The Debtors' Assets After Closing**

After the Closing with the Purchaser, the Debtors' assets will consist of (a) the PSA Sale Proceeds; and (b) assets excluded from the sale by the Purchaser under the terms of the Purchase and Sale Agreement, including without the limitation, Liquidating Trust Avoidance Actions and the Real Property (unless the Vegas Real Property is sold as discussed hereinafter).

**Section 3.03    Liabilities Scheduled by the Debtors**

The Debtors' liabilities as of the Petition Date are set forth in the Bankruptcy Schedules, and reference should be made thereto for information concerning such liabilities as of the Petition Date. Copies of the Bankruptcy Schedules and any amendments thereto filed in this Case may be viewed online at any time through the Bankruptcy Court's PACER System at www.nvb.uscourts.gov.

As of the Petition Date, the Debtors' primary liabilities include $30,870,301.70 owing to its Senior Secured Creditor BMO Harris, various disputed sums allegedly owing to the Class B Members of Harbor, which are asserted to be secured in Debtors' Real Property, approximately $6,700,000 owing to subordinated unsecured debt holders, and various sums owing under dealer agreements and other general unsecured trade creditors.

The Bankruptcy Schedules filed by the Debtors in their respective Chapter 11 Cases included intercompany payables between and amongst the Debtors. The Plan provides that all such inter-Debtor payables will be cancelled on the Effective Date.

**Section 3.04    Preferences, Fraudulent Transfers and Other Avoidance Actions**

Under Bankruptcy Code § 547, a debtor's bankruptcy estate may recover certain preferential transfers of property, including cash, made insolvent during the 90 days immediately before the filing of its bankruptcy petition with respect to pre-exiting debts, to the extent the transferee receive more than it would have in respect of the preexisting debt had the debtor been liquidated under chapter 7 of the Bankruptcy Code. In the case of "insiders," the Bankruptcy Code provides for one (1) year preference period.

Certain defenses can be made to preference recoveries. Transfers made in the ordinary course of the debtor's and transferee's business according the ordinary business terms in respect of debts less than 90 days before the filing of a bankruptcy case are not recoverable. Additionally, if the transferees extended credit subsequent to the transfer (and before the commencement of the bankruptcy case), such extension of credit may constitute a defense to recovery, to the extent of any new value, against an otherwise recoverable transfer of property. If a transfer is recovered by the estate, the transferee has an unsecured claim against the debtor to the extent of the recovery.

Under Bankruptcy Code § 547 and various state laws, a debtor may recover certain pre-petition transfers of property including the grant of a security interest in property, made while insolvent to the extent that the debtor receives less than fair value for such property. Additionally, avoidance actions exists under sections 544, 545, 549 and 553(b) of the

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

Bankruptcy Code that allow a debtor to avoid and/or recover certain property.

The Bankruptcy Code preserves the Debtors' rights to prosecute claims and causes of action that exist outside of bankruptcy, and also empowers the Debtors to prosecute certain claims that are established by the Bankruptcy Code, including claims to avoid and recover preferential transfers, and fraudulent conveyances.

Under the Plan, all of the Debtors' rights in respect of all Liquidating Trust Avoidance Actions are preserved and are transferred to the Liquidating Trustee. As such, the Liquidating Trustee, as a representative of the Estates, will have the authority to investigate, prosecute, collect, and/or settle the Liquidating Trust Avoidance Actions in accordance with Bankruptcy Code § 1123(b)(3). To date, the Debtors have not fully investigated any potential Liquidating Trust Avoidance Actions.

**IN REVIEWING THIS DISCLOSURE STATEMENT AND THE PLAN, AND IN DETERMINING WHETHER TO VOTE IN FAVOR OR AGAINST THE PLAN, HOLDERS OF CLAIMS (INCLUDING PARTIES THAT RECEIVED PAYMENTS FROM THE DEBTORS WITHIN NINETY (90) DAYS BEFORE THE PETITION DATE) SHOULD CONSIDER THAT A CAUSE OF ACTION MAY EXIST AGAINST THEM, THAT THE PLAN PRESERVES ALL CAUSES OF ACTION, AND THAT THE PLAN AUTHORIZES THE LIQUIDATING TRUSTEE TO PROSECUTE SUCH CLAIMS.**

## ARTICLE IV

## THE CHAPTER 11 CASES

### Section 4.01    Commencement of These Chapter 11 Cases

On September 4, 2013 (the "Petition Date"), Western Funding Incorporated, a California corporation ("WFI"), Western Funding Inc. of Nevada, a Nevada corporation ("WFIN"), and Global Track GPS, LLC, a Delaware limited liability company ("Global Track"), as debtors and debtors-in-possession (collectively, the "Debtors" or the "Plan Proponents") filed voluntary petitions (the "Chapter 11 Cases" or "Cases") in the United States Bankruptcy Court for the District of Nevada, Las Vegas Division (the "Bankruptcy Court").

By order of the Bankruptcy Court, the Chapter 11 Cases are being jointly administered for procedural purposes only. The Office of the United States Trustee (the "U.S. Trustee") has not appointed a trustee or an examiner, however, an Official Committee of Unsecured Creditors (the "Committee") has been appointed and retained counsel.

After the Petition Date, the Debtors continued to operate and manage their business and properties in the normal course as debtors-in-possession pursuant to Bankruptcy Code §§ 1107(a) and 1108. The Debtors have generally been paying post-petition operating expenses as they become due.

### Section 4.02    Initial Emergency Motions

Shortly after the Petition Date, the Debtors filed numerous initial emergency motions to streamline the transition to operating under Chapter 11, to stabilize operations, and to

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

preserve their relationships with vendors, customers and utility providers. These motions requested, among other things, authority to:

- administer the Chapter 11 Cases jointly for administrative purposes;

- establish notice procedures for informing the Debtors' Creditors and Interest Holders of the events and filing in the Cases;

- maintain the Debtors' pre-petition bank accounts and cash management system;

- use cash collateral during the pendency of the Chapter 11 Cases;

- pay pre-petition wages and salaries to employees and contractors;

- provide adequate assurance to the Debtors' utility providers to maintain uninterrupted service;

**Section 4.03    Cash Collateral Motion and Stipulation**

(a)    **The Interim Approval of the Use of Cash Collateral on a Nonconsensual Basis.**

On September 15, 2013, Debtors filed an *Emergency Motion for Entry of an Interim Order (I) Preliminarily Determining Extent of Cash Collateral and Authorizing Interim Use of Cash Collateral, and (II) Scheduling a Final Hearing to Determine Extent of Cash Collateral and Authorizing Use of Cash Collateral* (the "Cash Collateral Motion"). The Cash Collateral Motion sought entry of an interim order preliminarily determining the extent of cash collateral and authorizing the interim use thereof by Debtors to pay necessary and appropriate costs to operate Debtors' business in the ordinary course pending a final hearing and consistent with a budget.

The Cash Collateral Motion argued that as of the filing of that motion, WFI's gross portfolio balance was approximately $43.9 million, less approximately $2.3 million in deferred interest, thus leaving approximately $41.6 million in calculated gross value. Further, as of the filing of that motion, Debtors argued that the total credit balance owing to BMO Harris was only the sum of approximately $30.9 million, thus leaving BMO Harris oversecured in approximate amount of $10.7 million, and without even accounting for the approximate $2.3 million in cash Debtors had then, and also excluding the approximately $2 million in Real Property in which BMO Harris is not secured. As such, Debtors' Cash Collateral Motion argued that assuming BMO Harris was secured and properly perfected in all cash presently held by Debtors and the portfolio, BMO Harris's coverage ratio was approximately 1.41 ($41.6 million divided by ($30.9 million less $1.3 million)), thus leaving BMO Harris' interest adequately protected.

On September 17, 2013, BMO Harris opposed Debtors' Cash Collateral Motion and argued that Debtors' analysis regarding the amount of adequate protection was faulty because it ignored the costs of collection and historical recovery rates given the subprime nature of the loans, and that Debtors' portfolio was actually worth far less than as stated, and indeed approximately $30,000,000, thereby leaving the bank with little to no equity cushion. Further, BMO Harris argued that its position would deteriorate during the term of the proposed cash

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169