collateral budget.

On September 23, 2013, the Court entered an *Order Granting Emergency Motion for Entry of an Interim Order (I) Preliminarily Determining Extent of Cash Collateral and Authorizing Interim Use of Cash Collateral, and (II) Scheduling a Final Hearing to Determine Extent of Cash Collateral and Authorizing Use of Cash Collateral* (the "Interim Order"). The Interim Order granted Debtors' Cash Collateral Motion on a preliminary and interim basis, and thus authorized Debtors' limited use of cash collateral, but only Operating Cash Disbursements per the proposed Budget, and did not allow any Bankruptcy Cash Disbursements or Purchase of New Accounts. As and for adequate protection, the Interim Order provided BMO Harris with the following: (a) Debtors were to make monthly interest payments to BMO Harris as set forth in the Budget; (b) Debtors were to provide BMO Harris with weekly reports showing operations, use of cash, and any variances to the Budget; and (c) BMO Harris was granted a post-petition replacement lien in and to all of Debtors' Post-Petition Receipts generated by the BMO Collateral to the extent of any diminution in the value of its interest.

**(b)    The Cash Collateral Stipulation.**

After further substantial negotiations, Debtors and BMO Harris were able to come to an agreement on the terms and conditions of a consensual use of cash collateral for the Chapter 11 Cases, and on October 16, 2013, filed a motion to approve a *Stipulation Authorizing Debtors to Use Cash Collateral, Granting Adequate Protection and Granting Relief from the Automatic Stay Pursuant to 11 U.S.C. § 361, 362 and 363* (the "Cash Collateral Stipulation").

Pursuant to the Cash Collateral Stipulation, Debtors made various admissions, including but not limited to the following: (a) as of the Petition Date, the Debtors were indebted and liable to BMO Harris, without claim, defense, counterclaim, recoupment or offset of any kind, in the aggregate principal amount of no less than $30,870,301.70, exclusive of all costs, fees, expenses and charges; (b) the BMO Obligations were legal, valid and binding obligations of the Debtors, enforceable in accordance with their terms, and no portion of the BMO Obligations is subject to avoidance, recharacterization, setoff, recoupment or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law; (c) the Debtors did not have, and thereby forever waived, released and affirmatively agreed not to allege or otherwise pursue, any defenses, affirmative defenses, counterclaims, claims, causes of action, recoupments, setoffs or other rights that it has or may have arising under the Bankruptcy Code, applicable nonbankruptcy law or otherwise against BMO or any of its affiliates. Notwithstanding the foregoing, within forty five (45) days after entry of the final order approving the Cash Collateral Stipulation, and other party in interest was able to challenge the foregoing.

The Cash Collateral Stipulation provided that Debtors were authorized on a limited basis to use BMO's Collateral, including the Cash Collateral, but only in strict accordance with the terms and conditions provided in the Cash Collateral Stipulation and Budget and only until the occurrence of a Termination Event (as hereinafter defined). Debtors were also permitted to use Cash Collateral to buy a limited amount of new finance receivables, but prohibited from using any Cash Collateral to pay or fund dealer reserves, or to pay any amounts owed to or by WFI, Global Track, or Harbor.

Debtors also acknowledged in the Cash Collateral Stipulation that their use of Cash

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

Collateral or the imposition of the automatic stay may result in the diminution in value of BMO Harris' Collateral and that BMO's interests therein, and, as a result, BMO is entitled to adequate protection. As adequate protection, BMO was granted a superpriority post-petition administrative claim against the Debtors' estates, as well as certain adequate protection liens consisting of first priority replacement security interest in and a lien on the estates' property, excluding the real property. Debtors also committed to paying BMO non-refundable cash adequate protection payments in the amount of $1,000,000 each on a monthly basis, and paying BMO Harris' reimbursable expenses upon presentation of an invoice.

Debtors also made various other commitments to BMO Harris under the Cash Collateral Stipulation, including but not limited to the following: (1) providing BMO Harris with any written financial information or periodic reporting that BMO should reasonably request; (2) Debtors will continue to retain High Ridge Partners as their financial advisors; (3) Debtors will retain and engage Hilco Receivables, LLC as the backup servicer. BMO Harris also consented to the establishment of a carveout of up to $1,000,000 for the payment of estate professionals, including Committee counsel.

Finally, the Cash Collateral Stipulation also provided for the occurrence various events of termination (the "Termination Events"), including but not limited to the following: (1) failure of the Debtors to deliver to BMO by no later than October 25, 2013, a letter of intent, in a form and substance acceptable to BMO, from a non-insider to provide sufficient financing to fund a confirmable reorganization involving a transaction to pay BMO Harris Bank in full; (2) failure of the Debtors to timely comply with at least one of the following: (i) file a Plan in these Cases on or before October 25, 2013 or (ii) file a motion seeking Court approval to establish bidding procedures for and to sell substantially all of the Collateral with the consent of BMO pursuant to section 363 of the Bankruptcy Code (a "363 Sale") on or before November 11, 2013, in either case acceptable in form and substance to BMO, or that otherwise fails to provide BMO with its full credit bid rights pursuant to section 363(k) of the Bankruptcy Code; (3) failure of Debtors to obtain the entry by this Court of an order, acceptable in form and substance to BMO approving a disclosure statement or approving bidding procedures for the 363 Sale that preserve BMO's rights to credit bid without limitation, on or before November 25, 2013; (4) failure of the Debtors to obtain the entry by this Court of an order on or before December 23, 2013, acceptable in form and substance to BMO either confirming a Plan or approving a 363 Sale; (5) failure of the Debtors to effect the confirmed Plan or to close the 363 Sale on or before January 4, 2014.

On October 24, 2013, the Bankruptcy Court entered an order approving the Cash Collateral Stipulation on a final basis.

**(c)      The Amendment to the Cash Collateral Stipulation.**

On November 1, 2013, Debtors and BMO Harris filed a First Stipulated Amendment (the "Cash Collateral Amendment") to the Cash Collateral Stipulation, which provides, among other matters, the following: (1) after entry of the Cash Collateral Amendment, Debtors would pay BMO Harris an additional adequate protection payment of $500,000; (2) after approval of a transaction or sale for substantially all of Debtors' business, Debtors would immediately transfer all cash collateral then held or controlled by Debtors; and (3) Debtors would continue and finalize their efforts to return all pre-petition retainers, and imposed other limitations with respect to the retainer being held by Debtors' general reorganization counsel. On November ___, 2013,

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

the Bankruptcy Court entered an order approving the Cash Collateral Amendment.

**Section 4.04    Retention of Professionals**

The Bankruptcy Court has entered orders approving the Debtors' applications to employ and retain (i) Larson & Zirzow, LLC as their general bankruptcy and restructuring counsel, (ii) FTI Consulting as their interim financial advisors, (iii) High Ridge Partners as their replacement financial advisors, (iv) Hilco Receivables, LLC as their backup servicer, and (v) Lewis Roca Rothgerber, LLP as their special counsel for corporate and transactional matters.  The Debtors may also seek to retain other professionals, including but not limited to Hudson Cook, LLP, as special counsel for consumer financial and related regulatory matters, Timothy R. Morse & Associates as real estate appraiser, and such other professionals as may be necessary.  The Bankruptcy Court has also entered an order granting an application by the Committee to employ and retain Schwartzer McPherson Law Firm as their legal counsel.

**Section 4.05    Expense Reimbursement and Break-Up Fee**

On November ___, 2013, the Bankruptcy Court entered an order approving a break-up fee equal to $365,000.00 and expense reimbursement to the Stalking Horse Bidder, and an expense reimbursement for its documented reasonable out-of-pocket costs and expense of up to $450,000.00, or in the event of a BMO Harris credit bid, up to $350,000.00.

**Section 4.06    Bid Procedures Motion**

On November ___, 2013 Debtors filed their *Motion to (A) Approve the Stock Purchase Agreement and Authorize the Debtors to Enter Into the Stock Purchase Agreement and Comply with Their Obligations Thereunder; (B) Approve the Procedures for the Solicitation of Higher or Better Offers; (C) Approve the Form and Manner of Notice; (D) Approve Procedures for Determining Cure Amounts for Executory Contracts and Unexpired Leases; and (E) Grant Related Relief* (the "Bid Procedures Motion"), which seeks Bankruptcy Court approval of a process under which the Debtors will seek competing bids for the sale of the New Interests or the Debtors' Assets.  Specifically, the Bid procedures contemplate the following:

•     Notice of Auction and Sale Hearing (the "Sale Notice") will be (i) served on certain parties within one (1) business day after entry of the Bid Procedures Order.

•     Subject to certain requirements in the Bid Procedures, the Debtors will afford any Qualified Bidder the time and opportunity to conduct reasonable due diligence.

•     To be deemed a Qualifying Bid, a bid must, among other requirements specified in the Bid procedures, (i) be received no later than the Bid Deadline; (ii) state such Qualified Bidder offers to purchase the Acquired Property on terms and conditions substantially as set forth in the Purchase and Sale Agreement; (iii) includes a duly authorized and executed Purchase and Sale Agreement along with a copy of such agreement marked to show the specific changes to the Stalking Horse SPA that the Potential Bidder requires (which marked copy may be an electronic comparison of the written acquisition agreement submitted and the Stalking Horse SPA (a "Marked Agreement")); and (vi) provide written evidence that the Qualified Bidder is financially capable of consummating the contemplated transaction.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

- All Qualifying Bids must also provide the Good Faith Deposit, which shall be returned to each Qualifying Bidder not deemed to be the Purchaser.

- In the event the Debtors timely receive one or more Qualifying Bids other than the Stalking Horse's Qualified Bid, the Debtors shall conduct an Auction.

- The Qualifying Bidder submitting the highest and best bid at the Auction will be deemed the Purchaser, and will complete and execute all documents evidencing and containing the terms and conditions upon which the winning bid was made.

To facilitate this process, the Debtors negotiated and signed the Stalking Horse SPA, which provides that the Stalking Horse will pay an amount equal to seventy percent (70%) of the net financed receivables, after excluding certain accounts, in Cash for the New Interests, subject to adjustments detailed in the Stalking Horse SPA.

The Bid Procedures Motion contemplates that the Auction is currently set to commence at 9:00 a.m., prevailing Pacific Time, on **December 16, 2013**.  The Auction will take place at the law offices of Larson & Zirzow, LLC, which is located at 810 S. Casino Center Blvd., Suite 101, Las Vegas, Nevada 89101.

## Section 4.07   Las Vegas Property Bid Procedure Motion

On November ___, 2013 Debtors filed their *Motion to (A) Approve the Stock Purchase Agreement and Authorize the Debtors to Enter Into the Stock Purchase Agreement and Comply with Their Obligations Thereunder; (B) Approve the Procedures for the Solicitation of Higher or Better Offers; (C) Approve the Form and Manner of Notice; (D) Approve Procedures for Determining Cure Amounts for Executory Contracts and Unexpired Leases; and (E) Grant Related Relief* (the "Las Vegas Property Bid Procedures Motion"), which seeks Bankruptcy Court approval of a process under which the Debtors will seek competing bids for the sale of the Las Vegas Property.  Specifically, the Las Vegas Property Bid Procedures Motion contemplates similar procedures to those previously referenced with respect to the Bid Procedures Motion for the sale of the New Interests or the Debtors' Assets.

To facilitate this process, the Debtors negotiated and signed the Las Vegas Property Purchase Agreement with the Stalking Horse, which provides that the Stalking Horse will pay an amount equal to $500,000, in Cash for the Las Vegas Property, subject to adjustments detailed in the Las Vegas Property Purchase Agreement.

The Las Vegas Property Bid Procedures Motion contemplates that the Auction is currently set to commence at 9:00 a.m., prevailing Pacific Time, on **December 16, 2013**.  The Auction will take place at the law offices of Larson & Zirzow, LLC, which is located at 810 S. Casino Center Blvd., Suite 101, Las Vegas, Nevada 89101.

## Section 4.08   Administrative Expense Claim Estimate

As of the Petition Date, the Debtors estimate that on the Effective Date, the total amount of Allowed Administrative Claims will be $1,150,000.00.  The Debtors further estimate that approximately $1,000,000.00 of the total amount of Allowed Administrative Claims will consist of unpaid Professional Fees and the remaining $150,000.00 will constitute unpaid ordinary

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

course accounts payable.

**Section 4.09    Preference Analysis and Other Potential Avoidance Actions**

The Bankruptcy Code preserves the Debtors' rights to prosecute claims and causes of action that exist outside of bankruptcy, and also empowers the Debtors to prosecute certain claims that are established by the Bankruptcy Code, including claims to avoid and recover preferential transfers, and fraudulent conveyances.  Under the Plan, all of the Debtors' rights in respect of all Liquidating Trust Avoidance Actions are preserved and are transferred to the Liquidating Trustee.    As such, the Liquidating Trustee, as a representative of the Estates, will have the authority to investigate, prosecute, collect, and/or settle the Liquidating Trust Avoidance Actions in accordance with Bankruptcy Code § 1123(b)(3).

**IN REVIEWING THIS DISCLOSURE STATEMENT AND THE PLAN, AND IN DETERMINING WHETHER TO VOTE IN FAVOR OR AGAINST THE PLAN, HOLDERS OF CLAIMS AND INTERESTS (INCLUDING PARTIES THAT RECEIVED PAYMENTS FROM THE DEBTORS WITHIN NINETY (90) DAYS BEFORE THE PETITION DATE) SHOULD CONSIDER THAT A CAUSE OF ACTION MAY EXIST AGAINST THEM, THAT THE PLAN PRESERVES ALL CAUSES OF ACTION, AND THAT THE PLAN AUTHORIZES THE LIQUIDATING TRUSTEE TO PROSECUTE THE SAME.**

**Section 4.10    Deemed Consolidation of Debtors for Plan Purposes Only**

Subject to the occurrence of the Effective Date, the Debtors shall be deemed consolidated under the Plan solely for the limited purposes of distribution under the Plan.    Each and every Claim filed or to be filed against any of the Debtors shall be deemed filed against the deemed consolidated Debtors and shall be deemed one Claim against all Debtors and (a) all Claims of each Debtor against any other Debtor will be eliminated and released; (b) any obligation of any Debtor and all guarantees thereof executed by one or more of the Debtors shall be deemed to be one obligation of all of the consolidated Debtors; (c) any Claims filed or to be filed in connection with any such obligation and such guarantees shall be deemed one Claim against the consolidated Debtors; (d) all duplicative Claims (identical in amount and subject matter) filed against one or more of the Debtors will be automatically expunged so that only one Claim survives against the consolidated Debtors; and (e) the consolidated Debtors will be deemed, for purposes of determining the availability of the right of set-off under Bankruptcy Code § 553, to be one entity, so that, subject to other provisions of Bankruptcy Code § 553, the debts due to a particular Debtor may be offset against the Claims against such Debtor or Debtors.

Such deemed consolidation, however, shall not (other than for purposes related to funding distributions under the Plan and as set forth above in this Section) affect:  (a) the legal and organizational structure of the Reorganized Debtors; (b) pre- and post-Petition Date guaranties, liens, and security interests that are required to be maintained (i) in connection with executory contracts or unexpired leases that were entered into during the Chapter 11 Cases or that have been or will be assumed; (ii) pursuant to the Plan; or (iii) in connection with any financing entered into, or New Interests issued, by the Reorganized Debtors on the Effective Date; and (iv) distributions out of any insurance policies or proceeds of such policies.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

**Section 4.11    Exclusivity**

The Debtors have the exclusive right to file a plan of reorganization in the Chapter 11 Cases until January 2, 2014, and the exclusive right to solicit acceptances until March 3, 2014. Although a possibility always exists that Confirmation of the Plan will not occur, at this time, the Debtors do not contemplate the need to extend these dates.

## ARTICLE V

## SUMMARY OF THE DEBTORS' PLAN OF REORGANIZATION

**Section 5.01    General Structure of the Plan**

The primary purpose of the Plan is to facilitate the restructuring of the Debtors pursuant to the Purchase and Sale Agreement. The Debtors have determined in the exercise of their business judgment that the effectuation of the Purchase and Sale Agreement is the best course of action given the Debtors' financial constraints. A reorganization strategy other than a sale, is not possible given the position taken by various creditors of the Debtors, the lack of availability in the credit markets, and the Debtors' inability to sustain operations given their current cash balances. The Plan is structured to enable the Debtors to facilitate a flexible Transaction which is expressly subject to a process to solicit higher or better offers for the Debtors' Assets and New Interests. Additionally, the Plan contemplates the creation of a Liquidating Trust to liquidate certain Liquidating Trust Assets and distribute any remaining funds (after the payment of Allowed Plan Carve Out Claims), in accordance with the Plan. Under the Plan, Claims against the Debtors' Estates and Interests in the Debtors are classified, treated, entitled to vote as follows:

**Section 5.02    Classification of Claims and Interests**

All Claims and Interests, except for Administrative Claims and Priority Tax Claims, are placed in the Classes as set forth below. In accordance with Bankruptcy Code § 1123(a)(1), Administrative Claims, and Priority Tax Claims of the kinds specified in Bankruptcy Code §§ 507(a)(1) and 507(a)(8) have not been classified.

The categories of Claims and Interests set forth in the Plan classify Claims and Interests for all purposes, including for purposes of voting, confirmation, and distribution pursuant to the Plan and Bankruptcy Code §§ 1122 and 1123(a)(1). A Claim or Interest shall be deemed classified in a particular Class only to the extent that it qualifies within the description of such Class, and shall be deemed classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes. Notwithstanding anything to the contrary in the Plan, a Claim or Interest shall be deemed classified in a Class only to the extent that such Claim or Interest has not been paid, released, or otherwise settled before the Effective Date.

In no even shall the Reorganized Debtors or the Stalking Horse be liable for the payment of any Claims or Interests pursuant to this Plan and the Bankruptcy Code.

Under the Plan, Claims and Interests are classified as follows:

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

| Class | Type of Allowed Claim or Interest | Treatment | Impairment | Entitled to Vote |
|---|---|---|---|---|
| -- | Administrative Claims | Paid in full in Cash on the Effective Date | Unclassified | No, not entitled to vote |
| -- | Priority Tax Claims | Paid in full in Cash on the Effective Date | Unclassified | No, not entitled to vote |
| A1, B1 and C1 | Priority Non-Tax Claims | Paid in full in Cash on the Effective Date | Unimpaired | No, deemed to accept this Plan |
| A2, B2 and C2 | Senior Secured Claims | See Section 4.02 of Plan | Impaired | Yes, entitled to vote |
| A3, B3 and C3 | Miscellaneous Secured Claims | Paid in full in Cash on the Effective Date | Unimpaired | No, deemed to accept this Plan |
| A4 | B Member Secured Claims | See Section 4.04 of Plan | Impaired | Yes, entitled to vote |
| A5, B4 and C4 | General Unsecured Claims | See Section 4.05 of Plan | Impaired | Yes, entitled to vote |
| A6, B5 and C5 | Intercompany Claims | Canceled | Impaired | No, deemed to reject this Plan |
| A7, B6 and C6 | Interests | Canceled | Impaired | No, deemed to reject this Plan |

**Section 5.03    Summary of Proposed Distributions Under the Plan**

**(a) Administrative and Priority Tax Claims.**

Certain Claims, including Administrative Expense Claims and Priority Tax Claims, are not classified under the Plan and are not entitled to vote on the Plan and are, therefore, treated as follows:

Each Holder of an Allowed Administrative Claim shall, in full satisfaction, release, settlement, and discharge of such Allowed Administrative Claim:  (a) to the extent such claim is due and owing on the Effective Date, be paid in full, in Cash, on the Effective Date; (b) to the extent such claim is not due and owing on the Effective Date, be paid in full, in Cash, (i) in accordance with the terms of any agreement among the Liquidating Trustee, the Pre-Petition Agent and such Holder, or (ii) when such claim becomes due and payable under applicable non-bankruptcy law, or (iii) in the ordinary course of business; or (c) receive such other treatment as to which such Holder may agree with the Liquidating Trustee and the Pre-Petition Agent.  Cash payments of Allowed Administrative Claims shall be paid from the Claims Reserve, or if the Claims Reserve is insufficient to pay all Allowed Administrative Claims, any shortfall shall be paid from the Avoidance Actions Proceeds Reserve.

Each Holder of an Allowed Priority Tax Claim shall, in full satisfaction, release, and discharge thereof, receive (i) such treatment as to which such Holder may agree with the Liquidating Trustee, and the Pre-Petition Agent or (ii) at the sole option of the Liquidating Trustee, (a) payment in full, in Cash, of such Allowed Priority Tax Claim on the Effective Date; or (b) treatment in accordance with Bankruptcy Code §§ 1129(a)(9)(C) or 1129(a)(9)(D), as the

29

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

case may be, with the Liquidating Trustee's selection of (a) or (b) being subject to the prior written approval of Pre-Petition Agent.  Cash payments of Allowed Priority Tax Claims shall be paid from the Claims Reserve, or if the Claims Reserve is insufficient to pay all Allowed Priority Tax Claims, any shortfall shall be paid from the Avoidance Actions Proceeds Reserve.

**(b)    Priority Non-Tax Claims.**

In full satisfaction of the Allowed Senior Secured Claims, the Pre-Petition Agent shall receive:

(i)    on the Effective Date and as part of the Closing, from the Purchaser, all of the PSA Sale Proceeds, except for any portion of such proceeds transferred by the Purchaser on account of the Debtors to the Liquidating Trust to fund the (a) Claims Reserve as described in Section 6.02(a) of this Plan, and (b) Liquidating Trust Expense Reserve as described in Section 6.02(b) of this Plan;

(ii)    on the Effective Date, from the Debtors, contemporaneously with the payment from the Purchaser in clause (i) above, all Available Cash, if any, except for (a) the amounts transferred to the Liquidating Trust to fund the Claims Reserve and the Liquidating Trust Expense Reserve pursuant to Section 6.02 of this Plan; and (b) any amounts that constitute Retained Funds;

(iii)    as soon as reasonably practicable after the Effective Date, the Net Proceeds of the sale, collection or other monetization of all or each a portion of the Other Assets, except for Liquidating Trust Avoidance Actions and Excluded Real Properties, which shall be liquidated for the benefit of the Holders of Allowed Plan Carve Out Claims and Allowed General Unsecured Claims until satisfaction in full of such Allowed Claims, at which time any remaining funds in the Avoidance Actions Proceeds Reserve shall be transferred to the Pre-Petition Agent;

(iv)    as soon as reasonably practicable after the Effective Date, any remaining funds in the Claims Reserve after the payment of the Allowed Plan Carve Out Claims;

(v)    any remaining funds in the Liquidating Trust Expense Reserve on the date the Liquidating Trust is terminated; and

(vi)    as soon as reasonably practicable after receipt by the Liquidating Trustee, all amounts in the Undeliverable Distribution Reserve that have been forfeited by Holders of Claims in accordance with Section 9.02(b) of this Plan.

The Pre-Petition Agent shall disburse the funds received pursuant to this Section 4.02 in accordance with the Senior Credit Agreement.

In the event sufficient PSA Sale Proceeds exist to pay the Allowed Claim of the Senior Secured Lenders in full, the Senior Secured Lenders shall be entitled to amend their claim as necessary to allow recovery of all other amounts to which the Senior Secured Lenders would be entitled under the Senior Lien Documents which might not otherwise be set forth in their Allowed Claim, such as interest and legal fees.  In the event that the Allowed Senior Secured Claim Distribution Amounts are greater than the Allowed Senior Secured Claims and the Senior

30

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

Secured Claims are paid in full, then the Liquidating Trust shall distribute the excess amount to General Unsecured Creditors pro rata on account of Allowed General Unsecured Claims.

To the extent that the amounts received by the Pre-Petition Agent as provided herein are less than the amount of the Allowed Senior Secured Claims, the shortfall shall be a "Senior Secured Deficiency Claim" and shall be treated as an Allowed General Unsecured Claim in Classes A5, B5, and C5 against the Debtors; provided, however, if (i) the Committee supports, and does not object to, Confirmation of this Plan, (ii) all Classes of General Unsecured Claims in this Plan vote to accept this Plan by the requisite statutory majority provided in Bankruptcy Code § 1126(c); and (iii) the validity, extent, or priority of the Senior Secured Lenders' Liens are not challenged by the Committee, a Creditor, or any other party-in-interest, then the Senior Secured Deficiency Claim is waived and shall not become a General Unsecured Claim in any Class under this Plan. In the event that the Allowed Senior Secured Claim Distribution Amounts are greater than the Allowed Senior Secured Claims and the Senior Secured Claims are paid in full, then the Liquidating Trust shall distribute the excess amount to General Unsecured Creditors on account of the General Unsecured Claims.

**(c)    Miscellaneous Secured Claims.**

On or as soon as reasonably practicable after the latest to occur of (i) the Effective Date or (ii) the date on which each such Miscellaneous Secured Claim becomes an Allowed Claim, each Holder of such an Allowed Claim, if any, shall receive, on account of, and in full and complete settlement, release and discharge of and in exchange for such Allowed Miscellaneous Secured Claim, at the election of the Liquidating Trustee (with the prior written consent of Pre-Petition Agent), (a) such treatment in accordance with Bankruptcy Code § 1124 as may be determined by the Bankruptcy Court; (b) payment in full, in Cash, of such Allowed Class A3, B3, and C3 Claim; (c) satisfaction of any such Allowed Class A3, B3, and C3 Claim by delivering the Collateral securing any such Claims (if such Collateral is an Other Asset and not previously sold or otherwise transferred other than to the Liquidating Trust) and paying any interest fees, costs and/or expense required to be paid under Bankruptcy Code § 506(b); or (d) providing such Holder with such treatment in accordance with Bankruptcy Code § 1129(b) as may be determined by the Bankruptcy Court. Cash payments of Allowed Claims in Classes A3, B3, and C3 shall be paid from the Claims Reserve, or if the Claims Reserve is insufficient to pay all Allowed Miscellaneous Secured Claims, any shortage shall be paid from the Avoidance Actions Proceeds Reserve.

**(d)    B Member Secured Claims.**

On or as soon as reasonably practicable after the latest to occur of (i) the Effective Date or (ii) the date on which each such B Member Secured Claim becomes an Allowed Claim, each Holder of such an Allowed Claim, if any, shall receive, on account of, and in full and complete settlement, release and discharge of and in exchange for such Allowed Class A4 Claim, at the election of the Liquidating Trustee (with the prior written consent of Pre-Petition Agent), (a) such treatment in accordance with Bankruptcy Code § 1124 as may be determined by the Bankruptcy Court; (b) payment in full, in Cash, of such Allowed Class A4 Claim; (c) satisfaction of any such Allowed Class A4 Claim by delivering the Collateral securing any such Claims (if such Collateral is an Other Asset and not previously sold or otherwise transferred other than to the Liquidating Trust) and paying any interest fees, costs and/or expense required to be paid

under Bankruptcy Code § 506(b); or (d) providing such Holder with such treatment in accordance with Bankruptcy Code § 1129(b) as may be determined by the Bankruptcy Court. Cash payments of Allowed Claims in Class A4 shall be paid from the Claims Reserve, or if the Claims Reserve is insufficient to pay all Allowed Miscellaneous Secured Claims, any shortage shall be paid from the Avoidance Actions Proceeds Reserve.

(e)    **General Unsecured Claims.**

Each Holder of an Allowed General Unsecured Claim shall receive from the Liquidating Trust on or as soon as reasonably practicable after the Effective Date, their Pro Rata share of the sum of (i) the aggregate Cash Avoidance Actions Proceeds, less (ii) any amounts of the Avoidance Actions Proceeds Reserve required to satisfy the Allowed Plan Carve Out Claims as provided in this Plan.

(f)    **Intercompany Claims and Interests.**

On the Effective Date, all of the Intercompany Claims and Interests as of the Effective Date shall be eliminated, extinguished, cancelled, and discharged. Pursuant to Bankruptcy Code § 1129(b)(2)(C), Holders of Intercompany Claims and Interests shall not be entitled to, nor shall they receive, any distribution or retain any property or interest in property on account of such Intercompany Claims or Interests.

## ARTICLE VI

## INFORMATION REGARDING STALKING HORSE

**Section 6.01    The Stalking Horse SPA**

Set forth below is a summary of the material terms of the Stalking Horse SPA. The description of the Stalking Horse SPA herein is intended as a summary and is qualified in its entirety by reference to the Stalking Horse SPA, a copy of which is attached hereto as **Exhibit C** and incorporated by reference herein.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

Purchase Price

Closing

Good Faith Deposit

Representations and Warranties of Seller

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

1

2   Representations and Warranties of Buyers

3

4

5

6

7   Covenants of Debtors

8

9   Conditions to Obligations of Buyers and Debtors to Closing

10

11

12

13   Conditions to Obligations of Debtors to Close

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

Conditions to Obligation of Buyer to Close

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

Termination

Capitalized terms used but not defined in this Section 6.01 and defined in the Stalking Horse SPA have the meaning given them in the Stalking Horse SPA.

**ARTICLE VII**

**PLAN EXECUTION AND IMPLEMENTATION**

**Section 7.01    Sale of the Acquired Property**

The Plan contemplates the sale of the Acquired Property to a third party. To effect this, the Debtors Filed the Bid Procedures and Sale Motion which seeks, *inter alia*, to approve the Stalking Horse SPA and to establish the Auction.   On November ___, 2013, the Bankruptcy Court entered the Bid Procedures Order, which established December ___, 2013 as the deadline for Potential Bidders to submit bids for the Acquired Property, and established December ___, 2013 as the date for the Auction. In connection with the Auction, the Debtors have identified the Stalking Horse as a potential purchaser for the New Interests.  If no timely Qualifying Bid (as defined in the Bid Procedures) (other than the Stalking Horse bid) is received by the Bid Deadline (as defined in the Bid Procedures), the Debtors shall not hold an Auction and instead shall request at the Sale Hearing that the Bankruptcy Court approve the Stalking Horse SPA as the Purchase and Sale Agreement and declare the Stalking Horse to be the Successful Bidder/Bid.  If additional Qualified Bidders are identified, at the conclusion of the Auction, the Debtors, with the consent of the Pre-Petition Agent, will seek Bankruptcy Court approval to sell the Acquired Property pursuant to the Purchase and Sale Agreement to the

36

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

Successful Bidder, Free and Clear. The Sale Order and/or the Confirmation Order shall contain specific authority for the Debtors to comply with the Purchase and Sale Agreement as set forth above.

**Section 7.02    Means for Implementation**

(a)    Application of PSA Sale Proceeds.

(i)    *Claims Reserve Funding.* Contemporaneously with the Closing, the Effective Date and the delivery of the PSA Sale Proceeds to the Pre-Petition Agent described below, the Debtors will transfer from their Available Cash (other than Retained Funds) an amount sufficient to fund the Claims Reserve for the benefit of the Holders of Allowed Plan Carve Out Claims (and, to the extent of any surplus from such reserve after the payment of such Allowed Claims, for the benefit of the Holders of Senior Secured Claims) to the Liquidating Trust. If the amount of the Debtors' Available Cash at the time of the Closing is insufficient to fund the Claims Reserve in full, then the Purchaser shall transfer a portion of the PSA Sale Proceeds (in an amount equal to such insufficiency) to the Liquidating Trust (rather than being transferred to the Pre-Petition Agent as described below) to complete the funding of the Claims Reserve.

(ii)    *Liquidating Trust Funding.* If there is additional Available Cash after the Claims Reserve is funded, then the Debtors will transfer an amount sufficient to fund the Liquidating Trust Expense Reserve in full from their Available Cash (other than Retained Funds) to the Liquidating Trust. If the amount of the Debtors' Available Cash after funding the Claims Reserve is less than the Liquidating Trust Expense Reserve, the Purchaser shall transfer a portion of the PSA Sale Proceeds equal to the shortfall to the Liquidating Trust (rather than being transferred to the Pre-Petition Agent as described below) to fund the Liquidating Trust Expense Reserve.

(iii)    *Payment of Senior Secured Claim.* Contemporaneously with and as part of the Closing and the Effective Date, the Purchaser shall transfer to the Pre-Petition Agent all of the PSA Sale Proceeds (including the release of any deposit paid pursuant to the Purchase and Sale Agreement or Bid Procedures) and any subsequent adjustments or payments received from the Purchaser pursuant to the Purchase and Sale Agreement or the Sale Order, less (i) any portion of the PSA Sale Proceeds transferred by the Purchaser to the Liquidating Trust to fund the Claims Reserve for a shortfall in the Debtors' Available Cash described above; and (ii) any portion of the PSA Sale Proceeds transferred by the Purchaser to the Liquidating Trust to fund the Liquidating Trust Expense Reserve for a shortfall in the Debtors' Available Cash described above. In the event that the Allowed Senior Secured Claims are paid in full, excess amounts of the PSA Sale Proceeds shall be transferred to the Liquidation Trustee for the benefit of General Unsecured Creditors.

(b)    Available Cash. After the Claims Reserve and Liquidating Trust Expense Reserve are funded, any remaining Available Cash (other than proceeds of Excluded Real Properties) shall be transferred to the Pre-Petition Agent for the benefit of the Senior Secured Claim.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

(c)     Other Assets. Any Other Assets (excluding Liquidating Trust Avoidance Actions and the Excluded Real Properties), shall revest or vest in the appropriate Reorganized Debtor and shall be transferred to the Liquidating Trust for the benefit of the Holders of Senior Secured Claims. Except as otherwise provided in the Purchase and Sale Agreement, any assets received by the Liquidating Trust after the Effective Date of the Plan (other than the proceeds of the Liquidating Trust Avoidance Actions and Excluded Real Properties) shall also be Other Assets and transferred to the Liquidating Trust for the benefit of the Holders of Senior Secured Claims.

(d)     Avoidance Actions. All Liquidating Trust Avoidance Actions are transferred to the Liquidating Trust for the benefit of the Holders of Allowed General Unsecured Claims in Classes A6, B6, and C6.

(e)     Deemed Consolidation of Debtors for Plan Purposes Only. Subject to the occurrence of the Effective Date, the Debtors shall be deemed consolidated under the Plan solely for the limited purposes of distribution under the Plan.

(f)     Creation of Liquidating Trust. As set forth in Article VII of the Plan, a Liquidating Trust will be created with certain Liquidating Trust Assets and for the distribution and delivery of said assets in accordance with the terms of the Plan.

(g)     Governance Documents. On the Effective Date, the Governance Documents of Cano shall be amended and restated in substantially the form set forth in the Plan Supplement.

(h)     Directors and Officers. On the Effective Date, (a) the positions of the current directors, or in the case of a governing body created by a partnership agreement, limited liability company agreement or similar agreement, the members of such governing body (such persons and the corporate directors collectively, the "Governors") of each Debtor shall be eliminated, and each Governor shall be terminated (without the necessity of further action); (b) to the fullest extent permitted by applicable law, the rights, powers, and duties of the Governors of each Debtor (that is not a Debtor whose Interests have been sold to the Purchaser pursuant to the Sale Order and/or the Confirmation Order) that has a Governor shall vest in the Liquidating Trustee and the Liquidating Trustee or its designee shall be the presiding officer and the sole Governor of each such Reorganized Debtor; and (c) to the fullest extent permitted by applicable law, the Governors of each Debtor whose Interests have been sold to the Purchaser pursuant to the Sale Order and/or the Confirmation Order shall be selected by the Purchaser. The Liquidating Trustee shall make all determinations with respect to employment of any other directors, officers, managers and employees of each such Debtor described in clause (b) on and after the Effective Date.

(i)     Cancellation of Existing Secured Claims. Except as otherwise provided herein and in accordance with the Purchase and Sale Agreement, upon the Effective Date, any Lien encumbering the Acquired Property shall be deemed released and the Holder of such Allowed Secured Claim shall deliver to the applicable Debtor (or Reorganized Debtor) any Collateral or other property of any Debtor (or Reorganized Debtor) held by such Holder, and any termination statements, instruments of satisfactions, or releases of all security interests with respect to its Allowed Secured Claim that may be reasonably required in order to terminate any related financing statements, mortgages, mechanic's liens, or *lis pendens*.

38

(j)    Vesting of the Vested Assets. Except as otherwise set forth in the Plan, the Las Vegas Property Sale Order, the Sale Order and/or the Confirmation Order, on the Effective Date, (a) the Vested Assets shall vest in the applicable Reorganized Debtors Free and Clear; and (b) the assumed contracts shall be assumed by the applicable Debtors as provided in Article X of the Plan and vest in the applicable Reorganized Debtor(s). Except as otherwise set forth in the Plan or the Purchase and Sale Agreement from and after the Effective Date, the Reorganized Debtors shall perform and pay when due liabilities under, or related to the ownership or operation of, the Vested Assets and the Liquidating Trust shall not be responsible for any such liabilities. The Reorganized Debtors may operate free of any restrictions of the Bankruptcy Code.

(k)    Cancellation of Interests. On the Effective Date, all Interests in the Debtors (including those Interests held in Treasury by any of the Debtors) shall be terminated and extinguished and the certificates that previously evidenced ownership of those interests shall be deemed canceled (all without further action by any person or the Bankruptcy Court) and shall be null and void and such certificates shall evidence no rights or interests in any of the Debtors.

(l)    Issuance of New Interests/New WFIN Stock. On the Effective Date, after the Interests are cancelled, the Reorganized Global Track shall issue the New Global Track Stock to Purchaser and Reorganized WFI shall issue the New WFI Stock to the Purchaser in accordance with the Purchase and Sale Agreement, and in each case such shares shall be Free and Clear. The New WFI Stock shall constitute one hundred percent of the authorized and issued equity interest in the Reorganized WFI. The New Global Track Shares shall constitute one hundred percent of the limited liability company interests in Reorganized Global Track. On the Effective Date there shall not be issued, reserved for issuance or outstanding any (i) shares of capital stock or other voting or other securities of, or ownership interests in, any Reorganized Debtor, other than the New Interests issued to Purchaser at the Closing, (ii) securities of any Reorganized Debtor convertible into or exchangeable for shares of capital stock or other voting or other securities of, or ownership interests in, any Reorganized Debtor, (iii) warrants, calls, options or other rights to acquire from any Reorganized Debtor, or other obligation of any Reorganized Debtor to issue, any capital stock, voting or other securities or ownership interests, or securities convertible into or exchangeable for capital stock or voting or other securities of, or ownership interests in, any Reorganized Debtor or (iv) restricted shares, stock appreciation rights, performance units, contingent value rights, "phantom" stock or similar securities or rights that are derivative of, or provide economic benefits based, directly or indirectly, on the value or price of, any capital stock of or voting or other securities of, or ownership interests in, any Reorganized Debtor.

On the Effective Date, after the Interests are cancelled, Dissolved WFIN shall issues new shares in Dissolved WFIN pursuant to section 1145 of the Bankruptcy Code to the Liquidating Trust and such shares shall be Free and Clear provided that the termination of Interests in Dissolved WFIN; pursuant to Section 6.15 and the issuance of the shares pursuant to this Section 6.16 are each intended to qualify as a "reorganization" under Section 368(a)(1)(E) of the Internal Revenue Code; *provided*, *further*, that the termination of Interests pursuant to Section 6.15 are each intended to qualify as a "contribution" under Section 721 of the Internal Revenue Code.

(m)    Exemption from Registration. The New Interests and New WFIN Stock shall be exempt from registration under any federal (including the Securities Act), state or local law,

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

rule or regulation pursuant to Bankruptcy Code § 1145 or other applicable law requiring registration before the offering, issuance, distribution or sale of securities; provided that if the issuance of the New Interests or New WFIN Stock, as applicable, does not qualify for an exemption under Bankruptcy Code § 1145, the New Interests and New WFIN Stock, as applicable, shall be issued in a manner, which qualifies for any other available exemption from registration, whether as a private placement under Rule 506 of the Securities Act, Section 4(2) of the Securities Act, and/or the safe harbor provisions promulgated thereunder. In connection with the confirmation of the Plan, the Debtors intend to seek an order from the Bankruptcy Court to the effect that the issuance of the New Interests and New WFIN Stock is exempt from registration under the Securities Act and any applicable laws.

(n)    Authorization for Transaction. On the Effective Date or as soon as reasonably practicable thereafter, the Debtors, and the Reorganized Debtors may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan or the Transaction.

(o)    Preservation of Rights of Action; Settlement. Except to the extent such rights, Claims, Causes of Action, defenses, and counterclaims are otherwise disposed of in the Plan, the Purchase and Sale Agreement, the Las Vegas Property Purchase Agreement, or are expressly and specifically released in connection with the Plan, the Las Vegas Property Sale Order, the Sale Order and/or Confirmation Order, or in any settlement agreement approved during the Chapter 11 Cases, or in any contract, instrument, release, indenture or other agreement entered into in connection with the Plan, in accordance with Bankruptcy Code § 1123(b): (1) any and all rights, Claims, Causes of Action (including Liquidating Trust Avoidance Actions, but excluding Retained Claims), defenses, and counterclaims of or accruing to the Debtors or their Estates shall be transferred to the Liquidating Trust, whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such rights, Claims, Causes of Action, defenses and counterclaims have been Scheduled, listed or referred to in the Plan, the Bankruptcy Schedules, or any other document Filed with the Bankruptcy Court; and (2) the Liquidating Trust does not waive, relinquish, or abandon (nor shall it be estopped or otherwise precluded from asserting) any right, Claim, Cause of Action, defense, or counterclaim that constitutes property of the Estates or alter the Liquidating Trust's right to commence, prosecute, defend against, settle, and realize upon any rights, Claims, Causes of Action, defenses, or counterclaims that a Debtor has, or may have, as of the Effective Date. The Liquidating Trust may, subject to the Plan and the Liquidating Trust Agreement, commence, prosecute, defend against, settle, and realize upon any rights, Claims, Causes of Action, defenses, and counterclaims in its sole discretion, in accordance with what is in the best interests, and for the benefit, of the beneficiaries of the various assets in the Liquidating Trust.

(p)    Employee Benefit Plans. Before the Effective Date, all Employee Benefit Plans shall be terminated in accordance with the applicable provisions of the state and federal law. The Purchaser and the Reorganized Debtors shall have no liability for any obligations under any Employee Benefit Plan.

(q)    Treatment of Executory Contracts and Unexpired Leases. Pursuant to the Purchase and Sale Agreement and as contemplated by the Bid Procedures and Sale Motion, the Debtors will provide notice to certain counterparties to executory contracts and unexpired leases advising them that their respective executory contracts and unexpired leases may be assumed

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

40

and, if applicable, assigned. In accordance with the Bid Procedures, as part of the Plan Supplement, the Debtors will File a list of the Desired 365 Contracts along with the proposed Cure Costs. Any party taking exception to the proposed Cure Costs shall, in accordance with the Bid Procedures Order, File a detailed statement setting forth its reason and the Bankruptcy Court shall determine the proper amount of the Cure Costs at the Combined Hearing. The fixing of the Cure Costs shall constitute the Debtors' right to assign the Desired 365 Contract lease to the Purchaser under Bankruptcy Code §§ 365(c) and (f).

(r)    Retention of Jurisdiction. Under the Plan, notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date of the Plan, the Bankruptcy Court shall retain jurisdiction, to the fullest extent legally permitted, over the Bankruptcy Case, all proceedings arising under, arising in or related to the Bankruptcy Case, the Confirmation Order, the Plan and administration of the Liquidating Trust. Some specific types of disputes and proceedings that the Bankruptcy Court shall retain jurisdiction over are identified in Artcile XIV of this Disclosure Statement.

(s)    Liquidating Trustee Closing of the Chapter 11 Cases. When (a) the Bankruptcy Court has adjudicated all applications by professionals for final allowances of compensation for services and reimbursement of expenses and the issuance of a Final Order for each application and the payment of all amounts payable thereunder; (b) all Disputed Claims filed against a Debtor have become Allowed Claims or have been Disallowed by Final Order or otherwise pursuant to this Plan, and all appropriate Plan Distributions have been made pursuant to the Plan, the Liquidating Trustee shall seek authority from the Bankruptcy Court to close such Debtor's Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE VIII

## LIQUIDATING TRUST AND LIQUIDATING TRUSTEE

### Section 8.01    Creation of the Liquidating Trust

The Liquidating Trust, duly organized under the laws of Nevada, is created for the purpose of liquidating the Liquidating Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d) and shall be governed by the Liquidating Trust Agreement. The Liquidating Trust Agreement shall conform to the terms of the Plan, and to the extent that the Liquidating Trust Agreement is inconsistent with the Plan, the terms of the Plan shall govern. The Liquidating Trustee will file all federal income tax returns for the Liquidating Trust as a grantor trust pursuant to Section 671 of the Internal Revenue Code of 1986 and the Treasury Regulations promulgated thereunder.

### Section 8.02    Funding of *Res* of Trust

On the Effective Date, all of the Liquidating Trust Assets shall be transferred and assigned to the Liquidating Trust, and the Liquidating Trust shall be in possession of, and have title to, all the Liquidating Trust Assets. The conveyances of all Liquidating Trust Assets shall be accomplished pursuant to the Plan, the Sale Order and/or the Confirmation Order. The Debtors shall convey, transfer, assign and deliver the Liquidating Trust Assets Free and Clear, except that the Liens of the Senior Secured Lender shall attach to the SPA Sale Proceeds, other than any

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

portion of such proceeds transferred by the Purchaser to the Liquidating Trust for shortfalls as described in the Plan.  For all federal income tax purposes, all Persons (including, without limitation, the Debtors, the Liquidating Trustee, and the beneficiaries of the Liquidating Trust) will treat the transfer and assignment of the Liquidating Trust Assets to the Liquidating Trust for the benefit of the beneficiaries of the Liquidating Trust as (a) a transfer of the Liquidating Trust Assets directly to the beneficiaries of the Liquidating Trust followed by (b) the transfer by the beneficiaries of the Liquidating Trust to the Liquidating Trust of the Liquidating Trust Assets.  The Liquidating Trust will be treated as a grantor trust for federal tax purposes and, to the extent permitted under applicable law, for state and local income tax purposes.  The beneficiaries of the Liquidating Trust will be treated as the grantors and owners of their Pro Rata portion of the Liquidating Trust Assets for federal income tax purposes.

## Section 8.03    The Liquidating Trustee

The Liquidating Trustee shall be appointed by mutual consent of the Debtors, the Committee and Pre- Petition Agent.  The Liquidating Trustee shall retain and have all the rights, powers and duties necessary to carry out his or her responsibilities under the Plan and the Liquidating Trust Agreement, and as otherwise provided in the Sale Order and/or the Confirmation Order.  However, the Liquidating Trustee shall not be obligated to review, investigate, evaluate, analyze, or object to Fee Applications or Professional Fee Claims relating to services rendered and expenses incurred before the Effective Date.  The Plan Supplement shall designate the Person who will initially serve as the Liquidating Trustee.

## Section 8.04    Retention of Professionals

The Liquidating Trustee shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Liquidating Trustee, are necessary to assist the Liquidating Trustee in the performance of his or her duties.  The reasonable fees and expenses of such professionals shall be paid by the Liquidating Trust upon the monthly submission of statements to the Liquidating Trustee.  The payment of the reasonable fees and expenses of the Liquidating Trustee's retained professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court except as otherwise provided in the Plan.  Professionals of, among others, the Debtors and the Committee (if any), shall be eligible for retention by the Liquidating Trustee on a special counsel basis, and former employees of the Debtors shall be eligible for retention by the Liquidating Trust and Liquidating Trustee.

The reasonable fees and expenses incurred in connection with services performed by the Liquidating Trust relating to the administration and/or liquidation of General Unsecured Claims and/or Liquidating Trust Avoidance Actions shall be paid by the Liquidating Trust solely from the Liquidating Trust Expense Reserve and amounts otherwise distributable to Holders of Allowed General Unsecured Claims.  Before such payment of the Liquidating Trustee's fees, fees and expenses of the Liquidating Trustee's retained professionals and other costs, expenses and liabilities of the Liquidating Trust, the Liquidating Trustee shall provide written notice thereof to the Pre-Petition Agent in such detail and with such support as the Pre-Petition Agent may reasonably request.  If the Pre-Petition Agent do not object to the payment of such amounts within five (5) Business Days after receipt of such notice, the Liquidating Trustee may make such payments.  If any Pre- Petition Agents objects and the objecting Pre-Petition Agent(s)

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

42

and the Liquidating Trustee cannot agree on the appropriate amount of such payment, then the Liquidating Trustee may not make such payment unless he or she obtains an order from the Bankruptcy Court approving such payment.

**Section 8.05    Compensation of the Liquidating Trustee**

The Liquidating Trustee's compensation, on a post-Effective Date basis, shall be disclosed in the Plan Supplement.  The payment of the fees of the Liquidating Trustee and any professionals retained by the Liquidating Trustee shall be made by the Liquidating Trust in accordance with the provisions of the Plan and the Liquidating Trust Agreement.

**Section 8.06    Liquidating Trust Expenses**

All costs, expenses and obligations incurred by the Liquidating Trustee in administering this Plan and the Liquidating Trust, or in any manner connected, incidental or related thereto shall come from amounts distributable to the appropriate beneficiaries for whose benefit such expenses or obligations were incurred.  For example, reasonable costs incurred in resolving Liquidating Trust Avoidance Actions and General Unsecured Claims shall be paid first from the Liquidating Trust Expense Reserve and then from amounts otherwise distributable to Holders of Allowed General Unsecured Claims, and expenses incurred in monetizing Other Assets shall be paid first from the Liquidating Trust Expense Reserve and then from funds otherwise distributable to the Senior Secured Lender.

**Section 8.07    Reserves Administered by the Liquidating Trust**

On the Effective Date, the Liquidating Trustee will establish and fund four Distribution Reserve Accounts:  the Undeliverable Distribution Reserve, the Claims Reserve, the Liquidating Trust Expense Reserve, and the Avoidance Action Proceeds Reserves as set forth in Article IX of the Plan.

**Section 8.08    Liability; Indemnification**

The Liquidating Trustee shall not be liable for any act or omission taken or omitted to be taken in his or her capacity as the Liquidating Trustee, other than acts or omissions resulting from such Person's willful misconduct, gross negligence or fraud.

**Section 8.09    Termination of the Liquidating Trust**

The duties, responsibilities and powers of the Liquidating Trustee shall terminate after all Liquidating Trust Assets have been fully resolved, abandoned or liquidated and the Liquidating Trust Assets have been distributed in accordance with the Plan and the Liquidating Trust Agreement.  Except in certain circumstances, the Liquidating Trust shall terminate no later than three (3) years after the Effective Date.

**Section 8.10    Liquidating Trustee Authority**

(a)    Compromise of Claims. The Liquidating Trust shall have full authority to compromise Claims or settle interests without supervision by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

expressly imposed by the Plan, the Confirmation Order, and the Liquidating Trust Agreement. As to any Claims that may arise or exist after the Effective Date relating to or arising out of the Purchase and Sale Agreement, the Liquidating Trustee shall not compromise or resolve any such Claims without the express written consent of the Pre-Petition Agent.

(b)      Payment of Professional Fees. The Liquidating Trust may, without application to or approval by the Bankruptcy Court, pay fees that it incurs after the Effective Date for professional fees and expenses.  Before settling or compromising any Plan Carve Out Claims or interests related thereto, the Liquidating Trustee shall provide written notice to the Pre-Petition Agent of the terms and conditions of the proposed settlement or compromise.

(c)      Compliance with Tax Requirements/Allocations. In connection with the Plan, to the extent applicable, the Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements.

(d)      Request for Expedited Tax Review. The Liquidating Trustee shall have the right to request an expedited determination under Bankruptcy Code § 505(b) with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

(e)      Access and Preservation of Records. The Liquidating Trustee shall be granted access to, among other things the offices, books, and records relating to the Debtors or any of their businesses or operations that are in possession of the Purchaser and the Purchaser shall preserve records all to the extent and on the terms of the Stalking Horse SPA.

## I.ARTICLE IX

## PROVISIONS GOVERNING DISTRIBUTIONS GENERALLY

### Section 9.01    Timing and Delivery of Distributions

The Liquidating Trust Agreement shall govern distributions from the Liquidating Trust and shall include the terms of the other sections of Article IX of the Plan and other relevant provisions of the Plan.

### Section 9.02    Method of Cash Distributions

Any Cash payment to be made pursuant to the Plan may be made by Cash, draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law at the option of and in the sole discretion of the Liquidating Trustee, except for Cash payments made to the Pre-Petition Agent, which shall be made by wire transfer or such other method as shall be specified by such Persons.

### Section 9.03    Failure to Negotiate Checks

Checks issued in respect of distributions under the Plan shall be null and void if not negotiated within sixty (60) days after the date of issuance.  The Liquidating Trustee shall hold any amounts returned in respect of such non-negotiated checks.  The Holder of an Allowed

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

Claim with respect to which such check originally was issued shall make requests for reissuance for any such check directly to the Liquidating Trustee. All amounts represented by any voided check will be held until the later of one (1) year after (x) the Effective Date or (y) the date that a particular Claim is Allowed by Final Order, and all requests for reissuance by the Holder of the Allowed Claim in respect of a voided check are required to be made before such date. Thereafter, all such amounts shall be deemed to be Unclaimed Property, and all Claims in respect of void checks and the underlying distributions shall be forever barred, estopped and enjoined from assertion in any manner against the Liquidating Trustee.

**Section 9.04    Fractional Dollars**

Notwithstanding any other provision of the Plan, Cash distributions of fractions of dollars will not be made; rather, whenever any payment of a fraction of a dollar would be called for, the actual payment made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down. To the extent that Cash remains undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash shall be treated as Unclaimed Property pursuant to Section 9.03 of the Plan.

**Section 9.05    Compliance with Tax Requirements**

In connection with each distribution with respect to which the filing of an information return (such as an Internal Revenue Service Form 1099 or 1042) or withholding is required, the Liquidating Trustee shall file such information return with the Internal Revenue Service and provide any required statements in connection therewith to the recipients of such distribution or effect any such withholding and deposit all moneys so withheld as required by law. With respect to any Person from whom a tax identification number, certified tax identification number or other tax information required by law has not been received by the Liquidating Trustee within thirty (30) days from the date of such request (the "Initial Request"), the Liquidating Trustee may, at his/her option, withhold the amount required to such Person and decline to make such distribution until the information is received. Failure of any Person to provide the information requested within six months of the Initial Request shall result in the forfeit of the affected distribution and the treatment of said distribution as Unclaimed Property.

**Section 9.06    De Minimis Distributions**

No Cash payment of less than twenty-five ($25.00) dollars shall be made to the Holder of any Claim on account of its Allowed Claim.

**Section 9.07    Setoffs**

Except for any Claim that is Allowed in an amount set forth in the Plan (including the Senior Secured Claim), the Debtors or the Liquidating Trustee may, but shall not be required to, set off against any Claims and the payments or distributions to be made pursuant to the Plan in respect of such Claims, any and all debts, liabilities and claims of every type and nature whatsoever that the Estate or a Debtor may have against the Holder of any Claim, but neither the failure to do so nor the Allowance of any such Claims, whether pursuant to the Plan or otherwise, shall constitute a waiver or release by any Debtor of any such claims the Debtor may have against such Holder of any Claim, and all such claims shall be reserved for and

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

retained by the Liquidating Trustee.

**Section 9.08    Distribution Record Date**

As of the close of business on the fifth (5th) Business Day following the Effective Date (the "Distribution Record Date"), all transfer ledgers, transfer books, registers and any other records maintained by the designated transfer agents with respect to ownership of any Claims will be closed and, for purposes of the Plan, there shall be no further changes in the record holders of such Claims. The Liquidating Trustee shall have no obligation to recognize the transfer of any Claims occurring after the Distribution Record Date, and will be entitled for all purposes to recognize and deal only with the Holder of any Claim as of the close of business on the Distribution Record Date, as reflected on such ledgers, books, registers or records.

**ARTICLE X**

**EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND OTHER AGREEMENTS**

**Section 10.01    Assumption/Rejection**

On the Effective Date, and to the extent permitted by applicable law, all of the Debtors' executory contracts and unexpired leases will be rejected unless such executory contract or unexpired lease: (a) is a Desired 365 Contract and being assumed pursuant to the Plan; (b) is the subject of a motion to assume Filed on or before the Confirmation Date; or (c) has been previously rejected or assumed.

**Section 10.02    Cure Amounts**

The Bid Procedures and Sale Motion contemplates that Desired 365 Contracts will be assumed by the Debtors and/or assigned to the Purchaser pursuant to the Sale Order and/or the Confirmation Order. In accordance with the Bid Procedures, as part of the Plan Supplement, the Debtors will file a list of the Desired 365 Contracts along with the proposed Cure Costs. Any party taking exception to the proposed Cure Costs shall, in accordance with the Bid Procedures Order, File a detailed statement setting forth its reason and the Bankruptcy Court shall determine the proper amount of the Cure Costs at the Combined Hearing. The fixing of the Cure Costs shall constitute the Debtors' right to assign the Desired 365 Contract lease to the Purchaser under Bankruptcy Code §§ 365(c) and (f).

**Section 10.03    Assumed Executory Contracts and Unexpired Leases**

Each Desired 365 Contract will include (a) all amendments, modifications, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease; and (b) with respect to any executory contract or unexpired lease that relates to the use, ability to acquire, or occupancy of real property, all executory contracts or unexpired leases and other rights appurtenant to the property, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, and any other equity interests in real estate or rights *in rem* related to such premises, unless any of the foregoing agreements have been rejected pursuant to an order of the Bankruptcy Court or are the subject of a motion to reject Filed on or before

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169