LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzlawnv.com
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Telephone: (702) 382-1170
Facsimile: (702) 382-1169

Attorneys for Debtors

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>WESTERN FUNDING INCORPORATED,<br><br>        Debtor. | Case No.: BK-S-13-17588-LED<br>Chapter 11<br>(Jointly Administered) |
| In re:<br><br>WESTERN FUNDING INC. OF NEVADA,<br><br>        Debtor. | Case No.: BK-S-13-17586-LED<br>Chapter 11 |
| In re:<br><br>GLOBAL TRACK GPS, LLC,<br><br>        Debtor. | Case No.: BK-S-13-17589-LED<br>Chapter 11 |

**NOTICE OF REDLINE MODIFICATIONS TO DEBTORS': (I) PROPOSED JOINT DISCLOSURE STATEMENT TO ACCOMPANY JOINT PLAN OF REORGANIZATION; AND (II) PROPOSED JOINT PLAN OF REORGANIZATION**

Western Funding Incorporated, a California corporation, Western Funding Inc. of Nevada, a Nevada corporation, and Global Track GPS, LLC, a Delaware limited liability company (collectively, the "Debtors"), debtors and debtors in possession, hereby give notice of various proposed modifications to their *Proposed Joint Disclosure Statement To Accompany*

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

*Joint Plan of Reorganization* (the "<u>Disclosure Statement</u>") [ECF No. 321], and their *Proposed Joint Plan of Reorganization* (the "<u>Plan</u>") attached thereto. The modifications to Debtors' proposed Disclosure Statement are attached hereto as **Exhibit 1**, and the modifications to Debtors' proposed Plan are attached hereto as **Exhibit 2**. Debtors intend to present these at the currently scheduled hearing on the motion for approval of the Disclosure Statement [ECF No. 322] scheduled for hearing on November 25, 2013 at 3:00 p.m. [ECF No. 328].

DATED: November 25, 2013.

LARSON & ZIRZOW, LLC

By: _____
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
MATTHEW C. ZIRZOW, ESQ.
Nevada bar No. 7222
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101

Attorneys for Debtors

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

# EXHIBIT 1

LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzlawnv.com
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Telephone: (702) 382-1170
Fascimile: (702) 382-1169

Attorneys for Debtors

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>WESTERN FUNDING INCORPORATED,<br>        Debtor. | Case No.: BK-S-13-17588-LED<br>Chapter 11<br>(Jointly Administered) |
| In re:<br>WESTERN FUNDING INC. OF NEVADA,<br>        Debtor. | Case No.: BK-S-13-17586-LED<br>Chapter 11 |
| In re:<br>GLOBAL TRACK GPS, LLC,<br>        Debtor. | Case No.: BK-S-13-17589-LED<br>Chapter 11 |

**JOINT DISCLOSURE STATEMENT ~~FOR~~TO ACCOMPANY DEBTORS' JOINT PLAN OF REORGANIZATION**

THIS DISCLOSURE STATEMENT AND THE ACCOMPANYING JOINT PLAN OF REORGANIZATION HAVE NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT. A HEARING IS REQUIRED AND HAS BEEN ~~SCHEDULES~~SCHEDULED TO CONSIDER THE ADEQUACY OF THIS DISCLOSURE STATEMENT UNDER BANKRUPTCY CODE § 1125. THE DEBTORS RESERVE THE RIGHT TO AMEND, MODIFY, OR SUPPLEMENT THIS DISCLOSURE STATEMENT AND THE ACCOMPANYING JOINT PLAN OF REORGANIZATION BEFORE AND UP TO THE DATE OF SUCH HEARING.

NOTE: THE DEBTORS BELIEVE THAT ACCEPTANCE OF THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT IS IN THE BEST INTERESTS OF THE DEBTORS' ESTATES AND THEIR CREDITORS. **ACCORDINGLY, THE DEBTORS RECOMMEND THAT YOU VOTE TO APPROVE THE PLAN.**

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

**TABLE OF CONTENTS**
[To be Inserted]

**TABLE OF EXHIBITS**

**DISCLAIMER**

**ARTICLE I INTRODUCTION**
Section 1.01    Overview of Chapter 11
Section 1.02    The Debtors' Plan of Reorganization
Section 1.03    The Disclosure Statement
Section 1.04    Sources of Information
Section 1.05    Rules of Interpretation
Section 1.06    Solicitation Package
Section 1.07    Voting Procedures, Ballots and Voting Deadlines
Section 1.08    The Confirmation Hearing and Objection Deadline
Section 1.09    Voting Tabulation
Section 1.10    Agreements Upon Furnishing Ballots
Section 1.11    Recommendation of the Debtors to Approve Plan

**ARTICLE II HISTORICAL BACKGROUND AND PRE-PEITION BUSINESS OPERATIONS**
Section 2.01    Overview of the Debtors' Business
Section 2.02    Debtors' Corporate Structure
Section 2.03    Debtors' Existing Capital Structure
Section 2.04    Events Leading to Chapter 11
Section 2.05    The Civil Investigative Demands from the CFPB
Section 2.06    Reorganization Strategy

**ARTICLE III ASSETS AND LIABILITIES OF THE DEBTORS**
Section 3.01    The Debtors' Scheduled Assets
Section 3.02    The Debtors' Assets After Closing
Section 3.03    Liabilities Scheduled by the Debtors
Section 3.04    Preferences, Fraudulent Transfers and Other Avoidance Actions

**ARTICLE IV THE BANKRUPTCY CASES**
Section 4.01    Commencement of These Bankruptcy Cases
Section 4.02    Initial Emergency Motions
Section 4.03    Cash Collateral Motion and Stipulation
Section 4.04    Retention of Professionals
Section 4.05    The Harbor B Parties Motion to Dismiss WFI's Bankruptcy Case
Section 4.06    Debtors' Post-Petition Operations and the Status of its Loan Portfolio
Section 4.07    Expense Reimbursement and Break-UP Fee to the Stalking Horse Bidder
Section 4.08    Bid Procedures Motion
Section 4.09    Las Vegas Property Bid Procedures Motion
Section 4.10    Administrative Expense Claim Estimate
Section 4.11    Preference Analysis and Other Potential Avoidance Actions

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

Section 4.12    Deemed Consolidation of Debtors for Plan Purposes Only
Section 4.13    Exclusivity

**ARTICLE V  SUMMARY OF THE DEBTORS' PLAN OF REORGANIZATION**
Section 5.01    General Structure of the Plan
Section 5.02    Classification of Claims and Interests
Section 5.03    Summary of Proposed Distributions Under the Plan

**ARTICLE VI  INFORMATION REGARDING THE STALKING HORSE**
Section 6.01    The Stalking Horse SPA

**ARTICLE VII  PLAN EXECUTION AND IMPLEMENTATION**
Section 7.01    Sale of the Acquired Property
Section 7.02    Sale of the Ineligible Accounts
Section 7.03    Means for Implementation

**ARTICLE VIII  LIQUIDATING TRUST AND LIQUIDATING TRUSTEE**
Section 8.01    Creation of the Liquidating Trust
Section 8.02    Funding of *Res* of Trust
Section 8.03    The Liquidating Trustee
Section 8.04    Retention of Professionals
Section 8.05    Compensation of the Liquidating Trustee
Section 8.06    Liquidating Trust Expenses
Section 8.07    Reserves Administered by the Liquidating Trust
Section 8.08    Liability; Indemnification
Section 8.09    Termination of the Liquidation Trust
Section 8.10    Liquidating Trustee Authority

**ARTICLE IX  PROVISIONS GOVERNING DISTRIBUTIONS GENERALLY**
Section 9.01    Timing of Delivery of Distributions
Section 9.02    Method of Cash Distributions
Section 9.03    Failure to Negotiate Checks
Section 9.04    Fractional Dollars
Section 9.05    Compliance with Tax Requirements
Section 9.06    *De Minimus* Distributions
Section 9.07    Setoffs
Section 9.08    Distribution Record Date

**ARTICLE X  EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND OTHER AGREEMENTS**
Section 10.01    Assumption/Rejection
Section 10.02    Cure Amounts
Section 10.03    Assumed Executory Contracts and Unexpired Leases
Section 10.04    Insurance Policies
Section 10.05    Pass-through
Section 10.06    Claims Based on Rejection of Executory Contracts and Unexpired Leases
Section 10.07    Reservation of Rights
Section 10.08    Nonoccurrence of Effective Date

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

**ARTICLE XI  PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS**
Section 11.01  Expunging of Certain Claims
Section 11.02  Objections to Claims
Section 11.03  Estimation of Claims
Section 11.04  No Distributions Pending Allowance
Section 11.05  Distributions After Allowance
Section 11.06  Reduction of Claims

**ARTICLE XII  CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN**
Section 12.01  Conditions Precedent to Confirmation
Section 12.02  Occurrence of the Effective Date
Section 12.03  Substantial Consummation
Section 12.04  Waiver of Conditions
Section 12.05  Revocation, Withdrawal, or Non-Consummation

**ARTICLE XIII  AMENDMENTS AND MODIFICATIONS**

**ARTICLE XIV  RETENTION OF JURISDICTION**

**ARTICLE XV  EFFECT OF THE PLAN ON CLAIMS AND INTERESTS**
Section 15.01  Compromises and Settlements
Section 15.02  Satisfaction of Claims
Section 15.03  Discharge of Liabilities
Section 15.04  Exculpation
Section 15.05  Release of Stalking Horse
Section 15.06  Permanent Injunction
Section 15.07  Setoffs
Section 15.08  Recoupment
Section 15.09  Release of Liens
Section 15.10  Good Faith
Section 15.11  Rights of Defendants and Avoidance Actions

**ARTICLE XVI  MISCELLANEOUS PROVISIONS**
Section 16.01  Bar Dates for Certain Claims
Section 16.02  Payment of Statutory Fees
Section 16.03  Severability of Plan Provisions
Section 16.04  Successors and Assigns
Section 16.05  Binding Effect
Section 16.06  Term of Injunctions or Stay
Section 16.07  Dissolution of Committee
Section 16.08  No Admissions
Section 16.09  Default Under Plan
Section 16.10  Governing Law
Section 16.11  Entire Agreement
Section 16.12  Plan Documents

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

**ARTICLE XVII  CERTAIN RISK FACTORS AFFECTING CERTAIN OF THE DEBTORS**
Section 17.01   General Risks
Section 17.02   Certain Bankruptcy Law Considerations
Section 17.03   Risks Related to Volatility in the Prices of the Property
Section 17.04   Risks Related to the Sale of the Debtors' Assets

**ARTICLE XVIII  FINANCIAL INFORMATION AND FEASABILITY**
Section 18.01   Financial Information
Section 18.02   Feasibility of the Plan

**ARTICLE XIX  CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN**
Section 19.01   General
Section 19.02   Consequences to the Debtors
Section 19.03   Federal Income Tax Consequences to Holders of Senior Secured Claims
Section 19.04   Federal Income Tax Consequences to Holders of General Unsecured Claims
Section 19.05   Federal Income Tax Consequences of the Liquidating Trust
Section 19.06   Information Reporting and Backup Withholding
Section 19.07   Importance of Obtaining Professional Tax Assistance

**ARTICLE XX  SECURITIES LAW MATTERS**
Section 20.01   Issuance and Delivery of Securities
Section 20.02   Subsequent Transfers Under Federal Securities Laws

**ARTICLE XXI  BEST INTEREST OF CREDITORS TEST**
Section 21.01   Best Interests of Creditors Test
Section 21.02   Liquidation Analysis

**ARTICLE XXII  ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN**
Section 22.01   Alternative Plan(s)
Section 22.02   Liquidation Under Chapter 7

**ARTICLE XXIII  VOTING PROCEDURES AND CONFIRMATION REQUIREMENTS**
Section 23.01   Ballots and Voting Deadline
Section 23.02   Holders of Claims Entitled to Vote
Section 23.03   Classes Impaired Under the Plan
Section 23.04   Information on Voting and Ballots
Section 23.05   The Confirmation Hearing
Section 23.06   Statutory Requirements for Confirmation of the Plan
Section 23.07   Acceptance by Impaired Class
Section 23.08   Confirmation Without Acceptance of All Impaired Classes
Section 23.09   Identity of Persons to Contact for More Information

**LARSON & ZIRZOW, LLC**
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

# EXHIBITS TO DISCLOSURE STATEMENT

Exhibit A..........................................................................Joint Plan of Reorganization

Exhibit B..........................................................................Disclosure Statement Order

Exhibit C..........................................................................Stalking Horse SPA

Exhibit D..........................................................................Liquidation Analysis

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

**DISCLAIMER**

THIS DISCLOSURE STATEMENT CONTAINS A SUMMARY OF CERTAIN PROVISIONS OF THE JOINT PLAN OF REORGANIZATION (THE "PLAN"), A COPY OF WHICH IS ATTACHED AS **EXHIBIT A**, PROPOSED BY WESTERN FUNDING INCORPORATED, A CALIFORNIA CORPORATION ("WFI"), WESTERN FUNDING INC. OF NEVADA, A NEVADA CORPORATION ("WFIN"), AND GLOBAL TRACK GPS, LLC (COLLECTIVELY, A DELAWARE LIMITED LIABILITY COMPANY ("GLOBAL TRACK" AND, TOGETHER WITH WFI AND WFIN), THE "DEBTORS") IN THESE CHAPTER 11 BANKRUPTCY CASES.   THIS DISCLOSURE STATEMENT ALSO CONTAINS SUMMARIES OF CERTAIN OTHER DOCUMENTS RELATING TO THE CONSUMMATION OF THE PLAN OR THE TREATMENT OF CLAIMS AND INTERESTS AND CERTAIN FINANCIAL INFORMATION RELATING THERETO.[1]

THIS DISCLOSURE STATEMENT INCLUDES CERTAIN EXHIBITS, EACH OF WHICH ARE INCORPORATED INTO AND MADE A PART OF THIS DISCLOSURE STATEMENT AS IS SET FORTH IN FULL HEREIN.   THE STATEMENTS AND OTHER INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT WERE MADE AS OF THE DATE HEREOF, UNLESS OTHERWISE SPECIFIED.   HOLDERS OF CLAIMS AND INTERESTS REVIEWING THIS DISCLOSURE STATEMENT SHOULD NOT INFER THAT THE FACTS SET FORTH HEREIN HAVE NOT CHANGED SINCE THE DATE SET FORTH ON THE COVER PAGE HEREOF.   HOLDERS OF CLAIMS AND INTERESTS MUST RELY ON THEIR OWN EVALUATION OF THE DEBTORS AND THEIR OWN ANALYSIS OF THE TERMS OF THE PLAN IN DECIDING WHETHER TO ACCEPT OR REJECT THE PLAN.

ALL HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ AND CAREFULLY CONSIDER THIS ENTIRE DISCLOSURE STATEMENT, INCLUDING RISK FACTORS CITED HEREIN AND THE PLAN ATTACHED HERETO, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

THE DEBTORS ARE PROVIDING THE INFORMATION IN THIS DISCLOSURE STATEMENT SOLELY FOR PURPOSES OF SOLICITING HOLDERS OF CLAIMS AND INTERESTS TO ACCEPT OR REJECT THE PLAN.   NOTHING IN THIS DISCLOSURE STATEMENT MAY BE USED BY ANY PERSON OR FOR ANY OTHER PURPOSE. THE CONTENTS OF THIS DISCLOSURE STATEMENT SHALL NOT BE DEEMED AS PROVIDING ANY LEGAL, FINANCIAL, SECURITIES, TAX, OR BUSINESS ADVICE.

THE DEBTORS URGE EACH HOLDER OF A CLAIM OR INTEREST TO CONSULT WITH THEIR OWN ADVISORS WITH RESPECT TO ANY SUCH LEGAL, FINANCIAL, SECURITIES, TAX, OR BUSINESS ADVICE IN REVIEWING THIS DISCLOSURE STATEMENT AND PLAN.   MOREOVER, THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE, AND MAY NOT BE CONSTRUED AS, AN ADMISSION OF FACT, LIABILITY, STIPULATION, OR WAIVER. THE SUMMARY OF

---

[1] This proposed Disclosure Statement has not yet been approved under Bankruptcy Code § 1125 by the Bankruptcy Court as containing "adequate information" for use in connection with the solicitation of acceptances or rejections of the Plan described herein.   Accordingly, the filing and dissemination of this Disclosure Statement is not intended and should not in any way be construed as solicitation of those on the Plan, nor should the information contained herein be relied upon for any purposes before a determination by the Bankruptcy Court that the proposed Disclosure Statement contains "adequate information."

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

THE PLAN AND OTHER DOCUMENTS DESCRIBED IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE ACTUAL DOCUMENTS THEMSELVES AND THE EXHIBITS THERETO.

THE DEBTORS BELIEVE THAT THE INFORMATION HEREIN IS ACCURATE, BUT ARE UNABLE TO WARRANT THAT IT IS NOT WITHOUT ANY INACCURACY OR OMISSION. THE DEBTORS HAVE NOT AUTHORIZED ANY PARTY TO GIVE ANY INFORMATION ABOUT OR CONCERNING THE PLAN OR THE DEBTORS OR THE VALUE OF THEIR PROPERTY, OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. HOLDERS OF CLAIMS AND INTERESTS SHOULD NOT RELY UPON ANY OTHER INFORMATION, REPRESENTATIONS, OR INDUCEMENTS MADE TO OBTAIN ACCEPTANCE OR REJECTION OF THE PLAN.

THE BANKRUPTCY COURT'S APPROVAL OF THE ADEQUACY OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE PLAN. NEITHER THIS DISCLOSURE STATEMENT NOR THE PLAN HAS BEEN FILED OR REVIEWED BY THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION (THE "SEC") UNDER THE SECURITIES ACT OF 1933 (THE "SECURITIES ACT"), OR ANY SECURITIES REGULATORY AUTHORITY OF ANY STATE UNDERANY STATE SECURITIES LAW ("BLUE SKY LAW"). THIS DISCLOSURE STATEMENT AND THE PLAN HAVE NOT BEEN APPROVED OR DISPROVED BY THE SEC OR ANY STATE SECURITIES COMMISSION AND NEITHER THE SEC NOR ANY STATE SECURITIES COMMISSION HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN OR THEREIN. NEITHER THE OFFER NOR THE SALE OF ANY SECURITIES PURSUANT TO THE PLAN HAS BEEN REGISTERED UNDER THE SECURITIES ACT OR ANY SIMILAR STATE SECURITIES OR "BLUE SKY" LAWS. ANY SUCH OFFER OR SALE IS BEING MADE IN RELIANCE ON THE EXEMPTIONS FROM REGISTRATION THEREUNDER SPECIFIED IN BANKRUPTCY CODE § 1145, OR OTHER APPLCIABLE LAW REQUIRING REGISTRATION BEFORE THE OFFERING, ISSUANCE, DISTRIBUTION OR SALE OF SECURITIES; PROVIDED THAT IF THE ISSUANCE OF THE SECURITIES DOES NOT QUALITY FOR AN EXEMPTION UNDER BANKRUPTCY CODE § 1145, THE SECURITIES SHALL BE ISSUED IN A MANNER, WHICH QUALIFIES FOR ANY OTHER AVAILABLE EXEMPTION FROM REGISTRATION WHETHER AS A PRIVATE PLACEMENT UNDER RULE 5 OF THE SECURITIES ACT, SECTION 4(2) OF THE SECURITIES ACT, OR OTHER APPLICABLE LAW.

THIS DISCLOSURE STATEMENT SUMMARIZES CERTAIN PROVISIONS OF THE PLAN, CERTAIN OTHER DOCUMENTS, AND CERTAIN FINANCIAL INFORMATION. THE DEBTORS BELIEVE THAT THESE SUMMARIES ARE FAIR AND ACCURATE. IN THE EVENT OF ANY INCONSISTENCY OR DISCREPANCY BETWEEN A DESCRIPTION CONTAINED IN THIS DISCLOSURE STATEMENT AND THE TERMS AND PROVISIONS OF THE PLAN OR OTHER DOCUMENTS OR FINANCIAL INFORMATION INCORPORATED HEREIN BY REFERENCE, THE PLAN, OR SUCH OTHER DOCUMENTS, AS APPLICABLE, SHALL GOVERN FOR ALL PURPOSES.

EACH HOLDER OF AN IMPAIRED CLAIM THAT IS ALLOWED TO VOTE SHOULD REVIEW THE ENTIRE PLAN BEFORE CASTING A BALLOT. NO PARTY IS AUTHORIZED BY THE BANKRUPTCY COURT TO PROVIDE ANY INFORMATION

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

8

WITH RESPECT TO THE PLAN OTHER THAN THAT CONTAINED IN THIS DISCLOSURE STATEMENT.

THIS DISCLOSURE STATEMENT CONTAINS PROJECTED FINANCIAL INFORMATION REGARDING THE DEBTORS AND CERTAIN OTHER FORWARD-LOOKING STATEMENTS, ALL OF WHICH ARE BASED ON VARIOUS ESTIMATES AND ASSUMPTIONS AND WILL NOT BE UPDATED TO REFLECT EVENTS OCCURRING AFTER THE DATE HEREOF.  SUCH INFORMATION AND STATEMENTS ARE SUBJECT TO INHERENT UNCERTAINTIES AND TO A WIDE VARIETY OF SIGNIFICANT BUSINESS, ECONOMIC, AND COMPETITIVE RISKS, INCLUDING AMONG OTHERS, THOSE DESCRIBED HEREIN. CONSEQUENTLY, ACTUAL EVENTS, CIRCUMSTANCES, EFFECTS AND RESULTS MAY VARY SIGNIFICANTLY FROM THOSE INCLUDED IN OR CONTEMPLATED BY SUCH PROJECTED FINANCIAL INFORMATION AND SUCH OTHER FORWARD-LOOKING STATEMENTS. CONSEQUENTLY, THE PROJECTED FINANCIAL INFORMATION AND OTHER FORWARD-LOOKING STATEMENTS CONTAINED HEREIN SHOULD NOT BE REGARDED AS REPRESENTATIONS BY THE DEBTORS OR ANY OTHER PERSON THAT THE PROJECTED FINANCIAL CONDITION OR RESULTS CAN OR WILL BE ACHIEVED.

THE FINANCIAL INFORMATION CONTAINED IN OR INCORPORATED BY REFERENCE INTO THIS DISCLOSURE STATEMENT HAS NOT BEEN AUDITED, EXCEPT AS SPECIFICALLY INDICATED OTHERWISE.   THE FINANCIAL PROJECTIONS AND DESCRIBED IN THIS DISCLOSURE STATEMENT, HAVE BEEN PREPARED BY THE DEBTORS' MANAGEMENT.  THE FINANCIAL PROJECTIONS, WHILE PRESENTED BY NUMERICAL SPECIFICITY, ARE NECESSARILY BASED ON A VARIETY OF ESTIMATES AND ASSUMPTIONS WHICH, THOUGH CONSIDERED REASONABLE BY THE DEBTORS' MANAGEMENT AND THEIR ADVISORS, MAY NOT ULTIMATELY BE REALIZED, AND ARE INHERENTLY SUBJECT TO SIGNIFICANT BUSINESS, ECONOMIC, COMPETITIVE, INDUSTRY, REGULATORY, MARKET, AND FINANCIAL UNCERTAINTIES AND CONTINGENCIES, MANY OF WHICH ARE BEYOND THE DEBTORS' CONTROL.    THE DEBTORS CAUTION THAT NO REPRESENTATIONS CAN BE MADE AS TO THE ACCURACY OF THE PROJECTIONS OR THE ABILITY TO ACHIEVE THE PROJECTED RESULTS.

INFORMATION INCORPORATED BY REFERENCE INTO THIS DISCLOSURE STATEMENT SPEAKS AS OF THE DATE OF SUCH INFORMATION OR THE DATE OF THE REPORT OR DOCUMENT IN WHICH SUCH INFORMATION IS CONTAINED OR AS OF A PRIOR DATE AS MAY BE SPECIFIED IN SUCH REPORT OR DOCUMENT.  ANY STATEMENT CONTAINED IN A DOCUMENT INCORPORATED BY REFERENCE HEREIN SHALL BE DEEMED TO BE MODIFIED OR SUSPENDED FOR ALL PURPOSES TO THE EXTENT THAT A STATEMENT CONTAINED IN THIS DISCLOSURE STATEMENT OR IN ANY OTHER SUBSEQUENTLY FILED DOCUMENT, WHICH IS ALSO INCORPORATED OR DEEMED TO BE INCORPORATED BY REFERENCE, MODIFIES OR SUPERSEDES SUCH STATEMENT.  ANY STATEMENT SO MODIFIED OR SUPERSEDED SHALL NOT BE DEEMED, EXCEPT AS SO MODIFIED OR SUPERSEDED, TO CONSTITUTE A PART OF THIS DISCLOSURE STATEMENT.SOME ASSUMPTIONS INEVITABLY WILL NOT MATERIALIZE.  FURTHER, EVENTS AND CIRCUMSTANCES OCCURRING SUBSEQUENT TO THE DATE ON WHICH THE

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

FINANCIAL PROJECTIONS WERE PREPARED MAY BE DIFFERENT FROM THOSE ASSUMED OR, ALTERNATIVELY, MAY HAVE BEEN UNANTICIPATED, AND, THUS, THE OCCURRENCE OF THESE EVENTS MAY AFFECT FINANCIAL RESULTS IN A MATERIALLY ADVERSE OR MATERIALLY BENEFICIAL MANNER. THEREFORE, THE FINANCIAL PROJECTIONS MAY NOT BE RELIED UPON AS A GUARANTY OR OTHER ASSURANCE OF THE ACTUAL RESULTS THAT WILL OCCUR.

**ARTICLE I**
**INTRODUCTION**

**Section 1.01    Overview of Chapter 11**

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code.  The commencement of a chapter 11 case creates an "estate" comprised of all the legal and equitable interests of a debtor.  Unless the bankruptcy court orders otherwise, a chapter 11 debtor may continue to operate its business and control the assets of its estate as a "debtor in possession."

The filing of a chapter 11 case also triggers the application of Bankruptcy Code § 362, which provides for an automatic stay of all attempts to collect upon claims against a debtor that arose before a bankruptcy filing.  Generally speaking, the automatic stay prohibits interference with a debtor's property or business.

Formulation and confirmation of a plan of reorganization is the principal purpose of chapter 11 case.  Unless a trustee is appointed, only the debtor may file a plan of reorganization during the first 120 days of the chapter 11 case.  A creditor or party in interest may file a plan only after that 120-day exclusive period has expired or has terminated pursuant to a court order.  If a debtor files its plan within the 120 day period, it has an additional 60 days to solicit acceptances of its plan.  The bankruptcy court can reduce or enlarge the solicitation and the exclusive periods for cause shown.

A plan of reorganization sets forth the means for satisfying all claims against, and interests in, a debtor. Although usually referred to as a plan of reorganization, a plan may provide for the liquidation of assets.  Generally, a claim against a debtor arises from a normal debtor/creditor transaction, such as a promissory note or a trade credit relationship, but may also arise from other contractual agreements or from alleged torts.  An interest in a debtor is held by a party that owns the debtor, such as a shareholder.

Subject to certain limited exceptions, the bankruptcy court order confirming a plan of reorganization discharges a debtor from any debt that arose before the date of confirmation of the plan and provides for the treatment of such debt in accordance with the terms of the confirmed plan of reorganization.

Before soliciting acceptances of a plan of reorganization, Bankruptcy Code § 1125 requires a plan proponent to prepare a disclosure statement containing information of a kind, and in sufficient detail, to enable a hypothetical investor to make an informed judgment regarding acceptance of the plan of reorganization.  This Disclosure Statement is submitted in accordance with Bankruptcy Code § 1125.

The Bankruptcy Code provides that creditors and shareholders are to be grouped into "classes" under a plan and that they are to vote to accept or reject a plan by class.  As a general

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

matter, creditors with similar legal rights are placed together in the same class and equity holders with similar legal rights are placed together in the same class. For example, creditors entitled to similar priority under the Bankruptcy Code should commonly be grouped together.

The Bankruptcy Code does not require that each claimant or equity holder vote in favor of a plan in order for the court to confirm the plan. Rather, the plan must be accepted by each class of claimants and shareholders (subject to an exception discussed below). A class of claimants accepts the plan if, of the claimants in the class who actually vote on the plan, such claimants holding at least two-thirds in dollar amount and more than one-half in number of allowed claims vote to accept the plan. For example, if a hypothetical class has ten creditors that vote and the total dollar amount of those ten creditors' claim is $1,000,000, then for such class to have accepted the plan, six or more of those creditors must have voted to accept the plan (a simple majority) and the claims of the creditors voting to accept the plan must total at least $666,667 (a two-thirds majority).

The Bankruptcy Court may confirm a plan even though fewer than all classes of claims and equity interests vote to accept such plan. In such instance, the plan must be accepted by at least one "impaired" class of claims, without including any acceptance of the plan by an "insider." Bankruptcy Code § 1124 defines "impairment" and generally provides that a claim as to which legal, equitable or contractual rights are altered under a plan is deemed to be "impaired."

If all impaired classes of claims under the plan do not vote to accept the plan and at least one impaired class of claims votes to accept the plan, a debtor is entitled to request that the court confirm the plan pursuant to the "cramdown" provisions of Bankruptcy Code § 1129(b). These "cramdown" provisions permit the plan to be confirmed over the dissenting votes of classes of claims or equity interests if the Bankruptcy Court determines that the plan does not discriminate unfairly and is fair and equitable with respect to each impaired, dissenting class of claims or equity interests.

Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan must provide that holders of administrative and priority claims (other than tax claims) be paid in full in cash on the effective date of the plan, and that holders of priority tax claims receive on account of such claims deferred cash payments, over a period not exceeding five (5) years after the petition date, of a value, as of the effective date of the plan, equal to the allowed amount of such claim (Bankruptcy Code § 1129(a)(9)).

Independent of the acceptance of the plan as described above, to confirm a plan the bankruptcy court must determine that the requirements of Bankruptcy Code § 1129(a) have been satisfied.

## Section 1.02   The Debtors' Plan of Reorganization

The Debtors believe that the Plan satisfies the confirmation requirements of the Bankruptcy Code. Confirmation of the Plan makes the Plan binding upon the Debtors, the Reorganized Debtors, all holders of Claims and Interests, and other parties-in-interest, irrespective of whether they have ~~filed~~Filed Proofs of Claim or Interests and/or they have voted to accept or reject the Plan.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

11

### Section 1.03    The Disclosure Statement

The Debtors are furnishing this Disclosure Statement ("Disclosure Statement")[2] to the holders of Claims against and Interests in the Debtors pursuant to Section 1125 of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in connection with the solicitation of ballots for the acceptance of the *Joint Plan of Reorganization* (the "Plan") dated November ~~___~~,25, 2013, a copy of which is attached as **Exhibit A**.  The Plan was formulated after extensive negotiations with the ~~holders of the Senior Secured Claims~~Pre-Petition Agent and the Stalking Horse.  This Disclosure Statement describes the Debtors' business operations, certain aspects of the Plan, including but not limited to, the treatment of holders of Claims and Interests, the proposed transaction relating to the Debtors to be effected pursuant to the Plan, significant events that the Debtors believe will occur in these ~~Chapter 11~~Bankruptcy Cases, and related matters.

The purpose of this Disclosure Statement is to provide "adequate information" to Persons who hold Claims to enable them to make an informed decision before exercising their right to vote to accept or reject the Plan.  By order of the Bankruptcy Court entered on November ___,25, 2013 (the "Disclosure Statement Order"), this Disclosure Statement was approved and held to contain adequate information.  A true and correct copy of the Disclosure Statement Order is attached as **Exhibit B.**

This Disclosure Statement sets forth certain detailed information regarding the Debtors' history and significant events expected to occur during the ~~Chapter 11~~Bankruptcy Cases.  This Disclosure Statement also describes the Plan, effects of Confirmation of the Plan, and the manner in which Distributions will be made under the Plan.  Additionally, this Disclosure Statement discusses the confirmation process and the voting procedures that Holders of Claims must follow for their votes to be counted.

THIS DISCLOSURE STATEMENT CONTAINS SUMMARIES OF CERTAIN PLAN PROVISIONS, STATUTORY PROVISIONS, DOCUMENTS RELATED TO THE PLAN, AND OF THE CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN.  THESE SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN (AS WELL AS THE EXHIBITS ATTACHED THERETO AND DEFINITIONS THEREIN).  A COPY OF THE PLAN IS ATTACHED AS **EXHIBIT A**.

THE PLAN ITSELF AND THE DOCUMENTS REFERRED TO THEREIN CONTROL THE ACTUAL TREATMENT OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS UNDER THE PLAN AND WILL, UPON OCCURRENCE OF THE EFFECTIVE DATE, BE BINDING UPON ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS, THEIR ESTATES, THE REORGANIZED DEBTORS, ALL PARTIES RECEIVING PROPERTY UNDER THE PLAN, AND OTHER PARTIES-IN-INTEREST.  IN THE EVENT OF ANY CONFLICT BETWEEN THIS DISCLOSURE STATEMENT, ON THE ONE HAND, AND THE PLAN OR ANY OTHER OPERATIVE DOCUMENT, ON THE OTHER HAND, THE TERMS OF THE PLAN AND/OR SUCH OTHER OPERATIVE DOCUMENT WILL CONTROL.

---

[2] Except as otherwise indicated, capitalized terms used in this Disclosure Statement and not defined herein shall have their respective meanings set forth in the Plan or, if not defined in the Plan, as defined in the Bankruptcy Code.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

THE APPROVAL BY THE BANKRUPTCY COURT OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE BANKRUPTCY COURT OF THE PLAN OR A GUARANTEE OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.  THE MATERIAL CONTAINED HEREIN IS INTENDED SOLELY FOR THE USE BY HOLDERS OF CLAIMS AND INTERESTS IN EVALUATING THE PLAN AND BY HOLDERS OF CLAIMS IN VOTING TO ACCEPT OR REJECT THE PLAN AND, ACCORDINGLY, MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN THE DETERMINATION OF HOW TO VOTE ON THE PLAN.  THE PLAN IS SUBJECT TO NUMEROUS CONDITIONS AND VARIABLES AND THERE CAN BE NO ASSURANCE THAT THE PLAN WILL BE EFFECTUATED.

**Section 1.04    Sources of Information**

Unless otherwise stated herein, the statements contained in this Disclosure Statement are made as of the date hereof, and the information contained in this Disclosure Statement is as of the date hereof and neither the delivery of this Disclosure Statement nor the distribution of any securities pursuant to the Plan will, under any circumstance, create any implication that the information contained herein is correct at any time subsequent to the date hereof, or such other date as described herein.  Any estimates of Claims or Interests set forth in this Disclosure Statement may vary from the amounts of Claims or Interests determined by the Debtors or ultimately Allowed by the Bankruptcy Court, and an estimate shall not be construed as an admission of the amount of such Claim.

Information incorporated by reference into this Disclosure Statement speaks as of the date of such information or the date of the report or document in which such information is contained or as of a prior date as may be specified in such report or document.  Any statement contained in a document incorporated by reference herein shall be deemed to be modified or superseded for all purposes to the extent that a statement contained in this Disclosure Statement or in any other subsequently ~~filed~~Filed document which is also incorporated or deemed to be incorporated by reference, modifies or supersedes such statement.  Any statement so modified or superseded shall not be deemed, except as so modified or superseded, to constitute a part of this Disclosure Statement.

No statements concerning the Debtors, the value of the Debtors' property, or the value of any benefit offered to the holder of a Claim or Interest in connection with the Plan should be relied on other than as set forth in this Disclosure Statement.  In arriving at a decision, parties should not rely on any representation or inducement made to secure their acceptance or rejection that is contrary to information contained in this Disclosure Statement, and any such additional representations or inducements should be immediately reported to counsel for the Debtors, Larson & Zirzow, LLC, Attention:  Matthew C. Zirzow, Esq., 810 S. Casino Center Blvd., Suite 101, Las Vegas, Nevada ~~89101  (Attention:  Matthew C. Zirzow, Esq.),~~89101, Telephone: (702) 382-1170, E-mail: mzirzow@lzlawnv.com.

**Section 1.05    Rules of Interpretation**

The following rules for interpretation and construction shall apply to this Disclosure Statement:  (1) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter

gender; (2) unless otherwise specified, any reference in this Disclosure Statement to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (3) unless otherwise specified, any reference in this Disclosure Statement to an existing document, schedule, or exhibit, whether or not ~~filed~~Filed, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (4) any reference to a person or entity as a holder of a Claim or Interest includes that person or entity's successors and assigns; (5) unless otherwise specified, all references in the Disclosure Statement to Articles are references to Articles of the Disclosure Statement; (6) unless otherwise specified, all references in the Disclosure Statement to exhibits are references to exhibits to the Disclosure Statement; (7) the words "herein," "hereof," and "hereto" refer to the Disclosure Statement in its entirety rather than to a particular portion of the Disclosure Statement; (8) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Disclosure Statement; (9) unless otherwise set forth in the Disclosure Statement, the rules of construction set forth in Bankruptcy Code § 102 shall apply; (10) any term used in capitalized form in the Disclosure Statement that is not otherwise defined in the Disclosure Statement, Plan, or exhibits to the Disclosure Statement Order, but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (11) all references to docket numbers of documents ~~filed~~Filed in the ~~Chapter 11~~Bankruptcy Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, unless otherwise stated; (13) in computing any period of time prescribed or allowed, the provisions of Bankruptcy Rule 9006(a) shall apply, and if the date on which a transaction may occur pursuant to this Disclosure Statement shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day; and (14) unless otherwise specified, all references in this Disclosure Statement to monetary figures shall refer to currency of the United States of America.

## Section 1.06    Solicitation Package

Accompanying this Disclosure Statement for the purpose of soliciting votes on the Plan are copies of (i) the notice of, among other things, the time for submitting Ballots to accept or reject the Plan, the date, time, and place of the hearing to consider the confirmation of the Plan (the "Confirmation Hearing") and related matters, and the time for filing objections to the confirmation of the Plan, and (ii) a Ballot or Ballots (and return envelope(s)) that you must use in voting to accept or to reject the Plan, or a notice of non-voting status, as applicable.  If you did not receive a Ballot and believe that you should have, please contact the Balloting Agent (as defined below) at the address or telephone number set forth in the next subsection.

## Section 1.07    Voting Procedures, Ballots, And Voting Deadline

After carefully reviewing the Plan and this Disclosure Statement, and the exhibits thereto, and the detailed instructions accompanying your Ballot, holders of Claims in Classes A2, A4, A5, B2, B4, C2 and C4 should indicate their acceptance or rejection of the Plan by voting in favor of or against the Plan on the enclosed Ballot.  Holders should complete and sign their Ballot and return it in the envelope provided so that it is ***received*** by the Voting Deadline (as defined below).

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

Each Ballot has been coded to reflect the Class of Claims it represents.  Accordingly, in voting to accept or reject the Plan, you must use only the coded Ballot or Ballots sent to you with this Disclosure Statement.

If you have any questions about the procedure for voting your Claim or with respect to the packet of materials that you have received, please contact Larson & Zirzow, LLC (the "<u>Balloting Agent</u>") (i) telephonically; (ii) in writing by (a) hand delivery, (b) overnight mail, (c) first class mail, or (d) facsimile; or (iii) via e-mail, using the information below:

Larson & Zirzow, LLC
Attn:  Matthew C. Zirzow, Esq
810 S. Casino Center Blvd., Suite 101
Las Vegas, Nevada 89101
Telephone:  (702) 382-1170
Facsimile:  (702) 382-1169
E-mail:  mzirzow@lzlawnv.com

**THE BALLOTING AGENT MUST *RECEIVE* ORIGINAL BALLOTS ON OR BEFORE** ~~5:00 P.M. PREVAILING PACIFIC TIME, ON~~ **DECEMBER ——,17, 2013 AT 5:00 P.M. (PST)** **(THE "VOTING DEADLINE") AT THE APPLICABLE ADDRESS ABOVE. EXCEPT TO THE EXTENT ALLOWED BY THE BANKRUPTCY COURT OR DETERMINED OTHERWISE BY THE DEBTORS, BALLOTS RECEIVED AFTER THE VOTING DEADLINE WILL NOT BE ACCEPTED OR USED IN CONNECTION WITH THE DEBTORS' REQUEST FOR CONFIRMATION OF THE PLAN OR ANY MODIFICATION THEREOF.**

The Debtors reserve the right to amend the Plan.  Amendments to the Plan that do not materially and adversely affect the treatment of Claims or Interests may be approved by the Bankruptcy Court at the Confirmation Hearing without the necessity of re-soliciting votes.  In the event re-solicitation is required, the Debtors will furnish new solicitation packets that will include new ballots to be used to vote to accept or reject the Plan, as amended.

**Section 1.08   The Confirmation Hearing And Objection Deadline**

~~**THE BANKRUPTCY COURT HAS SCHEDULED DECEMBER**~~**The Bankruptcy Court has scheduled December 20, 2013, ~~AT~~at 9:30 ~~A.M., PREVAILING PACIFIC TIME~~a.m. (PST) as the date and time for the hearing on confirmation of the Plan and to consider any objections to the Plan.  The confirmation hearing will be held at the United States Bankruptcy Court, Foley Federal Building, 300 Las Vegas Blvd., South, Las Vegas, Nevada 89101, Third Floor, Courtroom III, before the Honorable Laurel E. Davis.  THE DEBTORS WILL REQUEST CONFIRMATION OF THE PLAN AT THE CONFIRMATION HEARING.**

**THE BANKRUPTCY COURT HAS FURTHER FIXED DECEMBER ——,17, 2013 AT 5:00 P.M. AS THE DEADLINE (THE "OBJECTION DEADLINE") FOR FILING OBJECTIONS TO CONFIRMATION OF THE PLAN WITH THE BANKRUPTCY COURT.**

ANY OBJECTION TO CONFIRMATION OF THE PLAN MUST BE IN WRITING AND (A) MUST STATE THE NAME AND ADDRESS OF THE OBJECTING PARTY AND THE AMOUNT OF ITS CLAIM OR THE NATURE OF ITS INTEREST AND (B) MUST STATE WITH PARTICULARITY THE NATURE OF ITS OBJECTION. ANY CONFIRMATION OBJECTION NOT TIMELY FILED AND SERVED AS SET FORTH HEREIN SHALL BE DEEMED WAIVED AND SHALL NOT BE CONSIDERED BY THE BANKRUPTCY COURT.

## Section 1.09   Voting Tabulation

Under the Bankruptcy Code, for purposes of determining whether the requisite acceptances have been received, only Holders who are entitled to vote and actually vote will be counted. The failure of a Holder to deliver a duly executed Ballot will be deemed to constitute an abstention by such Holder with respect to voting on the Plan and such abstentions will not be counted.

Unless otherwise ordered by the Bankruptcy Court, Ballots that are signed, dated, and timely received, but on which a vote to accept or reject the Plan has not been indicated, will not be counted. The Debtors, in their sole discretion, may request that the Balloting Agent attempt to contact such voters to cure any such defects in the Ballots.

Except as provided below, unless the applicable Ballot is timely submitted to the Balloting Agent before the Voting Deadline, together with any other documents required by such Ballot, the Debtors may, in their sole discretion, reject such Ballot as invalid and decline to count such vote or to utilize it in connection with seeking Confirmation of the Plan.

A vote may be disregarded if the Bankruptcy Court determines, pursuant to Bankruptcy Code § 1126(e), that it was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

If a Ballot is signed by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or another acting in a fiduciary or representative capacity, such Person should indicate such capacity when signing and, unless otherwise determined by the Debtors, must submit proper evidence satisfactory to the Debtors of authority to so act.

The period during which Ballots with respect to the Plan will be accepted by the Debtors will terminate on the Voting Deadline. Except to the extent permitted by the Bankruptcy Court, Ballots that are received after the Voting Deadline will not be counted or otherwise used by the Debtors in connection with the Debtors' request for Confirmation of the Plan (or any permitted modification thereof). IN NO CASE SHOULD A BALLOT BE DELIVERED TO ANY ENTITY OTHER THAN THE BALLOTING AGENT.

## Section 1.10   Agreements Upon Furnishing Ballots

The delivery of an accepting Ballot to the Balloting Agent by a Holder pursuant to the procedures set forth above approved by the Bankruptcy Court, will constitute the agreement of such Holder to accept (i) all of the terms of, and conditions to, the solicitation and voting procedures; and (ii) the terms of the Plan; *provided, however*, all parties-in-interest retain their right to object to Confirmation of the Plan pursuant to Bankruptcy Code § 1128.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

**Section 1.11    Recommendation of the Debtors to Approve Plan**

The Debtors approved the solicitation of acceptances of the Plan and all of the Transactions contemplated thereunder.  In light of the benefits to be attained by the Holders of Claims pursuant to consummation of the Transactions contemplated under the Plan, the Debtors recommend that such Holders of Claims vote to accept the Plan.  The Debtors have reached this decision after considering the alternatives to the Plan that are available to the Debtors and the possible effect on the Debtors' business operations.  These alternatives include liquidation under chapter 7 of the Bankruptcy Code or reorganization under chapter 11 of the Bankruptcy Code with an alternative plan of reorganization.  The Debtors determined, after consulting with their financial and legal advisors and the Senior Secured Lender and/or such other procedures that the Transactions contemplated in the Plan would likely result in a distribution of greater value to creditors and shareholders than would a liquidation under chapter 7.

THE DEBTORS AND THE SENIOR SECURED LENDER SUPPORT THE PLAN AND RECOMMEND ALL HOLDERS OF CLAIMS WHOSE VOTES ARE BEING SOLICITED TO TIMELY SUBMIT BALLOTS TO ACCEPT THE PLAN.

**ARTICLE II**
**HISTORICAL BACKGROUND AND PRE-PETITION BUSINESS OPERATIONS**

**Section 2.01    Overview of the Debtors' Business**

WFI is a specialized consumer finance company providing automobile financing to borrowers with limited access to traditional credit.  WFI acquires and services installment loan contracts originated by its national, network of over 3,000 approved automobile dealers. Currently, WFI operates a series of branch offices across the United States, which allows it to work with local dealers in each regional area.

WFI does not lend directly to auto consumers but rather elects to participate with dealerships to make financing available to sub-prime customers of such dealers.  WFI purchases either individual or bulk loan contracts by advancing a portion of the loan amount (between 60% and 80% depending on dealer preferences, the amount finances, the terms of contracts, and status of the vehicles) to the dealer and placing the remaining 20% to 40% of the total principal in a reserve specific to that dealer.  WFI then calculates a "reserve index" by dividing the dealer reserve by the outstanding principal balance.  This reserve index is for the dealer's entire portfolio at WFI and not specific to any one loan.  As borrowers pay interest and principal on their auto loans, which are serviced by WFI, the reserve index increases.  When the reserve index reaches a certain percentage (typically 10% in excess of the reserve index at the time of purchase), the dealer receives a payment from WFI for this excess reserve.  WFI's unique "partnership" approach to dealer relations cultivates an energetic, committed, and incentivized participating dealer base, and made WFI a leader with buy-here-pay-here dealers nationwide.

WFI's loan programs for used vehicles are geared towards the sub-prime borrower unable to access traditional lending credit because of the age of the vehicle being financed or the customer's employment and credit history.  Customers will typically make down payments, in the form of cash or trade-in, typically from 5% to 20% of the purchase price.  The balance of the purchase price plus taxes, title fees and, if applicable, extended service contracts and insurance, is financed.  WFI's loan receivables carry an average contract annual percentage

rate (APR) of 23%. WFI purchases contracts from dealers at discounts ranging from 10% to 50%, depending on the risk profile of the borrower and the age/value of the automobile, however, the advance never exceeds 115% of wholesale book value and is limited to 100% of that value.

WFI utilizes a multi-faceted approach to loan servicing by combining branch staff collectors and home office collection staff. Each staff member possesses a minimum of two years' experience in sub-prime auto loan collection at the time of hire. The branch staff is responsible for the collection work to 60 days delinquent; accounts more than 60 days past due are serviced by staff at the home office in Las Vegas. All accounts in repossession are the responsibility of a special collection team also located in Las Vegas.

WFI's corporate headquarters and principal place of business are 3915 E. Patrick Lane, Las Vegas, Nevada. WFI has branch managers at each of its branch locations, and also has credit verifiers, purchasers in charge of processing contract packages for purchase and balancing daily customer payment receipts, and various collections staff.

Since 2010, WFI invested in upgrading technology, including the use of global positioning system starter interruption devices on vehicles to further secure is collateral. These systems enable WFI to track the location of its collateral and, when necessary in cases of severe delinquency, deactivate the ignition system, thus reducing repossession costs and incentivizing borrowers to make timely payments. The foregoing global position system collateral recovery technology is owned by WFI's affiliate, GPS.

WFIN was incorporated on January 3, 1995. WFIN is a wholly-owned subsidiary of WFI, but has no operations or employees.

## Section 2.02   Debtors' Corporate Structure

WFI is a California corporation incorporated on January 16, 1962. WFI is a wholly-owned subsidiary of Harbor Structured Finance, LLC, a Delaware limited liability company, f/k/a Harbor Truck Structured Finance One ("Harbor"). There is a significant dispute regarding who the members of WFI's board of directors are, which dispute is discussed in greater detail in Section 4.05.

Frederick Cooper ("Mr. Cooper") is the Chief Executive Officer and a director of WFI, and the President and a director of WFIN, and a manager and a member of GPS. From 1992 to 2004, Mr. Cooper was the President, Chief Executive Officer and director of SeaWest Financial Corporation, based in Los Angeles, California, which he founded and grew to $250,000,000 in receivables, 230 employees, and an approved dealer network in excess of 1,000 dealers in 48 states.

Katherine H. Cooper ("Mrs. Cooper" and together with Mr. Cooper, the "Coopers"), is Mr. Cooper's wife and is WFI's President, Chief Operating Officer, Secretary, and Treasurer, and is also a director. Mrs. Cooper is also the Secretary and Treasurer of WFIN, and its only other director. Mrs. Cooper has over twelve years of experience in overseeing and managing vital company operations within the financial services industry, including the evaluation and acquisition of indirect sub-prime auto finance portfolios and the management of related

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

functions.  Prior to her tenure with WFI, Mrs. Cooper held similar responsibilities with various other financial companies.

Ed Bentzen is WFI's Chief Financial Officer.  Mr. Bentzen has been with WFI for more than three (3) years, and has more than eleven (11) years experience in accounting and finance.  Mr. Bentzen also previously served as the Assistant Vice President of Finance at WFI, as well as Controller at WFI.

Harbor is managed by a Board of Managers presently comprised of the Coopers, Mark Finston, and James B. Hadden, Esq.  Mr. Finston has been a managing partner of Rock Consulting, LLC since 2010, wherein he provides financial consulting services.  Prior to that, Mr. Finston was the Chief Financial Officer, President, and a Board Member of Hudson Keyse, LLC, a defaulted debt buyer, which filed for Chapter 7 bankruptcy in September 2010.  Mr. Hadden is an attorney with the law firm of Porter Wright in Columbus, Ohio wherein he practices primarily in government and regulatory affairs, and lobbying.  Mssrs. Finston and Hadden are the representatives appointed to the Harbor Board by the Class B Members (as hereinafter defined) of Harbor (the "Class B Managers").

Collectively, the Coopers own 55% of the membership interests in Harbor as Class A members.  Philipp D. Nick ("Mr. Nick"), Ellen H. Hardymon, the Suzanne H. Nick Irrevocable Family Trust One, the Suzanne H. Nick Irrevocable Family Trust Two, the Thomas F. Havens Irrevocable Family Trust One; the Thomas F. Havens Irrevocable Family Trust Two (collectively with Mr. Nick, the "Class B Members" and together with the Class B Managers, the "B Parties"), together either directly or indirectly own or control 45% of the membership interests in Harbor as Class B Members.

GPS was organized on June 1, 2011.  Mr. Cooper is the sole manager of GPS and the Coopers are its sole members.  The Coopers executed a Contribution Agreement relating to the transfer of their interest in GPS to Harbor and/or WFI, however, Harbor's Board never finally affirmed the Contribution Agreement, and thus neither Harbor nor WFI technically owns or controls GPS or its assets.

WFIN was incorporated on January 3, 1995.  The Coopers are WFIN's sole directors, Mr. Cooper is its President, and Mrs. Cooper is its Secretary and Treasurer.

**Section 2.03    Debtors' Existing Capital Structure**

(a)    The Senior Secured Lender.

On March 14, 2012, WFI, as borrower, and BMO Harris, as administrative agent for various lenders ("BMO Harris the "Pre-Petition Agent" or "Senior Secured Lenders"), entered into a Credit Agreement (the "Credit Agreement") for a total commitment of up to $40,000,000 (the "BMO Senior Secured Obligation").  Harbor, WFIN, and GPS all guaranteed the BMO Senior Secured Obligation.  The BMO Senior Secured Obligation was evidenced by a Revolving Note, and secured and perfected in substantially all of Debtors' personal property, including, without limitation, all accounts, chattel paper, instruments, documents, general intangibles, deposit accounts, investment property, goods (including all equipment, fixtures and inventory), and all proceeds and products of the foregoing, whether now existing or thereafter arising or acquired (collectively, the "BMO Senior Secured Collateral").

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

On April 23, 2013, ~~BMO Harris~~the Senior Secured Lenders delivered to ~~WFI~~Debtors a written notice of defaults and a reservation of rights ~~(the "Notice of Default")~~ under the Credit Agreement. ~~Specifically, the Notice of Default alleged~~, which asserted that as of February 28, 2013, ~~WFI was~~Debtors were not in compliance with respect to the Adjusted Tangible Net Worth covenant, the Interest Coverage Ratio covenant, and the Minimum Loss Reserves covenants as set forth in Sections 8.25(a), (c) and (d) of the Credit Agreement resulting in separate Events of Default under Section 9.1(b) of the Credit Agreement ~~(collectively, the "Asserted Defaults")~~.

Thereafter, beginning in May 2013, the parties to the Credit Agreement entered into a series of forbearance agreements.  After four additional forbearance agreements through August 2013, ~~BMO Harris~~the Pre-Petition Agent refused to provide any further forbearances.  On August 13, 2013, ~~BMO Harris~~the Pre-Petition Agent sent Debtors a Notice of Acceleration and Demand for Payment, which indicated that any remaining standstills and forbearances had expired and declaring the principal and all accrued interest of the ~~BMO~~Senior Secured Obligation was accelerated and immediately due and payable.

On August 20, 2013, ~~BMO Harris~~the Pre-Petition Agent filed ~~a *Complaint* in the Eighth Judicial District Court, Clark County, Nevada (the "Nevada State Court"), thereby commencing case number A-13-687299-B (the "State Court Case") and~~an action in Nevada state court, thereby asserting claims for declaratory relief for the appointment of a receiver, breach of the Credit Agreement, and breach of the covenant of good faith and fair dealing.  On August 21, 2013, ~~BMO Harris~~the Pre-Petition Agent filed a *Petition for the Appointment*petition seeking the appointment of a *Receiver on Order Shortening Time* (the "Receiver Petition").  ~~On~~receiver, and on September 4, 2013, the Nevada ~~State Court entered an Order Appointing Receiver (the "Receiver Order"), and within a matter if hours thereafter~~state court entered an order appointing a receiver over Debtors' business.  Within a matter if hours after the appointment of a receiver, Debtors ~~filed~~Filed their Bankruptcy Cases in order to avoid imminent loss of its portfolio and control of its business, and also to preserve value for the benefit of creditors.

As of the Petition Date, the principal balance owing to ~~BMO Harris~~the Senior Secured Lenders was not less than $~~30,870,301.70~~30,870,301.70, plus interest, attorney's fees, costs and expenses as recoverable pursuant to the terms of the Senior Lien Documents.

      (b)    <u>The Subordinated Debt Holders</u>.

As part of the original purchase of WFI in 2010, various original founders of WFI took back certain notes as part of the purchase price, and were owed, in the aggregate as of the Petition Date, $6,706,000 in principal amount of subordinated debentures of WFI (the "Subordinated Debt Holders").  Approximately $4,000,000 of this debt is owed to Cope Family Ventures, LP, a Nevada limited partnership, over which Donnella M. Cope serves as manager, and $1,950,000 of this debt is owed to Timothy J. Salas and Adrianna Merrell, in their capacity as trustees of various trusts.  The remaining Subordinated Debt is held by approximately eleven (11) other holders in various sums ranging from $12,000 to $250,000.  The Subordinated Debt Holders are general unsecured creditors of WFI.

      (c)    <u>The Real Property</u>.

The ~~BMO~~ Collateral of the Pre-Petition Agent does not include various real property of Debtors, including specifically three (3) parcels of real property located in Las Vegas, Nevada;

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

San Jose, California; and Houston, Texas respectively (collectively, the "Real Property") with an estimated fair market value in the aggregate of ~~approximately $2,000,000.00~~ just over $2,000,000.00. WFI's property in Las Vegas is located at 3915 East Patrick Lane, Las Vegas, Nevada 89120, and is presently being used by WFI as its corporate headquarters. Debtors recently obtained an appraisal stating that the fair market value of the Las Vegas Property is $1.675 million. WFI's property in San Jose is located at 2202 Stevens Creek Boulevard, San Jose, California 95127, but is not used or occupied; rather, the property has a building with significant fire damage that will need to be razed for any future development. Debtors have an appraisal for the San Jose property valuing it at approximately $500,000. WFI's property in Houston is located at 9905 Gulf Freeway, Houston, Texas 77034, and includes a small retail center that is no longer used by the company for operations, and which is instead leased out to a third-party tenant. Debtors estimate that its Houston property is worth less than $250,000.

At or around the loan transaction with ~~BMO Harris~~ the Pre-Petition Agent in 2012, the Class B Members of Harbor required the Class A Members (the Coopers) to agree to a First Amendment to the Amended and Restated Operating Agreement of Harbor, which, among other matters, provided for the payment to the Class B Members of a preferred return. ~~The Real Property is encumbered by certain~~ In March 2012, representatives from the Class B Members recorded deeds of trust in favor of the Class B Members of Harbor to secure ~~this preferred return~~ the foregoing preferred return. On August 16, 2013, counsel for the B Members of Harbor sent a letter to WFI giving notice of an alleged default under B Members' Deeds of Trust and further purporting to accelerate all of WFI's obligations thereunder to make them immediately due and payable. The B Members have asserted that they are owed in excess of $3 million and are secured in WFI's Real Property. Debtors assert that the deeds of trust held by the Class B Members may be avoidable transfers, or subject to recharacterization, subordination or other challenge, however, such allegations are disputed by the Class B Members, and remain untested and unproven to date. Debtors and/or the Committee anticipates commencing such litigation prior to the Confirmation Hearing.

**Section 2.04**    ~~**Debtors' Board Members and Management**~~

~~The current members of WFI board of directors are Frederick Cooper and Katherine Cooper. The current senior management group of WFI includes Frederick Cooper as Chief Executive Officer, Katherine Cooper as President, Treasurer and Secretary, and Edward Bentzen as Chief Financial Officer.~~**Section 2.05**    **Events Leading to Chapter 11**

In addition to the default and acceleration of the ~~BMO~~ Senior Secured Obligation, an additional factor contributing to the deterioration of WFI and its business has been infighting among various parties involved in either the direct or indirect management of the company. Specifically, from and after the closing of the Harbor transaction in October 2010, the Coopers and their management team assumed control of the day-to-day operations of WFI. Since the closing, the management team sought to make significant improvements to WFI's operations in order to establish a platform to facilitate organic growth and expansion through acquisition, enhance long-term profitability of the business, and significantly improve the credit quality of loan assets. Specifically, management has migrated the entire loan portfolio to the Megasys™ software system, sold its commercial truck loan portfolio, overhauled the entire collection process, expanded the bulk purchasing program, developed new products, rationalized WFI's branch office network, increased the use of outside dealer marketing representatives, revamped the repossession and recovery process, and reestablished robust credit underwriting standards.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

Within months after the close of the Harbor transaction in October 2010, significant management disputes between the Class A Members of Harbor and the Class B Members, and the relationship among these parties became more adversarial. In October 2012, Class B Members filed an action in the Court of Common Pleas, Franklin County, Ohio, Civil Division, as Case No. 12 CV 012749 against the Coopers and Harbor, which made various allegations of mismanagement and financial impropriety. In December 2012 the Coopers filed an action in the Eighth Judicial District Court, Clark County, Nevada as Case No. A-12-673394 against the Class B Members, which was later removed to the United States District Court for the District of Nevada in January 2013 as Case No. 2:13-cv-00036-JCM-GWF, and which asserted various claims against one or all of the Class B Members for conversion, breach of fiduciary duties, intentional interference with contractual relations, intentional interference with prospective economic advantage, civil conspiracy, fraudulent inducement, defamation, defamation per se, business disparagement, abuse of process, declaratory relief, and injunctive relief. The foregoing actions remain pending, some of the claims may be derivative claims that are property of the Debtors' bankruptcy estates, and all of the allegations remain unproven and subject to significant dispute.

**Section 2.05    The Civil Investigative Demands from the CFPB**

The Consumer Financial Protection Bureau ("CFPB") is an independent federal agency that holds primary responsibility for regulating consumer protection with regard to financial products and services in the United States. The CFPB was created in 2011 after its conception was included as part of the Dodd-Frank Wall Street Reform and Consumer Protection Act.

WFI has received two Civil Investigative Demands (the "CIDs" or a "CID") from the CFPB. The stated purpose of both CIDs was "to determine whether auto-finance companies, their agents, or other unknown persons have engaged or are engaging in unlawful acts or practices in connection with the advertising, marketing, origination, sale, or servicing of, or the collection of debts associated with, auto-finance loans in violation of sections 1031 and 1036 of the Dodd-Frank Wall Street Reform and Consumer Protection Act, 12 U.S.C. §§ 5531, 5536; the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.*; the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.*; or any other Federal consumer financial law."

The first CID was dated August 19, 2013, and contained five requests for documents, such as organizational charts, training manuals, and consumer complaints. It also contained three interrogatories, which asked for the creation dates of the documents, the dates the documents were in use, and the number of employees performing certain functions. The CID also requested a one-day investigational hearing about various company operations.

The second CID was dated September 11, 2013, and contained six requests for documents, such as account records, financial statements, bankruptcy petitions, and contracts with dealers and consumers. It also sought responses to two interrogatories regarding customer accounts and creditors of the company.

The CFPB's investigational hearing was held in Las Vegas, Nevada, on October 25, 2013. The company has responded to all requests for documents and interrogatories, as modified by agreement with the CFPB. The CFPB has not advised the company of any findings or proposed actions in connection with this matter.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

### Section 2.06    Reorganization Strategy

To facilitate its goal of maximizing the value of its assets, the Debtors and the Senior Secured Lender has been discussing restructuring alternatives for the Debtors' business. The Debtors (with the consent of the Pre-Petition Agent) entered into that certain Stock Purchase Agreement (the "Stalking Horse SPA")[3] with Carfinco WFI, Inc., a Delaware corporation (the "Stalking Horse") dated November ——,15, 2013, in which WFI and GPS agreed to sell and the Stalking Horse agreed to purchase and acquire all of the newly-issued and outstanding capital stock of WFI and GPS for a purchase price equal to seventy percent (70%) of the net finance receivables, subject to adjustment as provided in the Stalking Horse SPA, plus Cure Costs up to an aggregate threshold as set forth in the Stalking Horse SPA, and in accordance with the Bid Procedures Order, and the Sale Order and/or Confirmation Order. The Stalking Horse is a subsidiary of Carfinco Financial Group, a Canadian public company based in Edmonton, Alberta, Canada.

Debtors also intend to seek the sale of the Real Property on a timely basis, and are entering into that certain Real Property Purchase Agreementa proposed real property purchase agreement, subject to overbids, with the Stalking Horse dated November ___, 2013, in, which WFI agreed to sell and the Stalking Horse agreedproposed to purchase the Las Vegas Property for a purchase price of $500,000.000.$500,000.00, subject to various adjustments, and in accordance with the Las Vegas Property Purchase Agreement and the Las Vegas Property Bid Procedures Order. Debtors or the Liquidating Trustee, as the case may be, will also seek to sell Debtors' other Real Property on a timely basis as well.

# ARTICLE III
# ASSETS AND LIABILITIES OF THE DEBTORS

### Section 3.01    The Debtors' Scheduled Assets

The Debtors' assets as of the Petition Date are described in the Bankruptcy Schedules and SOFAs Filed with the Bankruptcy Court on October 2, 2013, as amended on November 7,7 and 11, 2013, and any amendments thereafter (collectively, the "Bankruptcy Schedules"), and reference should be made thereto for information concerning such assets. Copies of the Bankruptcy Schedules and any amendments thereto Filed in this Case may be viewed online at any time through the Bankruptcy Court's PACER System at www.nvb.uscourts.gov.

As of the Petition Date, the DebtorsWFI's principal assets included $44,871,137.12 inapproximately $44.8 million in gross finance receivables, $1,525,184.01.5 million in land and building assets, $400,000 in real property, and $754,278.07750,000 million in furniture, fixtures and equipment. Within about two weeks after the Petition Date, WFI's gross portfolio balance had dropped to approximately $43.9 million, less approximately $2.3 million in deferred interest, thus leaving approximately $41.6 million in calculated gross value. As of that same time period, however, the total credit balance owing to its senior secured lender was the sum of approximately $30.9 million. Additionally, as of the Petition Date, Debtors had approximately $2.3 million in cash on hand.

---

[3] The Stalking Horse SPA contemplates the sale of the New Interests to the Stalking Horse subject to higher and better offers pursuant to the Bid Procedures Order and the Sale Order and/or Confirmation Order.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

GPS's principal asset is certain intellectual property rights for its global position system collateral recovery technology. Specifically, this technology involves the use of global positioning system starter interruption devices on vehicles to further secure collateral. These systems enable WFI to track the location of its collateral and, when necessary in cases of severe delinquency, deactivate the ignition system, thus reducing repossession costs and incentivizing borrowers to make timely payments. The foregoing technology and thus the value of GPS is unknown, however, the technology has never found a substantial successful market outside of the use among WFI's dealers, and thus Debtors believe it has very limited value.

The Bankruptcy Schedules Filed by the Debtors in their respective Cases included intercompany receivables between and amongst the Debtors. The Plan provides that all such inter-Debtor receivables will be cancelled on the Effective Date.

## Section 3.02    The Debtors' Assets After Closing

After the Closing with the Purchaser, the Debtors' assets consist of (a) the PSA Sale Proceeds; and (b) assets excluded from the sale by the Purchaser under the terms of the Purchase and Sale Agreement and the Liquidating Trust, including without the limitation, Liquidating Trust Avoidance Actions and the Real Property (unless the Vegas Real Property is sold as discussed hereinafter); and (c) the stock in WFIN.

## Section 3.03    Liabilities Scheduled by the Debtors

The Debtors' liabilities as of the Petition Date are set forth in the Bankruptcy Schedules, and reference should be made thereto for information concerning such liabilities as of the Petition Date. Copies of the Bankruptcy Schedules and any amendments thereto filed Filed in this Case these Bankruptcy Cases may be viewed online at any time through the Bankruptcy Court's PACER System at www.nvb.uscourts.gov.

As of the Petition Date, the Debtors WFI's primary liabilities include $30,870,301.70 the principal balance of $30.9 million, plus interest, attorney's fees, costs and expenses, owing to its Senior Secured Creditor BMO Harris, various disputed sums allegedly owing to the Class B Members of Harbor, which are asserted to be secured in Debtors' Real Property, approximately $6,700,000 6.7 million owing to subordinated unsecured debt holders, and various sums owing under dealer agreements and other general unsecured trade creditors.

The Bankruptcy Schedules filed Filed by the Debtors in their respective Chapter 11 Bankruptcy Cases included intercompany payables between and amongst the Debtors. The Plan provides that all such inter-Debtor payables will be cancelled on the Effective Date.

## Section 3.04    Preferences, Fraudulent Transfers and Other Avoidance Actions

Under Bankruptcy Code § 547, a debtor's bankruptcy estate may recover certain preferential transfers of property, including cash, made insolvent during the 90 days immediately before the filing of its bankruptcy petition with respect to pre-exiting debts, to the extent the transferee receive more than it would have in respect of the preexisting debt had the debtor been liquidated under chapter 7 of the Bankruptcy Code. In the case of "insiders," the Bankruptcy Code provides for one (1) year preference period.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

Certain defenses can be made to preference recoveries. Transfers made in the ordinary course of the debtor's and transferee's business according the ordinary business terms in respect of debts less than 90 days before the filing of a bankruptcy case are not recoverable. Additionally, if the transferees extended credit subsequent to the transfer (and before the commencement of the bankruptcy case), such extension of credit may constitute a defense to recovery, to the extent of any new value, against an otherwise recoverable transfer of property. If a transfer is recovered by the estate, the transferee has an unsecured claim against the debtor to the extent of the recovery.

Under Bankruptcy Code § 547 and various state laws, a debtor may recover certain pre-petition transfers of property including the grant of a security interest in property, made while insolvent to the extent that the debtor receives less than fair value for such property. Additionally, avoidance actions exists under sections 544, 545, 549 and 553(b) of the Bankruptcy Code that allow a debtor to avoid and/or recover certain property.

The Bankruptcy Code preserves the Debtors' rights to prosecute claims and causes of action that exist outside of bankruptcy, and also empowers the Debtors to prosecute certain claims that are established by the Bankruptcy Code, including claims to avoid and recover preferential transfers, and fraudulent conveyances.

Under the Plan, all of the Debtors' rights in respect of all Liquidating Trust Avoidance Actions are preserved and are transferred to the Liquidating Trustee. As such, the Liquidating Trustee, as a representative of the Estates, will have the authority to investigate, prosecute, collect, and/or settle the Liquidating Trust Avoidance Actions in accordance with Bankruptcy Code § 1123(b)(3). To date, the Debtors have not fully investigated any potential Liquidating Trust Avoidance Actions.

**IN REVIEWING THIS DISCLOSURE STATEMENT AND THE PLAN, AND IN DETERMINING WHETHER TO VOTE IN FAVOR OR AGAINST THE PLAN, HOLDERS OF CLAIMS (INCLUDING PARTIES THAT RECEIVED PAYMENTS FROM THE DEBTORS WITHIN NINETY (90) DAYS BEFORE THE PETITION DATE) SHOULD CONSIDER THAT A CAUSE OF ACTION MAY EXIST AGAINST THEM, THAT THE PLAN PRESERVES ALL CAUSES OF ACTION, AND THAT THE PLAN AUTHORIZES THE LIQUIDATING TRUSTEE TO PROSECUTE SUCH CLAIMS.**

**ARTICLE IV**
**THE ~~CHAPTER 11~~BANKRUPTCY CASES**

**Section 4.01    Commencement of These ~~Chapter 11~~Bankruptcy Cases**

On September 4, 2013 (the "Petition Date"), ~~Western Funding Incorporated, a California corporation ("WFI"), Western Funding Inc. of Nevada, a Nevada corporation ("WFIN"), and Global Track GPS, LLC, a Delaware limited liability company ("Global Track"), as debtors and debtors-in-possession (collectively, the "Debtors" or the "Plan Proponents") filed~~Debtors Filed voluntary petitions ~~(the "Chapter 11 Cases" or "Cases")~~ in the United States Bankruptcy Court for the District of Nevada, Las Vegas Division (the "Bankruptcy Court")~~.~~, thereby commencing their Bankruptcy Cases. The authority of WFI to file for its Bankruptcy Case has been disputed by certain parties, which dispute is explained in greater detail in Section 4.05.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

By order of the Bankruptcy Court, the ~~Chapter 11~~Bankruptcy Cases are being jointly administered for procedural purposes only. The Office of the United States Trustee (the "U.S. Trustee") has not appointed a trustee or an examiner, however, it has appointed an Official Committee of Unsecured Creditors (the "Committee") who has ~~been appointed and~~ retained counsel. The Committee's members are exclusively Subordinated Debt Holders.

After the Petition Date, the Debtors ~~continued~~were authorized to operate and manage their business and properties in the normal course as debtors-in-possession pursuant to Bankruptcy Code §§ 1107(a) and 1108. The Debtors ~~have~~ generally have been paying post-petition operating expenses as they become due, excepting and excluding therefrom payments to WFI's dealers as and for their deal reserve payments to the extent such financed receivables were acquired from the dealer prior to the Petition Date.

## Section 4.02   Initial Emergency Motions

Shortly after the Petition Date, the Debtors ~~filed~~Filed numerous initial emergency motions to streamline the transition to operating under Chapter 11, to stabilize operations, and to preserve their relationships with vendors, customers and utility providers. These motions requested, among other things, authority to:

- administer the ~~Chapter 11~~Bankruptcy Cases jointly for administrative purposes;

- establish notice procedures for informing the Debtors' Creditors and Interest Holders of the events and filing in the Cases;

- maintain the Debtors' pre-petition bank accounts and cash management system;

- use cash collateral during the pendency of the ~~Chapter 11~~Bankruptcy Cases;

- pay pre-petition wages and salaries to employees and contractors;

- provide adequate assurance to the Debtors' utility providers to maintain uninterrupted service;

## Section 4.03   Cash Collateral Motion and Stipulation

(a)   The ~~Interim Approval of the Use of~~ Cash Collateral Motion and Interim Use on a Nonconsensual Basis~~.~~

On September 15, 2013, Debtors ~~filed~~Filed an *Emergency Motion for Entry of an Interim Order (I) Preliminarily Determining Extent of Cash Collateral and Authorizing Interim Use of Cash Collateral, and (II) Scheduling a Final Hearing to Determine Extent of Cash Collateral and Authorizing Use of Cash Collateral* (the "Cash Collateral Motion"). The Cash Collateral Motion sought entry of an interim order preliminarily determining the extent of cash collateral and authorizing the interim use thereof by Debtors to pay necessary and appropriate costs to operate Debtors' business in the ordinary course pending a final hearing and consistent with a budget.

The Cash Collateral Motion argued that as of the filing of that motion, WFI's gross portfolio balance was approximately $43.9 million, less approximately $2.3 million in deferred

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

interest, thus leaving approximately $41.6 million in calculated gross value.  Further, as of the filing of that motion, Debtors argued that the total credit balance owing to ~~BMO Harris~~the Senior Secured Lenders was only the sum of approximately $30.9 million, thus leaving ~~BMO Harris~~the Senior Secured Lenders oversecured in approximate amount of $10.7 million, and without even accounting for the approximate $2.3 million in cash Debtors had then, and also excluding the approximately $2 million in Real Property in which ~~BMO Harris~~the Pre-Petition Agent is not secured.  As such, Debtors' Cash Collateral Motion argued that assuming ~~BMO Harris~~the Pre-Petition Agent was secured and properly perfected in all cash presently held by Debtors and the portfolio, ~~BMO Harris's~~the Senior Secured Lenders' coverage ratio was approximately 1.41 ($41.6 million divided by ($30.9 million less $1.3 million)), thus leaving ~~BMO Harris~~the Senior Secured Lenders' interest adequately protected.

On September 17, 2013, ~~BMO Harris~~the Pre-Petition Agent opposed Debtors' Cash Collateral Motion and argued that Debtors' analysis regarding the amount of adequate protection was faulty because it ignored the costs of collection and historical recovery rates given the subprime nature of the loans, and that Debtors' portfolio was actually worth far less than as stated, and indeed approximately $30,000,000, thereby leaving the bank with little to no equity cushion.  Further, ~~BMO Harris~~the Pre-Petition Agent argued that its position would deteriorate during the term of the proposed cash collateral budget.

On September 23, 2013, the Court entered an *Order Granting Emergency Motion for Entry of an Interim Order (I) Preliminarily Determining Extent of Cash Collateral and Authorizing Interim Use of Cash Collateral, and (II) Scheduling a Final Hearing to Determine Extent of Cash Collateral and Authorizing Use of Cash Collateral* (the "Interim Order").  The Interim Order granted Debtors' Cash Collateral Motion on a preliminary and interim basis, and thus authorized Debtors' limited use of cash collateral, but only Operating Cash Disbursements per the proposed Cash Collateral Budget (the "Budget"), and did not allow any Bankruptcy Cash Disbursements or Purchase of New Accounts.  As and for adequate protection, the Interim Order provided ~~BMO Harris~~the Pre-Petition Agent with the following:  (a) Debtors were to make monthly interest payments to ~~BMO Harris~~the Pre-Petition Agent as set forth in the Budget; (b) Debtors were to provide ~~BMO Harris~~the Pre-Petition Agent with weekly reports showing operations, use of cash, and any variances to the Budget; and (c) ~~BMO Harris~~the Pre-Petition Agent was granted a post-petition replacement lien in and to all of Debtors' Post-Petition Receipts generated by the ~~BMO~~Senior Secured Collateral to the extent of any diminution in the value of its interest.

(b)    The Cash Collateral Stipulation~~.~~

After further substantial negotiations, Debtors and ~~BMO Harris~~the Pre-Petition Agent were able to come to an agreement on the terms and conditions of a consensual use of cash collateral for the ~~Chapter 11~~Bankruptcy Cases, and on October 16, 2013, ~~filed~~Filed a motion to approve a *Stipulation Authorizing Debtors to Use Cash Collateral, Granting Adequate Protection and Granting Relief from the Automatic Stay Pursuant to 11 U.S.C. § 361, 362 and 363* (the "Cash Collateral Stipulation").

Pursuant to the Cash Collateral Stipulation, Debtors made various admissions, including but not limited to the following:  (a) as of the Petition Date, the Debtors were indebted and liable to ~~BMO Harris~~the Senior Secured Lenders, without claim, defense, counterclaim, recoupment or offset of any kind, in the aggregate principal amount of no less than $30,870,301.70, exclusive of

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

interest, and all costs, fees, expenses and charges; (b) the ~~BMO~~ Senior Secured Obligations were legal, valid and binding obligations of the Debtors, enforceable in accordance with their terms, and no portion of the ~~BMO Obligations~~ Senior Secured Obligation is subject to avoidance, recharacterization, setoff, recoupment or subordination pursuant to the Bankruptcy Code or applicable ~~nonbankruptcy~~ non-bankruptcy law; (c) the Debtors did not have, and thereby forever waived, released and affirmatively agreed not to allege or otherwise pursue, any defenses, affirmative defenses, counterclaims, claims, causes of action, recoupments, setoffs or other rights that it has or may have arising under the Bankruptcy Code, applicable ~~nonbankruptcy~~ non-bankruptcy law or otherwise against ~~BMO~~ the Pre-Petition Agent or any of its affiliates.  Notwithstanding the foregoing, within forty five (45) days after entry of the final order approving the Cash Collateral Stipulation, and other party in interest was able to challenge the foregoing.

    The Cash Collateral Stipulation provided that Debtors were authorized on a limited basis to use ~~BMO's~~ the Senior Secured Collateral, including the Cash Collateral, but only in strict accordance with the terms and conditions provided in the Cash Collateral Stipulation and Budget and only until the occurrence of a Termination Event (as hereinafter defined).  Debtors were also permitted to use Cash Collateral to buy a limited amount of new finance receivables, but prohibited from using any Cash Collateral to pay or fund dealer reserves, or to pay any amounts owed to or by WFI, Global Track, or Harbor.

    Debtors also acknowledged in the Cash Collateral Stipulation that their use of Cash Collateral or the imposition of the automatic stay may result in the diminution in value of ~~BMO Harris~~ the Senior Secured Lenders' Collateral and ~~that BMO's~~ the Lenders' interests therein, and, as a result, ~~BMO is~~ that they were entitled to adequate protection.  As adequate protection, ~~BMO~~ the Pre-Petition Agent was granted a superpriority post-petition administrative claim against the Debtors' estates, as well as certain adequate protection liens consisting of first priority replacement security interest in and a lien on the estates' property, excluding the real property. Debtors also committed to paying to ~~BMO~~ the Pre-Petition Agent non-refundable cash adequate protection payments in the amount of $1,000,000 each on a monthly basis, and paying ~~BMO Harris'~~ the Pre-Petition Agent's reimbursable expenses upon presentation of an invoice.

    Debtors also made various other commitments to ~~BMO Harris~~ the Pre-Petition Agent under the Cash Collateral Stipulation, including but not limited to the following:  (1) providing ~~BMO Harris~~ the Pre-Petition Agent with any written financial information or periodic reporting that ~~BMO~~ the Pre-Petition Agent should reasonably request; (2) Debtors will continue to retain High Ridge Partners as their financial advisors; (3) Debtors will retain and engage Hilco Receivables, LLC as the backup servicer.  ~~BMO Harris~~ The Pre-Petition Agent also consented to the establishment of a ~~carveout~~ Carveout of up to $1,000,000 for the payment of estate professionals, including Committee counsel.

    Finally, the Cash Collateral Stipulation also provided for the occurrence various events of termination (the "Termination Events"), including but not limited to the following:  (1) failure of the Debtors to deliver to ~~BMO~~ the Pre-Petition Agent by no later than October 25, 2013, a letter of intent, in a form and substance acceptable to ~~BMO~~ the Pre-Petition Agent, from a non-insider to provide sufficient financing to fund a confirmable reorganization involving a transaction to pay ~~BMO Harris Bank~~ the Senior Secured Lenders in full; (2) failure of the Debtors to timely comply with at least one of the following: (i) file a Plan in these Cases on or before October 25, 2013 or (ii) file a motion seeking ~~Court~~ approval from the Bankruptcy Court to establish bidding

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

procedures for and to sell substantially all of the Collateral with the consent of ~~BMO~~the Pre-Petition Agent pursuant to section 363 of the Bankruptcy Code (a "363 Sale") on or before November 11, 2013, in either case acceptable in form and substance to ~~BMO~~the Pre-Petition Agent, or that otherwise fails to provide ~~BMO~~the Pre-Petition Agent with its full credit bid rights pursuant to section 363(k) of the Bankruptcy Code; (3) failure of Debtors to obtain the entry by ~~this~~the Bankruptcy Court of an order, acceptable in form and substance to ~~BMO~~the Pre-Petition Agent approving a disclosure statement or approving bidding procedures for the 363 Sale that preserve ~~BMO~~Pre-Petition Agent's rights to credit bid without limitation, on or before November 25, 2013; (4) failure of the Debtors to obtain the entry by ~~this~~the Bankruptcy Court of an order on or before December 23, 2013, acceptable in form and substance to ~~BMO~~the Pre-Petition Agent either confirming a Plan or approving a 363 Sale; (5) failure of the Debtors to effect the confirmed Plan or to close the 363 Sale on or before January 4, 2014.

On October 24, 2013, the Bankruptcy Court entered an order approving the Cash Collateral Stipulation on a final basis.

(c)    ~~(c)~~    The Amendment to the Cash Collateral Stipulation.

On November 1, 2013, Debtors and ~~BMO Harris filed~~the Pre-Petition Agent Filed a *First Stipulated Amendment* (the "Cash Collateral Amendment") to the Cash Collateral Stipulation, which provides, among other matters, the following:  (1) after entry of the Cash Collateral Amendment, Debtors would pay ~~BMO Harris~~the Pre-Petition Agent an additional adequate protection payment of $500,000; (2) after approval of a transaction or sale for substantially all of Debtors' business, Debtors would immediately transfer all cash collateral then held or controlled by Debtors; and (3) Debtors would continue and finalize their efforts to return all pre-petition retainers, and imposed other limitations with respect to the retainer being held by Debtors' general reorganization counsel.  On November ——25, 2013, the Bankruptcy Court entered an order approving the Cash Collateral Amendment.

## Section 4.04    Retention of Professionals

The Bankruptcy Court has entered orders approving the Debtors' applications to employ and retain (i) Larson & Zirzow, LLC as their general bankruptcy and restructuring counsel, (ii) FTI Consulting as their interim financial advisors, (iii) High Ridge Partners as their replacement financial advisors, (iv) Hilco Receivables, LLC as their backup servicer, and (v) Lewis Roca Rothgerber, LLP as their special counsel for corporate and transactional matters.  The Debtors may also seek to retain other professionals, including but not limited to Hudson Cook, LLP, as special counsel for consumer financial and related regulatory matters, Timothy R. Morse & Associates as real estate appraiser, a real estate broker and listing agent, and such other professionals as may be necessary.  The Bankruptcy Court has also entered an order granting an application by the Committee to employ and retain Schwartzer McPherson Law Firm as their legal counsel.

## Section 4.05    ~~Expense Reimbursement and Break-Up Fee~~The Harbor B Parties' Motion to Dismiss WFI's Chapter 11 Case

On September 16, 2013, the Class B Members Filed a motion (the "Dismissal Motion") seeking to dismiss WFI's bankruptcy filing as being filed without valid corporate authorization.  The Class B Managers later joined in the Dismissal Motion.  The Debtors opposed the Dismissal

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

Motion, and the Committee orally joined in Debtors' opposition. After extensive briefing of the issues, the Bankruptcy Court held an evidentiary hearing on the Dismissal Motion on November 1 and 4, 2013, wherein the Court heard and considered the testimony of various witnesses and considered various documents admitted into evidence by the parties. On November 13, 2013, the Bankruptcy Court heard closing arguments on the Dismissal Motion, and at a further hearing on November 15, 2013, the Bankruptcy Court orally denied the Dismissal Motion.

In denying the Dismissal Motion, the Bankruptcy Court found and determined that the B Parties' lacked standing to challenge WFI's bankruptcy filing as unauthorized. Specifically, the Bankruptcy Court found that the B Parties were not shareholders of WFI, and that only Harbor, as the sole shareholder of WFI, had standing to raise the issue of an alleged lack of corporate authorization for WFI's bankruptcy filing. With respect to Harbor's Class B Members, the Bankruptcy Court held that they lacked standing to challenge WFI's bankruptcy filing as unauthorized because Harbor's governing documents provided that its business and affairs were to be managed exclusively by Harbor's Board of Managers, not the members. Similarly, with respect to Harbor's Class B Managers, the Bankruptcy Court held that they lacked standing to challenge WFI's bankruptcy filing as unauthorized because Harbor's governing documents provided that Harbor's Board of Managers could only act pursuant to a majority vote of that Board, and the Class B Managers, standing alone, did not constitute that required majority. The Bankruptcy Court also prospectively denied any request by the B Parties for a stay pending appeal from its decision denying the Dismissal Motion.

On November 25, 2013, the Bankruptcy Court entered a written order denying the B Parties' Dismissal Motion and denying a stay pending appeal from its decision (the "Order Denying Dismissal"). The B Parties have indicated that they may appeal the Order Denying Dismissal.

**Section 4.06    Debtors' Post-Petition Operations and the Status of its Loan Portfolio**

For the period October 14, 2013 through November 17, 2013 (the "Period"), being the first five (5) weeks of the Cash Collateral Budget, that Debtors' total cash receipts were $239,829 or 7.5% greater than the Budget for $3.44M in total cash receipts for the Period. The total cash receipts for the Period were compiled of: (i) gross customer and dealer payments and repossession sales (normal course cash receipts) of $125,700 or 3.9% greater than Budget, and (ii) other cash receipts of $114,130, which were not budgeted, comprised of professional retainer returns, sale of bankruptcy accounts and a small insurance refund. Debtors' total operating cash disbursements were $255,068 or 29.5% favorable to the Budget for total operating cash disbursements of $610,423. However, it should be noted that Debtors have accrued and incurred approximately $60,000 in accounts payable that were forecasted but not paid in the Period as well as received an estimate for director and officer insurance of approximately $47,000 that was also forecasted during the Period but has not been disbursed. The adjusted total operating cash disbursements would demonstrate approximately $148,000 or 17.1% favorability to the Budget. Therefore, Debtors' positive net cash flow (total cash receipts minus total operating disbursements) illustrates a positive $2.83M for the Period. The adjusted (for the accounts payable and insurance not disbursed but forecasted in the Period) net cash flow would be $2.73M for the Period. Additionally, it should be noted that Debtors generated an ending book cash balance of $3.94M at November 17, 2013, which illustrates a positive variance to the Budget of $964,602 or 32.5%. However, the positive variance in the ending book cash balance is somewhat offset by a negative $518,164 variance in the actual gross portfolio balance to the

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

Budget balance at November 17, 2013 for a balance of $38.55M. In summary, Debtors' financial performance comparative to the Budget was favorable for the Period.

Since the Petition Date, WFI's loan portfolio has shrunk and will continue to shrink because the level of new purchases as permitted under the Cash Collateral Stipulation is not sufficient to replace the runoff from the portfolio. The foregoing continuing reduction in the size of the portfolio also results in a decline in the income generated by the portfolio as well. Additionally, the reduced level of new paper purchases permitted under the Cash Collateral Stipulation, which are not at the same level WFI was permitted to purchase pre-petition or sufficient to replace the runoff in the portfolio, combined with the restriction on payments to dealers for receivables WFI purchased pre-petition, results in strain with WFI's dealers.

**Section 4.07    Expense Reimbursement and Break-Up Fee to the Stalking Horse Bidder**

On November ——,1, 2013, Debtors filed a Notice of Execution of Letter of Intent, thereby giving notice of their execution of a letter of intent (the "Letter of Intent") for a definitive transaction with the Stalking Horse. The Letter of Intent included a rider signed separately by the Pre-Petition Agent providing that, except as qualified therein, the Pre-Petition Agent: (a) approves and supports the Debtors' execution of the Letter of Intent and the transactions contemplated therein, including, without limitation, the plan of reorganization as contemplated, and (ii) agrees not to object to the Debtors' motion to approve an expense reimbursement and break-up fee to the Stalking Horse so long as it is consistent with the terms set forth in the Letter of Intent; *provided, however*, that in the event the Amendment to the Cash Collateral Stipulation is not filed or approved by the Bankruptcy Court, among other conditions, then the support of the Pre-Petition Agent of the foregoing and of the transactions in the Letter of Intent may be revoked by the bank in its sole discretion, with the Pre-Petition Agent expressly reserving all rights upon said revocation.

On November 13, 2013, the Bankruptcy Court entered an order approving a break-up fee (the "Break-Up Fee") equal to $365,000.00 and expense reimbursement to the Stalking Horse Bidder, and an expense reimbursement for its(the "Expense Reimbursement") for the Stalking Horse Bidder's documented reasonable out-of-pocket costs and expense of up to $450,000.00, or in the event of a BMO Harris credit bid, up to $350,000.00. credit bid by the Pre-Petition Agent, up to $350,000.00. The Break-Up Fee and Expense Reimbursement are entitled to superpriority administrative claim treatment, senior to all superpriority claims; *provided, however*, that such Break-Up Fee and Expense Reimbursement shall be payable only in the event that (i) Carfinco is not in material default of the Definitive Agreement, (ii) the Companies consummate an Alternative Transaction, and (iii) the Pre-Petition Obligations and Adequate Protection Claims of the Pre-Petition Agent (as such terms are defined in the Cash Collateral Stipulation) are paid in full in cash, and shall be payable from the proceeds of the sale to such another bidder.

**Section 4.064.08    Bid Procedures Motion**

On November ——, 2013 Debtors filed their25, 2013, the Bankruptcy Court entered an *Order Granting* Motion to (A) Approve the Stock Purchase Agreement and Authorize the Debtors to Enter Into the Stock Purchase Agreement and Comply with Their Obligations Thereunder; (B) Approve the Procedures for the Solicitation of Higher or Better Offers; (C) Approve the Form and Manner of Notice; (D) Approve Procedures for Determining Cure Amounts for Executory Contracts and Unexpired Leases; and (E) Grant Related Relief (the "Bid Procedures Motion"),

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

which ~~seeks Bankruptcy Court approval of~~approved a process under which the Debtors will seek competing bids for the sale of the New Interests or the Debtors' Assets.  Specifically, the Bid procedures ~~contemplate~~provide the following:

•       Notice of Auction and Sale Hearing (the "Sale Notice") will be (i) served on certain parties within one (1) business day after entry of the Bid Procedures Order.

•       Subject to certain requirements in the Bid Procedures, the Debtors will afford any Qualified Bidder the time and opportunity to conduct reasonable due diligence.

•       To be deemed a Qualifying Bid, a bid must, among other requirements specified in the Bid procedures, (i) be received no later than the Bid Deadline; (ii) state such Qualified Bidder offers to purchase the Acquired Property on terms and conditions substantially as set forth in the Purchase and Sale Agreement; (iii) includes a duly authorized and executed Purchase and Sale Agreement along with a copy of such agreement marked to show the specific changes to the Stalking Horse SPA that the Potential Bidder requires (which marked copy may be an electronic comparison of the written acquisition agreement submitted and the Stalking Horse SPA (a "Marked Agreement")); and (vi) provide written evidence that the Qualified Bidder is financially capable of consummating the contemplated transaction.

•       All Qualifying Bids must also provide the Good Faith Deposit, which shall be returned to each Qualifying Bidder not deemed to be the Purchaser.

•       In the event the Debtors timely receive one or more Qualifying Bids other than the Stalking Horse's Qualified Bid, the Debtors shall conduct an Auction.

•       The Qualifying Bidder submitting the highest and best bid at the Auction will be deemed the Purchaser, and will complete and execute all documents evidencing and containing the terms and conditions upon which the winning bid was made.

To facilitate this process, the Debtors negotiated and signed the Stalking Horse SPA, which provides that the Stalking Horse will pay an amount equal to seventy percent (70%) of the net financed receivables, after excluding certain accounts, in Cash for the New Interests, subject to adjustments detailed in the Stalking Horse SPA.

The Bid Procedures ~~Motion contemplates~~Order provides that the Auction is currently set to commence ~~at 9:00 a.m., prevailing Pacific Time,~~ on **December 16, ~~2013~~2013 at 9:00 a.m. (PST).**  The Auction will take place at the law offices of ~~Larson & Zirzow, LLC, which is located at 810 S. Casino Center Blvd., Suite 101,~~Lewis Roca Rothgerber, 3993 Howard Hughes Parkway, Suite 600, Las Vegas, Nevada ~~89101~~89169.

**Section ~~4.07~~4.09        Las Vegas Property Bid Procedure Motion**

On November ___, ~~201325, 2013,~~ Debtors filed their *Motion to (A) Approve the Stock Purchase Agreement and Authorize the Debtors to Enter Into the ~~Stock~~Real Property Purchase Agreement and Comply with Their Obligations Thereunder; (B) Approve the Procedures for the Solicitation of Higher or Better Offers; (C) Approve the Form and Manner of Notice; (D) Approve Procedures for Determining Cure Amounts for Executory Contracts and Unexpired Leases; and (E) Grant Related Relief* (the "Las Vegas Property Bid Procedures Motion"), which seeks Bankruptcy Court approval of a process under which the Debtors will seek competing bids

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

for the sale of the Las Vegas Property.  Specifically, the Las Vegas Property Bid Procedures Motion contemplates similar procedures to those previously referenced with respect to the Bid Procedures Motion for the sale of the New Interests or the Debtors' Assets.

To facilitate this process, the Debtors ~~negotiated~~will negotiate and ~~signed~~sign the Las Vegas Property Purchase Agreement with the Stalking Horse, which provides that the Stalking Horse will pay ~~an amount equal to $500,000,~~$500,000 in Cash for the Las Vegas Property, subject to adjustments detailed in the Las Vegas Property Purchase Agreement and conditioned, among other things, on the closing of the transactions contemplated in the Stalking Horse SPA.

The Las Vegas Property Bid Procedures Motion contemplates that the Auction is currently set to commence ~~at 9:00 a.m., prevailing Pacific Time,~~ on **December 16, ~~2013~~2013 at 9:00 a.m. (PST)** or such later time after the conclusion of the Action for the Acquired Property. The Auction will take place at the law offices of ~~Larson & Zirzow, LLC, which is located at 810 S. Casino Center Blvd., Suite 101, Las Vegas, Nevada 89101.~~Lewis Roca Rothgerber, 3993 Howard Hughes Parkway, Suite 600, Las Vegas, Nevada 89169.  As of the circulation of this Disclosure Statement, the Las Vegas Property Bid Procedures have not been approved by the Court.

## Section ~~4.08~~4.10        Administrative Expense Claim Estimate

As of the Petition Date, the Debtors estimate that on the Effective Date, the total amount of Allowed Administrative Claims will be $1,150,000.00.  The Debtors further estimate that approximately $1,000,000.00 of the total amount of Allowed Administrative Claims will consist of ~~unpaid~~ Professional Fees, some of which have already been paid pursuant to an interim compensation procedures order entered by the Bankruptcy Court, and the remaining $150,000.00 will constitute unpaid ordinary course accounts payable and/or Cure Costs for assumed and assigned executory contracts and unexpired leases related to Debtors' business.

## Section ~~4.09~~4.11        Preference Analysis and Other Potential Avoidance Actions

The Bankruptcy Code preserves the Debtors' rights to prosecute claims and causes of action that exist outside of bankruptcy, and also empowers the Debtors to prosecute certain claims that are established by the Bankruptcy Code, including but not limited to claims to avoid and recover preferential transfers, and fraudulent conveyances.  Under the Plan, all of the Debtors' rights in respect of all Liquidating Trust Avoidance Actions are preserved and are transferred to the Liquidating Trustee.  As such, the Liquidating Trustee, as a representative of the Estates, will have the authority to investigate, prosecute, collect, and/or settle the Liquidating Trust Avoidance Actions in accordance with Bankruptcy Code § 1123(b)(3).  Although Debtors have disclosed in their Filed Statements of Financial Affairs any and all transfers to insiders within a year prior to the Petition Date, the estates have not undertaken any substantial analysis with respect to the value of any potential recovery on any Liquidation Trust Avoidance Actions.

**IN REVIEWING THIS DISCLOSURE STATEMENT AND THE PLAN, AND IN DETERMINING WHETHER TO VOTE IN FAVOR OR AGAINST THE PLAN, HOLDERS OF CLAIMS AND INTERESTS (INCLUDING PARTIES THAT RECEIVED PAYMENTS FROM THE DEBTORS WITHIN NINETY (90) DAYS BEFORE THE PETITION DATE) SHOULD CONSIDER THAT A CAUSE OF ACTION MAY EXIST AGAINST THEM, THAT THE PLAN PRESERVES ~~ALL~~ CAUSES OF ACTION, AND**

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

THAT THE PLAN AUTHORIZES THE LIQUIDATING TRUSTEE TO PROSECUTE THE SAMEACTIONS INCLUDING LIQUIDATING TRUST AVOIDANCE ACTIONS.

**Section 4.104.12      Deemed Consolidation of Debtors for Plan Purposes Only**

Subject to the occurrence of the Effective Date, the Debtors shall be deemed consolidated under the Plan solely for the limited purposes of distribution under the Plan.  Each and every Claim filed or to be filed against any of the Debtors shall be deemed filed against the deemed consolidated Debtors and shall be deemed one Claim against all Debtors and (a) all Claims of each Debtor against any other Debtor will be eliminated and released; (b) any obligation of any Debtor and all guarantees thereof executed by one or more of the Debtors shall be deemed to be one obligation of all of the consolidated Debtors; (c) any Claims filed or to be filed in connection with any such obligation and such guarantees shall be deemed one Claim against the consolidated Debtors; (d) all duplicative Claims (identical in amount and subject matter) filed against one or more of the Debtors will be automatically expunged so that only one Claim survives against the consolidated Debtors; and (e) the consolidated Debtors will be deemed, for purposes of determining the availability of the right of set-off under Bankruptcy Code § 553, to be one entity, so that, subject to other provisions of Bankruptcy Code § 553, the debts due to a particular Debtor may be offset against the Claims against such Debtor or Debtors.

Such deemed consolidation, however, shall not (other than for purposes related to funding distributions under the Plan and as set forth above in this Section) affect:  (a) the legal and organizational structure of the Reorganized Debtors; (b) pre- and post-Petition Date guaranties, liens, and security interests that are required to be maintained (i) in connection with executory contracts or unexpired leases that were entered into during the Chapter 11Bankruptcy Cases or that have been or will be assumed; (ii) pursuant to the Plan; or (iii) in connection with any financing entered into, or New Interests issued, by the Reorganized Debtors on the Effective Date; and (iv) distributions out of any insurance policies or proceeds of such policies.

Given that WFIN has no assets, and GPS has minimal assets limited to its technology of unknown but limited value, and that both of the foregoing entities have no significant liabilities other than guarantees of the Senior Secured Claims, the substantive consolidation of the Estates will have little, if any, prejudicial effect on creditors and parties in interest, as all or nearly all of the assets and liabilities are held by WFI.

**Section 4.114.13      Exclusivity**

The Debtors have the exclusive right to file a plan of reorganization in the Chapter 11Bankruptcy Cases until January 2, 2014, and the exclusive right to solicit acceptances until March 3, 2014.  Although a possibility always exists that Confirmation of the Plan will not occur, at this time, the Debtors do not contemplate the need to extend these dates.

**ARTICLE V**
**SUMMARY OF THE DEBTORS' PLAN OF REORGANIZATION**

**Section 5.01   General Structure of the Plan**

The primary purpose of the Plan is to facilitate the restructuring of the Debtors pursuant to the Purchase and Sale Agreement.  The Debtors have determined in the exercise of their business judgment that the effectuation of the Purchase and Sale Agreement is the best course of

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

action given the Debtors' financial constraints. A reorganization strategy other than a sale, is not possible given the position taken by various creditors of the Debtors, the lack of availability in the credit markets, and the Debtors' inability to sustain operations given their current cash balances. The Plan is structured to enable the Debtors to facilitate a flexible Transaction which that is expressly subject to a process to solicit higher or better offers for the Debtors' Assets and New Interests. Additionally, the Plan contemplates the creation of a Liquidating Trust to liquidate certain Liquidating Trust Assets and distribute any remaining funds (after the payment of Allowed Plan Carve-Out Claims), in accordance with the Plan. Under the Plan, Claims against the Debtors' Estates and Interests in the Debtors are classified, treated, entitled to vote as follows:

**Section 5.02    Classification of Claims and Interests**

All Claims and Interests, except for Administrative Claims and Priority Tax Claims, are placed in the Classes as set forth below. In accordance with Bankruptcy Code § 1123(a)(1), Administrative Claims, and Priority Tax Claims of the kinds specified in Bankruptcy Code §§ 507(a)(1) and 507(a)(8) have not been classified.

The categories of Claims and Interests set forth in the Plan classify Claims and Interests for all purposes, including for purposes of voting, confirmation, and distribution pursuant to the Plan and Bankruptcy Code §§ 1122 and 1123(a)(1). A Claim or Interest shall be deemed classified in a particular Class only to the extent that it qualifies within the description of such Class, and shall be deemed classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes. Notwithstanding anything to the contrary in the Plan, a Claim or Interest shall be deemed classified in a Class only to the extent that such Claim or Interest has not been paid, released, or otherwise settled before the Effective Date.

In no even event shall the Reorganized Debtors or the Stalking Horse be liable for the payment of any Claims or Interests pursuant to this Plan and the Bankruptcy Code.

Under the Plan, Claims and Interests are classified as follows:

| Class | Type of Allowed Claim or Interest | Treatment | Impairment | Entitled to Vote |
|-------|-----------------------------------|-----------|------------|------------------|
| -- | Administrative Claims | Paid in full in Cash on the Effective Date | Unclassified | No, not entitled to vote |
| -- | Priority Tax Claims | Paid in full in Cash on the Effective Date | Unclassified | No, not entitled to vote |
| A1, B1 and C1 | Priority Non-Tax Claims | Paid in full in Cash on the Effective Date | Unimpaired | No, deemed to accept this Plan |
| A2, B2 and C2 | Senior Secured Claims | See Section 4.02 of Plan | Impaired | Yes, entitled to vote |
| A3, B3 and C3 | Miscellaneous Secured Claims | Paid in full in Cash on the Effective Date | Unimpaired | No, deemed to accept this Plan |
| A4 | B Member Secured Claims | See Section 4.04 of Plan | Impaired | Yes, entitled to vote |

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

| A5, B4 and C4 | General Unsecured Claims | See Section 4.05 of Plan | Impaired | Yes, entitled to vote |
| A6, B5 and C5 | Intercompany Claims | Canceled | Impaired | No, deemed to reject this Plan |
| A7, B6 and C6 | Interests | Canceled | Impaired | No, deemed to reject this Plan |

**Section 5.03    Summary of Proposed Distributions Under the Plan**

(a)       Administrative and Priority Tax Claims.

Certain Claims, including Administrative Expense Claims and Priority Tax Claims, are not classified under the Plan and are not entitled to vote on the Plan and are, therefore, treated as follows:

Each Holder of an Allowed Administrative Claim shall, in full satisfaction, release, settlement, and discharge of such Allowed Administrative Claim:  (a) to the extent such claim is due and owing on the Effective Date, be paid in full, in Cash, on the Effective Date; (b) to the extent such claim is not due and owing on the Effective Date, be paid in full, in Cash, (i) in accordance with the terms of any agreement among the Liquidating Trustee, the Pre-Petition Agent and such Holder, or (ii) when such claim becomes due and payable under applicable non-bankruptcy law, or (iii) in the ordinary course of business; or (c) receive such other treatment as to which such Holder may agree with the Liquidating Trustee and the Pre-Petition Agent.  Cash payments of Allowed Administrative Claims shall be paid from the Claims Reserve, or if the Claims Reserve is insufficient to pay all Allowed Administrative Claims, any shortfall shall be paid from the ~~Avoidance Actions Proceeds Reserve~~Liquidating Trust.

Each Holder of an Allowed Priority Tax Claim shall, in full satisfaction, release, and discharge thereof, receive (i) such treatment as to which such Holder may agree with the Liquidating Trustee, and the Pre-Petition Agent or (ii) at the sole option of the Liquidating Trustee, (a) payment in full, in Cash, of such Allowed Priority Tax Claim on the Effective Date; or (b) treatment in accordance with Bankruptcy Code §§ 1129(a)(9)(C) or 1129(a)(9)(D), as the case may be, with the Liquidating Trustee's selection of (a) or (b) being subject to the prior written approval of Pre-Petition Agent.  Cash payments of Allowed Priority Tax Claims shall be paid from the Claims Reserve, or if the Claims Reserve is insufficient to pay all Allowed Priority Tax  Claims,  any  shortfall  shall  be  paid  from  the  ~~Avoidance  Actions  Proceeds Reserve~~Liquidating Trust.

**LARSON & ZIRZOW, LLC**
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

(b)   Priority Non-Tax Claims.

Except to the extent that a Holder of an Allowed Priority Non-Tax Claim has agreed in writing with the Debtors (or the Liquidating Trustee) and the Pre-Petition Agent to a different treatment (in which event such other writing will govern), each Holder of an Allowed Claim in this Class shall receive, on account of, and in full and complete settlement, release and discharge of and in exchange for, such Claim, at the election of the Liquidating Trustee, (i) Cash equal to the amount of such Allowed Claims in accordance with Bankruptcy Code § 1129(a)(9), on the later of (a) the Effective Date (or as soon as reasonably practicable thereafter) and (b) the date such Claim becomes an Allowed Claim (or as soon as reasonably practicable thereafter); or (ii) such other treatment agreed to by the Debtors, Liquidating Trustee, and the Pre-Petition Agent required to render such Allowed Claims Unimpaired pursuant to Bankruptcy Code § 1124. Cash payments of Allowed Claims in this Class shall be paid from the Claims Reserve, or if the Claims Reserve is insufficient to pay all Allowed Priority Non-Tax Claims, any shortfall shall be paid from the Liquidating Trust.

(c)   Senior Secured Claims

In full satisfaction of the Allowed Senior Secured Claims, the Pre-Petition Agent shall receive:

(i)   on the Effective Date and as part of the Closing, from the Purchaser, all of the PSA Sale Proceeds, except for any portion of such proceeds transferred by the Purchaser on account of the Debtors to the Liquidating Trust to fund the (a) Claims Reserve as described in Section 6.02(a) of this Plan, and (b) Liquidating Trust Expense Reserve as described in Section 6.02(b) of this Plan;

(ii)   on the Effective Date, from the Debtors, contemporaneously with the payment from the Purchaser in clause (i) above, all Available Cash, if any, except for (a) the amounts transferred to the Liquidating Trust to fund the Claims Reserve and the Liquidating Trust Expense Reserve pursuant to Section 6.02 of this Plan; and (b) any amounts that constitute Retained Funds; (but only to the extent such Available Cash does not include the proceeds of any Liquidating Trust Avoidance Actions, Excluded Real Properties or Retained Claims); and

(iii)   as soon as reasonably practicable after the Effective Date, the Net Proceeds of the sale, collection or other monetization of all or each a portion of the Other Assets, except for Liquidating Trust Avoidance Actions and Excluded Real Properties, which shall be liquidated for the benefit of the Holders of Allowed Plan Carve Out Claims and Allowed General Unsecured Claims until satisfaction in full of such Allowed Claims, at which time any remaining funds in the Avoidance Actions Proceeds Reserve shall be transferred to the Pre-Petition Agent;

(iv)   as soon as reasonably practicable after the Effective Date, any remaining funds in the Claims Reserve after the payment of the Allowed Plan Carve Out Claims;

(v)   any remaining funds in the Liquidating Trust Expense Reserve on the date the Liquidating Trust is terminated; and (vi) as soon as reasonably practicable after receipt by the Liquidating Trustee, all amounts in the Undeliverable Distribution Reserve

37

~~that have been forfeited by Holders of Claims in accordance with Section 9.02(b) of this Plan~~.

The Pre-Petition Agent shall disburse the funds received pursuant to this Section 4.02 in accordance with the Senior Credit Agreement.

In the event sufficient PSA Sale Proceeds exist to pay the Allowed Claim of the Senior Secured Lenders in full, the Senior Secured Lenders shall be entitled to amend their claim as necessary to allow recovery of all other amounts to which the Senior Secured Lenders would be entitled under the Senior Lien Documents <u>and applicable law, including without limitation section 506(b) of the Bankruptcy Code,</u> which might not otherwise be set forth in their Allowed Claim, such as interest and legal fees.  In the event that the Allowed Senior Secured Claim Distribution Amounts are greater than the Allowed Senior Secured Claims and the Senior Secured Claims are paid in full, then the Liquidating Trust shall distribute the excess amount ~~to General Unsecured Creditors pro rata on account of Allowed General Unsecured Claims~~<u>in accordance with the order of priority provided in the Liquidating Trust Agreement</u>.

To the extent that the amounts received by the Pre-Petition Agent as provided herein are less than the amount of the Allowed Senior Secured Claims, the shortfall shall be a "Senior Secured Deficiency Claim" and shall be treated as an Allowed General Unsecured Claim in Classes A5, B~~5~~,<u>4,</u> and C~~5 against the Debtors; provided, however, if (i) the Committee supports, and does not object to, Confirmation of this Plan, (ii) all Classes of General Unsecured Claims in this Plan vote to accept this Plan by the requisite statutory majority provided in Bankruptcy Code § 1126(c); and (iii) the validity, extent, or priority of the Senior Secured Lenders' Liens are not challenged by the Committee, a Creditor, or any other party-in-interest, then the Senior Secured Deficiency Claim is waived and shall not become a General Unsecured Claim in any Class under this Plan.  In the event that the Allowed Senior Secured Claim Distribution Amounts are greater than the Allowed Senior Secured Claims and the Senior Secured Claims are paid in full, then the Liquidating Trust shall distribute the excess amount to General Unsecured Creditors on account of the General Unsecured Claims~~<u>4 against the Debtors</u>.

<u>(d)</u>        ~~(c)~~ Miscellaneous Secured Claims~~.~~

On or as soon as reasonably practicable after the latest to occur of (i) <u>payment in full of the Allowed Senior Secured Claims in full in Cash, (ii)</u> the Effective Date<u>,</u> or (~~iii~~<u>iii</u>) the date on which each such Miscellaneous Secured Claim becomes an Allowed Claim, each Holder of such an Allowed Claim, if any, shall receive, on account of, and in full and complete settlement, release and discharge of and in exchange for such Allowed Miscellaneous Secured Claim, at the election of the Liquidating Trustee (with the prior written consent of Pre-Petition Agent), (a) such treatment in accordance with Bankruptcy Code § 1124 as may be determined by the Bankruptcy Court; (b) payment in full, in Cash, of such Allowed Class A3, B3, and C3 Claim; (c) satisfaction of any such Allowed Class A3, B3, and C3 Claim by delivering the Collateral securing any such Claims (if such Collateral is an Other Asset and not previously sold or otherwise transferred other than to the Liquidating Trust) and paying any interest fees, costs and/or expense required to be paid under Bankruptcy Code § 506(b); or (d) providing such Holder with such treatment in accordance with Bankruptcy Code § 1129(b) as may be determined by the Bankruptcy Court.  ~~Cash~~<u>Following (and only following) payment of the Allowed Senior Secured Claims in full in cash, cash</u> payments of Allowed Claims in Classes A3, B3, and C3 shall be paid from the Claims Reserve, or if the Claims Reserve is insufficient to pay

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

all Allowed Miscellaneous Secured Claims, any shortage shall be paid from the ~~Avoidance Actions Proceeds Reserve~~Liquidating Trust.

(e)    ~~(d)~~ B Member Secured Claims~~.~~

On or as soon as reasonably practicable after the latest to occur of (i) the Effective Date or (ii) the date on which each such B Member Secured Claim becomes an Allowed Claim, each Holder of such an Allowed Claim, if any, shall receive, on account of, and in full and complete settlement, release and discharge of and in exchange for such Allowed Class A4 Claim, at the election of the Liquidating Trustee (with the prior written consent of Pre-Petition Agent), (a) such treatment in accordance with Bankruptcy Code § 1124 as may be determined by the Bankruptcy Court; (b) payment in full, in Cash, of such Allowed Class A4 Claim; (c) satisfaction of any such Allowed Class A4 Claim by delivering the Collateral securing any such Claims (if such Collateral is an Other Asset and not previously sold or otherwise transferred other than to the Liquidating Trust) and paying any interest fees, costs and/or expense required to be paid under Bankruptcy Code § 506(b); or (d) providing such Holder with such treatment in accordance with Bankruptcy Code § 1129(b) as may be determined by the Bankruptcy Court. ~~Cash~~Following (and only following) payment of the Allowed Senior Secured Claims in full in cash, cash payments of Allowed Claims in Class A4 shall be paid from the Claims Reserve, or if the Claims Reserve is insufficient to pay all Allowed Miscellaneous Secured Claims, any shortage shall be paid from the ~~Avoidance Actions Proceeds Reserve~~Liquidating Trust.

(f)    ~~(e)~~ General Unsecured Claims~~.~~

Each Holder of an Allowed General Unsecured Claim shall receive from the Liquidating Trust on or as soon as reasonably practicable after the Effective Date, their Pro Rata share of the sum of ~~(i)~~ the aggregate ~~Cash~~proceeds of any Liquidating Trust Avoidance Actions ~~Proceeds, less (ii), and~~ the proceeds of any sales of Excluded Real Properties, less any amounts ~~of the Avoidance Actions Proceeds Reserve~~ required to satisfy the Allowed Plan Carve Out Claims as provided in this Plan.

(g)    ~~(f)~~ Intercompany Claims and Interests~~.~~

On the Effective Date, all of the Intercompany Claims and Interests as of the Effective Date shall be eliminated, extinguished, cancelled, and discharged. Pursuant to Bankruptcy Code § 1129(b)(2)(C), Holders of Intercompany Claims and Interests shall not be entitled to, nor shall they receive, any distribution or retain any property or interest in property on account of such Intercompany Claims or Interests.

## ARTICLE VI
## INFORMATION REGARDING THE STALKING HORSE

### Section 6.01   The Stalking Horse SPA

Set forth below is a summary of the material terms of the Stalking Horse SPA. The description of the Stalking Horse SPA herein is intended as a summary and is qualified in its entirety by reference to the Stalking Horse SPA, a copy of which is attached hereto as **Exhibit C** and                      incorporated                      by                      reference                      herein.

39

| | |
|---|---|
| Purchase Price | The Purchase Price for the New Shares shall be an amount equal to (i) 70% of the Net Finance Receivables as of the date immediately prior to the Closing Date plus (ii) the aggregate amount of pre-petition or post-petition costs and expenses that are due and payable as of the Closing and that are required under the Confirmation Order to be paid as Cure Costs pursuant to Bankruptcy Code § 365 to cure any and all monetary defaults as of the Closing under any and all Assumed; provided that the Purchase Price shall be reduced by the aggregate amount of Cure Costs up to and including $100,000. |
| Closing | The Closing of the purchase and sale of the New WFI Shares and New Global Track Shares ~~hereunder~~ shall take place on the date that is two Business Days following the satisfaction or waiver by the requisite Parties of various enumerated conditions, including principally that all right, title and interest of each Debtor in, to or under all of the Debtor Assets shall vest in the Reorganized Debtors, free and clear of all Claims and Liens other than Permitted Post-Closing Liens; and each Reorganized Debtor, Buyer and its Subsidiaries and their respective Representatives shall be fully released and discharged with respect to any and all Claims and Liens relating to or arising under any Debtor Assets, other than Permitted Post-Closing Liens~~, as of the Closing~~. |
| Good Faith Deposit | No later than one (1) Business Day after the ~~execution of this Agreement by all Parties~~provision of the Disclosure Schedules, Buyer shall deposit with Escrow Agent in cash $2,400,000.00, which Deposit shall be held and released by the Escrow Agent in accordance with the provisions of the Escrow Agreement, among other matters. |
| ~~Representations and Warranties of Seller~~ | ~~Each of WFI and Global Track, jointly and severally, represents and warrants to Buyer, as of the date thereof and as of the Closing Date, that: (1) it has the requisite corporate existence, power and authorization to enter into and consummate the Transactions contemplated, subject to approval of the Bankruptcy Court; (2) the execution, delivery and performance of the Transactions contemplated will not require any governmental authorization other than as specified; (3) subject to various items, the entry into the transactions will not contravene or otherwise cause any conflict with any Organizational Document, orders of the Bankruptcy Court, Contracts or Permits affecting or relating to Debtors, among other matters; (4) matters concerning Debtors' capitalization, subsidiaries, financial statements, undisclosed liabilities, Contracts, Litigation, compliance with other laws, Real property, financing programs, insurance coverage, licenses and permits, employees, employee benefit matters, environmental matters, taxes, intellectual property, books and records, contracts involving Harbor, disclosures and schedules.~~ |

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

| Representations and Warranties of Seller | Each of WFI and Global Track, jointly and severally, represents and warrants to Buyer, as of the date thereof and as of the Closing Date, that: (1) it has the requisite corporate existence, power and authorization to enter into and consummate the Transactions contemplated, subject to approval of the Bankruptcy Court; (2) the execution, delivery and performance of the Transactions contemplated will not require any governmental authorization other than as specified; (3) subject to various items, the entry into the transactions will not contravene or otherwise cause any conflict with any Organizational Document, orders of the Bankruptcy Court, Contracts or Permits affecting or relating to Debtors, among other matters; (4) matters concerning Debtors' capitalization, subsidiaries, financial statements, undisclosed liabilities, Contracts, Litigation, compliance with other laws, Real property, financing programs, insurance coverage, licenses and permits, employees, employee benefit matters, environmental matters, taxes, intellectual property, books and records, contracts involving Harbor, disclosures and schedules. |
|---|---|
| Representations and Warranties of Buyers | Buyer represents and warrants to Debtors, as of the date hereof and as of the Closing Date, that: (1) it has the requisite corporate existence, power and authorization to enter into and consummate the Transactions contemplated; (2) the execution, delivery and performance of the Transactions contemplated will not require any governmental authorization other than as specified; (3) subject to various items, the entry into the transactions will not contravene or otherwise cause any conflict with any Organizational Document, orders of the Bankruptcy Court, Contracts or Permits affecting or relating to Debtors, among other matters; (4) matters concerning Buyer's Litigation and whether any matters are pending or threatened that may affect its ability to close and consummate the transactions; matters concerning Buyer's Financing, including that if Buyer entered into the Exit Financing Facility it will have sufficient cash or credit to perform all of its obligations; and that there are no finders' fees, or related items owing other than with respect to William Blair, and for which Debtors shall not be responsible. |
| Covenants of Debtors | From the date of the agreement through the closing, various covenants regarding the conduct of the business, additional financial information, assumption and rejection of various executory contracts and unexpired leases, access to information, updating of the Schedules attached to the agreement, delivery of a statement regarding the Net Finance Receivables being purchased immediately prior to the Closing, and the use of commercially reasonable efforts and other further assurances. |

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

| | | |
|---|---|---|
| Representations and Warranties of Buyers | Buyer represents and warrants to Debtors, as of the date hereof and as of the Closing Date, that: (1) it has the requisite corporate existence, power and authorization to enter into and consummate the Transactions contemplated; (2) the execution, delivery and performance of the Transactions contemplated will not require any governmental authorization other than as specified; (3) subject to various items, the entry into the transactions will not contravene or otherwise cause any conflict with any Organizational Document, orders of the Bankruptcy Court, Contracts or Permits affecting or relating to Debtors, among other matters; (4) matters concerning Buyer's Litigation and whether any matters are pending or threatened that may affect its ability to close and consummate the transactions; matters concerning Buyer's Financing, including that if Buyer entered into the Exit Financing Facility it will have sufficient cash or credit to perform all of its obligations; and that there are no finders' fees, or related items owing other than with respect to William Blair, and for which Debtors shall not be responsible. | |
| Covenants of Debtors | From the date of the agreement through the closing, various covenants regarding the conduct of the business, additional financial information, assumption and rejection of various executory contracts and unexpired leases, access to information, updating of the Schedules attached to the agreement, delivery of a statement regarding the Net Finance Receivables being purchased immediately prior to the Closing, and the use of commercially reasonable efforts and other further assurances. | |
| Conditions to Obligations of Buyers and Debtors to Closing | The obligations of each Party to consummate the Closing are subject to the satisfaction (or waiver by each Party) of numerous conditions at or prior to the Closing, including but not limited to the following: (a) consummation of the Transactions shall not have been restrained, enjoined or otherwise prohibited or made illegal by any Applicable Law; (b) all of the conditions to the effectiveness of the Plan shall have been satisfied such that the Plan shall have become effective or shall become effective simultaneously with the Closing; (c) no Proceeding instituted by any Governmental Authority shall be pending and no Order of any Governmental Authority, which seeks to or does, as applicable, restrain, enjoin or otherwise prohibit the consummation of the Plan or the Transactions or which would cause the Transactions to be rescinded following the Closing. | |
| Conditions to Obligations of Debtors to Close | The obligation of each Debtor to consummate the Closing is subject to the satisfaction (or waiver by such Debtor) of the following further conditions, among other matters: (i) Buyer shall have performed in all material respects all of its covenants and other obligations hereunder required to be performed by it on or prior to Closing and (ii) the representations and warranties of Buyer set forth in this Agreement or any other Transaction Document shall be true and correct. | |

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

| | |
|---|---|
| Conditions to Obligations of Buyers and Debtors to Closing | The obligations of each Party to consummate the Closing are subject to the satisfaction (or waiver by each Party) of numerous conditions at or prior to the Closing, including but not limited to the following: (a) consummation of the Transactions shall not have been restrained, enjoined or otherwise prohibited or made illegal by any Applicable Law; (b) all of the conditions to the effectiveness of the Plan shall have been satisfied such that the Plan shall have become effective or shall become effective simultaneously with the Closing; (c) no Proceeding instituted by any Governmental Authority shall be pending and no Order of any Governmental Authority, which seeks to or does, as applicable, restrain, enjoin or otherwise prohibit the consummation of the Plan or the Transactions or which would cause the Transactions to be rescinded following the Closing. |
| Conditions to Obligations of Debtors to Close | The obligation of each Debtor to consummate the Closing is subject to the satisfaction (or waiver by such Debtor) of the following further conditions, among other matters: (i) Buyer shall have performed in all material respects all of its covenants and other obligations hereunder required to be performed by it on or prior to Closing and (ii) the representations and warranties of Buyer set forth in this Agreement or any other Transaction Document shall be true and correct. |
| Conditions to Obligation of Buyer to Close | The obligation of Buyer to consummate the Closing is subject to the satisfaction (or waiver by Buyer) of numerous further conditions, including but not limited to:  (a) (i) each Debtor shall have performed in all material respects all of its covenants and other obligations under the Agreement and each of the other Transaction Agreements required to be performed by it on or prior to Closing and (ii) the representations and warranties of each Debtor or any other Transaction Document shall be true and correct; (b) the Bid Procedures Order, the Expense Reimbursement Order, the Disclosure Statement Order and the Confirmation Order shall have been entered by the Bankruptcy Court, each such order shall be in form and substance acceptable to Buyer and each such order shall be a Final Order and in full force and effect; (c) all Licensing Approvals shall have been received; (d) all actions by or in respect of or filings with any Governmental Authority required to permit the consummation of the Transactions shall have been taken, made or obtained; (e) the Liquidating Trustee shall have executed and delivered the Liquidating Trust Agreement, and the Liquidating Trust Agreement shall be in full force and effect; (f) the aggregate amount of Cure Costs shall not exceed $200,000; (g) WFI shall have purchased new Retail Contracts in an amount not less than the permitted amount set forth in, and consistent with, the Budget, from the date of interim Bankruptcy Court approval of the Budget through Closing; (h) as of the Closing, all Assumed Contracts shall have been assumed by the Debtors, and all other Contracts of the Debtors shall have been rejected by the Debtors or assigned to the Liquidating Trust; (i) Reorganized Debtors shall have, pursuant to the Plan, entered into an exit financing facility with a lender designated by Buyer (which facility shall have been sourced and negotiated by Buyer) on terms |

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

and conditions satisfactory to Buyer for a principal amount equal to at least the Purchase Price; (j) all Debtor Assets (other than the Excluded Assets and the Trust Assets) shall be free and clear of any Liens and Claims (other than Permitted Post-Closing Liens), including the termination of any and all security interests granted against any such assets and (ii) Buyer shall have received evidence thereof in form and substance satisfactory to it; (k) Buyer shall have conducted such due diligence on the Debtors and the WFI Subsidiary (including in respect of their respective assets and Liabilities) within the scope set forth in Schedule A of their letter of intent, and shall deem appropriate and Buyer shall be satisfied with the results of such diligence in its sole discretion; and (l) the Bankruptcy Court shall have approved the sale of the Las Vegas Property to the successful bidder in the Las Vegas Property Auction, and in the event such successful bidder is the Buyer, the consummation of the sale of the Las Vegas Property to the Buyer in accordance with the relevant purchase agreement between Buyer and WFI relating to the purchase and sale of the Las Vegas Property substantially at the same time as the Closing.

| Termination | The Agreement may be terminated at any time prior to the Closing for the following, among other reasons: (a) by mutual written agreement of WFI, Global Track and Buyer; (b) by any of WFI, Global Track or Buyer if the Closing and the effective date of the Plan shall not have occurred by March 1, 2014; and (c) by any of WFI, Global Track or Buyer if there shall be any Applicable Law that makes consummation of the Transactions illegal or otherwise prohibited or if consummation of the Transactions would violate any nonappealable final order, decree or judgment of any Governmental Authority having competent jurisdiction.

The Agreement may be terminated by Buyer if:  (a) the Expense Reimbursement Order, in form and substance reasonably acceptable to Buyer, shall not have been entered on or before November 13, 2013; (b) the Bid Procedures Order, in form and substance reasonably acceptable to Buyer, shall not have been entered on or before November 27, 2013; (c) the Disclosure Statement shall not have been approved by the Bankruptcy Court on or before November 27, 2013; (d) the Debtors shall not have filed a motion to determine Cure Costs for Assumed Contracts on or before November 27, 2013; (e) the Confirmation Order shall not have been approved by the Bankruptcy Court on or before December 23, 2013; (f) the Bankruptcy Court shall have approved any Alternative Transaction, or either WFI or Global Track have entered into any definitive agreement with respect to any Alternative Transaction which agreement has been approved by the Bankruptcy Court; (g) WFI or Global Track shall have breached any of its respective representations and warranties, or shall have failed to perform or comply with any of its respective covenants and agreements, contained in this Agreement or any Transaction Document, such that the condition shall not be satisfied, which breach or failure remains uncured (if capable of cure in Buyer's reasonable discretion) for 2 Business Days following written notice thereof from Buyer; (h) if the Debtors shall not |

have filed the motion seeking Bankruptcy Court approval of the Las Vegas Property Bid Procedures Order on or before November 20, 2013.

The Agreement may be terminated by WFI or Global Track if: (a) the Bankruptcy Court shall have approved any Alternative Transaction, or WFI or Global Track shall have entered into any definitive agreement with respect to any Alternative Transaction which agreement has been approved by the Bankruptcy Court; (b) Buyer shall have breached any of their respective representations or warranties or failed to perform or comply with any of their respective covenants or agreements contained in the Agreement; (c) any condition shall have become incapable of being satisfied by the Outside Date; or (d) Buyer shall not have deposited the Deposit with the Escrow Agent within two (2) Business Day after the date of execution of this Agreement.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

1
2
2
3
3
4
4
5
5
6
6
7
7
8
8
9
9
10
10
11
11
12
12
13
13
14
14
15
15
16
16
17
17
18
18
19
19
20
20
21
21
22
22
23
23
24
24
25
25
26
26
27
27
28
28

**LARSON & ZIRZOW, LLC**
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

| Termination | The Agreement may be terminated at any time prior to the Closing for the following, among other reasons: (a) by mutual written agreement of WFI, Global Track and Buyer; (b) by any of WFI, Global Track or Buyer if the Closing and the effective date of the Plan shall not have occurred by March 1, 2014; and (c) by any of WFI, Global Track or Buyer if there shall be any Applicable Law that makes consummation of the Transactions illegal or otherwise prohibited or if consummation of the Transactions would violate any nonappealable final order, decree or judgment of any Governmental Authority having competent jurisdiction.

The Agreement may be terminated by Buyer if: (a) the Expense Reimbursement Order, in form and substance reasonably acceptable to Buyer, shall not have been entered on or before November 13, 2013; (b) the Bid Procedures Order, in form and substance reasonably acceptable to Buyer, shall not have been entered on or before November 27, 2013; (c) the Disclosure Statement shall not have been approved by the Bankruptcy Court on or before November 27, 2013; (d) the Debtors shall not have filed a motion to determine Cure Costs for Assumed Contracts on or before November 27, 2013; (e) the Confirmation Order shall not have been approved by the Bankruptcy Court on or before December 23, 2013; (f) the Bankruptcy Court shall have approved any Alternative Transaction, or either WFI or Global Track have entered into any definitive agreement with respect to any Alternative Transaction which agreement has been approved by the Bankruptcy Court; (g) WFI or Global Track shall have breached any of its respective representations and warranties, or shall have failed to perform or comply with any of its respective covenants and agreements, contained in this Agreement or any Transaction Document, such that the condition shall not be satisfied, which breach or failure remains uncured (if capable of cure in Buyer's reasonable discretion) for 2 Business Days following written notice thereof from Buyer; (h) if the Debtors shall not have filed the motion seeking Bankruptcy Court approval of the Las Vegas Property Bid Procedures Order on or before November 20, 2013.

The Agreement may be terminated by WFI or Global Track if: (a) the Bankruptcy Court shall have approved any Alternative Transaction, or WFI or Global Track shall have entered into any definitive agreement with respect to any Alternative Transaction which agreement has been approved by the Bankruptcy Court; (b) Buyer shall have breached any of their respective representations or warranties or failed to perform or comply with any of their respective covenants or agreements contained in the Agreement; (c) any condition shall have become incapable of being satisfied by the Outside Date; or (d) Buyer shall not have deposited the Deposit with the Escrow Agent within two (2) Business Day after the date of execution of this Agreement. |
|---|---|

Capitalized terms used but not defined in this Section 6.01 and defined in the Stalking Horse SPA have the meaning given them in the Stalking Horse SPA.

Importantly, the Purchase Price is proposed as a percentage of the net finance receivables in WFI's loan portfolio because, as previously noted, the amount of financed receivables in the

portfolio has been on a continuing decline over the last few months--both before the Petition Date and during the pendency of the Bankruptcy Cases themselves--because new accounts are not permitted to be purchased at the same rate as old accounts are running off from the portfolio, whether through being satisfied or otherwise ineligible.  Moreover, given that the Stalking Horse has to make an offer to purchase the portfolio several months or more in advance of the purchase being approved by the Bankruptcy Court and closing, it is impossible to know exactly how much in net financed receivables will remain as of the anticipated closing in early January 2014, and thus an exact final number is not known.

Debtors project that after the first week of January 2014, which is the projected closing, the following approximate borrowing based on its existing loan with the Senior Secured Lender:

| Beginning Line of Credit Balance | $27.8 million |
|---|---|
| Payment per Cash Collateral Stipulation | $1.0 million |
| Ending Line of Credit | $26.8 million |
| Cumulative Cash Balance | $1.8 million |
| Line of Credit Less Cash Balance | $25 million |
| | |
| Gross Finance Receivables Ending Balance | $36.1 million |
| Total Ineligibles[4] | $7.3 million |
| Eligible Finance Receivables | $28.7 million |
| Advance Rate (subject to modifier) | 78.30% |
| Net Eligible Receivables | $22.5 million |
| Principal Portfolio Balance (Gross Receivables – Unearned Finance Charges) | $34.5 million |

The existing line balance to the Senior Secured Lender hereinabove is exclusive of various fees, costs and expenses that may be owing under the Senior Lien Documents and also prior to factoring in the effects of the anticipated $500,000 immediate paydown pursuant to the Cash Collateral Amendment, and the application of proceeds on the sale of the Ineligible Accounts as previously discussed.

The Stalking Horse SPA, however, only contemplates a purchase of the performing accounts in WFI's portfolio, not the Ineligible Accounts, and specifically, a Purchase Price equal to 70% of the net financed receivables (as defined therein).  As such, taking the roughly $34.5 million principal portfolio balance results in an approximate Purchase Price under the Stalking Horse SPA of $24.15 million.  For the avoidance of doubt, the foregoing is a projected estimate only, and is subject to change based on the actual status of the portfolio.

Finally, it is noteworthy that the Stalking Horse SPA also contemplates the assumption of a substantial number of executory contracts between WFI and the individual dealers in its dealer network throughout the United States.  Although a buyer may decide to elect not to assume the same number or indeed any such dealer agreements, a buyer's decision not to assume dealer agreements in a similar fashion will likely leave the Estates with no choice but to reject such agreements, thus potentially resulting in millions of dollars in additional general unsecured claims for rejection damages against the Estates related to unpaid dealer reserves, and thus

---

[4] Includes $1.6 million in projected unearned interest finance charges, a loan level discount of a projected $.1 million, dealer reserves of roughly $4 million, and an approximate $1.6 million in other ineligible accounts.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

significantly diluting any net recovery that may otherwise be available for existing unsecured creditors. For example, as of the projected closing of the Stalking Horse SPA, Debtors project that they will owe roughly $4 million in dealer reserves. Although such claims are subject to the terms and conditions of the various dealer agreements, including any right of setoff and other contractual remedies the Debtors may have against the dealers arising therefrom, there is a significant possibility of substantial additional general unsecured claims arising if the dealer agreements are not assumed by a proposed purchaser.

### ARTICLE VII
### PLAN EXECUTION AND IMPLEMENTATION

#### Section 7.01    Sale of the Acquired Property

The Plan contemplates the sale of the Acquired Property to a third party. The Acquired Property generally includes, but is not limited to, the stock of WFI, and thus also its main, performing loan portfolio. To effect this, the Debtors Filed the Bid Procedures and Sale Motion which seeks, *inter alia*, to approve the Stalking Horse SPA and to establish the Auction. On November 25, 2013, the Bankruptcy Court entered the Bid Procedures Order, which established December 13, 2013 as the deadline for Potential Bidders to submit bids for the Acquired Property, and established December 16, 2013 as the date for the Auction. In connection with the Auction, the Debtors have identified the Stalking Horse as a potential purchaser for the New Interests. If no timely Qualifying Bid (as defined in the Bid Procedures) (other than the Stalking Horse bid) is received by the Bid Deadline (as defined in the Bid Procedures), the Debtors shall not hold an Auction and instead shall request at the Sale Hearing that the Bankruptcy Court approve the Stalking Horse SPA as the Purchase and Sale Agreement and declare the Stalking Horse to be the Successful Bidder/Bid. If additional Qualified Bidders are identified, at the conclusion of the Auction, the Debtors, with the consent of the Pre-Petition Agent, will seek Bankruptcy Court approval to sell the Acquired Property pursuant to the Purchase and Sale Agreement to the Successful Bidder, Free and Clear. The Sale Order and/or the Confirmation Order shall contain specific authority for the Debtors to comply with the Purchase and Sale Agreement as set forth above.

#### Section 7.02    Sale of the Ineligible Accounts

The non-performing accounts in Debtors' portfolio include various accounts that are ineligible and thus excluded from the borrowing base calculation under its existing credit facility, and also which are thus are excluded from and not sold pursuant to the Stalking Horse SPA. These accounts generally include the following: (a) finance receivables charged-off the balance sheet as uncollectible; (b) finance receivables where the obligor has filed for bankruptcy; and (c) finance receivables over 90 days past due (collectively, the "Ineligible Accounts"). Specifically, the chargeoff accounts have a balance of approximately $14.2 million presently, and Debtors believe they can obtain 3-5% net recovery for such accounts if sold to an appropriate buyer, and thus approximately $400,000 to $700,000 for those accounts. The bankruptcy accounts have a balance of $110,000 presently, and Debtors believe they can obtain 30-45% net recovery on those accounts, and thus approximately $33,000 to $49,500 for those accounts. Finally, the delinquent receivables have a balance of $1.2 million, and Debtors believe they can obtain 30-35% net recovery on those accounts, and thus approximately $400,000.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

Debtors have solicited offers from various parties for the sale of the Ineligible Accounts. Given the significant differences and likely recoveries on the Ineligible Accounts as compared with the generally performing accounts that are part of the Acquired Property, there are different types of buyers for the sale of each type of account, and indeed, different buyers among the various types of Ineligible Accounts as well. Given the existing Stalking Horse SPA, to the extent a buyer would want to make an offer for the Acquired Property and one or more of the Ineligible Accounts, such buyer would need to allocate their bid in order to allow for a true comparison of its purchase price as compared with any other offers for the accounts, whether under the Stalking Horse SPA or offers for the Ineligible Accounts. Moreover, the sale of the Ineligible Accounts will be conducted at a different time and apart from the Auction of the Acquired Property under the Stalking Horse SPA, and the proposed sale of the Las Vegas Property.

Debtors intend to file a series of motions in early December 2013 requesting court approval to sell the Ineligible Accounts, subject to overbid, with such sales being separate and apart from the sale of its main, performing portfolio proposed to be sold pursuant to the Purchase and Sale Agreement. Given that the Ineligible Accounts can change in value significantly and in a short time, and given further that offers from prospective buyers often must be accepted quickly, otherwise the underlying economics of the offer may change, Debtors intend on seeking such approvals quickly, and subject to the consent of the Senior Secured Lender and in consultation with the Committee.

**Section 7.03**  **Means for Implementation**

(a)    Application of PSA Sale Proceeds and Available Cash

(i)    *Claims Reserve Funding*. Contemporaneously with the Closing, the Effective Date and the delivery of the PSA Sale Proceeds to the Pre-Petition Agent described below in an amount sufficient to pay the Allowed Senior Secured Claims in full in Cash, the Debtors will transfer from their Available Cash (other than Retained Funds) an amount sufficient to fund the Claims Reserve for the benefit of the Holders of Allowed Plan Carve Out Claims (and, to the extent of any surplus from such reserveClaims Reserve after the payment of such Allowed Claims, for the benefit of the Holders of Senior Secured Claims) to the Liquidating Trust. If the amount of the Debtors' Available Cash at the time of the Closing is insufficient to fund the Claims Reserve in full, then the Purchaser shall transfer a portion of the PSA Sale Proceeds (in an amount equal to such insufficiency) to the Liquidating Trust (rather than being transferred to the Pre-Petition Agent as described below) to complete the funding of the Claims Reserve.

(ii)    *Liquidating Trust Funding*. If there is additional Available Cash after the Claims Reserve is fundedhas been funded and the Allowed Senior Secured Claims have been paid in full in cash, then the Debtors will transfer an amount sufficient to fundany remaining Available Cash to the Liquidating Trust Expense Reserve in full from their Available Cash (other than Retained Funds) to the Liquidating Trust. If the amount of the Debtors' Available Cash after funding the Claims Reserve is less than the Liquidating Trust Expense Reserve, the Purchaser shall transfer a portion of the PSA Sale Proceeds equal to the shortfall to the Liquidating Trust (rather than being transferred to the Pre-Petition Agent as described below) to fund the Liquidating Trust

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

1
2
3
4
4
5
6
6
7
7
8
9
10
10
11
11
12
12
13
13
14
14
15
15
16
16
17
17
18
19
19
20
20
21
22
22
23
23
24
24
25
25
26
26
27
27
28
28

Expense Reserve to be distributed per the order of priority in the Liquidating Trust Agreement.

(iii)    *Payment of Allowed Senior Secured Claim*. Contemporaneously with and as part of the Closing and the Effective Date, the Purchaser shall transfer to the Pre-Petition Agent all of the PSA Sale Proceeds (including the release of any deposit paid pursuant to the Purchase and Sale Agreement or Bid Procedures) and any subsequent adjustments or payments received from the Purchaser pursuant to the Purchase and Sale Agreement or the Sale Order, less (i) any portion of the PSA Sale Proceeds transferred by the Purchaser to the Liquidating Trust to fund the Claims Reserve for a shortfall in the Debtors' Available Cash described above; and (ii) any portion of the PSA Sale Proceeds transferred by the Purchaser to the Liquidating Trust to fund the Liquidating Trust Expense Reserve for a shortfall in the Debtors' Available Cash described above. In the event that the Allowed Senior Secured Claims are paid in full, excess amounts of the PSA Sale Proceeds shall be transferred to the Liquidation Trustee for the benefit of General Unsecured Creditors.

(b)    Available Cash. After the Claims Reserve and Liquidating Trust Expense Reserve are funded, any remaining Available Cash (other than proceeds of Excluded Real Properties) shall be transferred to the Pre-Petition Agent for the benefit of the Senior Secured Claim. Trust to be distributed per the order of priority in the Liquidating Trust Agreement.

(b)    (c) Other Assets. Any Other Assets (excluding Liquidating Trust Avoidance Actions and except as otherwise provided in the Purchase and Sale Agreement or in any purchase and sale agreement for the Excluded Real Properties), shall revest or vest in the appropriate Reorganized Debtor and shall be transferred to the Liquidating Trust for the benefit of Holders of Allowed Senior Secured Claims. Except as otherwise provided in the Purchase and Sale Agreement, any assets received by the Liquidating Trust after the Effective Date of the Plan (other than the proceeds of the Liquidating Trust Avoidance Actions and Excluded Real Properties) shall also be Other Assets and transferred to the Liquidating Trust for the benefit of the Holders of Allowed Senior Secured Claims.

(c)    (d) Avoidance Actions. All Liquidating Trust Avoidance Actions are transferred to the Liquidating Trust for the benefit of the Holders of Allowed General Unsecured Claims in Classes A6, B6, and C6. to be distributed per the order of priority in the Liquidating Trust Agreement.

(d)    (e) Deemed Consolidation of Debtors for Plan Purposes Only. Subject to the occurrence of the Effective Date, the Debtors shall be deemed consolidated under the Plan solely for the limited purposes of distribution under the Plan.

(e)    (f) Creation of Liquidating Trust. As set forth in Article VII of the Plan, a Liquidating Trust will be created with certain Liquidating Trust Assets and for the distribution and delivery of said assets in accordance with the terms of the Plan.

(f)    (g) Governance Documents. On the Effective Date, the Governance Documents of Cano Debtors shall be amended and restated in substantially the form set forth in the Plan Supplement.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

51

(g)    (h) Directors and Officers. On the Effective Date, (a) the positions of the current directors, or in the case of a governing body created by a partnership agreement, limited liability company agreement or similar agreement, the members of such governing body (such persons and the corporate directors collectively, the "Governors") of each Debtor shall be eliminated, and each Governor shall be terminated (without the necessity of further action); (b) to the fullest extent permitted by applicable law, the rights, powers, and duties of the Governors of each Debtor (that is not a Debtor whose Interests have been sold to the Purchaser pursuant to the Sale Order and/or the Confirmation Order) that has a Governor shall vest in the Liquidating Trustee and the Liquidating Trustee or its designee shall be the presiding officer and the sole Governor of each such Reorganized Debtor; and (c) to the fullest extent permitted by applicable law, the Governors of each Debtor whose Interests have been sold to the Purchaser pursuant to the Sale Order and/or the Confirmation Order shall be selected by the Purchaser.  The Liquidating Trustee shall make all determinations with respect to employment of any other directors, officers, managers and employees of each such Debtor described in clause (b) on and after the Effective Date.

(h)    (i) Cancellation of Existing Secured Claims. Except as otherwise provided herein and in accordance with the Purchase and Sale Agreement, upon the Effective Date, any Lien encumbering the Acquired Property shall be deemed released and the Holder of such Allowed Secured Claim shall deliver to the applicable Debtor (or Reorganized Debtor) any Collateral or other property of any Debtor (or Reorganized Debtor) held by such Holder, and any termination statements, instruments of satisfactions, or releases of all security interests with respect to its Allowed Secured Claim that may be reasonably required in order to terminate any related financing statements, mortgages, mechanic's liens, or *lis pendens*.

(i)    (j) Vesting of the Vested Assets. Except as otherwise set forth in the Plan, the Las Vegas Property Sale Order, the Sale Order Orders, and/or the Confirmation Order, on the Effective Date, (a) the Vested Assets shall vest in the applicable Reorganized Debtors Free and Clear; and (b) the assumed contracts shall be assumed by the applicable Debtors as provided in Article X of the Plan and vest in the applicable Reorganized Debtor(s).  Except as otherwise set forth in the Plan or the Purchase and Sale Agreement from and after the Effective Date, the Reorganized Debtors shall perform and pay when due liabilities under, or related to the ownership or operation of, the Vested Assets and the Liquidating Trust shall not be responsible for any such liabilities.  The Reorganized Debtors may operate free of any restrictions of the Bankruptcy Code.

(j)    (k) Cancellation of Interests. On the Effective Date, all Interests in the Debtors (including those Interests held in Treasury by any of the Debtors) shall be terminated and extinguished and the certificates that previously evidenced ownership of those interests shall be deemed canceled (all without further action by any person or the Bankruptcy Court) and shall be null and void and such certificates shall evidence no rights or interests in any of the Debtors.

(k)    (l) Issuance of New Interests/New WFIN Stock. On the Effective Date, after the Interests are cancelled, the Reorganized Global Track shall issue the New Global Track Stock to Purchaser and Reorganized WFI shall issue the New WFI Stock to the Purchaser in accordance with the Purchase and Sale Agreement, and in each case such shares shall be Free and Clear.  The New WFI Stock shall constitute one hundred percent of the authorized and issued equity interest in the Reorganized WFI.  The New Global Track Shares shall constitute one hundred percent of the limited liability company interests in Reorganized Global Track.  On the Effective Date there

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

52

shall not be issued, reserved for issuance or outstanding any (i) shares of capital stock or other voting or other securities of, or ownership interests in, any Reorganized Debtor, other than the New Interests issued to Purchaser at the Closing, (ii) securities of any Reorganized Debtor convertible into or exchangeable for shares of capital stock or other voting or other securities of, or ownership interests in, any Reorganized Debtor, (iii) warrants, calls, options or other rights to acquire from any Reorganized Debtor, or other obligation of any Reorganized Debtor to issue, any capital stock, voting or other securities or ownership interests, or securities convertible into or exchangeable for capital stock or voting or other securities of, or ownership interests in, any Reorganized Debtor or (iv) restricted shares, stock appreciation rights, performance units, contingent value rights, "phantom" stock or similar securities or rights that are derivative of, or provide economic benefits based, directly or indirectly, on the value or price of, any capital stock of or voting or other securities of, or ownership interests in, any Reorganized Debtor.

On the Effective Date, after the Interests are cancelled, Dissolved WFIN shall issues new shares in Dissolved WFIN  pursuant to section 1145 of the Bankruptcy Code to the Liquidating Trust and such shares shall be Free and Clear provided that the termination of Interests in Dissolved WFIN; ~~pursuant to Section 6.15 and~~ the issuance of the shares ~~pursuant to this Section 6.16~~ are each intended to qualify as a "reorganization" under Section 368(a)(1)(E) of the Internal Revenue Code; *provided*, *further*, that the termination of Interests ~~pursuant to Section 6.15~~ are each intended to qualify as a "contribution" under Section 721 of the Internal Revenue Code.

(l)    ~~(m)~~ Exemption from Registration. The New Interests and New WFIN Stock shall be exempt from registration under any federal (including the Securities Act), state or local law, rule or regulation pursuant to Bankruptcy Code § 1145 or other applicable law requiring registration before the offering, issuance, distribution or sale of securities; provided that if the issuance of the New Interests or New WFIN Stock, as applicable, does not qualify for an exemption under Bankruptcy Code § 1145, the New Interests and New WFIN Stock, as applicable, shall be issued in a manner, which qualifies for any other available exemption from registration, whether as a private placement under Rule 506 of the Securities Act, Section 4(2) of the Securities Act, and/or the safe harbor provisions promulgated thereunder.  In connection with the confirmation of the Plan, the Debtors intend to seek an order from the Bankruptcy Court to the effect that the issuance of the New Interests and New WFIN Stock is exempt from registration under the Securities Act and any applicable laws.

(m)    ~~(n)~~ Authorization for ~~Transaction~~Transactions. On the Effective Date or as soon as reasonably practicable thereafter, the Debtors, and the Reorganized Debtors may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan or the ~~Transaction~~Transactions.

(n)    ~~(o)~~ Preservation of Rights of Action; Settlement. Except to the extent such rights, Claims, Causes of Action, defenses, and counterclaims are otherwise disposed of in the Plan, the Purchase and Sale Agreement, the Las Vegas Property Purchase Agreement, or are expressly and specifically released in connection with the Plan, the Las Vegas Property Sale Order, the Sale Order and/or Confirmation Order, or in any settlement agreement approved during the ~~Chapter 11~~Bankruptcy Cases, or in any contract, instrument, release, indenture or other agreement entered into in connection with the Plan, in accordance with Bankruptcy Code § 1123(b): (1) any and all rights, Claims, Causes of Action (including Liquidating Trust Avoidance Actions, but excluding Retained Claims), defenses, and counterclaims of or accruing to the Debtors or their Estates shall be transferred to the Liquidating Trust, whether or not litigation relating thereto is pending on the

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
— Tel: (702) 382-1170   Fax: (702) 382-1169 —

Effective Date, and whether or not any such rights, Claims, Causes of Action, defenses and counterclaims have been Scheduled, listed or referred to in the Plan, the Bankruptcy Schedules, or any other document Filed with the Bankruptcy Court; and (2) the Liquidating Trust does not waive, relinquish, or abandon (nor shall it be estopped or otherwise precluded from asserting) any right, Claim, Cause of Action, defense, or counterclaim that constitutes property of the Estates or alter the Liquidating Trust's right to commence, prosecute, defend against, settle, and realize upon any rights, Claims, Causes of Action, defenses, or counterclaims that a Debtor has, or may have, as of the Effective Date.  The Liquidating Trust may, subject to the Plan and the Liquidating Trust Agreement, commence, prosecute, defend against, settle, and realize upon any rights, Claims, Causes of Action, defenses, and counterclaims in its sole discretion, in accordance with what is in the best interests, and for the benefit, of the beneficiaries of the various assets in the Liquidating Trust.

(p) ~~Employee Benefit Plans.  Before the Effective Date, all Employee Benefit Plans shall be terminated in accordance with the applicable provisions of the state and federal law.  The Purchaser and the Reorganized Debtors shall have no liability for any obligations under any Employee Benefit Plan.~~

(o) ~~(q)~~ Treatment of Executory Contracts and Unexpired Leases. Pursuant to the Purchase and Sale Agreement and as contemplated by the Bid Procedures and Sale Motion, the Debtors will provide notice to certain counterparties to executory contracts and unexpired leases advising them that their respective executory contracts and unexpired leases may be assumed and, if applicable, assigned.  In accordance with the Bid Procedures, as part of the Plan Supplement, the Debtors will File a list of the Desired 365 Contracts along with the proposed Cure Costs.  Any party taking exception to the proposed Cure Costs shall, in accordance with the Bid Procedures Order, File a detailed statement setting forth its reason and the Bankruptcy Court shall determine the proper amount of the Cure Costs at the Combined Hearing.  The fixing of the Cure Costs shall constitute the Debtors' right to assign the Desired 365 Contract lease to the Purchaser under Bankruptcy Code §§ 365(c) and (f).

(p) ~~(r)~~ Retention of Jurisdiction. Under the Plan, notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date of the Plan, the Bankruptcy Court shall retain jurisdiction, to the fullest extent legally permitted, over the Bankruptcy Case, all proceedings arising under, arising in or related to the Bankruptcy Case, the Confirmation Order, the Plan and administration of the Liquidating Trust.  Some specific types of disputes and proceedings that the Bankruptcy Court shall retain jurisdiction over are identified in ~~Arteile~~Article XIV of this Disclosure Statement.

(q) ~~(s)~~ Liquidating Trustee Closing of the ~~Chapter 11~~Bankruptcy Cases. When (a) the Bankruptcy Court has adjudicated all applications by professionals for final allowances of compensation for services and reimbursement of expenses and the issuance of a Final Order for each application and the payment of all amounts payable thereunder; (b) all Disputed Claims filed against a Debtor have become Allowed Claims or have been Disallowed by Final Order or otherwise pursuant to this Plan, and all appropriate Plan Distributions have been made pursuant to the Plan, the Liquidating Trustee shall seek authority from the Bankruptcy Court to close such Debtor's Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

**ARTICLE VIII**
**LIQUIDATING TRUST AND LIQUIDATING TRUSTEE**

**Section 8.01    Creation of the Liquidating Trust**

The Liquidating Trust, duly organized under the laws of Nevada, is created for the purpose of liquidating the Liquidating Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d) and shall be governed by the Liquidating Trust Agreement. The Liquidating Trust Agreement shall conform to the terms of the Plan, and to the extent that Liquidating Trust Agreement is inconsistent with the Plan, the terms of the Plan shall govern. The Liquidating Trustee will file all federal income tax returns for the Liquidating Trust as a grantor trust pursuant to Section 671 of the Internal Revenue Code of 1986 and the Treasury Regulations promulgated thereunder.

**Section 8.02    Funding of *Res* of Trust**

On the Effective Date, all of the Liquidating Trust Assets shall be transferred and assigned to the Liquidating Trust, and the Liquidating Trust shall be in possession of, and have title to, all the Liquidating Trust Assets.  The conveyances of all Liquidating Trust Assets shall be accomplished pursuant to the Plan, the Sale ~~Order~~Orders, and/or the Confirmation Order.  The Debtors shall convey, transfer, assign and deliver the Liquidating Trust Assets Free and Clear, except that the Liens of the Senior Secured Lender shall attach to the ~~SPA Sale Proceeds,~~Liquidating Trust Assets other than ~~any portion of such proceeds transferred by the Purchaser to~~ the Liquidating Trust ~~for shortfalls as described in the Plan~~Avoidance Actions and the Excluded Real Properties.  For all federal income tax purposes, all Persons (including, without limitation, the Debtors, the Liquidating Trustee, and the beneficiaries of the Liquidating Trust) will treat the transfer and assignment of the Liquidating Trust Assets to the Liquidating Trust for the benefit of the beneficiaries of the Liquidating Trust as (a) a transfer of the Liquidating Trust Assets directly to the beneficiaries of the Liquidating Trust followed by (b) the transfer by the beneficiaries of the Liquidating Trust to the Liquidating Trust of the Liquidating Trust Assets.  The Liquidating Trust will be treated as a grantor trust for federal tax purposes and, to the extent permitted under applicable law, for state and local income tax purposes.  The beneficiaries of the Liquidating Trust will be treated as the grantors and owners of their Pro Rata portion of the Liquidating Trust Assets for federal income tax purposes.

**Section 8.03    The Liquidating Trustee**

The Liquidating Trustee shall be appointed by mutual consent of the Debtors, the Committee and Pre- Petition Agent.  The Liquidating Trustee shall retain and have all the rights, powers and duties necessary to carry out his or her responsibilities under the Plan and the Liquidating Trust Agreement, and as otherwise provided in the Sale ~~Order~~Orders and/or the Confirmation Order.  However, the Liquidating Trustee shall not be obligated to review, investigate, evaluate, analyze, or object to Fee Applications or Professional Fee Claims relating to services rendered and expenses incurred before the Effective Date.  The Plan Supplement shall designate the Person who will initially serve as the Liquidating Trustee.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

55

**Section 8.04    Retention of Professionals**

The Liquidating Trustee shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Liquidating Trustee, are necessary to assist the Liquidating Trustee in the performance of his or her duties. The reasonable fees and expenses of such professionals shall be paid by the Liquidating Trust upon the monthly submission of statements to the Liquidating Trustee. The payment of the reasonable fees and expenses of the Liquidating Trustee's retained professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court except as otherwise provided in the Plan. Professionals of, among others, the Debtors and the Committee (if any), shall be eligible for retention by the Liquidating Trustee on a special counsel basis, and former employees of the Debtors shall be eligible for retention by the Liquidating Trust and Liquidating Trustee.

The reasonable fees and expenses incurred in connection with services performed by the Liquidating Trust relating to the administration and/or liquidation of General Unsecured Claims and/or Liquidating Trust Avoidance Actions shall be paid by the Liquidating Trust solely from the Liquidating Trust Expense Reserve and amounts otherwise distributable to Holders of Allowed General Unsecured Claims. Before each payment of the Liquidating Trustee's fees, fees and expenses of the Liquidating Trustee's retained professionals and other costs, expenses and liabilities of the Liquidating Trust, the Liquidating Trustee shall provide written notice thereof to the Pre-Petition Agent in such detail and with such support as the Pre-Petition Agent may reasonably request. If the Pre-Petition Agent do not object to the payment of such amounts within five (5) Business Days after receipt of such notice, the Liquidating Trustee may make such payments. If any Pre- Petition Agents objects and the objecting Pre-Petition Agent(s) and the Liquidating Trustee cannot agree on the appropriate amount of such payment, then the Liquidating Trustee may not make such payment unless he or she obtains an order from the Bankruptcy Court approving such payment.

**Section 8.05    Compensation of the Liquidating Trustee**

The Liquidating Trustee's compensation, on a post-Effective Date basis, shall be disclosed in the Plan Supplement. The payment of the fees of the Liquidating Trustee and any professionals retained by the Liquidating Trustee shall be made by the Liquidating Trust in accordance with the provisions of the Plan and the Liquidating Trust Agreement.

**Section 8.06    Liquidating Trust Expenses**

All costs, expenses and obligations incurred by the Liquidating Trustee in administering this Plan and the Liquidating Trust, or in any manner connected, incidental or related thereto shall come from amounts distributable to the appropriate beneficiaries for whose benefit such expenses or obligations were incurred. For example, reasonable costs incurred in resolving Liquidating Trust Avoidance Actions and General Unsecured Claims shall be paid first from the Liquidating Trust Expense Reserve and then from amounts otherwise distributable to Holders of Allowed General Unsecured Claims, and expenses incurred in monetizing Other Assets shall be paid first from the Liquidating Trust Expense Reserve and then from funds otherwise distributable to the Senior Secured Lender.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

### Section 8.07    Reserves Administered by the Liquidating Trust

On the Effective Date, the Liquidating Trustee ~~will~~shall establish ~~and fund four Distribution Reserve Accounts:    the Undeliverable Distribution Reserve,~~ the Claims Reserve, ~~the Liquidating Trust Expense Reserve, and the Avoidance Action Proceeds Reserves as set forth in Article IX of the Plan~~and such other accounts as may be or become necessary.

### Section 8.08    Liability; Indemnification

The Liquidating Trustee shall not be liable for any act or omission taken or omitted to be taken in his or her capacity as the Liquidating Trustee, other than acts or omissions resulting from such Person's willful misconduct, gross negligence or fraud.

### Section 8.09    Termination of the Liquidating Trust

The duties, responsibilities and powers of the Liquidating Trustee shall terminate after all Liquidating Trust Assets have been fully resolved, abandoned or liquidated and the Liquidating Trust Assets have been distributed in accordance with the Plan and the Liquidating Trust Agreement.  Except in certain circumstances, the Liquidating Trust shall terminate no later than three (3) years after the Effective Date.

### Section 8.10    Liquidating Trustee Authority

(a)    Compromise of Claims. The Liquidating Trust shall have full authority to compromise Claims or settle interests without supervision by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan, the Confirmation Order, and the Liquidating Trust Agreement. As to any Claims that may arise or exist after the Effective Date relating to or arising out of the Purchase and Sale Agreement, the Liquidating Trustee shall not compromise or resolve any such Claims without the express written consent of the Pre-Petition Agent.

(b)    Payment of Professional Fees. The Liquidating Trust may, without application to or approval by the Bankruptcy Court, pay fees that it incurs after the Effective Date for professional fees and expenses.  Before settling or compromising any Plan Carve Out Claims or interests related thereto, the Liquidating Trustee shall provide written notice to the Pre-Petition Agent of the terms and conditions of the proposed settlement or compromise.

(c)    Compliance with Tax Requirements/Allocations. In connection with the Plan, to the extent applicable, the Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements.

(d)    Request for Expedited Tax Review. The Liquidating Trustee shall have the right to request an expedited determination under Bankruptcy Code § 505(b) with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

(e)    Access and Preservation of Records. The Liquidating Trustee shall be granted reasonable access during normal business hours with prior notice to, among other things the offices, books, and records relating to the Debtors or any of their businesses or operations that are

57

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

in possession of the Purchaser and the Purchaser shall preserve records all to the extent and on the terms of the Stalking Horse SPA.

## I. ARTICLE IX
## PROVISIONS GOVERNING DISTRIBUTIONS GENERALLY

### Section 9.01    Timing and Delivery of Distributions

The Liquidating Trust Agreement shall govern distributions from the Liquidating Trust and shall include the terms of the other sections of Article IX of the Plan and other relevant provisions of the Plan.

### Section 9.02    Method of Cash Distributions

Any Cash payment to be made pursuant to the Plan may be made by Cash, draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law at the option of and in the sole discretion of the Liquidating Trustee, except for Cash payments made to the Pre-Petition Agent, which shall be made by wire transfer or such other method as shall be specified by such Persons.

### Section 9.03    Failure to Negotiate Checks

Checks issued in respect of distributions under the Plan shall be null and void if not negotiated within sixty (60) days after the date of issuance. The Liquidating Trustee shall hold any amounts returned in respect of such non-negotiated checks. The Holder of an Allowed Claim with respect to which such check originally was issued shall make requests for reissuance for any such check directly to the Liquidating Trustee. All amounts represented by any voided check will be held until the later of one (1) year after (x) the Effective Date or (y) the date that a particular Claim is Allowed by Final Order, and all requests for reissuance by the Holder of the Allowed Claim in respect of a voided check are required to be made before such date. Thereafter, all such amounts shall be deemed to be Unclaimed Property, and all Claims in respect of void checks and the underlying distributions shall be forever barred, estopped and enjoined from assertion in any manner against the Liquidating Trustee.

### Section 9.04    Fractional Dollars

Notwithstanding any other provision of the Plan, Cash distributions of fractions of dollars will not be made; rather, whenever any payment of a fraction of a dollar would be called for, the actual payment made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down. To the extent that Cash remains undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash shall be treated as Unclaimed Property pursuant to Section 9.03 of the Plan.

### Section 9.05    Compliance with Tax Requirements

In connection with each distribution with respect to which the filing of an information return (such as an Internal Revenue Service Form 1099 or 1042) or withholding is required, the Liquidating Trustee shall file such information return with the Internal Revenue Service and provide any required statements in connection therewith to the recipients of such distribution or effect any such withholding and deposit all moneys so withheld as required by law. With respect

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

to any Person from whom a tax identification number, certified tax identification number or other tax information required by law has not been received by the Liquidating Trustee within thirty (30) days from the date of such request (the "Initial Request"), the Liquidating Trustee may, at his/her option, withhold the amount required to such Person and decline to make such distribution until the information is received.  Failure of any Person to provide the information requested within six months of the Initial Request shall result in the forfeit of the affected distribution and the treatment of said distribution as Unclaimed Property.

**Section 9.06    *De Minimis* Distributions**

No Cash payment of less than twenty-five ($25.00) dollars shall be made to the Holder of any Claim on account of its Allowed Claim.

**Section 9.07    Setoffs**

Except for any Claim that is Allowed in an amount set forth in the Plan (including the Allowed Senior Secured Claim), the Debtors or the Liquidating Trustee may, but shall not be required to, set off against any Claims and the payments or distributions to be made pursuant to the Plan in respect of such Claims, any and all debts, liabilities and claims of every type and nature whatsoever that the Estate or a Debtor may have against the Holder of any Claim, but neither the failure to do so nor the Allowance of any such Claims, whether pursuant to the Plan or otherwise, shall constitute a waiver or release by any Debtor of any such claims the Debtor may have against such Holder of any Claim, and all such claims shall be reserved for and retained by the Liquidating Trustee.

**Section 9.08    Distribution Record Date**

As of the close of business on the fifth (5th) Business Day following the Effective Date (the "Distribution Record Date"), all transfer ledgers, transfer books, registers and any other records maintained by the designated transfer agents with respect to ownership of any Claims will be closed and, for purposes of the Plan, there shall be no further changes in the record holders of such Claims.  The Liquidating Trustee shall have no obligation to recognize the transfer of any Claims occurring after the Distribution Record Date, and will be entitled for all purposes to recognize and deal only with the Holder of any Claim as of the close of business on the Distribution Record Date, as reflected on such ledgers, books, registers or records.

**ARTICLE X**
**EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND OTHER AGREEMENTS**

**Section 10.01 Assumption/Rejection**

On the Effective Date, and to the extent permitted by applicable law, all of the Debtors' executory contracts and unexpired leases will be rejected unless such executory contract or unexpired lease:  (a) is a Desired 365 Contract and being assumed pursuant to the Plan; (b) is the subject of a motion to assume Filed on or before the Confirmation Date; or (c) has been previously rejected or assumed.

**Section 10.02 Cure Amounts**

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

The Bid Procedures and Sale Motion contemplates that Desired 365 Contracts will be assumed by the Debtors and/or assigned to the Purchaser pursuant to the Sale Order and/or the Confirmation Order. In accordance with the Bid Procedures, as part of the Plan Supplement, the Debtors will file a list of the Desired 365 Contracts along with the proposed Cure Costs. Any party taking exception to the proposed Cure Costs shall, in accordance with the Bid Procedures Order, File a detailed statement setting forth its reason and the Bankruptcy Court shall determine the proper amount of the Cure Costs at the Combined Hearing. The fixing of the Cure Costs shall constitute the Debtors' right to assign the Desired 365 Contract lease to the Purchaser under Bankruptcy Code §§ 365(c) and (f).

**Section 10.03 Assumed Executory Contracts and Unexpired Leases**

Each Desired 365 Contract will include (a) all amendments, modifications, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease; and (b) with respect to any executory contract or unexpired lease that relates to the use, ability to acquire, or occupancy of real property, all executory contracts or unexpired leases and other rights appurtenant to the property, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, and any other equity interests in real estate or rights *in rem* related to such premises, unless any of the foregoing agreements have been rejected pursuant to an order of the Bankruptcy Court or are the subject of a motion to reject Filed on or before the Confirmation Date.

Amendments, modifications, supplements, and restatements to executory contracts and unexpired leases that have been executed by the Debtors during their ~~Chapter 11~~Bankruptcy Cases shall not be deemed to alter the pre-petition nature of the executory contract or unexpired lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

**Section 10.04 Insurance Policies**

All insurance policies pursuant to which the Debtors have any obligations in effect as of the date of the Confirmation Hearing shall be deemed and treated as executory contracts pursuant to the Plan and shall be assumed by the Reorganized Debtors if scheduled as a Desired 365 Contact to be assume or otherwise by the Liquidating Trust.

**Section 10.05 Pass-through**

Except as otherwise provided in the Plan, any rights or arrangements necessary or useful to the administration of the Liquidating Trust but not otherwise addressed as a Claim or Interest, and other executory contracts not assumable under Bankruptcy Code § 365(c), shall, in the absence of any other treatment under the Plan, the Purchase and Sale Agreement, the Sale Order and/or the Confirmation Order, be passed through the ~~Chapter 11~~Bankruptcy Cases for the benefit of the Liquidating Trust and the counterparty unaltered and unaffected by the ~~Chapter 11~~Bankruptcy Cases.

**Section 10.06 Claims Based on Rejection of Executory Contracts and Unexpired Leases**

Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of the Debtors' executory contracts and unexpired leases pursuant to the Plan or otherwise must be Filed no later than thirty (30) days after the later of the

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

Effective Date or the date a Final Order is entered granting the rejection. Any Proofs of Claim arising from the rejection of the Debtors' executory contracts or unexpired leases that are not timely filed shall be disallowed automatically, forever barred from assertion, and shall not be enforceable against any Debtor or the Liquidating Trust without the need for any objection by any Person or further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of the executory contract or unexpired lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Bankruptcy Schedules or a Proof of Claim to the contrary. All Allowed Claims arising from the rejection of the Debtors' executory contracts and unexpired leases shall be classified as General Unsecured Claims for the particular Debtor in question and shall be treated in accordance with the particular provisions of the Plan for such Debtor; *provided, however*, if the Holder of an Allowed Claim for rejection damages has an unavoidable security interest in any Collateral to secure obligations under such rejected executory contract or unexpired lease, the Allowed Claim for rejection damages shall be treated as an Other Secured Claim to the extent of the value of such Holder's interest in the Collateral, with the deficiency, if any, treated as a General Unsecured Claim.

**Section 10.07 Reservation of Rights**

Nothing contained in the Plan or this Disclosure Statement shall constitute an admission by the Debtors that any such Desired 365 Contract is in fact an executory contract or unexpired lease or that any Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors, the Liquidating Trustee, or the Reorganized Debtors, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter and to provide appropriate treatment of such contract or lease.

**Section 10.08 Nonoccurrence of Effective Date**

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request by the Debtors to extend the deadline for assuming or rejecting unexpired leases pursuant to Bankruptcy Code § 365(d)(4).

**ARTICLE XI**
**PROCEDURES FOR RESOLVING DISPUTED,**
**CONTINGENT, AND UNLIQUIDATED CLAIMS**

**Section 11.01 Expunging of Certain Claims**

All Claims marked or otherwise Scheduled as contingent, unliquidated or disputed on the Bankruptcy Schedules and for which no Proof of Claim has been timely filed, shall be deemed Disallowed Claims and such Claims shall be expunged as of the Effective Date without the necessity of filing a claim objection and without further notice to, or action, order or approval of the Bankruptcy Court.

**Section 11.02 Objections to Claims**

(a)    Authority. The Debtors, the Reorganized Debtors, or the Liquidating Trustee (as applicable) and the Pre-Petition Agent shall have the exclusive authority to File objections to the Plan Carve Out Claims, and to withdraw any objections to such Claims that they File. The Debtors or the Liquidating Trustee (as applicable) shall have the exclusive authority to settle,

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

compromise, or litigate to judgment any objections to Disputed Plan Carve Out Claims, (i) if they have the prior written consent of Pre-Petition Agent, (ii) if they have given detailed written notice of the proposed settlement, compromise or litigation to the Pre-Petition Agent and the Pre-Petition Agent has not objected thereto within five (5) Business Days after receipt of such notice, or (iii) upon the order of the Bankruptcy Court after the Pre-Petition Agent has had notice and an opportunity to object. The Debtors, the Reorganized Debtors or the Liquidating Trustee, as applicable, shall have the exclusive authority to File, settle, compromise, withdraw, or litigate to judgment any objections to other Claims. Except as set forth above, from and after the Effective Date, the Liquidating Trustee may settle or compromise any Disputed Claim without approval of the Bankruptcy Court. Except as set forth above, the Liquidating Trustee also shall have the right to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

(b)    Objection Deadline. As soon as practicable, but no later than the Claims Objection Deadline, the Liquidating Trustee or the Pre-Petition Agent may File objections with the Bankruptcy Court and serve such objections on the Creditors holding the Claims to which such objections are made.  Nothing contained herein, however, shall limit the right of the Liquidating Trustee or the Pre-Petition Agent to object to Claims, if any, Filed or amended after the Claims Objection Deadline.  The Claims Objection Deadline may be extended by the Bankruptcy Court upon motion by the applicable Debtor, Reorganized Debtor or the Liquidating Trustee, as the case may be, or Pre-Petition Agent.

## Section 11.03 Estimation of Claims

The Liquidating Trustee may (after the Pre-Petition Agent's prior written consent in the case of Disputed Plan Carve Out Claims) at any time request that the Bankruptcy Court estimate any such Disputed Claim pursuant to Bankruptcy Code § 502(c), regardless of whether the Liquidating Trustee or any Debtor, Reorganized Debtor or the Pre-Petition Agent has previously objected to such Claim or whether the Bankruptcy Court has ruled on any objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal related to any such objection.  In the event the Bankruptcy Court estimates any Disputed Claim, that estimated amount will constitute the maximum limitation on such Claim, as determined by the Bankruptcy Court and the Liquidating Trustee (and the Pre-Petition Agent in the case of the Disputed Plan Carve Out Claims) may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.   All of the aforementioned objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another.  Disputed Plan Carve Out Claims may be estimated and thereafter resolved by any permitted mechanism (i) if it has the Pre-Petition Agent's prior written consent, (ii) if the Pre-Petition Agent has received a detailed written notice of the proposed estimation and resolution and the Pre-Petition Agent has not objected thereto within five (5) Business Days after receipt of such notice, or (iii) upon the order of the Bankruptcy Court after the Pre-Petition Agent has had notice and an opportunity to object.  Other Claims may be estimated and thereafter resolved as the Liquidating Trustee may deem appropriate.

## Section 11.04 No Distributions Pending Allowance

Notwithstanding any other provision of the Plan, no payments or distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim.

## Section 11.05 Distributions After Allowance

The Liquidating Trustee shall make payments and distributions from the appropriate ~~Distribution Reserve Account~~account (whether the Claims Reserve in the case of Allowed Plan Carve Out Claims, or in the case of all other Allowed Claims, from such other funds to each Holder of a Disputed Claim that has become an Allowed Claim in accordance with the provisions of the Plan governing the class of Claims to which such Holder belongs.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing all or part of any Disputed Claim becomes a Final Order, the Liquidating Trustee shall distribute to the Holder of such Claim the distribution (if any) that would have been made to such Holder on the Distribution Date had such Allowed Claim been allowed on the Distribution Date.  After a Disputed Claim is Allowed or otherwise resolved, the excess Cash or other property that was reserved on account of such Disputed Claim, if any, shall become a Liquidating Trust Asset for the benefit of other Allowed Claims of the Class or Classes for which the distribution reserve was created.

## Section 11.06 Reduction of Claims

Notwithstanding the contents of the Bankruptcy Schedules or the Bankruptcy SOFAs, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtors before the Effective Date, including pursuant to orders of the Bankruptcy Court.  To the extent such payments are not reflected in the Bankruptcy Schedules or the Bankruptcy SOFAs, such Bankruptcy Schedules and Bankruptcy SOFAs will be deemed amended and reduced to reflect that such payments were made.  Nothing in the Plan shall preclude the Liquidating Trustee from paying Claims that the Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court before the Effective Date.

## ARTICLE XII
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

## Section 12.01 Conditions Precedent to Confirmation

The following are conditions precedent to the occurrence of Confirmation, each of which must be satisfied or waived in accordance with Section 12.04 below:

(a)    The Bankruptcy Court shall have entered an order, in form and substance reasonably acceptable to the Debtors, approving the adequacy of this Disclosure Statement, and such Order shall have become a Final Order.

(b)    The Confirmation Order approving and confirming the Plan, as such Plan may have been modified, amended or supplemented, shall (i) be in form and substance reasonably acceptable to the Debtors, the Pre-Petition Agent and the Purchaser; and (ii) include a finding of fact that the Debtors, the Purchaser ~~and~~, the Stalking Horse, the Reorganized Debtors, and their respective present and former members, officers, directors, managers, employees, advisors, attorneys and agents (but excluding the Excluded Persons), acted in good faith within the meaning of and with respect to all of the actions described in Bankruptcy Code § 1125(e) and are

63

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

therefore not liable for the violation of any applicable law, rule, or regulation governing such actions.

(c)    If the Purchaser purchases the Acquired Property and/or the Las Vegas Property pursuant to the Sale ~~Order and/or the Las Vegas Property Sale Order~~Orders, the Bankruptcy Court shall have entered the Sale ~~Order, and in the case of the Las Vegas Property, the Las Vegas Property Sale Order~~Orders, as applicbale, in form and substance reasonably acceptable to the Debtors, the Pre-Petition Agent, and the Purchaser.

**Section 12.02 Occurrence of the Effective Date**

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with Section 12.04 below:

(a)    The Confirmation Order shall have been entered in form and substance reasonably acceptable to the Debtors, Pre-Petition Agent, and the Purchaser, and such Order shall have become a Final Order and must, among other things, provide that: (i) the Debtors and the Liquidation Trustee are authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan; and (ii) the provisions of the Confirmation Order are non-severable and mutually dependent.

(b)    If the Purchaser purchases the Acquired Property pursuant to the Sale Order and/or the Las Vegas Property pursuant to the Las Vegas Property Sale Order, the Sale Order and the Las Vegas Property Sale Order, as applicable, shall have been entered in form and substance reasonably acceptable to the Debtors, the Pre-Petition Agent, and the Purchaser and such order(s) shall have become a Final Order(s).

(c)    The Purchaser shall have provided written evidence satisfactory to the Debtors and the Pre-Petition Agent that simultaneous with the occurrence of the Effective Date, the Purchaser is prepared to close the Transactions.

(d)    The Closing shall have occurred pursuant to the Purchase and Sale Agreement and, with respect to the Las Vegas Property, the Las Vegas Property Purchase Agreement.

(e)    The Liquidating Trust Agreement shall have been fully executed in form and substance reasonably acceptable to the Debtors, and the Pre-Petition Agent.

(f)    All authorizations, consents, and regulatory approvals required, if any, in connection with the Effective Date shall have been obtained.

(g)    There shall not be in effect any (i) order entered by any court of any competent jurisdiction; (ii) any order, opinion, ruling or other decision entered by any administrative or governmental entity or (iii) applicable law staying, restraining, enjoining or otherwise prohibiting or making illegal the consummation of any of the Transactions contemplated by the Plan.

**Section 12.03 Substantial Consummation**

On the Effective Date, the Plan shall be deemed to be substantially consummated under Bankruptcy Code §§ 1101 and 1127(b).

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

**Section 12.04 Waiver of Conditions**

Each of the conditions set forth in Section 12.01 or Section 12.02 hereof may be waived in whole or in part by the Debtors with the prior written consent of the Pre-Petition Agent (and the Purchaser, if applicable), which consent shall not be unreasonably withheld. The failure to satisfy or waive any condition to Confirmation or the Effective Date may be asserted by the Debtors, the Purchaser, or the Pre-Petition Agent regardless of the circumstances giving rise to the failure of such condition to be satisfied.

**Section 12.05 Revocation, Withdrawal, or Non-Consummation**

The Debtors reserve the right to revoke or withdraw the Plan at any time before the Confirmation Date and to File subsequent plans of reorganization. If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation of the Plan does not occur, then (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing, allowance or limiting to an amount certain of any Claim or Interests or Class of Claims or Interests), unless otherwise agreed to by the Debtors and any counterparty to such settlement or compromise, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (iii) nothing contained in the Plan, and no acts taken in preparation for Consummation of the Plan, shall (a) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Person, (b) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or (c) constitute an admission of any sort by the Debtors or any other Person; and (iv) the rights and remedies of the Stalking Horse pursuant to the Expense Reimbursement Order shall survive and remain in full force and effect.

**ARTICLE XIII**
**AMENDMENTS AND MODIFICATIONS**

The Debtors may alter, amend, or modify the Plan, the Plan Supplement, or any Exhibits thereto under Bankruptcy Code § 1127(a) at any time before the Confirmation Date; *provided, however*, that where the Plan requires a document to be acceptable to, consented to, agreed to or otherwise satisfactory to Pre-Petition Agent or the Purchaser, the Debtors may not modify such document without the written consent of Pre-Petition Agent or the Purchaser, as applicable. Further, if any amendment, modification or supplement to the Plan (including the Plan Supplement or a modification described in this Article XIII of the Plan) or any Exhibit hereto or thereto is made without the prior written consent of the Senior Secured Lender, then notwithstanding any other agreement to the contrary, the Senior Secured Lender shall have no obligation to support, or take any actions in support of, the Plan. After the Confirmation Date and before "substantial consummation" of the Plan, as defined in Bankruptcy Code § 1101(2), the Debtors may, under Bankruptcy Code § 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, this Disclosure Statement, the Sale Order, the Las Vegas Property Sale OrderOrders, the Bid Procedures Order, or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan, so long as such proceedings do not (i) materially adversely affect the treatment of Holders of Claims or Interests under the Plan or (ii) modify any provision of the Purchase and Sale Agreement or any of the Purchaser's rights thereunder; *provided, however*, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

**ARTICLE XIV**
**RETENTION OF JURISDICTION**

Under Bankruptcy Code §§ 105(a) and 1142, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the ~~Chapter 11~~Bankruptcy Cases and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

A.    Allow, disallow, determine, liquidate, classify, estimate or establish the priority or Secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the Secured or unsecured status, priority, amount or allowance of Claims or Interests;

B.    Hear and determine all applications for compensation and reimbursement of expenses of Professionals under Bankruptcy Code §§ 327, 328, 330, 331, 503(b), 1103 or 1129(a)(4); *provided, however*, that from and after the Effective Date, the payment of fees and expenses of professionals retained by the Debtors shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court except as otherwise set forth in the Plan;

C.    Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which one or more of the Debtors are parties or with respect to which one or more of the Debtors may be liable, including, if necessary, the nature or amount of any required cure or the liquidating of any claims arising therefrom;

D.    Hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the ~~Chapter 11~~Bankruptcy Cases;

E.    Enter and enforce such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, this Disclosure Statement, the Sale ~~Order, the Las Vegas Property Sale Order~~Orders, or the Confirmation Order;

F.    Hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

G.    Consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

H.    Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, Consummation, or enforcement of the Plan, the Sale ~~Order, the Las Vegas Property Sale Order~~Orders, and/or the Confirmation Order;

I.    Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

J.      Hear and determine any matters arising in connection with or relating to the Plan, this Disclosure Statement, the Sale ~~Order~~Orders, and/or the Confirmation Order, the Purchase and Sale Agreement, the Las Vegas Property Purchase Agreement, the Liquidating Trust Agreement or any other contract, instrument, release, or other agreement or document created in connection with the Plan, this Disclosure Statement, the Sale ~~Order, the Las Vegas Property Sale Order~~Orders, and/or the Confirmation Order;

K.      Hear and determine any disputes regarding the interpretation or implementation of the Purchase and Sale Agreement;

L.      Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the ~~Chapter 11~~Bankruptcy Cases or pursuant to the Plan;

M.      Recover all assets of the Debtors and property of the Estates, wherever located;

N.      Hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code §§ 346, 505, and 1146;

O.      Hear and determine all disputes involving the existence, nature, or scope of Debtors' discharge or any releases granted in the Plan;

P.      Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

Q.      Enter an order or final decree concluding or closing the ~~Chapter 11~~Bankruptcy Cases; and

R.      Enforce all orders previously entered by the Bankruptcy Court.

## ARTICLE XV
## EFFECT OF THE PLAN ON CLAIMS AND INTERESTS

**Section 15.01 Compromises and Settlements**

Except for those Liquidating Trust Avoidance Actions and Causes of Action transferred to the Liquidating Trust, pursuant to Bankruptcy Code § 363 and Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests and controversies resolved pursuant to the Plan, including, without limitation, all Claims arising before the Petition Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to or in connection with the business or affairs of, or transactions with, the Debtors. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the Estates, Creditors and other parties in interest, and are fair, equitable and within the range of reasonableness.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

**Section 15.02  Satisfaction of Claims**

The rights afforded in the Plan and the treatment of all Claims and Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever against the Debtors or any of their Estates, assets, properties, or interests in property; *provided, however,* that all Liens and Allowed Claims of the Pre-Petition Agent and the Senior Secured Lenders hall survive and remain attached to all of their Collateral (or the proceeds thereof) not sold to Purchaser pursuant to the Purchase and Sale Agreement (including any assets comprising their Collateral, or the proceeds thereof, that are transferred to the Liquidating Trust) until the Allowed Senior Secured Claims are paid in full in cash.  Except as otherwise provided herein (including in the immediately preceding sentence), on the Effective Date, all Claims against and Interests in the Debtors shall be satisfied, discharged, and released in full.  None of the Debtors, the Reorganized Debtors or ~~their~~the Reorganized Debtors' Affiliates, shall be responsible for any pre- Effective Date obligations of the Debtors or the Reorganized Debtors, except those expressly assumed by the Debtors or the Reorganized Debtors, as applicable.  Except as otherwise provided herein, all Persons and Entities shall be precluded and forever barred from asserting against the Debtors, the Reorganized Debtors, and ~~their~~the Affiliates of the Reorganized Debtors, their respective successors or assigns, or their Estates, assets, properties, or interests in property any event, occurrence, condition, thing, or other or further Claims or Causes of Action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence before the Effective Date, whether or not the facts of or legal bases therefore were known or existed before the Effective Date.

**Section 15.03  Discharge of Liabilities**

Pursuant to Bankruptcy Code § 1141(d), and except as otherwise specifically provided in the Plan, the Sale ~~Order, the Las Vegas Property Sale Order~~Orders, and/or the Confirmation Order, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of all Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors before the Effective Date and that arise from a termination of employment or a termination of any employee or retiree benefit program, regardless of whether such termination occurred before or after the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in Bankruptcy Code §§ 502(g), 502(h), or 502(i), in each case whether or not:  (a) a Proof of Claim or Interest based upon such debt, right, Claim, or Interest is Filed or deemed Filed pursuant to Bankruptcy Code § 501; (b) a Claim or Interest based upon such Claim, debt, right, or Interest is Allowed pursuant to Bankruptcy Code § 502; or (c) the Holder of such a Claim or Interest has accepted the Plan.  Subject to the terms of the Plan, the Sale ~~Order, the Las Vegas Property Sale Order~~Orders, and/or the Confirmation Order, any default by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately before or on account of the Filing of the ~~Chapter 11~~Bankruptcy Cases shall be deemed satisfied on the Effective Date.  Subject to the terms of the Plan, the Sale ~~Order, the Las Vegas Property Sale Order~~Orders, and/or the Confirmation Order

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.  Subject to the terms of the Plan, the Sale ~~Order, the Las Vegas Property Sale Order~~Orders, and/or the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtors, their Estates, the Reorganized Debtors and all successors thereto.  As provided in Bankruptcy Code § 524, subject to the terms of the Plan, the Sale Order, the Las Vegas Property Sale Order, and/or the Confirmation Order such discharge shall void any judgment against the Debtors, their Estates, the Reorganized Debtors or any successors thereto at any time obtained to the extent it relates to a Claim or Interest discharged, and operates as an injunction against the prosecution of any action against the Reorganized Debtors or their respective property and assets to the extent it relates to a discharged Claim or Interest.  Notwithstanding any of the foregoing to the contrary, all Liens and Allowed Claims of the Pre-Petition Agent and the Senior Secured Lenders shall survive and remain attached to all of their Collateral (or the proceeds thereof) not sold to the Purchaser pursuant to the Purchase and Sale Agreement (including any assets comprising their Collateral, or the proceeds thereof, that are transferred to the Liquidating Trust), and shall not be deemed discharged, satisfied or released, until the Allowed Senior Secured Claims are paid in full in cash.

**Section 15.04  ~~Releases~~ Release of Stalking Horse**

~~(a)      Releases by Debtors and Estates.  Except as otherwise expressly provided in the Plan, the Purchase and Sale Agreement, the Las Vegas Property Purchase Agreement, the Sale Order, the Las Vegas Property Sale Order, and/or the Confirmation Order, on the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, each of the Debtors and the Reorganized Debtors on its own behalf and as representative of its respective Estate, and each of its respective Related Persons, shall, and shall be deemed to, completely and forever release, waive, void, extinguish and discharge unconditionally, each and all of the Released Parties (except for the Debtors and the Reorganized Debtors and their respective Related Persons) of and from any and all Claims, Causes of Action (including any Avoidance Actions), any and all other obligations, suits, judgments, damages, debts, rights, remedies, causes of action and liabilities of any nature whatsoever, and any and all Interests or other rights of a Holder of an equity security or other ownership interest, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are or may be based in whole or part on any act, omission, transaction, event or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to any of the Debtors, the Reorganized Debtors or their respective assets, property and Estates, the Chapter 11 Cases or the Plan, the Purchase and Sale Agreement, the Las Vegas Property Purchase Agreement, this Disclosure Statement or the Transaction that may be asserted by or on behalf of any of the Debtors, the Reorganized Debtors or their respective Estates.~~

~~(b)      Release of and by Purchaser.  On and after the Effective Date, the Purchaser shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released each of (i) the Debtor; (ii) the Debtor's current directors, managers, officers, employees, attorneys, and other representatives, solely in their capacities as such; (iii) legal, financial and restructuring advisors of the Debtors; and (iv) the Liquidating Trust, from any and all Claims, interest, obligations, rights, suits, damages, losses, costs and expenses, actions, Causes of Action, remedies, and liabilities of any kind or character whatsoever, including any derivative capital claims asserted or assertable against the Debtors, their estates, and the Liquidating Trust~~

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, suspected or unsuspected, matured or unmatured, fixed or contingent, in law, equity, or otherwise (collectively, the "Actions") that the Purchaser, or any Entity claiming by or through the Purchaser now has or hereafter can, shall or may have, or otherwise would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or any other Entity, through the Closing, save and except any Actions and/or continuing obligations under, in connection with or relating to the Expense Reimbursement Order, the Purchase and Sale Agreement, the Las Vegas Property Purchase Agreement, the Sale Order, the Las Vegas Property Sale Order, and/or the Confirmation Order.

On or after the Effective Date, the Debtors, on behalf of themselves and their respective subsidiaries and affiliatesAffiliates (including the Liquidating Trust) shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released (i) the PurchaserStalking Horse, (ii) the Purchaser'sStalking Horse's Affiliates, current and former directors, managers, officers, employees, attorneys, and other representatives, in their capacities as such; and (iii) legal and financial advisors of the PurchaserStalking Horse, from any and all Claims, interests, obligations, rights, suits, damages, losses, costs and expenses, actions, Causes of Action, remedies, and liabilities of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, suspected or unsuspected, matured or unmatured, fixed or contingent, in law, equity, or otherwise, that the Debtors' and their subsidiaries and affiliatesAffiliates (including the Liquidating Trust) or any Entity claiming by or through the Debtors or their subsidiaries and affiliates ever had, now has or hereafter can, shall or may have, or otherwise be legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, through the Closing, save and except for Actions and/or continuing obligations under, in connection with or relating to the Purchase and Sale Agreement, the Sale Order, and/or the Confirmation Order..

(c)    Releases by Holders of Claims and Interests. Except as otherwise expressly provided in the Plan, the Expense Reimbursement Order, the Purchase and Sale Agreement, the Sale and/or the Confirmation Order, on the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, each Person that has held, currently holds or may hold a Claim or any other obligation, suit, judgment, damages, debt, right, remedy, cause of action or liability of any nature whatsoever, or any Interest, or other right of a Holder of an equity security or other ownership interest that is terminated, and each of its respective Related Persons, shall, and shall be deemed to, completely and forever release, waive, void, extinguish and discharge unconditionally each and all of the Released Parties of and from any and all Claims, any and all other obligations, suits, judgments, damages, debts, rights, remedies, causes of action and liabilities of any nature whatsoever (including, without limitation, those arising under the Bankruptcy Code), and any and all Interests or other rights of a Holder of an equity security or other ownership interest, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are or may be based in whole or part on any act, omission, transaction, event or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to any of the Debtors, the Reorganized Debtors or their respective assets, property and Estates, the Chapter 11 Cases or the Plan, the Expense Reimbursement Order, the Purchase and Sale Agreement, the Las Vegas Property Purchase Agreement, this Disclosure Statement or the Transaction;

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

(d)    Injunction Related to Releases. Except as provided in the Plan, the Purchase and Sale Agreement, the Las Vegas Property Purchase Agreement, the Sale Order, the Las Vegas Property Sale Order, and/or the Confirmation Order, as of the Effective Date, (i) all Persons that hold, have held, or may hold a Claim or any other obligation, suit, judgment, damages, debt, right, remedy, causes of action or liability of any nature whatsoever, or any Interest or other right of a Holder of an equity security or other ownership interest, relating to any of the Debtors or the Reorganized Debtors or any of their respective assets, property and Estates, that is released pursuant to this Section 15.04 of the Plan, (ii) all other parties in interest, and (iii) each of the Related Persons of each of the foregoing entities, are, and shall be, permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from taking any of the following actions, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such discharged Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, and of all Interests or other rights of a Holder of an equity security or other ownership interest: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum; (ii) enforcing, attaching (including, without limitation, any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (iii) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien; (iv) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation owed to any Person discharged under this Section 15.04; and (v) commencing or continuing in any manner, in any place of any judicial, arbitration or administrative proceeding in any forum, that does not comply with or is inconsistent with the provisions of the Plan, the Expense Reimbursement Order, the Sale Order, the Las Vegas Property Sale Order, and/or the Confirmation Order.

(e)    No Waiver. Notwithstanding anything to the contrary contained in this Section 15.04, the releases and injunctions set forth in this Section 15.04 shall not, and shall not be deemed to, limit, abridge or otherwise affect the rights of the Reorganized Debtors, the Liquidating Trust, or the Purchaser to enforce, sue on, settle or compromise the rights, claims and other matters expressly retained by the Reorganized Debtors, the Liquidating Trust, or the Purchaser pursuant to the Plan or the Purchase and Sale Agreement and related orders.

(f)    Supplemental Injunction. In order to supplement the injunctive effect of the discharge injunction, and pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under Bankruptcy Code § 105(a), the Confirmation Order shall provide for the following injunctions to take effect as of the Effective Date.

(g)    Terms. In order to preserve and promote the settlements contemplated by and provided for in the Plan, and to supplement, where necessary, the injunctive effect of the discharge as provided in Bankruptcy Code §§ 1141 and 524 and as described in this Article, except as otherwise expressly provided in the Plan, the Purchase and Sale Agreement, the Las Vegas Property Purchase Agreement, the Las Vegas Property Sale Order, the Sale Order and/or the Confirmation Order, all Persons and any Person claiming by or through them, which have held or asserted, which currently hold or assert or which may hold or assert any Claims or any other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities of any nature whatsoever, and all Interests, or other rights of a Holder of an equity security or other ownership interest, against any of the Released Parties based upon,

attributable to, arising out of or relating to any Claim against or Interest in any of the Debtors, whenever and wherever arising or asserted, whether in the U.S. or anywhere else in the world, whether sounding in tort, contract, warranty or any other theory of law, equity or admiralty, shall be, and shall be deemed to be, permanently stayed, restrained and enjoined from taking any action against any of the Released Parties for the purpose of directly or indirectly collecting, recovering or receiving any payment or recovery with respect to any such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, and all Interests or other rights of a Holder of an equity security or other ownership interest, arising before the Effective Date (including before the Petition Date), including, but not limited to:

(i)        commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, and all Interests, or other rights of a Holder of an equity security or other ownership interest, against any of the Released Parties or the assets or property of any Released Party;

(ii)        enforcing, attaching, collecting or recovering, by any manner or means, any judgment, award, decree or order against any of the Released Parties or the assets or property of any Released Party with respect to any such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, and all Interests or other rights of a Holder of an equity security or other ownership interest;

(iii)        creating, perfecting or enforcing any Lien of any kind against any of the Released Parties or the assets or property of any Released Party with respect to any such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, and all Interests or other rights of a Holder of an equity security or other ownership interest;

(iv)        except as otherwise expressly provided in the Plan, the Sale Order and/or the Confirmation Order, asserting, implementing or effectuating any setoff, right of subrogation, indemnity, contribution or recoupment of any kind against any obligation due to any of the Released Parties or against the property of any Released Party with respect to any such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, and all Interests or other rights of a Holder of an equity security or other ownership interest; and

(v)        taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan, the Plan Supplement, the Sale Order, the Las Vegas Property Sale Order, and/or the Confirmation Order relating to such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, and all Interests or other rights of a Holder of an equity security or other ownership interest.

(h)        Bankruptcy Rule 3016 Compliance. The Debtors' compliance with the formal requirements of Bankruptcy Rule 3016(c) shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

(i)        Integral to Plan. Each of the injunctions provided in this Section 15.04 is an integral part of the Plan and is essential to its implementation. Each of the Released Parties and any other Persons protected by the injunctions set forth in this Section 15.04 shall have the

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

~~right to independently seek the enforcement of such injunctions.~~ Expense Reimbursement Order, the Purchase and Sale Agreement, the Las Vegas Property Purchase Agreement (if applicable), the Las Vegas Property Sale Order (if applicable), the Sale Order, and/or the Confirmation Order.

## Section 15.05          Exculpation

The ~~Released~~Exculpated Parties shall not be liable for any cause of action arising in connection with or out of the administration of the ~~Chapter 11~~Bankruptcy Cases, the planning of the ~~Chapter 11~~Bankruptcy Cases, the formulation, negotiation or implementation of the Plan, the good faith solicitation of acceptances of the Plan in accordance with Bankruptcy Code § 1125(e), pursuit of Confirmation of the Plan, the Consummation of the Plan, or the administration of the Plan or the Acquired Property to be sold pursuant to the Purchase and Sale Agreement, or the Excluded Assets to be sold pursuant to other sale agreement, or to be distributed under the Plan, except for gross negligence or willful misconduct as determined by a Final Order of the Bankruptcy Court.    All Holders of Claims and Interests are enjoined from asserting or prosecuting any Claim or cause of action against any protected Person as to which such ~~Released~~Exculpated Party has been exculpated from liability pursuant to the preceding sentence.

## Section 15.06  Permanent Injunction

Except as otherwise expressly provided in the Plan, the Purchase and Sale Agreement the Confirmation Order, all Persons and Governmental Units (each as defined in the Bankruptcy Code) who have held, hold or may hold Claims against, or Interests in, the Debtors are permanently enjoined, on and after the Effective Date, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Interest; (b) the enforcement, attachment, collection, or recovery by any manner or means of judgment, award, decree or order against any ~~Released~~Exculpated Party on account of any such Claim or Interest; (c) creating, perfecting, or enforcing any encumbrance of any kind against any ~~Released Party~~of the Exculpated Parties or against the property or interests in property of any such ~~Released Party~~Exculpated Parties on account of any such Claim or Interest; and (d) asserting any right of setoff, recoupment or subrogation of any kind against any obligation due from any ~~Released Party~~of the Exculpated Parties or against the property or interests in property of any ~~Released Party~~of the Exculpated Parties on account of any such Claim or Interest.  The foregoing injunction will extend to successors of any ~~Released Party~~the Exculpated Parties and their respective property and interests in the property.

Notwithstanding anything to the contrary contained herein, the injunctions set forth in this shall not, and shall not be deemed to, limit, abridge or otherwise affect the rights of the Reorganized Debtors, the Stalking Horse, the Liquidating Trust, or the Purchaser to enforce, sue on, settle or compromise the rights, claims and other matters expressly retained by the Reorganized Debtors, the Stalking Horse, the Liquidating Trust or the Purchaser pursuant to the Plan or the Purchase and Sale Agreement and related orders.

## Section 15.07  Setoffs

Except as otherwise expressly provided for in the Plan, pursuant to the Bankruptcy Code (including Bankruptcy Code § 553), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim or Interest, each Debtor or each Reorganized Debtor may setoff against any

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

Allowed Claim or Interest (other than the Allowed Senior Secured Claim) and the distributions to be made pursuant to the Plan on account of such Allowed Claim or Interest (before such distribution is made), any Claims, rights, and Causes of Action of any nature that such Debtor or Reorganized Debtor, as applicable, may hold against the Holder of such Allowed Claim or Interest, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or before the Effective Date (whether pursuant to the Plan or otherwise); *provided*, *however*, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release by such Debtor or Reorganized Debtor of any such Claims, rights, and Causes of Action that such Debtor may possess against such Holder.  In no event shall any Holder of Claims or Interests be entitled to setoff any Claim or Interest against any Claim, right, or cause of action of the Debtors or Reorganized Debtors, as applicable, unless such Holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to Bankruptcy Code § 553 or otherwise.

**Section 15.08  Recoupment**

Except as provided in the Plan, any Holder of a Claim or Interest shall not be entitled to recoup any Claim or Interest against any Claim, right, or cause of action of the Debtors or Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

**Section 15.09  Release of Liens**

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full in cash of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtors' Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the applicable Debtor and its successors and assigns.

**Section 15.10  Good Faith**

As of the Confirmation Date, the Debtors shall be deemed to have solicited acceptance or rejections of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

**Section 15.11 Rights of Defendants and Avoidance Actions**

All rights, if any, of a defendant to assert a Claim arising from relief granted in an Avoidance Action, together with the Liquidating Trustee's right to oppose such Claim are fully preserved.  Any such Claim that is Allowed shall be entitled to treatment and distribution under the Plan as a General Unsecured Claim.

# ARTICLE XVI
## MISCELLANEOUS PROVISIONS

**Section 16.01 Bar Dates for Certain Claims.**

(a)    Administrative Claims; Substantial Contribution Claims. The Confirmation Order will establish a Bar Date for Filing of all Administrative Claims, including substantial contribution claims (but not including Professional Fee Claims, claims for the expenses of the members of the Committee and Administrative Claims in section (b) or (c) below), which date will be thirty (30) days after the Confirmation Date (the "Administrative Claims Bar Date"). Holders of asserted Administrative Claims, other than Professional Fee Claims, claims for U.S. Trustee fees under 28 U.S.C. § 1930, administrative tax claims and administrative ordinary case liabilities described in section (b) below, must submit proofs of Administrative Claim on or before such Administrative Claims Bar Date or forever be barred from doing so. A notice prepared by the Debtors will set forth such date and constitute notice of this Administrative Claims Bar Date. The Liquidating Trustee and the Pre-Petition Agent shall have thirty days (30) days (or such longer period as may be allowed by order of the Bankruptcy Court) following the Administrative Claims Bar Date to review and object to such Administrative Claims before a hearing for determination of allowance of such Administrative Claims.

(b)    Administrative Ordinary Course Liabilities. Holders of Administrative Claims that are based on liabilities incurred and paid by any Debtor in the ordinary course of the applicable Debtor's business (other than Claims of governmental units for taxes and for interest and/or penalties related to such taxes) on and after the Petition Date shall not be required to File any request for payment of such Administrative Claims. For the avoidance of doubt, Holders of Administrative Claims pursuant to Bankruptcy Code § 503(b)(9) shall be required to File a proof of Administrative Claim on or before the Administrative Claims Bar Date.

(c)    Administrative Tax Claims. All requests for payment of Administrative Claims by a governmental unit for taxes (and for interest and/or penalties related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date, and for which no bar date has otherwise been previously established, must be Filed and served on the Reorganized Debtors, the Pre-Petition Agent, and any other party specifically requesting a copy in writing on or before the later of (a) thirty (30) days following the Confirmation Date; and (b) one hundred and twenty (120) days following the Filing of the tax return for such taxes for such tax year or period with the applicable governmental unit. Any Holder of any such Claim that is required to File a request for payment of such taxes and does not File and properly serve such a claim by the applicable Bar Date shall be forever barred from asserting any such claim against the Debtors, the Reorganized Debtors, the Liquidating Trust or their property, regardless of whether any such Claim is deemed to arise on or before the Effective Date. Any interested party desiring to object to an Administrative Claim for taxes must File and serve its objection on counsel to the Debtors, the Reorganized Debtors, the Liquidating Trustee, and the relevant taxing authority no later than ninety (90) days after the taxing authority Files and serves its application.

(d)    Professional Fee Claims. All final requests for compensation or reimbursement of professional fees pursuant to Bankruptcy Code §§ 327, 328, 330, 331, 363, 503(b) or 1103 for services rendered to or on behalf of the applicable Debtors or the Committee (if one has been appointed) before the Confirmation Date (other than substantial contribution claims under

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

Bankruptcy Code § 503(b)(4)) must be Filed and served on the Debtors, the Liquidating Trustee, the Pre-Petition Agent, and their respective counsel no later than thirty days (30) after the Confirmation Date, unless otherwise ordered by the Bankruptcy Court. Objections to applications of such Professionals or other entities for compensation or reimbursement of expenses must be Filed and served on the Debtors, the Liquidating Trustee, the Pre-Petition Agent, and their counsel and the requesting Professional or other entity no later than thirty (30) days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable application for compensation or reimbursement was served.

## Section 16.02 Payment of Statutory Fees

On or before the Effective Date, the Debtors shall have paid in full, in Cash (including by check or wire transfer), in U.S. dollars, all fees payable pursuant to section 1930 of title 28 of the United States Code, in the amount determined by the Bankruptcy Court at the Confirmation Hearing.

## Section 16.03 Severability of Plan Provisions

If, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

## Section 16.04 Successors and Assigns

The rights, benefits and obligations of any Person named or referred to in the Plan, including any Holder of a Claim, shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

## Section 16.05 Binding Effect

The Plan shall be binding upon and inure to the benefit of the Debtors, all present and former Holders of Claims against and Interests in the Debtors, their respective successors and assigns, including, but not limited to, the Debtors, and all other parties-in-interest in these ~~Chapter 11~~Bankruptcy Cases.

## Section 16.06 Term of Injunctions or Stay

Unless otherwise provided in the Plan, the Sale ~~Order~~Orders and/or Confirmation Order, all injunctions or stays provided for in the ~~Chapter 11~~Bankruptcy Cases under Bankruptcy Code §§ 105 or 362 or otherwise, and in existence on the Confirmation Date (excluding any injunctions or stays contained in the Plan or Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan, the Sale

~~Order~~Orders, and/or Confirmation Order shall remain in full force and effect in accordance with their terms.

### Section 16.07 Dissolution of Committee

On the Effective Date, the Committee shall dissolve and the members of the Committee shall be released and discharged from all authority, duties, responsibilities and obligations related to and arising from and in connection with the ~~Chapter 11~~Bankruptcy Cases.

### Section 16.08 No Admissions

Notwithstanding anything herein to the contrary, nothing in the Plan shall be deemed as an admission by the Debtors with respect to any matter set forth herein, including liability on any Claim.

### Section 16.09 Default Under Plan

(a)    Plan Default Notice. Except or otherwise provided for in the Plan, after the Effective Date, in the event of an alleged default by the Liquidating Trustee under the Plan, any party alleging such default shall provide written notice of default (the "Plan Default Notice") to the Liquidating Trustee at the address set forth in the Notice of Effective Date filed pursuant to Section 16.11 of the Plan with a copy thereof to the Debtors' counsel and the Pre-Petition Agent's counsel at the addresses set forth in the Plan and shall contemporaneously file such Plan default notice with the Bankruptcy Court and serve it on the Committee~~, if any~~. The Liquidating Trustee shall have thirty (30) days from the receipt of a Plan Default Notice to cure any actual default that may have occurred.

(b)    Cure. The Liquidating Trustee and any other party-in-interest shall have the right to dispute an alleged default that has occurred and to notify the party alleging such default that the Liquidating Trustee (or such other party-in-interest) contends no default has occurred, with such notice to be sent within the thirty-day period following receipt of a Plan Default Notice. In such event, the Bankruptcy Court shall retain jurisdiction over the dispute relating to the alleged default and the remedy with respect to any remedy therefore.

(c)    Failure to Cure. In the event the Liquidating Trustee (or any other party-in-interest) fails to either dispute the alleged default or timely cure such default, the party alleging such default shall be entitled to assert its rights under applicable law.

### Section 16.10 Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Nevada, without giving effect to the principles of conflicts of law thereof, shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control) as well as corporate governance matters with respect to the Debtors; *provided, however*, that corporate governance matters relating to the Debtors or Reorganized Debtors, as applicable, not organized under Nevada law shall be governed by the laws of the state of organization of such Debtor.

### Section 16.11 Entire Agreement

This Plan and the Plan Documents set forth the entire agreement and understanding among the parties-in-interests relating to the subject matter hereof and supersede all prior discussions and documents.

### Section 16.12 Plan Documents

The Plan Documents are incorporated herein and are a part of this Plan as set forth in full Herein.

**ARTICLE XVII**
**CERTAIN RISK FACTORS AFFECTING CERTAIN OF THE DEBTORS**

BEFORE VOTING TO ACCEPT OR REJECT THE PLAN, ALL HOLDERS OF IMPAIRED CLAIMS SHOULD READ AND CAREFULLY CONSIDER THE FACTORS SET FORTH BELOW, AS WELL AS ALL OTHER INFORMATION SET FORTH OR OTHERWISE REFERENCED IN THIS DISCLOSURE STATEMENT. THESE FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.

### Section 17.01 General Risks

The bankruptcy proceeding could possibly adversely affect (i) the Debtors' relationships with their key vendors; (ii) the Debtors' relationships with their customers; (iii) the Debtors' relationships with their employees; and (iv) the legal rights and obligations of the Debtors under agreements that may be in default as a result of the Cases.

The extent to which the Chapter 11 Case has and will continue to disrupt the Debtors' businesses will likely be directly related to the length of time it takes to complete the proceeding. If the Debtors are unable to obtain Confirmation of the Plan on a timely basis because of a challenge to the Plan or a failure to satisfy the conditions to the Plan, they may be forced to operate in chapter 11 for an extended period while they try to develop a different reorganization plan that can be confirmed. That would increase both the probability and the magnitude of the adverse effects described in this Disclosure Statement.

### Section 17.02 Certain Bankruptcy Law Considerations

Although the Debtors believe that the Plan will satisfy all requirements necessary for Confirmation by the Bankruptcy Court, the Debtors give no assurance that the Bankruptcy Court will reach the same conclusion. Moreover, the Debtors give no assurance that modifications to the Plan will not be required for Confirmation or that such modifications would not necessitate the resolicitation of votes. Although the Debtors believe that the Effective Date will occur soon after the Confirmation Date, the Debtors give no assurance as to such timing. In the event the conditions precedent to Confirmation of the Plan have not been satisfied or waived (to the extent possible) by the Debtors or applicable party (as provided in the Plan) as of the Effective Date, then the Confirmation Order will be vacated, no Distributions under the Plan will be made, and the Debtors and all Holders of Claims and Interests will be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though such Confirmation Date had never occurred.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170 Fax: (702) 382-1169

### Section 17.03 Risks Related to Volatility in the Prices of the Property

In the absence of the sales contemplated under the Plan, the Debtors' revenue, profitability, cash flow, and the carrying value of contracts are substantially dependent on prevailing interest rates. Historically, the markets for interest rates have been volatile and those markets are likely to continue to be volatile in the future. Predicting future interest rate movements with certainty is impossible. Interest rates are subject to wide fluctuation in response to relatively minor changes in the supply of and demand for contracts, market uncertainty, and a variety of additional factors beyond the Debtors' control. These factors include the level of consumer product demand, overall economic conditions, weather conditions, domestic and foreign governmental relations, governmental regulations, taxes, price and availability of vehicles, level and price of gasoline.

### Section 17.04 Risks Related to the Sale of the Debtors' Assets

The Bankruptcy Court has not yet approved a sale of the New Interests and/or the Debtors' Assets. Further, the Purchase and Sale Agreement is subject to certain conditions precedent, which must be satisfied before the Transaction is consummated. There is no guarantee that these conditions precedent will be satisfied or that the Bankruptcy Court will approve a sale of the New Interests and/or the Debtors' Assets. If the sale of the New Interests and/or the Debtors' Assets is not consummated, the feasibility of the Plan may be adversely affected.

### ARTICLE XVIII
### FINANCIAL INFORMATION AND FEASIBILITY

### Section 18.01 Financial Information

The Projections set forth in **Exhibit E** and the above summary reflect the Debtors' reasonable judgments as to the cash flow of the Reorganized Debtors; however, there can be no assurance that any of the various assumptions on which they are based will prove to be accurate, that any of the forecasted expenses will not exceed assumptions or that the projected results will be realized any time in the future or at all. Actual results will be impacted by a number of factors, including, without limitation, general economic and business conditions, successful implementation of business plans, third-party contractual relationships, sufficient working capital and sources of funding, as well as other conditions which affect the capital markets and the automobile loan industry, all of which can be materially adverse to the Reorganized Debtors.

### Section 18.02 Feasibility of the Plan

In connection with Confirmation of the Plan, Bankruptcy Code § 1129(d)(ii) requires the Bankruptcy Court to find that Confirmation of the Plan is not likely to be followed by the liquidation of, or the need for further reorganization of, the Reorganized Debtors. This requirement is the so-called "feasibility" test. After Consummation of the Plan, the Reorganized Debtors will have a new lender facility and no other debt other than trade debt reincurred in the ordinary course of business.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

## ARTICLE XIX
## CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

**Section 19.01 General**

The following discussion summarizes certain United States federal income tax consequences of the implementation of the Plan to the Debtors and certain Holders of Claims or Interests. This summary is for general information purposes only, and should not be relied upon for purposes of determining the specific tax consequences of the Plan with respect to any particular Holder of a Claim or Interest. This discussion does not purport to be a complete analysis or listing of all potential tax considerations.

The discussion is based upon the Internal Revenue Code, Treasury Regulations promulgated thereunder, judicial decisions, and published administrative rules and pronouncements of the Internal Revenue Service (the "IRS") as in effect on the date hereof. Legislative, judicial or administrative changes or new interpretations enacted or promulgated after the date hereof could alter or modify the analyses set forth below with respect to the United States federal income tax consequences of the Plan. Any such changes or new interpretations may have retroactive effect and could significantly affect the federal income tax consequences of the Plan.

The federal income tax consequences of the Plan are complex and are subject to significant uncertainties. The Debtors have not requested a ruling from the IRS or an opinion of counsel with respect to any of the tax aspects of the Plan. Thus, no assurance can be given as to the interpretation that the IRS will adopt. In addition, this discussion does not address foreign, state or local tax consequences of the Plan, nor does it purport to address the federal income tax consequences of the Plan to (i) special classes of taxpayers (such as Persons who are related to the Debtors within the meaning of the Internal Revenue Code, foreign taxpayers, broker-dealers, banks, mutual funds, insurance companies, financial institutions, small business investment companies, regulated investment companies, tax-exempt organizations, and investors in pass-through entities and holders of Claims or Interests who are themselves in bankruptcy) or (ii) Holders not entitled to vote on the Plan, including Holders whose Claims or Interests are entitled to reinstatement or payment in full in cash under the Plan or Holders whose Claims or Interests are to be extinguished without any Distribution.

This discussion assumes that Holders of Claims or Interests hold only Claims or Interests in a single Class. Holders of multiple Classes of Claims or Interests should consult their own tax advisors as to the effect such ownership may have on the federal income tax consequences described below.

ACCORDINGLY, THE FOLLOWING SUMMARY OF CERTAIN FEDERAL INCOME TAX CONSEQUENCES IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES PERTAINING TO A HOLDER OF A CLAIM OR INTEREST. ALL HOLDERS OF CLAIMS OR INTERESTS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS FOR THE FEDERAL, STATE, LOCAL AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

TO ENSURE COMPLIANCE WITH TREASURY DEPARTMENT CIRCULAR 230, HOLDERS OF CLAIMS OR INTERESTS ARE HEREBY NOTIFIED THAT: (1) ANY DISCUSSION OF FEDERAL TAX ISSUES IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE RELIED UPON, AND CANNOT BE RELIED UPON, BY ANY HOLDER OF A CLAIM OR INTERESTS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON HOLDERS OF CLAIMS OR INTERESTS UNDER THE INTERNAL REVENUE CODE, (2) SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE CONFIRMATION OF THE PLAN TO WHICH THE TRANSACTIONS DESCRIBED IN THIS DISCLOSURE STATEMENT ARE ANCILLARY, AND (3) HOLDERS OF CLAIMS OR INTERESTS SHOULD SEEK ADVICE BASED UPON THEIR PARTICULAR CIRCUMSTANCES FROM THEIR OWN TAX ADVISOR.

**Section 19.02 Consequences to the Debtors**

The Debtors have consolidated NOLsWFI has NOL carryforward for federal income tax purposes of approximately $—————— as of September 30, 2013.1.6 million as reported in its TY 2012 federal tax return, and net unrealized built in losses of an estimate net $4 million.  As discussed below, the amount of the Debtors' NOL carryforwards, and possibly certain other tax attributes, may be significantly reduced upon implementation of the Plan.  In addition, the Purchaser's subsequent utilization of any net built-in losses with respect to their assets and NOLs remaining, and possibly certain other tax attributes, may be restricted as a result of and upon the implementation of the Plan.  These positive tax attributes are not separately saleable assets for the benefit of creditors, but are aspects, if preserved by way of a properly structured transaction, that could cause a purchaser to factor in such favorable aspects, into its purchase price.

(a)    Cancellation Ofof Indebtedness Income. Under the Internal Revenue Code, a taxpayer generally must recognize income from the cancellation of debt ("COD Income") to the extent that its indebtedness is discharged during the taxable year.  COD Income generally equals the excess of the adjusted issue price of the indebtedness discharged over the sum of (i) the amount of cash, (ii) the issue price of any new debt, and (iii) the fair market value of any other property (including stock) transferred by the debtor in satisfaction of such discharged indebtedness. COD Income also includes any interest that has been previously accrued and deducted but remains unpaid at the time the indebtedness is discharged.

Section 108(a)(1)(A) of the Internal Revenue Code provides an exception to this rule, however, where a taxpayer is in bankruptcy and where the discharge is granted, or is effected, pursuant to a plan approved by the bankruptcy court.  In that case, instead of recognizing income, the taxpayer is required, under Section 108(b) of the Internal Revenue Code, to reduce certain of its tax attributes by the amount of COD Income.  The attributes of the taxpayer are to be reduced in the following order: NOLs, general business and minimum tax credit carryforwards, capital loss carryforwards, and the basis of the taxpayer's assets (collectively, the "Tax Attributes").  Section 108(b)(5) of the Internal Revenue Code permits a taxpayer to elect to first apply the reduction to the basis of the taxpayer's depreciable assets, with any remaining balance applied to the taxpayer's other Tax Attributes in the order stated above.  In addition to the foregoing, Section 108(e)(2) of the Internal Revenue Code provides a further exception to the realization of COD Income upon the discharge of debt to the extent that the taxpayer's satisfaction of the debt would have given rise to a deduction for federal income tax purposes.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

81

The Debtors expect to realize a significant amount of COD Income as a result of the Plan. The ultimate amount of COD Income realized by the Debtors is uncertain.  Regardless of the amount of the Debtors' COD Income, the Debtors will not be required to include COD Income in gross income because the indebtedness will be discharged while the Debtors are under the jurisdiction of a court in a Title 11 case.  Accordingly, the Debtors expect that there will be no United States federal income taxes payable by the Debtors in respect of the COD Income. However, certain Tax Attributes of the Debtors will be reduced or eliminated.  The Debtors do not currently anticipate that they will make the election under Section 108(b)(5) of the Internal Revenue Code to apply any required attribute reduction first to the basis of the Debtors' depreciable property.  The Debtors will avoid recognition of COD Income and reduction of Tax Attributes pursuant to Section 108(e)(2) of the Internal Revenue Code only to the extent that the discharge is of amounts that the Debtors would have been entitled to deduct if the Debtors had paid such amounts.

(b)    <u>Net Operating Losses And Other Attributes</u>. The Debtors currently have NOLs that will carry forward to the extent that they are not offset by income and/or gain and are not reduced by the attribute reduction rules of Section 108(b) of the Internal Revenue Code discussed above.

(c)    <u>Annual Section 382 Limitation on Use of NOLs.</u> With respect to any NOLs remaining after confirmation of the Plan and any required attribute  reduction, Section 382 of the Internal Revenue Code contains certain rules limiting the amount of NOLs a corporate taxpayer can utilize in the years following an "ownership change" (the "<u>Annual Section 382 Limitation</u>"). An "ownership change" generally is defined as a more than 50 percentage point change in ownership of the stock of a "loss corporation" (a corporation with NOLs or net unrealized built-in losses) that takes place during a testing period (generally three years) ending on the date on which such change in ownership is tested.  The Debtors will undergo an ownership change on the Effective Date.

(1)    *General Annual Section 382 Limitation.* As a general rule, a loss corporation's Annual Section 382 Limitation equals the product of the value of the stock of the corporation (with certain adjustments) immediately before the ownership change and the applicable "long-term tax-exempt rate," a rate published monthly by the Treasury Department (for example, 3.55% for ownership changes that occur during February, 2012).  Any unused portion of the Annual Section 382 Limitation generally is available for use in subsequent years.  If a loss corporation does not continue its historic business or use a significant portion of its assets in a new business for two years after the ownership change, the corporation's Annual Section 382 Limitation is zero.  The Annual Section 382 Limitation is increased if the loss corporation has net unrealized built-in gains, *i.e.*, gains economically accrued but unrecognized at the time of the ownership change, in excess of a threshold amount.  A loss corporation can use NOLs in excess of its Annual Section 382 Limitation to the extent that it realizes those net unrealized built-in gains for federal income tax purposes in the five years following the ownership change.  A correlative rule applies to a corporation that has net unrealized built in losses, *i.e.*, losses economically accrued but unrecognized as of the date of the ownership change in excess of a threshold amount.  Such a corporation's ability to deduct its built-in losses (in addition to its NOLs) following an ownership change is limited.  Although the Debtors will expect to have a net unrealized built-in loss as of the Effective Date, this is uncertain at this time.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

(2)    *Special Bankruptcy Exceptions*. Section 382(1)(5) of the Internal Revenue Code provides an exception to the application of the Annual Section 382 Limitation when a corporation is under the jurisdiction of a court in a Title 11 case (the "382(1)(5) Exception"). The 382(1)(5) Exception provides that where an ownership change occurs pursuant to a bankruptcy reorganization or similar proceeding, the Annual Section 382 Limitation will not apply if the pre-change shareholders and/or "qualified creditors" (as defined by applicable Treasury Regulations) own at least 50 percent of the stock of the reorganized corporation immediately after the ownership change. However, under the Plan, the Debtors do not expect to qualify for the 382(l)(5) Exception because not of the pre-change shareholders and/or "qualified creditors" will own any of the New Interests of the Reorganized Debtors.

(d)    Exchange of Liquidating Trust Assets. The Debtors will transfer the Liquidating Trust Assets to the Liquidating Trust and will transfer the interests in the Liquidating Trust to certain Holders of Allowed Claims. For federal income tax purposes, these transfers will be treated as a taxable disposition by the Debtors of the Liquidating Trust Assets to such Holders of Allowed Claims in satisfaction of a Pro Rata portion of their Claims. The Debtors will recognize gain or loss measured by the difference between the fair market value of the Liquidating Trust Assets and their basis in the Liquidating Trust Assets. The character of any gain or loss as capital or ordinary, and in the case of capital gain or loss, as short term or long term, will depend upon the nature of the Liquidating Trust Assets and the Debtors' holding period for the Liquidating Trust Assets.

(e)    Accrued Interest. To the extent that the consideration issued to Holders of Claims pursuant to the Plan is attributable to accrued but unpaid interest, the Debtors should be entitled to interest deductions in the amount of such accrued interest, but only to the extent the Debtors have not already deducted such amount. The Debtors should not have COD Income from the discharge of any accrued but unpaid interest pursuant to the Plan to the extent that the payment of such interest would have given rise to a deduction pursuant to Section 108(e)(2) of the Internal Revenue Code, as discussed above.

(f)    Federal Alternative Minimum Tax. In general, a federal alternative minimum tax ("AMT") is imposed on a corporation's alternative minimum taxable income ("AMTI") at a 20% rate to the extent that such tax exceeds the corporation's regular federal income tax for the year. AMTI is generally equal to regular taxable income with certain adjustments. For purposes of computing AMTI, certain tax deductions and other beneficial allowances are modified or eliminated. In particular, even though a corporation might otherwise be able to offset all of its taxable income for regular federal income tax purposes by available NOL carryforwards, a corporation is generally entitled to offset no more than 90% of its AMTI with NOL carryforwards (as recomputed for AMT purposes). Accordingly, usage of the Debtors' NOLs by the Reorganized Debtors or Purchaser may be subject to limitations for AMT purposes in addition to any other limitations that may apply.

In addition, if a corporation (or a consolidated group) undergoes an ownership change and is in a net unrealized built-in loss position on the date of the ownership change, the corporation's (or group's) aggregate tax basis in its assets may be reduced for certain AMT purposes to reflect the fair market value of such assets as of the change date. Accordingly, if the Debtors are in a net unrealized built-in loss position on the Effective Date, for AMT purposes the tax benefits attributable to basis in assets may be reduced.

83

Any AMT that a corporation pays generally will be allowed as a nonrefundable credit against its regular federal income tax liability in future taxable years when the corporation is no longer subject to AMT.

**Section 19.03 Federal Income Tax Consequences to Holders of Senior Secured Claims**

(a)    Receipt of Cash and Liquidating Trust Interests. Pursuant to the Plan, each Holder of a Senior ~~Secured Claim and the UBE Junior~~ Secured Claim will receive Cash and Liquidating Trust interests in exchange for its Claim.  For federal income tax purposes, a Holder of a Senior Secured Claim should be treated as exchanging a Pro Rata portion of its Claim for Cash, and the transfers of the Liquidating Trust interests will be treated as the transfer by the Debtors of a Pro Rata portion of the Liquidating Trust Assets to a Holder of a Senior Secured Claim in satisfaction of a portion of its Claim, followed by the transfer by such Holders of a Pro Rata portion of the Liquidating Trust Assets to the Liquidating Trust.  A Holder of a Senior Secured Claim will recognize gain or loss measured by the difference between (i) the amount of Cash and the fair market value of its Pro Rata share of the Liquidating Trust Assets it is treated as receiving (net of any liabilities it is treated as assuming), and (ii) its basis in the Claims exchanged therefor (other than any claims for accrued interest as discussed below). The character of any gain or loss as capital or ordinary and, in the case of capital gain or loss, as short-term or long-term, will depend on a number of factors, including: (i) the tax status of the Holder of the Claim; (ii) whether the Claim is a capital asset in the hands of the Holder; (iii) whether the Claim has been held by the Holder for more than one year; (iv) the extent to which the Holder previously claimed a loss or a bad debt deduction with respect to the Claim; and (v) the extent to which the Holder acquired the Claim at a market discount.  The rules governing the character, timing, and amount of bad debt deduction place considerable emphasis on the facts and circumstances of the Holder, the obligor, and the instrument with respect to which a deduction is claimed and are subject to the exchange provisions of Section 1271 of the Internal Revenue Code.  Holders of Senior Lien Notes, therefore, should consult their tax advisors with respect to their ability to take such a deduction.

(b)    Accrued Interest. Consideration received by a Holder of a Senior Secured Claim that is attributable to accrued but unpaid interest will be treated as ordinary income, regardless of whether the Holder's existing Claims are capital assets in its hands.

The manner in which consideration is to be allocated between accrued and unpaid interest and principal of the Claims of the Senior Secured Lender for federal income tax purposes is unclear under present law.  Although there can be no assurance with respect to this issue, the consideration paid pursuant to the Plan with respect to the Senior Secured Claims shall be allocated, pursuant to the Plan, first to the principal amount of the Senior Secured Claims as determined for federal income tax purposes and then to accrued and unpaid interest, if any, with respect to the Senior Secured Claims.  Accordingly, in cases where a Holder of a Senior Secured Claim receives distributions under the Plan having a value less than the principal amount of the Senior Secured Claim, the Debtors allocate the full amount of consideration transferred to such Holder to the principal amount of such claim and do not treat any amount of the consideration to be received by such Holder as attributable to accrued and unpaid interest.  Holders should be aware, however, that the IRS may take a different position with respect to the proper allocation.

**Section 19.04 Federal Income Tax Consequences to Holders of General Unsecured Claims**

(a)     Receipt of Liquidating Trust Interests by Holders of General Unsecured Claims. The Debtors will transfer the Liquidating Trust Assets to the Liquidating Trust and will transfer Liquidating Trust interests to the Holders of General Unsecured Claims. For federal income tax purposes, these transfers will be treated as the transfer by the Debtors of a Pro Rata portion of the Liquidating Trust Assets to the Holders of General Unsecured Claims in satisfaction of their Claims, followed by the transfer by such Holders of a Pro Rata portion of the Liquidating Trust Assets to the Liquidating Trust. A Holder of a General Unsecured Claim will recognize gain or loss measured by the difference between (i) the fair market value of its Pro Rata share of the Liquidating Trust Assets it is treated as receiving (net of any liabilities it is treated as assuming), and (ii) its basis in the Claims exchanged therefor (other than any claims for accrued interest as discussed below). The character of any gain or loss as capital or ordinary and, in the case of capital gain or loss, as short-term or long-term, will depend on a number of factors, including: (i) the tax status of the Holder of the Claim; (ii) whether the Claim is a capital asset in the hands of the Holder; (iii) whether the Claim has been held by the Holder for more than one year; (iv) the extent to which the Holder previously claimed a loss or a bad debt deduction with respect to the Claim; and (v) the extent to which the Holder acquired the Claim at a market discount. The rules governing the character, timing, and amount of bad debt deduction place considerable emphasis on the facts and circumstances of the Holder, the obligor, and the instrument with respect to which a deduction is claimed and are subject to the exchange provisions of Section 1271 of the Internal Revenue Code. Holders of General Unsecured Claims, therefore, should consult their tax advisors with respect to their ability to take such a deduction.

The deemed contribution by the Holders of General Unsecured Claims of the Liquidating Trusts Assets to the Liquidating Trust should not be a taxable transaction.

(b)     Accrued Interest. Consideration received by a Holder of a General Unsecured Claim that is attributable to accrued but unpaid interest will be treated as ordinary income, regardless of whether the Holder's existing Claims are capital assets in its hands.

The manner in which consideration is to be allocated between accrued and unpaid interest and principal of the Claims of the Holders of General Unsecured Claims for federal income tax purposes is unclear under present law. Although there can be no assurance with respect to this issue, the consideration paid pursuant to the Plan with respect to the General Unsecured Claims shall be allocated, pursuant to the Plan, first to the principal amount of the General Unsecured Claims as determined for federal income tax purposes and then to accrued and unpaid interest, if any, with respect to the General Unsecured Claims. Accordingly, in cases where a Holder of a General Unsecured Claim receives distributions under the Plan having a value less than the principal amount of the General Unsecured Claim, the Debtors allocate the full amount of consideration transferred to such Holder to the principal amount of such claim and do not treat any amount of the consideration to be received by such Holder as attributable to accrued and unpaid interest. Holders should be aware, however, that the IRS may take a different position with respect to the proper allocation.

**Section 19.05 Federal Income Tax Consequences of the Liquidating Trust**

(a)     Classification of the Liquidating Trust. The Liquidating Trust will be organized for the primary purpose of liquidating the Liquidating Trust Assets transferred to it with no

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

85

objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust. Thus, the Liquidating Trust is intended to be classified for federal income tax purposes as a "Liquidating Trust" within the meaning of Treasury Regulation Section 301.7701-4(d).  Under the Plan, all parties are required to treat the Liquidating Trust as a "Liquidating Trust," subject to definitive guidance to the contrary from the IRS.  In general, a liquidating trust is not a separate taxable entity but rather is treated as a grantor trust, pursuant to Sections 671 *et seq*. of the Internal Revenue Code, owned by the Persons who transfer assets to it.

No request for a ruling from the IRS will be sought on the classification of the Liquidating Trust.  Accordingly, there can be no assurance that the IRS would not take a contrary position to the classification of the Liquidating Trust.  If the IRS were to challenge successfully the classification of the Liquidating Trust as a grantor trust, the federal income tax consequences to the Liquidating Trust and the Holders of General Unsecured Claims could vary from those discussed herein (including the potential for an entity-level tax).

(b)     Allocation of Liquidating Trust Taxable Income and Loss And Disposition of Trust Assets. Each Holder of a Liquidating Trust interest must report on its federal income tax return its allocable share of income, gain, loss, deduction and credit recognized or incurred by the Liquidating Trust. None of the Debtors' NOLs (if any) will be available to reduce any income or gain of the Liquidating Trust.  Moreover, upon the sale or other disposition of any Liquidating Trust Asset, each Holder of a Liquidating Trust interest must report on its federal income tax return its share of any gain or loss measured by the difference between (i) its Pro Rata share of the amount of cash and/or the fair market value of any property received by the Liquidating Trust in exchange for the Liquidating Trust Asset so sold or otherwise disposed of and (ii) such Holder's adjusted tax basis in its share of such Liquidating Trust Asset.  The character of any such gain or loss to any such Holder will be determined as if such Holder itself had directly sold or otherwise disposed of the Liquidating Trust Asset.  The character of items of income, gain, loss, deduction and credit to any Holder of a Liquidating Trust interest, and the ability of such Holder to benefit from any deductions or losses, may depend on the particular circumstances or status of such Holder.

As a grantor trust, each Holder of a Liquidating Trust interest has an obligation to report its share of the Liquidating Trust's tax items (including gain on the sale or other disposition of a Liquidating Trust Asset) that is not dependent on the distribution of any Cash or other Liquidating Trust Assets by the Liquidating Trust.  Accordingly, a Holder of a Liquidating Trust interest may incur a tax liability as a result of owning a share of the Liquidating Trust Assets, regardless of whether the Liquidating Trust distributes Cash or other Liquidating Trust Assets to the Holders.  Although the Liquidating Trust Agreement provides that the Liquidating Trust generally make at least semi-annual distributions of Cash, due to the Liquidating Trust's requirement to satisfy certain liabilities, and due to possible differences in the timing of income on, and the receipt of Cash from, the Liquidating Trust Assets, a Holder of a Liquidating Trust interest may, in certain years, report and pay tax on a greater amount of income than the amount of Cash received from the Liquidating Trust by such Holder in such year.

**Section 19.06 Information Reporting and Backup Withholding**

Certain payments, including the payments with respect to Claims pursuant to the Plan, may be subject to information reporting by the Debtors or the Liquidating Trust to the IRS.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

Moreover, such reportable payments may be subject to backup withholding (currently at a rate of 28%) under certain circumstances. Backup withholding is not an additional tax. Rather, amounts withheld under the backup withholding rules may be credited against a Holder's federal income tax liability, and a Holder may obtain a refund of any excess amounts withheld under the backup withholding rules by timely filing an appropriate claim for refund with the IRS (generally a U.S. federal income tax return). The Debtors and the Liquidating Trust intend to comply with all applicable reporting withholding requirements of the Internal Revenue Code.

Holders of Allowed Claims should consult their own tax advisors regarding their qualification for exemption from backup withholding and information reporting and the procedures for obtaining such an exemption.

The Treasury Regulations generally require disclosure by a taxpayer on its U.S. federal income tax return of certain types of transactions in which the taxpayer participated, including, among other types of transactions, certain transactions that result in the taxpayer's claiming a loss in excess of certain thresholds. Holders of Allowed Claims should consult their own tax advisors regarding these Treasury Regulations and whether the exchanges contemplated by the Plan would be subject to these Treasury Regulations and require disclosure on the Holders' tax returns.

## Section 19.07 Importance of Obtaining Professional Tax Assistance

THE FOREGOING SUMMARY HAS BEEN PROVIDED FOR INFORMATIONAL PURPOSES ONLY AS MANDATED BY SECTION 1125 OF THE BANKRUPTCY CODE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S PARTICULAR CIRCUMSTANCES. ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS ARE URGED TO CONSULT THEIR TAX ADVISORS CONCERNING THE FEDERAL, STATE, LOCAL, AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.

## ARTICLE XX
## SECURITIES LAW MATTERS

## Section 20.01 Issuance and Delivery of Securities

The Debtors intend to issue New Interests to the Purchaser as part of the Transaction. Pursuant to Section 2.02(c) of the Stalking Horse SPA. At the Closing, Reorganized ~~Cano~~WFI and Global Track will issue the New Interests and deliver to the Purchaser certificates representing the New Interests. Such certificates will bear the following restrictive legend: "These securities have not been registered under the Securities Act of 1933, as amended, or any state securities law. These securities may not be sold, offered for sale, pledged or hypothecated in the absence of a registration statement in effect with respect to the securities under the Securities Act and any such state securities laws or the issuer has received documentation reasonably satisfactory to it that such transaction does not require registration under such Act and state securities laws."

Bankruptcy Code § 1145(a)(1) exempts the offer or sale of securities under a chapter 11 plan of reorganization from registration under the Securities Act and under state securities laws if three (3) principal requirements are satisfied:

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

(a)     the securities are offered or sold under a plan of reorganization and must be securities of the debtors, of an affiliate participating in a joint plan with the debtors or of a successor to the debtors under the plan;

(b)     the recipients of the securities must hold a claim against, an interest in, or a claim for an administrative expense against the debtors or such affiliate; and

(c)     the securities are offered or sold entirely in exchange for the recipient's claim against or interest in the debtors, or principally in such exchange and partly for cash or property.

The New Interests shall be exempt from registration under any federal (including the Securities Act), state or local law, rule or regulation pursuant to Bankruptcy Code § 1145 or other applicable law requiring registration prior to the offering, issuance, distribution or sale of securities; provided that if the issuance of the New Interests does not qualify for an exemption under Bankruptcy Code § 1145, the New Interests shall be issued in a manner, which qualifies for any other available exemption from registration, whether as a private placement under Rule 506 of the Securities Act, Section 4(2) of the Securities Act, and/or the safe harbor provisions promulgated thereunder with respect to transactions with accredited investors or qualified institutional buyers and not involving a public offering.

In connection with the confirmation of the Plan, the Debtors intend to seek an order from the Bankruptcy Court to the effect that the issuance of the New Interests is exempt from registration under the Securities Act and state laws.  No registration rights will be provided with respect to holders of New Interests.

### Section 20.02 Subsequent Transfers Under Federal Securities Laws

In general, all resales and subsequent transactions involving the New Interests will be exempt from registration under the Securities Act under section 4(1) of the Securities Act, unless the holder is deemed to be an "underwriter" with respect to such securities, an "affiliate" of the issuer of such securities or a "dealer."  Bankruptcy Code § 1145(b)(1) defines four types of "underwriters":

(a)     persons who purchase a claim against, an interest in, or a claim for administrative expense against the debtors with a view to distributing any security received or to be received in exchange for such a claim or interest ("accumulators");

(b)     persons who offer to sell securities offered or sold under a plan for the holders of such securities ("distributors");

(c)     persons who offer to buy securities offered or sold under a plan from the holders of the securities, if the offer to buy is (1) with a view to distributing such securities and (2) made under an agreement in connection with the plan or with the offer and sale of securities under the plan; and

(d)     a person who is an "issuer" with respect to the securities, as the term "issuer" is defined in section 2(11) of the Securities Act.

Under section 2(11) of the Securities Act, an "issuer" includes any "affiliate" of the issuer, which means any person directly or indirectly controlling or controlled by the issuer, or

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

any person under direct or indirect common control with the issuer.  Under section 2(12) of the Securities Act, a "dealer" is any person who engages either for all or part of his or her time, directly or indirectly, as agent, broker or principal, in the business of offering, buying, selling or otherwise dealing or trading in securities issued by another person.

The determination of whether a particular Person would be deemed to be an "underwriter" or an "affiliate" with respect to any security to be issued under the Plan, or would be deemed a "dealer," would depend on various facts and circumstances applicable to that Person.  Accordingly, the Debtors express no view as to whether any Person would be an "underwriter" or an "affiliate" with respect to any security to be issued under the Plan or would be a "dealer."

ANY PERSON INTENDING TO RELY ON THIS EXEMPTION IS URGED TO CONSULT HIS OR HER OWN COUNSEL AS TO THEIR APPLICABILITY TO HIS OR HER CIRCUMSTANCES.

## ARTICLE XXI

## BEST INTEREST OF CREDITORS TEST

### Section 21.01 Best Interest of Creditors Test

The Bankruptcy Code requires that the Bankruptcy Court find that the Plan is in the best interest of all holders of Claims and Interests that are Impaired by the Plan and that have not accepted the Plan as a requirement to confirm the Plan.  The "best interests" test, as set forth in Bankruptcy Code § 1129(a)(11), requires the Bankruptcy Court to find either that all members of an Impaired Class of Claims or Interests have accepted the Plan or that the Plan will provide a member who has not accepted the Plan with a recovery of property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

To calculate the probable distribution to members of each Impaired Class of Claims and Interests if the Debtors were liquidated under chapter 7, the Bankruptcy Court must first determine the aggregate dollar amount that would be generated from the disposition of the Debtors' property if liquidated in chapter 7 cases under the Bankruptcy Code.  This "liquidation value" would consist primarily of the proceeds from a forced sale of the Debtors' property by a chapter 7 trustee.

The amount of liquidation value available to Holders of unsecured Claims against the Debtors would be reduced by, first, the Claims of secured creditors (to the extent of the value of their collateral), and by the costs and expenses of liquidation, as well as by other administrative expenses and costs of the chapter 7 cases.  Costs of a chapter 7 liquidation of the debtors would include the compensation of a chapter 7 trustee and his or her counsel and other professionals, asset disposition expenses, and litigation costs.  The liquidation itself would trigger certain priority payments that otherwise would be due in the ordinary course of business.  Those priority claims would be paid in full from the liquidation proceeds before the balance would be made available to pay unsecured Claims or to make any distribution in respect of Interests.  The liquidation would also prompt the rejection of executory contracts and unexpired leases and thereby create a significantly greater amount of unsecured Claims.

In chapter 7 liquidation, no junior class of Claims or Interests may be paid unless all classes of Claims or Interests senior to such junior class are paid in full. Bankruptcy Code § 510(a) provides that subordination agreements are enforceable in a bankruptcy case to the same extent that such subordination is enforceable under applicable non-bankruptcy law. Therefore, no class of Claims or Interests that is contractually subordinated to another class would receive any payment on account of its Claims or Interests, unless and until such senior classes were paid in full.

In a chapter 7 liquidation, unsecured creditors and equity holders of a debtor are paid from available assets generally in the following order, with no junior class receiving any payments until all amounts due to senior classes have been paid fully or any such payment is provided for:

- Secured creditors (to the extent of the value of their collateral);

- Administrative and other priority creditors;

- Unsecured creditors;

- Debt expressly subordinated by its terms or by order of the Bankruptcy Court; and

- Equity holders.

Once the Bankruptcy Court ascertains the recoveries in liquidation of the Debtors' secured and priority creditors, it would then determine the probable distribution to unsecured creditors from the remaining available proceeds of the liquidation. If this probable distribution has a value greater than the value of distributions to be received by the unsecured creditors under the Plan, then the Plan is not in the best interests of creditors and cannot be confirmed by the Bankruptcy Court.

As shown in the Liquidation Analysis attached as **Exhibit D**, the Debtors believe that each member of each Class of Impaired Claims and Interests will receive at least as much, if not more, under the Plan as it would receive if the Debtors were liquidated. Accordingly, the Plan satisfies the best interest of creditors test.

## Section 21.02 Liquidation Analysis

The Debtors believe that the value of any distributions in a chapter 7 case would be less than the value of distributions under the Plan. The Debtors' belief is based primarily on:

- consideration of the effects that a chapter 7 liquidation would have on the ultimate proceeds available for distribution to holders of Impaired Claims and Interests, including:

    ° increased costs and expenses of a liquidation under chapter 7 arising from fees payable to one or more chapter 7 trustees and professional advisors to such trustee(s), who may not be familiar with the Debtors' industry and business operations;

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

90

° erosion in value of assets in a chapter 7 case in the context of the rapid liquidation required under chapter 7 and the "forced sale" atmosphere that would prevail ~~in today's negative environment for the sale of oil and gas production assets~~;

° significant adverse effects on the Debtors' businesses as a result of the likely departure of key employees;

° substantial increases in Claims, as well as substantially increased estimated contingent Claims, lease and contract rejection Claims;

° substantial delay in distributions, if any, to the holders of Claims and Interests that would likely ensue in a chapter 7 liquidation; and

• the Liquidation Analysis prepared by the Debtors.

**ARTICLE XXII**
**ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN**

The Debtors believe that the Plan affords Holders of Claims and Interests the potential for the greatest realization on the Debtors' property and, therefore, is in the best interests of such Holders. If, however, enough acceptances received from the Impaired Classes sufficient for the Debtors to confirm the Plan are not received, or the Plan is not subsequently confirmed and consummated, the theoretical alternatives include: (a) liquidation of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code; and (b) formulation of an alternative plan of reorganization.

**Section 22.01 Alternative Plan(s)**

If enough acceptances to confirm the Plan are not received or if the Plan is not confirmed, the Debtors (or, if the Debtors' exclusive periods in which to file and solicit acceptances of a reorganization plan have expired, any other party-in-interest) could attempt to formulate and propose a different plan or plans of reorganization. Such a plan or plans might involve either a reorganization and continuation of the Debtors' businesses, or an orderly liquidation of assets.

A likely scenario would involve the Debtors' turning over all assets to the Pre-Petition Secured Lenders and immediately ceasing operations. The Debtors believe that the Plan, as described herein, enables Holders of Claims and Interests to realize the highest and best value under the circumstances. The Debtors believe that this scenario or any other alternative form of chapter 11 plan is a much less attractive alternative to creditors than the Plan because of the far greater returns and certainty provided by the Plan. Other alternatives could involve diminished recoveries, significant delay, uncertainty, and substantial additional administrative costs.

**Section 22.02 Liquidation Under Chapter 7**

If no plan can be confirmed, the Debtors' ~~Chapter 11~~Bankruptcy Cases may be converted to cases under chapter 7 of the Bankruptcy Code, pursuant to which a chapter 7 trustee would be appointed (or elected) to liquidate the Debtors' assets for distribution in accordance with the priorities established by the Bankruptcy Code. A discussion of the effects that a chapter 7 liquidation would have on the recoveries of Holders of Claims and Interests is set forth below.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

The Debtors believe that a chapter 7 liquidation would result in smaller distributions to creditors than those provided for in the Plan because of:  (a) the likelihood that the property of the Debtors would have to be sold or otherwise disposed of in a less orderly fashion over a shorter period of time; (b) additional administrative expenses involved in the appointment of a trustee; and (c) additional expenses and claims, some of which would be entitled to priority, which would be generated during the liquidation and from the rejection of leases and other executory contracts in connection with a cessation of the Debtors' operations.

Specifically, the Debtors' costs of a chapter 7 liquidation would include the fees payable to a chapter 7 trustee, as well as those fees that might be payable to attorneys and other professionals that the trustee might engage.  In addition, claims would arise by reason of the breach or rejection of obligations incurred and leases and executory contracts assumed or entered into by the Debtors during the pendency of the ~~Chapter 11~~Bankruptcy Cases.  The foregoing types of claims and other claims that might arise in a liquidation case or result from the pending ~~Chapter 11~~Bankruptcy Cases, including any unpaid expenses incurred by the Debtors and the Committee ~~(if any)~~ during the ~~Chapter 11~~Bankruptcy Cases such as compensation for attorneys, financial advisors and accountants, would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay the Allowed General Unsecured Claims.

To determine if the Plan is in the best interests of each Impaired Class, the value of the distributions from the proceeds of a liquidation of the Debtors' unencumbered assets and properties, after subtracting the amounts attributable to the foregoing claims, are then compared with the value of the property offered to such Classes of Claims and Interests under the Plan.

After considering the effects that a chapter 7 liquidation would have on the ultimate proceeds available for distribution to the Holders of Claims and Interests in the ~~Chapter 11~~Bankruptcy Cases, including (i) the increased costs and expenses of a chapter 7 liquidation arising from fees payable to a chapter 7 trustee in bankruptcy and professional advisors to the trustee; (ii) the likely erosion in value of assets in a chapter 7 case in the context of an expeditious liquidation and the "forced sale" atmosphere that would prevail under a chapter 7 liquidation; and (iii) the substantial increases in Claims which would be satisfied on a priority basis or on parity with creditors in the ~~Chapter 11~~Bankruptcy Cases, the Debtors have determined that Confirmation of the Plan will provide each Holder of an Allowed Claim or Interest with a recovery that is not less than such Holder would receive pursuant to a chapter 7 liquidation.

The Debtors' Liquidation Analysis provides a summary of the liquidation values of the Debtors' assets, assuming a chapter 7 liquidation in which a chapter 7 trustee appointed by the Bankruptcy Court would liquidate the assets of the Debtors' estates.  The Liquidation Analysis was prepared by the Debtors.

Underlying the Liquidation Analysis are a number of estimates and assumptions that, although developed and considered reasonable by management, are inherently subject to significant economic and competitive uncertainties and contingencies beyond the control of the Debtors and their management.  The Liquidation Analysis is also based on assumptions with regard to liquidation decisions that are subject to change.  Accordingly, the values reflected might not be realized if the Debtors were, in fact, to undergo such a liquidation.  The chapter 7 liquidation period is assumed to be a period of 6 months, allowing for, among other things, the (i)

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

discontinuation of the Debtors' operations; (ii) sale of property; and (iii) collection of receivables.

## ARTICLE XXIII
## VOTING PROCEDURES AND CONFIRMATION REQUIREMENTS

### Section 23.01 Ballots and Voting Deadline

A Ballot for voting to accept or reject the Plan is enclosed with this Disclosure Statement, and has been mailed to holders of Claims and Interests entitled to vote.  After carefully reviewing this Disclosure Statement and all exhibits, including the Plan, each holder of a Claim entitled to vote should indicate its vote on the enclosed Ballot.  All holders of Claims or Interests entitled to vote must (i) carefully review the Ballot and instructions thereon, (ii) execute the Ballot, and (iii) return it to the address indicated on the Ballot by the Voting Deadline (defined below) for the Ballot to be considered.

The Bankruptcy Court has directed that, in order to be counted for voting purposes, Ballots for the acceptance or rejection of the Plan must be ***received*** by the Balloting Agent **no later than December ——,17, 2013 at 5:00 p.m. ~~Pacific Standard Time~~(PST)** (the "Voting Deadline") at the following address:

Larson & Zirzow, LLC
Attn:  Matthew C. Zirzow, Esq.
810 S. Casino Center Blvd., Suite 101
Las Vegas, Nevada 89101
Facsimile:  (702) 382-1169
E-mail:  mzirzow@lzlawnv.com

ANY BALLOTS RECEIVED AFTER THE VOTING DEADLINE WILL NOT BE COUNTED.

### Section 23.02 Holders of Claims Entitled to Vote

Except as otherwise provided in the Plan, any holder of a Claim against the Debtors whose claim is impaired under the Plan is entitled to vote, if either (i) the Debtors  have scheduled the holder's Claim at a specific amount other than $0.00 (and such Claim is not scheduled as "disputed," "contingent," or "unliquidated") or (ii) the holder of such Claim has filed a Proof of Claim on or before the deadline set by the Bankruptcy Court for such filings in a liquidated amount.  Any holder of a Claim as to which an objection has been filed (and such objection is still pending as of the time of confirmation of the Plan) is not entitled to vote, unless the Bankruptcy Court (on motion by a party whose Claim is subject to an objection) temporarily allows the Claim in an amount that it deems proper for the purpose of accepting or rejecting the Plan.  Such motion must be heard and determined by the Bankruptcy Court before the first date set by the Bankruptcy Court for the Confirmation Hearing of the Plan.  In addition, the vote of a holder of a Claim may be disregarded if the Bankruptcy Court determines that the holder's acceptance or rejection was not solicited or procured in good faith or in accordance with the applicable provisions of the Bankruptcy Code.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

## Section 23.03 Classes Impaired Under the Plan

Priority Non-Tax Claims (Classes A1, B1, C1) and Miscellaneous Secured Claims (Classes A4, B4, C4) are not impaired under the Plan.  Pursuant to Bankruptcy Code § 1126(f), holders of Priority Non-Tax Claims and Miscellaneous Secured Claims are conclusively presumed to have accepted the Plan, and therefore are not entitled to vote to accept or reject the Plan.

The Senior Secured Claims (Classes A2, B2, C2), B Class Secured Claims (Class A3), and General Unsecured Claims (Classes A5, B5, C5), are impaired under the Plan and are entitled to vote to accept or reject the Plan.

Holders of Intercompany Claims (Classes A6, B6, C6) and Interests (Classes A8, B8, C8) are impaired under the Plan, but will not receive or retain any property under the Plan.  As such, holders of Intercompany Claims and Interest are conclusively deemed to reject the Plan, and therefore, are not entitled to vote to accept or reject the Plan.

## Section 23.04 Information on Voting and Ballots

(a)    <u>Transmission of Ballots to Creditors.</u> Ballots are being forwarded to all holders of Claims entitled to vote.  Those holders of Claims whose Claims are unimpaired under the Plan are conclusively presumed to have accepted the Plan under Bankruptcy Code § 1126(f), and therefore need not vote with regard to the Plan.

(b)    <u>Ballot Tabulation Procedures.</u> For purposes of voting on the Plan, the amount and classification of a Claim and the procedures that will be used to tabulate acceptances and rejections of the Plan shall be exclusively as follows:

(i)    If no Proof of Claim has been timely filed, the voted amount of a Claim shall be equal to the amount listed for the particular Claim in the Schedules, as and if amended, to the extent such Claim is not listed as "contingent," "unliquidated," or "disputed," and the Claim shall be placed in the appropriate Class, based on the Debtor's records, and consistent with the Schedules of Assets and Liabilities and the Claims registry of the Clerk of the Bankruptcy Court (the "<u>Clerk</u>");

(ii)    If a Proof of Claim has been timely filed, and has not been objected to before the expiration of the Voting Deadline, the voted amount of that Claim shall be as specified in the Proof of Claim filed with the Clerk;

(iii)    Subject to subparagraph (d) below, a Claim that is the subject of an objection filed before the Voting Deadline shall be disallowed for voting purposes;

(iv)    If a Claim has been estimated or otherwise allowed for voting purposes by order of the Bankruptcy Court, the voted amount and classification shall be that set by the Bankruptcy Court;

(v)    If a holder of a Claim or its authorized representative did not use the Ballot form provided by the Debtors, or the Official Ballot Form authorized under the Federal Rules of Bankruptcy Procedure, such vote will not be counted;

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

(vi)    If the Ballot is not received by the Balloting Agent on or before the Voting Deadline at the place fixed by the Bankruptcy Court, the Ballot will not be counted;

(vii)    If the Ballot is not signed by the holder of a Claim or its authorized representative the Ballot will not be counted;

(viii)    If the individual or institution casting the Ballot (whether directly or as a representative) was not the holder of a Claim on the Voting Record Date (as that term is defined below), the Ballot will not be counted;

(ix)    If the holder of a Claim or its authorized representative did not check one of the boxes indicating acceptance or rejection of the Plan, or checked both such boxes, the Ballot will not be counted;

(x)    Whenever a holder of a Claim submits more than one Ballot voting the same Claim(s) before the applicable deadline for submission of Ballots, except as otherwise directed by the Bankruptcy Court after notice and a hearing, the last such Ballot shall be deemed to reflect the voter's intent and shall supersede any prior Ballots.

(c)    <u>Execution of Ballots by Representatives.</u> If a Ballot is signed by trustees, executors, administrators, guardians, attorneys-in-fact, officers of corporations, or others acting in a fiduciary or representative capacity, such persons <u>must</u> indicate their capacity when signing and, at the Debtors' request, must submit proper evidence satisfactory to the Debtors of their authority to so act.

(d)    <u>Waivers of Defects and Other Irregularities Regarding Ballots.</u> Unless otherwise directed by the Bankruptcy Court, all questions concerning the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of Ballots will initially be determined by the Debtors, subject to review by the Bankruptcy Court, whose determination will be final and binding.

(e)    <u>Withdrawal of Ballots and Revocation.</u> Any holder of a Claim in an impaired Class who has delivered a valid Ballot for the acceptance or rejection of the Plan may withdraw such acceptance or rejection by delivering a written notice of withdrawal to counsel for the Debtors at any time before the Voting Deadline.

To be valid, a notice of withdrawal must:  (i) contain the description of the Claims to which it relates and the aggregate principal amount, represented by such Claims; (ii) be signed by the holder of the Claim or Interest in the same manners as the Ballot; and (iii) be received by counsel for the Debtors in a timely manner at the addresses set forth herein.  The Debtors expressly reserve the absolute right to contest the validity of any such withdrawals of Ballots.

Unless otherwise directed by the Bankruptcy Court, a purported notice of withdrawal of Ballot that is not received in a timely will not be effective to withdraw a previously furnished Ballot.

Any holder of a Claim who has previously submitted a properly completed Ballot before the Voting Deadline may revoke such Ballot and change its vote by submitting to the Balloting Agent before the Voting Deadline a subsequent, properly completed Ballot for acceptance or rejection of the Plan.

**Section 23.05 The Confirmation Hearing**

Bankruptcy Code § 1128(a) requires the Bankruptcy Court, after notice, to hold a Confirmation Hearing. Bankruptcy Code § 1128(b) provides that any party-in-interest may object to Confirmation of the Plan.

The Bankruptcy Court has scheduled the Confirmation Hearing for **December 20, 2013, at 9:30 a.m.**, prevailing Pacific Time **(PST)**, before the Honorable Laurel E. Davis, United States Bankruptcy Judge, United States Bankruptcy Court for the District of Nevada, at the Foley Federal Building, 3rd Floor, Courtroom III, 300 Las Vegas Blvd. South, Las Vegas, Nevada 89101.

Objections to Confirmation of the Plan must be filed and served on the Debtors and the other parties set forth in this Disclosure Statement Order, and certain other parties, by no later than **December** **17, 2013 at 5:00 p.m. (PST)**, 2013, in accordance with this Disclosure Statement Order. THE BANKRUPTCY COURT MAY NOT CONSIDER OBJECTIONS TO CONFIRMATION OF THE PLAN IF ANY SUCH OBJECTIONS HAVE NOT BEEN TIMELY SERVED AND FILED IN COMPLIANCE WITH THIS DISCLOSURE STATEMENT ORDER.

The notice of the Confirmation Hearing will contain, among other things, the deadline to object to Confirmation of the Plan, the Voting Deadline, and the date and time of the Confirmation Hearing.

**Section 23.06 Statutory Requirements for Confirmation of the Plan**

At the Confirmation Hearing, the Bankruptcy Court shall determine whether the requirements of Bankruptcy Code § 1129 have been satisfied. The Debtors believe that the Plan satisfies or will satisfy the applicable requirements, as follows:

• The Plan complies with the applicable provisions of the Bankruptcy Code.

• The Debtors, as Plan proponent, will have complied with the applicable provisions of the Bankruptcy Code

• The Plan has been proposed in good faith and not by any means forbidden by law.

• Any payment made or promised under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11Bankruptcy Cases, or in connection with the Plan and incident to the case, has been disclosed to the Bankruptcy Court, and any such payment: (a) made before the Confirmation of the Plan is reasonable; or (b) subject to the approval of the Bankruptcy Court as reasonable if it is to be fixed after the Confirmation of the Plan.

• The Debtors, as Plan proponent, have disclosed the identity and affiliations of any individual proposed to serve, after Confirmation of the Plan, as a director, officer, or voting trustee of the Debtors, an Affiliate of the Debtors participating in the Plan with the Debtors, or a successor to the Debtors under the Plan, and the appointment to, or continuance in, such office of such individual is consistent with the interests of creditors and equity holders and with public policy.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

• The Debtors, as Plan proponent, have disclosed the identity of any insider (as defined in Bankruptcy Code section 101) that will be employed or retained by Reorganized ~~Cano~~Debtors, and the nature of any compensation for such insider.

• The Plan does not propose any rate change that is subject to approval by a governmental regulatory commission.

• Either each Holder of an Impaired Claim or Interest has accepted the Plan, or will receive or retain under the Plan on account of that Claim or Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that the Holder would receive or retain if the Debtors were liquidated on that date under chapter 7 of the Bankruptcy Code.

• Each Class of Claims that is entitled to vote on the Plan has either accepted the Plan or is not Impaired under the Plan, or the Plan can be confirmed without the approval of each voting Class pursuant to Bankruptcy Code § 1129(b).

• Except to the extent that the Holder of a particular Claim will agree to a different treatment of its Claim, the Plan provides that Administrative Claims, Priority Tax Claims and, Priority Non-Tax will be paid in full, in Cash, on the Effective Date, or as soon thereafter as practicable.

• At least one Class of Impaired Claims will accept the Plan, determined without including any acceptance of the Plan by any insider holding a Claim of that Class.

• Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors or any successors thereto under the Plan unless such a liquidation or reorganization is proposed in the Plan.

• All fees of the type described in 28 U.S.C. § 1930, including the fees of the United States Trustee, will be paid as of the Effective Date.

• The Debtors have no retirement benefit obligations except for 401(k) plans, and such plans will be rolled over.

The Debtors believe that: (a) the Plan satisfies or will satisfy all of the statutory requirements of chapter 11 of the Bankruptcy Code; (b) it has complied or will have complied with all of the requirements of chapter 11; and (c) the Plan has been proposed in good faith.

**Section 23.07 Acceptance by Impaired Class**

The Bankruptcy Code requires, as a condition to Confirmation, that, except as described in the following section, each Class of Claims or Interests that is Impaired under the Plan accept the Plan. A class that is not impaired under a plan of reorganization is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required. A class is impaired unless the plan: (a) leaves unaltered the legal, equitable and contractual rights to which the claim or interest entitles the holder of that claim or interest; or (b) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest after the occurrence of a default--(1) cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in Bankruptcy Code § 365(b)(2) of this title or of a kind that Bankruptcy Code § 365(b)(2) expressly does not

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

require to be cured; (2) reinstates the maturity of such claim or interest; (3) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (4) if such claim or such interest arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a nonresidential real property lease subject to Bankruptcy Code § 365(b)(1)(A), compensates the holder of such claim or such interest (other than the debtor or an insider) for any actual pecuniary loss incurred by such holder as a result of such failure; and (5) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

## Section 23.08 Confirmation Without Acceptance of All Impaired Classes

Bankruptcy Code § 1129(b) allows a bankruptcy court to confirm a plan, even if an impaired classes entitled to vote on the plan has not accepted it, provided that the plan has been accepted by at least one impaired Class. Holders of Interests in Classes A8, B8, and C8 are deemed to reject the Plan and, therefore, the Debtors intend to confirm the plan pursuant to Bankruptcy Code § 1129(b). Bankruptcy Code § 1129(b) states that, notwithstanding an impaired class's failure to accept a plan of reorganization, the plan shall be confirmed, at the plan proponent's request, in a procedure commonly known as "cram down," so long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to each class of claims or equity interests that is impaired under, and has not accepted, the plan.

The condition that a plan be "fair and equitable" with respect to a non-accepting class of unsecured claims includes the following requirement that either: (a) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (b) the holder of any claim or equity interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or equity interest any property.

The Debtors reserve the right to alter, amend, modify, revoke or withdraw the Plan or any Exhibit or Schedule, including to amend or modify it to satisfy Bankruptcy Code § 1129(b), if necessary.

## Section 23.09 Identity of Persons to Contact for More Information

Any interested party desiring further information about the Plan should contact the Balloting Agent at the phone number and/or address listed in Section 1.07 of this Disclosure Statement.

*[Signature Page Immediately Follows]Rest of page intentionally left blank]*

## ARTICLE XXIV
## CONCLUSION AND RECOMMENDATION

The Debtors believe that the Plan is in the best interests of all Holders of Claims and Interests, and urge those Holders of Claims entitled to vote to accept the Plan and to evidence such acceptance by returning their Ballots so they will be ***received*** by the Balloting Agent no later than 5:00 p.m., prevailing Pacif'ic Time on **December ___, 2013 17, 2013 at 5:00 p.m. (PST)**. If the Plan is not confirmed, or if Holders in those Classes do not vote to accept the Plan, the Holders in those Classes may not receive a distribution.

Dated: November ___, 2013.  WESTERN FUNDING INCORPORATED,
a California corporation,

By: _____

Dated: November ___, 2013.  WESTERN FUNDING INC. OF NEVADA,
a Nevada corporation,

By: _____

Dated: November ___, 2013.  GLOBAL TRACK GPS, LLC,
a Delaware limited liability company,

By: _____

Prepared and Submitted:

LARSON & ZIRZOW, LLC

By: _____
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzlawnv.com
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Attorneys for Debtors

Prepared and Submitted:

LARSON & ZIRZOW, LLC

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

99

By:

ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzlawnv.com
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Attorneys for Debtors

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

Document comparison by Workshare Compare on Monday, November 25, 2013 10:23:11 AM

| Input: | |
|---|---|
| Document 1 ID | file://C:\Users\matt\Desktop\Final Filed Proposed Disclosure Statement.doc |
| Description | Final Filed Proposed Disclosure Statement |
| Document 2 ID | file://C:\Users\matt\Desktop\WFI Disclosure Statement v.3.doc |
| Description | WFI Disclosure Statement v.3 |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 555 |
| Deletions | 404 |
| Moved from | 12 |
| Moved to | 12 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 983 |

# EXHIBIT 2

LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzlawnv.com
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Telephone: (702) 382-1170
Fascimile: (702) 382-1169
Attorneys for Debtors

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>WESTERN FUNDING INCORPORATED,<br><br>        Debtor. | Case No.: BK-S-13-17588-LED<br>Chapter 11<br>(Jointly Administered) |
| In re:<br><br>WESTERN FUNDING INC. OF NEVADA,<br><br>        Debtor. | Case No.: BK-S-13-17586-LED<br>Chapter 11 |
| In re:<br><br>GLOBAL TRACK GPS, LLC,<br><br>        Debtor. | Case No.: BK-S-13-17589-LED<br>Chapter 11 |

## [*PROPOSED*] JOINT PLAN OF REORGANIZATION

DATED:  November ——25, 2013

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

# TABLE OF CONTENTS

JOINT PLAN OF REORGANIZATION .................................................................. 1

INTRODUCTION .......................................................................................... 76

ALL HOLDERS OF CLAIMS OR INTERESTS ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT CAREFULLY AND IN THEIR ENTIRETY BEFORE VOTING ON THIS PLAN. ............................................................ 7

ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME

Section 1.01    Scope of Defined Terms; Rules of Construction .............................. 76
Section 1.02    Defined Terms ................................................................ 76
Section 1.03    Rules of Interpretation ...................................................... 2221
Section 1.04    Computation of Time .......................................................... 2221
Section 1.05    Reference to Monetary Figures ................................................ 2221
Section 1.06    Exhibits and Plan Supplement ................................................. 2221
Section 1.07    Deemed Acts .................................................................. 22

ARTICLE II  UNCLASSIFIED CLAIMS ................................................................ 22
Section 2.01    Treatment of Administrative Claims ........................................... 2322
Section 2.02    Bar Dates for Certain Claims ................................................. 2322
Section 2.03    Payment of Statutory Fees .................................................... 24
Section 2.04    Treatment of Priority Tax Claims ............................................. 24

ARTICLE III  CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS . 2524
Section 3.01    Introduction ................................................................. 2524
Section 3.02    Voting; Presumptions ......................................................... 2524
Section 3.03    Identification of Claims and Interests ....................................... 25
CHART 3.03(A) - WFI ............................................................................. 2625
CHART 3.03(B) - WFIN ........................................................................... 26
CHART 3.03(C) - GPS ............................................................................

ARTICLE IV  TREATMENT OF CLAIMS AND INTERESTS .................................. 27
Section 4.01    Priority Non-Tax Claims ...................................................... 27
Section 4.02    Senior Secured Claims ........................................................ 2827
Section 4.03    Miscellaneous Secured Claims ................................................. 2928
Section 4.04    B Member Secured Claims ......................................................
Section 4.05    General Unsecured Claims ..................................................... 3129
Section 4.06    Intercompany Claims .......................................................... 3130
Section 4.07    Interests .................................................................... 3130
Section 4.08    One Satisfaction of Senior Secured Claims .................................... 3130

ARTICLE V 32  ACCEPTANCE OR REJECTION OF THIS PLAN ............................ 30
Section 5.01    Designation of Unimpaired Classes ............................................ 3230
Section 5.02    Designation of Impaired Classes .............................................. 3230
Section 5.03    Classes Entitled to Vote ..................................................... 3231

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

2

C&C Draft 11/12/13

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

Section 5.04    Classes Not Entitled to Vote .................................................... 3231
Section 5.05    Date of Distributions on Account of Allowed Claims .................. 3231
Section 5.06    Sources of Cash for the Plan Distributions ............................... 3231
Section 5.07    Cram Down – Nonconsensual Confirmation ............................. 3331
ARTICLE VI    33  MEANS FOR IMPLEMENTATION OF THIS PLAN AND POST
EFFECTIVE DATE GOVERNANCE .............................................................. 32
Section 6.01    Sale of the Acquired Property ................................................... 3332
Section 6.02    Application of PSA Sale Proceeds ............................................ 32
Section 6.03    Sale of the Excluded Retail Contracts .........................................
Section 6.04    Sale of the Excluded Real Properties ...........................................
Section 6.05    Other Assets ............................................................................... 33
Section 6.06    Other Assets ............................................ 35Avoidance Actions
34
Section 6.07    Avoidance Actions ..................................................................... 35
Section 6.08    Purchase and Sale Agreement and Related Documents .......... 3634
Section 6.086.08    Deemed Consolidation of Debtors for Plan Purposes Only. ..... 3634
Section 6.106.09    Creation of Liquidating Trust ................................................. 3735
Section 6.116.10    Governance Documents ........................................................... 3735
Section 6.126.11    Directors and Officers ............................................................. 3735
Section 6.136.12    Cancellation of Existing Secured Claims ............................... 3735
Section 6.146.13    Vesting of the Vested Assets .................................................. 3736
Section 6.156.14    Cancellation of Interests ......................................................... 3836
Section 6.166.15    Issuance of New Interests ....................................................... 3836
Section 6.176.16    Exemption from Registration .................................................. 3837
Section 6.186.17    Authorization for Transaction ................................................ 3937
Section 6.196.18    Preservation of Rights of Action; Settlement ........................ 38
Section 6.19    [Reserved] ................................................................................. 39
Section 6.20    Employee Benefit Plans ........................................................... 40
Section 6.21    Exclusivity Period .................................................................... 4039
Section 6.226.21    Effectuating Documents ......................................................... 4039
Section 6.236.22    Exemption from Certain Transfer Taxes ................................ 4039
Section 6.246.23    Liquidating Trustee Closing of the Bankruptcy Cases. .......... 4139

ARTICLE VII 41  LIQUIDATING TRUST AND LIQUIDATING TRUSTEE ....... 40
Section 7.01    The Creation of the Liquidating Trust ..................................... 4140
Section 7.02    Funding of Res of Trust ........................................................... 4140
Section 7.03    The Liquidating Trustee ........................................................... 4240
Section 7.04    Retention of Professionals ....................................................... 4241
Section 7.05    Compensation of the Liquidating Trustee ............................... 4341
Section 7.06    Liquidating Trust Expenses ..................................................... 4342
Section 7.07    Liability; Indemnification ........................................................ 4342
Section 7.08    Termination ............................................................................... 4442
Section 7.09    Liquidating Trustee Authority .................................................. 4443

ARTICLE VIII 45  PROVISIONS GOVERNING DISTRIBUTIONS GENERALLY .... 43
Section 8.01    Timing and Delivery of Distributions ..................................... 4543
Section 8.02    Method of Cash Distributions .................................................. 4543

C&C Draft 11/12/13

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

Section 8.03        Failure to Negotiate Checks ........................................ 45 44
Section 8.04        Fractional Dollars ...................................................... 45 44
Section 8.05        Compliance with Tax Requirements ............................ 46 44
Section 8.06        *De Minimis* Distributions ......................................... 46 44
Section 8.07        Setoffs ....................................................................... 46 44
Section 8.08        Distribution Record Date ............................................ 46 45

ARTICLE IX 46  RESERVES ADMINISTERED BY THE LIQUIDATING TRUST .............. 45
Section 9.01        Establishment of Reserve Accounts, Other Assets and Beneficiaries
Section 9.02        Undeliverable Distribution Reserve ............................ 47 45
Section 9.03        Claims Reserve ........................................................... 47 46

Section 9.04        Liquidating Trust Expense Reserve ............................ 47
Section 9.05        Avoidance Actions Proceeds Reserve .......................... 48

ARTICLE X 48  EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND OTHER AGREEMENTS .............................................. 46
Section 10.01       Assumption/Rejection
Section 10.02       Cure Amounts ............................................................ 48 46
Section 10.03       Assumed Executory Contracts and Unexpired Leases .. 48 46
Section 10.04       Insurance Policies ...................................................... 49 47
Section 10.05       Pass-through .............................................................. 49 47
Section 10.06       Claims Based on Rejection of Executory Contracts and Unexpired Leases 49 47
Section 10.07       Reservation of Rights ................................................. 50 48
Section 10.08       Nonoccurrence of Effective Date ................................ 50 48

ARTICLE XI          50  PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS ......................................... 48
Section 11.01       Expunging of Certain Claims
Section 11.02       Objections to Claims .................................................. 50 48
Section 11.03       Estimation of Claims .................................................. 51 49
Section 11.04       No Distributions Pending Allowance .......................... 51 49
Section 11.05       Distributions After Allowance .................................... 51 49
Section 11.06       Reduction of Claims ................................................... 52 50

ARTICLE XII         52  CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THIS PLAN .................................
Section 12.01       Conditions Precedent to Confirmation
Section 12.02       Occurrence of the Effective Date ................................ 52 50
Section 12.03       Substantial Consummation .......................................... 53 51
Section 12.04       Waiver of Conditions ................................................. 53 51
Section 12.05       Revocation, Withdrawal, or Non-Consummation ......... 53 51

ARTICLE XIII        54

    AMENDMENTS AND MODIFICATIONS ........................... 54 52

ARTICLE XIV         54

    RETENTION OF JURISDICTION ..................................... 54 52

ARTICLE XV 56  EFFECT OF THIS PLAN ON CLAIMS AND INTERESTS ................. 54
Section 15.01        Compromise and Settlement ......................................................
Section 15.02        Satisfaction of Claims ..............................................................5654
Section 15.03        Discharge of Liabilities ............................................................5755
Section 15.04  Releases ..........................................................57 Release of Stalking Horse
Section 15.05        Exculpation ..............................................................................6156
Section 15.06        Permanent Injunction ..............................................................6156
Section 15.07        Setoffs ......................................................................................6256
Section 15.08        Recoupment ..............................................................................6257
Section 15.09        Release of Liens ......................................................................6257
Section 15.10        Good Faith ................................................................................6357
Section 15.11        Rights of Defendants and Avoidance Actions ........................6357

ARTICLE XVI    63

    MISCELLANEOUS PROVISIONS .......................................................6358
Section 16.01        Severability of Plan Provisions ..............................................
Section 16.02        Successors and Assigns ............................................................6358
Section 16.03        Binding Effect ..........................................................................6358
Section 16.04        Notices ......................................................................................6458
Section 16.05        Term of Injunctions or Stay ....................................................6560
Section 16.06        Dissolution of Committee ........................................................6560
Section 16.07        No Admissions ..........................................................................6560
Section 16.08        Notice of the Effective Date ....................................................6560
Section 16.09        Default Under Plan ..................................................................6560
Section 16.12 16.10  Entire Agreement ....................................................................6661

ARTICLE XVII    67

    CONFIRMATION REQUEST ..............................................................6762

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

1
2
2
3
3
4
4
5
5
6
6
7
7
8
8
9
10
10
11
11
12
12
13
13
14
14
15
15
16
16
17
17
18
18
19
19
20
20
21
21
22
22
23
23
24
24
25
25
26
27
28
28

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INTRODUCTION

Western Funding Incorporated, a California corporation, Western Funding Inc. of Nevada, a Nevada corporation, and Global Track GPS, LLC, a Delaware limited liability company, as debtors and debtors-in-possession (collectively, the "Debtors"), filed for bankruptcy protection on September 4, 2013. The Debtors hereby propose the following *Joint Plan of Reorganization* for the resolution of outstanding creditor claims against, and equity interests in, the Debtors. The Debtors are the proponents of this Plan within the meaning of Bankruptcy Code § 1129 (as hereinafter defined).

Although styled as a "joint plan," this Plan consists of three (3) separate plans (one for each of the Debtors). Consequently, except as provided in this Plan, for purposes of voting on this Plan and making and receiving distributions under this Plan, votes will be tabulated separately for each Debtor with respect to each Debtor's plan of reorganization and distributions will be made separately to each separate Class as provided in this Plan. Reference is made to the Disclosure Statement (as hereinafter defined) for a discussion of the Debtors' history, businesses, properties, results of operations and projections of future operations, as well as a summary and description of this Plan and certain related matters. No materials other than the Disclosure Statement, this Plan and any exhibits and schedules attached hereto or thereto or referenced herein or therein have been authorized by the Debtors for use in soliciting acceptances or rejections of this Plan.

**ALL HOLDERS OF CLAIMS OR INTERESTS ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT CAREFULLY AND IN THEIR ENTIRETY BEFORE VOTING ON THIS PLAN.**

## ARTICLE I
## DEFINED TERMS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME

### Section 1.01   Scope of Defined Terms; Rules of Construction

For purposes of this Plan, except as expressly defined elsewhere in this Plan or unless the context otherwise requires, all capitalized terms used herein shall have the meanings ascribed to them in Article I of this Plan. Any term used but not defined herein that is defined in the Bankruptcy Code or the Bankruptcy Rules, as the case may be, shall have the meaning ascribed in the Bankruptcy Code or the Bankruptcy Rules. Whenever the context requires, such terms shall include the plural as well as the singular. The masculine gender shall include the feminine, and the feminine gender shall include the masculine. If any inconsistency exists between the Plan and the Confirmation Order, the terms of the Confirmation Order shall control. If any inconsistency exists between the Plan, on the one hand, and the Disclosure Statement or any other document, the terms of the Plan shall control.

### Section 1.02   Defined Terms

(1)    **Acquired Property** means the New Interests, Vested Assets and/or the Debtor Assets, as the case may be, that are purchased by the Successful Bidder pursuant to the Purchase and Sale Agreement.

6

(2)    **Administrative Claim(s)** means a Claim(s) for costs and expenses of administration pursuant to Bankruptcy Code §§ 503(b), 507(a)(2), 507(b), or 1114(e)(2), including:  (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries, or commissions for services, and payments for goods and other services and leased premises); (b) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of Title 28 of the United States Code; (c) all Allowed Professional Fee Claims; (d) any Cure Costs; and (e) all Claims for compensation or expense reimbursement for making a substantial contribution in the Bankruptcy Cases pursuant to Bankruptcy Code §§ 503(b)(3), (4), and (5) Allowed by the Bankruptcy Court.

(3)    **Administrative Claims Bar Date** shall have the meaning set forth in Section 2.02 of this Plan unless the Bankruptcy Court orders otherwise.

(4)    **Affiliate** means, with respect to any Person, any other Person directly or indirectly controlling, controlled by, or under common control with such other Person. For such purposes, the term "control" means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by Contract or otherwise, and the term "controlling" or "controlled" or other similar words have the corresponding meanings.

(5)    **Allowed** means with reference to any Claim or Interest: any Claim or Interest or any portion thereof (a) as to which no objection to allowance has been interposed on or before the latter of (i) the Claim Objection Deadline or (ii) the expiration of such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or is listed on the Bankruptcy Schedules as liquidated, non-contingent and undisputed; (b) as to which any objection to its allowance has been settled, waived through payment or withdrawn, as permitted herein, or denied by a Final Order; (c) as to which liability of the Debtors and the amount thereof has been determined and expressly allowed by a Final Order; (d) as to which the liability of the Debtors and the amount thereof are determined and expressly allowed by Final Order of a court of competent jurisdiction other than the Bankruptcy Court; or (e) that is expressly deemed allowed in a liquidated amount in this Plan; *provided, however*, that with respect to an Administrative Claim, "Allowed Administrative Claim" means an Administrative Claim as to which a timely request for payment has been made in accordance with Section 2.02 of this Plan (if such written request is required) or other Administrative Claim, in each case as to which the Debtors, the Pre-Petition Agent, or the Liquidating Trustee (1) have not interposed a timely objection or (2) have interposed a timely objection and such objection has been settled, waived through payment or withdrawn, as permitted herein, or denied by a Final Order.

(6)    **Allowed Plan Carve Out Claims** means the Allowed Administrative Claims (including Cure Costs), Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and Allowed Miscellaneous Secured Claims.

(7)    **Alternative Bidder** means any party that has made a bona fide written proposal prior to the Bid Deadline relating to an Alternative Transaction.

(8)    **Alternative Transaction** means, other than the Transactions and the Plan, any (i) sale, transfer or other disposition, directly or indirectly, of any material assets of any Debtor (except any such sale, transfer or other disposition effected in the Ordinary Course of Business),

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

(ii) issuance, sale, transfer or other disposition, in each case by any Debtor, of any class of equity securities, ownership interests or voting securities of any Debtor, (iii) merger, share exchange, consolidation, recapitalization, reorganization, business combination or other similar transaction involving any Debtor, (v) any transaction involving an acquisition of any assets or securities of any Debtor, a capital contribution to any Debtor or a restructuring of any indebtedness of any Debtor proposed by or on behalf of any equityholder or debtholder of any Debtor, (vi) any transaction that is conditioned or predicated on the transactions contemplated by the Purchase and Sale Agreement not being completed in accordance with the terms of that agreement or is intended or could reasonably be expected to result in such not being so completed or (vii) any Chapter 11 plan of reorganization or other restructuring or reorganization for, or liquidation of, any Debtor (other than this Plan).

(9)    **Auction** means the Bankruptcy Court ordered event by which competing bids are obtained for the Acquired Property as contemplated by the Bid Procedures Order.

(10)    **Available Cash** means all Cash and Cash Equivalents of the Debtors other than any proceeds from the sale or other disposition of Excluded Real Properties and Avoidance Actions, determined in accordance with generally accepted accounting principles in the United States, as of 11:59 PM on the date immediately before the Closing.

(11)    **Avoidance Actions** means any and all actual or potential claims or Causes of Action to avoid a transfer of property or an obligation incurred by the Debtors pursuant to any applicable section of the Bankruptcy Code, including §§ 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a).

~~(12)    **Avoidance Actions Proceeds** means the proceeds of the resolution of Avoidance Actions.~~

~~(13)    **Avoidance Actions Proceeds Reserve** means the Distribution Reserve Account established for the Avoidance Actions Proceeds.~~

(12)    ~~(14)~~ **B Member Secured Claims** means any Allowed Secured Claims held by the B members of Harbor Structured Finance, LLC, a Delaware limited liability company, secured by a Lien on any property of Debtors.

(13)    ~~(15)~~ **Ballot** means the document for accepting or rejecting the Plan, in the form approved by the Bankruptcy Court.

(14)    ~~(16)~~ **Bankruptcy Case(s)** means (a) when used in reference to a particular Debtor or group of Debtors, the Chapter 11 case or cases pending for that Debtor or particular group of Debtors in the Bankruptcy Court, and (b) when used in reference to all of the Debtors, the above-captioned jointly-administered Chapter 11 cases pending for the Debtors in the Bankruptcy Court.

(15)    ~~(17)~~ **Bankruptcy Code** means Title 11 of the U.S. Code, as amended.

(16)    ~~(18)~~ **Bankruptcy Court** means the United States Bankruptcy Court for the District of Nevada, Las Vegas Division or any other court having jurisdiction over the Bankruptcy Cases from time to time.

(17)    (19) **Bankruptcy Rules** the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, in each case as amended, or any successor rules.

(18)    (20) **Bankruptcy Schedules** means the schedules of assets and liabilities, lists of executory contracts and unexpired leases, and related information Filed by the Debtors pursuant to Bankruptcy Code § 521 and Bankruptcy Rule 1007(b), as such schedules may be amended or supplemented from time to time as permitted hereunder in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

(19)    (21) **Bankruptcy SOFAs** means the statements of financial affairs and related financial information Filed by the Debtors pursuant to Bankruptcy Code § 521 and Bankruptcy Rule 1007(b), as such statements may be amended or supplemented from time to time as permitted hereunder in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

(20)    (22) **Bar Date** means: (i) January 8, 2014 for all creditors other than Governmental Units, and April 8, 2014 for all creditors that are Governmental Units, or (ii) such other applicable date designated by the Bankruptcy Court as the last date for Filing proofs of Claims in the Bankruptcy Cases.

(21)    (23) **Bid Deadline** has the meaning set forth in the Bid Procedures Order.

(22)    (24) **Bid Procedures** means those certain Bid Procedures approved pursuant to the Bid Procedures Order.

(23)    (25) **Bid Procedures and Sale Motion** means the motion seeking entry of the Bid Procedures Order seeking approval of the Stalking Horse SPA and procedures for consummating an Alternative Transaction, which was Filed on November ___, 2013 [ECF No. ___].15, 2013.

(24)    (26) **Bid Procedures Order** means the order of the Bankruptcy Court approving the Stalking Horse SPA and procedures for consummating an Alternative Transaction, which was entered by the Bankruptcy Court on November ___, 2013 [ECF No. ___].25, 2013.

(25)    (27) **Business Day** means any day, excluding Saturdays, Sundays or "legal holidays" (as referenced in Bankruptcy Rule 9006(a)), on which commercial banks located in Las Vegas, Nevada are authorized or required by applicable law to be closed for business.

(26)    (28) **Cash** means legal currency of the United States of America or equivalents thereof, including bank deposits and checks.

(27)    (29) **Cash Collateral Budget(s)** means the budget(s) approved as part of any Cash Collateral Order entered in the Bankruptcy Cases, and any amendments or supplements thereto.

(28)    (30) **Cash Collateral Stipulation** means, collectively, the *Stipulation Authorizing Debtors to Use Cash Collateral, Granting Adequate Protection and Granting Relief From the Automatic Stay Pursuant to Sections 361, 362 and 363 of the Bankruptcy Code* [ECF No. 204-1], includedattached as Exhibit "1" to the *Motion for Order Approving Stipulation Authorizing Debtors to Use Cash Collateral, Granting Adequate Protection and Granting Relief From the Automatic Stay Pursuant to 11 U.S.C. §§ 361, 362 and 363* [ECF No. 204], filedFiled on behalf

9

of the Debtors with the Bankruptcy Court on October 16, 2013, as amended by the *First Stipulated Amendment* [ECF No. 270] Filed on behalf of the Debtors with the Bankruptcy Court on November 1, 2013, and as further amended as of the date hereof and as such may be amended after the date hereof with the prior written consent of Debtors, the Pre-Petition Agent, and the Stalking Horse.

(29) (31) **Cash Collateral Order** means all order(s) of the Bankruptcy Court authorizing the Debtors' use of cash collateral during the pendency of the Bankruptcy Cases, including any orders approving the Cash Collateral Stipulation.

(30) (32) **Cash Equivalents** means any item or asset of Debtors readily converted to Cash, such as bank accounts, marketable securities, treasury bills, certificate of deposit, commercial paper maturing less than one year from date of issue, or other liquid investments.

(31) (33) **Causes of Action** means all actions, causes of action, liabilities, obligations, rights, suits, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims, or any other claims whatsoever, whether known or unknown, matured or unmatured, fixed or contingent, liquidated or unliquidated, disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring before the Petition Date or during the course of the Bankruptcy Cases, including through the Effective Date. **[Exclude Avoidance Actions???]**

(32) (34) **Claim** means a claim against any Debtors as defined in Bankruptcy Code § 101(5), whether or not asserted or Allowed, and including, without limitation, any debt within the meaning of section 1141(d)(6)(A) of the Bankruptcy Code.

(33) (35) **Claim Objection Deadline** means the first Business Day, which is at least 120 days after the Effective Date, or such later date as may be established by the Bankruptcy Court in accordance with Section 11.02(b) of the Plan.

(34) (36) **Claims Reserve** means the sum of (a) all budgeted expenses (including, for the avoidance doubt, the Professional Fees provided per the Carveout in the Cash Collateral Stipulation) set forth in the Cash Collateral Budget, which are incurred and unpaid as of the Closing, but only to the extent any such expense is not greater than the budgeted line item for such expense and such expense exceeds(consistent with the terms, conditions and variances under the Cash Collateral Stipulation) and, further, only to the extent such expenses exceed the amount of any retainer or deposit held by the party to whom the expense is owed; and (b) the Plan Carve Out$100,000.00.  For the avoidance of doubt, the funds in the Claims Reserve are expressly earmarked for and may only be used to pay the Plan Carve Out Claims and not for any other purpose.  To the extent any Plan Carve Out Claims have previously been paid (including but not limited to by way of interim fee awards to Professionals), then the Claims Reserve shall be reduced by the amount of such Claims paid previously.  To the extent any funds in the Claims Reserve are not used to pay Allowed Plan Carve Out Claims, then they shall be returned to the Pre-Petition Agent for the benefit of the Senior Secured Lenders unless the Allowed Senior Secured Claims are paid in full.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

(35)    (37) **Class** means a category of Claims or Interests as set forth in Article III below pursuant to Bankruptcy Code § 1122.

(36)    (38) **Closing** means the closing of the sale of the Acquired Property (and, as applicable, the sale of the Las Vegas Property) to the Purchaser(s) in accordance with the Sale Order(s), and/or the Confirmation Order.

(37)    (39) **Collateral** means any property or interest in property of the Debtors' Estates subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law.

(38)    (40) **Committee** means the Official Committee of Unsecured Creditors appointed pursuant to Bankruptcy Code § 1102(a) in the Bankruptcy Cases.

(39)    (41) **Confirmation** means entry by the Bankruptcy Court of the Confirmation Order on the docket of the Bankruptcy Cases.

(40)    (42) **Confirmation Date** means the date on which the Confirmation Order is entered on the docket in the Bankruptcy Cases within the meaning of Bankruptcy Rules 5003 and 9021.

(41)    (43) **Confirmation Hearing** means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to Bankruptcy Code § 1129, as such hearing may be continued from time to time.

(42)    (44) **Confirmation Order** means an order of the Bankruptcy Court confirming this Plan pursuant to Bankruptcy Code § 1129.

(43)    (45) **Consummation** means the occurrence of the Effective Date, which shall take place simultaneously with the completion of the Closing.

(44)    (46) **Combined Hearing** shall mean the Confirmation Hearing and the Sale Hearing, as such hearings may be continued from time to time.

(45)    (47) **Creditor** means any Person who holds a Claim against any Debtor.

(46)    (48) **Cure Costs** means all costs required of a Debtor to cure any and all monetary defaults including pecuniary losses, pursuant to Bankruptcy Code § 365, of such Debtor arising under any Desired 365 Contract.

(47)    (49) **Debtor(s)** means individually or collectively the following debtors and debtors- in-possession:  WFI, WFIN, and Global Track.

(48)    (50) **Debtor Assets** means all right, title and interest of each Debtor in, to or under all of the assets, properties and rights of each Debtor, as the same shall exist as of the Closing, of every kind, type or designation, whether tangible or intangible, known or unknown, real, personal or mixed, wherever located (including all Claims and Causes of Action against any other Person to the extent not retained or released and discharged pursuant to the Plan), other than the Excluded Assets.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

(49)    (51) **Desired 365 Contract** means any and all executory contracts and unexpired leases (a) to be assumed by one or more of the Debtors and vested in the respective Reorganized Debtors; or (b) designated by the Purchaser as a Desired 365 Contract and assumed by one or more of the Debtors and assigned to the Purchaser, each on the Effective Date pursuant to the Purchase and Sale Agreement, and as set forth in Article X.

(50)    (52) **Disallowed** means all or such part of a Claim that is disallowed by a Final Order of the Bankruptcy Court or other court of competent jurisdiction.

(51)    (53) **Disclosure Statement** means the *Joint Disclosure Statement for the Debtors' Joint Plan of Reorganization* dated as of November ——25, 2013, as the same may be amended, modified or supplemented from time to time, including all exhibits and schedules thereto, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

(52)    (54) **Disclosure Statement Order** means an order of the Bankruptcy Court approving the Disclosure Statement, which order must be acceptable in form and substance to Debtors and the Stalking Horse.

(53)    (55) **Disputed** means, in reference to a Claim or Interest, any Claim or Interest not otherwise Allowed or Disallowed pursuant to this Plan or an order of the Bankruptcy Court (a) which has been Scheduled, or hereafter is listed on the Bankruptcy Schedules as unliquidated, contingent, or disputed, and which has not been resolved by written agreement of the parties (or, in the case of the Plan Carve Out Claims, which has not been resolved by written agreement of the parties and the Pre-Petition Agent or an order of the Bankruptcy Court with respect to which the Pre-Petition Agent have had notice and an opportunity to object); (b) proof of which was required to be Filed but as to which a Proof of Claim or Interest was not timely or properly Filed; (c) proof of which was timely and properly Filed and which has been or hereafter is listed on the Bankruptcy Schedules as unliquidated, disputed, or contingent; (d) that is disputed in accordance with the provisions of this Plan; or (e) as to which the Debtors or Reorganized Debtors, as applicable, or the Pre-Petition Agent or the Liquidating Trustee have interposed a timely objection in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any orders of the Bankruptcy Court, or is otherwise disputed by the Debtors or Reorganized Debtors, as applicable, or the Pre-Petition Agent or the Liquidating Trustee in accordance with applicable law, which objection or dispute has not been withdrawn or determined by a Final Order; *provided, however*, that for purposes of determining whether a particular Claim is a Disputed Claim before the expiration of any period of limitation fixed for the interposition by the Debtors or the Pre-Petition Senior Secured Agent or the Liquidating Trustee of objections to the allowance of Claims, any Claim that is not an Allowed Claim shall be deemed Disputed.

(54)    **Dissolved WFIN** means WFIN from and after the Effective Date.

(55)    (56) **Distribution Date** means the date(s), occurring as soon as practicable after the Effective Date, upon which distributions are made pursuant to the terms of this Plan to Holders of Allowed Administrative Claims, and other Allowed Claims (other than the Senior Secured Claims); *provided, however*, that should such Allowed Claims be paid in the ordinary course of business, the Distribution Date shall be the date such Allowed Claim becomes payable under the terms of any contract or agreement or applicable non-bankruptcy law.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

(56) (57) **Distribution Record Date** means the record date which is set forth in Section 8.08 of this Plan.

(58) **Distribution Reserve Account(s)** shall mean one or more of the following accounts established by the Liquidating Trustee pursuant to this Plan: the Claims Reserve, the Liquidating Trust Expense Reserve, and/or the Avoidance Actions Proceeds Reserve.

(57) (59) **Effective Date** means the first Business Day on which all conditions precedent set forth in Section 12.02 of this Plan have been satisfied or waived as permitted hereunder.

(60) **Employee Benefit Plans** means any employment, compensation, pension, welfare, healthcare, bonus, incentive compensation, sick leave and other leave, vacation pay, expense, reimbursement, dependent care, retirement, savings, deferred compensation, supplemental pension, retention, workers compensation, life insurance, disability, dependent care, dependent healthcare, education, severance or other compensation or benefit plan, agreement or arrangement for the benefit of the current or former directors, offices or employees (whether salaried or hourly, active or retired) of the applicable Debtor.

(58) (61) **Entity** has the meaning set forth in Bankruptcy Code § 101(15).

(62) **Equity Interests** means the New WFI Stock sought to be purchased by the Stalking Horse under the Stalking Horse SPA.

(59) (63) **Estate(s)** means individually or collectively the estate created for such Debtor in its Chapter 11 Case pursuant to Bankruptcy Code § 541.

(60) (64) **Excluded Assets** means the assets and Claims set forth on Schedule I to the Purchase and Sale Agreement, including but not limited to the Excluded Real Properties and the Excluded Retail Contracts.

(61) **Excluded Persons** means each of Harbor Structured Finance, LLC, Mark Finston, James B. Hadden, Phillip D. Nick, Ellen H. Hardymon, Suzanne K. Nick Irrevocable Family Trust One, Suzanne K. Nick Irrevocable Family Trust Two, Thomas F. Havens Irrevocable Family Trust One, and Thomas F. Havens Irrevocable Family Trust Two.

(62) (65) **Excluded Real Properties** means the real properties owned by WFI located at (i) 2202 Stevens Creek Boulevard, San Jose, California 95127, (ii) 9905 Gulf Freeway, Houston, Texas 77034 77034, and (iii) 3915 East Patrick Lane, Las Vegas, Nevada 89120.

(63) (66) **Excluded Retail Contracts** means Retail Contracts (i) that have been in default for at least 90 days, (ii) where the Retail Contracts have been charged off of the books and records of WFI, and (iii) where the customer of the financed vehicle has commenced a case, or a case has been commenced against such customer, under the Bankruptcy Code.

(64) **Expense Reimbursement Order** means the *Order Pursuant to Sections 105(a), 363 and 503(b) of the Bankruptcy Code and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure for an Order Approving Break-Up Fee and Expense Reimbursement Payments to Plan Sponsor* [ECF No. 304] entered by the Bankruptcy Court on November 13, 2013.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

(65)    **Exculpated Parties** means, collectively, each of the Debtors, the Reorganized Debtors, the members of the Committee in their capacity as such, the Pre-Petition Agent, the Stalking Horse, the Stalking Horse's Affiliates, and each of their respective Related Persons; *provided, however,* that notwithstanding anything herein to the contrary, Exculpated Parties shall not include the Excluded Persons (and even if any Excluded Persons are Related Persons).

(66)    (67) **Exhibit** means an exhibit annexed either to this Plan, the Plan Documents, or the Disclosure Statement or Filed as part of the Plan Supplement.

(67)    (68) **File, Filed or Filing** means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Bankruptcy Cases.

(68)    (69) **Final Order** means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, (i) which has not been reversed, stayed, vacated, modified, amended, enjoined, set aside, annulled or suspended, (ii) with respect to which no stay shall have been issued in connection with any notice of appeal or petition for certiorari filed within any deadline provided by applicable statute or regulation; (iii) is not the subject of a timely filed pending appeal or motion for review or reconsideration, (iv) has not been and may no longer be appealed from or otherwise reviewed or reconsidered, other than under Bankruptcy Rule 9024 and/or Federal Rule of Civil Procedure 60, and (v) is final and nonappealable in accordance with Bankruptcy Rule 8002 or any other applicable law or rule.

(69)    (70) **Free and Clear** means, except as otherwise provided in the Purchase and Sale Agreement, free and clear of all Liens, Claims, Causes of Action, encumbrances, interests, claims, pledges, security interests, rights of setoff, restrictions or limitation on use, successor liabilities, conditions, rights of first refusal, options to purchase, obligations to allow participation, agreements or rights, rights asserted in litigation matters, rights asserted in adversary proceedings in these Cases, competing rights of possession, obligations to lend, matters filed of record that relate to, evidence or secure an obligation of the Debtors or the Estates, (and all created expenses and charges) of any type under, among other things, any document, instrument, agreement, affidavit, matter filed of record, cause, or state or federal law, whether known or unknown, legal or equitable, and all liens, rights of offset, replacement liens, adequate protection liens, charges, obligations, or claims granted, allowed or directed in any Order.

(70)    (71) **General Unsecured Claim** means any Claim that is not Secured or entitled to priority under the Bankruptcy Code.

(71)    (72) **Global Track** means Global Track GPS, LLC, a Delaware limited liability company, the Debtor in Case No. BK-S-13-17589-LED pending in the Bankruptcy Court, and one of the jointly-administered Debtors in the Bankruptcy Cases.

(72)    (73) **Governance Documents** means any certificate of incorporation, certificate of formation, bylaws, limited liability company agreements (or any other formation and organizational documents) of the Debtors, or any amendments thereto, in effect as of the Petition Date.

(73)    (74) **Governmental Units** means the United States; any State; Commonwealth; District; Territory; municipality; foreign state; department, agency or instrumentality of the

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

C&C Draft 11/12/13

United States (but not a United States trustee while serving as a trustee in a case under the Bankruptcy Code), a State, Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government, and to the fullest extent encompassed in Bankruptcy Code § 101(27).

(74)    (75) **Governors** has the meaning given in Section 6.106.12 of this Plan.

(75)    (76) **Holder** means the beneficial holder of any Claim or Interest.

(76)    (77) **Impaired** means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of Bankruptcy Code § 1124.

(77)    (78) **Intercompany Claim** means any Claim by a Debtor against another Debtor.

(78)    (79) **Interest(s)** means the interest of any holder of equity securities in any of the Debtors represented by any issued and outstanding common stock or interests, preferred stock or interests, or other instrument evidencing a present ownership interest in any of the Debtors before the Effective Date (including before the Petition Date), whether or not transferable, any restricted stock units, calls, rights, puts, awards, commitments, repurchase rights, unvested or unexercised options, warrants, unvested common interests, unvested preferred interests or any other agreements of any character related to the common stock or preferred stock interests of any of the Debtors, obligating any of the Debtors to issue, transfer, purchase, redeem, or sell any equity interests or other equity securities, any rights under any equity incentive plans, voting agreements and registration rights agreements regarding equity securities of any of the Debtors, any claims arising from the rescission of a purchase, sale or other acquisition of any outstanding common stock interests or preferred stock interests or other equity securities (or any right, claim, or interest in and to any common stock interests, preferred stock interests or other equity securities) of any of the Debtors, any claims for the payment of any distributions with respect to any common stock or preferred stock interests of any of the Debtors, and any claims for damages or any other relief arising from the purchase, sale, or other acquisition of any of the Debtors' outstanding common stock interests, preferred stock interests or other equity securities, however evidenced but specifically excluding "Equitythe "New Interests" sold to the Purchaser pursuant to the Purchase and Sale Agreement.

(79)    (80) **Internal Revenue Code** means the Internal Revenue Code of 1986, as amended from time to time, and any successor statute or statutes.

(80)    (81) **Las Vegas Property** means the real property owned by Debtors located at 3915 East Patrick Lane, Las Vegas, Nevada 89120.

(81)    (82) **Las Vegas Property Auction** means the auction for the sale of the Las Vegas Property pursuant to and in accordance with the Las Vegas Property Bid Procedures Order.

(82)    (83) **Las Vegas Property Bid Procedures Order** means an order of the Bankruptcy Court approving procedures for consummating the sale of the Las Vegas Property, and in the form previously approved in writing by the Stalking Horse.

15

(83)   (84) **Las Vegas Property Purchase Agreement** means the agreement for the purchase and sale of the Las Vegas Property between WFI and the Purchaser, as amended and restated, or otherwise modified from time to time.  If the Stalking Horse is the Purchaser, the Stalking Horse's form of purchase agreement as approved in the Las Vegas Property Bid Procedure Order shall be the Las Vegas Property Purchase Agreement.

(84)   **Las Vegas Property Sale Order** means an order of the Bankruptcy Court approving the sale of the Las Vegas Property, and in the form previously approved in writing by the Stalking Horse, which order may be the same as the Confirmation Order.

(85)   **Lien** means any charge, lien (statutory or otherwise), interest, security interest, claim, mortgage, lease, sublease, hypothecation, deed of trust, pledge, option, right of use or possession, right of first offer or first refusal, easement, servitude, restrictive covenant, encroachment, encumbrance, right of way, transfer restriction or other similar restriction of any kind, including any restriction on use, voting, transfer, receipt of income or exercise of any other attribute of ownership.  For the purposes hereof, and without limiting the foregoing, a Person shall be deemed to own subject to a Lien any property or asset which it has acquired or holds subject to the interest of a vendor or lessor under any conditional sale agreement, capital lease or other title retention agreement relating to such property or asset.

(86)   **Liquidating Trust** means the entity created pursuant to Article VII of this Plan.

(87)   **Liquidating Trust Agreement** means the document titled "Liquidating Trust Agreement" approved and entered into in accordance with this Plan pursuant to which the Liquidating Trust will be established and administered.

(88)   **Liquidating Trust Assets** means the assets transferred to the Liquidating Trust, which are: (a) Liquidating Trust Avoidance Actions; (b) ~~Distribution~~the Claims Reserve~~ Accounts; (c) Other Assets~~; (c) Excluded Real Properties and proceeds therefrom; (d) such other assets identified in the Plan Supplement; and (~~f~~e) Unclaimed Property and (f) New WFIN Stock.

(89)   **Liquidating Trust** ~~Expense Reserve~~ means ~~that Distribution Reserve Account established in accordance with Section 9.04 of this Plan.~~**Avoidance Actions** means Avoidance Actions that are not Retained Claims.

(90)   **Liquidating Trustee** means the Person appointed in accordance with this Plan and the Liquidating Trust Agreement to oversee and administer the Liquidating Trust and as identified in the Plan Supplement.

(91)   **Miscellaneous Secured Claim** means any Secured Claim against any Debtor other than the Senior Secured Claims and the B Member Secured Claims.

(92)   **Net Proceeds** means all proceeds received from the sale, disposition, collection or other monetization of any Other Asset, less reasonable and customary out-of-pocket expenses incurred by the Liquidating Trustee in connection with such sale, disposition, collection or other monetization.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

(93)    **New Global Track Shares** means the interests in Reorganized Global Track, which will be issued under this Plan in accordance with Bankruptcy Code § 1145 and as described in Section 6.16 6.15.

(94)    **New Interests** means the New WFI Stock and New Global Track Shares.

(95)    **New WFI Stock** means the shares of stock in Reorganized WFI, which will be issued under this Plan in accordance with Bankruptcy Code § 1145 and as described in Section 6.16 6.15.

(96)    **New WFIN Stock** means the interests in Dissolved WFIN, which will be issued under this Plan in accordance with Bankruptcy Code § 1145 and as described in Section 6.15.

(97)    (96) **Other Assets** means any assets of the Debtors, whether received before or after the Effective Date of the Plan, other than: (a) those transferred to the Purchaser at Closing, including but not limited to Unclaimed Property; (b) those owned at Closing by a Debtor whose Equity New Interests are sold to the Purchaser; (c) Excluded Real Properties; (d) Excluded Retail Contracts; and Retained Claims; (e) Liquidating Trust Avoidance Actions.

(98)    (97) **Person** means an individual, corporation, general or limited partnership, limited liability company, trust, liquidating trust, incorporated or unincorporated association, joint venture, joint stock company, government (or an agency or political subdivision thereof) or other entity of any kind.

(99)    (98) **Petition Date** means September 4, 2013, being the date on which each of the respective Debtors Filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

(100)    (99) **Plan** means this *Joint Plan of Reorganization*, including any Exhibits and all supplements, appendices and schedules thereto, either in its present form or as the same may be altered, amended, modified or supplemented from time to time as permitted herein and in accordance with the provisions of the Bankruptcy Code and the terms hereof.

(100) **Plan Carve Out** means $1,000,000.00, the sum of all estimated Allowed Plan Carve Out Claims. To the extent that any Allowed Plan Carve Out Claims are paid before the Plan Carve Out is provided to the Liquidating Trust pursuant to Section 6.02(a), the amount of the Plan Carve Out provided to the Liquidating Trust shall be reduced by the amount of such Claims paid previously.

(101)    **Plan Carve Out Claims** means the Administrative Claims (including Cure Costs), the Priority Tax Claims, the Priority Non-Tax Claims, and the Miscellaneous Secured Claims.

(102)    **Plan Default Notice** shall have the meaning set forth in Section 16.08 of this Plan.

(103)    **Plan Distribution** means the payment or distribution under this Plan of assets, securities or instruments evidencing an obligation under this Plan or other property of any nature to any Holder of an Allowed Claim.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

(104) **Plan Documents** means all documents, forms, lists and agreements contemplated under this Plan (including, but not limited to the Plan Supplement) to effectuate the terms and conditions hereof.

(105) **Plan Supplement** means any supplement to this Plan, and the compilation of Plan Documents and forms of documents and Exhibits to this Plan, as amended, modified or supplemented from time to time, to be Filed by the Debtors as permitted herein on or before the Plan Supplement Filing Date.

(106) **Plan Supplement Filing Date** means the date not later than five (5) days before the Voting Deadline, which date may be modified by agreement between the Debtors, the Pre-Petition Agent, the Purchaser, and the Committee, if any.

(107) **Potential Bidder** means any Person who wishes to participate in the bidding process.

(108) **Priority Non-Tax Claims** means any Claim other than an Administrative Claim or a Priority Tax Claim, entitled to priority in payment as specified in Bankruptcy Code § 507(a).

(109) **Priority Tax Claim** means a Claim that is entitled to priority pursuant to Bankruptcy Code § 507(a)(8).

(110) **Pro Rata** means that proportion that a Claim or Interest in a particular Class bears to the aggregate amount of all Claims or Interests in such Class, except in cases where Pro Rata is used in reference to multiple Classes, in which case Pro Rata means the proportion that a Claim or Interest in a particular Class bears to the aggregate amount of all Claims in such multiple Classes.

(111) **Pre-Petition Agent** means BMO Harris Bank, N.A., as administrative agent and issuing lender under the Senior Credit Agreement, or any successor thereto.

(112) **Professional** means any professional (a) employed in the Bankruptcy Cases pursuant to Bankruptcy Code §§ 327, 328 or 1103 and to be compensated for services rendered pursuant to Bankruptcy Code §§ 327, 328, 329, 330 or 331, or (b) seeking compensation and reimbursement pursuant to Bankruptcy Code § 503(b)(4).

(113) **Professional Fee Claim** means a Claim of a Professional for compensation or reimbursement of expenses relating to services after the Petition Date through the Effective Date.

(114) **Proof of Claim (or Interest)** means the proof of claim (or interest) that must be filedFiled by a Holder of a Claim (or Interest) by the date(s), if any, designated by the Bankruptcy Court as the Bar Date.

(115) **PSA Sale Proceeds** means all of the sale proceeds received from the sale, disposition, collection or other monetization of the Acquired Property as contemplated under the Purchase and Sale Agreement (and for the avoidance of doubt, this does not include sale proceeds from the sale of Excluded Real Properties).

(116) **Purchase and Sale Agreement** means the agreement for the purchase and sale of the Acquired Property between some or all of the Debtors and the Purchaser, as amended and

18

restated, or otherwise modified from time to time.  If the Stalking Horse is the Purchaser, the Stalking Horse SPA shall be the Purchase and Sale Agreement.

(117)  **Purchaser** means the Person or group that is the Successful Bidder under the Bid Procedures and that purchases the Acquired Property (and, as applicable, the Successful Bidder under the Las Vegas Property Bid Procedures for the Las Vegas Property) pursuant to the Sale Order (and as applicable, the Las Vegas Property Sale Order), and/or the Confirmation Order.

(118)  **Qualified Bidder** means a Potential Bidder who has met the prerequisites to become a qualified bidder set forth in the Bid Procedures (or the Las Vegas Property Bid Procedures, as applicable).

(119)  **Related Persons** means, with respect to any Person, such Person's predecessors, successors and assigns (whether by operation of law or otherwise) and their respective present and former Affiliates and each of their respective current and former members, partners, equity-holders, officers, directors, employees, managers, shareholders, partners, financial advisors, attorneys, accountants, investment bankers, consultants, agents and professionals, each acting in such capacity, and any Person claiming by or through any of them (including their respective officers, directors, managers, shareholders, partners, employees, members and professionals).

**(120)**  **Released Parties** means, collectively, each of the Debtors, the Reorganized Debtors, the Committee, the Pre-Petition Agent, and each of their respective Related Persons.

(120)  **(121)** **Reorganized Debtors** means Reorganized WFI, Reorganized WFIN, and Reorganized Global Track.

(121)  **(122)** **Reorganized Global Track** means Global Track from and after the Effective Date.

(122)  **(123)** **Reorganized WFI** means WFI from and after the Effective Date.

**(124)**  **Reorganized WFIN** means WFIN from and after the Effective Date.

(123)  **(125)** **Retail Contracts** means (a) any retail installment sale contract for financed vehicles and all rights and obligations thereunder and (b) as applicable, any electronic versions of such retail installment contracts for financed vehicles and all rights and obligations thereunder.

(124)  **(126)** **Retained Funds means any fund that at Closing are required to be (i) in a Reorganized Debtor whose Interests are sold to the Purchaser or (ii) delivered by a Debtor to the Purchaser pursuant to the Purchase and Sale Agreement. Claims** means any rights, Causes of Action (including Avoidance Actions) and Claims (including claims under chapter 5 of the Bankruptcy Code) of a Reorganized Debtor (i) relating to, or against a counter party to a Desired 365 Contract that is assumed by a Reorganized Debtor or assumed and assigned to a Purchaser; (ii) relating to all Vested Assets; and (iii) relating to all employees, officers and directors of Reorganized Debtors (unless such Persons are Excluded Persons).  For the avoidance of doubt, all Avoidance Actions against any Excluded Persons are Liquidating Trust Avoidance Actions.

(125)  **(127)** **Sale Hearing** means the hearing(s) held by the Bankruptcy Court to approve the Transactions and/or consider confirmation of this Plan pursuant to Bankruptcy Code § 363, as such hearing may be continued from time to time.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

(126) ~~(128)~~ **Sale Order** means that certain *Order (I) Authorizing the Debtors to Sell Their Property, (II) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* entered by the Bankruptcy Court ~~on December___, 2013 [ECF No.____]~~ in conjunction with approval of the Purchase and Sale Agreement, which order may be the same as the Confirmation Order.

(127)   **Sale Orders** mean, either one or both of the Sale Order and/or the Las Vegas Property Sale Order.

(128) ~~(129)~~ **Scheduled** means, with respect to any Claim or Interest, the status and amount, if any, of such Claim or Interest as set forth in the Bankruptcy Schedules.

(129) ~~(130)~~ **Secured** means, when referring to a Claim: (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to Bankruptcy Code § 553, to the extent of the value of the Creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Bankruptcy Code § 506(a); or (b) Allowed pursuant to this Plan as a Secured Claim.

(130) ~~(131)~~ **Securities Act** means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, as now in effect or hereafter amended.

(131) ~~(132)~~ **Senior Credit Agreement** means the Credit Agreement between WFI, as borrower, the Senior Secured Creditor, as administrative agent and lender, and certain guarantors party thereto, dated March 14, 2012, as amended (including pursuant to any forbearance agreements).

(132) ~~(133)~~ **Senior Lien Documents** means the Senior Credit Agreement, the Senior Lien Notes, and all other instruments, agreements, deeds of trust, mortgages, security agreements, assignments, pledges, and financing statements that evidence, secure or relate to the Senior Credit Agreement, the Senior Lien Notes, or any Liens securing the Senior Secured Claims.

(133) ~~(134)~~ **Senior Lien Notes** means any and all promissory notes of WFI or the other Debtors, if any, payable to the order of any Senior Secured Lenders evidencing indebtedness of WFI to such Lenders under the Senior Credit Agreement.

(134) ~~(135)~~ **Senior Secured Claims** means the Secured Claims of the Senior Secured Lenders.

(135) ~~(136)~~ **Senior Secured Claim Distribution Amounts** means all distributions made on account of the Senior Secured Claims pursuant to Section 4.02.

(136) ~~(137)~~ **Senior Secured Deficiency Claim** shall have the meaning set forth in Section 4.02 of this Plan.

(137) ~~(138)~~ **Senior Secured Lenders** mean the lenders and holders of indebtedness under the Senior Credit Agreement or any other Senior Lien Documents.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

(138) **(139)** **Stalking Horse** means Carfinco WFI, Inc., a Delaware corporation, or such other buyer as identified in the Stalking Horse SPA whether or not such party is the Successful Bidder at the Auction.

(139) **(140)** **Stalking Horse SPA** means the Stock Purchase Agreement dated as of November ——, 15, 2013, as amended, restated, or otherwise modified from time to time, entered into between WFI and Global Track, as Debtors, and the Stalking Horse, as buyer.

(140) **(141)** **Successful Bidder** has the meaning set forth in the Bid Procedures.

(141) **(142)** **Transaction(s)** means the transactions contemplated by (i) the Purchase and Sale Agreement and approved by the Sale Order and/or Confirmation Order, and (ii) the Las Vegas Property Purchase Agreement and approved by the Las Vegas Property Sale Order and/or the Confirmation Order.

(142) **(143)** **Unclaimed Property** has the meaning set forth in Section 8.03 of this Plan.

(143) **(144)** **Unimpaired** means a Claim or Interest that is not Impaired.

(144) **(145)** **Vested Assets** means all of the Debtors' (and their respective estates) right, title and interest in and to any assets (other than Other Assets), contracts, leases, Debtor Assets as defined in the Purchase and Sale Agreement, properties and businesses, as the same shall exist as of the Effective Date of every kind, type of designation, whether tangible or intangible, known or unknown, real, personal or mixed wherever located, including all Claims and Causes of Action (for the avoidance of doubt, other than Liquidating Trust Avoidance Actions) against any Person to the extent not released or discharged pursuant to this Plan, that are to be owned by one or more of the Reorganized Debtors as described in the Purchase and Sale Agreement pursuant to which any New Interests are to be issued or transferred to the Purchaser.

(145) **(146)** **Voting Deadline** means the date by which a Creditor must deliver a Ballot to accept or reject this Plan as set forth in the order of the Bankruptcy Court approving the instructions and procedures relating to the solicitation of votes with respect to this Plan.

(146) **(147)** **Voting Record Date** means the record date for voting on this Plan, which shall be November ——25, 2013.

(147) **(148)** **WFI** means Western Funding Incorporated, a California corporation, the Debtor in Case No. BK-S-13-17588-LED pending in the Bankruptcy Court, and one of the jointly-administered Debtors in the Bankruptcy Cases.

(148) **(149)** **WFIN** means Western Funding Inc. of Nevada, a Nevada corporation, the Debtor in Case No. BK-S-13-17586-LED pending in the Bankruptcy Court, and one of the jointly-administered Debtors in the Bankruptcy Cases.

**Section 1.03    Rules of Interpretation**

For purposes of this Plan, (i) except as provided in Article XIII, any reference in this Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (ii) except as

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

C&C Draft 11/12/13

provided in Article XIII, any reference in this Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit as it may have been or may be amended, modified, or supplemented as permitted herein; (iii) unless otherwise specified, all references in this Plan to Sections, Articles, Schedules, and Exhibits are references to Sections, Articles, Schedules, and Exhibits of or to this Plan; (iv) the words "herein," "hereto," and "hereof" refer to this Plan in its entirety rather than to a particular portion of this Plan; (v) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; and (vi) the rules of construction set forth in Bankruptcy Code § 102 and in the Bankruptcy Rules shall apply.

## Section 1.04    Computation of Time

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## Section 1.05    Reference to Monetary Figures

All references in this Plan to monetary figures shall refer to legal currency of the United States of America, unless otherwise expressly provided.

## Section 1.06    Exhibits and Plan Supplement

All Exhibits, all Plan Documents, as well as the Plan Supplement, are incorporated into and are a part of this Plan as if set forth in full herein, and, to the extent not annexed hereto, such Exhibits and Plan Supplement shall be timely Filed with the Clerk of the Bankruptcy Court on or before the Plan Supplement Filing Date.  Holders of Claims and Interests may obtain a copy of the Filed Exhibits and the Plan Supplement upon written request to the Debtors' counsel.  Upon their Filing, the Exhibits and the Plan Supplement may be inspected in the office of the clerk of the Bankruptcy Court or at the Bankruptcy Court's website at http://www.nvb.uscourts.gov.  The documents contained in the Exhibits and Plan Supplement shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.  The Debtors explicitly reserve the right to modify or make additions to or subtractions from any Exhibit to this Plan or the Plan Supplement and to amend, modify or supplement any Exhibit to this Plan before the Confirmation Date.

## Section 1.07    Deemed Acts

Whenever an act or event is expressed under this Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of this Plan and the Confirmation Order.

## ARTICLE II
## UNCLASSIFIED CLAIMS

In accordance with Bankruptcy Code § 1123(a)(1), Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in Article III and Article IV hereof.  These unclassified Claims are treated as follows:

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

**Section 2.01    Treatment of Administrative Claims**

Except as otherwise provided for in this Plan, and subject to the requirements of Section 2.02 of this Plan, each Holder of an Allowed Administrative Claim shall, in full satisfaction, release, settlement, and discharge of such Allowed Administrative Claim: (a) to the extent such claim is due and owing on the Effective Date, be paid in full, in Cash, on the Effective Date; (b) to the extent such claim is not due and owing on the Effective Date, be paid in full, in Cash, (i) in accordance with the terms of any agreement among the Liquidating Trustee, the Pre-Petition Agent and such Holder, or (ii) when such claim becomes due and payable under applicable non-bankruptcy law, or (iii) in the ordinary course of business; or (c) receive such other treatment as to which such Holder may agree with the Liquidating Trustee and the Pre-Petition Agent.  Cash payments of Allowed Administrative Claims shall be paid from the Claims Reserve (but only if the ~~Allowed~~ Senior Secured Claims have been first paid in full in cash), or if the Claims Reserve is insufficient to pay all Allowed Administrative Claims, any shortfall shall be paid from the ~~Avoidance Actions Proceeds Reserve~~Liquidating Trust.

**Section 2.02    Bar Dates for Certain Claims**

(a)    _Administrative Claims; Substantial Contribution Claims._  The Confirmation Order will establish a Bar Date for Filing of all Administrative Claims, including substantial contribution claims (but not including Professional Fee Claims, claims for the expenses of the members of the Committee and Administrative Claims in section (b) or (c) below), which date will be thirty (30) days after the Confirmation Date (the "_Administrative Claims Bar Date_").  Holders of asserted Administrative Claims, other than Professional Fee Claims, claims for U.S. Trustee fees under 28 U.S.C. § 1930, administrative tax claims and administrative ordinary case liabilities described in section (b) below, must submit proofs of Administrative Claim on or before such Administrative Claims Bar Date or forever be barred from doing so.  A notice prepared by the Debtors will set forth such date and constitute notice of this Administrative Claims Bar Date.  The ~~Reorganized Debtors~~Liquidating Trustee and the Pre-Petition Agent shall have thirty days (30) days (or such longer period as may be allowed by order of the Bankruptcy Court) following the Administrative Claims Bar Date to review and object to such Administrative Claims before a hearing for determination of allowance of such Administrative Claims.

(b)    _Administrative Ordinary Course Liabilities._  Holders of Administrative Claims that are based on liabilities incurred and paid by any Debtor in the ordinary course of the applicable Debtor's business (other than Claims of governmental units for taxes and for interest and/or penalties related to such taxes) on and after the Petition Date shall not be required to File any request for payment of such Administrative Claims.  For the avoidance of doubt, Holders of Administrative Claims pursuant to Bankruptcy Code § 503(b)(9) shall be required to File a proof of Administrative Claim on or before the Administrative Claims Bar Date.

(c)    _Administrative Tax Claims._  All requests for payment of Administrative Claims by a governmental unit for taxes (and for interest and/or penalties related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date, and for which no bar date has otherwise been previously established, must be Filed and served on the Reorganized Debtors, the Pre-Petition Agent, and any other party specifically requesting a copy in writing on or before the later of (a) thirty (30) days following the Confirmation Date; and (b) one hundred and twenty

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

(120) days following the Filing of the tax return for such taxes for such tax year or period with the applicable governmental unit. Any Holder of any such Claim that is required to File a request for payment of such taxes and does not File and properly serve such a claim by the applicable Bar Date shall be forever barred from asserting any such claim against the Debtors, the Reorganized Debtors, the Liquidating Trust or their property, regardless of whether any such Claim is deemed to arise on or before the Effective Date. Any interested party desiring to object to an Administrative Claim for taxes must File and serve its objection on counsel to the Debtors, the Reorganized Debtors, the Liquidating Trustee, and the relevant taxing authority no later than ninety (90) days after the taxing authority Files and serves its application.

(d)    **Professional Fee Claims.** All final requests for compensation or reimbursement of professional fees pursuant to Bankruptcy Code §§ 327, 328, 330, 331, 363, 503(b) or 1103 for services rendered to or on behalf of the applicable Debtors or the Committee (if one has been appointed) before the Confirmation Date (other than substantial contribution claims under Bankruptcy Code § 503(b)(4)) must be Filed and served on the Reorganized Debtors, the Liquidating Trustee, the Pre- Petition Agent, and their respective counsel no later than thirty days (30) after the Confirmation Date, unless otherwise ordered by the Bankruptcy Court. Objections to applications of such Professionals or other entities for compensation or reimbursement of expenses must be Filed and served on the Debtors, Liquidating Trustee, Pre-Petition Agent, and their counsel and the requesting Professional or other entity no later than thirty (30) days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable application for compensation or reimbursement was served.

## Section 2.03    Payment of Statutory Fees

On or before the Effective Date (or as soon as reasonably practicable after such fees become due), the Debtors shall have paid in full, in Cash (including by check or wire transfer), in U.S. dollars, all fees payable pursuant to section 1930 of title 28 of the United States Code, in the amount determined by the Bankruptcy Court at the Confirmation Hearing.

## Section 2.04    Treatment of Priority Tax Claims

Each Holder of an Allowed Priority Tax Claim shall, in full satisfaction, release, and discharge thereof, receive (i) such treatment as to which such Holder may agree with the Liquidating Trustee, and the Pre-Petition Agent or (ii) at the sole option of the Liquidating Trustee, (a) payment in full, in Cash, of such Allowed Priority Tax Claim on the Effective Date; or (b) treatment in accordance with Bankruptcy Code §§ 1129(a)(9)(C) or 1129(a)(9)(D), as the case may be, with the Liquidating Trustee's selection of (a) or (b) being subject to the prior written approval of Pre-Petition Agent. Cash payments of Allowed Priority Tax Claims shall be paid from the Claims Reserve (but only if the Allowed Senior Secured Claims have been first paid in full in cash), or if the Claims Reserve is insufficient to pay all Allowed Priority Tax Claims, any shortfall shall be paid from the Avoidance Actions Proceeds Reserve Liquidating Trust.

## ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

## Section 3.01    Introduction

The categories of Claims and Interests set forth herein classify Claims and Interests for all purposes, including for purposes of voting, confirmation, and distribution pursuant to this Plan and Bankruptcy Code §§ 1122 and 1123(a)(1). A Claim or Interest shall be deemed classified in a particular Class only to the extent that it qualifies within the description of such Class, and shall be deemed classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes. Notwithstanding anything to the contrary in this Plan, a Claim or Interest shall be deemed classified in a Class only to the extent that such Claim or Interest has not been paid, released, or otherwise settled before the Effective Date.

All Claims (except for Administrative Claims and Priority Tax Claims, which are not classified pursuant to Bankruptcy Code § 1123(a)(11)) are classified in Section 3.03 and Section 4.1 through Section 4.07 in this Plan.

In no event shall the Reorganized Debtors or the Stalking Horse be liable for the payment of any Claims or Interests pursuant to this Plan and the Bankruptcy Code.

**Section 3.02    Voting; Presumptions**

(a)    <u>Acceptance by Impaired Classes</u>. Each Impaired Class of Claims that will (or may) receive or retain property or any interest in property under this Plan shall be entitled to vote to accept or reject this Plan. An Impaired Class of Claims shall have accepted this Plan if (i) the Holders (other than any Holder designated under Bankruptcy Code § 1126(e)) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept this Plan and (ii) the Holders (other than any Holder designated under Bankruptcy Code § 1126(e)) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept this Plan. An Impaired Class of Interests shall have accepted this Plan if the Holders (other than any Holder designated under Bankruptcy Code § 1126(e)) of at least two-thirds in amount of the Allowed Interests actually voting in such Class have voted to accept this Plan.

(b)    <u>Voting Presumptions</u>. Claims and Interests in Unimpaired Classes are conclusively deemed to have accepted this Plan pursuant to Bankruptcy Code § 1126(f) and, therefore, are not entitled to vote to accept or reject this Plan. Claims and Interests in Classes that do not entitle the Holders thereof to receive or retain any property under this Plan are conclusively deemed to have rejected this Plan pursuant to Bankruptcy Code § 1126(g) and, therefore, are not entitled to vote to accept or reject this Plan.

**Section 3.03    Identification of Claims and Interests**

The following tables designate the Classes of Claims against, and Interests in, the Debtors and specify which of those Classes and Interest are (a) Impaired or Unimpaired by this Plan; (b) entitled to vote to accept or reject this Plan in accordance with Bankruptcy Code § 1126; and (c) deemed to accept or reject this Plan.

**CHART 3.03(A) - WFI**

| Class | Type of Allowed Claim or Interest | Treatment | Impairment | Entitled to Vote |
|---|---|---|---|---|
| -- | Administrative Claims | Paid in full in Cash on the Effective Date | Unclassified | No, not entitled to vote |

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

| | Priority Tax Claims | Paid in full in Cash on the Effective Date | Unclassified | No, not entitled to vote |
|---|---|---|---|---|
| A1 | Priority Non-Tax Claims | Paid in full in Cash on the Effective Date | Unimpaired | No, deemed to accept this Plan |
| A2 | Senior Secured Claims | See Section 4.02 | Impaired | Yes, entitled to vote |
| A3 | Miscellaneous Secured Claims | Paid in full in Cash on the Effective Date | Unimpaired | No, deemed to accept this Plan |
| A4 | B Member Secured Claims | See Section 4.04 | Impaired | Yes, entitled to vote |
| A5 | General Unsecured Claims | See Section 4.05 | Impaired | Yes, entitled to vote |
| A6 | Intercompany Claims | Canceled | Impaired | No, deemed to reject this Plan |
| A7 | Interests | Canceled | Impaired | No, deemed to reject this Plan |

**CHART 3.03(B) - WFIN**

| Class | Type of Allowed Claim or Interest | Treatment | Impairment | Entitled to Vote |
|---|---|---|---|---|
| -- | Administrative Claims | Paid in full in Cash on the Effective Date | Unclassified | No, not entitled to vote |
| -- | Priority Tax Claims | Paid in full in Cash on the Effective Date | Unclassified | No, not entitled to vote |
| B1 | Priority Non-Tax Claims | Paid in full in Cash on the Effective Date | Unimpaired | No, deemed to accept this Plan |
| B2 | Senior Secured Claims | See Section 4.02 | Impaired | Yes, entitled to vote |
| B3 | Miscellaneous Secured Claims | Paid in full in Cash on the Effective Date | Unimpaired | No, deemed to accept this Plan |
| B4 | General Unsecured Claims | See Section 4.05 | Impaired | Yes, entitled to vote |
| B5 | Intercompany Claims | Canceled | Impaired | No, deemed to reject this Plan |
| B6 | Interests | Canceled | Impaired | No, deemed to reject this Plan |

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

C&C Draft 11/12/13

**CHART 3.03(C) – Global Track**

| Class | Type of Allowed Claim or Interest | Treatment | Impairment | Entitled to Vote |
|-------|-----------------------------------|-----------|------------|------------------|
| -- | Administrative Claims | Paid in full in Cash on the Effective Date | Unclassified | No, not entitled to vote |
| -- | Priority Tax Claims | Paid in full in Cash on the Effective Date | Unclassified | No, not entitled to vote |
| C1 | Priority Non-Tax Claims | Paid in full in Cash on the Effective Date | Unimpaired | No, deemed to accept this Plan |
| C2 | Senior Secured Claims | See Section 4.02 | Impaired | Yes, entitled to vote |
| C3 | Miscellaneous Secured Claims | Paid in full in Cash on the Effective Date | Unimpaired | No, deemed to accept this Plan |
| C4 | General Unsecured Claims | See Section 4.05 | Impaired | Yes, entitled to vote |
| C5 | Intercompany Claims | Canceled | Impaired | No, deemed to reject this Plan |
| C6 | Interests | Canceled | Impaired | No, deemed to reject this Plan |

**ARTICLE IV**
**TREATMENT OF CLAIMS AND INTERESTS**

**Section 4.01    Priority Non-Tax Claims**

<u>Classification</u>: Classes A1, B1, and C1 consist of the Allowed Priority Non-Tax Claims against the respective Debtors.

<u>Treatment</u>: Except to the extent that a Holder of an Allowed Claim in Classes A1, B1, and C1 has agreed in writing with the Debtors (or the Liquidating Trustee) and the Pre-Petition Agent to a different treatment (in which event such other writing will govern), each Holder of an Allowed Claim in Classes A1, B1, and C1 shall receive, on account of, and in full and complete settlement, release and discharge of and in exchange for, such Claim, at the election of the Liquidating Trustee, (i) Cash equal to the amount of such Allowed Claims in Classes A1, B1, and C1 in accordance with Bankruptcy Code § 1129(a)(9), on the later of (a) the Effective Date (or as soon as reasonably practicable thereafter) and (b) the date such Claim in Classes A1, B1, and C1 becomes an Allowed Claim in Classes A1, B1, and C1 (or as soon as reasonably practicable thereafter); or (ii) such other treatment agreed to by the Debtors, Liquidating Trustee, and the Pre-Petition Agent required to render such Allowed Claims in Classes A1, B1, and C1 Unimpaired pursuant to Bankruptcy Code § 1124. Cash payments of Allowed Claims in Classes A1, B1, and C1 shall be paid from the Claims Reserve, or if the Claims Reserve is insufficient to pay all Allowed Priority Non-Tax Claims, any shortfall shall be paid from the ~~Avoidance Actions Proceeds Reserve~~ Liquidating Trust.

<u>Voting</u>: Claims in Classes A1, B1, and C1 are Unimpaired. Each Holder of an Allowed Claim in Classes A1, B1, and C1 shall be conclusively deemed to have accepted this Plan

27

pursuant to Bankruptcy Code § 1126(f), and, therefore, shall not be entitled to vote to accept or reject this Plan.

**Section 4.02    Senior Secured Claims**

Classification: Classes A2, B2, and C2 consist of the Allowed Senior Secured Claims against the Debtors.

Allowance:    The Senior Secured Claims against the Debtors are hereby Allowed as Secured Claims in Classes A2, B2, and C2 in the aggregate principal amount of $___, which amount is comprised of the Senior Secured Claims in the amount of $___, which is also hereby Allowed as a Secured Claim in such Classes and in such amounts.  The Allowed Senior Secured Claims are fully secured by the Collateral securing such Senior Secured Claims, under section 506(a) of the Bankruptcy Code.  The Debtors acknowledge and agree that the Senior Secured Claims are secured by valid, properly perfected first priority security interests. as of the Petition Date of at least $30,870,301.70; *provided, however,* that the foregoing Allowed amount is subject to adjustment for any amounts paid by Debtors from and after the Petition Date, as well as any other interest, fees, charges and expenses as are recoverable under and consistent with the loan documents of the Pre-Petition Agent and the Senior Secured Lenders.  For the avoidance of doubt, nothing herein is intended or should be construed as prohibiting a challenge to the Allowance of any amounts claimed by the Pre-Petition Agent or the Senior Secured Lenders except to the extent such challenge is inconsistent with the Cash Collateral Stipulation.

Treatment: In full satisfaction of the Allowed Senior Secured Claims, the Pre-Petition Agent shall receive, until the Senior Secured such Claims are paid in full in cash:

(i)    on the Effective Date and as part of the Closing, from the Purchaser, all of the PSA Sale Proceeds;

(ii)    on the Effective Date, from the Debtors, contemporaneously with the payment from the Purchaser in clause (i) above, all Available Cash, if any; (but only to the extent such Available Cash does not include the proceeds of any Liquidating Trust Avoidance Actions, Excluded Real Properties, or Retained Claims); and

(iii)    as soon as reasonably practicable after the Effective Date, the Net Proceeds of the sale, collection or other monetization of all or each a portion of the Other Assets;

(iv)    as soon as reasonably practicable after the Effective Date, any funds in the Claims Reserve;

(v)    any funds in the Liquidating Trust Expense Reserve; and

(vi)    as soon as reasonably practicable after receipt by the Liquidating Trustee, all amounts in the Undeliverable Distribution Reserve that have been forfeited by Holders of Claims in accordance with Section 9.02(b) of this Plan.

The Pre-Petition Agent shall disburse the funds received pursuant to this Section 4.02 in accordance with the Senior Credit Agreement.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

28

C&C Draft 11/12/13

In the event sufficient PSA Sale Proceeds exist to pay the Allowed Claim of the Senior Secured Lenders in full, the Senior Secured Lenders shall be entitled to amend their claim as necessary to allow recovery of all other amounts to which the Senior Secured Lenders would be entitled under the Senior Lien Documents and applicable law, including without limitation section 506(b) of the Bankruptcy Code, which might not otherwise be set forth in their Allowed Claim, such as interest and legal fees.  In the event that the Allowed Senior Secured Claim Distribution Amounts are greater than the Allowed Senior Secured Claims and the Allowed Senior Secured Claims are paid in full, then the Liquidating Trust shall distribute the excess amount to General Unsecured Creditors pro rata on account of Allowed General Unsecured Claims.in accordance with the order of priority provided in the Liquidating Trust Agreement.

To the extent that the amounts received by the Pre-Petition Agent as provided herein are less than the amount of the Allowed Senior Secured Claims, the shortfall shall be a "Senior Secured Deficiency Claim" and shall be treated as an Allowed General Unsecured Claim in Classes A5, B5,4, and C5 against the Debtors.  In the event that the Allowed Senior Secured Claim Distribution Amounts are greater than the Allowed Senior Secured Claims and the Senior Secured Claims are paid in full, then the Liquidating Trust shall distribute the excess amount to General Unsecured Creditors on account of the General Unsecured Claims.4 against the Debtors.

Voting: Classes A2, B2, and C2 are Impaired.  Each Holder of an Allowed Claim in Classes A2, B2, and C2 shall be entitled to vote to accept or reject this Plan.

## Section 4.03   Miscellaneous Secured Claims

Classification:   Classes A3, B3, and C3 consist of all Miscellaneous Secured Claims against the Debtors.

Treatment: On or as soon as reasonably practicable after the latest to occur of (i) payment in full of the Allowed Senior Secured Claims in full in cash, (ii) the Effective Date and (iii) the date on which each such Class A3, B3, and C3 Claim becomes an Allowed Claim, each Holder of such an Allowed Claim, if any, shall receive, on account of, and in full and complete settlement, release and discharge of and in exchange for such Allowed Class A3, B3, and C3 Claim, at the election of the Liquidating Trustee (with the prior written consent of Pre-Petition Agent), (a) such treatment in accordance with Bankruptcy Code § 1124 as may be determined by the Bankruptcy Court; (b) payment in full, in Cash, of such Allowed Class A3, B3, and C3 Claim; (c) satisfaction of any such Allowed Class A3, B3, and C3 Claim by delivering the Collateral securing any such Claims (if such Collateral is an Other Asset and not previously sold or otherwise transferred other than to the Liquidating Trust) and paying any interest fees, costs and/or expense required to be paid under Bankruptcy Code § 506(b); or (d) providing such Holder with such treatment in accordance with Bankruptcy Code § 1129(b) as may be determined by the Bankruptcy Court.  Following (and only following) payment of the Allowed Senior Secured Claims in full in cash, cash payments of Allowed Claims in Classes A3, B3, and C3 shall be paid from the Claims Reserve, or if the Claims Reserve is insufficient to pay all Allowed Miscellaneous Secured Claims, any shortage shall be paid from the Avoidance Actions Proceeds Reserve.Liquidating Trust.

Voting: Claims in Classes A3, B3, and C3 are Unimpaired.  Each Holder of an Allowed Claims in Classes A3, B3, and C3 shall be conclusively deemed to have accepted this Plan

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

pursuant to Bankruptcy Code § 1126(f), and, therefore, shall not be entitled to vote to accept or reject this Plan.

### Section 4.04   B Member Secured Claims

Classification:  Class A4 consists of all B Member Secured Claims against WFI.

Treatment:  On or as soon as reasonably practicable after the latest to occur of (i) the Effective Date or (ii) the date on which each such Class A4 Claim becomes an Allowed Claim, each Holder of such an Allowed Claim, if any, shall receive, on account of, and in full and complete settlement, release and discharge of and in exchange for such Allowed Class A4 Claim, at the election of the Liquidating Trustee (with the prior written consent of Pre-Petition Agent), (a) such treatment in accordance with Bankruptcy Code § 1124 as may be determined by the Bankruptcy Court; (b) payment in full, in Cash, of such Allowed Class A4 Claim; (c) satisfaction of any such Allowed Class A4 Claim by delivering the Collateral securing any such Claims (if such Collateral is an Other Asset and not previously sold or otherwise transferred other than to the Liquidating Trust) and paying any interest fees, costs and/or expense required to be paid under Bankruptcy Code § 506(b); or (d) providing such Holder with such treatment in accordance with Bankruptcy Code § 1129(b) as may be determined by the Bankruptcy Court. Following (and only following) payment of the Allowed Senior Secured Claims in full in cash, cash payments of Allowed Claims in Class A4 shall be paid from the Claims Reserve, or if the Claims Reserve is insufficient to pay all Allowed Miscellaneous Secured Claims, any shortage shall be paid from the Avoidance Actions Proceeds ReserveLiquidating Trust.

Voting: Claims in Class A4 are Impaired.  Each Holder of Allowed Claims in Class A4 shall be conclusively deemed to have accepted this Plan pursuant to Bankruptcy Code § 1126(f), and, therefore, shall not be entitled to vote to accept or reject this Plan.

### Section 4.05   General Unsecured Claims

Classification: Classes A5, B4, and C4 consist of all General Unsecured Claims against the Debtors.

Treatment: Each Holder of an Allowed Claim in Classes A5, B4, and C4 shall receive from the Liquidating Trust on or as soon as reasonably practicable after the Effective Date, their Pro Rata share of the sum of (i) the aggregate Cashproceeds of any Liquidating Trust Avoidance Actions Proceeds, less (ii), and the proceeds of any sales of Excluded Real Properties, less any amounts of the Avoidance Actions Proceeds Reserve required to satisfy the Allowed Plan Carve Out Claims as provided in this Plan.

Voting: Claims in Classes A5, B4, and C4 are Impaired.  Each Holder of an Allowed Claim in Classes A5, B4, and C4 shall be entitled to vote to accept or reject this Plan.

### Section 4.06   Intercompany Claims

Classification:  Classes A6, B5, and C5 consist of all Intercompany Claims between or among the Debtors.

Treatment:  On the Effective Date, all of the Intercompany Claims as of the Effective Date shall be eliminated, extinguished, cancelled, and discharged.  Pursuant to Bankruptcy Code

§ 1129(b)(2)(C), Holders of Intercompany Claims shall not be entitled to, nor shall they receive, any distribution or retain any property or interest in property on account of such Intercompany Claims.

Voting: Claims in Classes A6, B5, and C5, are deemed to have rejected this Plan and, accordingly are not entitled to vote to accept or reject this Plan.

## Section 4.07   Interests

Classification: Classes A7, B6, and C6 shall consist of the common Interests in WFI, WFIN and Global Track, respectively.

Treatment:  On the Effective Date, all of the Classes A7, B6, and C6 Interests outstanding as of the Effective Date shall be extinguished, cancelled and discharged.  Pursuant to Bankruptcy Code § 1129(b)(2)(C), Holders of Interests in Classes A7, B6, and C6 shall not be entitled to, nor shall they receive, any distribution or retain any property or interest in property on account of such Interests.

Voting: Interests in Classes A7, B6, and C6 are Impaired.  The Holders of Allowed Interests in Classes A7, B6, and C6 are deemed to have rejected this Plan and, accordingly, are not entitled to vote to accept or reject this Plan.

## Section 4.08   One Satisfaction of Senior Secured Claims

Though listed in a class for each Debtor, there shall be only one satisfaction of the Secured Claims.  Each such Claim shall be Allowed as if each Debtor were jointly and severally liable thereunder.  Any deficiency in any Secured Claims shall be treated as General Unsecured Claims.

## ARTICLE V

## ACCEPTANCE OR REJECTION OF THIS PLAN

## Section 5.01   Designation of Unimpaired Classes

Classes A1, A3, B1, B3, B7, C1, and C3 are Unimpaired.

## Section 5.02   Designation of Impaired Classes

(a)    *Impaired Classes of Claims*.

Classes A2, A4, A5, A6, B2, B4, B5, B6, C2, C4, C5, and C6 are Impaired.

(b)    *Impaired Classes of Interest*.

Classes A7, B6, C6 are Impaired.

## Section 5.03   Classes Entitled to Vote

Classes A2, A4, A5, B2, B4, C2, and C4 are entitled to cast Ballots within this Plan.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

## Section 5.04    Classes Not Entitled to Vote

Classes A1, A3, B1, B3, C1, and C3 are Unimpaired under this Plan and therefore, Holders of Claims in such classes are not entitled to cast Ballots with respect to this Plan as they are deemed to accept this Plan in accordance with Bankruptcy Code § 1126(f).

Classes A6, A7, B5, B6, C5 and C6 are not entitled to receive or return Property under this Plan and are deemed to reject this Plan in accordance with Bankruptcy Code § 1126(g).

## Section 5.05    Date of Distributions on Account of Allowed Claims

Except as otherwise specifically provided herein (for example, in Section 4.02, clauses (i) and (ii)), or in the Purchase and Sale Agreement, any distributions and delivery to be made under this Plan shall be made on the Effective Date or as soon as practicable thereafter. In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

## Section 5.06    Sources of Cash for the Plan Distributions

Except as otherwise specifically provided herein or in the Confirmation Order, all Cash required for the payments to be made hereunder shall be obtained from the Available Cash on hand or the Purchaser.

## Section 5.07    Cram Down – Nonconsensual Confirmation

If each Impaired Class of Claims or Interests entitled to vote shall not accept this Plan by the requisite statutory majority provided in Bankruptcy Code § 1126(c) or 1126(d), the Debtors request Confirmation of this Plan under Bankruptcy Code § 1129(b).  In that event, the Debtors reserve the right to modify this Plan to the extent, if any, that Confirmation pursuant to Bankruptcy Code § 1129(b) requires modification or any other reason in their discretion, but no such modification may adversely affect an extant Purchaser or any of its subsidiaries (except with Purchaser's consent).

## ARTICLE VI

## MEANS FOR IMPLEMENTATION OF THIS PLAN AND POST EFFECTIVE DATE GOVERNANCE

## Section 6.01    Sale of the Acquired Property

This Plan contemplates the sale of the Acquired Property to a third party.  To effect this, the Debtors Filed the Bid Procedures and Sale Motion, which seeks, *inter alia*, to approve the Stalking Horse SPA and to establish the Auction.  On November 25, 2013, the Bankruptcy Court entered the Bid Procedures Order, which established December [___],13, 2013 as the deadline for Potential Bidders to submit bids for the Acquired Property, and established December [___],16, 2013 as the date for the Auction.  In connection with the Auction, the Debtors have identified the Stalking Horse as a potential purchaser for the ~~Equity~~New Interests.    At the conclusion of the Auction (at which the Pre-Petition Agent and Senior Secured Lenders shall be deemed to be

32

C&C Draft 11/12/13

Qualified Bidders), the Debtors, with the consent of the Pre-Petition Agent, will seek Bankruptcy Court approval to sell the Acquired Property pursuant to the Purchase and Sale Agreement (or, in the event that the Successful Bidder is the Pre-Petition Agent and/or Senior Secured Lenders pursuant to a credit bid, then pursuant to such credit bid) to the Successful Bidder, Free and Clear.  The Sale Order and/or the Confirmation Order shall contain specific authority for the Debtors to comply with the Purchase and Sale Agreement or terms of such credit bid, as appropriate, as set forth above.

**Section 6.02    Application of PSA Sale Proceeds and Available Cash**

(a)    _Claims Reserve Funding._  Contemporaneously with the Closing, the Effective Date and the delivery of the PSA Sale Proceeds to the Pre-Petition Agent described below in an amount sufficient to pay the Allowed Senior Secured Claims in full in cash, the Debtors will transfer from their Available Cash (other than Retained Funds) an amount sufficient to fund the Claims Reserve for the benefit of the Holders of Allowed Plan Carve Out Claims (and, to the extent of any surplus from such reserveClaims Reserve after the payment of such Allowed Claims, for the benefit of the Holders of Allowed Senior Secured Claims) to the Liquidating Trust.

(b)    _Liquidating Trust Funding._  If there is additional Available Cash after the Claims Reserve has been funded and the Allowed Senior Secured Claims have been paid in full in cash and after the Claims Reserve is funded, then the Debtors will transfer an amount sufficient to fund the Liquidating Trust Expense Reserve in full from theirany remaining Available Cash (other than Retained Funds) to the Liquidating Trust to be distributed per the order of priority in the Liquidating Trust Agreement.

(c)    _Payment of Allowed Senior Secured Claims._  Contemporaneously with and as part of the Closing and the Effective Date, the Purchaser shall transfer to the Pre-Petition Agent all of the PSA Sale Proceeds (including the release of any deposit paid pursuant to the Purchase and Sale Agreement or Bid Procedures) and any subsequent adjustments or payments received from the Purchaser pursuant to the Purchase and Sale Agreement or the Sale Order.  In the event that the Allowed Senior Secured Claims are paid in full, excess amounts of the PSA Sale Proceeds shall be transferred to General Unsecured Creditors on account of the General Unsecured Claimsthe Liquidating Trust to be distributed per the order of priority in the Liquidating Trust Agreement.

**Section 6.03  Sale of the Excluded Retail Contracts.**

Prior to the Confirmation Date, Debtors shall seek court approval to sell the Excluded Retail Contracts, subject to the consent of the Pre-Petition Agent, and the proceeds thereof shall be transferred to the Pre-Petition Agent for the benefit of the Senior Secured ClaimsAllowed Senior Secured Claims.  In the event that the Allowed Senior Secured Claims are paid in full, excess amounts of the sale proceeds from the Excluded Retail Contracts shall be transferred to the Liquidating Trust to be distributed per the order of priority in the Liquidating Trust Agreement.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Section 6.04    Sale of the Excluded Real Properties.**

(a)    <u>Las Vegas Property.</u>  This Plan contemplates the sale of the Excluded Real Properties to one or more third parties.  To effect this, the Debtors Filed a bid procedures and sale motion with respect to the Las Vegas Property, which seeks, *inter alia*, to approve the Stalking Horse's Las Vegas Property Purchase Agreement on or before the Confirmation Hearing and to establish an auction for the Las Vegas Property to occur at the Confirmation Hearing and immediately after the conclusion of the saleAuction of the Acquired Property.  On November [___], 2013, the Bankruptcy Court entered anthe Las Vegas Property Bid Procedures Order, which established December [___], 2013 as the deadline for potential bidders to submit bids for the Las Vegas Property, and established December [___], 2013 as the date for the auction of the Las Vegas Property.  In connection with the auction of the Las Vegas Property, the Debtors have identified the Stalking Horse as a potential purchaser for the Las Vegas Property.  If no timely Qualifying Bid (as defined in the Las Vegas Property Bid Procedures Order) (other than the Stalking Horse bid) is received by the Bid Deadline (as defined in Las Vegas Property Bid Procedures Order), the Debtors shall not hold an auction for the Las Vegas Property and instead shall request at the sale hearing that the Bankruptcy Court approve the Stalking Horse's Las Vegas Property Purchase Agreement and declare the Stalking Horse to be the successful bidder/bid.  Notwithstanding anything herein to the contrary, if the Stalking Horse is not the Successful Bidder for the Acquired Property, then the Stalking Horse shall have no obligation to proceed with and shall not be bound by the Las Vegas Property Purchase Agreement.  The Las Vegas Property Sale Order and/or the Confirmation Order shall contain specific authority for the Debtors to comply with the Las Vegas Property Purchase as set forth above.  The proceeds from the sale or auction of the Las Vegas Property, if any (or in the event no sale of the Las Vegas Property is approved prior to or at the Confirmation Hearing, then the Las Vegas Property itself) shall be transferred to the Liquidation Trustee to satisfy any Allowed Secured B Member Claims, or if no such claims are Allowed, then to the Liquidation Trustee for the benefit of Allowed General Unsecured Claimsto be distributed per the order of priority in the Liquidating Trust Agreement.

(b)    <u>Other Excluded Real Properties.</u>  Any Excluded Real Properties other than the Las Vegas Property shall be transferred to the Liquidation Trustee for it to market and to sell on such terms and timetable as the Liquidation Trustee deems appropriate in its sole and absolute discretion, and the proceeds of such sale(s) shall be used to satisfy any Allowed Secured B Member Claims, or if no such Claims are Allowed, then to the Liquidation Trustee for the benefit of Allowed General Unsecured Claimsto be distributed per the order of priority provided in the Liquidating Trust Agreement.

**Section 6.05    Other Assets**

Any Other Assets shall revest, and except as otherwise provided in the Purchase and Sale Agreement or vest in the appropriate Reorganized Debtor andin any purchase and sale agreement for the Excluded Real Properties, shall be transferred to the Liquidating Trust for the benefit of the Holders of Allowed Senior Secured Claims.  Except as otherwise provided in the Purchase and Sale Agreement, or any purchase and sale agreement for the Excluded Real Properties, any assets received by the Liquidating Trust after the Effective Date of the Plan (other than the proceeds of Liquidating Trust Avoidance Actions and Excluded Real Properties) shall also be Other Assets and transferred to the Liquidating Trust for the benefit of the Holders of Allowed Senior Secured Claims.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

**Section 6.06    Liquidating Trust Avoidance Actions**

All Liquidating Trust Avoidance Actions are transferred to the Liquidating Trust for the benefit of the Holders of Allowed General Unsecured Claims in Classes A5, B4, and C4.to be distributed per the order of priority in the Liquidating Trust Agreement.

**Section 6.07    Purchase and Sale Agreement and Related Documents**

(a)    General. On the Effective Date, the transactionsTransactions contemplated by the Purchase and Sale Agreement and the Las Vegas Property Purchase Agreement, and any documents in connection therewith shall be consummated, and the Acquired Property (and, as applicable, the Las Vegas Property) shall be sold and transferred to the Purchaser in accordance with the terms of the Purchase and Sale Agreement (and, as applicable, the Las Vegas Property Purchase Agreement) and this Plan in exchange for the consideration set forth in the Purchase and Sale Agreement (and, as applicable, the Las Vegas Property Purchase Agreement).

(b)    Amendment. To the extent that material amendments are needed to the Purchase and Sale Agreement or to the Las Vegas Property Purchase Agreement, the Debtors shall File the Purchase and Sale Agreement and/or the Las Vegas Property Purchase Agreement as so amended (and any related documents) on or before the Plan Supplement Filing Date.    After the Confirmation Date, the Debtors may modify the Purchase and Sale Agreement, the Las Vegas Property Purchase Agreement, or any other documents in accordance with the terms of the Purchase and Sale Agreement and/or the Las Vegas Property Purchase Agreement in furtherance of the transactions contemplated thereby without the need for further notice or court approval.

**Section 6.08    Deemed Consolidation of Debtors for Plan Purposes Only.**

Subject to the occurrence of the Effective Date, the Debtors shall be deemed consolidated under the Joint Plan of Reorganization solely for the limited purposes of distribution under the Plan. Each and every Claim filed or to be filed against any of the Debtors shall be deemed filed against the deemed consolidated Debtors and shall be deemed one Claim against all Debtors and (a) all Claims of each Debtor against any other Debtor will be eliminated and released; (b) any obligation of any Debtor and all guarantees thereof executed by one or more of the Debtors shall be deemed to be one obligation of all of the consolidated Debtors; (c) any Claims filed or to be filed in connection with any such obligation and such guarantees shall be deemed one Claim against the consolidated Debtors; (d) all duplicative Claims (identical in amount and subject matter) filed against one or more of the Debtors will be automatically expunged so that only one Claim survives against the consolidated Debtors; and (e) the consolidated Debtors will be deemed, for purposes of determining the availability of the right of set-off under section 553 of the Bankruptcy Code, to be one entity, so that, subject to other provisions of section 553 of the Bankruptcy Code, the debts due to a particular Debtor may be offset against the Claims against such Debtor or Debtors.

Such deemed consolidation, however, shall not (other than for purposes related to funding distributions under the this Plan and as set forth above in this Section) affect: (a) the legal and organizational structure of the Reorganized Debtors; (b) pre- and post-Petition Date guaranties, liens, and security interests that are required to be maintained (i) in connection with executory contracts or unexpired leases that were entered into during the Bankruptcy Cases or that have been or will be assumed; (ii) pursuant to this Plan; or (iii) in connection with any financing

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

entered into, or New Interests issued, by the Reorganized Debtors on the Effective Date; and (iv) distributions out of any insurance policies or proceeds of such policies.

**Section 6.96.09**                    **Creation of Liquidating Trust**

As set forth in Article VII, the Plan provides for the creation of a Liquidating Trust with the Liquidating Trust Assets and for the distribution and delivery of said assets in accordance with the terms of this Plan.

**Section 6.10    Governance Documents**

On the Effective Date, the Governance Documents of WFI and Global Track shall be amended and restated in substantially the form set forth in the Plan Supplement.

**Section 6.11    Directors and Officers**

On the Effective Date, (a) the positions of the current directors, or in the case of a governing body created by a limited liability company agreement or similar agreement, the members of such governing body (such persons and the corporate directors collectively, the "Governors") of each Debtor shall be eliminated, and each Governor shall be terminated (without the necessity of further action); (b) to the fullest extent permitted by applicable law, the rights, powers, and duties of the Governors of each Debtor (that is not a Debtor whose Interests have been sold to the Purchaser pursuant to the Sale Order and/or the Confirmation Order) that has a Governor shall vest in the Liquidating Trustee and the Liquidating Trustee or its designee shall be the presiding officer and the sole Governor of each such Reorganized Debtor; and (c) to the fullest extent permitted by applicable law, the Governors of each Debtor whose Interests have been sold to the Purchaser pursuant to the Sale Order and/or the Confirmation Order shall be selected by the Purchaser.  The Liquidating Trustee shall make all determinations with respect to employment of any other directors, officers, managers and employees of each such Debtor described in clause (b) on and after the Effective Date.

**Section 6.12    Cancellation of Existing Secured Claims**

Except as otherwise provided herein and in accordance with the Purchase and Sale Agreement or any sale agreement for any of the Excluded Real Properties, upon the Effective Date, any Lien encumbering the Acquired Property or the Excluded Properties shall be deemed released and the Holder of such Allowed Secured Claim shall deliver to the applicable Debtor (or Reorganized Debtor) any Collateral or other property of any Debtor (or Reorganized Debtor) held by such Holder, and any termination statements, instruments of satisfactions, or releases of all security interests with respect to its Allowed Secured Claim that may be reasonably required in order to terminate any related financing statements, mortgages, mechanic's liens, or *lis pendens*.

**Section 6.13    Vesting of the Vested Assets**

Except as otherwise set forth in this Plan, the Sale ~~Order~~Orders, and/or the Confirmation Order, on the Effective Date, (a) the Vested Assets shall vest in the applicable Reorganized Debtors Free and Clear; and (b) the assumed contracts shall be assumed by the applicable Debtors as provided in Article X and vest in the applicable Reorganized Debtor(s).  Except as otherwise set forth in this Plan or the Purchase and Sale Agreement from and after the Effective Date, the Reorganized Debtors shall perform and pay when due liabilities under, or related to the

ownership or operation of, the Vested Assets and the Liquidating Trust shall not be responsible for any such liabilities.  The Reorganized Debtors may operate free of any restrictions of the Bankruptcy Code.

After the Effective Date, the Reorganized Debtors may present such orders or assignments of the Bankruptcy Court, suitable for Filing in the records of every county or governmental agency where the Vested Assets are or were located, which provide that such property is conveyed to or vested in the Reorganized Debtors.  The orders or assignments may designate all Liens, Claims, and encumbrances or other interests, which appear of record and/or from which property is being transferred and assigned.  This Plan shall be conclusively deemed to be adequate notice that such Lien, Claim, encumbrance, or other interest is being extinguished and no notice other than by this Plan, shall be given before the presentation of such orders or assignments. Any person having a Lien, Claim, encumbrance or other interest against any Vested Asset shall be conclusively deemed to have consented to the transfer, assignment and vesting of such Vested Assets Free and Clear to the Reorganized Debtors by failing to object to Confirmation, except as otherwise provided for in this Plan; *provided, however*, except as otherwise set forth in this Plan, nothing herein shall be deemed to be a release of any Lien, Claim, encumbrance or other interest in or against property that is not a Vested Asset.

## Section 6.14    Cancellation of Interests

On the Effective Date, all Interests in the Debtors (including those Interests held in Treasury by any of the Debtors) shall be terminated and extinguished and the certificates that previously evidenced ownership of those interests shall be deemed canceled (all without further action by any person or the Bankruptcy Court) and shall be null and void and such certificates shall evidence no rights or interests in any of the Debtors.

## Section 6.15    Issuance of New Interests/New WFIN Stock

~~In the event that the Transactions include a sale of the New Interests pursuant to the Purchase and Sale Agreement, then, on~~On the Effective Date, after the Interests are cancelled, Reorganized Global Track shall issue the New Global Track Shares to ~~Reorganized WFI~~Purchaser and Reorganized WFI shall issue the New WFIN Stock to the Purchaser in accordance with the Purchase and Sale Agreement, and in each case such shares shall be Free and Clear; provided that the termination of Interests in Reorganized ~~WFIN~~WFI and Reorganized Global Track pursuant to Section 6.15~~6.14~~ and the issuance of the New Interests pursuant to this Section 6.16~~6.15~~ are each intended to qualify as a "reorganization" under Section 368(a)(1)(E) of the Internal Revenue Code; [*provided, further* that the termination of Interests pursuant to ~~this~~ Section 6.15~~6.14~~ are each intended to qualify as a "contribution" under Section 721 of the Internal Revenue Code.  ~~In the event that the Transactions include a sale of the New Interests pursuant to the Purchase and Sale Agreement, then the~~].  The New WFI Stock shall constitute one hundred percent of the authorized and issued equity ~~interest~~interests in the Reorganized WFI.  ~~In the event that the Transactions do not include a sale of the New Interests, but instead include a sale of the Debtor Assets pursuant to the Purchase and Sale Agreement, then on the Effective Date, the Interests shall be terminated and extinguished and no New Interests shall be issued.~~ The New Global Track Shares shall constitute one hundred percent of the limited liability company interests in Reorganized Global Track.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

On the Effective Date there shall not be issued, reserved for issuance or outstanding any (i) shares of capital stock or other voting or other securities of, or ownership interests in, any Reorganized Debtor, other than the New Interests issued to Purchaser at the Closing, (ii) securities of any Reorganized Debtor convertible into or exchangeable for shares of capital stock or other voting or other securities of, or ownership interests in, any Reorganized Debtor, (iii) warrants, calls, options or other rights to acquire from any Reorganized Debtor, or other obligation of any Reorganized Debtor to issue, any capital stock, voting or other securities or ownership interests, or securities convertible into or exchangeable for capital stock or voting or other securities of, or ownership interests in, any Reorganized Debtor or (iv) restricted shares, stock appreciation rights, performance units, contingent value rights, "phantom" stock or similar securities or rights that are derivative of, or provide economic benefits based, directly or indirectly, on the value or price of, any capital stock or of voting or other securities of, or ownership interests in, any Reorganized Debtor.

On the Effective Date, after the Interests are cancelled, Dissolved WFIN shall issues new shares in Dissolved WFIN pursuant to section 1145 of the Bankruptcy Code to the Liquidating Trust and such shares shall be Free and Clear provided that the termination of Interests in Dissolved WFIN; pursuant to Section 6.14 and the issuance of the shares pursuant to this Section 6.15 are each intended to qualify as a "reorganization" under Section 368(a)(1)(E) of the Internal Revenue Code; [*provided, further* that the termination of Interests pursuant to Section 6.14 are each intended to qualify as a "contribution" under Section 721 of the Internal Revenue Code.]

## Section 6.16    Exemption from Registration

The New Interests and the New WFIN Stock shall be exempt from registration under any federal (including the Securities Act), state or local law, rule or regulation pursuant to Bankruptcy Code § 1145 or other applicable law requiring registration before the offering, issuance, distribution or sale of securities; provided that if the issuance of the New Interests or New WFIN Stock, as applicable, does not qualify for an exemption under Bankruptcy Code § 1145, the New Interests or New WFIN Stock, as applicable, shall be issued in a manner, which qualifies for any other available exemption from registration, whether as a private placement under Rule 506 of the Securities Act, Section 4(2) of the Securities Act, and/or the safe harbor provisions promulgated thereunder.  In connection with the confirmation of the Plan, the Debtors intend to seek an order from the Bankruptcy Court to the effect that the issuance of the New Interests and New WFIN Stock is exempt from registration under the Securities Act and any other applicable laws.

## Section 6.17    Authorization for Transaction

On the Effective Date or as soon as reasonably practicable thereafter, the Debtors, and the Reorganized Debtors may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate this Plan or the Transactions, including:  (a) the execution and delivery of appropriate agreements or other documents of merger, consolidation, or reorganization containing terms that are consistent with the terms of this Plan and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of this Plan; (c) the filing of appropriate certificates of incorporation, merger, or consolidation with the

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

C&C Draft 11/12/13

appropriate governmental authorities pursuant to applicable law; and (d) all other actions that the Debtors, or the Reorganized Debtors determine are necessary or appropriate, including the making of filings or recordings in connection with the Transactions, which actions may be set forth in a Plan Supplement exhibit.

**Section 6.18    Preservation of Rights of Action; Settlement**

Except to the extent such rights, ~~claims~~Claims, Causes of Action, defenses, and counterclaims are otherwise disposed of in this Plan, the Purchase and Sale Agreement, the Las Vegas Property Purchase Agreement, or are expressly and specifically released in connection with this Plan, the Sale ~~Order~~Orders, and/or Confirmation Order, or in any settlement agreement approved during the Bankruptcy Cases, or in any contract, instrument, release, indenture or other agreement entered into in connection with this Plan, in accordance with Bankruptcy Code § 1123(b): (1) any and all rights, Claims, Causes of Action (including Liquidating Trust Avoidance Actions but excluding Retained Claims), defenses, and counterclaims of or accruing to the Debtors or their Estates shall be transferred to the Liquidating Trust, whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such rights, ~~claims, causes of action~~Claims, Causes of Action, defenses and counterclaims have been Scheduled, listed or referred to in this Plan, the Bankruptcy Schedules, or any other document Filed with the Bankruptcy Court; and (2) the Liquidating Trust does not waive, relinquish, or abandon (nor shall it be estopped or otherwise precluded from asserting) any right, ~~claim, cause~~Claim, Cause of ~~action~~Action, defense, or counterclaim that constitutes property of the Estates:  (a) whether or not such right, ~~claim, cause~~Claim, Cause of ~~action~~Action, defense, or counterclaim has been listed or referred to in this Plan, the Bankruptcy Schedules, the Bankruptcy SOFAs, or any other document Filed with the Bankruptcy Court; (b) whether or not such right, ~~claim, cause~~Claim, Cause of ~~action~~Action, defense, or counterclaim is currently known to the Debtors; and (c) whether or not a defendant in any litigation relating to such right, ~~claim, cause~~Claim, Cause of ~~action~~Action, defense or counterclaim Filed a Proof of Claim in the Bankruptcy Cases, Filed a notice of appearance or any other pleading or notice in the Bankruptcy Cases, voted for or against this Plan, or received or retained any consideration under this Plan.  Without in any manner limiting the generality of the foregoing, notwithstanding any otherwise applicable principle of law or equity, without limitation, any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, or refer to a right, ~~claim, cause~~Claim, Cause of ~~action~~Action, defense, or counterclaim, or potential right, claim, cause of action, defense, or counterclaim, in this Plan, the Bankruptcy Schedules, or any other document Filed with the Bankruptcy Court shall in no manner waive, eliminate, modify, release, or alter the Liquidating Trust's right to commence, prosecute, defend against, settle, and realize upon any rights, ~~claims, causes of action~~Claims, Causes of Action, defenses, or counterclaims that a Debtor has, or may have, as of the Effective Date.  The Liquidating Trust may, subject to this Plan and the Liquidating Trust Agreement, commence, prosecute, defend against, settle, and realize upon any rights, ~~claims, causes of action~~Claims, Causes of Action, defenses, and counterclaims in its sole discretion, in accordance with what is in the best interests, and for the benefit, of the beneficiaries of the various assets in the Liquidating Trust.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

39

C&C Draft 11/12/13

**Section 6.19    ~~Employee Benefit Plans~~[Reserved]**

~~Before the Effective Date, all Employee Benefit Plans shall be terminated in accordance with the applicable provisions of the state and federal law.  The Purchaser and the Reorganized Debtors shall have no liability for any obligations under any Employee Benefit Plan.~~

**Section 6.20    Exclusivity Period**

The Debtors shall retain the exclusive right to amend or modify this Plan, and to solicit acceptances of any amendments to or modifications of this Plan, through and until the earlier of (i) the Effective Date or (ii) the expiration of the Debtors' exclusive period to solicit acceptances of this Plan under Bankruptcy Code § 1121(d).

**Section 6.21    Effectuating Documents**

The president, chief financial officer, manager, or any other appropriate officer of the Debtors, including specifically Frederick Cooper, Katherine Cooper and Edward Bentzen, or, after the Effective Date, the Reorganized Debtors (or the Liquidating Trustee on behalf of any Reorganized Debtor that is not owned by the Purchaser), shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.  The secretary of the Debtors, or, after the Effective Date, of the Reorganized Debtors (or the Liquidating Trustee on behalf of any Reorganized Debtor that is not owned by the Purchaser), shall be authorized to certify or attest to any of the foregoing actions.  The Debtors are authorized to perform their obligations under the Purchase and Sale Agreement, the Las Vegas Property Purchase Agreement, or any purchase agreement for the sale of the Excluded ~~Real Properties~~Assets.

**Section 6.22    Exemption from Certain Transfer Taxes**

Pursuant to Bankruptcy Code § 1146(a), the issuance, transfer, or exchange of a security, or the making of delivery of an instrument of transfer, including any transfers effected pursuant to the Purchase and Sale Agreement, the Las Vegas Property Purchase Agreement, any sale of the Excluded Real Properties, or by mergers, provided under this Plan, from the Debtors to the Purchaser, the Reorganized Debtors, or any other Person or Entity pursuant to this Plan or the Purchase and Sale Agreement, the Las Vegas Property Purchase Agreement, or any sale of the Excluded Real Properties, as applicable, may not be taxed under any law imposing a stamp tax or similar tax, and the sale and/or Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for Filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**Section 6.23    Liquidating Trustee Closing of the Bankruptcy Cases.**

When (a) the Bankruptcy Court has adjudicated all applications by professionals for final allowances of compensation for services and reimbursement of expenses and the issuance of a Final Order for each application and the payment of all amounts payable thereunder; (b) all Disputed Claims filed against a Debtor have become Allowed Claims or have been Disallowed by Final Order or otherwise pursuant to this Plan, and all appropriate Plan Distributions have been made pursuant to the Plan, the Liquidating Trustee shall seek authority from the Bankruptcy

LARSON & ZIRZOW, LLC
810 S. Casino Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

Court to close such Debtor's Bankruptcy Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE VII

## LIQUIDATING TRUST AND LIQUIDATING TRUSTEE

### Section 7.01    The Creation of the Liquidating Trust

The Liquidating Trust, duly organized under the laws of ~~Texas~~Nevada, is created for the purpose of liquidating the Liquidating Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d) and shall be governed by the Liquidating Trust Agreement. The Liquidating Trust Agreement shall conform to the terms of this Plan, and to the extent that the Liquidating Trust Agreement is inconsistent with this Plan, the terms of this Plan shall govern. The Liquidating Trustee will file all federal income tax returns for the Liquidating Trust as a grantor trust pursuant to Section 671 of the Internal Revenue Code and the Treasury Regulations promulgated thereunder.

### Section 7.02    Funding of *Res* of Trust

On the Effective Date, all of the Liquidating Trust Assets shall be transferred and assigned to the Liquidating Trust, and the Liquidating Trust shall be in possession of, and have title to, all the Liquidating Trust Assets.  The conveyances of all Liquidating Trust Assets shall be accomplished pursuant to this Plan, the Sale ~~Order~~Orders, and/or the Confirmation Order. The Debtors shall convey, transfer, assign and deliver the Liquidating Trust Assets Free and Clear, except that the Liens of the Senior Secured Lenders shall attach to the Liquidating Trust Assets other than Avoidance Actions and the Excluded Real Properties.  The Liquidating Trustee may present such orders to the Bankruptcy Court as may be necessary to require third parties to accept and acknowledge such conveyance to the Liquidating Trust.  Such orders may be presented without further notice other than as has been given in this Plan.

For all federal income tax purposes, all Persons (including, without limitation, the Debtors and the Liquidating Trustee and the beneficiaries of the Liquidating Trust) will treat the transfer and assignment of the Liquidating Trust Assets to the Liquidating Trust for the benefit of the beneficiaries of the Liquidating Trust as (a) a transfer of the Liquidating Trust Assets directly to the beneficiaries of the Liquidating Trust followed by (b) the transfer by the beneficiaries of the Liquidating Trust to the Liquidating Trust of the Liquidating Trust Assets. The Liquidating Trust will be treated as a grantor trust for federal tax purposes and, to the extent permitted under applicable law, for state and local income tax purposes. The beneficiaries of the Liquidating Trust will be treated as the grantors and owners of their Pro Rata portion of the Liquidating Trust Assets for federal income tax purposes.

### Section 7.03    The Liquidating Trustee

The Liquidating Trustee shall be appointed by mutual consent of the Debtors and the Pre-Petition Agent.  The Liquidating Trustee shall retain and have all the rights, powers and duties necessary to carry out his or her responsibilities under this Plan and the Liquidating Trust Agreement, and as otherwise provided in the Sale ~~Order~~Orders and/or the Confirmation Order. However, the Liquidating Trustee shall not be obligated to review, investigate, evaluate, analyze,

or object to Fee Applications or Professional Fee Claims relating to services rendered and expenses incurred before the Effective Date. The Liquidating Trustee shall be the exclusive trustee of the Liquidating Trust Assets for the purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to Bankruptcy Code § 1123(b)(3)(B). Subject to the Bankruptcy Court's approval and appointment of the selection of the Liquidating Trustee at the Confirmation Hearing, a Person to be designated by the Debtors and the Pre-Petition Agent in the Plan Supplement shall initially serve as the Liquidating Trustee. Matters relating to the appointment, removal and resignation of the Liquidating Trustee and the appointment of any successor Liquidating Trustee shall be set forth in the Liquidating Trust Agreement. The Liquidating Trustee shall be required to perform his or her duties as set forth in this Plan and the Liquidating Trust Agreement.

**Section 7.04    Retention of Professionals**

The Liquidating Trustee shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Liquidating Trustee, are necessary to assist the Liquidating Trustee in the performance of his or her duties. The reasonable fees and expenses of such professionals shall be paid by the Liquidating Trust upon the monthly submission of statements to the Liquidating Trustee. The payment of the reasonable fees and expenses of the Liquidating Trustee's retained professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court except as otherwise provided in this Plan. Professionals of, among others, the Debtors and the Committee (if any), shall be eligible for retention by the Liquidating Trustee on a special counsel basis, and former employees of the Debtors shall be eligible for retention by the Liquidating Trust and Liquidating Trustee.

The reasonable fees and expenses incurred in connection with services performed by the Liquidating Trust relating to the administration and/or liquidation of General Unsecured Claims and/or Liquidating Trust Avoidance Actions shall be paid by the Liquidating Trust solely from the Liquidating Trust Expense Reserve and amounts otherwise distributable to Holders of Allowed General Unsecured Claims. Before such payment of the Liquidating Trustee's fees, fees and expenses of the Liquidating Trustee's retained professionals and other costs, expenses and liabilities of the Liquidating Trust, the Liquidating Trustee shall provide written notice thereof to the Pre-Petition Agent in such detail and with such support as the Pre-Petition Agent may reasonably request. If the Pre-Petition Agent does not object to the payment of such amounts within five (5) Business Days after receipt of such notice, the Liquidating Trustee may make such payments. If any Pre-Petition Agent objects and the objecting Pre-Petition Agent(s) and the Liquidating Trustee cannot agree on the appropriate amount of such payment, then the Liquidating Trustee may not make such payment unless he or she obtains an order from the Bankruptcy Court approving such payment.

**Section 7.05    Compensation of the Liquidating Trustee**

The Liquidating Trustee's compensation, on a post-Effective Date basis, shall be disclosed in the Plan Supplement. The payment of the fees of the Liquidating Trustee and any professionals retained by the Liquidating Trustee shall be made by the Liquidating Trust in accordance with the provisions of this Plan and the Liquidating Trust Agreement.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

C&C Draft 11/12/13

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

**Section 7.06   Liquidating Trust Expenses**

All costs, expenses and obligations incurred by the Liquidating Trustee in administering this Plan and the Liquidating Trust, or in any manner connected, incidental or related thereto shall come from amounts distributable to the appropriate beneficiaries for whose benefit such expenses or obligations were incurred. For example, reasonable costs incurred in resolving Liquidating Trust Avoidance Actions and General Unsecured Claims shall be paid first from the Liquidating Trust Expense Reserve and then from amounts otherwise distributable to Holders of Allowed General Unsecured Claims, and expenses incurred in monetizing Other Assets shall be paid first from the Liquidating Trust Expense Reserve and then from funds otherwise distributable to the Senior Secured Lenders.

**Section 7.07   Liability; Indemnification**

The Liquidating Trustee shall not be liable for any act or omission taken or omitted to be taken in his or her capacity as the Liquidating Trustee, other than acts or omissions resulting from such Person's willful misconduct, gross negligence or fraud. The Liquidating Trustee may, in connection with the performance of his or her functions, and in his or her sole absolute discretion, consult with attorneys, accountants and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such professionals. Notwithstanding such authority, the Liquidating Trustee shall be under no obligation to consult with attorneys, accountants or his or her agents, and his or her determination to not do so should not result in imposition of liability on the Liquidating Trustee unless such determination is based on willful misconduct, gross negligence or fraud. The Liquidating Trust shall indemnify and hold harmless the Liquidating Trustee and his or her agents, representatives, professionals, and employees from and against and in respect to any and all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidating Trust or the implementation or administration of this Plan; *provided, however*, that no such indemnification will be made to such Persons for such actions or omissions as a result of willful misconduct, gross negligence or fraud.

**Section 7.08   Termination**

(a)   The duties, responsibilities and powers of the Liquidating Trustee shall terminate after all Liquidating Trust Assets have been fully resolved, abandoned or liquidated and the Liquidating Trust Assets have been distributed in accordance with this Plan and the Liquidating Trust Agreement; *provided, however*, except in the circumstances set forth below, the Liquidating Trust shall terminate no later than three years after the Effective Date. If warranted by the facts and circumstances provided for in this Plan, and subject to the approval of the Bankruptcy Court upon a finding that an extension is necessary for the purpose of the Liquidating Trust, the term of the Liquidating Trust may be extended, one or more times (not to exceed a total of four extensions, unless the Liquidating Trustee receives a favorable ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Liquidating Trust as a grantor trust for federal income tax purposes) for a finite period, not to exceed six months, based on the particular circumstances at issue. Each such extension must be approved by the Bankruptcy Court within two months prior to the beginning of the extended term with notice thereof to all of the unpaid beneficiaries of the Liquidating Trust. Upon the

occurrence of the termination of the Liquidating Trust, the Liquidating Trustee shall File with the Bankruptcy Court, a report thereof, seeking discharge of the Liquidating Trustee.

**Section 7.09    Liquidating Trustee Authority**

(a)    <u>Compromise of Claims</u>. The Liquidating Trust shall have full authority to compromise Claims or settle interests without supervision by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan, the Confirmation Order, and the Liquidating Trust Agreement, including but not limited to the restrictions set forth in Section 11.01 of this Plan.  As to any Claims that may arise or exist after the Effective Date relating to or arising out of the Purchase and Sale Agreement, the Liquidating Trustee shall not compromise or resolve any such Claims without the express written consent of the Pre-Petition Agent.

(b)    <u>Payment of Professional Fees.</u> Without limiting the generality of the foregoing, and except as otherwise set forth in this Plan, the Liquidating Trust may, without application to or approval by the Bankruptcy Court, pay fees that it incurs after the Effective Date for professional fees and expenses.  Before settling or compromising any Plan Carve Out Claims or interests related thereto, the Liquidating Trustee shall provide written notice to the Pre-Petition Agent of the terms and conditions of the proposed settlement or compromise.

(c)    <u>Request for Expedited Tax Review.</u>                                    The

(d)    <u>Access and Preservation of Records.</u> The Liquidating Trustee shall be granted <u>reasonable</u> access <u>during normal business hours with prior notice</u> to, among other things, the offices, books, and records relating to the Debtors or any of their businesses or operations that are in possession of the Purchaser and the Purchaser shall preserve records, all to the extent and on the terms of the Stalking Horse SPA.

**ARTICLE VIII**

**PROVISIONS GOVERNING DISTRIBUTIONS GENERALLY**

**Section 8.01    Timing and Delivery of Distributions**

The Liquidating Trust Agreement shall govern distributions from the Liquidating Trust and shall include the terms of the other sections of this Article VIII and other relevant provisions of this Plan.

**Section 8.02    Method of Cash Distributions**

Any Cash payment to be made pursuant to this Plan may be made by Cash, draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law at the option of and in the sole discretion of the Liquidating Trustee, except for Cash payments made to the Pre-Petition Agent, which shall be made by wire transfer or such other method as shall be specified by such Persons.

LARSON & ZIROW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

C&C Draft 11/12/13

### Section 8.03    Failure to Negotiate Checks

Checks issued in respect of distributions under this Plan shall be null and void if not negotiated within sixty (60) days after the date of issuance.  The Liquidating Trustee shall hold any amounts returned in respect of such non-negotiated checks.  The Holder of an Allowed Claim with respect to which such check originally was issued shall make requests for reissuance for any such check directly to the Liquidating Trustee.  All amounts represented by any voided check will be held until the later of one (1) year after (x) the Effective Date or (y) the date that a particular Claim is Allowed by Final Order, and all requests for reissuance by the Holder of the Allowed Claim in respect of a voided check are required to be made before such date.  Thereafter, all such amounts shall be deemed to be Unclaimed Property, and all Claims in respect of void checks and the underlying distributions shall be forever barred, estopped and enjoined from assertion in any manner against the Liquidating Trustee.

### Section 8.04    Fractional Dollars

Notwithstanding any other provision of this Plan, Cash distributions of fractions of dollars will not be made; rather, whenever any payment of a fraction of a dollar would be called for, the actual payment made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down.  To the extent that Cash remains undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash shall be treated as Unclaimed Property pursuant to Section 8.03 of this Plan.

### Section 8.05    Compliance with Tax Requirements

With respect to any Person from whom a tax identification number, certified tax identification number or other tax information required by law has not been received by the Liquidating Trustee within thirty (30) days from the date of such request (the "Initial Request"), the Liquidating Trustee may, at its option, withhold the amount required to such Person and decline to make such distribution until the information is received.  Failure of any Person to provide the information requested within six months of the Initial Request shall result in the forfeit of the affected distribution and the treatment of said distribution as Unclaimed Property.

### Section 8.06    *De Minimis* Distributions

No Cash payment of less than twenty-five ($25.00) dollars shall be made to the Holder of any Claim on account of its Allowed Claim.

### Section 8.07    Setoffs

Except for any Claim that is Allowed in an amount set forth in this Plan (including the Allowed Senior Secured Claims), the Debtors or the Liquidating Trustee may, but shall not be required to, set off against any Claims and the payments or distributions to be made pursuant to this Plan in respect of such Claims, any and all debts, liabilities and claims of every type and nature whatsoever that the Estate or a Debtor may have against the Holder of any Claim, but neither the failure to do so nor the Allowance of any such Claims, whether pursuant to this Plan or otherwise, shall constitute a waiver or release by any Debtor of any such claims the Debtor may have against such Holder of any Claim, and all such claims shall be reserved for and retained by the Liquidating Trustee.

**Section 8.08    Distribution Record Date**

As of the close of business on the fifth (5th) Business Day following the Effective Date (the "Distribution Record Date"), all transfer ledgers, transfer books, registers and any other records maintained by the designated transfer agents with respect to ownership of any Claims will be closed and, for purposes of this Plan, there shall be no further changes in the record holders of such Claims.   The Liquidating Trustee shall have no obligation to recognize the transfer of any Claims occurring after the Distribution Record Date, and will be entitled for all purposes to recognize and deal only with the Holder of any Claim as of the close of business on the Distribution Record Date, as reflected on such ledgers, books, registers or records.

## ARTICLE IX

## RESERVES ADMINISTERED BY THE LIQUIDATING TRUST

**Section 9.01    Establishment of Reserve Accounts, Other Assets and Beneficiaries**

The Liquidating Trustee shall establish each of the DistributionClaims Reserve Accounts (which, notwithstanding anything to the contrary contained in this Plan, may be effected by either establishing a segregated account or establishing book entry accounts, in the sole discretion of the Liquidating Trustee), and such other accounts as may be or become necessary.

**Section 9.02    Undeliverable Distribution Reserve**

(a)      Deposits. If a distribution to any holder of an Allowed Claim is returned to the Liquidating Trustee as undeliverable or is otherwise unclaimed, such distribution shall be deposited in a segregated, interest-bearing account, designated as an "Undeliverable Distribution Reserve," for the benefit of such holder until such time as such distribution becomes deliverable, is claimed or is deemed to have been forfeited in accordance with Section 8.03, Section 8.05, and Section 9.02(b) of this Plan.

(b)      Forfeiture.                                                                                 Any

(c)      Disclaimer.                                                                              The

**Section 9.03    Claims Reserve**

Contemporaneously with the Closing and on the Effective Date, the Debtors, and in the event of a shortfall in Available Cash as described in Section 6.02 of the Plan, the Purchaser, shall transfer the amount required from Available Cash to fund the Claims Reserve as described in Section 6.02 of this Plan.

**Section 9.04    Avoidance Actions Proceeds Reserve**

All the Avoidance Actions Proceeds shall also be deposited in the Avoidance Action Proceeds Reserve for the benefit of first, the Holders of Allowed Plan Carve Out Claims to the extent the Claims Reserve is insufficient to satisfy such Claims; and second, the Holders of General Unsecured Claims in Classes A6, B6, and C6.   Upon satisfaction in full of all Allowed General Unsecured Claims, all Avoidance Actions Proceeds shall be for the benefit of the Pre-Petition Secured Agent.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

# ARTICLE X

## EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND OTHER AGREEMENTS

### Section 10.01 Assumption/Rejection

On the Effective Date, and to the extent permitted by applicable law, all of the Debtors' executory contracts and unexpired leases will be rejected unless such executory contract or unexpired lease:  (a) is a Desired 365 Contract; (b) is the subject of a motion to assume Filed on or before the Confirmation Date; or (c) has been previously rejected or assumed.

### Section 10.02 Cure Amounts

The Bid Procedures and Sale Motion contemplates that Desired 365 Contracts will be assumed by the Debtors and/or assigned to the Purchaser pursuant to the Sale Order and/or the Confirmation Order.  In accordance with the Bid Procedures, as part of the Plan Supplement, the Debtors will File a list of the Desired 365 Contracts along with the proposed Cure Costs.  Any party taking exception to the proposed Cure Costs shall, in accordance with the Bid Procedures Order, File a detailed statement setting forth its reason and the Bankruptcy Court shall determine the proper amount of the Cure Costs at the Combined Hearing.  The fixing of the Cure Costs shall constitute the Debtors' right to assign the Desired 365 Contract lease to the Purchaser under Bankruptcy Code §§ 365(c) and (f).

### Section 10.03 Assumed Executory Contracts and Unexpired Leases

Each Desired 365 Contract will include (a) all amendments, modifications, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease; and (b) with respect to any executory contract or unexpired lease that relates to the use, ability to acquire, or occupancy of real property, all executory contracts or unexpired leases and other rights appurtenant to the property, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, and any other equity interests in real estate or rights *in rem* related to such premises, unless any of the foregoing agreements have been rejected pursuant to an order of the Bankruptcy Court or are the subject of a motion to reject Filed on or before the Confirmation Date.

Amendments, modifications, supplements, and restatements to executory contracts and unexpired leases that have been executed by the Debtors during their Bankruptcy Cases shall not be deemed to alter the pre-petition nature of the executory contract or unexpired lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

### Section 10.04 Insurance Policies

All insurance policies pursuant to which the Debtors have any obligations in effect as of the date of the Confirmation Hearing shall be deemed and treated as executory contracts pursuant to the Plan and shall be assumed by the Reorganized Debtors if scheduled as a Desired 365 Contract to be assumed or otherwise by the Liquidating Trust.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

## Section 10.05 Pass-through

Except as otherwise provided in this Plan, any rights or arrangements necessary or useful to the administration of the Liquidating Trust but not otherwise addressed as a Claim or Interest, and other executory contracts not assumable under Bankruptcy Code § 365(c), shall, in the absence of any other treatment under this Plan, the Purchase and Sale Agreement, the Sale Order and/or the Confirmation Order, be passed through the Bankruptcy Cases for the benefit of the Liquidating Trust and the counterparty unaltered and unaffected by the Bankruptcy Cases.

## Section 10.06 Claims Based on Rejection of Executory Contracts and Unexpired Leases

Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of the Debtors' executory contracts and unexpired leases pursuant to this Plan or otherwise must be Filed no later than thirty (30) days after the later of the Effective Date or the date a Final Order is entered granting the rejection. Any Proofs of Claim arising from the rejection of the Debtors' executory contracts or unexpired leases that are not timely Filed shall be disallowed automatically, forever barred from assertion, and shall not be enforceable against any Debtor or the Liquidating Trust without the need for any objection by any Person or further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of the executory contract or unexpired lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Bankruptcy Schedules or a Proof of Claim to the contrary. All Allowed Claims arising from the rejection of the Debtors' executory contracts and unexpired leases shall be classified as General Unsecured Claims for the particular Debtor in question and shall be treated in accordance with the particular provisions of this Plan for such Debtor; *provided however*, if the Holder of an Allowed Claim for rejection damages has an unavoidable security interest in any Collateral to secure obligations under such rejected executory contract or unexpired lease, the Allowed Claim for rejection damages shall be treated as an Other Secured Claim to the extent of the value of such Holder's interest in the Collateral, with the deficiency, if any, treated as a General Unsecured Claim.

## Section 10.07 Reservation of Rights

Nothing contained in this Plan shall constitute an admission by the Debtors that any such Desired 365 Contract is in fact an executory contract or unexpired lease or that any Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors, the Liquidating Trustee, or the Reorganized Debtors, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter and to provide appropriate treatment of such contract or lease.

## Section 10.08 Nonoccurrence of Effective Date

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request by the Debtors to extend the deadline for assuming or rejecting unexpired leases pursuant to Bankruptcy Code § 365(d)(4).

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

# ARTICLE XI

## PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS

**Section 11.01 Expunging of Certain Claims**

All Claims marked or otherwise Scheduled as contingent, unliquidated or disputed on the Bankruptcy Schedules and for which no Proof of Claim has been timely filed, shall be deemed Disallowed Claims and such Claims shall be expunged as of the Effective Date without the necessity of filing a claim objection and without further notice to, or action, order or approval of the Bankruptcy Court.

**Section 11.02 Objections to Claims**

(a)    <u>Authority</u>. The Debtors, the Reorganized Debtors, or the Liquidating Trustee (as applicable) and the Pre-Petition Agent shall have the exclusive authority to File objections to the Plan Carve Out Claims, and to withdraw any objections to such Claims that they File.    The Debtors, the Reorganized Debtors or the Liquidating Trustee (as applicable) shall have the exclusive authority to settle, compromise, or litigate to judgment any objections to Disputed Plan Carve Out Claims, (i) if they have the prior written consent of Pre-Petition Agent, (ii) if they have given detailed written notice of the proposed settlement, compromise or litigation to the Pre-Petition Agent and the Pre-Petition Agent has not objected thereto within five (5) Business Days after receipt of such notice, or (iii) upon the order of the Bankruptcy Court after the Pre-Petition Agent has had notice and an opportunity to object.  The Debtors, the Reorganized Debtors or the Liquidating Trustee, as applicable, shall have the exclusive authority to File, settle, compromise, withdraw, or litigate to judgment any objections to other Claims.  Except as set forth above, from and after the Effective Date, the Liquidating Trustee may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.  Except as set forth above, the Liquidating Trustee also shall have the right to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

(b)    <u>Objection Deadline</u>. As soon as practicable, but no later than the Claim Objection Deadline, the Liquidating Trustee or the Pre-Petition Agent may File objections with the Bankruptcy Court and serve such objections on the Creditors holding the Claims to which such objections are made.  Nothing contained herein, however, shall limit the right of the Liquidating Trustee or the Pre-Petition Agent to object to Claims, if any, Filed or amended after the Claim Objection Deadline.  The Claim Objection Deadline may be extended by the Bankruptcy Court upon motion by the applicable Debtor, Reorganized Debtor or the Liquidating Trustee, as the case may be, or the Pre-Petition Agent.

**Section 11.03 Estimation of Claims**

The Liquidating Trustee may (after the Pre-Petition Agent's prior written consent in the case of Disputed Plan Carve Out Claims) at any time request that the Bankruptcy Court estimate any such Disputed Claim pursuant to Bankruptcy Code § 502(c), regardless of whether the Liquidating Trustee or any Debtor, Reorganized Debtor or the Pre-Petition Agent has previously objected to such Claim or whether the Bankruptcy Court has ruled on any objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation

C&C Draft 11/12/13

concerning any objection to any Claim, including during the pendency of any appeal related to any such objection. In the event the Bankruptcy Court estimates any Disputed Claim, that estimated amount will constitute the maximum limitation on such Claim, as determined by the Bankruptcy Court and the Liquidating Trustee (and the Pre-Petition Agent in the case of the Disputed Plan Carve Out Claims) may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another. Disputed Plan Carve Out Claims may be estimated and thereafter resolved by any permitted mechanism (i) if it has the Pre-Petition Agent's prior written consent, (ii) if the Pre-Petition Agent has received a detailed written notice of the proposed estimation and resolution and the Pre-Petition Agent has not objected thereto within five (5) Business Days after receipt of such notice, or (iii) upon the order of the Bankruptcy Court after the Pre-Petition Agent has had notice and an opportunity to object. Other Claims may be estimated and thereafter resolved as the Liquidating Trustee may deem appropriate.

## Section 11.04 No Distributions Pending Allowance

Notwithstanding any other provision of this Plan, no payments or distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim.

## Section 11.05 Distributions After Allowance

The Liquidating Trustee shall make payments and distributions from the appropriate Distribution Reserve Account account (whether the Claims Reserve in the case of Allowed Plan Carve Out Claims, or in the case of all other Allowed Claims, from such other funds to each Holder of a Disputed Claim that has become an Allowed Claim in accordance with the provisions of this Plan governing the class of Claims to which such Holder belongs. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing all or part of any Disputed Claim becomes a Final Order, the Liquidating Trustee shall distribute to the Holder of such Claim the distribution (if any) that would have been made to such Holder on the Distribution Date had such Allowed Claim been allowed on the Distribution Date. After a Disputed Claim is Allowed or otherwise resolved, the excess Cash or other property that was reserved on account of such Disputed Claim, if any, shall become a Liquidating Trust Asset for the benefit of other Allowed Claims of the Class or Classes for which the distribution reserve was created.

## Section 11.06 Reduction of Claims

Notwithstanding the contents of the Bankruptcy Schedules or the Bankruptcy SOFAs, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtors before the Effective Date, including pursuant to orders of the Bankruptcy Court. To the extent such payments are not reflected in the Bankruptcy Schedules or the Bankruptcy SOFAs, such Bankruptcy Schedules and Bankruptcy SOFAs will be deemed amended and reduced to reflect that such payments were made. Nothing in this Plan shall preclude the Liquidating Trustee from paying Claims that the Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court before the Effective Date.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

C&C Draft 11/12/13

## ARTICLE XII

## CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THIS PLAN

**Section 12.01 Conditions Precedent to Confirmation**

The following are conditions precedent to the occurrence of Confirmation, each of which must be satisfied or waived in accordance with Section 12.04 below:

(a)    The Bankruptcy Court shall have entered an order, in form and substance reasonably acceptable to the Debtors, approving the adequacy of the Disclosure Statement, and such Order shall have become a Final Order.

(b)    The Confirmation Order approving and confirming this Plan, as such Plan may have been modified, amended or supplemented, shall (i) be in form and substance reasonably acceptable to the Debtors, the Pre-Petition Agent and the Purchaser; and (ii) include a finding of fact that the Debtors, the Purchaser, the Stalking Horse, the Reorganized Debtors, and their respective present and former members, officers, directors, managers, employees, advisors, attorneys and agents (except for the Excluded Persons), acted in good faith within the meaning of and with respect to all of the actions described in Bankruptcy Code § 1125(e) and are therefore not liable for the violation of any applicable law, rule, or regulation governing such actions.

(c)    If the Purchaser purchases the Acquired Property and/or the Las Vegas Property pursuant to a~~the~~ Sale ~~Order~~Orders, the Bankruptcy Court shall have entered the Sale ~~Order~~Orders, as applicable, in form and substance reasonably acceptable to the Debtors, the Pre-Petition Agent, and the Purchaser.

**Section 12.02 Occurrence of the Effective Date**

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with Section 12.04 below:

(a)    The Confirmation Order shall have been entered in form and substance reasonably acceptable to the Debtors, Pre-Petition Agent, and the Purchaser, and such Order shall have become a Final Order and must, among other things, provide that: (i) the Debtors and the Liquidation Trustee are authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan; and (ii) the provisions of the Confirmation Order are non-severable and mutually dependent.

(b)    If the Purchaser purchases the Acquired Property pursuant to the Sale Order and/or the Las Vegas Property pursuant to a Las Vegas Property Sale Order, the Sale ~~Order~~Orders, as applicable, shall have been entered in form and substance reasonably acceptable to the Debtors, the Pre-Petition Agent, and the Purchaser and such order(s) shall have become a Final Order(s).

(c)    The Purchaser shall have provided written evidence satisfactory to the Debtors and the Pre-Petition Agent that simultaneously with the occurrence of the Effective Date, the Purchaser is prepared to close the Transactions.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

(d)      The Closing shall have occurred pursuant to the Purchase and Sale Agreement and with respect to the Las Vegas Property, the Las Vegas Property Purchase Agreement.

(e)      The Liquidating Trust Agreement shall have been fully executed in form and substance reasonably acceptable to the Debtors and the Pre-Petition Agent.

(f)      All authorizations, consents, and regulatory approvals required, if any, in connection with the Effective Date shall have been obtained.

(g)      (f) There shall not be in effect any (i) order entered by any court of any competent jurisdiction; (ii) any order, opinion, ruling or other decision entered by any administrative or governmental entity or (iii) applicable law, staying, restraining, enjoining or otherwise prohibiting or making illegal the consummation of any of the Transactions contemplated by this Plan.

## Section 12.03 Substantial Consummation

On the Effective Date, this Plan shall be deemed to be substantially consummated under Bankruptcy Code §§ 1101 and 1127(b).

## Section 12.04 Waiver of Conditions

Each of the conditions set forth in Section 12.01 or Section 12.02 hereof may be waived in whole or in part by the Debtors with the prior written consent of the Pre-Petition Agent (and the Purchaser, if applicable), which consent shall not be unreasonably withheld.  The failure to satisfy or waive any condition to Confirmation or the Effective Date may be asserted by the Debtors, Purchaser, or the Pre-Petition Agent regardless of the circumstances giving rise to the failure of such condition to be satisfied.

## Section 12.05 Revocation, Withdrawal, or Non-Consummation

The Debtors reserve the right to revoke or withdraw this Plan at any time before the Confirmation Date and to File subsequent plans of reorganization.  If the Debtors revoke or withdraw this Plan, or if Confirmation or Consummation of this Plan does not occur, then (i) this Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in this Plan (including the fixing, allowance or limiting to an amount certain of any Claim or Interests or Class of Claims or Interests), unless otherwise agreed to by the Debtors and any counterparty to such settlement or compromise, and any document or agreement executed pursuant to this Plan, shall be deemed null and void; and (iii) nothing contained in this Plan, and no acts taken in preparation for Consummation of this Plan, shall (a) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Person, (b) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or (c) constitute an admission of any sort by the Debtors or any other Person; and (iv) the rights and remedies of the Stalking Horse pursuant to the Expense Reimbursement Order shall survive and remain in full force and effect.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

## ARTICLE XIII

## AMENDMENTS AND MODIFICATIONS

The Debtors may alter, amend, or modify this Plan, the Plan Documents, or any Exhibits thereto under Bankruptcy Code § 1127(a) at any time before the Confirmation Date; *provided, however*, that where this Plan requires a document to be acceptable to, consented to, agreed to or otherwise satisfactory to Pre-Petition Agent or the Purchaser, the Debtors may not modify such document without the written consent of Pre-Petition Agent or the Purchaser, as applicable. Further, if any amendment, modification or supplement to the Plan (including the Plan Supplement or a modification described in this Article XIII of the Plan) or any Exhibit hereto or thereto is made without the prior written consent of the Senior Secured Lenders, then notwithstanding any other agreement to the contrary, the Senior Secured Lenders shall have no obligation to support, or take any actions in support of, the Plan. After the Confirmation Date and before "substantial consummation" of this Plan, as defined in Bankruptcy Code § 1101(2), the Debtors may, under Bankruptcy Code § 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement, the Sale ~~Order~~Orders, Bid Procedures ~~and Sale~~ Order, or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of this Plan, so long as such proceedings do not (i) materially adversely affect the treatment of Holders of Claims or Interests under this Plan or (ii) modify any provision of the Purchase and Sale Agreement or any of the Purchaser's rights thereunder; *provided, however*, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

## ARTICLE XIV

## RETENTION OF JURISDICTION

Under Bankruptcy Code §§ 105(a) and 1142, and notwithstanding entry of the ~~confirmation~~Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Bankruptcy Cases and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

A.    Allow, disallow, determine, liquidate, classify, estimate or establish the priority or Secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the Secured or unsecured status, priority, amount or allowance of Claims or Interests;

B.    Hear and determine all applications for compensation and reimbursement of expenses of Professionals under Bankruptcy Code §§ 327, 328, 330, 331, 503(b), 1103 or 1129(a)(4); *provided, however*, that from and after the Effective Date, the payment of fees and expenses of professionals retained by the Reorganized Debtors and/or the Liquidating Trustee shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court except as otherwise set forth in this Plan;

C.    Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which one or more of the Debtors are parties or with

C&C Draft 11/12/13

respect to which one or more of the Debtors may be liable, including, if necessary, the nature or amount of any required cure or the liquidating of any claims arising therefrom;

D.      Hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Bankruptcy Cases;

E.      Enter and enforce such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of this Plan and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan, the Disclosure Statement, the Sale ~~Order~~Orders, and/or the Confirmation Order;

F.      Hear and determine disputes arising in connection with the interpretation, implementation, Consummation, or enforcement of this Plan, including disputes arising under agreements, documents or instruments executed in connection with this Plan;

G.      Consider any modifications of this Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

H.      Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, Consummation, or enforcement of this Plan, the Sale ~~Order~~Orders, and/or the Confirmation Order;

I.      Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

J.      Hear and determine any matters arising in connection with or relating to this Plan, the Disclosure Statement, the Sale ~~Order~~Orders, and/or the Confirmation Order, the Purchase and Sale Agreement, the Las Vegas Property Purchase Agreement, the Liquidating Trust Agreement, or any other contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement , the Sale ~~Order~~Orders, and/or the Confirmation Order;

K.      Hear and determine any disputes regarding the interpretation or implementation of the Purchase and Sale Agreement;

L.      Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Bankruptcy Cases or pursuant to this Plan;

M.      Recover all assets of the Debtors and property of the Estates, wherever located;

N.      Hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code §§ 346, 505, and 1146;

O.      Hear and determine all disputes involving the existence, nature, or scope of Debtors' discharge or any releases granted in this Plan;

P.    Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

Q.    Enter an order or final decree concluding or closing the Bankruptcy Cases; and

R.    Enforce all orders previously entered by the Bankruptcy Court.

## ARTICLE XV

## EFFECT OF THIS PLAN ON CLAIMS AND ~~INTEREST~~INTERESTS

### Section 15.01 Compromise and Settlement

Except for those Avoidance Actions and Causes of Action transferred to the Liquidating Trust, pursuant to Bankruptcy Code § 363 and Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under this Plan, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims, Interests and controversies resolved pursuant to this Plan, including, without limitation, all Claims arising before the Petition Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to or in connection with the business or affairs of, or transactions with, the Debtors.   The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in this Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the Estates, Creditors and other parties in interest, and are fair, equitable and within the range of reasonableness.

### Section 15.02 Satisfaction of Claims

The rights afforded in this Plan and the treatment of all Claims and Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever against the Debtors or any of their Estates, assets, properties, or interests in property; *provided*, *however*, that all Liens and Allowed Claims of the Pre-Petition Agent and the Senior Secured Lenders shall survive and ~~attach~~remain attached to all ~~assets of the Estates~~of their Collateral (or the proceeds thereof) not sold to the Purchaser pursuant to the Purchase and Sale Agreement (including any assets comprising their Collateral, or the proceeds thereof, that are transferred to the Liquidating ~~Trustee~~Trust) until the Allowed Senior Secured Claims are paid in full in cash.   Except as otherwise provided herein (including in the immediately preceding sentence), on the Effective Date, all Claims against and Interests in the Debtors shall be satisfied, discharged, and released in full.   ~~Except as otherwise provided herein, none~~None of the Debtors, the Reorganized Debtors, or ~~their~~the Reorganized Debtors' Affiliates, shall be responsible for any pre-Effective Date obligations of the Debtors or the Reorganized Debtors, except those expressly assumed by the Debtors or the Reorganized Debtors, as applicable.   Except as otherwise provided herein, all Persons and Entities shall be precluded and forever barred from asserting against the Debtors, the Reorganized Debtors and ~~their~~the Affiliates of the Reorganized Debtors, their respective successors or assigns, or their Estates, assets, properties, or interests in property any event, occurrence, condition, thing, or other or further Claims or Causes of Action based upon any act, omission, transaction, or other activity of

any kind or nature that occurred or came into existence before the Effective Date, whether or not the facts of or legal bases therefore were known or existed before the Effective Date.

## Section 15.03 Discharge of Liabilities

Pursuant to Bankruptcy Code § 1141(d), and except as otherwise specifically provided in this Plan, the Sale ~~Order~~Orders, and/or the Confirmation Order, the distributions, rights, and treatment that are provided in this Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of all Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors before the Effective Date and that arise from a termination of employment or a termination of any employee or retiree benefit program, regardless of whether such termination occurred before or after the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in Bankruptcy Code §§ 502(g), 502(h), or 502(i), in each case whether or not: (a) a Proof of Claim or Interest based upon such debt, right, Claim, or Interest is Filed or deemed Filed pursuant to Bankruptcy Code § 501; (b) a Claim or Interest based upon such Claim, debt, right, or Interest is Allowed pursuant to Bankruptcy Code § 502; or (c) the Holder of such a Claim or Interest has accepted this Plan. Subject to the terms of this Plan, the Sale ~~Order~~Orders and/or the Confirmation Order, any default by the Debtors ~~or their Affiliates~~ with respect to any Claim or Interest that existed immediately before or on account of the Filing of the Bankruptcy Cases shall be deemed satisfied on the Effective Date. Subject to the terms of this Plan, the Sale ~~Order~~Orders, and/or the Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring. Subject to the terms of this Plan, the Sale ~~Order~~Orders, and/or the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtors, their Estates, the Reorganized Debtors and all successors thereto. As provided in Bankruptcy Code § 524, subject to the terms of this Plan, the Sale ~~Order~~Orders, and/or the Confirmation Order, such discharge shall void any judgment against the Debtors, their Estates, the Reorganized Debtors or any successors thereto at any time obtained to the extent it relates to a Claim or Interest discharged, and operates as an injunction against the prosecution of any action against the Reorganized Debtors or their respective property and assets to the extent it relates to a discharged Claim or Interest. Notwithstanding any of the foregoing to the contrary, all Liens and Allowed Claims of the Pre-Petition Agent and the Senior Secured Lenders shall survive and ~~attach~~remain attached to all ~~assets of the Estates~~of their Collateral (or the proceeds thereof) not sold to the Purchaser pursuant to the Purchase and Sale Agreement (including any assets comprising their Collateral, or the proceeds thereof, that are transferred to the Liquidating ~~Trustee~~Trust), and shall not be deemed discharged, satisfied or released, until the Allowed Senior Secured Claims are paid in full in cash.

## Section 15.04 ~~Releases~~Release of Stalking Horse

(a)    **Releases by Debtors and Estates.** Except as otherwise expressly provided in this Plan, the Purchase and Sale Agreement, the Sale Order and/or the Confirmation Order, on

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

C&C Draft 11/12/13

the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, each of the Debtors and the Reorganized Debtors on its own behalf and as representative of its respective Estate, and each of its respective Related Persons, shall, and shall be deemed to, completely and forever release, waive, void, extinguish and discharge unconditionally, each and all of the Released Parties (except for the Debtors and the Reorganized Debtors and their respective Related Persons) of and from any and all Claims, Causes of Action (including any Avoidance Actions), any and all other obligations, suits, judgments, damages, debts, rights, remedies, causes of action and liabilities of any nature whatsoever, and any and all Interests or other rights of a Holder of an equity security or other ownership interest, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are or may be based in whole or part on any act, omission, transaction, event or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to any of the Debtors, the Reorganized Debtors or their respective assets, property and Estates, the Bankruptcy Cases or this Plan, the Purchase and Sale Agreement, the Disclosure Statement or the Transaction that may be asserted by or on behalf of any of the Debtors, the Reorganized Debtors or their respective Estates.

(b)     **Release of and by Purchaser.** On and after the Effective Date, the Purchaser (but only to the extent the Purchaser is not any of the Pre-Petition Agent or Senior Secured Lenders) shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released each of (i) the Debtors; (ii) the Debtors' current and former directors, managers, officers, employees, attorneys, and other representatives, in their capacities as such; (iii) legal, financial and restructuring advisors of the Debtors; and (iv) the Liquidating Trust, from any and all Claims, interest, obligations, rights, suits, damages, losses, costs and expenses, actions, Causes of Action, remedies, and liabilities of any kind or character whatsoever, including any derivative capital claims asserted or assertable against the Debtors, their estates, and the Liquidating Trust whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, suspected or unsuspected, matured or unmatured, fixed or contingent, in law, equity, or otherwise that the Purchaser, or any Entity claiming by or through the Purchaser now has or hereafter can, shall or may have, or otherwise would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or any other Entity, through the Closing, save and except any Claims and/or continuing obligations under, in connection with or relating to Purchase and Sale Agreement, the Sale Order, and/or the Confirmation Order.

On or after the Effective Date, the Debtors, on behalf of themselves and their respective subsidiaries and affiliates Affiliates (including the Liquidating Trust) shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released (i) the Purchaser Stalking Horse, (ii) the Purchaser's Stalking Horse's Affiliates, current and former directors, managers, officers, employees, attorneys, and other representatives, in their capacities as such; and (iii) legal and financial advisors of the Purchaser Stalking Horse, from any and all Claims, interests, obligations, rights, suits, damages, losses, costs and expenses, actions, Causes of Action, remedies, and liabilities of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, suspected or unsuspected, matured or unmatured, fixed or contingent, in law, equity, or otherwise, that the Debtors' and their subsidiaries and affiliates Affiliates (including the Liquidating Trust) or any Entity claiming by or through the Debtors or their subsidiaries and affiliates ever had, now has or hereafter can, shall or may have, or otherwise be legally entitled to assert in their own right (whether individually or

57

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

collectively) or on behalf of the Holder of any Claim or Interest or other Entity, through the Closing, save and except for Actions and/or continuing obligations under, in connection with or relating to the Expense Reimbursement Order, the Purchase and Sale Agreement, the Las Vegas Property Purchase Agreement (if applicable), the Las Vegas Property Sale Order (if applicable), the Sale Order, and/or the Confirmation Order.

(c)    **Releases by Holders of Claims and Interests.** Except as otherwise expressly provided in this Plan, the Purchase and Sale Agreement, the Sale and/or the Confirmation Order, on the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, each Person that has held, currently holds or may hold a Claim or any other obligation, suit, judgment, damages, debt, right, remedy, cause of action or liability of any nature whatsoever, or any Interest, or other right of a Holder of an equity security or other ownership interest that is terminated, and each of its respective Related Persons, shall, and shall be deemed to, completely and forever release, waive, void, extinguish and discharge unconditionally each and all of the Released Parties of and from any and all Claims, any and all other obligations, suits, judgments, damages, debts, rights, remedies, causes of action and liabilities of any nature whatsoever (including, without limitation, those arising under the Bankruptcy Code), and any and all Interests or other rights of a Holder of an equity security or other ownership interest, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are or may be based in whole or part on any act, omission, transaction, event or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to any of the Debtors, the Reorganized Debtors or their respective assets, property and Estates, the Bankruptcy Cases or this Plan, the Purchase and Sale Agreement, the Disclosure Statement or the Transaction;

(d)    **Injunction Related to Releases.** Except as provided in this Plan, the Purchase and Sale Agreement, the Sale Order and/or the Confirmation Order, as of the Effective Date, (i) all Persons that hold, have held, or may hold a Claim or any other obligation, suit, judgment, damages, debt, right, remedy, causes of action or liability of any nature whatsoever, or any Interest or other right of a Holder of an equity security or other ownership interest, relating to any of the Debtors or the Reorganized Debtors or any of their respective assets, property and Estates, that is released pursuant to this Section 15.04 of this Plan, (ii) all other parties in interest, and (iii) each of the Related Persons of each of the foregoing entities, are, and shall be, permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from taking any of the following actions, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such discharged Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, and of all Interests or other rights of a Holder of an equity security or other ownership interest: (i) commencing or conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum; (ii) enforcing, attaching (including, without limitation, any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (iii) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien; (iv) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation owed to any Person discharged under this Section 15.04; and (v) commencing or continuing in any manner, in any place of any judicial, arbitration or

C&C Draft 11/12/13

administrative proceeding in any forum, that does not comply with or is inconsistent with the provisions of this Plan, the Sale Order and/or the Confirmation Order.

(e) **No Waiver.** Notwithstanding anything to the contrary contained in this Section 15.04, the releases and injunctions set forth in this Section 15.04 shall not, and shall not be deemed to, limit, abridge or otherwise affect the rights of the Reorganized Debtors, the Liquidating Trust, or the Purchaser to enforce, sue on, settle or compromise the rights, claims and other matters expressly retained by the Reorganized Debtors, the Liquidating Trust, or the Purchaser pursuant to this Plan or the Purchase and Sale Agreement and related orders.

(f) **Supplemental Injunction.** In order to supplement the injunctive effect of the discharge injunction, and pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under Bankruptcy Code § 105(a), the Confirmation Order shall provide for the following injunctions to take effect as of the Effective Date.

(g) **Terms.** In order to preserve and promote the settlements contemplated by and provided for in this Plan, and to supplement, where necessary, the injunctive effect of the discharge as provided in Bankruptcy Code §§ 1141 and 524 and as described in this Article, except as otherwise expressly provided in this Plan, the Purchase and Sale Agreement, the Sale Order and/or the Confirmation Order, all Persons and any Person claiming by or through them, which have held or asserted, which currently hold or assert or which may hold or assert any Claims or any other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities of any nature whatsoever, and all Interests, or other rights of a Holder of an equity security or other ownership interest, against any of the Released Parties based upon, attributable to, arising out of or relating to any Claim against or Interest in any of the Debtors, whenever and wherever arising or asserted, whether in the U.S. or anywhere else in the world, whether sounding in tort, contract, warranty or any other theory of law, equity or admiralty, shall be, and shall be deemed to be, permanently stayed, restrained and enjoined from taking any action against any of the Released Parties for the purpose of directly or indirectly collecting, recovering or receiving any payment or recovery with respect to any such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, and all Interests or other rights of a Holder of an equity security or other ownership interest, arising before the Effective Date (including before the Petition Date), including, but not limited to:

(i) *commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, and all Interests, or other rights of a Holder of an equity security or other ownership interest, against any of the Released Parties or the assets or property of any Released Party;*

(ii) *enforcing, attaching, collecting or recovering, by any manner or means, any judgment, award, decree or order against any of the Released Parties or the assets or property of any Released Party with respect to any such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, and all Interests or other rights of a Holder of an equity security or other ownership interest;*

(iii) *creating, perfecting or enforcing any Lien of any kind against any of the Released Parties or the assets or property of any Released Party with respect to any*

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

*such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, and all Interests or other rights of a Holder of an equity security or other ownership interest;*

(iv)    *except as otherwise expressly provided in this Plan, the Sale Order and/or the Confirmation Order, asserting, implementing or effectuating any setoff, right of subrogation, indemnity, contribution or recoupment of any kind against any obligation due to any of the Released Parties or against the property of any Released Party with respect to any such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, and all Interests or other rights of a Holder of an equity security or other ownership interest; and*

(v)    *taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of this Plan, the Plan Supplement, the Sale Order and/ or the Confirmation Order relating to such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, and all Interests or other rights of a Holder of an equity security or other ownership interest.*

(h)    **Bankruptcy Rule 3016 Compliance.** The Debtors' compliance with the formal requirements of Bankruptcy Rule 3016(c) shall not constitute an admission that this Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

(i)    **Integral to Plan.** Each of the injunctions provided in this Section 15.04 is an integral part of this Plan and is essential to its implementation. Each of the Released Parties and any other Persons protected by the injunctions set forth in this Section 15.04 shall have the right to independently seek the enforcement of such injunctions.

## Section 15.05 Exculpation

The ~~Released~~Exculpated Parties shall not be liable for any cause of action arising in connection with or out of the administration of the Bankruptcy Cases, the planning of the Bankruptcy Cases, the formulation, negotiation or implementation of this Plan, the good faith solicitation of acceptances of this Plan in accordance with Bankruptcy Code § 1125(e), pursuit of Confirmation of this Plan, the Consummation of this Plan, or the administration of this Plan or the Acquired Property to be sold pursuant to the Purchase and Sale Agreement, or the Excluded ~~Properties~~Assets to be sold pursuant to any other sale agreement, or to be distributed under this Plan, except for gross negligence or willful misconduct as determined by a Final Order of the Bankruptcy Court. All Holders of Claims and Interests are enjoined from asserting or prosecuting any Claim or cause of action against any protected Person as to which such ~~Released~~Exculpated Party has been exculpated from liability pursuant to the preceding sentence.

## Section 15.06 Permanent Injunction

Except as otherwise expressly provided in this Plan, the Purchase and Sale Agreement, any purchase agreement for the Excluded Real Property, or the Confirmation Order, all ~~Persons~~Person and Governmental Units (each as defined in the Bankruptcy Code) who have held, hold or may hold Claims against, or Interests in, the Debtors are permanently enjoined, on and after the Effective Date, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, from (a) commencing or continuing in any

manner any action or other proceeding of any kind with respect to any such Claim or Interest; (b) the enforcement, attachment, collection, or recovery by any manner or means of judgment, award, decree or order against any ~~Released Party~~of the Exculpated Parties on account of any such Claim or Interest; (c) creating, perfecting, or enforcing any encumbrance of any kind against any ~~Released Party~~of the Exculpated Parties or against the property or interests in property of such ~~Released Party~~of the Exculpated Parties on account of any such Claim or Interest; and (d) asserting any right of setoff, recoupment or subrogation of any kind against any obligation due from any ~~Released~~Exculpated Party or against the property or interests in property of any ~~Released Party~~of the Exculpated Parties on account of any such Claim or Interest. The foregoing injunction will extend to successors of any ~~Released Party~~of the Exculpated Parties and their respective property and interests in the property.

Notwithstanding anything to the contrary contained in this Section 15.06, the injunctions set forth in this Section 15.06 shall not, and shall not be deemed to, limit, abridge or otherwise affect the rights of the Reorganized Debtors, the Stalking Horse, the Liquidating Trust, or the Purchaser to enforce, sue on, settle or compromise the rights, claims and other matters expressly retained by the Reorganized Debtors, the Stalking Horse, the Liquidating Trust or the Purchaser pursuant to this Plan or the Purchase and Sale Agreement and related orders.

## Section 15.07 Setoffs

Except as otherwise expressly provided for in this Plan, pursuant to the Bankruptcy Code (including Bankruptcy Code § 553), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim or Interest, each Debtor or each Reorganized Debtor may setoff against any Allowed Claim or Interest (other than the Allowed Senior Secured Claims) and the distributions to be made pursuant to this Plan on account of such Allowed Claim or Interest (before such distribution is made), any Claims, rights, and Causes of Action of any nature that such Debtor or Reorganized Debtor, as applicable, may hold against the Holder of such Allowed Claim or Interest, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or before the Effective Date (whether pursuant to this Plan or otherwise); *provided, however*, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to this Plan shall constitute a waiver or release by such Debtor or Reorganized Debtor of any such Claims, rights, and Causes of Action that such Debtor may possess against such Holder. In no event shall any Holder of Claims or Interests be entitled to setoff any Claim or Interest against any Claim, right, or cause of action of the Debtors or Reorganized Debtors, as applicable, unless such Holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to Bankruptcy Code § 553 or otherwise.

## Section 15.08 Recoupment

Except as provided in this Plan, any Holder of a Claim or Interest shall not be entitled to recoup any Claim or Interest against any Claim, right, or cause of action of the Debtors or Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

**Section 15.09 Release of Liens**

Except as otherwise provided in this Plan or in any contract, instrument, release, or other agreement or document created pursuant to this Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to this Plan and, in the case of a Secured Claim, satisfaction in full in cash of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtors' Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the applicable Debtor and its successors and assigns.

**Section 15.10 Good Faith**

As of the Confirmation Date, the Debtors shall be deemed to have solicited acceptance or rejections of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

**Section 15.11 Rights of Defendants and Avoidance Actions**

All rights, if any, of a defendant to assert a Claim arising from relief granted in an Avoidance Action, together with the Liquidating Trustee's right to oppose such Claim are fully preserved. Any such Claim that is Allowed shall be entitled to treatment and distribution under this Plan as a General Unsecured Claim.

## ARTICLE XVI

## MISCELLANEOUS PROVISIONS

**Section 16.01 Severability of Plan Provisions**

If, before Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**Section 16.02 Successors and Assigns**

The rights, benefits and obligations of any Person named or referred to in this Plan, including any Holder of a Claim, shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

**Section 16.03 Binding Effect**

This Plan shall be binding upon and inure to the benefit of the Debtors, all present and former Holders of Claims against and Interests in the Debtors, their respective successors and assigns, including, but not limited to, the Debtors, and all other parties-in-interest in these Bankruptcy Cases.

**Section 16.04 Notices**

Any notice, request, or demand required or permitted to be made or provided under this Plan to or upon the Debtors, the Reorganized Debtors, or the Pre-Petition Agent shall be (i) in writing; (ii) served by (a) certified mail, return receipt requested, (b) hand delivery, (c) overnight delivery service, (d) first class mail, or (e) facsimile transmission; and (iii) deemed to have been duly given or made when actually delivered or, in the case of facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Debtors:
Western Funding Incorporated
Attention:  Frederick Cooper
3915 East Patrick Lane
Las Vegas, Nevada 89120

With a copy to (which shall not constitute notice):
Larson & Zirzow, LLC
Attention:  Matthew C. Zirzow, Esq.
810 S. Casino Center Blvd, Suite 101
Las Vegas, Nevada 89101
Phone:  (702) 382-1170
Fax: (702) 382-1169

If to the Pre-Petition Agent:
Sue R. Blazis
BMO Financial Group
111 W. Monroe, Floor 12 West
Chicago, IL 60603
Phone:  (312) 461-6825
Fax:  (312) 461-7958

With a copy to (which shall not constitute notice):
Chapman & Cutler, LLP
Attention:  David T.B. Audley, Esq.
111 West Monroe Street
Chicago, IL 60603
Phone:  (312) 845-2971
Fax:  (312) 516-3971

and

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

Lionel Sawyer & Collins
Attn:  Rodney M. Jean and Ryan A. Anderson
300 South Fourth Street, Suite 1700
Las Vegas, NV 89101
Phone:  (702) 383-8888
Fax: (702) 383-8845


If to Reorganized Debtors:
c/o Carfinco WFI, Inc.
#300, 4245-97 Street
Edmonton, Alberta
T6E 547
Canada
Attention:  Troy Graf
Phone:  (780) 702-3393
Fax:  (780) 450-1134

With a copy to (which shall not constitute notice):
Torys LLP
1114 Avenue of the Americas, 23rd Floor
New York, NY 10036-7703
Attention:  Alison D. Bauer, Esq.
Phone:  (212) 880-6048
Fax:  (212) 682-0200


If to Liquidating Trust:
[To be provided in Plan Supplement]

**Section 16.05 Term of Injunctions or Stay**

Unless otherwise provided in this Plan, the Sale ~~Order~~Orders, and/or Confirmation Order, all injunctions or stays provided for in the Bankruptcy Cases under Bankruptcy Code §§ 105 or 362 or otherwise, and in existence on the Confirmation Date (excluding any injunctions or stays contained in this Plan or Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in this Plan, the Sale ~~Order~~Orders, and/or Confirmation Order shall remain in full force and effect in accordance with their terms.

**Section 16.06 Dissolution of Committee**

On the Effective Date, the Committee, if any, shall dissolve and the members of the Committee shall be released and discharged from all authority, duties, responsibilities and obligations related to and arising from and in connection with the Bankruptcy Cases.

**Section 16.07 No Admissions**

Notwithstanding anything herein to the contrary, nothing in this Plan shall be deemed as an admission by the Debtors with respect to any matter set forth herein, including liability on any Claim.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

**Section 16.08 Notice of the Effective Date**

The Debtors shall file on the docket of the Bankruptcy Court a *Notice of Effective Date* stating that (i) all conditions to the occurrence of the Effective Date have been satisfied or waived with the consent of the Pre-Petition Agent and the Committee, if any; (ii) the Effective Date has occurred and specifying the date thereof for all purposes under this Plan; and (iii) setting forth the name, address and telephone number for the Liquidating Trustee.

**Section 16.09 Default Under Plan**

(a)    Plan Default Notice. Except or otherwise provided for in this Plan, after the Effective Date, in the event of an alleged default by the Liquidating Trustee under the Plan, any party alleging such default shall provide written notice of default (the "Plan Default Notice") to the Liquidating Trustee at the address set forth in the Notice of Effective Date filed pursuant to Section 12.02 of this Plan with a copy thereof to the Debtors' counsel and the Pre-Petition Agent's counsel at the addresses set forth in this Plan and shall contemporaneously file such Plan default notice with the Bankruptcy Court and serve it on the Committee, if any.

(b)    Cure. The Liquidating Trustee shall have thirty (30) days from the receipt of a Plan Default Notice to cure any actual default that may have occurred.

**Section 16.12 16.10 Entire Agreement**

This Plan and the Plan Documents set forth the entire agreement and understanding among the parties-in-interests relating to the subject matter hereof and supersede all prior discussions and documents.

*[Rest of page intentionally left blank]*

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

## ARTICLE XVII

## CONFIRMATION REQUEST

The Debtors request Confirmation of this Plan under Bankruptcy Code § 1129. If any Impaired Class does not accept this Plan pursuant to Bankruptcy Code § 1126, the Debtors request Confirmation pursuant to Bankruptcy Code § 1129(b). In that event, the Debtors reserve the right to modify this Plan to the extent (if any) that Confirmation of this Plan under Bankruptcy Code § 1129(b) requires modification.

Dated: November ___, 2013.        WESTERN FUNDING INCORPORATED,
                                   a California corporation,


                                   By: _____


Dated: November ___, 2013.        WESTERN FUNDING INC. OF NEVADA,
                                   a Nevada corporation,


                                   By: _____


Dated: November ___, 2013.        GLOBAL TRACK GPS, LLC,
                                   a Delaware limited liability company,


                                   By: _____


Prepared and Submitted:

LARSON & ZIRZOW, LLC


By: _____
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzlawnv.com
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Attorneys for Debtors

Document comparison by Workshare Compare on Monday, November 25, 2013 9:22:38 AM

| Input: | |
|---|---|
| Document 1 ID | file://C:\Users\matt\Desktop\WFI Plan clean 11 13 at 137.doc |
| Description | WFI Plan clean 11 13 at 137 |
| Document 2 ID | file://C:\Users\matt\Desktop\Final Filed Proposed Plan v.4.doc |
| Description | Final Filed Proposed Plan v.4 |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 512 |
| Deletions | 436 |
| Moved from | 9 |
| Moved to | 9 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 966 |