# EXHIBIT "A"

LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzlawnv.com
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Telephone: (702) 382-1170
Fascimile: (702) 382-1169

Attorneys for Debtors

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>WESTERN FUNDING INCORPORATED,<br><br>        Debtor. | Case No.: BK-S-13-17588-LED<br>Chapter 11<br>(Jointly Administered) |
| In re:<br><br>WESTERN FUNDING INC. OF NEVADA,<br><br>        Debtor. | Case No.: BK-S-13-17586-LED<br>Chapter 11 |
| In re:<br><br>GLOBAL TRACK GPS, LLC,<br><br>        Debtor. | Case No.: BK-S-13-17589-LED<br>Chapter 11 |

## JOINT PLAN OF REORGANIZATION

DATED:  November 26, 2013

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION** .................................................................................................... **6**

**ARTICLE I  DEFINED TERMS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME** .................................................................................... **6**
Section 1.01      Scope of Defined Terms; Rules of Construction .............................. 6
Section 1.02      Defined Terms ................................................................................... 6
Section 1.03      Rules of Interpretation ...................................................................... 21
Section 1.04      Computation of Time ......................................................................... 21
Section 1.05      Reference to Monetary Figures ........................................................ 21
Section 1.06      Exhibits and Plan Supplement .......................................................... 21
Section 1.07      Deemed Acts ..................................................................................... 22

**ARTICLE II  UNCLASSIFIED CLAIMS** ........................................................... **22**
Section 2.01      Treatment of Administrative Claims ................................................. 22
Section 2.02      Bar Dates for Certain Claims ........................................................... 22
Section 2.03      Payment of Statutory Fees ............................................................... 23
Section 2.04      Treatment of Priority Tax Claims ...................................................... 23

**ARTICLE III  CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS** ............................................................................................... **24**
Section 3.01      Introduction ....................................................................................... 24
Section 3.02      Voting; Presumptions ....................................................................... 24
Section 3.03      Identification of Claims and Interests ............................................... 25
CHART 3.03(A) - WFI ....................................................................................... 25
CHART 3.03(B) - WFIN ..................................................................................... 25
CHART 3.03(C) - GPS ...................................................................................... 26

**ARTICLE IV  TREATMENT OF CLAIMS AND INTERESTS** ......................... **26**
Section 4.01      Priority Non-Tax Claims ................................................................... 26
Section 4.02      Senior Secured Claims ..................................................................... 27
Section 4.03      Miscellaneous Secured Claims ........................................................ 28
Section 4.04      B Member Secured Claims ............................................................... 29
Section 4.05      General Unsecured Claims ............................................................... 29
Section 4.06      Intercompany Claims ........................................................................ 29
Section 4.07      Interests ............................................................................................ 29
Section 4.08      One Satisfaction of Senior Secured Claims ..................................... 30

**ARTICLE V  ACCEPTANCE OR REJECTION OF THIS PLAN** ..................... **30**
Section 5.01      Designation of Unimpaired Classes .................................................. 30
Section 5.02      Designation of Impaired Classes ...................................................... 30
Section 5.03      Classes Entitled to Vote ................................................................... 30
Section 5.04      Classes Not Entitled to Vote ............................................................ 30
Section 5.05      Date of Distributions on Account of Allowed Claims ....................... 31
Section 5.06      Sources of Cash for the Plan Distributions ...................................... 31
Section 5.07      Cram Down – Nonconsensual Confirmation .................................... 31

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

2

**LARSON & ZIRZOW, LLC**
**810 S. Casino Center Blvd. #101**
**Las Vegas, Nevada 89101**
**Tel: (702) 382-1170   Fax: (702) 382-1169**

**ARTICLE VI  MEANS FOR IMPLEMENTATION OF THIS PLAN AND POST EFFECTIVE DATE GOVERNANCE**................................................................................................ **31**
Section 6.01       Sale of the Acquired Property ................................................ 31
Section 6.02       Application of PSA Sale Proceeds .......................................... 32
Section 6.03       Sale of the Excluded Retail Contracts ..................................... 32
Section 6.04       Sale of the Excluded Real Properties ...................................... 32
Section 6.05       Other Assets ...................................................................... 33
Section 6.06       Avoidance Actions ............................................................... 33
Section 6.07       Purchase and Sale Agreement and Related Documents ............. 33
Section 6.08       [Reserved] ......................................................................... 34
Section 6.09       Creation of Liquidating Trust ................................................ 34
Section 6.10       Governance Documents ........................................................ 34
Section 6.11       Directors and Officers .......................................................... 34
Section 6.12       Cancellation of Existing Secured Claims ................................. 34
Section 6.13       Vesting of the Vested Assets ................................................ 35
Section 6.14       Cancellation of Interests ...................................................... 35
Section 6.15       Issuance of New Interests ..................................................... 35
Section 6.16       Exemption from Registration ................................................. 36
Section 6.17       Authorization for Transaction ............................................... 36
Section 6.18       Preservation of Rights of Action; Settlement .......................... 37
Section 6.19       [Reserved] ......................................................................... 37
Section 6.20       Exclusivity Period ............................................................... 37
Section 6.21       Effectuating Documents ....................................................... 38
Section 6.22       Exemption from Certain Transfer Taxes .................................. 38
Section 6.23       Liquidating Trustee Closing of the Bankruptcy Cases ............... 38

**ARTICLE VII  LIQUIDATING TRUST AND LIQUIDATING TRUSTEE** ....................... **39**
Section 7.01       The Creation of the Liquidating Trust ..................................... 39
Section 7.02       Funding of *Res* of Trust ..................................................... 39
Section 7.03       The Liquidating Trustee ....................................................... 39
Section 7.04       Retention of Professionals .................................................... 40
Section 7.05       Compensation of the Liquidating Trustee ................................ 40
Section 7.06       Liquidating Trust Expenses ................................................... 40
Section 7.07       Liability; Indemnification ..................................................... 41
Section 7.08       Termination ........................................................................ 41
Section 7.09       Liquidating Trustee Authority ............................................... 41

**ARTICLE VIII  PROVISIONS GOVERNING DISTRIBUTIONS GENERALLY** ............. **42**
Section 8.01       Timing and Delivery of Distributions ...................................... 42
Section 8.02       Method of Cash Distributions ................................................ 42
Section 8.03       Failure to Negotiate Checks .................................................. 42
Section 8.04       Fractional Dollars ................................................................ 43
Section 8.05       Compliance with Tax Requirements ........................................ 43
Section 8.06       *De Minimis* Distributions .................................................... 43
Section 8.07       Setoffs ............................................................................... 43
Section 8.08       Distribution Record Date ...................................................... 43

**ARTICLE IX  RESERVES ADMINISTERED BY THE LIQUIDATING TRUST ........... 44**
Section 9.01        Establishment of Reserve Accounts, Other Assets and Beneficiaries............ 44
Section 9.02        Undeliverable Distribution Reserve ................................................................ 44
Section 9.03        Claims Reserve .............................................................................................. 44

**ARTICLE X  EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND OTHER
AGREEMENTS ........................................................................................................ 45**
Section 10.01       Assumption/Rejection.................................................................................... 46
Section 10.02       Cure Amounts................................................................................................ 45
Section 10.03       Assumed Executory Contracts and Unexpired Leases .................................. 45
Section 10.04       Insurance Policies ......................................................................................... 45
Section 10.05       Pass-through.................................................................................................. 46
Section 10.06       Claims Based on Rejection of Executory Contracts and Unexpired Leases .. 46
Section 10.07       Reservation of Rights.................................................................................... 46
Section 10.08       Nonoccurrence of Effective Date.................................................................. 46

**ARTICLE XI  PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND
UNLIQUIDATED CLAIMS ...................................................................................... 47**
Section 11.01       Expunging of Certain Claim ......................................................................... 48
Section 11.02       Objections to Claims..................................................................................... 47
Section 11.03       Estimation of Claims..................................................................................... 47
Section 11.04       No Distributions Pending Allowance ............................................................ 48
Section 11.05       Distributions After Allowance ...................................................................... 48
Section 11.06       Reduction of Claims ...................................................................................... 48

**ARTICLE XII  CONDITIONS PRECEDENT TO CONFIRMATION AND
CONSUMMATION OF THIS PLAN .......................................................................... 49**
Section 12.01       Conditions Precedent to Confirmation .......................................................... 49
Section 12.02       Occurrence of the Effective Date.................................................................. 49
Section 12.03       Substantial Consummation ............................................................................ 50
Section 12.04       Waiver of Conditions .................................................................................... 50
Section 12.05       Revocation, Withdrawal, or Non-Consummation .......................................... 50

**ARTICLE XIII  AMENDMENTS AND MODIFICATIONS ...................................... 51**

**ARTICLE XIV RETENTION OF JURISDICTION .................................................. 51**

**ARTICLE XV  EFFECT OF THIS PLAN ON CLAIMS AND INTERESTS..................... 53**
Section 15.01       Compromise and Settlement .......................................................................... 53
Section 15.02       Satisfaction of Claims.................................................................................... 53
Section 15.03       Discharge of Liabilities.................................................................................. 53
Section 15.04       Release of Stalking Horse ............................................................................. 54
Section 15.05       Exculpation .................................................................................................... 55
Section 15.06       Permanent Injunction .................................................................................... 55
Section 15.07       Setoffs ........................................................................................................... 56
Section 15.08       Recoupment ................................................................................................... 56
Section 15.09       Release of Liens............................................................................................. 56
Section 15.10       Good Faith ..................................................................................................... 56

**LARSON & ZIRZOW, LLC**
**810 S. Casino Center Blvd. #101**
**Las Vegas, Nevada 89101**
**Tel: (702) 382-1170   Fax: (702) 382-1169**

4

Section 15.11        Rights of Defendants and Avoidance Actions ................................................. 57

**ARTICLE XVI   MISCELLANEOUS PROVISIONS** ........................................................ **57**
Section 16.01        Severability of Plan Provisions ............................................................ 57
Section 16.02        Successors and Assigns ........................................................................ 57
Section 16.03        Binding Effect ...................................................................................... 57
Section 16.04        Notices .................................................................................................. 57
Section 16.05        Term of Injunctions or Stay ................................................................ 59
Section 16.06        Dissolution of Committee .................................................................... 59
Section 16.07        No Admissions ...................................................................................... 59
Section 16.08        Notice of the Effective Date ................................................................ 59
Section 16.09        Default Under Plan .............................................................................. 60
Section 16.10        Entire Agreement ................................................................................ 60

**ARTICLE XVII   CONFIRMATION REQUEST** ............................................................... **61**

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

Western Funding Incorporated, a California corporation, Western Funding Inc. of Nevada, a Nevada corporation, and Global Track GPS, LLC, a Delaware limited liability company, as debtors and debtors-in-possession (collectively, the "Debtors"), filed for bankruptcy protection on September 4, 2013. The Debtors hereby propose the following *Joint Plan of Reorganization* for the resolution of outstanding creditor claims against, and equity interests in, the Debtors. The Debtors are the proponents of this Plan within the meaning of Bankruptcy Code § 1129 (as hereinafter defined).

Although styled as a "joint plan," this Plan consists of three (3) separate plans (one for each of the Debtors). Consequently, except as provided in this Plan, for purposes of voting on this Plan and making and receiving distributions under this Plan, votes will be tabulated separately for each Debtor with respect to each Debtor's plan of reorganization and distributions will be made separately to each separate Class as provided in this Plan. Reference is made to the Disclosure Statement (as hereinafter defined) for a discussion of the Debtors' history, businesses, properties, results of operations and projections of future operations, as well as a summary and description of this Plan and certain related matters. No materials other than the Disclosure Statement, this Plan and any exhibits and schedules attached hereto or thereto or referenced herein or therein have been authorized by the Debtors for use in soliciting acceptances or rejections of this Plan.

**ALL HOLDERS OF CLAIMS OR INTERESTS ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT CAREFULLY AND IN THEIR ENTIRETY BEFORE VOTING ON THIS PLAN.**

**ARTICLE I**
**DEFINED TERMS, RULES OF INTERPRETATION, AND**
**COMPUTATION OF TIME**

**Section 1.01   Scope of Defined Terms; Rules of Construction**

For purposes of this Plan, except as expressly defined elsewhere in this Plan or unless the context otherwise requires, all capitalized terms used herein shall have the meanings ascribed to them in Article I of this Plan. Any term used but not defined herein that is defined in the Bankruptcy Code or the Bankruptcy Rules, as the case may be, shall have the meaning ascribed in the Bankruptcy Code or the Bankruptcy Rules. Whenever the context requires, such terms shall include the plural as well as the singular. The masculine gender shall include the feminine, and the feminine gender shall include the masculine. If any inconsistency exists between the Plan and the Confirmation Order, the terms of the Confirmation Order shall control. If any inconsistency exists between the Plan, on the one hand, and the Disclosure Statement or any other document, the terms of the Plan shall control.

**Section 1.02   Defined Terms**

(1)    **Acquired Property** means the New Interests, Vested Assets and/or the Debtor Assets, as the case may be, that are purchased by the Successful Bidder pursuant to the Purchase and Sale Agreement.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

(2)  **Administrative Claim(s)** means a Claim(s) for costs and expenses of administration pursuant to Bankruptcy Code §§ 503(b), 507(a)(2), 507(b), or 1114(e)(2), including:  (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries, or commissions for services, and payments for goods and other services and leased premises); (b) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of Title 28 of the United States Code; (c) all Allowed Professional Fee Claims; (d) any Cure Costs; and (e) all Claims for compensation or expense reimbursement for making a substantial contribution in the Bankruptcy Cases pursuant to Bankruptcy Code §§ 503(b)(3), (4), and (5) Allowed by the Bankruptcy Court.

(3)  **Administrative Claims Bar Date** shall have the meaning set forth in Section 2.02 of this Plan unless the Bankruptcy Court orders otherwise.

(4)  **Affiliate** means, with respect to any Person, any other Person directly or indirectly controlling, controlled by, or under common control with such other Person. For such purposes, the term "control" means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by Contract or otherwise, and the term "controlling" or "controlled" or other similar words have the corresponding meanings.

(5)  **Allowed** means with reference to any Claim or Interest: any Claim or Interest or any portion thereof (a) as to which no objection to allowance has been interposed on or before the latter of (i) the Claim Objection Deadline or (ii) the expiration of such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or is listed on the Bankruptcy Schedules as liquidated, non-contingent and undisputed; (b) as to which any objection to its allowance has been settled, waived through payment or withdrawn, as permitted herein, or denied by a Final Order; (c) as to which liability of the Debtors and the amount thereof has been determined and expressly allowed by a Final Order; (d) as to which the liability of the Debtors and the amount thereof are determined and expressly allowed by Final Order of a court of competent jurisdiction other than the Bankruptcy Court; or (e) that is expressly deemed allowed in a liquidated amount in this Plan; _provided, however,_ that with respect to an Administrative Claim, "Allowed Administrative Claim" means an Administrative Claim as to which a timely request for payment has been made in accordance with Section 2.02 of this Plan (if such written request is required) or other Administrative Claim, in each case as to which the Debtors, the Pre-Petition Agent, or the Liquidating Trustee (1) have not interposed a timely objection or (2) have interposed a timely objection and such objection has been settled, waived through payment or withdrawn, as permitted herein, or denied by a Final Order.

(6)  **Allowed Plan Carve Out Claims** means the Allowed Administrative Claims (including Cure Costs), Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and Allowed Miscellaneous Secured Claims.

(7)  **Alternative Bidder** means any party that has made a bona fide written proposal prior to the Bid Deadline relating to an Alternative Transaction.

(8)  **Alternative Transaction** means, other than the Transactions and the Plan, any (i)

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

7

sale, transfer or other disposition, directly or indirectly, of any material assets of any Debtor (except any such sale, transfer or other disposition effected in the Ordinary Course of Business), (ii) issuance, sale, transfer or other disposition, in each case by any Debtor, of any class of equity securities, ownership interests or voting securities of any Debtor, (iii) merger, share exchange, consolidation, recapitalization, reorganization, business combination or other similar transaction involving any Debtor, (v) any transaction involving an acquisition of any assets or securities of any Debtor, a capital contribution to any Debtor or a restructuring of any indebtedness of any Debtor proposed by or on behalf of any equityholder or debtholder of any Debtor, (vi) any transaction that is conditioned or predicated on the transactions contemplated by the Purchase and Sale Agreement not being completed in accordance with the terms of that agreement or is intended or could reasonably be expected to result in such not being so completed or (vii) any Chapter 11 plan of reorganization or other restructuring or reorganization for, or liquidation of, any Debtor (other than this Plan).

(9) **Auction** means the Bankruptcy Court ordered event by which competing bids are obtained for the Acquired Property as contemplated by the Bid Procedures Order.

(10) **Available Cash** means all Cash and Cash Equivalents of the Debtors other than any proceeds from the sale or other disposition of Excluded Real Properties and Avoidance Actions, determined in accordance with generally accepted accounting principles in the United States, as of 11:59 PM on the date immediately before the Closing.

(11) **Avoidance Actions** means any and all actual or potential claims or Causes of Action to avoid a transfer of property or an obligation incurred by the Debtors pursuant to any applicable section of the Bankruptcy Code, including §§ 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a).

(12) **B Member Secured Claims** means any Allowed Secured Claims held by the B members of Harbor Structured Finance, LLC, a Delaware limited liability company, secured by a Lien on any property of Debtors.

(13) **Ballot** means the document for accepting or rejecting the Plan, in the form approved by the Bankruptcy Court.

(14) **Bankruptcy Case(s)** means (a) when used in reference to a particular Debtor or group of Debtors, the Chapter 11 case or cases pending for that Debtor or particular group of Debtors in the Bankruptcy Court, and (b) when used in reference to all of the Debtors, the above-captioned jointly-administered Chapter 11 cases pending for the Debtors in the Bankruptcy Court.

(15) **Bankruptcy Code** means Title 11 of the U.S. Code, as amended.

(16) **Bankruptcy Court** means the United States Bankruptcy Court for the District of Nevada, Las Vegas Division or any other court having jurisdiction over the Bankruptcy Cases from time to time.

(17) **Bankruptcy Rules** the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, in each case as amended, or any successor rules.

(18)  **Bankruptcy Schedules** means the schedules of assets and liabilities, lists of executory contracts and unexpired leases, and related information Filed by the Debtors pursuant to Bankruptcy Code § 521 and Bankruptcy Rule 1007(b), as such schedules may be amended or supplemented from time to time as permitted hereunder in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

(19)  **Bankruptcy SOFAs** means the statements of financial affairs and related financial information Filed by the Debtors pursuant to Bankruptcy Code § 521 and Bankruptcy Rule 1007(b), as such statements may be amended or supplemented from time to time as permitted hereunder in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

(20)  **Bar Date** means:  (i) January 8, 2014 for all creditors other than Governmental Units, and April 8, 2014 for all creditors that are Governmental Units, or (ii) such other applicable date designated by the Bankruptcy Court as the last date for Filing proofs of Claims in the Bankruptcy Cases.

(21)  **Bid Deadline** has the meaning set forth in the Bid Procedures Order.

(22)  **Bid Procedures** means those certain Bid Procedures approved pursuant to the Bid Procedures Order.

(23)  **Bid Procedures and Sale Motion** means the motion seeking entry of the Bid Procedures Order seeking approval of the Stalking Horse SPA and procedures for consummating an Alternative Transaction, which was Filed on November 15, 2013.

(24)  **Bid Procedures Order** means the order of the Bankruptcy Court approving the Stalking Horse SPA and procedures for consummating an Alternative Transaction, which was entered by the Bankruptcy Court on November 26, 2013.

(25)  **Business Day** means any day, excluding Saturdays, Sundays or "legal holidays" (as referenced in Bankruptcy Rule 9006(a)), on which commercial banks located in Las Vegas, Nevada are authorized or required by applicable law to be closed for business.

(26)  **Cash** means legal currency of the United States of America or equivalents thereof, including bank deposits and checks.

(27)  **Cash Collateral Budget(s)** means the budget(s) approved as part of any Cash Collateral Order entered in the Bankruptcy Cases, and any amendments or supplements thereto.

(28)  **Cash Collateral Stipulation** means, collectively, the *Stipulation Authorizing Debtors to Use Cash Collateral, Granting Adequate Protection and Granting Relief From the Automatic Stay Pursuant to Sections 361, 362 and 363 of the Bankruptcy Code* [ECF No. 204-1], attached as Exhibit "1" to the *Motion for Order Approving Stipulation Authorizing Debtors to Use Cash Collateral, Granting Adequate Protection and Granting Relief From the Automatic Stay Pursuant to 11 U.S.C. §§ 361, 362 and 363* [ECF No. 204], Filed on behalf of the Debtors with the Bankruptcy Court on October 16, 2013, as amended by the *First Stipulated Amendment* [ECF No. 270] Filed on behalf of the Debtors with the Bankruptcy Court on November 1, 2013, and as further amended as of the date hereof and as such may be amended after the date hereof

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

with the prior written consent of Debtors, the Pre-Petition Agent, and the Stalking Horse.

(29)    **Cash Collateral Order** means all order(s) of the Bankruptcy Court authorizing the Debtors' use of cash collateral during the pendency of the Bankruptcy Cases, including any orders approving the Cash Collateral Stipulation.

(30)    **Cash Equivalents** means any item or asset of Debtors readily converted to Cash, such as bank accounts, marketable securities, treasury bills, certificate of deposit, commercial paper maturing less than one year from date of issue, or other liquid investments.

(31)    **Causes of Action** means all actions, causes of action, liabilities, obligations, rights, suits, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims, or any other claims whatsoever, whether known or unknown, matured or unmatured, fixed or contingent, liquidated or unliquidated, disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring before the Petition Date or during the course of the Bankruptcy Cases, including through the Effective Date.

(32)    **Claim** means a claim against any Debtors as defined in Bankruptcy Code § 101(5), whether or not asserted or Allowed, and including, without limitation, any debt within the meaning of section 1141(d)(6)(A) of the Bankruptcy Code.

(33)    **Claim Objection Deadline** means the first Business Day, which is at least 120 days after the Effective Date, or such later date as may be established by the Bankruptcy Court in accordance with Section 11.02(b) of the Plan.

(34)    **Claims Reserve** means the sum of (a) all budgeted expenses (including, for the avoidance doubt, the Professional Fees provided per the Carveout in the Cash Collateral Stipulation) set forth in the Cash Collateral Budget, which are incurred and unpaid as of the Closing, but only to the extent any such expense is not greater than the budgeted line item for such expense (consistent with the terms, conditions and variances under the Cash Collateral Stipulation) and, further, only to the extent such expenses exceed the amount of any retainer or deposit held by the party to whom the expense is owed; and (b) $100,000.00. For the avoidance of doubt, the funds in the Claims Reserve are expressly earmarked for and may only be used to pay the Plan Carve Out Claims and not for any other purpose. To the extent any Plan Carve Out Claims have previously been paid (including but not limited to by way of interim fee awards to Professionals), then the Claims Reserve shall be reduced by the amount of such Claims paid previously. To the extent any funds in the Claims Reserve are not used to pay Allowed Plan Carve Out Claims, then they shall be returned to the Pre-Petition Agent for the benefit of the Senior Secured Lenders unless the Allowed Senior Secured Claims are paid in full.

(35)    **Class** means a category of Claims or Interests as set forth in Article III below pursuant to Bankruptcy Code § 1122.

(36)    **Closing** means the closing of the sale of the Acquired Property (and, as applicable, the sale of the Las Vegas Property) to the Purchaser(s) in accordance with the Sale Order(s), and/or the Confirmation Order.

(37)  **Collateral** means any property or interest in property of the Debtors' Estates subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law.

(38)  **Committee** means the Official Committee of Unsecured Creditors appointed pursuant to Bankruptcy Code § 1102(a) in the Bankruptcy Cases.

(39)  **Confirmation** means entry by the Bankruptcy Court of the Confirmation Order on the docket of the Bankruptcy Cases.

(40)  **Confirmation Date** means the date on which the Confirmation Order is entered on the docket in the Bankruptcy Cases within the meaning of Bankruptcy Rules 5003 and 9021.

(41)  **Confirmation Hearing** means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to Bankruptcy Code § 1129, as such hearing may be continued from time to time.

(42)  **Confirmation Order** means an order of the Bankruptcy Court confirming this Plan pursuant to Bankruptcy Code § 1129.

(43)  **Consummation** means the occurrence of the Effective Date, which shall take place simultaneously with the completion of the Closing.

(44)  **Combined Hearing** shall mean the Confirmation Hearing and the Sale Hearing, as such hearings may be continued from time to time.

(45)  **Creditor** means any Person who holds a Claim against any Debtor.

(46)  **Cure Costs** means all costs required of a Debtor to cure any and all monetary defaults including pecuniary losses, pursuant to Bankruptcy Code § 365, of such Debtor arising under any Desired 365 Contract.

(47)  **Debtor(s)** means individually or collectively the following debtors and debtors-in-possession:  WFI, WFIN, and Global Track.

(48)  **Debtor Assets** means all right, title and interest of each Debtor in, to or under all of the assets, properties and rights of each Debtor, as the same shall exist as of the Closing, of every kind, type or designation, whether tangible or intangible, known or unknown, real, personal or mixed, wherever located (including all Claims and Causes of Action against any other Person to the extent not retained or released and discharged pursuant to the Plan), other than the Excluded Assets.

(49)  **Desired 365 Contract** means any and all executory contracts and unexpired leases (a) to be assumed by one or more of the Debtors and vested in the respective Reorganized Debtors; or (b) designated by the Purchaser as a Desired 365 Contract and assumed by one or more of the Debtors and assigned to the Purchaser, each on the Effective Date pursuant to the Purchase and Sale Agreement, and as set forth in Article X.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

(50)  **Disallowed** means all or such part of a Claim that is disallowed by a Final Order of the Bankruptcy Court or other court of competent jurisdiction.

(51)  **Disclosure Statement** means the *Joint Disclosure Statement to Accompany Debtors' Joint Plan of Reorganization* dated as of November 26, 2013, as the same may be amended, modified or supplemented from time to time, including all exhibits and schedules thereto, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

(52)  **Disclosure Statement Order** means an order of the Bankruptcy Court approving the Disclosure Statement, which order must be acceptable in form and substance to Debtors and the Stalking Horse.

(53)  **Disputed** means, in reference to a Claim or Interest, any Claim or Interest not otherwise Allowed or Disallowed pursuant to this Plan or an order of the Bankruptcy Court (a) which has been Scheduled, or hereafter is listed on the Bankruptcy Schedules as unliquidated, contingent, or disputed, and which has not been resolved by written agreement of the parties (or, in the case of the Plan Carve Out Claims, which has not been resolved by written agreement of the parties and the Pre-Petition Agent or an order of the Bankruptcy Court with respect to which the Pre-Petition Agent have had notice and an opportunity to object); (b) proof of which was required to be Filed but as to which a Proof of Claim or Interest was not timely or properly Filed; (c) proof of which was timely and properly Filed and which has been or hereafter is listed on the Bankruptcy Schedules as unliquidated, disputed, or contingent; (d) that is disputed in accordance with the provisions of this Plan; or (e) as to which the Debtors or Reorganized Debtors, as applicable, or the Pre-Petition Agent or the Liquidating Trustee have interposed a timely objection in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any orders of the Bankruptcy Court, or is otherwise disputed by the Debtors or Reorganized Debtors, as applicable, or the Pre-Petition Agent or the Liquidating Trustee in accordance with applicable law, which objection or dispute has not been withdrawn or determined by a Final Order; *provided, however*, that for purposes of determining whether a particular Claim is a Disputed Claim before the expiration of any period of limitation fixed for the interposition by the Debtors or the Pre-Petition Senior Secured Agent or the Liquidating Trustee of objections to the allowance of Claims, any Claim that is not an Allowed Claim shall be deemed Disputed.

(54)  **Dissolved WFIN** means WFIN from and after the Effective Date.

(55)  **Distribution Date** means the date(s), occurring as soon as practicable after the Effective Date, upon which distributions are made pursuant to the terms of this Plan to Holders of Allowed Administrative Claims, and other Allowed Claims (other than the Senior Secured Claims); *provided, however*, that should such Allowed Claims be paid in the ordinary course of business, the Distribution Date shall be the date such Allowed Claim becomes payable under the terms of any contract or agreement or applicable non-bankruptcy law.

(56)  **Distribution Record Date** means the record date which is set forth in Section 8.08 of this Plan.

(57)  **Effective Date** means the first Business Day on which all conditions precedent set forth in Section 12.02 of this Plan have been satisfied or waived as permitted hereunder.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

(58)    **Entity** has the meaning set forth in Bankruptcy Code § 101(15).

(59)    **Estate(s)** means individually or collectively the estate created for such Debtor in its Chapter 11 Case pursuant to Bankruptcy Code § 541.

(60)    **Excluded Assets** means the assets and Claims set forth on Schedule I to the Purchase and Sale Agreement, including but not limited to the Excluded Real Properties and the Excluded Retail Contracts.

(61)    **Excluded Persons** means each of Harbor Structured Finance, LLC, Mark Finston, James B. Hadden, Phillip D. Nick, Ellen H. Hardymon, Suzanne K. Nick Irrevocable Family Trust One, Suzanne K. Nick Irrevocable Family Trust Two, Thomas F. Havens Irrevocable Family Trust One, and Thomas F. Havens Irrevocable Family Trust Two.

(62)    **Excluded Real Properties** means the real properties owned by WFI located at (i) 2202 Stevens Creek Boulevard, San Jose, California 95127, (ii) 9905 Gulf Freeway, Houston, Texas 77034, and (iii) 3915 East Patrick Lane, Las Vegas, Nevada 89120.

(63)    **Excluded Retail Contracts** means Retail Contracts (i) that have been in default for at least 90 days, (ii) where the Retail Contracts have been charged off of the books and records of WFI, and (iii) where the customer of the financed vehicle has commenced a case, or a case has been commenced against such customer, under the Bankruptcy Code.

(64)    **Expense Reimbursement Order** means the *Order Pursuant to Sections 105(a), 363 and 503(b) of the Bankruptcy Code and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure for an Order Approving Break-Up Fee and Expense Reimbursement Payments to Plan Sponsor* [ECF No. 304] entered by the Bankruptcy Court on November 13, 2013.

(65)    **Exculpated Parties** means, collectively, each of the Debtors, the Reorganized Debtors, the members of the Committee in their capacity as such, the Pre-Petition Agent, the Stalking Horse, the Stalking Horse's Affiliates, and each of their respective Related Persons; *provided*, *however*, that notwithstanding anything herein to the contrary, Exculpated Parties shall not include the Excluded Persons (and even if any Excluded Persons are Related Persons).

(66)    **Exhibit** means an exhibit annexed either to this Plan, the Plan Documents, or the Disclosure Statement or Filed as part of the Plan Supplement.

(67)    **File, Filed or Filing** means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Bankruptcy Cases.

(68)    **Final Order** means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, (i) which has not been reversed, stayed, vacated, modified, amended, enjoined, set aside, annulled or suspended, (ii) with respect to which no stay shall have been issued in connection with any notice of appeal or petition for certiorari filed within any deadline provided by applicable statute or regulation; (iii) is not the subject of a timely filed pending appeal or motion for review or reconsideration, (iv) has not been and may no longer be appealed from or otherwise reviewed or reconsidered, other than under Bankruptcy Rule 9024 and/or Federal Rule of Civil Procedure 60, and (v) is final and

nonappealable in accordance with Bankruptcy Rule 8002 or any other applicable law or rule.

(69)  **Free and Clear** means, except as otherwise provided in the Purchase and Sale Agreement, free and clear of all Liens, Claims, Causes of Action, encumbrances, interests, claims, pledges, security interests, rights of setoff, restrictions or limitation on use, successor liabilities, conditions, rights of first refusal, options to purchase, obligations to allow participation, agreements or rights, rights asserted in litigation matters, rights asserted in adversary proceedings in these Cases, competing rights of possession, obligations to lend, matters filed of record that relate to, evidence or secure an obligation of the Debtors or the Estates, (and all created expenses and charges) of any type under, among other things, any document, instrument, agreement, affidavit, matter filed of record, cause, or state or federal law, whether known or unknown, legal or equitable, and all liens, rights of offset, replacement liens, adequate protection liens, charges, obligations, or claims granted, allowed or directed in any Order.

(70)  **General Unsecured Claim** means any Claim that is not Secured or entitled to priority under the Bankruptcy Code.

(71)  **Global Track** means Global Track GPS, LLC, a Delaware limited liability company, the Debtor in Case No. BK-S-13-17589-LED pending in the Bankruptcy Court, and one of the jointly-administered Debtors in the Bankruptcy Cases.

(72)  **Governance Documents** means any certificate of incorporation, certificate of formation, bylaws, limited liability company agreements (or any other formation and organizational documents) of the Debtors, or any amendments thereto, in effect as of the Petition Date.

(73)  **Governmental Units** means the United States; any State; Commonwealth; District; Territory; municipality; foreign state; department, agency or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under the Bankruptcy Code), a State, Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government, and to the fullest extent encompassed in Bankruptcy Code § 101(27).

(74)  **Governors** has the meaning given in Section 6.12 of this Plan.

(75)  **Holder** means the beneficial holder of any Claim or Interest.

(76)  **Impaired** means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of Bankruptcy Code § 1124.

(77)  **Intercompany Claim** means any Claim by a Debtor against another Debtor.

(78)  **Interest(s)** means the interest of any holder of equity securities in any of the Debtors represented by any issued and outstanding common stock or interests, preferred stock or interests, or other instrument evidencing a present ownership interest in any of the Debtors before the Effective Date (including before the Petition Date), whether or not transferable, any restricted stock units, calls, rights, puts, awards, commitments, repurchase rights, unvested or unexercised options, warrants, unvested common interests, unvested preferred interests or any

14

other agreements of any character related to the common stock or preferred stock interests of any of the Debtors, obligating any of the Debtors to issue, transfer, purchase, redeem, or sell any equity interests or other equity securities, any rights under any equity incentive plans, voting agreements and registration rights agreements regarding equity securities of any of the Debtors, any claims arising from the rescission of a purchase, sale or other acquisition of any outstanding common stock interests or preferred stock interests or other equity securities (or any right, claim, or interest in and to any common stock interests, preferred stock interests or other equity securities) of any of the Debtors, any claims for the payment of any distributions with respect to any common stock or preferred stock interests of any of the Debtors, and any claims for damages or any other relief arising from the purchase, sale, or other acquisition of any of the Debtors' outstanding common stock interests, preferred stock interests or other equity securities, however evidenced but specifically excluding the "New Interests" sold to the Purchaser pursuant to the Purchase and Sale Agreement.

(79)  **Internal Revenue Code** means the Internal Revenue Code of 1986, as amended from time to time, and any successor statute or statutes.

(80)  **Las Vegas Property** means the real property owned by Debtors located at 3915 East Patrick Lane, Las Vegas, Nevada 89120.

(81)  **Las Vegas Property Auction** means the auction for the sale of the Las Vegas Property pursuant to and in accordance with the Las Vegas Property Bid Procedures Order.

(82)  **Las Vegas Property Bid Procedures Order** means an order of the Bankruptcy Court approving procedures for consummating the sale of the Las Vegas Property, and in the form previously approved in writing by the Stalking Horse.

(83)  **Las Vegas Property Purchase Agreement** means the agreement for the purchase and sale of the Las Vegas Property between WFI and the Purchaser, as amended and restated, or otherwise modified from time to time.  If the Stalking Horse is the Purchaser, the Stalking Horse's form of purchase agreement as approved in the Las Vegas Property Bid Procedure Order shall be the Las Vegas Property Purchase Agreement.

(84)  **Las Vegas Property Sale Order** means an order of the Bankruptcy Court approving the sale of the Las Vegas Property, and in the form previously approved in writing by the Stalking Horse, which order may be the same as the Confirmation Order.

(85)  **Lien** means any charge, lien (statutory or otherwise), interest, security interest, claim, mortgage, lease, sublease, hypothecation, deed of trust, pledge, option, right of use or possession, right of first offer or first refusal, easement, servitude, restrictive covenant, encroachment, encumbrance, right of way, transfer restriction or other similar restriction of any kind, including any restriction on use, voting, transfer, receipt of income or exercise of any other attribute of ownership.  For the purposes hereof, and without limiting the foregoing, a Person shall be deemed to own subject to a Lien any property or asset which it has acquired or holds subject to the interest of a vendor or lessor under any conditional sale agreement, capital lease or other title retention agreement relating to such property or asset.

(86)  **Liquidating Trust** means the entity created pursuant to Article VII of this Plan.

(87)  **Liquidating Trust Agreement** means the document titled "Liquidating Trust Agreement" approved and entered into in accordance with this Plan pursuant to which the Liquidating Trust will be established and administered.

(88)  **Liquidating Trust Assets** means the assets transferred to the Liquidating Trust, which are: (a) Liquidating Trust Avoidance Actions; (b) the Claims Reserve; (c) Excluded Real Properties and proceeds therefrom; (d) such other assets identified in the Plan Supplement; and (e) Unclaimed Property and (f) New WFIN Stock.

(89)  **Liquidating Trust Avoidance Actions** means Avoidance Actions that are not Retained Claims.

(90)  **Liquidating Trustee** means the Person appointed in accordance with this Plan and the Liquidating Trust Agreement to oversee and administer the Liquidating Trust and as identified in the Plan Supplement.

(91)  **Miscellaneous Secured Claim** means any Secured Claim against any Debtor other than the Senior Secured Claims and the B Member Secured Claims.

(92)  **Net Proceeds** means all proceeds received from the sale, disposition, collection or other monetization of any Other Asset, less reasonable and customary out-of-pocket expenses incurred by the Liquidating Trustee in connection with such sale, disposition, collection or other monetization.

(93)  **New Global Track Shares** means the interests in Reorganized Global Track, which will be issued under this Plan in accordance with Bankruptcy Code § 1145 and as described in Section 6.15.

(94)  **New Interests** means the New WFI Stock and New Global Track Shares.

(95)  **New WFI Stock** means the shares of stock in Reorganized WFI, which will be issued under this Plan in accordance with Bankruptcy Code § 1145 and as described in Section 6.15.

(96)  **New WFIN Stock** means the interests in Dissolved WFIN, which will be issued under this Plan in accordance with Bankruptcy Code § 1145 and as described in Section 6.15.

(97)  **Other Assets** means any assets of the Debtors, whether received before or after the Effective Date of the Plan, other than:  (a) those transferred to the Purchaser at Closing; (b) those owned at Closing by a Debtor whose New Interests are sold to the Purchaser; (c) Excluded Real Properties; (d) Retained Claims; (e) Liquidating Trust Avoidance Actions.

(98)  **Person** means an individual, corporation, general or limited partnership, limited liability company, trust, liquidating trust, incorporated or unincorporated association, joint venture, joint stock company, government (or an agency or political subdivision thereof) or other entity of any kind.

(99)  **Petition Date** means September 4, 2013, being the date on which each of the respective Debtors Filed their voluntary petitions for relief under chapter 11 of the Bankruptcy

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

Code.

(100) **Plan** means this *Joint Plan of Reorganization*, including any Exhibits and all supplements, appendices and schedules thereto, either in its present form or as the same may be altered, amended, modified or supplemented from time to time as permitted herein and in accordance with the provisions of the Bankruptcy Code and the terms hereof.

(101) **Plan Carve Out Claims** means the Administrative Claims (including Cure Costs), the Priority Tax Claims, the Priority Non-Tax Claims, and the Miscellaneous Secured Claims.

(102) **Plan Default Notice** shall have the meaning set forth in Section 16.08 of this Plan.

(103) **Plan Distribution** means the payment or distribution under this Plan of assets, securities or instruments evidencing an obligation under this Plan or other property of any nature to any Holder of an Allowed Claim.

(104) **Plan Documents** means all documents, forms, lists and agreements contemplated under this Plan (including, but not limited to the Plan Supplement) to effectuate the terms and conditions hereof.

(105) **Plan Supplement** means any supplement to this Plan, and the compilation of Plan Documents and forms of documents and Exhibits to this Plan, as amended, modified or supplemented from time to time, to be Filed by the Debtors as permitted herein on or before the Plan Supplement Filing Date.

(106) **Plan Supplement Filing Date** means the date not later than five (5) days before the Voting Deadline, which date may be modified by agreement between the Debtors, the Pre-Petition Agent, the Purchaser, and the Committee.

(107) **Potential Bidder** means any Person who wishes to participate in the bidding process.

(108) **Priority Non-Tax Claims** means any Claim other than an Administrative Claim or a Priority Tax Claim, entitled to priority in payment as specified in Bankruptcy Code § 507(a).

(109) **Priority Tax Claim** means a Claim that is entitled to priority pursuant to Bankruptcy Code § 507(a)(8).

(110) **Pro Rata** means that proportion that a Claim or Interest in a particular Class bears to the aggregate amount of all Claims or Interests in such Class, except in cases where Pro Rata is used in reference to multiple Classes, in which case Pro Rata means the proportion that a Claim or Interest in a particular Class bears to the aggregate amount of all Claims in such multiple Classes.

(111) **Pre-Petition Agent** means BMO Harris Bank, N.A., as administrative agent and issuing lender under the Senior Credit Agreement, or any successor thereto.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

(112)  **Professional** means any professional (a) employed in the Bankruptcy Cases pursuant to Bankruptcy Code §§ 327, 328 or 1103 and to be compensated for services rendered pursuant to Bankruptcy Code §§ 327, 328, 329, 330 or 331, or (b) seeking compensation and reimbursement pursuant to Bankruptcy Code § 503(b)(4).

(113)  **Professional Fee Claim** means a Claim of a Professional for compensation or reimbursement of expenses relating to services after the Petition Date through the Effective Date.

(114)  **Proof of Claim (or Interest)** means the proof of claim (or interest) that must be Filed by a Holder of a Claim (or Interest) by the date(s), if any, designated by the Bankruptcy Court as the Bar Date.

(115)  **PSA Sale Proceeds** means all of the sale proceeds received from the sale, disposition, collection or other monetization of the Acquired Property as contemplated under the Purchase and Sale Agreement (and for the avoidance of doubt, this does not include sale proceeds from the sale of Excluded Real Properties).

(116)  **Purchase and Sale Agreement** means the agreement for the purchase and sale of the Acquired Property between some or all of the Debtors and the Purchaser, as amended and restated, or otherwise modified from time to time.  If the Stalking Horse is the Purchaser, the Stalking Horse SPA shall be the Purchase and Sale Agreement.

(117)  **Purchaser** means the Person or group that is the Successful Bidder under the Bid Procedures and that purchases the Acquired Property (and, as applicable, the Successful Bidder under the Las Vegas Property Bid Procedures for the Las Vegas Property) pursuant to the Sale Order (and as applicable, the Las Vegas Property Sale Order), and/or the Confirmation Order.

(118)  **Qualified Bidder** means a Potential Bidder who has met the prerequisites to become a qualified bidder set forth in the Bid Procedures (or the Las Vegas Property Bid Procedures, as applicable).

(119)  **Related Persons** means, with respect to any Person, such Person's predecessors, successors and assigns (whether by operation of law or otherwise) each of their respective current and former members, partners, equity holders, officers, directors, employees, managers, shareholders, partners, financial advisors, attorneys, accountants, investment bankers, consultants, agents and professionals, each acting in such capacity, and any Person claiming by or through any of them (including their respective officers, directors, managers, shareholders, partners, employees, members and professionals).

(120)  **Reorganized Debtors** means Reorganized WFI and Reorganized Global Track.

(121)  **Reorganized Global Track** means Global Track from and after the Effective Date.

(122)  **Reorganized WFI** means WFI from and after the Effective Date.

(123)  **Retail Contracts** means (a) any retail installment sale contract for financed vehicles and all rights and obligations thereunder and (b) as applicable, any electronic versions of such retail installment contracts for financed vehicles and all rights and obligations

thereunder.

(124) **Retained Claims** means any rights, Causes of Action (including Avoidance Actions) and Claims (including claims under chapter 5 of the Bankruptcy Code) of a Reorganized Debtor (i) relating to, or against a counter party to a Desired 365 Contract that is assumed by a Reorganized Debtor or assumed and assigned to a Purchaser; (ii) relating to all Vested Assets; and (iii) relating to all employees, officers and directors of Reorganized Debtors (unless such Persons are Excluded Persons).  For the avoidance of doubt, all Avoidance Actions against any Excluded Persons are Liquidating Trust Avoidance Actions.

(125) **Sale Hearing** means the hearing(s) held by the Bankruptcy Court to approve the Transactions and/or consider confirmation of this Plan pursuant to Bankruptcy Code § 363, as such hearing may be continued from time to time.

(126) **Sale Order** means that certain *Order (I) Authorizing the Debtors to Sell Their Property, (II) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* entered by the Bankruptcy Court in conjunction with approval of the Purchase and Sale Agreement, which order may be the same as the Confirmation Order.

(127) **Sale Orders** mean, either one or both of the Sale Order and/or the Las Vegas Property Sale Order.

(128) **Scheduled** means, with respect to any Claim or Interest, the status and amount, if any, of such Claim or Interest as set forth in the Bankruptcy Schedules.

(129) **Secured** means, when referring to a Claim: (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to Bankruptcy Code § 553, to the extent of the value of the Creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Bankruptcy Code § 506(a); or (b) Allowed pursuant to this Plan as a Secured Claim.

(130) **Securities Act** means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, as now in effect or hereafter amended.

(131) **Senior Credit Agreement** means the Credit Agreement between WFI, as borrower, the Senior Secured Creditor, as administrative agent and lender, and certain guarantors party thereto, dated March 14, 2012, as amended (including pursuant to any forbearance agreements).

(132) **Senior Lien Documents** means the Senior Credit Agreement, the Senior Lien Notes, and all other instruments, agreements, deeds of trust, mortgages, security agreements, assignments, pledges, and financing statements that evidence, secure or relate to the Senior Credit Agreement, the Senior Lien Notes, or any Liens securing the Senior Secured Claims.

(133) **Senior Lien Notes** means any and all promissory notes of WFI or the other Debtors, if any, payable to the order of any Senior Secured Lenders evidencing indebtedness of

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

WFI to such Lenders under the Senior Credit Agreement.

(134) **Senior Secured Claims** means the Secured Claims of the Senior Secured Lenders.

(135) **Senior Secured Claim Distribution Amounts** means all distributions made on account of the Senior Secured Claims pursuant to Section 4.02.

(136) **Senior Secured Deficiency Claim** shall have the meaning set forth in Section 4.02 of this Plan.

(137) **Senior Secured Lenders** mean the lenders and holders of indebtedness under the Senior Credit Agreement or any other Senior Lien Documents.

(138) **Stalking Horse** means Carfinco WFI, Inc., a Delaware corporation, or such other buyer as identified in the Stalking Horse SPA whether or not such party is the Successful Bidder at the Auction.

(139) **Stalking Horse SPA** means the Stock Purchase Agreement dated as of November 15, 2013, as amended or otherwise modified from time to time, entered into between WFI and Global Track, as Debtors, and the Stalking Horse, as buyer.

(140) **Successful Bidder** has the meaning set forth in the Bid Procedures.

(141) **Transaction(s)** means the transactions contemplated by (i) the Purchase and Sale Agreement and approved by the Sale Order and/or Confirmation Order, and (ii) the Las Vegas Property Purchase Agreement and approved by the Las Vegas Property Sale Order and/or the Confirmation Order.

(142) **Unclaimed Property** has the meaning set forth in Section 8.03 of this Plan.

(143) **Unimpaired** means a Claim or Interest that is not Impaired.

(144) **Vested Assets** means all of the Debtors' (and their respective estates) right, title and interest in and to any assets (other than Other Assets), contracts, leases, Debtor Assets as defined in the Purchase and Sale Agreement, properties and businesses, as the same shall exist as of the Effective Date of every kind, type of designation, whether tangible or intangible, known or unknown, real, personal or mixed wherever located, including all Claims and Causes of Action (for the avoidance of doubt, other than Liquidating Trust Avoidance Actions) against any Person to the extent not released or discharged pursuant to this Plan, that are to be owned by one or more of the Reorganized Debtors as described in the Purchase and Sale Agreement pursuant to which any New Interests are to be issued or transferred to the Purchaser.

(145) **Voting Deadline** means the date by which a Creditor must deliver a Ballot to accept or reject this Plan as set forth in the order of the Bankruptcy Court approving the instructions and procedures relating to the solicitation of votes with respect to this Plan.

(146) **Voting Record Date** means the record date for voting on this Plan, which shall be November 26, 2013.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

(147) **WFI** means Western Funding Incorporated, a California corporation, the Debtor in Case No. BK-S-13-17588-LED pending in the Bankruptcy Court, and one of the jointly-administered Debtors in the Bankruptcy Cases.

(148) **WFIN** means Western Funding Inc. of Nevada, a Nevada corporation, the Debtor in Case No. BK-S-13-17586-LED pending in the Bankruptcy Court, and one of the jointly-administered Debtors in the Bankruptcy Cases.

### Section 1.03    Rules of Interpretation

For purposes of this Plan, (i) except as provided in Article XIII, any reference in this Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (ii) except as provided in Article XIII, any reference in this Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit as it may have been or may be amended, modified, or supplemented as permitted herein; (iii) unless otherwise specified, all references in this Plan to Sections, Articles, Schedules, and Exhibits are references to Sections, Articles, Schedules, and Exhibits of or to this Plan; (iv) the words "herein," "hereto," and "hereof" refer to this Plan in its entirety rather than to a particular portion of this Plan; (v) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; and (vi) the rules of construction set forth in Bankruptcy Code § 102 and in the Bankruptcy Rules shall apply.

### Section 1.04    Computation of Time

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

### Section 1.05    Reference to Monetary Figures

All references in this Plan to monetary figures shall refer to legal currency of the United States of America, unless otherwise expressly provided.

### Section 1.06    Exhibits and Plan Supplement

All Exhibits, all Plan Documents, as well as the Plan Supplement, are incorporated into and are a part of this Plan as if set forth in full herein, and, to the extent not annexed hereto, such Exhibits and Plan Supplement shall be timely Filed with the Clerk of the Bankruptcy Court on or before the Plan Supplement Filing Date. Holders of Claims and Interests may obtain a copy of the Filed Exhibits and the Plan Supplement upon written request to the Debtors' counsel. Upon their Filing, the Exhibits and the Plan Supplement may be inspected in the office of the clerk of the Bankruptcy Court or at the Bankruptcy Court's website at http://www.nvb.uscourts.gov. The documents contained in the Exhibits and Plan Supplement shall be approved by the Bankruptcy Court pursuant to the Confirmation Order. The Debtors explicitly reserve the right to modify or make additions to or subtractions from any Exhibit to this Plan or the Plan Supplement and to amend, modify or supplement any Exhibit to this Plan before the Confirmation Date.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

### Section 1.07   Deemed Acts

Whenever an act or event is expressed under this Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of this Plan and the Confirmation Order.

## ARTICLE II
## UNCLASSIFIED CLAIMS

In accordance with Bankruptcy Code § 1123(a)(1), Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in Article III and Article IV hereof.  These unclassified Claims are treated as follows:

### Section 2.01   Treatment of Administrative Claims

Except as otherwise provided for in this Plan, and subject to the requirements of Section 2.02 of this Plan, each Holder of an Allowed Administrative Claim shall, in full satisfaction, release, settlement, and discharge of such Allowed Administrative Claim:  (a) to the extent such claim is due and owing on the Effective Date, be paid in full, in Cash, on the Effective Date; (b) to the extent such claim is not due and owing on the Effective Date, be paid in full, in Cash, (i) in accordance with the terms of any agreement among the Liquidating Trustee, the Pre-Petition Agent and such Holder, or (ii) when such claim becomes due and payable under applicable non-bankruptcy law, or (iii) in the ordinary course of business; or (c) receive such other treatment as to which such Holder may agree with the Liquidating Trustee and the Pre-Petition Agent.  Cash payments of Allowed Administrative Claims shall be paid from the Claims Reserve (but only if the Allowed Senior Secured Claims have been first paid in full in cash), or if the Claims Reserve is insufficient to pay all Allowed Administrative Claims, any shortfall shall be paid from the Liquidating Trust.

### Section 2.02   Bar Dates for Certain Claims

(a)    Administrative Claims; Substantial Contribution Claims.    The Confirmation Order will establish a Bar Date for Filing of all Administrative Claims, including substantial contribution claims (but not including Professional Fee Claims, claims for the expenses of the members of the Committee and Administrative Claims in section (b) or (c) below), which date will be thirty (30) days after the Confirmation Date (the "Administrative Claims Bar Date").  Holders of asserted Administrative Claims, other than Professional Fee Claims, claims for U.S. Trustee fees under 28 U.S.C. § 1930, administrative tax claims and administrative ordinary case liabilities described in section (b) below, must submit proofs of Administrative Claim on or before such Administrative Claims Bar Date or forever be barred from doing so.  A notice prepared by the Debtors will set forth such date and constitute notice of this Administrative Claims Bar Date.  The Liquidating Trustee and the Pre-Petition Agent shall have thirty days (30) days (or such longer period as may be allowed by order of the Bankruptcy Court) following the Administrative Claims Bar Date to review and object to such Administrative Claims before a hearing for determination of allowance of such Administrative Claims.

(b)    Administrative Ordinary Course Liabilities.    Holders of Administrative Claims that are based on liabilities incurred and paid by any Debtor in the ordinary course of the

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

applicable Debtor's business (other than Claims of governmental units for taxes and for interest and/or penalties related to such taxes) on and after the Petition Date shall not be required to File any request for payment of such Administrative Claims. For the avoidance of doubt, Holders of Administrative Claims pursuant to Bankruptcy Code § 503(b)(9) shall be required to File a proof of Administrative Claim on or before the Administrative Claims Bar Date.

(c)  <u>Administrative Tax Claims.</u>  All requests for payment of Administrative Claims by a governmental unit for taxes (and for interest and/or penalties related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date, and for which no bar date has otherwise been previously established, must be Filed and served on the Reorganized Debtors, the Pre-Petition Agent, and any other party specifically requesting a copy in writing on or before the later of (a) thirty (30) days following the Confirmation Date; and (b) one hundred and twenty (120) days following the Filing of the tax return for such taxes for such tax year or period with the applicable governmental unit. Any Holder of any such Claim that is required to File a request for payment of such taxes and does not File and properly serve such a claim by the applicable Bar Date shall be forever barred from asserting any such claim against the Debtors, the Reorganized Debtors, the Liquidating Trust or their property, regardless of whether any such Claim is deemed to arise on or before the Effective Date. Any interested party desiring to object to an Administrative Claim for taxes must File and serve its objection on counsel to the Debtors, the Reorganized Debtors, the Liquidating Trustee, and the relevant taxing authority no later than ninety (90) days after the taxing authority Files and serves its application.

(d)  <u>Professional Fee Claims.</u>  All final requests for compensation or reimbursement of professional fees pursuant to Bankruptcy Code §§ 327, 328, 330, 331, 363, 503(b) or 1103 for services rendered to or on behalf of the applicable Debtors or the Committee (if one has been appointed) before the Confirmation Date (other than substantial contribution claims under Bankruptcy Code § 503(b)(4)) must be Filed and served on the Debtors, the Liquidating Trustee, the Pre-Petition Agent, and their respective counsel no later than thirty days (30) after the Confirmation Date, unless otherwise ordered by the Bankruptcy Court. Objections to applications of such Professionals or other entities for compensation or reimbursement of expenses must be Filed and served on the Debtors, Liquidating Trustee, Pre-Petition Agent, and their counsel and the requesting Professional or other entity no later than thirty (30) days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable application for compensation or reimbursement was served.

**Section 2.03  Payment of Statutory Fees**

On or before the Effective Date (or as soon as reasonably practicable after such fees become due), the Debtors shall have paid in full, in Cash (including by check or wire transfer), in U.S. dollars, all fees payable pursuant to section 1930 of title 28 of the United States Code, in the amount determined by the Bankruptcy Court at the Confirmation Hearing.

**Section 2.04  Treatment of Priority Tax Claims**

Each Holder of an Allowed Priority Tax Claim shall, in full satisfaction, release, and discharge thereof, receive (i) such treatment as to which such Holder may agree with the Liquidating Trustee, and the Pre-Petition Agent or (ii) at the sole option of the Liquidating Trustee, (a) payment in full, in Cash, of such Allowed Priority Tax Claim on the Effective Date;

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

23

or (b) treatment in accordance with Bankruptcy Code §§ 1129(a)(9)(C) or 1129(a)(9)(D), as the case may be, with the Liquidating Trustee's selection of (a) or (b) being subject to the prior written approval of Pre-Petition Agent. Cash payments of Allowed Priority Tax Claims shall be paid from the Claims Reserve (but only if the Allowed Senior Secured Claims have been first paid in full in cash), or if the Claims Reserve is insufficient to pay all Allowed Priority Tax Claims, any shortfall shall be paid from the Liquidating Trust.

# ARTICLE III
# CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

## Section 3.01   Introduction

The categories of Claims and Interests set forth herein classify Claims and Interests for all purposes, including for purposes of voting, confirmation, and distribution pursuant to this Plan and Bankruptcy Code §§ 1122 and 1123(a)(1). A Claim or Interest shall be deemed classified in a particular Class only to the extent that it qualifies within the description of such Class, and shall be deemed classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes. Notwithstanding anything to the contrary in this Plan, a Claim or Interest shall be deemed classified in a Class only to the extent that such Claim or Interest has not been paid, released, or otherwise settled before the Effective Date.

All Claims (except for Administrative Claims and Priority Tax Claims, which are not classified pursuant to Bankruptcy Code § 1123(a)(1)) are classified in Section 3.03 and Section 4.1 through Section 4.07 in this Plan.

In no event shall the Reorganized Debtors or the Stalking Horse be liable for the payment of any Claims or Interests pursuant to this Plan and the Bankruptcy Code.

## Section 3.02   Voting; Presumptions

(a) <u>Acceptance by Impaired Classes</u>. Each Impaired Class of Claims that will (or may) receive or retain property or any interest in property under this Plan shall be entitled to vote to accept or reject this Plan. An Impaired Class of Claims shall have accepted this Plan if (i) the Holders (other than any Holder designated under Bankruptcy Code § 1126(e)) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept this Plan and (ii) the Holders (other than any Holder designated under Bankruptcy Code § 1126(e)) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept this Plan. An Impaired Class of Interests shall have accepted this Plan if the Holders (other than any Holder designated under Bankruptcy Code § 1126(e)) of at least two-thirds in amount of the Allowed Interests actually voting in such Class have voted to accept this Plan.

(b) <u>Voting Presumptions</u>. Claims and Interests in Unimpaired Classes are conclusively deemed to have accepted this Plan pursuant to Bankruptcy Code § 1126(f) and, therefore, are not entitled to vote to accept or reject this Plan. Claims and Interests in Classes that do not entitle the Holders thereof to receive or retain any property under this Plan are conclusively deemed to have rejected this Plan pursuant to Bankruptcy Code § 1126(g) and, therefore, are not entitled to vote to accept or reject this Plan.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

### Section 3.03    Identification of Claims and Interests

The following tables designate the Classes of Claims against, and Interests in, the Debtors and specify which of those Classes and Interest are (a) Impaired or Unimpaired by this Plan; (b) entitled to vote to accept or reject this Plan in accordance with Bankruptcy Code § 1126; and (c) deemed to accept or reject this Plan.

### CHART 3.03(A) - WFI

| Class | Type of Allowed Claim or Interest | Treatment | Impairment | Entitled to Vote |
|-------|-----------------------------------|-----------|------------|------------------|
| -- | Administrative Claims | Paid in full in Cash on the Effective Date | Unclassified | No, not entitled to vote |
| -- | Priority Tax Claims | Paid in full in Cash on the Effective Date | Unclassified | No, not entitled to vote |
| A1 | Priority Non-Tax Claims | Paid in full in Cash on the Effective Date | Unimpaired | No, deemed to accept this Plan |
| A2 | Senior Secured Claims | See Section 4.02 | Impaired | Yes, entitled to vote |
| A3 | Miscellaneous Secured Claims | Paid in full in Cash on the Effective Date | Unimpaired | No, deemed to accept this Plan |
| A4 | B Member Secured Claims | See Section 4.04 | Impaired | Yes, entitled to vote |
| A5 | General Unsecured Claims | See Section 4.05 | Impaired | Yes, entitled to vote |
| A6 | Intercompany Claims | Canceled | Impaired | No, deemed to reject this Plan |
| A7 | Interests | Canceled | Impaired | No, deemed to reject this Plan |

### CHART 3.03(B) - WFIN

| Class | Type of Allowed Claim or Interest | Treatment | Impairment | Entitled to Vote |
|-------|-----------------------------------|-----------|------------|------------------|
| -- | Administrative Claims | Paid in full in Cash on the Effective Date | Unclassified | No, not entitled to vote |
| -- | Priority Tax Claims | Paid in full in Cash on the Effective Date | Unclassified | No, not entitled to vote |
| B1 | Priority Non-Tax Claims | Paid in full in Cash on the Effective Date | Unimpaired | No, deemed to accept this Plan |
| B2 | Senior Secured Claims | See Section 4.02 | Impaired | Yes, entitled to vote |
| B3 | Miscellaneous Secured Claims | Paid in full in Cash on the Effective Date | Unimpaired | No, deemed to accept this Plan |

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

25

| B4 | General Unsecured Claims | See Section 4.05 | Impaired | Yes, entitled to vote |
| B5 | Intercompany Claims | Canceled | Impaired | No, deemed to reject this Plan |
| B6 | Interests | Canceled | Impaired | No, deemed to reject this Plan |

**CHART 3.03(C) – Global Track**

| Class | Type of Allowed Claim or Interest | Treatment | Impairment | Entitled to Vote |
|---|---|---|---|---|
| -- | Administrative Claims | Paid in full in Cash on the Effective Date | Unclassified | No, not entitled to vote |
| -- | Priority Tax Claims | Paid in full in Cash on the Effective Date | Unclassified | No, not entitled to vote |
| C1 | Priority Non-Tax Claims | Paid in full in Cash on the Effective Date | Unimpaired | No, deemed to accept this Plan |
| C2 | Senior Secured Claims | See Section 4.02 | Impaired | Yes, entitled to vote |
| C3 | Miscellaneous Secured Claims | Paid in full in Cash on the Effective Date | Unimpaired | No, deemed to accept this Plan |
| C4 | General Unsecured Claims | See Section 4.05 | Impaired | Yes, entitled to vote |
| C5 | Intercompany Claims | Canceled | Impaired | No, deemed to reject this Plan |
| C6 | Interests | Canceled | Impaired | No, deemed to reject this Plan |

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS

**Section 4.01   Priority Non-Tax Claims**

Classification: Classes A1, B1, and C1 consist of the Allowed Priority Non-Tax Claims against the respective Debtors.

Treatment: Except to the extent that a Holder of an Allowed Claim in Classes A1, B1, and C1 has agreed in writing with the Debtors (or the Liquidating Trustee) and the Pre-Petition Agent to a different treatment (in which event such other writing will govern), each Holder of an Allowed Claim in Classes A1, B1, and C1 shall receive, on account of, and in full and complete settlement, release and discharge of and in exchange for, such Claim, at the election of the Liquidating Trustee, (i) Cash equal to the amount of such Allowed Claims in Classes A1, B1, and C1 in accordance with Bankruptcy Code § 1129(a)(9), on the later of (a) the Effective Date (or as soon as reasonably practicable thereafter) and (b) the date such Claim in Classes A1, B1, and C1 becomes an Allowed Claim in Classes A1, B1, and C1 (or as soon as reasonably practicable thereafter); or (ii) such other treatment agreed to by the Debtors, Liquidating Trustee,

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

and the Pre-Petition Agent required to render such Allowed Claims in Classes A1, B1, and C1 Unimpaired pursuant to Bankruptcy Code § 1124. Cash payments of Allowed Claims in Classes A1, B1, and C1 shall be paid from the Claims Reserve, or if the Claims Reserve is insufficient to pay all Allowed Priority Non-Tax Claims, any shortfall shall be paid from the Liquidating Trust.

Voting: Claims in Classes A1, B1, and C1 are Unimpaired. Each Holder of an Allowed Claim in Classes A1, B1, and C1 shall be conclusively deemed to have accepted this Plan pursuant to Bankruptcy Code § 1126(f), and, therefore, shall not be entitled to vote to accept or reject this Plan.

**Section 4.02   Senior Secured Claims**

Classification: Classes A2, B2, and C2 consist of the Allowed Senior Secured Claims against the Debtors.

Allowance:  The Senior Secured Claims against the Debtors are hereby Allowed as Secured Claims in Classes A2, B2, and C2 in the aggregate principal amount as of the Petition Date of at least $30,870,301.70; *provided*, *however*, that the foregoing Allowed amount is subject to adjustment for any amounts paid by Debtors from and after the Petition Date, as well as any other interest, fees, charges and expenses as are recoverable under and consistent with the loan documents of the Pre-Petition Agent and the Senior Secured Lenders.  For the avoidance of doubt, nothing herein is intended or should be construed as prohibiting a challenge to the Allowance of any amounts claimed by the Pre-Petition Agent or the Senior Secured Lenders except to the extent such challenge is inconsistent with the Cash Collateral Stipulation or the schedules filed herein, as amended.

Treatment: In partial and/or full satisfaction of the Allowed Senior Secured Claims, the Pre-Petition Agent shall receive, until such Claims are paid in full in cash:

(i)      on the Effective Date and as part of the Closing, from the Purchaser, all of the PSA Sale Proceeds;

(ii)     on the Effective Date, from the Debtors, contemporaneously with the payment from the Purchaser in clause (i) above, all Available Cash, if any (but only to the extent such Available Cash does not include the proceeds of any Liquidating Trust Avoidance Actions, Excluded Real Properties, or Retained Claims); and

(iii)    as soon as reasonably practicable after the Effective Date, the Net Proceeds of the sale, collection or other monetization of all or each a portion of the Other Assets.

The Pre-Petition Agent shall disburse the funds received pursuant to this Section 4.02 in accordance with the Senior Credit Agreement.

In the event sufficient PSA Sale Proceeds exist to pay the Allowed Claim of the Senior Secured Lenders in full, the Senior Secured Lenders shall be entitled to amend their claim as necessary to allow recovery of all other amounts to which the Senior Secured Lenders would be entitled under the Senior Lien Documents and applicable law, including without limitation, section 506(b) of the Bankruptcy Code, which might not otherwise be set forth in their Allowed Claim, such as interest, forbearance fees, and legal fees.  In the event that the Allowed Senior

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

Secured Claim Distribution Amounts are greater than the Allowed Senior Secured Claims and the Allowed Senior Secured Claims are paid in full, then the Liquidating Trust shall distribute the excess amount in accordance with the order of priority provided in the Liquidating Trust Agreement.

To the extent that the amounts received by the Pre-Petition Agent as provided herein are less than the amount of the Allowed Senior Secured Claims, the shortfall shall be a "Senior Secured Deficiency Claim" and shall be treated as an Allowed General Unsecured Claim in Classes A5, B4, and C4 against the Debtors.

Voting: Classes A2, B2, and C2 are Impaired.  Each Holder of an Allowed Claim in Classes A2, B2, and C2 shall be entitled to vote to accept or reject this Plan.

**Section 4.03    Miscellaneous Secured Claims**

Classification:  Classes A3, B3, and C3 consist of all Miscellaneous Secured Claims against the Debtors.

Treatment: On or as soon as reasonably practicable after the latest to occur of (i) payment in full of the Allowed Senior Secured Claims in full in cash, (ii) the Effective Date and (iii) the date on which each such Class A3, B3, and C3 Claim becomes an Allowed Claim, each Holder of such an Allowed Claim, if any, shall receive, on account of, and in full and complete settlement, release and discharge of and in exchange for such Allowed Class A3, B3, and C3 Claim, at the election of the Liquidating Trustee (with the prior written consent of Pre-Petition Agent), (a) such treatment in accordance with Bankruptcy Code § 1124 as may be determined by the Bankruptcy Court; (b) payment in full, in Cash, of such Allowed Class A3, B3, and C3 Claim; (c) satisfaction of any such Allowed Class A3, B3, and C3 Claim by delivering the Collateral securing any such Claims (if such Collateral is an Other Asset and not previously sold or otherwise transferred other than to the Liquidating Trust) and paying any interest fees, costs and/or expense required to be paid under Bankruptcy Code § 506(b); or (d) providing such Holder with such treatment in accordance with Bankruptcy Code § 1129(b) as may be determined by the Bankruptcy Court.  Following (and only following) payment of the Allowed Senior Secured Claims in full in cash, cash payments of Allowed Claims in Classes A3, B3, and C3 shall be paid from the Claims Reserve, or if the Claims Reserve is insufficient to pay all Allowed Miscellaneous Secured Claims, any shortage shall be paid from the Liquidating Trust.

Voting: Claims in Classes A3, B3, and C3 are Unimpaired.  Each Holder of an Allowed Claims in Classes A3, B3, and C3 shall be conclusively deemed to have accepted this Plan pursuant to Bankruptcy Code § 1126(f), and, therefore, shall not be entitled to vote to accept or reject this Plan.

**Section 4.04    B Member Secured Claims**

Classification:  Class A4 consists of all B Member Secured Claims against WFI.

Treatment: On or as soon as reasonably practicable after the latest to occur of (i) the Effective Date or (ii) the date on which each such Class A4 Claim becomes an Allowed Claim, each Holder of such an Allowed Claim, if any, shall receive, on account of, and in full and complete settlement, release and discharge of and in exchange for such Allowed Class A4 Claim,

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

28

at the election of the Liquidating Trustee (with the prior written consent of Pre-Petition Agent), (a) such treatment in accordance with Bankruptcy Code § 1124 as may be determined by the Bankruptcy Court; (b) payment in full, in Cash, of such Allowed Class A4 Claim; (c) satisfaction of any such Allowed Class A4 Claim by delivering the Collateral securing any such Claims (if such Collateral is an Other Asset and not previously sold or otherwise transferred other than to the Liquidating Trust) and paying any interest fees, costs and/or expense required to be paid under Bankruptcy Code § 506(b); or (d) providing such Holder with such treatment in accordance with Bankruptcy Code § 1129(b) as may be determined by the Bankruptcy Court. Following (and only following) payment of the Allowed Senior Secured Claims in full in cash, cash payments of Allowed Claims in Class A4 shall be paid from the Claims Reserve, or if the Claims Reserve is insufficient to pay all Allowed Miscellaneous Secured Claims, any shortage shall be paid from the Liquidating Trust.

Voting: Claims in Class A4 are Impaired. Each Holder of Allowed Claims in Class A4 shall be conclusively deemed to have accepted this Plan pursuant to Bankruptcy Code § 1126(f), and, therefore, shall not be entitled to vote to accept or reject this Plan.

## Section 4.05   General Unsecured Claims

Classification: Classes A5, B4, and C4 consist of all General Unsecured Claims against the Debtors.

Treatment: Each Holder of an Allowed Claim in Classes A5, B4, and C4 shall receive from the Liquidating Trust on or as soon as reasonably practicable after the Effective Date, their Pro Rata share of the sum of the aggregate proceeds of any Liquidating Trust Avoidance Actions, and the proceeds of any sales of Excluded Real Properties, less any amounts required to satisfy the Allowed Plan Carve Out Claims as provided in this Plan.

Voting: Claims in Classes A5, B4, and C4 are Impaired. Each Holder of an Allowed Claim in Classes A5, B4, and C4 shall be entitled to vote to accept or reject this Plan.

## Section 4.06   Intercompany Claims

Classification:  Classes A6, B5, and C5 consist of all Intercompany Claims between or among the Debtors.

Treatment:  On the Effective Date, all of the Intercompany Claims as of the Effective Date shall be eliminated, extinguished, cancelled, and discharged. Pursuant to Bankruptcy Code § 1129(b)(2)(C), Holders of Intercompany Claims shall not be entitled to, nor shall they receive, any distribution or retain any property or interest in property on account of such Intercompany Claims.

Voting: Claims in Classes A6, B5, and C5, are deemed to have rejected this Plan and, accordingly are not entitled to vote to accept or reject this Plan.

## Section 4.07   Interests

Classification: Classes A7, B6, and C6 shall consist of the Interests in WFI, WFIN and Global Track, respectively.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

Treatment:   On the Effective Date, all of the Classes A7, B6, and C6 Interests outstanding as of the Effective Date shall be extinguished, cancelled and discharged.  Pursuant to Bankruptcy Code § 1129(b)(2)(C), Holders of Interests in Classes A7, B6, and C6 shall not be entitled to, nor shall they receive, any distribution or retain any property or interest in property on account of such Interests.

Voting:  Interests in Classes A7, B6, and C6 are Impaired.  The Holders of Allowed Interests in Classes A7, B6, and C6 are deemed to have rejected this Plan and, accordingly, are not entitled to vote to accept or reject this Plan.

**Section 4.08   One Satisfaction of Senior Secured Claims**

Though listed in a class for each Debtor, there shall be only one satisfaction of the Secured Claims.  Each such Claim shall be Allowed as if each Debtor were jointly and severally liable thereunder.  Any deficiency in any Secured Claims shall be treated as General Unsecured Claims.

## ARTICLE V

## ACCEPTANCE OR REJECTION OF THIS PLAN

**Section 5.01   Designation of Unimpaired Classes**

Classes A1, A3, B1, B3, B7, C1, and C3 are Unimpaired.

**Section 5.02   Designation of Impaired Classes**

(a)   *Impaired Classes of Claims*.

Classes A2, A4, A5, A6, B2, B4, B5, B6, C2, C4, C5, and C6 are Impaired.

(b)   *Impaired Classes of Interest*.

Classes A7, B6, C6 are Impaired.

**Section 5.03   Classes Entitled to Vote**

Classes A2, A4, A5, B2, B4, C2, and C4 are entitled to cast Ballots within this Plan.

**Section 5.04   Classes Not Entitled to Vote**

Classes A1, A3, B1, B3, C1, and C3 are Unimpaired under this Plan and therefore, Holders of Claims in such classes are not entitled to cast Ballots with respect to this Plan as they are deemed to accept this Plan in accordance with Bankruptcy Code § 1126(f).

Classes A6, A7, B5, B6, C5 and C6 are not entitled to receive or return Property under this Plan and are deemed to reject this Plan in accordance with Bankruptcy Code § 1126(g).

**Section 5.05    Date of Distributions on Account of Allowed Claims**

Except as otherwise specifically provided herein (for example, in Section 4.02, clauses (i) and (ii)), or in the Purchase and Sale Agreement, any distributions and delivery to be made under this Plan shall be made on the Effective Date or as soon as practicable thereafter. In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**Section 5.06    Sources of Cash for the Plan Distributions**

Except as otherwise specifically provided herein or in the Confirmation Order, all Cash required for the payments to be made hereunder shall be obtained from the Available Cash on hand or the Purchaser.

**Section 5.07    Cram Down – Nonconsensual Confirmation**

If each Impaired Class of Claims or Interests entitled to vote shall not accept this Plan by the requisite statutory majority provided in Bankruptcy Code § 1126(c) or 1126(d), the Debtors request Confirmation of this Plan under Bankruptcy Code § 1129(b).  In that event, the Debtors reserve the right to modify this Plan to the extent, if any, that Confirmation pursuant to Bankruptcy Code § 1129(b) requires modification or any other reason in their discretion, but no such modification may adversely affect an extant Purchaser or any of its subsidiaries (except with Purchaser's consent).

**ARTICLE VI**

**MEANS FOR IMPLEMENTATION OF THIS PLAN AND
POST EFFECTIVE DATE GOVERNANCE**

**Section 6.01    Sale of the Acquired Property**

This Plan contemplates the sale of the Acquired Property to a third party.  To effect this, the Debtors Filed the Bid Procedures and Sale Motion, which seeks, *inter alia*, to approve the Stalking Horse SPA and to establish the Auction.  On November 26, 2013, the Bankruptcy Court entered the Bid Procedures Order, which established December 16, 2013 at 5:00 p.m. (PST) as the deadline for Potential Bidders to submit bids for the Acquired Property, and established December 18, 2013 at 9:00 a.m. (PST) as the date for the Auction.  In connection with the Auction, the Debtors have identified the Stalking Horse as a potential purchaser for the New Interests.  At the conclusion of the Auction (at which the Pre-Petition Agent and Senior Secured Lenders shall be deemed to be Qualified Bidders), the Debtors, with the consent of the Pre-Petition Agent, will seek Bankruptcy Court approval to sell the Acquired Property pursuant to the Purchase and Sale Agreement (or, in the event that the Successful Bidder is the Pre-Petition Agent and/or Senior Secured Lenders pursuant to a credit bid, then pursuant to such credit bid) to the Successful Bidder, Free and Clear.  The Sale Order and/or the Confirmation Order shall contain specific authority for the Debtors to comply with the Purchase and Sale Agreement or terms of such credit bid, as appropriate, as set forth above.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

**Section 6.02    Application of PSA Sale Proceeds and Available Cash**

(a)    <u>Claims Reserve Funding</u>.  Contemporaneously with the Closing, the Effective Date and the delivery of the PSA Sale Proceeds to the Pre-Petition Agent described below in an amount sufficient to pay the Allowed Senior Secured Claims in full in cash, the Debtors will transfer from their Available Cash an amount sufficient to fund the Claims Reserve for the benefit of the Holders of Allowed Plan Carve Out Claims (and, to the extent of any surplus from such Claims Reserve after the payment of such Allowed Claims, for the benefit of the Holders of Allowed Senior Secured Claims) to the Liquidating Trust.

(b)    <u>Liquidating Trust Funding</u>.  If there is additional Available Cash after the Claims Reserve has been funded and the Allowed Senior Secured Claims have been paid in full in cash, then the Debtors will transfer any remaining Available Cash to the Liquidating Trust to be distributed per the order of priority in the Liquidating Trust Agreement.

(c)    <u>Payment of Allowed Senior Secured Claims</u>.  Contemporaneously with and as part of the Closing and the Effective Date, the Purchaser shall transfer to the Pre-Petition Agent all of the PSA Sale Proceeds (including the release of any deposit paid pursuant to the Purchase and Sale Agreement or Bid Procedures) and any subsequent adjustments or payments received from the Purchaser pursuant to the Purchase and Sale Agreement or the Sale Order.  In the event that the Allowed Senior Secured Claims are paid in full, excess amounts of the PSA Sale Proceeds shall be transferred to the Liquidating Trust to be distributed per the order of priority in the Liquidating Trust Agreement.

**Section 6.03    Sale of the Excluded Retail Contracts.**

Prior to the Confirmation Date, Debtors shall seek court approval to sell the Excluded Retail Contracts, subject to the consent of the Pre-Petition Agent, and the proceeds thereof shall be transferred to the Pre-Petition Agent for the benefit of the Allowed Senior Secured Claims.  In the event that the Allowed Senior Secured Claims are paid in full, excess amounts of the sale proceeds from the Excluded Retail Contracts shall be transferred to the Liquidating Trust to be distributed per the order of priority in the Liquidating Trust Agreement.

**Section 6.04    Sale of the Excluded Real Properties.**

(a)    <u>Las Vegas Property</u>.  This Plan contemplates the sale of the Excluded Real Properties to one or more third parties.  To effect this, the Debtors Filed a bid procedures and sale motion with respect to the Las Vegas Property, which seeks, *inter alia*, to approve the Stalking Horse's Las Vegas Property Purchase Agreement on or before the Confirmation Hearing and to establish an auction for the Las Vegas Property to occur immediately after the conclusion of the Auction of the Acquired Property.  Although not yet approved by the Court as of the filing of this Disclosure Statement, Debtors will request that the deadline for all bids for the Las Vegas Property be due by December 16, 2013 at 5:00 p.m., and that December 18, 2013 be set as the date for the auction of the Las Vegas Property.  In connection with the auction of the Las Vegas Property, the Debtors have identified the Stalking Horse as a potential purchaser for the Las Vegas Property.  If no timely Qualifying Bid (as defined in the Las Vegas Property Bid Procedures Order) (other than the Stalking Horse bid) is received by the Bid Deadline (as defined in Las Vegas Property Bid Procedures Order), the Debtors shall not hold an auction for the Las Vegas Property and instead shall request at the sale hearing that the Bankruptcy Court

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

approve the Stalking Horse's Las Vegas Property Purchase Agreement and declare the Stalking Horse to be the successful bidder/bid. Notwithstanding anything herein to the contrary, if the Stalking Horse is not the Successful Bidder for the Acquired Property, then the Stalking Horse shall have no obligation to proceed with and shall not be bound by the Las Vegas Property Purchase Agreement. The Las Vegas Property Sale Order and/or the Confirmation Order shall contain specific authority for the Debtors to comply with the Las Vegas Property Purchase as set forth above. The proceeds from the sale or auction of the Las Vegas Property, if any (or in the event no sale of the Las Vegas Property is approved prior to or at the Confirmation Hearing, then the Las Vegas Property itself) shall be transferred to the Liquidation Trustee to satisfy any Allowed Secured B Member Claims, or if no such claims are Allowed, then to the Liquidation Trustee to be distributed per the order of priority in the Liquidating Trust Agreement.

(b)    Other Excluded Real Properties.  Any Excluded Real Properties other than the Las Vegas Property shall be transferred to the Liquidation Trustee for it to market and to sell on such terms and timetable as the Liquidation Trustee deems appropriate in its sole and absolute discretion, and the proceeds of such sale(s) shall be used to satisfy any Allowed Secured B Member Claims, or if no such Claims are Allowed, then to the Liquidation Trustee to be distributed per the order of priority provided in the Liquidating Trust Agreement.

## Section 6.05  Other Assets

Any Other Assets, and except as otherwise provided in the Purchase and Sale Agreement or in any purchase and sale agreement for the Excluded Real Properties, shall be transferred to the Liquidating Trust for the benefit of the Holders of Allowed Senior Secured Claims. Except as otherwise provided in the Purchase and Sale Agreement, or any purchase and sale agreement for the Excluded Real Properties, any assets received by the Liquidating Trust after the Effective Date of the Plan (other than the proceeds of Liquidating Trust Avoidance Actions and Excluded Real Properties) shall also be Other Assets and transferred to the Liquidating Trust for the benefit of the Holders of Allowed Senior Secured Claims.

## Section 6.06  Liquidating Trust Avoidance Actions

All Liquidating Trust Avoidance Actions are transferred to the Liquidating Trust to be distributed per the order of priority in the Liquidating Trust Agreement.

## Section 6.07  Purchase and Sale Agreement and Related Documents

(a)    General. On the Effective Date, the Transactions contemplated by the Purchase and Sale Agreement and the Las Vegas Property Purchase Agreement, and any documents in connection therewith shall be consummated, and the Acquired Property (and, as applicable, the Las Vegas Property) shall be sold and transferred to the Purchaser in accordance with the terms of the Purchase and Sale Agreement (and, as applicable, the Las Vegas Property Purchase Agreement) and this Plan in exchange for the consideration set forth in the Purchase and Sale Agreement (and, as applicable, the Las Vegas Property Purchase Agreement).

(b)    Amendment. To the extent that material amendments are needed to the Purchase and Sale Agreement or to the Las Vegas Property Purchase Agreement, the Debtors shall File the Purchase and Sale Agreement and/or the Las Vegas Property Purchase Agreement as so amended (and any related documents) on or before the Plan Supplement Filing Date. After the

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

Confirmation Date, the Debtors may modify the Purchase and Sale Agreement, the Las Vegas Property Purchase Agreement, or any other documents in accordance with the terms of the Purchase and Sale Agreement and/or the Las Vegas Property Purchase Agreement in furtherance of the transactions contemplated thereby without the need for further notice or court approval.

**Section 6.08    [Reserved]**

**Section 6.09    Creation of Liquidating Trust**

As set forth in Article VII, the Plan provides for the creation of a Liquidating Trust with the Liquidating Trust Assets and for the distribution and delivery of said assets in accordance with the terms of this Plan.

**Section 6.10    Governance Documents**

On the Effective Date, the Governance Documents of WFI and Global Track shall be amended and restated in substantially the form set forth in the Plan Supplement.

**Section 6.11    Directors and Officers**

On the Effective Date, (a) the positions of the current directors, or in the case of a governing body created by a limited liability company agreement or similar agreement, the members of such governing body (such persons and the corporate directors collectively, the "Governors") of each Debtor shall be eliminated, and each Governor shall be terminated (without the necessity of further action); (b) to the fullest extent permitted by applicable law, the rights, powers, and duties of the Governors of each Debtor (that is not a Debtor whose Interests have been sold to the Purchaser pursuant to the Sale Order and/or the Confirmation Order) that has a Governor shall vest in the Liquidating Trustee and the Liquidating Trustee or its designee shall be the presiding officer and the sole Governor of each such Reorganized Debtor; and (c) to the fullest extent permitted by applicable law, the Governors of each Debtor whose Interests have been sold to the Purchaser pursuant to the Sale Order and/or the Confirmation Order shall be selected by the Purchaser.  The Liquidating Trustee shall make all determinations with respect to employment of any other directors, officers, managers and employees of each such Debtor described in clause (b) on and after the Effective Date.

**Section 6.12    Cancellation of Existing Secured Claims**

Except as otherwise provided herein and in accordance with the Purchase and Sale Agreement or any sale agreement for any of the Excluded Real Properties, upon the Effective Date, any Lien encumbering the Acquired Property or the Excluded Properties shall be deemed released and the Holder of such Allowed Secured Claim shall deliver to the applicable Debtor (or Reorganized Debtor) any Collateral or other property of any Debtor (or Reorganized Debtor) held by such Holder, and any termination statements, instruments of satisfactions, or releases of all security interests with respect to its Allowed Secured Claim that may be reasonably required in order to terminate any related financing statements, mortgages, mechanic's liens, or *lis pendens*.

**Section 6.13    Vesting of the Vested Assets**

Except as otherwise set forth in this Plan, the Sale Orders, and/or the Confirmation Order, on the Effective Date, (a) the Vested Assets shall vest in the applicable Reorganized Debtors Free and Clear; and (b) the assumed contracts shall be assumed by the applicable Debtors as provided in Article X and vest in the applicable Reorganized Debtor(s).  Except as otherwise set forth in this Plan or the Purchase and Sale Agreement from and after the Effective Date, the Reorganized Debtors shall perform and pay when due liabilities under, or related to the ownership or operation of, the Vested Assets and the Liquidating Trust shall not be responsible for any such liabilities.  The Reorganized Debtors may operate free of any restrictions of the Bankruptcy Code.

After the Effective Date, the Reorganized Debtors may present such orders or assignments of the Bankruptcy Court, suitable for Filing in the records of every county or governmental agency where the Vested Assets are or were located, which provide that such property is conveyed to or vested in the Reorganized Debtors.  The orders or assignments may designate all Liens, Claims, and encumbrances or other interests, which appear of record and/or from which property is being transferred and assigned.  This Plan shall be conclusively deemed to be adequate notice that such Lien, Claim, encumbrance, or other interest is being extinguished and no notice other than by this Plan, shall be given before the presentation of such orders or assignments. Any person having a Lien, Claim, encumbrance or other interest against any Vested Asset shall be conclusively deemed to have consented to the transfer, assignment and vesting of such Vested Assets Free and Clear to the Reorganized Debtors by failing to object to Confirmation, except as otherwise provided for in this Plan; *provided, however,* except as otherwise set forth in this Plan, nothing herein shall be deemed to be a release of any Lien, Claim, encumbrance or other interest in or against property that is not a Vested Asset.

**Section 6.14    Cancellation of Interests**

On the Effective Date, all Interests in the Debtors (including those Interests held in Treasury by any of the Debtors) shall be terminated and extinguished and the certificates that previously evidenced ownership of those interests shall be deemed canceled (all without further action by any person or the Bankruptcy Court) and shall be null and void and such certificates shall evidence no rights or interests in any of the Debtors.

**Section 6.15    Issuance of New Interests/New WFIN Stock**

On the Effective Date, after the Interests are cancelled, Reorganized Global Track shall issue the New Global Track Shares to Purchaser and Reorganized WFI shall issue the New WFI Stock to the Purchaser in accordance with the Purchase and Sale Agreement, and in each case such shares shall be Free and Clear; provided that the termination of Interests in Reorganized WFI and Reorganized Global Track pursuant to Section 6.14 and the issuance of the New Interests pursuant to this Section 6.15 are each intended to qualify as a "reorganization" under Section 368(a)(1)(E) of the Internal Revenue Code; [*provided, further* that the termination of Interests pursuant to Section 6.14 are each intended to qualify as a "contribution" under Section 721 of the Internal Revenue Code.]    The New WFI Stock shall constitute one hundred percent of the authorized and issued equity interests in the Reorganized WFI.  The New Global Track Shares shall constitute one hundred percent of the limited liability company interests in Reorganized Global Track.

35

On the Effective Date there shall not be issued, reserved for issuance or outstanding any (i) shares of capital stock or other voting or other securities of, or ownership interests in, any Reorganized Debtor, other than the New Interests issued to Purchaser at the Closing, (ii) securities of any Reorganized Debtor convertible into or exchangeable for shares of capital stock or other voting or other securities of, or ownership interests in, any Reorganized Debtor, (iii) warrants, calls, options or other rights to acquire from any Reorganized Debtor, or other obligation of any Reorganized Debtor to issue, any capital stock, voting or other securities or ownership interests, or securities convertible into or exchangeable for capital stock or voting or other securities of, or ownership interests in, any Reorganized Debtor or (iv) restricted shares, stock appreciation rights, performance units, contingent value rights, "phantom" stock or similar securities or rights that are derivative of, or provide economic benefits based, directly or indirectly, on the value or price of, any capital stock of or voting or other securities of, or ownership interests in, any Reorganized Debtor.

On the Effective Date, after the Interests are cancelled, Dissolved WFIN shall issues new shares in Dissolved WFIN pursuant to section 1145 of the Bankruptcy Code to the Liquidating Trust and such shares shall be Free and Clear provided that the termination of Interests in Dissolved WFIN; pursuant to Section 6.14 and the issuance of the shares pursuant to this Section 6.15 are each intended to qualify as a "reorganization" under Section 368(a)(1)(E) of the Internal Revenue Code; [_provided_, _further_ that the termination of Interests pursuant to Section 6.14 are each intended to qualify as a "contribution" under Section 721 of the Internal Revenue Code.]

## Section 6.16    Exemption from Registration

The New Interests and the New WFIN Stock shall be exempt from registration under any federal (including the Securities Act), state or local law, rule or regulation pursuant to Bankruptcy Code § 1145 or other applicable law requiring registration before the offering, issuance, distribution or sale of securities; provided that if the issuance of the New Interests or New WFIN Stock, as applicable, does not qualify for an exemption under Bankruptcy Code § 1145, the New Interests or New WFIN Stock, as applicable, shall be issued in a manner, which qualifies for any other available exemption from registration, whether as a private placement under Rule 506 of the Securities Act, Section 4(2) of the Securities Act, and/or the safe harbor provisions promulgated thereunder.  In connection with the confirmation of the Plan, the Debtors intend to seek an order from the Bankruptcy Court to the effect that the issuance of the New Interests and New WFIN Stock is exempt from registration under the Securities Act and any other applicable laws.

## Section 6.17    Authorization for Transaction

On the Effective Date or as soon as reasonably practicable thereafter, the Debtors, and the Reorganized Debtors may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate this Plan or the Transactions, including:  (a) the execution and delivery of appropriate agreements or other documents of merger, consolidation, or reorganization containing terms that are consistent with the terms of this Plan and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of this Plan; (c)

the filing of appropriate certificates of incorporation, merger, or consolidation with the appropriate governmental authorities pursuant to applicable law; and (d) all other actions that the Debtors, or the Reorganized Debtors determine are necessary or appropriate, including the making of filings or recordings in connection with the Transactions, which actions may be set forth in a Plan Supplement exhibit.

**Section 6.18    Preservation of Rights of Action; Settlement**

Except to the extent such rights, Claims, Causes of Action, defenses, and counterclaims are otherwise disposed of in this Plan, the Purchase and Sale Agreement, the Las Vegas Property Purchase Agreement, or are expressly and specifically released in connection with this Plan, the Sale Orders, and/or Confirmation Order, or in any settlement agreement approved during the Bankruptcy Cases, or in any contract, instrument, release, indenture or other agreement entered into in connection with this Plan, in accordance with Bankruptcy Code § 1123(b): (1) any and all rights, Claims, Causes of Action (including Liquidating Trust Avoidance Actions but excluding Retained Claims), defenses, and counterclaims of or accruing to the Debtors or their Estates shall be transferred to the Liquidating Trust, whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such rights, Claims, Causes of Action, defenses and counterclaims have been Scheduled, listed or referred to in this Plan, the Bankruptcy Schedules, or any other document Filed with the Bankruptcy Court; and (2) the Liquidating Trust does not waive, relinquish, or abandon (nor shall it be estopped or otherwise precluded from asserting) any right, Claim, Cause of Action, defense, or counterclaim that constitutes property of the Estates:  (a) whether or not such right, Claim, Cause of Action, defense, or counterclaim has been listed or referred to in this Plan, the Bankruptcy Schedules, the Bankruptcy SOFAs, or any other document Filed with the Bankruptcy Court; (b) whether or not such right, Claim, Cause of Action, defense, or counterclaim is currently known to the Debtors; and (c) whether or not a defendant in any litigation relating to such right, Claim, Cause of Action, defense or counterclaim Filed a Proof of Claim in the Bankruptcy Cases, Filed a notice of appearance or any other pleading or notice in the Bankruptcy Cases, voted for or against this Plan, or received or retained any consideration under this Plan.  Without in any manner limiting the generality of the foregoing, notwithstanding any otherwise applicable principle of law or equity, without limitation, any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, or refer to a right, Claim, Cause of Action, defense, or counterclaim, or potential right, claim, cause of action, defense, or counterclaim, in this Plan, the Bankruptcy Schedules, or any other document Filed with the Bankruptcy Court shall in no manner waive, eliminate, modify, release, or alter the Liquidating Trust's right to commence, prosecute, defend against, settle, and realize upon any rights, Claims, Causes of Action, defenses, or counterclaims that a Debtor has, or may have, as of the Effective Date.  The Liquidating Trust may, subject to this Plan and the Liquidating Trust Agreement, commence, prosecute, defend against, settle, and realize upon any rights, Claims, Causes of Action, defenses, and counterclaims in its sole discretion, in accordance with what is in the best interests, and for the benefit, of the beneficiaries of the various assets in the Liquidating Trust.

**Section 6.19    [Reserved]**

**Section 6.20    Exclusivity Period**

The Debtors shall retain the exclusive right to amend or modify this Plan, and to solicit

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

acceptances of any amendments to or modifications of this Plan, through and until the earlier of (i) the Effective Date or (ii) the expiration of the Debtors' exclusive period to solicit acceptances of this Plan under Bankruptcy Code § 1121(d).

## Section 6.21    Effectuating Documents

The president, chief financial officer, manager, or any other appropriate officer of the Debtors, including specifically Frederick Cooper, Katherine Cooper and Edward Bentzen, or, after the Effective Date, the Reorganized Debtors (or the Liquidating Trustee on behalf of any Reorganized Debtor that is not owned by the Purchaser), shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.  The secretary of the Debtors, or, after the Effective Date, of the Reorganized Debtors (or the Liquidating Trustee on behalf of any Reorganized Debtor that is not owned by the Purchaser), shall be authorized to certify or attest to any of the foregoing actions.  The Debtors are authorized to perform their obligations under the Purchase and Sale Agreement, the Las Vegas Property Purchase Agreement, or any purchase agreement for the sale of the Excluded Assets.

## Section 6.22    Exemption from Certain Transfer Taxes

Pursuant to Bankruptcy Code § 1146(a), the issuance, transfer, or exchange of a security, or the making of delivery of an instrument of transfer, including any transfers effected pursuant to the Purchase and Sale Agreement, the Las Vegas Property Purchase Agreement, any sale of the Excluded Real Properties, or by mergers, provided under this Plan, from the Debtors to the Purchaser, the Reorganized Debtors, or any other Person or Entity pursuant to this Plan or the Purchase and Sale Agreement, the Las Vegas Property Purchase Agreement, or any sale of the Excluded Real Properties, as applicable, may not be taxed under any law imposing a stamp tax or similar tax, and the sale and/or Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for Filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## Section 6.23    Liquidating Trustee Closing of the Bankruptcy Cases.

When (a) the Bankruptcy Court has adjudicated all applications by professionals for final allowances of compensation for services and reimbursement of expenses and the issuance of a Final Order for each application and the payment of all amounts payable thereunder; (b) all Disputed Claims filed against a Debtor have become Allowed Claims or have been Disallowed by Final Order or otherwise pursuant to this Plan, and all appropriate Plan Distributions have been made pursuant to the Plan, the Liquidating Trustee shall seek authority from the Bankruptcy Court to close such Debtor's Bankruptcy Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

# ARTICLE VII

## LIQUIDATING TRUST AND LIQUIDATING TRUSTEE

### Section 7.01    The Creation of the Liquidating Trust

The Liquidating Trust, duly organized under the laws of Nevada, is created for the purpose of liquidating the Liquidating Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d) and shall be governed by the Liquidating Trust Agreement. The Liquidating Trust Agreement shall conform to the terms of this Plan, and to the extent that the Liquidating Trust Agreement is inconsistent with this Plan, the terms of this Plan shall govern. The Liquidating Trustee will file all federal income tax returns for the Liquidating Trust as a grantor trust pursuant to Section 671 of the Internal Revenue Code and the Treasury Regulations promulgated thereunder.

### Section 7.02    Funding of *Res* of Trust

On the Effective Date, all of the Liquidating Trust Assets shall be transferred and assigned to the Liquidating Trust, and the Liquidating Trust shall be in possession of, and have title to, all the Liquidating Trust Assets.  The conveyances of all Liquidating Trust Assets shall be accomplished pursuant to this Plan, the Sale Orders, and/or the Confirmation Order.  The Debtors shall convey, transfer, assign and deliver the Liquidating Trust Assets Free and Clear, except that the Liens of the Senior Secured Lenders shall attach to the Liquidating Trust Assets other than Avoidance Actions and the Excluded Real Properties.  The Liquidating Trustee may present such orders to the Bankruptcy Court as may be necessary to require third parties to accept and acknowledge such conveyance to the Liquidating Trust.  Such orders may be presented without further notice other than as has been given in this Plan.

For all federal income tax purposes, all Persons (including, without limitation, the Debtors and the Liquidating Trustee and the beneficiaries of the Liquidating Trust) will treat the transfer and assignment of the Liquidating Trust Assets to the Liquidating Trust for the benefit of the beneficiaries of the Liquidating Trust as (a) a transfer of the Liquidating Trust Assets directly to the beneficiaries of the Liquidating Trust followed by (b) the transfer by the beneficiaries of the Liquidating Trust to the Liquidating Trust of the Liquidating Trust Assets. The Liquidating Trust will be treated as a grantor trust for federal tax purposes and, to the extent permitted under applicable law, for state and local income tax purposes. The beneficiaries of the Liquidating Trust will be treated as the grantors and owners of their Pro Rata portion of the Liquidating Trust Assets for federal income tax purposes.

### Section 7.03    The Liquidating Trustee

The Liquidating Trustee shall be appointed by mutual consent of the Debtors and the Pre-Petition Agent.  The Liquidating Trustee shall retain and have all the rights, powers and duties necessary to carry out his or her responsibilities under this Plan and the Liquidating Trust Agreement, and as otherwise provided in the Sale Orders and/or the Confirmation Order. However, the Liquidating Trustee shall not be obligated to review, investigate, evaluate, analyze, or object to Fee Applications or Professional Fee Claims relating to services rendered and expenses incurred before the Effective Date.  The Liquidating Trustee shall be the exclusive trustee of the Liquidating Trust Assets for the purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. §

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

6012(b)(3), as well as the representative of the Estates appointed pursuant to Bankruptcy Code § 1123(b)(3)(B). Subject to the Bankruptcy Court's approval and appointment of the selection of the Liquidating Trustee at the Confirmation Hearing, a Person to be designated by the Debtors and the Pre-Petition Agent in the Plan Supplement shall initially serve as the Liquidating Trustee. Matters relating to the appointment, removal and resignation of the Liquidating Trustee and the appointment of any successor Liquidating Trustee shall be set forth in the Liquidating Trust Agreement. The Liquidating Trustee shall be required to perform his or her duties as set forth in this Plan and the Liquidating Trust Agreement.

**Section 7.04    Retention of Professionals**

The Liquidating Trustee shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Liquidating Trustee, are necessary to assist the Liquidating Trustee in the performance of his or her duties. The reasonable fees and expenses of such professionals shall be paid by the Liquidating Trust upon the monthly submission of statements to the Liquidating Trustee. The payment of the reasonable fees and expenses of the Liquidating Trustee's retained professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court except as otherwise provided in this Plan. Professionals of, among others, the Debtors and the Committee (if any), shall be eligible for retention by the Liquidating Trustee on a special counsel basis, and former employees of the Debtors shall be eligible for retention by the Liquidating Trust and Liquidating Trustee.

The reasonable fees and expenses incurred in connection with services performed by the Liquidating Trust relating to the administration and/or liquidation of General Unsecured Claims and/or Liquidating Trust Avoidance Actions shall be paid by the Liquidating Trust solely from amounts otherwise distributable to Holders of Allowed General Unsecured Claims. Before each payment of the Liquidating Trustee's fees, fees and expenses of the Liquidating Trustee's retained professionals and other costs, expenses and liabilities of the Liquidating Trust, the Liquidating Trustee shall provide written notice thereof to the Pre-Petition Agent in such detail and with such support as the Pre-Petition Agent may reasonably request. If the Pre-Petition Agent does not object to the payment of such amounts within five (5) Business Days after receipt of such notice, the Liquidating Trustee may make such payments. If any Pre-Petition Agent objects and the objecting Pre-Petition Agent(s) and the Liquidating Trustee cannot agree on the appropriate amount of such payment, then the Liquidating Trustee may not make such payment unless he or she obtains an order from the Bankruptcy Court approving such payment.

**Section 7.05    Compensation of the Liquidating Trustee**

The Liquidating Trustee's compensation, on a post-Effective Date basis, shall be disclosed in the Plan Supplement. The payment of the fees of the Liquidating Trustee and any professionals retained by the Liquidating Trustee shall be made by the Liquidating Trust in accordance with the provisions of this Plan and the Liquidating Trust Agreement.

**Section 7.06    Liquidating Trust Expenses**

All costs, expenses and obligations incurred by the Liquidating Trustee in administering this Plan and the Liquidating Trust, or in any manner connected, incidental or related thereto shall come from amounts distributable to the appropriate beneficiaries for whose benefit such

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

expenses or obligations were incurred. For example, reasonable costs incurred in resolving Liquidating Trust Avoidance Actions and General Unsecured Claims shall be paid first from amounts otherwise distributable to Holders of Allowed General Unsecured Claims, and expenses incurred in monetizing Other Assets shall be paid first from funds otherwise distributable to the Senior Secured Lenders.

**Section 7.07    Liability; Indemnification**

The Liquidating Trustee shall not be liable for any act or omission taken or omitted to be taken in his or her capacity as the Liquidating Trustee, other than acts or omissions resulting from such Person's willful misconduct, gross negligence or fraud. The Liquidating Trustee may, in connection with the performance of his or her functions, and in his or her sole absolute discretion, consult with attorneys, accountants and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such professionals. Notwithstanding such authority, the Liquidating Trustee shall be under no obligation to consult with attorneys, accountants or his or her agents, and his or her determination to not do so should not result in imposition of liability on the Liquidating Trustee unless such determination is based on willful misconduct, gross negligence or fraud. The Liquidating Trust shall indemnify and hold harmless the Liquidating Trustee and his or her agents, representatives, professionals, and employees from and against and in respect to any and all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidating Trust or the implementation or administration of this Plan; *provided, however*, that no such indemnification will be made to such Persons for such actions or omissions as a result of willful misconduct, gross negligence or fraud.

**Section 7.08    Termination**

The duties, responsibilities and powers of the Liquidating Trustee shall terminate after all Liquidating Trust Assets have been fully resolved, abandoned or liquidated and the Liquidating Trust Assets have been distributed in accordance with this Plan and the Liquidating Trust Agreement; *provided, however*, except in the circumstances set forth below, the Liquidating Trust shall terminate no later than three years after the Effective Date. If warranted by the facts and circumstances provided for in this Plan, and subject to the approval of the Bankruptcy Court upon a finding that an extension is necessary for the purpose of the Liquidating Trust, the term of the Liquidating Trust may be extended, one or more times (not to exceed a total of four extensions, unless the Liquidating Trustee receives a favorable ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Liquidating Trust as a grantor trust for federal income tax purposes) for a finite period, not to exceed six months, based on the particular circumstances at issue. Each such extension must be approved by the Bankruptcy Court within two months prior to the beginning of the extended term with notice thereof to all of the unpaid beneficiaries of the Liquidating Trust. Upon the occurrence of the termination of the Liquidating Trust, the Liquidating Trustee shall File with the Bankruptcy Court, a report thereof, seeking discharge of the Liquidating Trustee.

**Section 7.09    Liquidating Trustee Authority**

(a)    <u>Compromise of Claims</u>. The Liquidating Trust shall have full authority to

41

compromise Claims or settle interests without supervision by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan, the Confirmation Order, and the Liquidating Trust Agreement, including but not limited to the restrictions set forth in Section 11.01 of this Plan.  As to any Claims that may arise or exist after the Effective Date relating to or arising out of the Purchase and Sale Agreement, the Liquidating Trustee shall not compromise or resolve any such Claims without the express written consent of the Pre-Petition Agent.

(b)    Payment of Professional Fees. Without limiting the generality of the foregoing, and except as otherwise set forth in this Plan, the Liquidating Trust may, without application to or approval by the Bankruptcy Court, pay fees that it incurs after the Effective Date for professional fees and expenses.  Before settling or compromising any Plan Carve Out Claims or interests related thereto, the Liquidating Trustee shall provide written notice to the Pre-Petition Agent of the terms and conditions of the proposed settlement or compromise.

(c)    Request for Expedited Tax Review. The Liquidating Trustee shall have the right to request an expedited determination under Bankruptcy Code § 505(b) with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

(d)    Access and Preservation of Records. The Liquidating Trustee shall be granted reasonable access during normal business hours with prior notice to, among other things, the offices, books, and records relating to the Debtors or any of their businesses or operations that are in possession of the Purchaser and the Purchaser shall preserve records, all to the extent and on the terms of the Stalking Horse SPA.

## ARTICLE VIII

## PROVISIONS GOVERNING DISTRIBUTIONS GENERALLY

### Section 8.01    Timing and Delivery of Distributions

The Liquidating Trust Agreement shall govern distributions from the Liquidating Trust and shall include the terms of the other sections of this Article VIII and other relevant provisions of this Plan.

### Section 8.02    Method of Cash Distributions

Any Cash payment to be made pursuant to this Plan may be made by Cash, draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law at the option of and in the sole discretion of the Liquidating Trustee, except for Cash payments made to the Pre-Petition Agent, which shall be made by wire transfer or such other method as shall be specified by such Persons.

### Section 8.03    Failure to Negotiate Checks

Checks issued in respect of distributions under this Plan shall be null and void if not negotiated within sixty (60) days after the date of issuance.  The Liquidating Trustee shall hold any amounts returned in respect of such non-negotiated checks.  The Holder of an Allowed

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

Claim with respect to which such check originally was issued shall make requests for reissuance for any such check directly to the Liquidating Trustee. All amounts represented by any voided check will be held until the later of one (1) year after (x) the Effective Date or (y) the date that a particular Claim is Allowed by Final Order, and all requests for reissuance by the Holder of the Allowed Claim in respect of a voided check are required to be made before such date. Thereafter, all such amounts shall be deemed to be Unclaimed Property, and all Claims in respect of void checks and the underlying distributions shall be forever barred, estopped and enjoined from assertion in any manner against the Liquidating Trustee.

**Section 8.04    Fractional Dollars**

Notwithstanding any other provision of this Plan, Cash distributions of fractions of dollars will not be made; rather, whenever any payment of a fraction of a dollar would be called for, the actual payment made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down. To the extent that Cash remains undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash shall be treated as Unclaimed Property pursuant to Section 8.03 of this Plan.

**Section 8.05    Compliance with Tax Requirements**

With respect to any Person from whom a tax identification number, certified tax identification number or other tax information required by law has not been received by the Liquidating Trustee within thirty (30) days from the date of such request (the "Initial Request"), the Liquidating Trustee may, at its option, withhold the amount required to such Person and decline to make such distribution until the information is received. Failure of any Person to provide the information requested within six months of the Initial Request shall result in the forfeit of the affected distribution and the treatment of said distribution as Unclaimed Property.

**Section 8.06    *De Minimis* Distributions**

No Cash payment of less than twenty-five ($25.00) dollars shall be made to the Holder of any Claim on account of its Allowed Claim.

**Section 8.07    Setoffs**

Except for any Claim that is Allowed in an amount set forth in this Plan (including the Allowed Senior Secured Claims), the Debtors or the Liquidating Trustee may, but shall not be required to, set off against any Claims and the payments or distributions to be made pursuant to this Plan in respect of such Claims, any and all debts, liabilities and claims of every type and nature whatsoever that the Estate or a Debtor may have against the Holder of any Claim, but neither the failure to do so nor the Allowance of any such Claims, whether pursuant to this Plan or otherwise, shall constitute a waiver or release by any Debtor of any such claims the Debtor may have against such Holder of any Claim, and all such claims shall be reserved for and retained by the Liquidating Trustee.

**Section 8.08    Distribution Record Date**

As of the close of business on the fifth (5th) Business Day following the Effective Date (the "Distribution Record Date"), all transfer ledgers, transfer books, registers and any other

records maintained by the designated transfer agents with respect to ownership of any Claims will be closed and, for purposes of this Plan, there shall be no further changes in the record holders of such Claims. The Liquidating Trustee shall have no obligation to recognize the transfer of any Claims occurring after the Distribution Record Date, and will be entitled for all purposes to recognize and deal only with the Holder of any Claim as of the close of business on the Distribution Record Date, as reflected on such ledgers, books, registers or records.

## ARTICLE IX

## RESERVES ADMINISTERED BY THE LIQUIDATING TRUST

### Section 9.01    Establishment of Reserve Accounts, Other Assets and Beneficiaries

The Liquidating Trustee shall establish the Claims Reserve (which, notwithstanding anything to the contrary contained in this Plan, may be effected by either establishing a segregated account or establishing book entry accounts, in the sole discretion of the Liquidating Trustee), and such other accounts as may be or become necessary.

### Section 9.02    Undeliverable Distribution Reserve

(a)    Deposits. If a distribution to any holder of an Allowed Claim is returned to the Liquidating Trustee as undeliverable or is otherwise unclaimed, such distribution shall be deposited in a segregated, interest-bearing account, designated as an "Undeliverable Distribution Reserve," for the benefit of such holder until such time as such distribution becomes deliverable, is claimed or is deemed to have been forfeited in accordance with Section 8.03, Section 8.05, and Section 9.02(b) of this Plan.

(b)    Forfeiture. Any holder of an Allowed Claim that does not assert a claim pursuant to this Plan for an undeliverable or unclaimed distribution within one year after the first distribution is made to such holder shall be deemed to have forfeited its claim for such undeliverable or unclaimed distribution and shall be forever barred and enjoined from asserting any such claim for the undeliverable or unclaimed distribution against any Debtor, any Reorganized Debtor, any Estate, the Liquidating Trustee, the Liquidating Trust, or their respective properties or assets. In such cases, any Cash or other property held by the Liquidating Trust in the Undeliverable Distribution Reserve for distribution on account of such claims for undeliverable or unclaimed distributions, including the interest that has accrued on such undeliverable or unclaimed distribution while in the Undeliverable Distribution Reserve, shall become Unclaimed Property, notwithstanding any federal or state escheat laws to the contrary and shall be available for immediate distribution by the Liquidating Trust according to Section 4.2 of this Plan.

(c)    Disclaimer. The Liquidating Trustee and his or her respective agents and attorneys are under no duty to take any action to either (i) attempt to locate any Claim Holder, or (ii) obtain an executed Internal Revenue Service Form W-9 or other form required by law from any Claim Holder.

### Section 9.03    Claims Reserve

Contemporaneously with the Closing and on the Effective Date, the Debtors shall transfer

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

the amount required from Available Cash to fund the Claims Reserve as described in Section 6.02 of this Plan.

## ARTICLE X

## EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND OTHER AGREEMENTS

### Section 10.01 Assumption/Rejection

On the Effective Date, and to the extent permitted by applicable law, all of the Debtors' executory contracts and unexpired leases will be rejected unless such executory contract or unexpired lease:  (a) is a Desired 365 Contract; (b) is the subject of a motion to assume Filed on or before the Confirmation Date; or (c) has been previously rejected or assumed.

### Section 10.02 Cure Amounts

The Bid Procedures and Sale Motion contemplates that Desired 365 Contracts will be assumed by the Debtors and/or assigned to the Purchaser pursuant to the Sale Order and/or the Confirmation Order.  In accordance with the Bid Procedures, as part of the Plan Supplement, the Debtors will File a list of the Desired 365 Contracts along with the proposed Cure Costs.  Any party taking exception to the proposed Cure Costs shall, in accordance with the Bid Procedures Order, File a detailed statement setting forth its reason and the Bankruptcy Court shall determine the proper amount of the Cure Costs at the Combined Hearing.  The fixing of the Cure Costs shall constitute the Debtors' right to assign the Desired 365 Contract lease to the Purchaser under Bankruptcy Code §§ 365(c) and (f).

### Section 10.03 Assumed Executory Contracts and Unexpired Leases

Each Desired 365 Contract will include (a) all amendments, modifications, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease; and (b) with respect to any executory contract or unexpired lease that relates to the use, ability to acquire, or occupancy of real property, all executory contracts or unexpired leases and other rights appurtenant to the property, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, and any other equity interests in real estate or rights *in rem* related to such premises, unless any of the foregoing agreements have been rejected pursuant to an order of the Bankruptcy Court or are the subject of a motion to reject Filed on or before the Confirmation Date.

Amendments, modifications, supplements, and restatements to executory contracts and unexpired leases that have been executed by the Debtors during their Bankruptcy Cases shall not be deemed to alter the pre-petition nature of the executory contract or unexpired lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

### Section 10.04 Insurance Policies

All insurance policies pursuant to which the Debtors have any obligations in effect as of the date of the Confirmation Hearing shall be deemed and treated as executory contracts

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

pursuant to the Plan and shall be assumed by the Reorganized Debtors if scheduled as a Desired 365 Contract to be assumed or otherwise by the Liquidating Trust.

## Section 10.05 Pass-through

Except as otherwise provided in this Plan, any rights or arrangements necessary or useful to the administration of the Liquidating Trust but not otherwise addressed as a Claim or Interest, and other executory contracts not assumable under Bankruptcy Code § 365(c), shall, in the absence of any other treatment under this Plan, the Purchase and Sale Agreement, the Sale Order and/or the Confirmation Order, be passed through the Bankruptcy Cases for the benefit of the Liquidating Trust and the counterparty unaltered and unaffected by the Bankruptcy Cases.

## Section 10.06 Claims Based on Rejection of Executory Contracts and Unexpired Leases

Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of the Debtors' executory contracts and unexpired leases pursuant to this Plan or otherwise must be Filed no later than thirty (30) days after the later of the Effective Date or the date a Final Order is entered granting the rejection. Any Proofs of Claim arising from the rejection of the Debtors' executory contracts or unexpired leases that are not timely Filed shall be disallowed automatically, forever barred from assertion, and shall not be enforceable against any Debtor or the Liquidating Trust without the need for any objection by any Person or further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of the executory contract or unexpired lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Bankruptcy Schedules or a Proof of Claim to the contrary. All Allowed Claims arising from the rejection of the Debtors' executory contracts and unexpired leases shall be classified as General Unsecured Claims for the particular Debtor in question and shall be treated in accordance with the particular provisions of this Plan for such Debtor; *provided however*, if the Holder of an Allowed Claim for rejection damages has an unavoidable security interest in any Collateral to secure obligations under such rejected executory contract or unexpired lease, the Allowed Claim for rejection damages shall be treated as an Other Secured Claim to the extent of the value of such Holder's interest in the Collateral, with the deficiency, if any, treated as a General Unsecured Claim.

## Section 10.07 Reservation of Rights

Nothing contained in this Plan shall constitute an admission by the Debtors that any such Desired 365 Contract is in fact an executory contract or unexpired lease or that any Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors, the Liquidating Trustee, or the Reorganized Debtors, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter and to provide appropriate treatment of such contract or lease.

## Section 10.08 Nonoccurrence of Effective Date

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request by the Debtors to extend the deadline for assuming or rejecting unexpired leases pursuant to Bankruptcy Code § 365(d)(4).

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

# ARTICLE XI

## PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS

### Section 11.01 Expunging of Certain Claims

All Claims marked or otherwise Scheduled as contingent, unliquidated or disputed on the Bankruptcy Schedules and for which no Proof of Claim has been timely filed, shall be deemed Disallowed Claims and such Claims shall be expunged as of the Effective Date without the necessity of filing a claim objection and without further notice to, or action, order or approval of the Bankruptcy Court.

### Section 11.02 Objections to Claims

(a)     Authority. The Debtors, the Reorganized Debtors, or the Liquidating Trustee (as applicable) and the Pre-Petition Agent shall have the exclusive authority to File objections to the Plan Carve Out Claims, and to withdraw any objections to such Claims that they File.     The Debtors or the Liquidating Trustee (as applicable) shall have the exclusive authority to settle, compromise, or litigate to judgment any objections to Disputed Plan Carve Out Claims, (i) if they have the prior written consent of Pre-Petition Agent, (ii) if they have given detailed written notice of the proposed settlement, compromise or litigation to the Pre-Petition Agent and the Pre-Petition Agent has not objected thereto within five (5) Business Days after receipt of such notice, or (iii) upon the order of the Bankruptcy Court after the Pre-Petition Agent has had notice and an opportunity to object. The Debtors, the Reorganized Debtors or the Liquidating Trustee, as applicable, shall have the exclusive authority to File, settle, compromise, withdraw, or litigate to judgment any objections to other Claims. Except as set forth above, from and after the Effective Date, the Liquidating Trustee may settle or compromise any Disputed Claim without approval of the Bankruptcy Court. Except as set forth above, the Liquidating Trustee also shall have the right to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

(b)     Objection Deadline. As soon as practicable, but no later than the Claim Objection Deadline, the Liquidating Trustee or the Pre-Petition Agent may File objections with the Bankruptcy Court and serve such objections on the Creditors holding the Claims to which such objections are made. Nothing contained herein, however, shall limit the right of the Liquidating Trustee or the Pre-Petition Agent to object to Claims, if any, Filed or amended after the Claim Objection Deadline. The Claim Objection Deadline may be extended by the Bankruptcy Court upon motion by the applicable Debtor, Reorganized Debtor or the Liquidating Trustee, as the case may be, or the Pre-Petition Agent.

### Section 11.03 Estimation of Claims

The Liquidating Trustee may (after the Pre-Petition Agent's prior written consent in the case of Disputed Plan Carve Out Claims) at any time request that the Bankruptcy Court estimate any such Disputed Claim pursuant to Bankruptcy Code § 502(c), regardless of whether the Liquidating Trustee or any Debtor, Reorganized Debtor or the Pre-Petition Agent has previously objected to such Claim or whether the Bankruptcy Court has ruled on any objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

concerning any objection to any Claim, including during the pendency of any appeal related to any such objection. In the event the Bankruptcy Court estimates any Disputed Claim, that estimated amount will constitute the maximum limitation on such Claim, as determined by the Bankruptcy Court and the Liquidating Trustee (and the Pre-Petition Agent in the case of the Disputed Plan Carve Out Claims) may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another. Disputed Plan Carve Out Claims may be estimated and thereafter resolved by any permitted mechanism (i) if it has the Pre-Petition Agent's prior written consent, (ii) if the Pre-Petition Agent has received a detailed written notice of the proposed estimation and resolution and the Pre-Petition Agent has not objected thereto within five (5) Business Days after receipt of such notice, or (iii) upon the order of the Bankruptcy Court after the Pre-Petition Agent has had notice and an opportunity to object. Other Claims may be estimated and thereafter resolved as the Liquidating Trustee may deem appropriate.

### Section 11.04 No Distributions Pending Allowance

Notwithstanding any other provision of this Plan, no payments or distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim.

### Section 11.05 Distributions After Allowance

The Liquidating Trustee shall make payments and distributions from the appropriate account (whether the Claims Reserve in the case of Allowed Plan Carve Out Claims, or in the case of all other Allowed Claims, from such other funds to each Holder of a Disputed Claim that has become an Allowed Claim in accordance with the provisions of this Plan governing the class of Claims to which such Holder belongs. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing all or part of any Disputed Claim becomes a Final Order, the Liquidating Trustee shall distribute to the Holder of such Claim the distribution (if any) that would have been made to such Holder on the Distribution Date had such Allowed Claim been allowed on the Distribution Date. After a Disputed Claim is Allowed or otherwise resolved, the excess Cash or other property that was reserved on account of such Disputed Claim, if any, shall become a Liquidating Trust Asset for the benefit of other Allowed Claims of the Class or Classes for which the distribution reserve was created.

### Section 11.06 Reduction of Claims

Notwithstanding the contents of the Bankruptcy Schedules or the Bankruptcy SOFAs, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtors before the Effective Date, including pursuant to orders of the Bankruptcy Court. To the extent such payments are not reflected in the Bankruptcy Schedules or the Bankruptcy SOFAs, such Bankruptcy Schedules and Bankruptcy SOFAs will be deemed amended and reduced to reflect that such payments were made. Nothing in this Plan shall preclude the Liquidating Trustee from paying Claims that the Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court before the Effective Date.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

# ARTICLE XII

## CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THIS PLAN

**Section 12.01 Conditions Precedent to Confirmation**

The following are conditions precedent to the occurrence of Confirmation, each of which must be satisfied or waived in accordance with Section 12.04 below:

(a)     The Bankruptcy Court shall have entered an order, in form and substance reasonably acceptable to the Debtors, approving the adequacy of the Disclosure Statement, and such Order shall have become a Final Order.

(b)     The Confirmation Order approving and confirming this Plan, as such Plan may have been modified, amended or supplemented, shall (i) be in form and substance reasonably acceptable to the Debtors, the Pre-Petition Agent and the Purchaser; and (ii) include a finding of fact that the Debtors, the Purchaser, the Stalking Horse, the Reorganized Debtors, and their respective present and former members, officers, directors, managers, employees, advisors, attorneys and agents (except for the Excluded Persons), acted in good faith within the meaning of and with respect to all of the actions described in Bankruptcy Code § 1125(e) and are therefore not liable for the violation of any applicable law, rule, or regulation governing such actions.

(c)     If the Purchaser purchases the Acquired Property and/or the Las Vegas Property pursuant to the Sale Orders, the Bankruptcy Court shall have entered the Sale Orders, as applicable, in form and substance reasonably acceptable to the Debtors, the Pre-Petition Agent, and the Purchaser.

**Section 12.02 Occurrence of the Effective Date**

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with Section 12.04 below:

(a)     The Confirmation Order shall have been entered in form and substance reasonably acceptable to the Debtors, Pre-Petition Agent, and the Purchaser, and such Order shall have become a Final Order and must, among other things, provide that:  (i) the Debtors and the Liquidation Trustee are authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan; and (ii) the provisions of the Confirmation Order are non-severable and mutually dependent.

(b)     If the Purchaser purchases the Acquired Property pursuant to the Sale Order and/or the Las Vegas Property pursuant to a Las Vegas Property Sale Order, the Sale Orders, as applicable, shall have been entered in form and substance reasonably acceptable to the Debtors, the Pre-Petition Agent, and the Purchaser and such order(s) shall have become a Final Order(s).

(c)     The Purchaser shall have provided written evidence satisfactory to the Debtors and the Pre-Petition Agent that simultaneous with the occurrence of the Effective Date, the

49

Purchaser is prepared to close the Transactions.

    (d)    The Closing shall have occurred pursuant to the Purchase and Sale Agreement and with respect to the Las Vegas Property, the Las Vegas Property Purchase Agreement.

    (e)    The Liquidating Trust Agreement shall have been fully executed in form and substance reasonably acceptable to the Debtors and the Pre-Petition Agent.

    (f)    All authorizations, consents, and regulatory approvals required, if any, in connection with the Effective Date shall have been obtained.

    (g)    There shall not be in effect any (i) order entered by any court of any competent jurisdiction; (ii) any order, opinion, ruling or other decision entered by any administrative or governmental entity or (iii) applicable law, staying, restraining, enjoining or otherwise prohibiting or making illegal the consummation of any of the Transactions contemplated by this Plan.

## Section 12.03 Substantial Consummation

On the Effective Date, this Plan shall be deemed to be substantially consummated under Bankruptcy Code §§ 1101 and 1127(b).

## Section 12.04 Waiver of Conditions

Each of the conditions set forth in Section 12.01 or Section 12.02 hereof may be waived in whole or in part by the Debtors with the prior written consent of the Pre-Petition Agent (and the Purchaser, if applicable), which consent shall not be unreasonably withheld. The failure to satisfy or waive any condition to Confirmation or the Effective Date may be asserted by the Debtors, Purchaser, or the Pre-Petition Agent regardless of the circumstances giving rise to the failure of such condition to be satisfied.

## Section 12.05 Revocation, Withdrawal, or Non-Consummation

The Debtors reserve the right to revoke or withdraw this Plan at any time before the Confirmation Date and to File subsequent plans of reorganization. If the Debtors revoke or withdraw this Plan, or if Confirmation or Consummation of this Plan does not occur, then (i) this Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in this Plan (including the fixing, allowance or limiting to an amount certain of any Claim or Interests or Class of Claims or Interests), unless otherwise agreed to by the Debtors and any counterparty to such settlement or compromise, and any document or agreement executed pursuant to this Plan, shall be deemed null and void; (iii) nothing contained in this Plan, and no acts taken in preparation for Consummation of this Plan, shall (a) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Person, (b) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or (c) constitute an admission of any sort by the Debtors or any other Person; and (iv) the rights and remedies of the Stalking Horse pursuant to the Expense Reimbursement Order shall survive and remain in full force and effect.

**LARSON & ZIRZOW, LLC**
**810 S. Casino Center Blvd. #101**
**Las Vegas, Nevada 89101**
**Tel: (702) 382-1170   Fax: (702) 382-1169**

# ARTICLE XIII

## AMENDMENTS AND MODIFICATIONS

The Debtors may alter, amend, or modify this Plan, the Plan Documents, or any Exhibits thereto under Bankruptcy Code § 1127(a) at any time before the Confirmation Date; *provided, however*, that where this Plan requires a document to be acceptable to, consented to, agreed to or otherwise satisfactory to Pre-Petition Agent or the Purchaser, the Debtors may not modify such document without the written consent of Pre-Petition Agent or the Purchaser, as applicable. Further, if any amendment, modification or supplement to the Plan (including the Plan Supplement or a modification described in this Article XIII of the Plan) or any Exhibit hereto or thereto is made without the prior written consent of the Senior Secured Lenders, then notwithstanding any other agreement to the contrary, the Senior Secured Lenders shall have no obligation to support, or take any actions in support of, the Plan. After the Confirmation Date and before "substantial consummation" of this Plan, as defined in Bankruptcy Code § 1101(2), the Debtors may, under Bankruptcy Code § 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement, the Sale Orders, Bid Procedures Order, or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of this Plan, so long as such proceedings do not (i) materially adversely affect the treatment of Holders of Claims or Interests under this Plan or (ii) modify any provision of the Purchase and Sale Agreement or any of the Purchaser's rights thereunder; *provided, however*, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

# ARTICLE XIV

## RETENTION OF JURISDICTION

Under Bankruptcy Code §§ 105(a) and 1142, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Bankruptcy Cases and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

A.    Allow, disallow, determine, liquidate, classify, estimate or establish the priority or Secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the Secured or unsecured status, priority, amount or allowance of Claims or Interests;

B.    Hear and determine all applications for compensation and reimbursement of expenses of Professionals under Bankruptcy Code §§ 327, 328, 330, 331, 503(b), 1103 or 1129(a)(4); *provided, however*, that from and after the Effective Date, the payment of fees and expenses of professionals retained by the Reorganized Debtors and/or the Liquidating Trustee shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court except as otherwise set forth in this Plan;

C.    Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which one or more of the Debtors are parties or with respect to which one or more of the Debtors may be liable, including, if necessary, the nature or amount of any required cure or the liquidating of any claims arising therefrom;

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

D.    Hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Bankruptcy Cases;

E.    Enter and enforce such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of this Plan and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan, the Disclosure Statement, the Sale Orders, and/or the Confirmation Order;

F.    Hear and determine disputes arising in connection with the interpretation, implementation, Consummation, or enforcement of this Plan, including disputes arising under agreements, documents or instruments executed in connection with this Plan;

G.    Consider any modifications of this Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

H.    Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, Consummation, or enforcement of this Plan, the Sale Orders, and/or the Confirmation Order;

I.    Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

J.    Hear and determine any matters arising in connection with or relating to this Plan, the Disclosure Statement, the Sale Orders, and/or the Confirmation Order, the Purchase and Sale Agreement, the Las Vegas Property Purchase Agreement, the Liquidating Trust Agreement, or any other contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement, the Sale Orders, and/or the Confirmation Order;

K.    Hear and determine any disputes regarding the interpretation or implementation of the Purchase and Sale Agreement;

L.    Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Bankruptcy Cases or pursuant to this Plan;

M.    Recover all assets of the Debtors and property of the Estates, wherever located;

N.    Hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code §§ 346, 505, and 1146;

O.    Hear and determine all disputes involving the existence, nature, or scope of Debtors' discharge or any releases granted in this Plan;

P.    Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

Q.    Enter an order or final decree concluding or closing the Bankruptcy Cases; and

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

R.      Enforce all orders previously entered by the Bankruptcy Court.

## ARTICLE XV

## EFFECT OF THIS PLAN ON CLAIMS AND INTERESTS

**Section 15.01 Compromise and Settlement**

Except for those Avoidance Actions and Causes of Action transferred to the Liquidating Trust, pursuant to Bankruptcy Code § 363 and Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under this Plan, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims, Interests and controversies resolved pursuant to this Plan, including, without limitation, all Claims arising before the Petition Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to or in connection with the business or affairs of, or transactions with, the Debtors.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in this Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the Estates, Creditors and other parties in interest, and are fair, equitable and within the range of reasonableness.

**Section 15.02 Satisfaction of Claims**

The rights afforded in this Plan and the treatment of all Claims and Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever against the Debtors or any of their Estates, assets, properties, or interests in property; *provided*, *however*, that all Liens and Allowed Claims of the Pre-Petition Agent and the Senior Secured Lenders shall survive and remain attached to all of their Collateral (or the proceeds thereof) not sold to the Purchaser pursuant to the Purchase and Sale Agreement (including any assets comprising their Collateral, or the proceeds thereof, that are transferred to the Liquidating Trust) until the Allowed Senior Secured Claims are paid in full in cash.  Except as otherwise provided herein (including in the immediately preceding sentence), on the Effective Date, all Claims against and Interests in the Debtors shall be satisfied, discharged, and released in full.  None of the Debtors, the Reorganized Debtors, or the Reorganized Debtors' Affiliates, shall be responsible for any pre-Effective Date obligations of the Debtors or the Reorganized Debtors, except those expressly assumed by the Debtors or the Reorganized Debtors, as applicable.  Except as otherwise provided herein, all Persons and Entities shall be precluded and forever barred from asserting against the Debtors, the Reorganized Debtors and the Affiliates of the Reorganized Debtors, their respective successors or assigns, or their Estates, assets, properties, or interests in property any event, occurrence, condition, thing, or other or further Claims or Causes of Action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence before the Effective Date, whether or not the facts of or legal bases therefore were known or existed before the Effective Date.

**Section 15.03 Discharge of Liabilities**

Pursuant to Bankruptcy Code § 1141(d), and except as otherwise specifically provided in this Plan, the Sale Orders, and/or the Confirmation Order, the distributions, rights, and treatment

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

that are provided in this Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of all Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors before the Effective Date and that arise from a termination of employment or a termination of any employee or retiree benefit program, regardless of whether such termination occurred before or after the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in Bankruptcy Code §§ 502(g), 502(h), or 502(i), in each case whether or not: (a) a Proof of Claim or Interest based upon such debt, right, Claim, or Interest is Filed or deemed Filed pursuant to Bankruptcy Code § 501; (b) a Claim or Interest based upon such Claim, debt, right, or Interest is Allowed pursuant to Bankruptcy Code § 502; or (c) the Holder of such a Claim or Interest has accepted this Plan. Subject to the terms of this Plan, the Sale Orders and/or the Confirmation Order, any default by the Debtors with respect to any Claim or Interest that existed immediately before or on account of the Filing of the Bankruptcy Cases shall be deemed satisfied on the Effective Date. Subject to the terms of this Plan, the Sale Orders, and/or the Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring. Subject to the terms of this Plan, the Sale Orders, and/or the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtors, their Estates, the Reorganized Debtors and all successors thereto. As provided in Bankruptcy Code § 524, subject to the terms of this Plan, the Sale Orders, and/or the Confirmation Order, such discharge shall void any judgment against the Debtors, their Estates, the Reorganized Debtors or any successors thereto at any time obtained to the extent it relates to a Claim or Interest discharged, and operates as an injunction against the prosecution of any action against the Reorganized Debtors or their respective property and assets to the extent it relates to a discharged Claim or Interest. Notwithstanding any of the foregoing to the contrary, all Liens and Allowed Claims of the Pre-Petition Agent and the Senior Secured Lenders shall survive and remain attached to all of their Collateral (or the proceeds thereof) not sold to the Purchaser pursuant to the Purchase and Sale Agreement (including any assets comprising their Collateral, or the proceeds thereof, that are transferred to the Liquidating Trust), and shall not be deemed discharged, satisfied or released, until the Allowed Senior Secured Claims are paid in full in cash.

**Section 15.04 Release of Stalking Horse**

On or after the Effective Date, the Debtors, on behalf of themselves and their respective Affiliates (including the Liquidating Trust) shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released (i) the Stalking Horse, (ii) the Stalking Horse's Affiliates, current directors, managers, officers, employees, attorneys, and other representatives, in their capacities as such; and (iii) legal and financial advisors of the Stalking Horse, from any and all Claims, interests, obligations, rights, suits, damages, losses, costs and expenses, actions, Causes of Action, remedies, and liabilities of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, suspected or unsuspected, matured or unmatured, fixed or contingent, in law, equity, or

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

otherwise, that the Debtors' and their Affiliates (including the Liquidating Trust) or any Entity claiming by or through the Debtors or their subsidiaries and affiliates ever had, now has or hereafter can, shall or may have, or otherwise be legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, through the Closing, save and except for Actions and/or continuing obligations under, in connection with or relating to the Expense Reimbursement Order, the Purchase and Sale Agreement, the Las Vegas Property Purchase Agreement (if applicable), the Las Vegas Property Sale Order (if applicable), the Sale Order, and/or the Confirmation Order.

**Section 15.05 Exculpation**

The Exculpated Parties shall not be liable for any cause of action arising in connection with or out of the administration of the Bankruptcy Cases, the planning of the Bankruptcy Cases, the formulation, negotiation or implementation of this Plan, the good faith solicitation of acceptances of this Plan in accordance with Bankruptcy Code § 1125(e), pursuit of Confirmation of this Plan, the Consummation of this Plan, or the administration of this Plan or the Acquired Property to be sold pursuant to the Purchase and Sale Agreement, or the Excluded Assets to be sold pursuant to any other sale agreement, or to be distributed under this Plan, except for gross negligence or willful misconduct as determined by a Final Order of the Bankruptcy Court. All Holders of Claims and Interests are enjoined from asserting or prosecuting any Claim or cause of action against any protected Person as to which such Exculpated Party has been exculpated from liability pursuant to the preceding sentence.

**Section 15.06 Permanent Injunction**

Except as otherwise expressly provided in this Plan, the Purchase and Sale Agreement, any purchase agreement for the Excluded Real Property, or the Confirmation Order, all Person and Governmental Units (each as defined in the Bankruptcy Code) who have held, hold or may hold Claims against, or Interests in, the Debtors are permanently enjoined, on and after the Effective Date, to the fullest extent permissible under applicable law, as such law may be extended and integrated after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Interest; (b) the enforcement, attachment, collection, or recovery by any manner or means of judgment, award, decree or order against any of the Exculpated Parties on account of any such Claim or Interest; (c) creating, perfecting, or enforcing any encumbrance of any kind against any of the Exculpated Parties or against the property or interests in property of such Exculpated Parties on account of any such Claim or Interest; and (d) asserting any right of setoff, recoupment or subrogation of any kind against any obligation due from any Exculpated Party or against the property or interests in property of any of the Exculpated Parties on account of any such Claim or Interest.  The foregoing injunction will extend to successors of any of the Exculpated Parties and their respective property and interests in the property.

Notwithstanding anything to the contrary contained in this Section 15.06, the injunctions set forth in this Section 15.06 shall not, and shall not be deemed to, limit, abridge or otherwise affect the rights of the Reorganized Debtors, the Stalking Horse, the Liquidating Trust, or the Purchaser to enforce, sue on, settle or compromise the rights, claims and other matters expressly retained by the Reorganized Debtors, the Stalking Horse, the Liquidating Trust or the Purchaser pursuant to this Plan or the Purchase and Sale Agreement and related orders.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

**Section 15.07 Setoffs**

Except as otherwise expressly provided for in this Plan, pursuant to the Bankruptcy Code (including Bankruptcy Code § 553), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim or Interest, each Debtor or each Reorganized Debtor may setoff against any Allowed Claim or Interest (other than the Allowed Senior Secured Claims) and the distributions to be made pursuant to this Plan on account of such Allowed Claim or Interest (before such distribution is made), any Claims, rights, and Causes of Action of any nature that such Debtor or Reorganized Debtor, as applicable, may hold against the Holder of such Allowed Claim or Interest, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or before the Effective Date (whether pursuant to this Plan or otherwise); *provided, however*, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to this Plan shall constitute a waiver or release by such Debtor or Reorganized Debtor of any such Claims, rights, and Causes of Action that such Debtor may possess against such Holder.  In no event shall any Holder of Claims or Interests be entitled to setoff any Claim or Interest against any Claim, right, or cause of action of the Debtors or Reorganized Debtors, as applicable, unless such Holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to Bankruptcy Code § 553 or otherwise.

**Section 15.08 Recoupment**

Except as provided in this Plan, any Holder of a Claim or Interest shall not be entitled to recoup any Claim or Interest against any Claim, right, or cause of action of the Debtors or Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

**Section 15.09 Release of Liens**

Except as otherwise provided in this Plan or in any contract, instrument, release, or other agreement or document created pursuant to this Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to this Plan and, in the case of a Secured Claim, satisfaction in full in cash of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtors' Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the applicable Debtor and its successors and assigns.

**Section 15.10 Good Faith**

As of the Confirmation Date, the Debtors shall be deemed to have solicited acceptance or rejections of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

**Section 15.11 Rights of Defendants and Avoidance Actions**

All rights, if any, of a defendant to assert a Claim arising from relief granted in an Avoidance Action, together with the Liquidating Trustee's right to oppose such Claim are fully preserved. Any such Claim that is Allowed shall be entitled to treatment and distribution under this Plan as a General Unsecured Claim.

## ARTICLE XVI

## MISCELLANEOUS PROVISIONS

**Section 16.01 Severability of Plan Provisions**

If, before Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**Section 16.02 Successors and Assigns**

The rights, benefits and obligations of any Person named or referred to in this Plan, including any Holder of a Claim, shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

**Section 16.03 Binding Effect**

This Plan shall be binding upon and inure to the benefit of the Debtors, all present and former Holders of Claims against and Interests in the Debtors, their respective successors and assigns, including, but not limited to, the Debtors, and all other parties-in-interest in these Bankruptcy Cases.

**Section 16.04 Notices**

Any notice, request, or demand required or permitted to be made or provided under this Plan to or upon the Debtors, the Reorganized Debtors, or the Pre-Petition Agent shall be (i) in writing; (ii) served by (a) certified mail, return receipt requested, (b) hand delivery, (c) overnight delivery service, (d) first class mail, or (e) facsimile transmission; and (iii) deemed to have been duly given or made when actually delivered or, in the case of facsimile transmission, when received and telephonically confirmed, addressed as follows:

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

**LARSON & ZIRZOW, LLC**
**810 S. Casino Center Blvd. #101**
**Las Vegas, Nevada 89101**
**Tel: (702) 382-1170   Fax: (702) 382-1169**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>If to the Debtors</u>:
Western Funding Incorporated
Attention:  Frederick Cooper
3915 East Patrick Lane
Las Vegas, Nevada 89120

With a copy to (which shall not constitute notice):
Larson & Zirzow, LLC
Attention:  Matthew C. Zirzow, Esq.
810 S. Casino Center Blvd, Suite 101
Las Vegas, Nevada 89101
Phone:  (702) 382-1170
Fax: (702) 382-1169


<u>If to the Pre-Petition Agent</u>:
Sue R. Blazis
BMO Financial Group
111 W. Monroe, Floor 12 West
Chicago, IL 60603
Phone:  (312) 461-6825
Fax:  (312) 461-7958

With a copy to (which shall not constitute notice):
Chapman & Cutler, LLP
Attention:  David T.B. Audley, Esq.
111 West Monroe Street
Chicago, IL 60603
Phone:  (312) 845-2971
Fax:  (312) 516-3971

and

Lionel Sawyer & Collins
Attn:  Rodney M. Jean and Ryan A. Anderson
300 South Fourth Street, Suite 1700
Las Vegas, NV 89101
Phone:  (702) 383-8888
Fax: (702) 383-8845


<u>If to Reorganized Debtors</u>:

c/o Carfinco WFI, Inc.
#300, 4245-97 Street
Edmonton, Alberta
T6E 547
Canada
Attention:  Troy Graf
Phone:  (780) 702-3393
Fax:  (780) 450-1134

With a copy to (which shall not constitute notice):
Torys LLP
1114 Avenue of the Americas, 23rd Floor
New York, NY 10036-7703
Attention:  Alison D. Bauer, Esq.
Phone:  (212) 880-6048
Fax:  (212) 682-0200

If to Liquidating Trust:
[To be provided in Plan Supplement]

## Section 16.05 Term of Injunctions or Stay

Unless otherwise provided in this Plan, the Sale Orders, and/or Confirmation Order, all injunctions or stays provided for in the Bankruptcy Cases under Bankruptcy Code §§ 105 or 362 or otherwise, and in existence on the Confirmation Date (excluding any injunctions or stays contained in this Plan or Confirmation Order), shall remain in full force and effect until the Effective Date.    All injunctions or stays contained in this Plan, the Sale Orders, and/or Confirmation Order shall remain in full force and effect in accordance with their terms.

## Section 16.06 Dissolution of Committee

On the Effective Date, the Committee, if any, shall dissolve and the members of the Committee shall be released and discharged from all authority, duties, responsibilities and obligations related to and arising from and in connection with the Bankruptcy Cases.

## Section 16.07 No Admissions

Notwithstanding anything herein to the contrary, nothing in this Plan shall be deemed as an admission by the Debtors with respect to any matter set forth herein, including liability on any Claim.

## Section 16.08 Notice of the Effective Date

The Debtors shall file on the docket of the Bankruptcy Court a *Notice of Effective Date* stating that (i) all conditions to the occurrence of the Effective Date have been satisfied or waived with the consent of the Pre-Petition Agent and the Committee, if any; (ii) the Effective Date has occurred and specifying the date thereof for all purposes under this Plan; and (iii) setting forth the name, address and telephone number for the Liquidating Trustee.

**Section 16.09 Default Under Plan**

(a)    Plan Default Notice. Except or otherwise provided for in this Plan, after the Effective Date, in the event of an alleged default by the Liquidating Trustee under the Plan, any party alleging such default shall provide written notice of default (the "Plan Default Notice") to the Liquidating Trustee at the address set forth in the Notice of Effective Date filed pursuant to Section 12.02 of this Plan with a copy thereof to the Debtors' counsel and the Pre-Petition Agent's counsel at the addresses set forth in this Plan and shall contemporaneously file such Plan default notice with the Bankruptcy Court and serve it on the Committee, if any.

(b)    Cure. The Liquidating Trustee shall have thirty (30) days from the receipt of a Plan Default Notice to cure any actual default that may have occurred.

**Section 16.10 Entire Agreement**

This Plan and the Plan Documents set forth the entire agreement and understanding among the parties-in-interests relating to the subject matter hereof and supersede all prior discussions and documents.

*[Rest of page intentionally left blank]*

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

## ARTICLE XVII

## CONFIRMATION REQUEST

The Debtors request Confirmation of this Plan under Bankruptcy Code § 1129. If any Impaired Class does not accept this Plan pursuant to Bankruptcy Code § 1126, the Debtors request Confirmation pursuant to Bankruptcy Code § 1129(b). In that event, the Debtors reserve the right to modify this Plan to the extent (if any) that Confirmation of this Plan under Bankruptcy Code § 1129(b) requires modification.

Dated: November 26, 2013.

WESTERN FUNDING INCORPORATED,
a California corporation,

By: _____
Frederick Cooper, Chief Executive Officer

Dated: November 26, 2013.

WESTERN FUNDING INC. OF NEVADA,
a Nevada corporation,

By: _____
Frederick Cooper, President

Dated: November 26, 2013.

GLOBAL TRACK GPS, LLC,
a Delaware limited liability company,

By: _____
Frederick Cooper, Manager

Prepared and Submitted:

LARSON & ZIRZOW, LLC

By:   /s/ Matthew C. Zirzow
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzlawnv.com
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101

Attorneys for Debtors

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

# EXHIBIT "B"

_____
Honorable Laurel E. Davis
United States Bankruptcy Judge

Entered on Docket
November 26, 2013

LARSON & ZIRZOW, LLC
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzlawnv.com
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Telephone: (702) 382-1170
Facsimile: (702) 382-1169
Attorneys for Debtors

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>WESTERN FUNDING INCORPORATED,<br>Debtor. | Case No.: BK-S-13-17588-LED<br>Chapter 11<br>(Jointly Administered) |
| In re:<br>WESTERN FUNDING INC. OF NEVADA,<br>Debtor. | Case No.: BK-S-13-17586-LED<br>Chapter 11 |
| In re:<br>GLOBAL TRACK GPS, LLC,<br>Debtor. | Case No.: BK-S-13-17589-LED<br>Chapter 11 |

**ORDER: (i) APPROVING ADEQUACY OF DISCLOSURES IN DEBTORS'
PROPOSED DISCLOSURE STATEMENT TO ACCOMPANY DEBTORS' JOINT PLAN
OF REORGANIZATION; (ii) SETTING DEADLINES FOR BALLOTING AND
OPPOSING CONFIRMATION OF DEBTORS' JOINT PLAN OF REORGANIZATION;
(iii) APPROVING FORMS OF BALLOTS; (iv) SETTING A RECORD DATE FOR
VOTING PURPOSES; AND (v) SETTING CONFIRMATION HEARING ON THE PLAN**

Western Funding Incorporated, a California corporation, Western Funding Inc. of

Nevada, a Nevada corporation, and Global Track GPS, LLC, a Delaware limited liability

company (collectively, the "Debtors"), debtors and debtors-in-possession, by and through their

counsel, the law firm of Larson & Zirzow, LLC, filed its *Motion for Order: (i) Approving

Adequacy of Disclosures in Debtors' Proposed Disclosure Statement to Accompany Debtors'*

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

*Joint Plan of Reorganization; (ii) Setting Deadlines for Balloting and Opposing Confirmation of Debtors' Joint Plan; (iii) Approving Form of Ballots; (iv) Setting a Record Date for Voting Purposes; and (v) Setting the Confirmation Hearing on the Plan* (as supplemented, the "Motion"),[1] [ECF No. 322], which requested approval of Debtors' proposed *Disclosure Statement to Accompany Debtors' Joint Plan of Reorganization* (the "Disclosure Statement"), as well as that the Court set related deadlines with regard to *Debtors' Joint Plan of Reorganization* (the "Plan"); the Court having held a hearing on November 25, 2013 at 3:00 p.m., with all appearances as noted on the record; and for good cause shown;

**IT IS HEREBY ORDERED:**

1.      The Motion is GRANTED.   Debtors' proposed Disclosure Statement, as modified, is approved pursuant to section 1125 of the Bankruptcy Code as containing adequate information.

2.      Debtors are authorized and directed to distribute or cause to be distributed solicitation packages (the "Solicitation Packages") containing a copy of: (a) this Order; (b) the Confirmation Hearing Notice; and (c) either (i) a Ballot, together with a copy of the Disclosure Statement (together with the Plan attached thereto), or (ii) the Notice of Non-Voting Status, by no later than two (2) calendar days after entry of this Order (the "Solicitation Date").

3.      Solicitation Packages, which shall include Ballots, shall be distributed to Holders, as of the Record Date, of Allowed Claims in Classes A2, A4, A5, B2, B4, C2, and C4, which Classes are designated as Impaired under the Plan and entitled to vote to accept or reject the Plan.

4.      Solicitation Packages, which shall include the Notice of Non-Voting Status (and which shall exclude any Ballots), shall be distributed to Holders, as of the Record Date, of Claims and Interests in Classes A1, A3, A6, A7, B1, B3, B5, B6, C1, C3, C5 and C6, which Classes are not entitled to vote to accept or reject the Plan.

5.      With respect to addresses from which notices of commencement of the Chapter

---

[1]  Capitalized terms not otherwise defined herein shall have the meanings set forth in the Motion.

2

11 Cases have been returned by the United States Postal Service as undeliverable, Debtors are excused from distributing Solicitation Packages to those entities listed at such addresses unless Debtors receive written notice of accurate addresses for such entities, or accurate forwarding addresses from the United States Postal Service, before the Solicitation Date and the failure to distribute Solicitation Packages to such entities will not constitute inadequate notice of the Confirmation Hearing, the Voting Deadline (as defined below), or violation of Bankruptcy Rule 3017(d).

6.      All Ballots must be properly executed, completed, and the original thereof shall be delivered to Debtors' counsel so as to be actually *received* by no later than <u>December 17, 2013 at 5:00 p.m. (PST)</u> (the "<u>Voting Deadline</u>").

7.      Solely for purposes of voting to accept or reject the Plan and not for the purpose of the allowance of, or distribution on account of, a claim and without prejudice to the rights of Debtors in any other context, each claim entitled to vote to accept or reject the Plan shall be entitled to vote the amount of such claim as set forth in the Schedules, unless such Holder has timely filed a proof of claim, in which event such Holder would be entitled to vote the amount of such claim as set forth in such proof of claim.

8.      The Confirmation Hearing will be held on <u>December 20, 2013 at 9:30 a.m.</u>, and may be adjourned from time to time by the Court or Debtors without further notice to parties other than an announcement in Court at the Confirmation Hearing or any adjourned subsequent Confirmation Hearing and the Plan may be modified pursuant to section 1127 of the Bankruptcy Code prior to, during or as a result of the Confirmation Hearing, pursuant to the terms of the Plan.

9.      Objections to confirmation of the Plan, if any, must be in writing; state the name and address of the objecting party and the amount and nature of the claim or interest of such party; state with particularity the basis and nature of any objection; and be filed, together with proof of service, with the Court no later than <u>December 17, 2013 at 5:00 p.m. (PST)</u>.  Objections to confirmation of the Plan not timely filed and served in the manner set forth herein shall not be considered and shall be overruled.  All replies to any objections to confirmation and Debtors'

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

points and authorities in support of confirmation of the Plan must be filed with the Court by no later than <u>December 19, 2013 at 12:00 p.m. (PST)</u>.

   10. The ballot summary must be filed by Debtors on or before <u>December 18, 2013</u>.

   11. Debtors are authorized to take or refrain from taking any action necessary or appropriate to implement the terms of and the relief granted in this Order without seeking further order of the Court. Debtors are authorized to make non-substantive changes to the Disclosure Statement, the Plan, and related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors and to make conforming changes among the Disclosure Statement, the Plan, and any other materials in the Solicitation Package prior to their distribution.

  **IT IS SO ORDERED.**

Prepared and submitted by:

LARSON & ZIRZOW, LLC

By:   _/s/ Matthew C. Zirzow_____
MATTHEW C. ZIRZOW, ESQ.
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Attorneys for Debtors

### LR 9021 CERTIFICATION

  In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

  ☒ The court has waived the requirement of approval under LR 9021(b)(1).

  ☐ No party appeared at the hearing or filed an objection to the motion.

  ☐ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

  ☐ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

<div align="center"># # #</div>

<div align="center">4</div>

<div style="writing-mode: vertical">**LARSON & ZIRZOW, LLC**
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169</div>

# EXHIBIT "C"

**EXECUTION VERSION**

# STOCK PURCHASE AGREEMENT

dated as of

November 15, 2013

among

**Western Funding Incorporated**

and

**Global Track GPS LLC**

as Debtors,

and

**Carfinco WFI Inc.,**

as Buyer

**CONFIDENTIAL**

# TABLE OF CONTENTS

**Page**

ARTICLE I       DEFINITIONS ........................................................................................ 2
Section 1.01    Definitions ........................................................................................ 2
Section 1.02    Other Definitional and Interpretative Provisions ................................. 13

ARTICLE II      PURCHASE AND SALE ..................................................................... 15
Section 2.01    Purchase and Sale of New WFI Shares and New Global Track Shares .............. 15
Section 2.02    Closing ............................................................................................. 15
Section 2.03    Escrow Deposit ................................................................................. 17

ARTICLE III     REPRESENTATIONS AND WARRANTIES OF DEBTORS ........................ 17
Section 3.01    Corporate Existence and Power ......................................................... 18
Section 3.02    Corporate Authorization ................................................................... 18
Section 3.03    Governmental Authorization .............................................................. 18
Section 3.04    Noncontravention .............................................................................. 19
Section 3.05    Capitalization ................................................................................... 19
Section 3.06    Subsidiaries ..................................................................................... 20
Section 3.07    Financial Statements ........................................................................ 21
Section 3.08    Undisclosed Liabilities ...................................................................... 21
Section 3.09    Contracts .......................................................................................... 21
Section 3.10    Litigation .......................................................................................... 23
Section 3.11    Compliance with Laws and Court Orders ............................................ 23
Section 3.12    Real Property .................................................................................... 24
Section 3.13    Personal Property ............................................................................. 25
Section 3.15    Sufficiency of Assets ........................................................................ 25
Section 3.15    Financing Programs .......................................................................... 25
Section 3.16    Insurance Coverage .......................................................................... 27
Section 3.17    Licenses and Permits ........................................................................ 28
Section 3.18    Employees ........................................................................................ 28
Section 3.19    Employee Benefits Matters ............................................................... 29
Section 3.20    Environmental Matters ...................................................................... 32
Section 3.21    Taxes  32
Section 3.22    Intellectual Property ......................................................................... 34
Section 3.23    Books and Records ........................................................................... 35
Section 3.24    Harbor Contracts .............................................................................. 35
Section 3.25    Finders' Fees .................................................................................... 35
Section 3.26    Disclosure ........................................................................................ 35

ARTICLE IV      REPRESENTATIONS AND WARRANTIES OF BUYER ........................... 36
Section 4.01    Corporate Existence and Authorization .............................................. 36
Section 4.02    Governmental Authorization .............................................................. 36
Section 4.03    Noncontravention .............................................................................. 36
Section 4.04    Litigation .......................................................................................... 37
Section 4.05    Financing .......................................................................................... 37

**CONFIDENTIAL**

**TABLE OF CONTENTS**
(continued)

Section 4.06    Finders' Fees ................................................................................ 37

ARTICLE V      COVENANTS OF DEBTORS .................................................. 37

Section 5.01    Conduct of the Business ............................................................... 37
Section 5.02    Additional Financial Information ................................................ 40
Section 5.03    Assumption and Rejection of Executory Contracts and Leases ......... 40
Section 5.04    Access to Information .................................................................. 42
Section 5.05    Updating of Certain Schedules .................................................... 42
Section 5.06    Net Finance Receivables ............................................................. 43
Section 5.07    Commercially Reasonable Efforts; Further Assurances ............... 43

ARTICLE VI     Employment and tax matters ...................................................... 44

Section 6.01    Health Coverage ......................................................................... 44
Section 6.02    Tax Matters ................................................................................ 45

ARTICLE VII    COVENANTS OF BUYER AND DEBTORS .............................. 45

Section 7.01    Bankruptcy Proceedings ............................................................. 45
Section 7.02    Public Announcements ............................................................... 47
Section 7.03    Notices of Certain Events ........................................................... 47

ARTICLE VIII   CONDITIONS TO CLOSING ..................................................... 47

Section 8.01    Conditions to Obligations of Buyer and Debtors ........................ 47
Section 8.02    Conditions to Obligation of Buyer .............................................. 48
Section 8.03    Conditions to Obligation of Debtors ........................................... 50

ARTICLE IX     TERMINATION ........................................................................ 50

Section 9.01    Grounds for Termination ............................................................ 50
Section 9.02    Effect of Termination ................................................................. 53
Section 9.03    Break-Up Fee and Expense Reimbursement ............................... 53

ARTICLE X      MISCELLANEOUS .................................................................. 54

Section 10.01   Notices ....................................................................................... 54
Section 10.02   Survival ...................................................................................... 56
Section 10.03   Amendments and Waivers .......................................................... 56
Section 10.04   Expenses .................................................................................... 56
Section 10.05   Successors and Assigns .............................................................. 56
Section 10.06   Governing Law ........................................................................... 57
Section 10.07   Jurisdiction ................................................................................ 57
Section 10.08   WAIVER OF JURY TRIAL ........................................................ 57
Section 10.09   Counterparts; Effectiveness; Third Party Beneficiaries ............... 57
Section 10.10   Entire Agreement ....................................................................... 57
Section 10.11   Severability ................................................................................ 57
Section 10.12   Specific Performance .................................................................. 58
Section 10.13   Certain Acknowledgements and Limitations ............................... 58

**CONFIDENTIAL**

**TABLE OF CONTENTS**
(continued)

<div align="right"><b>Page</b></div>

Section 10.14  Disclosure Schedules .................................................................. 59

ARTICLE XI    POST CLOSING REQUIREMENTS ........................................ 60

Section 11.01  Post-Closing Filings ................................................................. 60

## Exhibits

Exhibit A          Plan of Reorganization
Exhibit B          Form of Expense Reimbursement Order

## Schedules

Schedule I         Other Excluded Assets
Schedule II        Disclosure Schedules

<div align="center">-iii-</div>

CONFIDENTIAL

## STOCK PURCHASE AGREEMENT

STOCK PURCHASE AGREEMENT (this "**Agreement**") dated as of November 15, 2013, among Western Funding Incorporated, a California corporation ("**WFI**"), Global Track GPS LLC, a **Delaware** limited liability company ("**Global Track**", and together with WFI, the "**Debtors**"), and Carfinco WFI Inc., a Delaware corporation ("**Buyer**"). Debtors and Buyer are sometimes referred to collectively herein as the "**Parties**" and individually as a "**Party**."

## W I T N E S S E T H :

WHEREAS, WFI's wholly-owned subsidiary, Western Funding Inc. of Nevada ("**WFI Subsidiary**") and the Debtors have filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (as defined below) in the United States Bankruptcy Court for the District of Nevada, Las Vegas Division, and pursuant to Chapter 11 of the Bankruptcy Code, the cases (collectively, the "**Bankruptcy Cases**") are jointly administered for procedural purposes;

WHEREAS, as part of the Bankruptcy Cases, Debtors intend to file (i) a plan of reorganization for the Debtors in the form attached hereto as Exhibit A (as the same may be amended, modified or supplemented from time to time with the prior written consent of Buyer and in accordance with the provisions thereof, the "**Plan**"), (ii) a disclosure statement for the Plan intended to meet the requirements of Section 1125(b) of the Bankruptcy Code in form and substance reasonably acceptable to Buyer (as the same may be amended, modified or supplemented from time to time in accordance with the provisions hereof, the "**Disclosure Statement**"), (iii) a motion seeking approval of the Disclosure Statement, (iv) a motion seeking entry of the Bid Procedures Order (as defined below) and (v) a motion seeking entry of the Las Vegas Property Bid Procedures Order (as defined below);

WHEREAS, on November 4, 2013 [ECF 275], the Debtors filed a motion seeking entry of an order by the Bankruptcy Court approving the Expense Reimbursement and the Break-Up Fee (as such terms are defined below) (the "**Expense Reimbursement Motion**"), which Expense Reimbursement Order was granted by the Bankruptcy Court on November 7, 2013;

WHEREAS, subject to the entry of the Confirmation Order (as defined below), WFI desires to cause the Reorganized WFI (as defined below) to issue and sell to Buyer, and Buyer desires to purchase from the Reorganized WFI, 1,000 newly issued shares of common stock, par value $0.01 per share, of the Reorganized WFI (the "**New WFI Shares**") in accordance with the terms and subject to the conditions set forth herein, which New WFI Shares shall constitute, immediately following the Closing (as defined below), all of the issued and outstanding capital stock and other equity interests of the Reorganized WFI;

WHEREAS, subject to the entry of the Confirmation Order, Global Track desires to cause the Reorganized Global Track (as defined below) to issue and sell to Buyer, and Buyer desires to purchase from the Reorganized Global Track, 1,000 newly issued units of limited liability company interests in the Reorganized Global Track (the "**New Global Track Shares**", and together with the New WFI Shares, the "**New Shares**") in accordance with the terms and subject to the conditions set forth herein, which New Global Track Shares shall constitute,

**CONFIDENTIAL**

immediately following the Closing, all of the issued and outstanding limited company interests and other equity interests of the Reorganized Global Track;

WHEREAS, prior to the execution of this Agreement by the Parties, the Debtors have received from the Senior Secured Lender (as defined below) written confirmation of the Senior Secured Lender's support of the Plan, subject to the Senior Secured Lender's conditions to said support, and its credit bidding rights; and

WHEREAS, the Debtors have been soliciting bids to purchase either all or substantially all of each of the Debtors' assets or equity interests and have determined that Buyer's offer to purchase the New Shares is the highest or best offer received to date for the Debtors' equity interests or all or substantially all of each of the Debtors' assets and constitutes a fair and adequate purchase price; and

WHEREAS, WFI Subsidiary will be liquidated and/or dissolved pursuant to the Plan,

NOW, THEREFORE, in consideration of the mutual promises, representations and warranties made herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

## ARTICLE I
## DEFINITIONS

Section 1.01    *Definitions*.

(a)    In addition to the terms defined elsewhere herein, the following terms, as used herein, have the following meanings:

"**Account Document**" means, in respect of each individual Account, the original title and installment sales agreement(s), any schedules, collateral security agreements, or any other agreements, documents or instruments evidencing a payment obligation under, providing security for, or otherwise executed and delivered by any Account Party or any person that sold any installment sales contract to WFI in connection with an Account.

"**Actual Knowledge of the Debtors**" means the actual knowledge of Fred Cooper and Katherine Cooper without any duty of inquiry other than the duty to review the books and records in the possession and control of the Debtors.

"**Affiliate**" means, with respect to any Person, any other Person directly or indirectly controlling, controlled by, or under common control with such other Person. For such purposes, the term "control" means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by Contract or otherwise, and the term "controlling" or "controlled" or other similar words have the corresponding meanings.

"**Alternative Bidder**" means any third party that has made a bona fide written proposal after the date hereof and prior to the Bid Deadline relating to an Alternative Transaction.

2

CONFIDENTIAL

"**Alternative Transaction**" means, other than the Transactions and the Plan, any (i) sale, transfer or other disposition, directly or indirectly, of any material assets of any Debtor (except any such sale, transfer or other disposition effected in the Ordinary Course of Business), (ii) issuance, sale, transfer or other disposition, in each case by any Debtor, of any class of equity securities, ownership interests or voting securities of any Debtor, (iii) merger, share exchange, consolidation, recapitalization, reorganization, business combination or other similar transaction involving any Debtor, (v) any transaction involving an acquisition of any assets or securities of any Debtor, a capital contribution to any Debtor or a restructuring of any indebtedness of any Debtor proposed by or on behalf of any equityholder or debtholder of any Debtor, (vi) any transaction that is conditioned or predicated on the transactions contemplated by this Agreement not being completed in accordance with the terms of this Agreement or is intended or could reasonably be expected to result in such not being so completed or (vii) any Chapter 11 plan of reorganization or other restructuring or reorganization for, or liquidation of, any Debtor (other than the Plan).

"**Applicable Consumer Financing Law**" means federal, state and local laws, and regulations thereunder, applicable to consumer credit transactions, including usury laws, the Federal Truth-in-Lending Act, the Equal Credit Opportunity Act, the Fair Credit Billing Act, the Fair Credit Reporting Act, the Fair Debt Collection Practices Act, the Federal Trade Commission Act, the Magnuson-Moss Warranty Act, the Consumer Financial Protection Bureau's Regulations "B" and "Z", the Servicemembers Civil Relief Act of 2003, state retail installment and motor vehicle retail installment sales acts, and state adaptations of the National Consumer Act and of the Uniform Consumer Credit Code and other consumer credit laws and equal credit opportunity and disclosure laws.

"**Applicable Law**" means, with respect to any Person or matter, any federal, state or local law (statutory, common or otherwise) or any law of any other jurisdiction, constitution, statute, ordinance, code, rule, regulation, order, treaty, decree, award, decision, injunction, judgment or other requirement or rule of law adopted, promulgated or otherwise enforced or entered into by a Governmental Authority that is binding upon or applicable to such Person or any of its assets or such matter, including Applicable Consumer Financing Law.

"**Avoidance Actions**" means any and all actual or potential claims or Causes of Action to avoid a transfer of property or an obligation incurred by the Debtors pursuant to any applicable section of the Bankruptcy Code, including §§ 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a).

"**Bankruptcy Code**" means Title 11 of the United States Code, as amended.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Nevada, Las Vegas Division or any other court having jurisdiction over the Bankruptcy Cases from time to time.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, in each case as amended, or any successor rules.

"**Bid Deadline**" has the meaning set forth in the Bid Procedures Order.

CONFIDENTIAL

"**Bid Procedures Order**" means an order of the Bankruptcy Court approving this Agreement and procedures for consummating an Alternative Transaction, in form and substance reasonably acceptable to Buyer.

"**BMO Payoff Amount**" means the amount required to satisfy all unpaid and outstanding Liabilities owed to the Senior Secured Lender as of the Closing Date under the Existing Senior Credit Agreement as an allowed claim approved by the Bankruptcy Court.

"**Budget**" means the budget that is attached as Exhibit "A" to the Stipulation.

"**Business Day**" means any day, excluding Saturdays, Sundays or "legal holidays" (as referenced in Bankruptcy Rule 9006(a)), on which commercial banks located in Las Vegas, Nevada or Edmonton, Alberta Canada are authorized or required by Applicable Law to be closed for business.

"**Causes of Action**" means all actions, causes of action, liabilities, obligations, rights, suits, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims, or any other claims whatsoever, whether known or unknown, matured or unmatured, fixed or contingent, liquidated or unliquidated, disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity, or otherwise.

"**Claim**" means a claim against any Debtors as defined in the Bankruptcy Code and including, but not limited to, administrative claims or expenses as defined by 11 U.S.C. § 503.

"**Closing Date**" means the date of the Closing.

"**COBRA**" means COBRA as defined in Sections 601, et. seq. of ERISA and Section 4980B of the Code.

"**Code**" means the Internal Revenue Code of 1986, as amended.

"**Committee**" means the Official Committee of Unsecured Creditors appointed in the Bankruptcy Cases.

"**Confirmation Hearing**" means the hearing held by the Bankruptcy Court to consider confirmation of the Plan.

"**Confirmation Order**" means an order of the Bankruptcy Court confirming the Plan, in form and substance reasonably acceptable to Buyer.

"**Contract**" means any contract, agreement, lease, license, indenture, note, bond, sale and purchase order, undertaking, instrument or other commitment or legally binding arrangement, whether oral or written (including any amendments or modifications thereto), including Retail Contracts.

"**Copyrights**" means all original works of authorship in any medium of expression (including in digital or print media or other forms of media), whether or not published and

4

whether registered or unregistered, all United States or foreign registrations and applications for registration of such copyrights, including all renewals and extensions thereof, and rights corresponding thereto throughout the world.

"**Dealer Contract**" means each Contract with any dealer pursuant to which WFI purchases Retail Contracts from such dealer or otherwise relating to the Dealer Reserve to which any Debtor is a party or by which any Debtor is otherwise bound (whether as an original party, by succession or assignment or otherwise).

"**Disclosure Schedules**" means the Disclosure Schedules attached hereto.

"**Disclosure Statement Order**" means an order of the Bankruptcy Court approving the Disclosure Statement, which order must be acceptable in form and substance to Buyer.

"**Dismissal Order**" means a Final Order denying the Motion to Dismiss Chapter 11 Case Filed Without Corporate Authorization and Granting Related Relief [ECF 57] filed in the Bankruptcy Cases.

"**Domain Names**" means with respect to any Person, any domain names, uniform resource locators, social media "pages", including those maintained on Facebook, Twitter and Pinterest, owned, licensed or controlled by such Person.

"**Environmental Claim**" means any Proceeding, Order, Lien, fine, penalty, or, as to each, any settlement or judgment arising therefrom, by or from any Person alleging liability of whatever kind or nature (including liability or responsibility for the costs of enforcement response, investigations, cleanup, governmental response, removal or remediation, natural resources damages, property damages, personal injuries, medical monitoring, penalties, contribution, indemnification and injunctive relief) arising out of, based on or resulting from: (a) the presence, Release of, or exposure to, any Hazardous Materials; or (b) any actual or alleged non-compliance with any Environmental Law or term or condition of any Environmental Permit.

"**Environmental Laws**" means any Applicable Law or any Order or Contract with any Governmental Authority: (a) relating to pollution (or the cleanup thereof) or the protection of natural resources, endangered or threatened species, human health or safety, or the environment (including ambient air, soil, surface water or groundwater, or subsurface strata); or (b) concerning the presence of, exposure to, or the management, manufacture, use, containment, storage, recycling, reclamation, reuse, treatment, generation, discharge, transportation, processing, production, disposal or remediation of any Hazardous Materials. The term "Environmental Law" includes the following (including their implementing regulations and any similar state statutes): the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. §§ 9601 et seq.; the Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act of 1976, as amended by the Hazardous and Solid Waste Amendments of 1984, 42 U.S.C. §§ 6901 et seq.; the Federal Water Pollution Control Act of 1972, as amended by the Clean Water Act of 1977, 33 U.S.C. §§ 1251 et seq.; the Toxic Substances Control Act of 1976, as amended, 15 U.S.C. §§ 2601 et seq.; the Emergency Planning and Community Right-to-Know Act of 1986, 42 U.S.C. §§ 11001 et seq.; the Clean Air Act of 1966, as amended by the Clean

CONFIDENTIAL

Air Act Amendments of 1990, 42 U.S.C. §§ 7401 et seq.; and the Occupational Safety and Health Act of 1970, as amended, 29 U.S.C. §§ 651 et seq.

"**Environmental Notice**" means any written directive, notice of violation or infraction, or notice respecting any Environmental Claim relating to actual or alleged non-compliance with any Environmental Law.

"**ERISA**" means the Employee Retirement Income Security Act of 1974, as amended.

"**ERISA Affiliate**" of any Person means any other Person which, together with such Person, would be treated as a single employer under Section 414(b), (c), (m) or (o) of the Code.

"**Escrow Agreement**" means the Escrow Agreement to be entered into by and among Debtors, Buyer and the Escrow Agent, as such agreement may be amended from time to time in accordance therewith.

"**Existing Senior Credit Agreement**" means the Credit Agreement between WFI, as borrower, BMO Harris Bank N.A., as administrative agent and lender, and certain guarantors party thereto, dated March 14, 2012, as amended (including pursuant to any forbearance agreements).

"**Excluded Assets**" means the assets and Claims set forth on Schedule I.

"**Excluded Real Properties**" means the real properties owned by Debtor located at (i) 2202 Stevens Creek Boulevard, San Jose, CA 95127, (ii) 9905 Gulf Freeway, Houston, TX 77034 and (iii) 3915 East Patrick Lane, Las Vegas, NV 89120.

"**Excluded Retail Contracts**" means Retail Contracts (i) that have been in default for at least 90 days, (ii) that have been charged off the books and records of WFI, or (iii) where the customer of the financed vehicle has commenced a case, or a case has been commenced against such customer, under the Bankruptcy Code.

"**Expense Reimbursement Order**" means an order of the Bankruptcy Court approving the Expense Reimbursement Motion, in the form attached hereto as Exhibit B (other than minor ministerial changes and corrections), together with any other changes to such form previously approved in writing by the Buyer.

"**Final Order**" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, (i) which has not been reversed, stayed, vacated, modified, amended, enjoined, set aside, annulled or suspended, (ii) with respect to which no stay shall have been issued in connection with any notice of appeal or petition for certiorari filed within any deadline provided by applicable statute or regulation; (iii) is not the subject of a timely filed pending appeal or motion for review or reconsideration, (iv) has not been and may no longer be appealed from or otherwise reviewed or reconsidered, other than under Bankruptcy Rule 9024 and/or Federal Rule of Civil Procedure 60, and (v) is final and nonappealable in accordance with Bankruptcy Rule 8002 or any other applicable law or rule.

6

**CONFIDENTIAL**

"**GAAP**" means generally accepted accounting principles in the United States in effect from time to time.

"**Governmental Authority**" means any federal, state, local or foreign government or political subdivision thereof, or any agency or instrumentality of such government or political subdivision, or any self-regulated organization or other non-governmental regulatory authority or quasi-governmental authority, or any arbitrator, court or tribunal of competent jurisdiction.

"**Harbor**" means Harbor Structured Finance LLC, a Delaware limited liability company.

"**Harbor Owners**" means any Person who owns (directly or indirectly) any interest in Harbor.

"**Hazardous Materials**" means: (a) any material, substance, chemical, waste, product, derivative, compound, mixture, solid, liquid, mineral or gas, in each case, whether naturally occurring or manmade, that is hazardous, acutely hazardous, toxic, or words of similar import or regulatory effect under Environmental Laws; and (b) any petroleum or petroleum-derived products, radon, radioactive materials or wastes, asbestos in any form, lead or lead-containing materials, urea formaldehyde foam insulation, and polychlorinated biphenyls.

"**Indebtedness**" of any Person means, without duplication, (i) the principal of and premium (if any) in respect of (A) indebtedness of such Person for borrowed money or (B) indebtedness evidenced by notes, debentures, bonds or other similar instruments for the payment of which such Person is responsible or liable; (ii) all obligations of such Person issued or assumed as the deferred purchase price of property, vendor financing, insurance financing or other financing of any assets of such Person, all conditional sale obligations of such Person and all obligations of such Person under any title retention agreement (but excluding trade retention accounts payables incurred in the Ordinary Course of Business); (iii) all obligations of such Person under any lease of (or other arrangement conveying the right to use) real or personal property, or a combination thereof, required to be classified and accounted for under GAAP as capital leases; (iv) all obligations of such Person for the reimbursement of any obligor on any letter of credit, banker's acceptance or similar credit transaction; (v) all obligations of the type referred to in clauses (i) through (iv) of any Person the payment of which such Person is responsible or liable, directly or indirectly, as obligor, guarantor, surety or otherwise, including guarantees of such obligations; (vi) all obligations of the type referred to in clauses (i) through (v) of any other Person secured by any Lien on any property or asset of such Person (whether or not such obligation is assumed by such Person); and (vii) all other liabilities or obligations required by GAAP to be reflected as indebtedness on a consolidated balance sheet of such person as of the relevant date prepared in accordance with GAAP.

"**Intellectual Property**" means all of the following and similar intangible property and related proprietary rights, interests and protections, however arising, pursuant to the Applicable Laws of any jurisdiction throughout the world: (a) Copyrights, (b) all Patent Rights, (c) all Trademarks, (d) all Product Know-How, (e) all Domain Names, (f) all other intellectual property (as defined in Section 101(35A) of the Bankruptcy Code) owned by the relevant Person or in which such Person holds any right or interest granted by license from any other Person or with respect to which such Person otherwise has the legal right to use, and (g) all rights to sue or

7

**CONFIDENTIAL**

otherwise claim for past, present or future infringement, misappropriation or unauthorized use or disclosure or breach of any of the assets, properties or rights described above.

"**Inventions**" means all inventions, whether or not such inventions are the subject of a patent or patent application, including computer systems and related tools, computer software and hardware, front-end and back-end architecture and systems, interfaces, applications, source code, object code, graphical and audio assets, designs or documentation.

"**Knowledge of the Debtors**" means the actual knowledge of Fred Cooper and Katherine Cooper, in each case upon reasonable inquiry.

"**Las Vegas Property**" means the real property owned by Debtors located at 3915 East Patrick Lane, Las Vegas, NV 89120.

"**Las Vegas Property Auction**" means the auction for the sale of the Las Vegas Property pursuant to and in accordance with the Las Vegas Property Bid Procedures Order.

"**Las Vegas Property Bid Procedures Order**" means an order of the Bankruptcy Court approving procedures for consummating the sale of the Las Vegas Property by WFI, in the form previously approved in writing by the Buyer.

"**Liability**" means any debt, loss, claim, damage, demand, fine, judgment, penalty, liability or obligation (whether direct or indirect, known or unknown, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, or due or to become due), and including all costs and expenses relating thereto.

"**Licensing Approvals**" means any and all Permits required under Applicable Consumer Financing Law in order for Reorganized WFI to continue to conduct its business (including in respect of the purchase of Accounts and the purchase and collection of defaulted Accounts) uninterrupted from and after the Closing in the same manner as conducted by WFI prior to the date hereof, in any state in which WFI has conducted, conducts or expects to conduct any business.

"**Lien**" means any charge, lien (statutory or otherwise), interest, security interest, claim, mortgage, lease, sublease, hypothecation, deed of trust, pledge, option, right of use or possession, right of first offer or first refusal, easement, servitude, restrictive covenant, encroachment, encumbrance, right of way, transfer restriction or other similar restriction of any kind, including any restriction on use, voting, transfer, receipt of income or exercise of any other attribute of ownership. For the purposes of this Agreement, and without limiting the foregoing, a Person shall be deemed to own subject to a Lien any property or asset which it has acquired or holds subject to the interest of a vendor or lessor under any conditional sale agreement, capital lease or other title retention agreement relating to such property or asset.

"**Liquidating Trust**" means the Liquidating Trust as defined in the Plan.

"**Liquidating Trust Agreement**" means the Liquidating Trust Agreement in the form filed as part of the Plan supplement.

CONFIDENTIAL

"**Liquidating Trustee**" means the person appointed to serve as the trustee of the Liquidating Trust.

"**Material Pleading**" means any pleading or other filing in a Bankruptcy Case by any Debtor relating to the Plan, the Disclosure Statement, the Bid Procedures Order, the Las Vegas Property Bid Procedures Order, the Expense Reimbursement Order, determination of Cure Costs, use of cash collateral, any debtor-in-possession financing agreement, confirmation of the Plan, the payment of any amounts to any professional, advisor or agent retained by any Debtor or any creditors in connection with the Bankruptcy Cases, real property of any Debtor, or any other matter that could reasonably be expected to adversely affect Buyer or its rights or obligations hereunder or any Liability of any Debtor as of the Closing other than the payment of accounts payable in the Ordinary Course of Business.

"**Net Finance Receivables**" means as of the relevant date of determination, the aggregate amount of gross finance receivables of WFI under the Retail Contracts, excluding unearned interest and excluding Excluded Retail Contracts.

"**Non-Income Tax**" means any Tax other than U.S. federal income tax and income tax imposed by any state or subdivision of the U.S., but including any property tax, franchise tax, severance tax, production tax or sales and use tax.

"**Order**" means any award, writ, injunction, judgment, order, stipulation, decree or determination entered, issued, made, or rendered by any Governmental Authority.

"**Ordinary Course of Business**" means the operation of each Debtor's business in the ordinary and usual course, consistent with past custom and practice of such Debtor; provided that the term "Ordinary Course of Business" as used herein shall be no broader than the term "ordinary course of business" as used in Section 363 of the Bankruptcy Code.

"**Organizational Documents**" means, with respect to any Person, the certificate or articles of incorporation, bylaws, certificate of formation or organization, partnership agreement, operating agreement, limited liability company agreement or any other similar organizational documents of such Person.

"**Patent Rights**" means all patented and patentable designs and Inventions, all design, plant and utility patents, letters patent, utility models, pending patent applications and provisional applications and all issuances, divisions, continuations, continuations-in-part, reissues, extensions, reexaminations and renewals of such patents and applications.

"**Permits**" means all permits, licenses, franchises, approvals, authorizations, registrations, certificates, notification filings, variances and similar rights obtained, or required to be obtained, from Governmental Authorities.

"**Permitted Post-Closing Liens**" means, in the case of any Debtor,

(i)     statutory liens for Taxes not yet due and payable or the amount or validity of which is being contested in good faith by appropriate proceedings and for which there are adequate accruals or reserves on the Balance Sheet;

9

**CONFIDENTIAL**

(ii)    mechanics, carriers', workmen's, repairmen's or other similar liens arising or incurred in the Ordinary Course of Business for payment of amounts that are not delinquent and which are not, individually or in the aggregate, material in amount;

(iii)    liens arising under original purchase price conditional sales contracts and equipment leases with third parties entered into in the Ordinary Course of Business which are not, individually or in the aggregate, material in amount; or

(iv)    liens in any assets of any Reorganized Debtor granted pursuant to the Exit Financing Facility.

"**Person**" means an individual, corporation, partnership, joint venture, limited liability company, Governmental Authority, unincorporated organization, trust, association or other entity.

"**Pre-Closing Tax Period**" means any Tax period ending on or before the Closing Date, and with respect to any Straddle Tax Period, the portion of such Tax period ending on and including the Closing Date.

"**Proceeding**" means any action, arbitration, audit, claim, complaint, demand, hearing, investigation, inquiry, audit, notice of violation, proceeding, citation, litigation, summons, subpoena or suit of any nature (whether civil, criminal, administrative, regulatory, investigative or otherwise) commenced, brought, conducted, heard by or before, or otherwise involving any Governmental Authority.

"Product Know-How" means all Inventions, discoveries, trade secrets, know-how, designs, industrial designs, design rights, concepts, rights in research and development, commercially practiced and other processes, quality control and testing procedures validation methods and procedures, technology, data, databases, manufacturing processes and specifications, engineering, formulation, packaging, labeling, marketing and all other proprietary, technical or confidential information and knowledge, in each case, whether written or oral, in any form of media, and whether or not patentable.

"**Release**" means any actual or threatened release, spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, abandonment, disposing or allowing to escape or migrate into or through the environment (including ambient air (indoor or outdoor), surface water, groundwater, land surface or subsurface strata or within any building, structure, facility or fixture).

"**Reorganized Debtor**" means any Debtor as of and after the Closing.

"**Reorganized Global Track**" means Global Track as of and after the Closing.

"**Reorganized WFI**" means WFI as of and after the Closing.

"**Representatives**" means, with respect to any Person, the officers, directors, employees, members, managers, partners, investment bankers, debt financing sources, attorneys, accountants, consultants or other advisors, agents or representatives of such Person, when acting in such capacity on behalf of such Person.

<div align="center">10</div>

CONFIDENTIAL

"**Retail Contract**" means (a) any retail installment sale contract for financed vehicles and all rights and obligations thereunder and (b) as applicable, any electronic versions of such retail installment contracts for financed vehicles and all rights and obligations thereunder.

"**Retained Claims**" means any rights, Causes of Action (including Avoidance Actions) and Claims (including claims under chapter 5 of the Bankruptcy Code) of a Reorganized Debtor (i) relating to, or against a counter party to an Assumed Contract; (ii) relating to all Vested Assets (as defined in the Plan) and (iii) relating to all employees, officers and directors of Reorganized Debtors.

"**Senior Secured Lender**" means BMO Harris Bank N.A., in its capacity as lender under the Existing Senior Credit Agreement.

"**Stipulation**" means the *Stipulation Authorizing Debtors to Use Cash Collateral, Granting Adequate Protection and Granting Relief From the Automatic Stay Pursuant to Sections 361, 362 and 363 of the Bankruptcy Code* [Doc 204-1], included as Exhibit "1" to the *Motion for Order Approving Stipulation Authorizing Debtors to Use Cash Collateral, Granting Adequate Protection and Granting Relief From the Automatic Stay Pursuant to 11 U.S.C. §§ 361, 362 and 363* [Doc 204], filed on behalf of the Companies with the Bankruptcy Court on October 16, 2013, as amended as of the date hereof and as such may be amended after the date hereof with the prior written consent of the Buyer.

"**Straddle Tax Period**" means any Tax period beginning on or before the Closing Date and ending after the Closing Date.

"**Subsidiary**" means, with respect to any Person, any of its Affiliates controlled by such Person.  For such purposes, the term "controlled" has the meaning set forth in the definition of "Affiliate."

"**Tax**" means any and all taxes, fees, levies, duties, tariffs, imposts and other similar charges of any kind (together with any and all interest, penalties, additions to tax and additional amounts imposed with respect thereto) imposed by any governmental or taxing authority, including: any and all federal, state, local and foreign income, gross receipts, license, workers' compensation, unemployment compensation, excise, severance, stamp, occupation, premium, windfall or other profits, production, occupancy, environmental, customs duties, stock, franchise, profits, withholding, social security (or similar), disability, property, sales, use, transfer, registration, value added, gains, alternative or add-on minimum, estimated, or other similar taxes or assessments of any kind whatsoever; license, registration and documentation fees; and customers' duties, tariffs and similar charges.

"**Tax Return**" means any and all returns, declarations, claims for refund, or information returns or statements, reports and forms relating to Taxes filed with any Tax authority (including any elections, estimates, estimates or information returns, schedules or attachments thereto) with respect to the Debtors, including any amendment thereof.

"**Trademarks**" means all trademarks, service marks, trade names, brand names, logos, trade dress and other proprietary indicia of goods and services, whether registered or unregistered, and all registrations and applications for registration of such trademarks, including

11

intent-to-use applications, all issuances, extensions and renewals of such registrations and applications and the goodwill connected with the use of and symbolized by any of the foregoing.

"**Transaction Documents**" means this Agreement, the Plan, the Bid Procedures Order, the Las Vegas Property Bid Procedures Order, the Expense Reimbursement Order, the Confirmation Order, the Disclosure Statement, the Plan, the Escrow Agreement, the Liquidating Trust Agreement, any letter agreement delivered by the Senior Secured Lender approving the transactions contemplated hereby, any agreement between or among Buyer and any Debtors that expressly states that it constitutes a Transaction Document for purposes of this Agreement, and all other agreements, documents and instruments entered into by any Debtor and delivered to Buyer (or entered into by Buyer and delivered to any Debtor) as of or after the date hereof and at or prior to Closing in connection with the transactions contemplated hereby.

"**Transactions**" means the transactions contemplated by this Agreement and the other Transaction Documents, including the issuance, purchase and sale of New WFI Shares and New Global Track Shares for the Purchase Consideration in accordance with this Agreement and the other Transaction Documents.

"**Treasury Regulations**" means the regulations prescribed under the Code.

"**Trust Liabilities**" means those Liabilities set forth on Schedule 2.02, all Liabilities expressly contemplated to be assumed by the Liquidating Trustee hereunder, and all Liabilities arising under or otherwise relating to the Trust Assets.

"**WARN Act**" means the federal Worker Adjustment and Retraining Notification Act of 1988, and similar state, local and foreign laws related to plant closings, relocations, mass layoffs and employment losses.

      (b)    Each of the following terms is defined in the Section set forth opposite such term:

| **Term** | **Section** |
| --- | --- |
| Account | 3.15(b) |
| Account Collateral | 3.15(c) |
| Account Document | 3.15(c) |
| Account Party | 3.16(c) |
| Agreement | Preamble |
| Assumed Contracts | 5.03(b) |
| Assumed Contracts Notice Date | 5.03(a) |
| Assumed Contracts Schedule | 5.03(a) |
| Audited Financial Statements | 3.07 |
| Bankruptcy Cases | Recitals |
| Balance Sheet | 3.07 |
| Balance Sheet Date | 3.07 |
| Benefit Plans | 3.19(a) |
| Break-Up Fee | 9.03(a) |

**CONFIDENTIAL**

| Term | Section |
|------|---------|
| Buyer | Preamble |
| Chosen Courts | 10.07 |
| Closing | 2.02 |
| Cure Costs | 2.01(b) |
| Dealer Reserve | 3.15(f) |
| Debtor Assets | 2.02(a) |
| Debtor Securities | 3.05(c) |
| Debtors | Preamble |
| Deposit | 2.03(a) |
| Disclosure Statement | Recitals |
| Escrow Agent | 2.03(a) |
| Exit Financing Facility | 8.02(o) |
| Expense Reimbursement | 9.03(a) |
| Financial Statements | 3.07 |
| Global Track | Preamble |
| Insurance Policies | 3.16 |
| Interim Financial Statements | 3.07 |
| Leased Real Property | 3.12(c) |
| Leases | 3.12(c) |
| Licensed Intellectual Property | 3.22(c) |
| Modification Policies | 3.15(a) |
| Multiemployer Plan | 3.19((c) |
| New Shares | Recitals |
| New Global Track Shares | Recitals |
| New WFI Shares | Recitals |
| Owned Intellectual Property | 3.22(a) |
| Outside Date | 9.01(b) |
| Parties | Preamble |
| Plan | Recitals |
| Post-Signing Financial Statements | 5.02(a) |
| Purchase Price | 2.01(b) |
| Purchase Price Allocation | 6.02 |
| Qualified Benefit Plan | 3.19((c) |
| Rejection Amount | 5.03(a) |
| Subsidiary Common Stock | 3.06(b) |
| Transferred Employee | 6.01(a) |
| Trust Assets | 2.02(b) |
| WFI | Preamble |
| WFI Common Stock | 3.05(a) |
| WFI Subsidiary | Recitals |
| Underwriting Standards | 3.15(a) |
| Union | 3.18(c) |

Section 1.02    *Other Definitional and Interpretative Provisions.*

13

**CONFIDENTIAL**

(a)     The words "hereof", "herein" and "hereunder" and words of like import used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement unless otherwise specified.

(b)     The headings and captions herein are included for convenience of reference only and shall be ignored in the construction or interpretation hereof.

(c)     References to Articles, Sections, Exhibits and Schedules are to Articles, Sections, Exhibits and Schedules of this Agreement unless otherwise specified.

(d)     All Exhibits and Schedules annexed hereto or referred to herein are hereby incorporated in and made a part of this Agreement as if set forth in full herein.

(e)     Any capitalized terms used in any Exhibit or Schedule but not otherwise defined therein and defined herein, shall have the meaning as defined in this Agreement.

(f)     Any singular term in this Agreement shall be deemed to include the plural, and any plural term the singular.

(g)     Whenever the words "include", "includes" or "including" are used in this Agreement, they shall be deemed to be followed by the words "without limitation", whether or not they are in fact followed by those words or words of like import.

(h)     "Writing", "written" and comparable terms refer to printing, typing and other means of reproducing words (including electronic media) in a visible form.

(i)     References to any Person include the permitted successors and assigns of that Person.

(j)     References from or through any date mean, unless otherwise specified, from and including or through and including, respectively.

(k)     References to "law", "laws" or to a particular statute or law shall be deemed also to include any and all Applicable Law. References to any statute, rule or regulation are to the statute, rule or regulation as amended, modified, supplemented or replaced from time to time (and, in the case of statutes, include any rules and regulations promulgated under the statute) and to any Section of any statute, rule or regulation include any successor to the section.

(l)     The word "or" will have the inclusive meaning represented by the phrase "and/or." The phrase "and/or" when used in a conjunctive phrase, shall mean any one or more of the Persons specified in or the existence or occurrence of any one or more of the events, conditions or circumstances set forth in that phrase; provided, however, that when used to describe the obligation of one or more Persons to do any act, it shall mean that the obligation is the obligation of each of the Persons but that it may be satisfied by performance by any one or more of them.

(m)     "Shall" and "will" have equal force and effect.

14

**CONFIDENTIAL**

(n)    The Parties and their counsel have reviewed the provisions of this Agreement and have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.

(o)    All references to immediately available funds or dollar amounts contained in this Agreement shall mean United States dollars.

(p)    Unless otherwise expressly stated herein, in respect of any matter that requires the consent, approval or decision of any Party hereunder, the determination by such Party as to whether or not to provide such consent or approval and such decision of such Party, as applicable, shall be in such Party's sole discretion.

(q)    THE PARTIES AGREE THAT THE BOLD AND/OR CAPITALIZED LETTERS IN THIS AGREEMENT CONSTITUTE CONSPICUOUS LEGENDS.

## ARTICLE II
## PURCHASE AND SALE

Section 2.01    *Purchase and Sale of New WFI Shares and New Global Track Shares* .

(a)    Upon the terms and subject to the conditions of this Agreement, each of the Debtors will cause the applicable Reorganized Debtor to issue, transfer, sell and deliver to Buyer, and Buyer will purchase, acquire and accept from the applicable Reorganized Debtor, all of the New WFI Shares and the New Global Track Shares, at the Closing, free and clear of all Liens and Claims (other than Permitted Post-Closing Liens).

(b)    The aggregate purchase price ("**Purchase Price**") for the New Shares shall be an amount equal to (i) 70% of the Net Finance Receivables as of the date immediately prior to the Closing Date plus (ii) the aggregate amount of pre-petition or post-petition costs and expenses that are due and payable as of the Closing and that are required under the Confirmation Order to be paid pursuant to Section 365 of the Bankruptcy Code to cure any and all monetary defaults as of the Closing under any and all Assumed Contracts for which all requisite consents and approvals and/or Bankruptcy Court approval for the assumption of such Assumed Contracts by the Reorganized Debtors at the Closing have been received ("**Cure Costs**"), up to a maximum aggregate amount of $200,000 in Cure Costs; provided that the Purchase Price shall be reduced by the aggregate amount of Cure Costs up to and including $100,000.

Section 2.02    *Closing.* The closing (the "**Closing**") of the purchase and sale of the New WFI Shares and New Global Track Shares hereunder shall take place at the offices of Lewis Roca Rothgerber LLP, located at 3993 Howard Hughes Parkway, Las Vegas, Nevada 89169 at 10:00 a.m. (Las Vegas time)  on the date that is two Business Days following the satisfaction or waiver by the requisite Parties of the conditions to Closing set forth in Article VIII (other than those conditions that by their nature cannot be satisfied until the time of Closing, but subject to the satisfaction or waiver by the requisite Parties of those conditions at the Closing), or at such other time or place as the Parties may agree in writing.  At and as of the Closing:

15

CONFIDENTIAL

(a)     Pursuant to Sections 1141(b) and (c) of the Bankruptcy Code and the Plan, all right, title and interest of each Debtor in, to or under all of the assets, properties and rights of each Debtor, as the same shall exist as of the Closing, of every kind, type or designation, whether tangible or intangible, known or unknown, real, personal or mixed, wherever located (including all Retained Claims and Causes of Action against any other Person to the extent not retained or released and discharged pursuant to the Plan) (other than the Excluded Assets) (collectively, the "**Debtor Assets**") shall vest in the Reorganized Debtors, free and clear of all Claims and Liens other than Permitted Post-Closing Liens; and each Reorganized Debtor, Buyer and its Subsidiaries and their respective Representatives shall be fully released and discharged with respect to any and all Claims and Liens relating to or arising under any Debtor Assets, other than Permitted Post-Closing Liens, as of the Closing. From and after the Closing, each of the Reorganized Debtors shall be authorized to operate its business and to use, acquire and dispose of the Debtor Assets and take any and all other actions without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules. From and after Closing, the Reorganized Debtors shall assume, perform and pay when due liabilities under, or related to, the ownership or operation of the **Vested Assets** (as defined in the Plan), in each case, to the extent arising on or after the Closing;

(b)     Pursuant to the Plan and the Liquidating Trust Agreement, (i) in the event the WFI Subsidiary has not been dissolved prior to the Closing, all of the outstanding capital stock of the WFI Subsidiary, (ii) all of the assets, Claims and Liabilities (including the Tax Liabilities) of the WFI Subsidiary, and (iii) the Excluded Assets, and any and all Liabilities of any Debtor or any of its Affiliates arising under or otherwise related to any Excluded Asset (collectively, from and after the time they vest in the Liquidating Trust, the "**Trust Assets**") shall vest in the Liquidating Trust (and the Debtors shall execute such instruments as may be necessary to evidence the transfer and assignment to the Liquidating Trust of the Trust Assets), and the Trust Liabilities shall vest in, and be the sole responsibilities of, the Liquidating Trust;

(c)     (i) Reorganized WFI shall issue the New WFI Shares to Buyer, free and clear of all Liens and Claims (other than Permitted Post-Closing Liens), and shall deliver to Buyer a stock certificate evidencing the New WFI Shares issued to Buyer; (ii) pursuant to the Plan, all shares of capital stock of WFI and any other Debtor Securities of WFI issued and outstanding immediately prior to the Closing shall automatically be canceled and will cease to exist; and (iii) immediately following the Closing, the New Shares shall constitute all the issued and outstanding capital stock and other equity interests of the Reorganized WFI;

(d)     Reorganized Global Track shall issue to Buyer the New Global Track Shares, free and clear of all Liens and Claims (other than Permitted Post-Closing Liens); (ii) pursuant to the Plan, all limited liability company interests of Global Track and any other Debtor Securities of Global Track issued and outstanding immediately prior to the Closing shall automatically be canceled and will cease to exist; (iii) immediately following the Closing, the New Global Track Shares shall constitute all of the issued and outstanding  limited liability company and other equity interests of the Reorganized Global Track and the Buyer shall be the sole member of Reorganized Global Track; and (iv) the limited liability company agreement of Reorganized Global Track shall be amended and restated in the form to be furnished by Buyer at or prior to the Closing;

16

CONFIDENTIAL

(e)    Unless otherwise provided in the Plan, Buyer shall deliver an amount equal to the Purchase Price less the Deposit by wire transfer of immediately available funds, to an account of the Liquidating Trustee designated by the Liquidating Trustee, by notice to Buyer, delivered no later than two (2) Business Days prior to the Closing Date (or if not so designated, then by certified or official bank check payable in immediately available funds to the order of the Liquidating Trustee in such amount), for distribution in accordance with the Plan;

(f)    The Parties shall instruct the Escrow Agent to deliver the Deposit to the Debtors, in partial satisfaction of the Purchase Price;

(g)    The Debtors shall deliver to Buyer the documents specified in Sections 8.02(t), 8.02(u) and 8.02(v); and

(h)    The Buyer shall deliver to Debtors the documents specified in Sections 8.03(b) and 8.03(c).

Section 2.03    *Good Faith Deposit.*

(a)    No later than one (1) Business Day after the delivery of complete Disclosure Schedules by Debtors to Buyer, Buyer shall deposit with Nevada Title Company, in its capacity as the escrow agent (the "**Escrow Agent**") pursuant to the Escrow Agreement, in cash an amount equal to Two Million Four Hundred Thousand Dollars ($2,400,000) (the "**Deposit**"), which Deposit shall be held and released by the Escrow Agent in accordance with the provisions of the Escrow Agreement and this Section 2.03 and Section 2.02(f). The Debtors shall, jointly and severally, be responsible for 50% of the aggregate amount of fees, costs and other expenses payable to the Escrow Agent and Buyer shall be responsible for 50% of such fees, costs and other expenses. The Escrow Account shall not be subject to any Lien, attachment, trustee process or any other judicial process of any creditor of Debtors or any Affiliate of any Debtors.

(b)    If this Agreement is terminated prior to Closing by any Debtor pursuant to Section 9.01(e)(ii) (and Buyer does not otherwise have a right to terminate this Agreement), then the Deposit shall be paid from the Escrow Account to the Debtors and the Parties shall promptly instruct the Escrow Agent to deliver the Deposit by wire transfer of immediately available funds to an account designated by Debtors (and in any event, within two Business Days of such termination).

(c)    If this Agreement is terminated prior to Closing for any reason other than as stated in Section 2.03(b), then the Deposit shall be paid from the Escrow Account to the Buyers and the Parties shall promptly instruct the Escrow Agent to deliver the Deposit by wire transfer of immediately available funds to an account designated by Buyer (and in any event, within two Business Days of such termination).

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES OF DEBTORS

Each of WFI and Global Track, jointly and severally, represents and warrants to Buyer, as of the date hereof and as of the Closing Date, that:

**CONFIDENTIAL**

Section 3.01 *Corporate Existence and Power*. WFI is a corporation duly organized, validly existing and in good standing under the laws of the State of California. Global Track is a limited liability corporation duly organized, validly existing and in good standing under the laws of the State of Delaware. Each Debtor has full power and authority to own, operate or lease the properties and other Debtor Assets now owned, operated or leased by it and to carry on its business as it has been conducted and as it is now conducted. Each Debtor is duly qualified or licensed to do business as a foreign entity in, and is validly existing and in good standing in, each jurisdiction set forth opposite the name of such Debtor on Schedule 3.01(a), and such jurisdictions set forth in such Schedule constitute all of the jurisdictions where such qualification or licensing is necessary because of the nature of its business or activities or the nature of the properties or other Debtor Assets it owns, leases or operates. Schedule 3.01(b) sets forth true and complete copies of all of the Organizational Documents for each Debtor. Such Organizational Documents are in full force and effect, have not been otherwise amended or varied and neither the directors, manager nor any equityholders of any Debtor have passed, confirmed or consented to any further amendments or variations to such Organizational Documents.

Section 3.02 *Corporate Authorization*. Subject to the entry of the Dismissal Order, the Bid Procedures Order, the Expense Reimbursement Order, the Disclosure Statement Order and the Confirmation Order, (i) each Debtor has full corporate or equivalent power and authority to enter into this Agreement and the other Transaction Documents to which it is a party, to carry out its obligations hereunder and thereunder and to consummate the Transactions, and (ii) the execution, delivery and performance by each Debtor of this Agreement and the other Transaction Documents to which it is a party, and the consummation of the Transactions by each Debtor, have been duly authorized by all requisite corporate or equivalent action on the part of such Debtor. Subject to the entry of the Dismissal Order, the Bid Procedures Order, the Expense Reimbursement Order and the Confirmation Order, (x) this Agreement and each other Transaction Document dated as of the date hereof to which a Debtor is a party (assuming in each case due authorization, execution and delivery thereof by Buyer where Buyer is a party thereto) constitutes a legal, valid and binding obligation of each Debtor party hereto or thereto, enforceable against such Debtor in accordance with its terms, provided no stay exists with respect to the Bid Procedures Order and the Expense Reimbursement Order and (y) all other Transaction Documents executed and delivered by a Debtor party thereto (assuming in each case due authorization, execution and delivery thereof by Buyer where Buyer is a party thereto) shall, when executed by such Debtor, constitute legal, valid and binding obligations of such Debtor party thereto, enforceable against such Debtor in accordance with their terms, provided no stay exists with respect to the Bid Procedures Order, the Expense Reimbursement Order or the Confirmation Order.

Section 3.03 *Governmental Authorization*. The execution, delivery and performance by each Debtor of this Agreement and each other Transaction Document to which it is or will be a party and the consummation by each Debtor of the Transactions require no action by or in respect of, or filing with or notification to, any Governmental Authority other than the filing of motions of approval for, and the approval by the Bankruptcy Court of, the Disclosure Statement Order, the Bid Procedures Order, the Expense Reimbursement Order and the Confirmation Order, and the receipt of the Licensing Approvals.

18

CONFIDENTIAL

Section 3.04  *Noncontravention.* Subject to the entry of the Dismissal Order, the execution, delivery and performance by each Debtor of this Agreement and the other Transaction Documents to which it is or will be a party and the consummation of the Transactions do not and will not (a) contravene, conflict with, or result in any violation or breach of any provision of any Organizational Document of such Debtor, (b) subject to Bankruptcy Court approval of the Disclosure Statement Order, the Bid Procedures Order, the Expense Reimbursement Order and the Confirmation Order, contravene, conflict with or result in a violation or breach of any provision of any Applicable Law or any Order, (c) after giving effect to the entry of the Dismissal Order, the Bid Procedures Order, the Expense Reimbursement Order, Disclosure Statement Order and Confirmation Order and subject to receipt of the Licensing Approvals, (i) require any consent, notice or other action by any Person under, (ii) conflict with, result in a violation or breach of, constitute a default or an event that, with or without notice or lapse of time or both, would constitute a default under, or (iii) cause or permit the termination, cancellation, acceleration or other change of any right or obligation of any Person, or the loss of any right or benefit to which any Debtor is entitled, in each case of clauses (i), (ii) and (iii), under (x) any provision of any Contract binding upon any Debtor or by which any properties or other Debtor Assets of any Debtor may be bound or (y) any Permit affecting, or relating in any way to, any Debtor or any of its properties or other Debtor Assets or its business; or (d) result in the creation or imposition of any Lien on any property or other Debtor Assets of any Debtor, other than Permitted Post-Closing Liens.

Section 3.05  *Capitalization.*

(a)    The authorized capital stock of WFI consists of 3,000,000 shares of class A common stock, par value of $0.05 per share, and 10,000 shares of class B common stock, no par value. All of the issued and outstanding shares of common stock of WFI ("**WFI Common Stock**") have been duly authorized, are validly issued, fully paid and non-assessable, and are owned of record and beneficially by Harbor. None of the outstanding WFI Common Stock were issued in violation of WFI's Organization Documents, Applicable Law or any Contract that is binding on WFI, including any preemptive or similar rights of any Person.

(b)    Fred and Katherine Cooper are the sole record owners of and have good and valid title to all of the limited liability company interests in Global Track, which have been duly authorized, are validly issued, fully paid and non-assessable. None of the outstanding limited liability company interests in Global Track were issued in violation of Global Track's Organizational Documents, Applicable Law or any Contract that is binding on Global Track, including any preemptive or similar rights of any Person. Fred Cooper is the duly appointed and sole manager of Global Track in accordance with Global Track's Organizational Documents.

(c)    Except for the shares of class A common stock of WFI held by Harbor and the limited liability company interests in Global Track held by Fred and Katherine Cooper on the date hereof and at all times prior to the Closing hereunder, there is not and shall not be any outstanding (i) shares of capital stock or other voting or other securities of, or ownership interests in, any Debtor, (ii) securities of any Debtor convertible into or exchangeable for shares of capital stock or other voting or other securities of, or ownership interests in, any Debtor, (iii) warrants, calls, options or other rights to acquire from any Debtor, or other obligation of any Debtor to issue, any capital stock, voting or other securities or ownership interests, or securities convertible

19

into or exchangeable for capital stock or voting or other securities of, or ownership interests in, any Debtor or (iv) restricted shares, stock appreciation rights, performance units, contingent value rights, "phantom" stock or similar securities or rights that are derivative of, or provide economic benefits based, directly or indirectly, on the value or price of, any capital stock of or voting or other securities of, or ownership interests in, any Debtor (the items in clauses (i) through (iv) being referred to collectively as the "**Debtor Securities**").

(d)    Upon effectiveness of the Plan and the Closing hereunder, there shall not be issued, reserved for issuance or outstanding any (i) shares of capital stock or other voting or other securities of, or ownership interests in, any Reorganized Debtor, other than the New Shares issued to Buyer at the Closing, (ii) securities of any Reorganized Debtor convertible into or exchangeable for shares of capital stock or other voting or other securities of, or ownership interests in, any Reorganized Debtor, (iii) warrants, calls, options or other rights to acquire from any Reorganized Debtor, or other obligation of any Reorganized Debtor to issue, any capital stock, voting or other securities or ownership interests, or securities convertible into or exchangeable for capital stock or voting or other securities of, or ownership interests in, any Reorganized Debtor or (iv) restricted shares, stock appreciation rights, performance units, contingent value rights, "phantom" stock or similar securities or rights that are derivative of, or provide economic benefits based, directly or indirectly, on the value or price of, any capital stock of or voting or other securities of, or ownership interests in, any Reorganized Debtor.

(e)    There are no (x) voting trusts, proxies, stockholder agreements or other similar agreements or understandings in effect to which any Debtor (or to the Knowledge of the Debtors, Harbor or any member of Harbor) is bound by, with respect to the voting or transfer of any Debtor Securities or (y) Contracts or other obligation or commitment of any nature restricting the transfer of, or requiring the registration for sale of, any Debtor Securities.  There are no outstanding obligations of any Debtor to repurchase, redeem or otherwise acquire any Debtor Securities.

Section 3.06    *Subsidiaries.*

(a)    WFI Subsidiary is a corporation duly organized, valid existing and in good standing under the laws of the State of Nevada, and has full power and authority to own, operate or lease the properties now owned, operated or leased by it and to carry on its business as it has been conducted and as it is now conducted.

(b)    WFI owns all of the capital stock of the WFI Subsidiary.  No Debtor owns, or has any interest in or the right to acquire, any capital stock or other equity interest of, or any ownership interest in, any Person other than the WFI Subsidiary.

(c)    The WFI Subsidiary does not own or have any interest in any assets (including any real or personal property), does not have any Liabilities, and is not a party to or otherwise bound by any Contract.  The WFI Subsidiary does not have and has never had any employees.  Since the date of its incorporation, the WFI Subsidiary has not carried on any business activities or commercial operations, other than those incidental to being a guarantor of WFI's obligations under the Existing Senior Credit Agreement.

CONFIDENTIAL

(d)    Upon the effective date of the Plan and the Closing hereunder, all of the issued and outstanding capital stock of the WFI Subsidiary will be forfeited, canceled, extinguished or otherwise terminated.

Section 3.07    *Financial Statements.*  Schedule 3.07 sets forth the (i) audited financial statements of each Debtor as at and for the year ended December 31, 2011, including the balance sheets as at such dates and the related statements of income, stockholders' equity and cash flows for the year then ended (the "**Audited Financial Statements**"), (ii) unaudited balance sheets of each Debtor ("**Balance Sheet**") as of December 31, 2012, and as of September 30, 2013 (the "**Balance Sheet Date**"), and the related statements of income, stockholders' equity and cash flows for the twelve month and nine-month periods then ended (collectively, the "**Interim Financial Statements**", and together with the Audited Financial Statements and the Post-Signing Financial Statements, the "**Financial Statements**").  The Financial Statements have been prepared in accordance with GAAP applied on a consistent basis throughout the periods involved, subject, in the case of the Interim Financial Statements and the Post-Signing Financial Statements, to normal and recurring year-end adjustments (the effect of which will not be materially adverse) and the absence of notes (that, if presented, would not differ materially from those presented in the Audited Financial Statements).  The Financial Statements are based on the books and records of the Debtors and fairly present in all material respects the financial condition of the Debtors as of the respective dates they were prepared and the results of the operations of the Debtors for the periods indicated.  Each Debtor maintains a standard system of accounting established and administered in accordance with GAAP.

Section 3.08    *Undisclosed Liabilities*.  The Debtor have no Liabilities except (a) those which are adequately reflected or reserved against in the Balance Sheet as of the Balance Sheet Date, and (b) those which have been incurred in the Ordinary Course of Business since the Balance Sheet Date and which are not, individually or in the aggregate, material in amount.

Section 3.09    *Contracts.*

(a)    Schedule 3.09(a) lists each of the following Contracts to which each Debtor is a party or by which each Debtor is otherwise bound (whether as an original party, by succession or assignment or otherwise), excluding Retail Contracts and Dealer Contracts:

(i)    any Contract (or series of related Contracts) that may require any Debtor to pay any other Person in excess of $100,000;

(ii)    any Contract with Harbor, any member of Harbor or any former or current director, officer or member of senior management of any Debtor (or any Affiliate (other than the other Debtor) or immediate family member of any of the foregoing) or otherwise requiring any payment or distribution to be made to any of the foregoing;

(iii)    any Contract relating to any Indebtedness for borrowed money of any Debtor (whether incurred, assumed, guaranteed or secured by any asset of any Debtor);

(iv)    any Contract relating to any Liens on any Leased Real Property or any personal property of any Debtor;

21

CONFIDENTIAL