

_____
Honorable Laurel E. Davis
United States Bankruptcy Judge

**Entered on Docket**
**January 06, 2014**

LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzlawnv.com
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Telephone: (702) 382-1170
Facsimile: (702) 382-1169
Attorneys for Debtors

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>WESTERN FUNDING INCORPORATED,<br>　　　　　Debtor. | Case No.: BK-S-13-17588-LED<br>Chapter 11<br>(Jointly Administered) |
| In re:<br>WESTERN FUNDING INC. OF NEVADA,<br>　　　　　Debtor. | Case No.: BK-S-13-17586-LED<br>Chapter 11 |
| In re:<br>GLOBAL TRACK GPS, LLC,<br>　　　　　Debtor. | Case No.: BK-S-13-17589-LED<br>Chapter 11<br>Date:  December 20, 2013<br>Time:  9:30 a.m. |

**ORDER (A) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE
DEBTORS' OPERATING ASSETS FREE AND CLEAR OF LIENS, CLAIMS,
ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS PROVIDED IN
THE SUCCESSFUL BIDDER'S ASSET PURCHASE AGREEMENT;
(B) AUTHORIZING AND APPROVING PURCHASE AGREEMENT THERETO;
(C) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN OF
THE DEBTORS' EXECUTORY CONTRACTS AND UNEXPIRED LEASES
<u>RELATED THERETO; AND (D) GRANTING RELATED RELIEF</u>**

This matter is before the Court on the *Motion for Entry of an Order Pursuant to Sections 105(a), 363, 365, 503 and 507 of the Bankruptcy Code and Rules 2002, 6004, 6006, 9007, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure Approving and Authorizing (A) Bidding Procedures in Connection with the Sale of Substantially all of the Operating Assets of Debtors; (B) Form and Manner of Notice of the Sale Hearing; and (C) Related Relief* (the "Motion") [Dkt. No. 320][1] of the above-captioned debtors and debtors in possession (the "Debtors") for the entry of an order pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended from time to time, the "Bankruptcy Rules"), and Rule 6004 of the Local Rules of Bankruptcy Practice for the United States District Court for the District of Nevada (the "Local Rules") (a) authorizing either the sale of stock of reorganized debtors pursuant to a chapter 11 plan of reorganization or the sale of substantially all assets of the Debtors, free and clear of liens, claims, encumbrances and other interests; (b) approving the assumption and assignment of certain of the Debtors' executory contracts and unexpired leases related thereto; and (c) granting related relief; and the Court having reviewed and considered the Motion and all objections thereto (such filed objections being referred to as the "Filed Objections"),[2] and the arguments of counsel made, and the evidence adduced at the hearing before the Court on December 20, 2013 (the "Sale Hearing"); and upon the record of the Sale Hearing and these chapter 11 cases and proceedings, and after due deliberation thereon, and good cause appearing therefor and it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[2] At the hearing, the Committee, the B Members, Hadden and Finston noted their withdrawal of their respective objections due to the Purchaser being Westlake and the amount of the Purchaser's bid and the bid's fairness in relation to the value of the assets being purchased; however, at the hearing the Committee, the B Members, Hadden and Finston noted that by withdrawing their objections, none of them was waiving the claims any of them has raised against the Debtors, the insiders of the Debtors, BMO Harris Bank, N.A. and Carfinco Financial Group and that all such claims are being preserved; *provided*, *however*, that such claims and the prosecution of such claims in no way shall or are intended to modify, amend, restrict or otherwise affect this Order, the findings contained herein or the terms herein, which shall otherwise remain in full force and effect. For the avoidance of doubt, nothing herein is intended or should be construed as in any way suggesting or providing for the validity or propriety of any claims asserted or preserved herein, and such claims are disputed.

after due deliberation thereon,

THE COURT HEREBY FINDS AND DETERMINES THAT:

## I.     Jurisdiction, Final Order and Statutory Predicates

A.     The Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a). This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (N) and (O). Venue is proper in this District and in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     This Order constitutes a final and appealable Order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

C.     The statutory predicates for the relief requested in the Motion are sections 105(a), 363(b), (f), and (m), and 365 of the Bankruptcy Code and Bankruptcy Rules 2002(a)(2), 6004(a), (b), (c), (e), (f) and (h), 6006(a), (c) and (d), 9007 and 9014.

D.     On November 27, 2013, the Court entered the *Order Approving and Authorizing (A) Bidding Procedures in Connection with the Purchase of the Operating Assets of the Debtors, (B) Form and Manner of Notice of the Sale Hearing, and (C) Related Relief* (the "Bid Procedures Order") [Dkt. No. 390].

E.     The findings of fact and conclusions of law set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedures, made applicable to this proceeding pursuant to Bankruptcy Rules 7052 and 9014.

F.     To the extent any of the following findings of fact constitute conclusions of law, they are hereby adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are hereby adopted as such. Any findings of fact or conclusions of law stated by the Court on the record at the Sale Hearing are hereby incorporated, to the extent they are not inconsistent herewith.

G.     Westlake Services, LLC, dba Westlake Financial Servicers or its designee or

assignee (the "Purchaser") will be acting in good faith pursuant to section 363(m) of the Bankruptcy Code in closing the transaction contemplated by the Final APA (defined below) at any time on or after entry of this Order, and cause has been shown as to why this Order should not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d).

## II.    Notice of the Sale, Auction and the Cure Amounts

H.    On December 3, 2013, the Debtors filed the *Notice of Bid Deadline, Auction, Sale Approval Hearing in Connection with the Sale of the Debtors' Assets Free and Clear of Liens, Claims and Encumbrances* (the "Bid Procedures Notice") [Dkt. No. 403].

I.    Pursuant to the Bid Procedure Notice, actual written notice of the Sale Hearing, the Auction, the Motion, the Sale, the assumption, assignment and sale of the Assumed Contracts (defined herein) and a reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all known interested persons and entities, including, but not limited to the following parties (the "Notice Parties"): (i) the United States Trustee; (ii) counsel to the Official Committee of Unsecured Creditors (the "Committee"); (iii) counsel to BMO Harris Bank, N.A.; (iv) counsel to the Stalking Horse Bidder (defined herein); (v) the Securities and Exchange Commission; (vi) all taxing authorities having jurisdiction over any of the Purchased Assets (defined herein), including the Internal Revenue Service; (vii) the United States Department of Justice; (viii) all parties that have requested special notice pursuant to Bankruptcy Rule 2002; (ix) all persons or entities known to the Debtors that have or have asserted a lien on, or security interest in, all or any portion of the Purchased Assets; (x) all non-Debtor parties (each a "Contract Counterparty" and collectively, the "Contract Counterparties") to each executory contract and unexpired lease to which one or more of the Debtors is a party (collectively, the "Executory Contracts") that the Debtors propose to assume and assign to the Purchase; and (xiii) counsel to the Purchaser.

J.    On December 11 and 12, 2013, in accordance with the provisions of the Bid Procedures Order, the Debtors served notices (the "Cure Notice") [Dkt. Nos. 476 and 491] upon the parties to certain Executory Contracts: (i) that the Debtors intend to seek to assume and assign

certain Executory Contracts; and (ii) of the relevant cure amounts. Pursuant to Bankruptcy Rule 6006(c), the Court finds that the service of such Cure Notice was good, sufficient and appropriate under the circumstances and no further notice need be given in respect of establishing a cure amount for the Executory Contracts. The Purchaser and the Contract Counterparties have had an opportunity to object to the cure amounts set forth in the Cure Notice.

K.    The Debtors have articulated good and sufficient reasons for the Court to grant the relief requested in the Motion regarding the sales, including, without limitation: (i) approval of the Final APA as the highest and best offer, (ii) determination of final cure amounts; and (iii) approval and authorization to serve the Bid Procedures Notice .

L.    The Cure Notice provided the Purchaser and the Contract Counterparties with proper notice of the potential assumption and assignment of the Executory Contracts and Leases and any cure amount relating thereto, and the procedures set forth therein with regard to any such cure amount satisfy the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

M.    Notice of the Motion, Auction, Sale Hearing, and Sale has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014. The Debtors also have complied with all obligations to provide notice of the Auction, Sale Hearing, and Sale required by the Bid Procedures Order. The notices described above were good, sufficient and appropriate under the circumstances, and no other or further notice of the Motion, Auction, Sale Hearing, Sale or assumption, assignment and sale of the Assumed Contracts is required.

## III.    Good Faith of the Purchaser

N.    The Purchaser is not an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

O.    The Purchaser is purchasing the Purchased Assets in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision, and otherwise has proceeded in good faith in all respects in

connection with this proceeding in that, *inter alia*: (a) the Purchaser recognized that the Debtors were free to deal with any other party interested in acquiring the Purchased Assets; (b) the Purchaser complied with the provisions in the Bid Procedures Order; (c) the Purchaser agreed to subject its bid to the competitive bidding procedures set forth in the Bid Procedures Order; (d) the Purchaser in no way induced or caused the chapter 11 filing of any of the Debtors; (e) all payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the Sale have been disclosed; (f) the Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction; (g) no common identity of directors or controlling stockholders exists between the Purchaser and any of the Debtors; and (h) the negotiation and execution of the final purchase agreement (the "Final APA," which is attached hereto as Exhibit 1 and which incorporates modifications made since the filing of the Motion) and any other agreements or instruments related thereto were at arms' length and in good faith.

## IV.    Highest or Best Offer

P.    The Debtors solicited offers to enter into a strategic transaction, to acquire stock, or to acquire the assets of the Debtors from various potential parties who may be interested in a strategic transaction with the Debtors.  In doing so, the Debtors afforded potential bidders an opportunity to submit a Qualified Bid.

Q.    On November 15, 2013, the Debtors entered into a Purchase and Sale Agreement, dated as of November 15, 2013 (the "Stalking Horse Bid") with Carfinco WFI Inc. (the "Stalking Horse Bidder").

R.    On November 13, 2013, the Court entered an *Order Pursuant to Sections 105(a), 363 and 503(b) of the Bankruptcy Code and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure for an Order Approving Breakup Fee and Expense Reimbursement Payments to Plan Sponsor* [Dkt. No. 340], pursuant to which the Court approved a breakup fee in the amount of $365,000 and a reimbursement of expenses up to an amount of $450,000 in favor of the Stalking Horse Bidder (the "Stalking Horse Bid Protections"), due and owing by the Debtors to the Stalking Horse Bidder in the event that a transaction other than the Stalking Horse Bid (an

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

"Alternative Transaction") is consummated, and payable by the Debtors' estates from the proceeds of such Alternative Transaction.

S. Pursuant to the Bid Procedures Order, offers representing Alternative Transactions were to be submitted on or before December 16, 2013, at 5:00 p.m. (the "Bid Deadline").

T. The Purchaser submitted an Asset Purchase Agreement, dated as of December 16, 2013 (the "Purchaser Offer"), and statements and documents in compliance with requirements of the Bid Procedures Order prior to the Bid Deadline (the "Purchaser Offer Package"). On December 16, 2013, the Debtors advised the Purchaser that its Purchaser Offer Package was submitted timely and in conformity with the procedures and requirements set forth in the Bid Procedures Order, that the Purchaser was a "Qualified Bidder" (as defined in the Bid Procedures Order) and that the Purchaser Offer was a "Qualified Bid" (as defined in the Bid Procedures Order).

U. On December 16, 2013, BMO Harris Bank, N.A. provided notice to the Debtors of its intent to credit bid at the Auction.

V. On December 16, 2013, and in light of the multiple Qualified Bidders, the Debtors filed their *Notice of Auction* [Dkt. No. 530].

W. On December 18, 2013, the Auction was held. The bidders at the Auction included the Stalking Horse Bidder, the Purchaser and BMO Harris Bank, N.A. (collectively, the "Auction Bidders"). At the commencement of the Auction, the Purchaser Offer was determined to be the initial highest and best offer. After successive bidding at the Auction by the Auction Bidders, the ultimate offer of the Purchaser for a purchase price equal to 80.090% of the Net Finance Receivables as of the date immediately prior to the Closing Date (defined herein) plus an amount equal to the Stalking Horse Bid Protections, pursuant and subject to the terms of the Final APA (the "Prevailing Purchaser Offer") was determined to be the highest and best offer, and the other Auction Bidders declined to submit any further bids. Upon acknowledgment by the other Auction Bidders that none of them would submit any further bids, the Auction was concluded and the Prevailing Purchaser Offer was accepted by the Debtors and announced as the highest and best offer.

X.      On December 18, 2013, the Debtors filed their *Notice of Auction Results* [Dkt. No. 562], which gave notice of the Prevailing Purchaser Offer as the highest and best offer received at the Auction.

Y.      The Final APA constitutes the highest or best offer for the Purchased Assets, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. The Debtors' determination that the Final APA constitutes the highest or best offer for the Purchased Assets was a reasonable exercise of the Debtors' business judgment.

Z.      The Final APA represents a fair and reasonable offer to purchase the Purchased Assets under the circumstances of these chapter 11 cases. No other person or entity or group of entities has offered to purchase the Purchased Assets for greater economic value to the Debtors' estate than the Purchaser.

AA.     Approval of the Motion and the Final APA and each of its exhibits, and the consummation of the transactions contemplated thereby is in the best interests of the Debtors, their creditors, their estates and other parties in interest.

BB.     The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale prior to, and outside of, a plan of reorganization

CC.     The Sale pursuant to the Final APA constitutes an Alternative Transaction.

**V.      No Fraudulent Transfer**

DD.     The consideration provided by the Purchaser pursuant to the Final APA is fair and adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.

**VI.     Validity of Transfer**

EE.     The Debtors have full corporate power and authority to execute and deliver the Final APA and all other documents contemplated thereby, and no further consents or approvals are required for the Debtors to consummate the transactions contemplated by the Final APA.

FF.    The transfer of each of the Purchased Assets to the Purchaser will be as of the Closing Date a legal, valid and effective transfer of such assets, and vests or will vest the Purchaser with all right, title and interest of the Debtors to the Purchased Assets free and clear of all Liens (defined below) and Claims (defined below) accruing, arising or relating to any time prior to the Closing Date, except for any assumed liabilities solely relating to the Assumed Contracts (the "Assumed Liabilities").

## VII.    Section 363(f) Is Satisfied

GG.    The Purchaser would not have entered into the Final APA and would not consummate the transactions contemplated thereby (by paying the Purchase Price (as defined in the Final APA) and assuming the Assumed Liabilities) if the sale of the Purchased Assets to the Purchaser, and the assumption, assignment and sale of the Assumed Contracts to the Purchaser, were not, except as otherwise provided in the Final APA with respect to the Assumed Liabilities, free and clear of all Liens and Claims of any kind or nature whatsoever, or if the Purchaser would, or in the future could (except and only to the extent expressly provided in the Final APA and with respect to the Assumed Liabilities), be liable for any of such Liens or Claims, including, but not limited to, Liens or Claims in respect of the following: (1) all mortgages, deeds of trust and security interests; (2) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of any Debtor; (3) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Worker Adjustment and Retraining Act of 1988, (g) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (h) the Americans with Disabilities Act of 1990, (i) the Consolidated Omnibus Budget Reconciliation Act of 1985, (j) state labor laws; (k) state discrimination laws, (1) state unemployment compensation laws or any other similar state laws, or (m) any other state or federal

benefits or claims relating to any employment with any of the Debtors or any of their respective predecessors; (4) any bulk sales or similar law; (5) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (6) any Environmental Law(s) (as defined in the Final APA); and (7) any theories of successor liability.

HH.    The Debtors may sell the Purchased Assets free and clear of all Liens and Claims against the Debtors, their estates or any of the Purchased Assets (except for any Assumed Liabilities under the Final APA) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Liens or Claims against the Debtors, their estates or any of the Purchased Assets who did not object, or who withdrew their objections, to the Sale or the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of such Liens or Claims who did object fall within one or more of the other subsections of section 363(f) and are adequately protected by having their Liens and/or Claims, if any, in each instance against the Debtors, their estates or any of the Purchased Assets, attach to the cash proceeds of the Sale ultimately attributable to the Purchased Assets in which such creditor alleges an interest, in the same order of priority, with the same validity, force and effect that such creditor had prior to the Sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

**VIII.   Assumption and Assignment of the Executory Contracts**

II.    The assumption and assignment of the Assumed Contracts pursuant to the terms of this Order are integral to the Final APA and is in the best interests of the Debtors and their estates, creditors and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.

JJ.    Except as provided in this Order or as may be subsequently determined by the parties or this Court in accordance with this Order, the amounts set forth on Exhibit 2 annexed hereto are the amounts necessary to cure all monetary defaults and pay all actual pecuniary losses under the Assumed Contracts as of the Closing Date under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code (the "Cure Amounts").

KK.    Pursuant to the terms of the Final APA, the Purchaser will: (i) cure and/or provide adequate assurance of cure of any Cure Amounts (if any) existing prior to the Closing Date under any of the Assumed Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code; (ii) provide compensation or adequate assurance of compensation to any party for actual pecuniary loss to such party resulting from a default prior to the Closing Date under any of the Assumed Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code; and (iii) provide adequate assurance of its future performance under the Assumed Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(c)(2)(B) of the Bankruptcy Code.

LL.    Pursuant to the Final APA, the Purchaser shall have reasonable access to and shall be entitled to enter upon the Excluded Real Properties (defined herein) prior to the Closing Date in connection with the transition of the transactions contemplated under or in connection with the Final APA, and after the Closing Date pursuant to an agreement between the Debtors and the Purchaser.

IX.    **Compelling Circumstances for an Immediate Sale**

MM.    To enhance the Debtors' level of liquidity, to reduce the amount of postpetition obligations borne by the Debtors, and to maximize the amount of proceeds available to the Debtors' bankruptcy estates, it is essential that the Sale of the Purchased Assets occur within the time constraints set forth in the Final APA.  Time is of the essence in consummating the Sale.

NN.    Given all of the circumstances of these chapter 11 cases and the adequacy and fair value of the purchase price under the Final APA, the proposed Sale of the Purchased Assets to the Purchaser constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved.

OO.    The consummation of the transaction is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f), and all of the applicable requirements of such sections have been complied with in respect of the transaction.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

**General Provisions**

1.      The relief requested in the Motion is granted and approved, and the Sale contemplated thereby is approved as set forth in this Order.

2.      This Court's findings of fact and conclusions of law, set forth in the Bid Procedures Order, are incorporated herein by reference.

3.      The Filed Objections have been withdrawn on the conditions noted herein above on page 2, footnote 2, and any other objections to the entry of this Order or the relief granted herein and requested in the Motion that have not been withdrawn, waived or settled, or not otherwise resolved pursuant to the terms hereof, if any, are hereby denied and overruled on the merits with prejudice.  No appeal, motion to reconsider or similar pleading has been filed with respect to the Bid Procedures Order, and the Bid Procedures Order is a final order of the Bankruptcy Court, has not been vacated, withdrawn, rescinded or amended, and remains in full force and effect.

**Approval of the Final APA**

4.      The Final APA and all other ancillary documents, including, without limitation, the Building license agreement (defined herein), and all of the terms and conditions thereof, are hereby approved, subject to certain amendments and modifications provided by the terms of this Order.

5.      Pursuant to section 363(b) of the Bankruptcy Code, the Debtors are authorized and empowered to take any and all actions necessary or appropriate to (i) consummate the Sale of each of the Purchased Assets (as defined in the Final APA) to the Purchaser pursuant to and in accordance with the terms and conditions of the Final APA, (ii) close the Sale as contemplated in the Final APA and this Order, and (iii) execute and deliver, perform under, consummate, implement and close fully the Final APA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Final APA and the Sale, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Final APA and such other ancillary documents.

6.      This Order shall be binding in all respects upon the Debtors, including the Debtors,

their estates, all holders of equity interests in any Debtor, all holders of any Claim(s) (whether known or unknown) against any Debtor, any holders of Liens or Claims against or on all or any portion of the Purchased Assets, all Contract Counterparties, the Purchaser and all successors and assigns of the Purchaser, the Purchased Assets and any trustees, if any, subsequently appointed in any of the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Debtors' cases. This Order and the Final APA shall inure to the benefit of the Debtors, their estates, their creditors, the Purchaser and their respective successors and assigns.

**Transfer of the Purchased Assets**

7.    Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, the Debtors are authorized to transfer the Purchased Assets on the Closing Date (as defined in the Final APA).  Such Purchased Assets shall be transferred to the Purchaser upon and as of the Closing Date and such transfer shall constitute a legal, valid, binding and effective transfer of such Purchased Assets and, upon the Debtors' receipt of the Purchase Price, shall be free and clear of all charges, liens (statutory or otherwise), interests, security interests, claims, mortgages, leases, subleases, hypothecations, deeds of trust, pledges, options, rights of ruse or possession, rights of first offer or first refusal, easements, servitudes, restrictive covenants, encroachments, encumbrances, rights of way, transfer restrictions or other similar restrictions of any kind, including any restrictions on use, voting, transfer, receipt of income or exercise of any other attribute of ownership, however arising or existing (including all "Liens" as defined in the Final APA, "Liens") and claims, including, without limitation, all "claims" within the meaning of sections 101(5), 102(2) and 105 of the Bankruptcy Code, and all interests, encumbrances, rights of setoff, recoupment, netting and deductions ("Claims"), except Assumed Liabilities under the Final APA. Upon the Closing, the Purchaser shall take title to and possession of the Purchased Assets subject only to the Assumed Liabilities. Pursuant to section 363(c) of the Bankruptcy Code, other than with respect to the Assumed Liabilities, the transfer of title to the Purchased Assets and the Assumed Contracts shall be free and clear of (a) any and all Liens, (b) any and all liabilities, and (c) any and all Claims including, without limitation, any and all claims pursuant to any successor or successor

in interest liability theory; *provided*, *however*, that the Purchaser shall not be relieved of liability with respect to the Assumed Liabilities, consisting solely of obligations accruing under the Assumed Contracts from and after the Closing.

8.    All Liens and/or Claims shall attach solely to the proceeds of the Sale with the same validity, priority, force and effect that they now have as against the Purchased Assets, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

9.    Except as expressly provided by the Final APA with respect to Assumed Liabilities, all persons and entities holding Liens, Claims or interests in all or any portion of the Purchased Assets arising under or out of, in connection with, or in any way relating to the Debtors, the Purchased Assets, the operation of the Debtors' business prior to the Closing Date or the transfer of the Purchased Assets to the Purchaser, hereby are forever barred, estopped and permanently enjoined from asserting against the Purchaser or its successors or assigns, their property or the Purchased Assets, such persons' or entities' Liens or Claims in and to the Purchased Assets.  On the Closing Date, each creditor is authorized and directed to execute such documents and take all other actions as may be deemed by the Purchaser to be necessary or desirable to release Liens or Claims on the Purchased Assets, if any, as provided for herein, as such Liens or Claims may have been recorded or may otherwise exist.

10.    Notwithstanding anything to the contrary contained herein, to the fullest extent permitted by applicable law, neither the Purchaser nor its affiliates, successors or assigns shall, as a result of the consummation of the transactions set forth in the Final APA: (i) be a successor to the Debtors or the Debtors' estates; (ii) have, de facto or otherwise, merged or consolidated with or into the Debtors or the Debtors' estates; or (iii) be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors.  Except for the Assumed Liabilities arising solely from the Assumed Contracts, the Purchaser shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates including, but not limited to, any bulk sales law.

11.    For the avoidance of doubt, the Purchased Assets do not include:  (a) any and all

claims or causes of action of Debtors or their estates against any current or former officer, director, manager, member, director and/or shareholder of Debtors, or any of their insiders or affiliates; (b) any and all claims or causes of action by Debtors or their estates under chapter 5 of the Bankruptcy Code against any party.

12.    All persons and entities that are in possession of some or all of the Purchased Assets on the Closing Date are directed to surrender possession of such Purchased Assets to the Purchaser or its assignee on the Closing Date.

13.    A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any of the Liens, Claims and other encumbrances of record.

14.    If any person or entity which has filed statements or other documents or agreements evidencing Liens on, Claims or interests in, all or any portion of the Purchased Assets shall not have delivered to the Debtors prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary or desirable to the Purchaser for the purpose of documenting the release of all Liens or Claims, which the person or entity has or may assert with respect to all or any portion of the Purchased Assets, the Debtors are hereby authorized and directed, and the Purchaser is hereby authorized, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Purchased Assets.

15.    On the Closing Date, this Order shall be construed as, and shall constitute for any and all purposes, a full and complete general assignment, conveyance and transfer of the Debtors' interests in the Purchased Assets consisting of the Debtors' interests in, to and under licenses and permits issued by any federal, state and local governmental agency, department, authority or jurisdiction. Each and every federal, state and local governmental agency, department, authority or jurisdiction is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Final APA, including any modification or amendment to any public records or documents to acknowledge the Purchaser as

the new owner, operator, licensee or permittee of any applicable license, permit or similar asset.

16.     With respect to the transactions consummated pursuant to this Order, this Order is and shall be sole and sufficient evidence of the transfer of title to the Purchaser, and the sale transaction consummated pursuant to this Order shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept this Order as sole and sufficient evidence of such transfer of title and shall rely upon this Order in consummating the transactions contemplated hereby.

17.     The provisions of this Order authorizing the sale of the Purchased Assets free and clear of Liens, other than Assumed Liabilities, shall be self-executing, and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents or other instruments to effectuate, consummate and implement the provisions of this Order; *provided*, *however*, that the Debtors and the Purchaser, and each of their respective officers, employees and agents are authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Debtors or the Purchaser deem necessary or appropriate to implement and effectuate the terms of the Final APA and this Order.

18.     Notwithstanding anything to the contrary in this Order, in the Motion or the Final APA, the Purchaser shall receive the benefits and burdens of, and be solely responsible for payment in full of all accrued charges, payments, and the like arising under or pursuant to the Assumed Liabilities.  If the Purchaser disputes any alleged charge or payment under any of the Assumed Liabilities and the parties are unable to come to an agreement regarding the amount actually owed, the dispute may be adjudicated by the Bankruptcy Court or any other court of competent jurisdiction.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

**Executory Contracts and Leases**

19.     Upon the Designate Date (defined herein), the Debtors are authorized and directed to assume and assign the Assumed Contracts (as defined in the Final APA) to the Purchaser free and clear of all Liens and Claims, as described herein.  The payment of the applicable Cure Amounts (if any) by the Purchaser shall (a) effect a cure of all defaults existing thereunder as of the Closing Date; (b) compensate for any actual pecuniary loss to such non-Debtor party resulting from such default, and (c) together with the assumption of the Assumed Contracts by the Purchaser, constitute adequate assurance of future performance thereof.  The Purchaser shall then have assumed the Assumed Contracts and, pursuant to section 365(f) of the Bankruptcy Code, the assignment by the Debtors of such Assumed Contracts shall not be a default thereunder.  After the payment of the relevant Cure Amounts by the Purchaser, neither the Debtors nor the Purchaser shall have any further liabilities to the Contract Counterparties other than the unpaid obligations under the Assumed Contracts that become due and payable on or after the date of the Cure Notice.

20.     Within 15 days after the Closing Date (or such later date as agreed to between the Debtors and the Purchaser), the Purchaser may, by written notice to the Debtors, designate additional Executory Contracts as Assumed Contracts to be assigned to Purchaser in addition to those Executory Contracts designated as Assumed Contracts in the Final APA, or choose to exclude certain Executory Contracts, including those contracts and leases previously designated to be Assumed Contracts in the Final APA.  The assumption and assignment of an Assumed Contract shall be deemed effective upon the Closing Date, irrespective of the date such contract or lease was designated as an Assumed Contract.  Any Executory Contract not designated as an Assumed Contract shall not be assumed by the Debtors.

21.     Any provisions in any Assumed Contract that prohibits or conditions the assignment of such Assumed Contract or allows the party to such Assumed Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Assumed Contract constitute unenforceable anti-assignment provisions that are void and of no force and effect.  All other requirements and conditions under sections 363 and 365

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

of the Bankruptcy Code for the assumption by the Debtors and assignment to the Purchaser of the Assumed Contract have been satisfied. Upon closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested with all right, title and interest of the Debtors under the Assumed Contract.

22.     Upon closing and the payment of the relevant Cure Amounts, if any, the Purchaser shall be deemed to be substituted for the Debtors as a party to the applicable Assumed Contract and the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assumed Contract, except to the extent of claims covered by the Debtors' existing insurance policies.

23.     Upon the payment of the applicable Cure Amount, if any, the Assumed Contracts will remain in full force and effect, and no default shall exist under the Assumed Contracts nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.

24.     There shall be no rent accelerations, assignment fees, increases (including advertising rates) or any other fees charged to the Purchaser or the Debtors solely as a result of the assumption and assignment of the Assumed Contracts.

25.     Other than as provided in this Order, pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, all Contract Counterparties are forever barred and permanently enjoined from raising or asserting against the Purchaser any assignment fee, default, breach or claim or pecuniary loss, or condition to assignment, arising under or related to the Assumed Contracts existing as of the Closing Date or arising by reason of the Closing.

26.     The Final APA, and any related agreements, documents or other instruments may be modified, amended or supplemented by the Debtors and the Purchaser, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court; *provided, however*, that any (a) such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates and has been agreed to between the Debtors and the Purchaser and (b) such modification, amendment or supplement is filed with the Bankruptcy Court and

provided on forty-eight (48) hours prior notice to its effectiveness to counsel for the Committee and counsel for BMO Harris Bank, N.A. Any material modification, amendment or supplement to the Final APA must be approved by Order of the Bankruptcy Court following a motion on notice to all interested parties.

**Transition Provisions**

27.     Prior to the Closing Date, the Debtors shall employ all reasonable efforts to ensure the security and safeguard of all Purchased Assets.  Effective immediately upon the conclusion of the Sale Hearing, the Purchaser and its employees, agents and professionals shall be permitted to access and enter upon the Excluded Real Properties (as defined under the Final APA) and any other location occupied by the Debtors and where the Purchased Assets may be located (the "Debtors' Locations") in order to ensure the security and safeguard of the Purchased Assets and to facilitate an orderly transition of the transactions contemplated under the Final APA and this Order (the "Transition Matters").  The Debtors and the Purchaser may enter into arrangements, in writing, with respect to the use of equipment, assets and other resources of the Debtors that are not Purchased Assets, without further notice or court order, with respect to Transition Matters, so long that such arrangements have no adverse economic consequences to the Debtors' estates.  The Debtors, and its employees, agents and professionals shall cooperate with the Purchaser, its employees, agents and professionals with respect to Transition Matters.

28.     Pursuant to the Final APA, after the Closing Date, the Purchaser shall have a period of time to access, enter and occupy the Debtors' Locations pursuant to terms of the Building license agreement to be agreed to between the Debtors and the Purchaser (the "Building license agreement").

**Other Provisions**

29.     Effective upon the Closing Date and except as otherwise provided by stipulations filed with or announced to the Court with respect to a specific matter, all persons and entities are forever prohibited and permanently enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

proceeding against the Purchaser, its successors and assigns, or the Purchased Assets, with respect to any (a) Lien or Claim arising under, out of, in connection with or in any way relating to the Debtors, the Purchaser, the Purchased Assets, or the operation of the Purchased Assets prior to the Closing of the Sale, or (b) successor liability, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding against the Purchaser, its successors or assigns, assets or properties; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Purchaser, its successors, assets or properties; (iii) creating, perfecting or enforcing any Lien or Claim against the Purchaser, its successors or assigns, assets or properties; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due the Purchaser or its successors or assigns; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (vi) revoking, terminating or failing or refusing to renew any license, permit or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with the Purchased Assets.

30.     Except for the Assumed Liabilities or as otherwise expressly set forth in the Final APA, the Purchaser shall not have any liability or other obligation of the Debtors arising under or related to any of the Purchased Assets. Without limiting the generality of the foregoing, and except for the Assumed Liabilities provided in the Final APA, the Purchaser shall not be liable for any Claims against the Debtors or any of its predecessors or affiliates, and the Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of any of the Purchased Assets prior to the Closing Date. The Purchaser has given substantial

consideration under the Final APA for the benefit of the holders of any Liens or Claims. The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Purchaser, which releases shall be deemed to have been given in favor of the Purchaser by all holders of Liens or Claims against or interests in the Debtors or any of the Purchased Assets.

31.    Upon closing, the sale proceeds shall be paid to the Debtors for distribution at the time of closing as follows: (a) first, to pay all the allowed outstanding obligations under the Debtors' secured financing agreements with BMO Harris Bank, N.A., (b) second, to pay the Stalking Horse Bid Protections, including the Break-up Fee and Expense Reimbursement, which Expense Reimbursement is subject to submission by the Stalking Horse Bidder to the Debtors, the Committee and the Purchaser of evidence of such expenses and confirmation thereto from the Debtors, the Committee and the Purchaser (which confirmation shall not be unreasonably withheld), and (c) third, to the Debtors' estates. The Debtors are authorized and directed to pay, or to cause the payment of, the Stalking Horse Bid Protections (subject to the foregoing confirmation of evidence of expenses) from the sale proceeds from the Purchaser.

32.    The transactions contemplated by the Final APA are undertaken by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Assumed Contracts), unless such authorization and such Sale are duly stayed pending such appeal. The Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

33.    The sale and transfer of the Purchased Assets to the Purchaser pursuant to the Final APA is consistent with the findings of the Ombudsman appointed in the Debtors' cases as set forth in the *Report of Consumer Privacy Ombudsman* [Dkt. No. 565], and the Purchaser shall take commercial reasonable efforts to comply with the recommendations of the Ombudsman as provided

in such report.

34.     If requested by the Purchaser, the Debtors are authorized and directed to change their corporate names in the domestic jurisdictions in which they are registered or authorized to do business under the names "Western Funding Incorporated," "Western Funding of Nevada," and "Global Track GPS, LLC" to "WFI Debtor," WFN Debtor" and "GT Debtor," respectively (or such other names mutually agreed upon between the Debtors and the Purchaser), and to provide the Purchaser with evidence of such name changes. Upon such event, the caption of all pleadings to be filed in this case shall be changed to the new names, and all pleadings shall be filed under the new caption.

35.     Notwithstanding the provisions of Bankruptcy Rule 6004 and Bankruptcy Rule 6006 or any applicable provisions of the Local Rules, this Order shall not be stayed for fourteen (14) days after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in such rules is hereby expressly waived and shall not apply. Time is of the essence in approving the Sale, and the Debtors and the Purchaser intend to, and are authorized to, close the Sale as soon as practicable, but in no event later than January 8, 2014.

36.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

37.     The failure specifically to include any particular provision of the Final APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Final APA be authorized and approved in its entirety except as otherwise expressly provided by in this Order.

38.     The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Final APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to the Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale.

39.     All time periods set forth in this Order shall be calculated in accordance with

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

Bankruptcy Rule 9006(a).

40.    To the extent that this Order is inconsistent with any prior Order, the Final APA, any other document or pleading with respect to the Motion in these chapter 11 cases, the terms of this Order shall govern.

**IT IS SO ORDERED.**

PREPARED AND SUBMITTED:

APPROVED / ~~DISAPPROVED~~:

By:  /s/ Matthew C. Zirzow
LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101

Attorneys for Debtors

By:  /s/ William Brody
BUCHALTER NEMER
WILLIAM BRODY, ESQ.
California Bar No. 136136
E-mail:  wbrody@buchalter.com
1000 Wilshire Boulevard, Suite 1500
Los Angeles, California 90017

Attorneys for Westlake Services, LLC,
dba Westlake Financial Servicers

APPROVED / ~~DISAPPROVED~~:

APPROVED / ~~DISAPPROVED~~:

By:  /s/ Jeanette McPherson
SCHWARTZER & MCPHERSON
LENARD E. SCHWARTZER, ESQ.
Nevada Bar No. 399
JEANETTE MCPHERSON, ESQ.
Nevada Bar No. 5423
2850 S. Jones Blvd., #1
Las Vegas, Nevada 89146

Attorneys for the Official Committee
of Unsecured Creditors

By:  /s/ Alison Bauer
FOX ROTHSCHILD, LLP
BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
MICAELA C. RUSTIA MOORE, ESQ
Nevada Bar No. 9676
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169

TORYS LLP
ALISON BAUER, ESQ.
1114 Avenue of the America, 23rd Floor
New York, New York 10036

Attorneys for Carfinco Financial Group, Inc.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

1   APPROVED / DISAPPROVED:              APPROVED / ~~DISAPPROVED~~:

2

3   By:  /s/ David T.B. Audley            By:    /s/ Richard Holley
    LIONEL SAWYER & COLLINS               COTTON, DRIGGS, WALCH, HOLLEY,
4   RODNEY M. JEAN, ESQ.                  WOLOSON & THOMPSON
    Nevada Bar No. 1395                   RICHARD HOLLEY, ESQ.
5   E-mail:  rjean@lionelsawyer.com       Nevada Bar No. 3077
    RYAN ANDERSEN, ESQ.                   OGONNA ATAMOH, ESQ.
6   Nevada Bar No. 12321                  Nevada Bar No. 7589
7   E-mail:  randersen@lionelsawyer.com   400 South Fourth Street, Third Floor
    300 South Fourth Street, Suite 1700   Las Vegas, Nevada 89101
8   Las Vegas, Nevada 89101

9   CHAPMAN AND CUTLER, LLP              Attorneys for Mark Finston, James B.
    DAVID T.B. AUDLEY, ESQ.             Hadden, Phillip D. Nick, Ellen H. Hardymon,
10  *Admitted Pro Hac Vice*            Suzanne K. Nick Irrevocable Family Trust
    Illinois Bar No. 6190602            One, Suzanne K. Nick Irrevocable Family
11  E-mail:  audley@chapman.com         Trust Two, Thomas F. Havens Irrevocable
12  111 West Monroe Street              Family Trust One, and Thomas F. Havens
    Chicago, Illinois 60603             Irrevocable Family Trust Two
13

14  Attorneys for BMO Harris Bank, N.A.

15  APPROVED / DISAPPROVED:

16

17  By:    No Response
    GORDON SILVER
18  GREGORY E. GARMAN, ESQ.
19  Nevada Bar No.
    E-mail:  ggarman@gordonsilver.com
20  3960 Howard Hughes Parkway, 9 th Floor
    Las Vegas, Nevada 89169
21

22  Attorney for Frederick and Katherine Cooper

23  . . .

24  . . .

25  . . .

26

27

28

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

## **LR 9021 CERTIFICATION**

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

☐    The court has waived the requirement of approval under LR 9021(b)(1).

☐    No party appeared at the hearing or filed an objection to the motion.

☒    I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

| | |
|---|---|
| Jeanette McPherson, Esq./Committee: | Approved |
| Richard Holley, Esq./B Parties: | Approved |
| David T.B. Audley, Esq./BMO Harris Bank: | Approved |
| Brett Axelrod, Esq./Carfinco Financial Group, Inc.: | Approved |
| William Broady, Esq./Westlake: | Approved |
| Gregory E. Garman, Esq./Coopers: | No Response |

☐    I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

# # #

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES