# * * § 362 INFORMATION COVER SHEET * *

WFI DEBTOR
**DEBTOR**
GUERIN SENTER
**MOVANT**

Case No: 13-17588-LED
CHAPTER: 11

MOTION #:

### Certification of Attempt to Resolve the Matter Without Court Action:

Moving counsel hereby certifies that pursuant to the requirements of LR 4001(a)(2), an attempt has been made to resolve the matter without court action, but movant has been unable to do so.

Date: 3/10/14    Signature: /s/ Ryan J. Works
Attorney for Movant

PROPERTY INVOLVED IN THIS MOTION: Directors and Officers Insurance Policy
NOTICE SERVED ON: Debtor(s) ☐ ; Debtor's counsel ☑ ; Trustee ☐ ;
DATE OF SERVICE: 3/10/14

| MOVING PARTY'S CONTENTIONS: | DEBTOR'S CONTENTIONS: |
|---|---|
| The EXTENT and PRIORITY of LIENS: | The EXTENT and PRIORITY of LIENS: |
| 1st _____ | 1st _____ |
| 2nd _____ | 2nd _____ |
| 3rd _____ | 3rd _____ |
| 4th _____ | 4th _____ |
| Other: _____ | Other: _____ |
| Total Encumbrances: _____ | Total Encumbrances: _____ |
| APPRAISAL of OPINION as to VALUE: | APPRAISAL of OPINION as to VALUE: |

| TERMS of MOVANT'S CONTRACT with the DEBTOR(S):: | DEBTOR'S OFFER of "ADEQUATE PROTECTION" for MOVANT : |
|---|---|
| Amount of Note: _____ | . |
| Interest Rate: _____ | . |
| Duration: _____ | . |
| Payment per Month: _____ | . |
| Date of Default: _____ | . |
| Amount in Arrears: _____ | . |
| Date of Notice of Default: _____ | . |
| SPECIAL CIRCUMSTANCES: Request to lift stay to proceed against D&O policy and to add Debtor as a nominal defendant as an insured under the policy | SPECIAL CIRCUMSTANCES: |
| SUBMITTED BY: Ryan J. Works  /s/ Ryan J. Works | SUBMITTED BY: _____  SIGNATURE: _____ |

MCDONALD CARANO WILSON LLP
RYAN J. WORKS, NV Bar No. 9224
DAVID STOFT, NV Bar No. 10241
AMANDA M. PERACH, NV Bar No. 12399
2300 West Sahara Avenue, Suite 1200
Las Vegas, NV 89102
Telephone: (702) 873-4100
Facsimile: (702) 873-9966
rworks@mcdonaldcarano.com
dstoft@mcdonaldcarano.com
*Attorneys for Guerin Senter*

Electronically filed on March 10, 2014

IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>WFI DEBTOR,<br><br>                    Debtor. | Case No. 13-17588-LED<br><br>Chapter 11<br>(Jointly Administered) |
| In re<br><br>WFI DEBTOR,<br><br>                    Debtor. | Case No. 13-17586-LED<br>Chapter 11<br><br>**MOTION FOR RELIEF FROM AUTOMATIC STAY TO PROCEED AGAINST D&O INSURANCE AND ADD DEBTOR AS A NOMINAL PARTY TO STATE COURT LITIGATION**<br><br><u>Hearing Date:</u><br><u>Hearing Time:</u><br><br><u>Hearing Place:</u> United States Bankruptcy Court, Foley Federal Building, 300 Las Vegas Boulevard South, Las Vegas, Nevada, Third Floor, Courtroom 3 |

Pursuant to 11 U.S.C §§ 105(a) & 362(d), Guerin Senter ("<u>Senter</u>"), by and through his counsel, McDonald Carano Wilson, LLP, hereby submits this *Motion for Order That D&O Insurance is Not Property of the Estate; Or Alternatively, Motion for Relief From Automatic Stay* (the "<u>Motion</u>"). This Motion concerns the case of *Guerin Senter v. Frederick Cooper et al.*,

currently pending in Department XVIII of the Eighth Judicial District Court, Clark County, Nevada, Case No. A-13-688599-C (the "State Court Litigation"). Senter has various contract and tort-based claims against the Debtor based on Debtor's termination of Senter from Debtor's employment. These claims form the basis for the proof of claim that Senter has timely filed in this Bankruptcy Case. [Claim No. 11]. In addition to the claims Senter has against the Debtor, Senter has various tort claims against two Directors and Officers ("D&O") of the Debtor, Frederick and Katherine Cooper (collectively, the "Coopers"). In relation to the State Court Litigation, Senter wishes to pursue any available insurance proceeds, including the D&O insurance policy. As such, although the D&O insurance policy proceeds may not be property of Debtor's estate, it is out of an abundance of caution that Senter seeks relief from the automatic stay in order to pursue any available insurance proceeds, and to name WFI as a nominal party to the state court case insofar as WFI is an insured under the D&O policy. Senter previously reached out to the Debtor and Committee in an attempt to get a stipulation on this matter, but the parties were unable to reach an agreement.

This Motion is supported by the following Memorandum of Points and Authorities, the Declaration of Guerin Senter (the "Senter Decl.") filed concurrently herewith, together with all exhibits thereto, the pleadings and papers on file herein, and the arguments of counsel to be made at the hearing of this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.  JURISDICTION**

1.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157.

2.  This is a core proceeding under 28 U.S.C. § 157(b)(2).

3.  Venue in the District of Nevada is proper pursuant to 28 U.S.C. §§ 1408 and 1409 because the Debtor is a resident of Clark County, Nevada.

4.  The statutory predicates for relief sought herein are set forth in §§ 362 and 105(a) of Title 11 of the United States Code (the "Bankruptcy Code"), including all corresponding and applicable local rules of bankruptcy procedure ("LR").

5. Pursuant to LR 9014.2, Senter consents to the entry of a final order or judgment by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

## II. RELEVANT FACTS

1. The Debtor was a subprime automobile financing company owned by Harbor Structured Finance LLC for which Frederick Cooper ("Frederick") and Katherine Cooper ("Katherine") (collectively, the "Coopers") are the majority shareholders. Frederick served as Debtor's President and Chief Executive Office, and Katherine served as Debtor's Executive Vice President and Chief Operations Officer. *See* Senter Decl. at ¶ 4.

2. Eventually, in the middle part of 2011, the Debtor, by and through the Coopers, presented Senter with an employment package that included financial terms, as well as other benefits, that persuaded Senter to sell his successful CPA firm, Firebird Financial ("Firebird"), and take the full-time position of Director of Investment Opportunities ("DIO") of Debtor. *Id.* at ¶ 5. After negotiating the terms of the employment contract for approximately four months, on or about August 25, 2011, the Debtor and Senter executed a written employment agreement (the "2011 Employment Agreement"). *Id.* at ¶ 6.

3. In May of 2012, Senter was promoted to Chief Investment Officer ("CIO"), and a new employment agreement (the "2012 Employment Agreement") was negotiated and executed by Senter and the Debtor. *Id.* at ¶ 7.

4. The 2012 Employment Agreement provides for the following:

A. A three year term of employment (from the date of the 2011 Employment Agreement) at a yearly salary of $250,000.00 (section 4(a));

B. 60-day notice period for a "termination without cause" (section 9(c));

C. A payout of accrued and unused vacation time (section 7);

D. Severance pay of approximately $250,000 (section 9(e)(ii));

E. The payment of Firebird's lease payments (section 27);

F.   Bonuses for funds raised in the form of subordinated debt (section 4(c)) or as equity capital (section 4(f)); and

G.   A termination of the 2012 Employment Agreement resulting from, if not cured within 15 days following notice thereof, a diminution in Senter's responsibilities and/or title of CIO, a reduction in salary and/or benefits, and any other material breach by Western Funding of a material provision of the agreement (section 9(d)).

*Id.* at ¶ 8 and Exhibit 1.

5.   In March of 2013, the Debtor, by and through the Coopers, met with Senter and provided him notice that his salary would be reduced by 20% as part of an effort decrease costs. *Id.* at ¶ 9. The meeting concluded with Senter requesting time to consider the salary reduction. *Id.*

6.   Approximately one week later, on March 11, 2013, Senter provided the Debtor with written notice that their requested salary reduction (as well as other actions related to his role and responsibilities as CIO and/or CFO) constituted a termination of the 2012 Employment Agreement if not remedied within 15 days. *Id.* at ¶ 10. Senter also met with the Debtor to further explain that he should not be subject to a salary reduction in light of the Coopers' continued lavish spending of the Debtor's funds. *Id.*

7.   In response, the Debtor immediately terminated Senter, confiscated his cellular phone, and demanded that Senter immediately leave the Debtor's offices. *Id.* at ¶ 11. Senter complied. *Id.* Debtor's security searched his belongings as Senter exited the offices, and within just a few minutes, Senter's access to the computer network was removed. *Id.*

8.   At the Debtor's request, Senter returned to work on March 19, 2013, and Senter's title of CIO only was reinstated. *Id.* at ¶ 12. Despite assurances that he was returning to work for the Debtor to fill the role and perform the responsibilities of CIO only, the Debtor initiated and maintained a pattern of behavior designed to make Senter's work environment intolerable. *Id.*

9.   This misconduct, includes, but is not limited to:

A.  Maintaining and gradually increasing restrictions on Senter's access to information needed for Senter to perform the duties of CIO and assess and process financial information;

B.  Refusing to allow Senter to communicate with third parties regarding lending and/or investment issues;

C.  Purposely hiding from Senter details and/or developments related to lending and/or investment issues;

D.  Preventing and/or purposely interrupting meetings between Senter and other employees and/or third parties;

E.  Belittling Senter by telling third parties and other employees, often in Senter's presence, that he was no longer part of senior management, could not be trusted, should not be assisted in any way, was a quitter, lacked experience, would hopefully not return from out of office meetings, not an invitee to important meetings, had girlfriends, and was sharing company secrets with third-parties;

F.  Refusing Senter a previously promised 15% of the net proceeds available from the buyout/refinance that was being negotiated;

G.  Refusing to pay previously paid reimbursements;

H.  Momentarily reducing their salaries only long enough to allow external reports to show Senter as the highest paid employee;

I.  Marginalizing Senter in deals with investors/lenders to reduce Senter's value to Debtor and any new company;

J.  Installing spyware on Senter's work computer;

K.  Engaging in frequent charged and vitriolic outbursts directed at Senter; and

L.  Hiring a third party to spy on and follow Senter outside of the office.

*Id.* at ¶ 13.

10. On or about July 9, 2013, Senter confronted Katherine about certain financial reporting entries that seemed to confirm that the Coopers had paid certain significant non-

business related personal expenses through the Debtor. *Id.* at ¶ 14. Katherine dismissed the issues as a misunderstanding. *Id.* Two days later, the Debtor terminated Senter. *Id.*

11. As a result, Senter retained the services of an attorney to prosecute these claims against the Debtor and the Coopers; however, before Senter was able to initiate an action against the Debtor, the Debtor filed this bankruptcy case. *Id.* at ¶ 15. Consequently, Senter filed his complaint against only the Coopers on September 13, 2013. *Id.*

12. Senter filed his proof of claim on October 8, 2013, and amended it accordingly on December 23, 2013, December 26, 2013, and January 7, 2014 [Claim No. 11].

13. A Directors and Officers policy ("D&O Policy") was issued to Debtor providing coverage to the Coopers and the Debtor as named insureds for one or more of Senter's claims in the State Court Litigation. *Id.* at ¶ 16. Senter now moves for relief from the automatic stay to add WFI as a nominal defendant and to pursue the D&O Policy proceeds for satisfaction of any judgment he may receive against the Coopers and/or Debtor in the State Court Litigation.

14. If insurance coverage is applicable to Senter's claims against Debtor, Senter will proceed in accordance with the terms of said insurance, up to and including the policy limits, but Senter will not otherwise proceed against the Debtor in collection of any judgment, other than to collect on Senter's Proof of Claim.

## III. ARGUMENT

### A. Pursuant To 11 U.S.C. § 362(d) and Binding Precedent, the Automatic Stay Does Not Prevent Senter from Pursuing Claims Against Debtor as a Nominal Defendant Limited to the D&O Policy Proceeds.

Generally, 11 U.S.C. § 362(a) operates as a stay against, in relevant part, "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor . . . ." 11 U.S.C. § 362(a)(1). An action against the Debtor will violate section 362(a)(1) only when "the scope of the parties' submissions supported an award that could diminish [the debtor's] estate." *Acands, Inc. v. Travelers Cas. & Sur. Co.*, 435 F.3d 252, 260 (3d Cir. 2006). Based on this rational, the Ninth Circuit has concluded that proceedings against the Debtor do not violate the automatic stay when recovery is limited to an insurance policy and the party is only pursing the Debtor as a nominal defendant. *In re Miller*, 262 B.R. 499, 505 (B.A.P.

9th Cir. 2001) (an automatic stay and/or discharge injunction do not bar a party from deposing a debtor when pursuing claims against a non-debtor codefendant); *In re Beeney*, 142 B.R. 360, 363 (B.A.P. 9th Cir. 1992) (concluding that discovery obligations continue when pursuing an action against the defendant for insurance purposes only). Indeed, the Ninth Circuit has held that a discharge injunction (similar to the automatic stay) does not prohibit an injured party from proceeding against the debtor post-discharge so long as the debtor is only pursued as a nominal defendant in order to obtain proceeds from the insurance carrier. *Id.* at 363.

Although the Debtor initially contemplated a discharge under its First Plan of Reorganization, the Debtor is now liquidating and it no longer qualifies for a discharge under 11 U.S.C. § 1141(d)(3) of the Bankruptcy Code. *See* Debtor's Liquidating Plan at [Docket No. 602; Article IX, A and B].

Additionally, based on the same reasoning set forth above, recovery of insurance proceeds will not violate the automatic stay because such recovery would not "diminish the Debtor's estate." *In re Louisiana World Exposition, Inc.*, 832 F.2d 1391, 1401 (5th Cir. 1987). In fact, the proceeds of an insurance policy are not considered property of the estate, and therefore are not subject to the automatic stay so long as the proceeds from such are to be paid to third parties for liability arising from the debtor's wrongdoing rather than as indemnification of the debtor party. *Id.* For example, in *In re Louisiana World Exposition, Inc.* the Fifth Circuit concluded that the proceeds from a D&O insurance policy, payable to the directors and officers of the debtor, were not property of the estate and could not be subject to division among the other creditors. *Id.* As the Fifth Circuit concluded, "the liability proceeds, which belong only to the directors and officers, are not part of the estate, and on that basis we hold that the Committee's complaint was correctly dismissed." *Id.* As such, it would not be a violation of the automatic stay to pursue recovery only under the Debtor's D&O policy because such recovery would not diminish the Debtor's estate.

Here, the D&O Policy may not be property the estate. Nonetheless, Senter is entitled to pursue the State Court Litigation and to determine liability to recover from the D&O Policy proceeds. As such, Senter requests an order to lift any applicable stay, if necessary, to permit

him to move forward with the State Court Litigation against the Coopers and pursue proceeds from the D&O Policy for any covered claims. Additionally, an order granting Senter relief from the stay, if applicable, will notify the state court of its ability to proceed with this case despite the existence of an ongoing bankruptcy.

> **B.    Pursuant To 11 U.S.C. § 362 and Binding Precedent, Senter Should be Given Relief from the Automatic Stay, if Applicable, to Allow Senter to Pursue Claims Against Debtor as a Nominal Defendant Limited to the D&O Policy Proceeds.**

11 U.S.C. § 362(a)(1) operates as a stay of

> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

In addition, 11 U.S.C. § 362(a)(3), stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate...." 11 U.S.C. § 362(a)(3).

The Bankruptcy Code articulates "[a] clear congressional policy...to give state law plaintiffs a right to have their claims heard in state court." *In re Castlerock Properties*, 781 F.2d 159, 163 (9th Cir.1986) (affirming relief from stay). The mere act of filing a bankruptcy petition does not "erase a plaintiff's claim, their opportunity to litigate, or the fact that a debtor may be liable to the plaintiff in some amount." *In re Bock Laundry Machinery Co.*, 37 B.R. 564, 567 (Bankr.N.D.Ohio 1984). "The automatic stay was never intended to preclude a determination of tort liability and the attendant damages. It was merely intended to prevent a prejudicial dissipation of a debtor's assets." *Id.* Thus, courts regard the opportunity to litigate the issue of liability a significant right which should not easily be set aside, even when pre-petition causes of action are involved. *In re Todd Shipyards Corp.*, 92 B.R. 600, 603 (Bankr. D.N.J. 1988). Therefore, relief from the automatic stay is appropriate to allow a state court proceeding involving tort claims to continue. *In re Neal*, 176 B.R. 30, 34 (Bankr. D. Idaho 1994) (granting relief from stay to pursue final resolution of the tort claim in state court, but limiting relief to prohibit collection of judgment from debtor).

Here, adding Debtor as a nominal defendant in the State Court Litigation will not diminish estate assets. Debtor is listed as an insured under the D&O Policy. Indeed, the policies underlying section 362 of the Bankruptcy Code are adequately served by permitting Senter to name WFI as a nominal defendant for the sole purpose of determining liability to recover against D&O Policy proceeds. Accordingly, to the extent that the automatic stay does apply, Senter requests that he be granted relief from the automatic stay to add WFI as a nominal defendant and pursue recovery from the Debtor's D&O Policy, which provides coverage for both Debtor and the Coopers.

## IV. CONCLUSION

WHEREFORE, Senter respectfully requests that this Court enter an order:

a. Pursuant to 11 U.S.C. § 362, acknowledging that the automatic stay does not apply to a state court proceeding which only seeks to determine liability as to the Debtor defendant, and notifying the State Court that Senter may proceed with naming the Debtor as a nominal defendant and for a liability determination in the State Court Litigation, and with respect to applicable insurance policies or;

b. Pursuant to 11 U.S.C. § 362(d), granting relief from the automatic stay so that Senter may proceed with naming the Debtor as a nominal defendant and for a liability determination in the State Court Litigation, and with respect to applicable insurance policies and proceeds;

c. Granting such other relief this Court deems just and proper.

RESPECTFULLY SUBMITTED this 10th day of March, 2014.

McDONALD CARANO WILSON LLP

By: /s/ Ryan J. Works
RYAN J. WORKS, NV Bar No. 9224
AMANDA M. PERACH, NV Bar No. 12399
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102