_____
Honorable Laurel E. Davis
United States Bankruptcy Judge

Entered on Docket
October 17, 2014

ROBERT E. ATKINSON, ESQ., Bar No. 9958
Email: robert@nv-lawfirm.com
ROBERT E. OPDYKE, ESQ., Bar No. 12841
**ATKINSON LAW ASSOCIATES LTD.**
8965 S Eastern Ave, Suite 260
Las Vegas, NV 89123
Telephone:  (702) 614-0600
Facsimile:  (702) 614-0647
*Attorney for Brian D. Shapiro, Trustee of the WFI Liquidating Trust*

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| *In re:* | Case No. 13-17588-led<br>Chapter 11 |
| WFI DEBTOR, | Hearing Date:    October 14, 2014<br>Hearing Time:    10:30 a.m. |
| Debtor. | |
| WFI DEBTOR (LEAD)<br>WFN DEBTOR<br>GT DEBTOR | *Substantively Consolidated*<br>Case No. BK-S-13-17588-led (LEAD)<br>Case No. BK-S-13-17586-led<br>Case No. BK-S-13-17589-led |

## ORDER APPROVING SALE OF HOUSTON REAL PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES AND APPROVING PAYMENT OF SALE-RELATED EXPENSES

This matter came before the Court for hearing upon Liquidating Trustee's[1] motion (DE

#1000) (the "*Sale Motion*") for an order the sale of certain real property in Harris County, Texas

---

[1] Unless otherwise defined herein, capitalized terms have the same meaning as provided for in the Sale Motion.

-1-

with Parcel ID 034-203-003-0235, and for payment of certain expenses and reimbursements. Appearances were as noted on the record.

At the hearing, in accordance with the Sale Motion, the Court called for overbids to the offer presented in the Sale Motion, on substantially the same other terms and conditions of the Contract, and in substantially the same form thereof.  There were no overbids.

Based on the Sale Motion, the statements of counsel at the hearing, and the papers and other pleadings filed in this case,

**THE COURT FINDS** that

A.    Prior to the entry of this Court's order (DE #716) on January 30, 2014, the debtor-entity now named and captioned as "WFI DEBTOR" was formerly known as "WESTERN FUNDING INCORPORATED", a California corporation.

B.    At the time this bankruptcy case was filed, the debtor owned the real property in Harris County, Texas with Parcel ID 034-203-003-0235 (the "*Property*").

C.    Title to the Property was taken in the name of "WESTERN FUNDING INCORPORATED, a California corporation".

D.    Pursuant to the confirmed Chapter 11 plan, the entity known as "WFI Liquidating Trust" was formed and is the successor-in-interest to WFI DEBTOR in regards to ownership of the Property.  Accordingly, the current legal owner of the Property is WFI Liquidating Trust.

E.    Brian D. Shapiro ("*Liquidating Trustee*") is the duly appointed trustee of the WFI Liquidating Trust, and is the person authorized to bring the Sale Motion.

F.    Purchaser Abida Insurance Agency, Inc. is not related to the owner WFI Liquidating Trust, or the Liquidating Trustee, or any of the debtors in these cases.

G.    The Sale Motion and notice thereof was duly and properly served on all parties and entities required to be served thereon, in accordance with the terms of the confirmed Chapter 11 Plan in this case.

Having considered the submissions of counsel and the files and records herein, and the statements of counsel at the hearing, and after due deliberation thereon, and good cause appearing therefore,

**IT IS ORDERED** that the relief requested in the Sale Motion is hereby GRANTED in all respects.

**IT IS FURTHER ORDERED** that

1.    The sale of the real property in Harris County, Texas with Parcel ID 034-203-003-0235 (the "*Property*") to Abida Insurance Agency, Inc. ("*Buyer*") for a purchase price of $175,000.00 is hereby approved on the terms and conditions of the Contract.  That Contract, attached hereto as **EXHIBIT A**, is approved in full.  The Liquidating Trustee is expressly authorized to consummate the sale of the Property to Buyer, and may take all actions necessary to effectuate the sale.

2.    The Liquidating Trustee is expressly authorized to convey to the Property to Buyer and to execute a deed effectuating such conveyance from grantor "Western Funding Incorporated, a California corporation" to grantee "Abida Insurance Agency, Inc.", noting his authorization on the deed as follows:  "Brian D. Shapiro, Liquidating Trustee of the WFI Liquidating Trust, successor-in-interest to WFI Debtor f/k/a Western Funding Incorporated, a California corporation".

3.    The Liquidating Trustee is also expressly authorized to make distributions from the proceeds of the sale for the payment of expenses, reimbursements, and minor encumbrances, and specifically the payment of brokers' commissions, escrow fees, and other reasonable costs and fees associated with closing the sale, as provided for in the Contract.  The Liquidating Trustee may take all such actions and make such payments without further order of this Court.

4.    The sale of the Property shall be free and clear of all liens, interests, and claims.  Minor encumbrances (such as property taxes and/or utility services) shall be paid through escrow at closing.  All liens and claims that may exist against the Property that are not satisfied through escrow shall be terminated and/or reconveyed, as appropriate, as to the Property, and shall instead attach to the proceeds of the sale with the same validity, priority, force and effect that they now have as against the Property, subject to any claims and defenses that the WFI Liquidating Trust may have with respect thereto.

5.      The Liquidating Trustee shall have all net proceeds (after payment through escrow of expenses, minor liens and encumbrances, and closing costs) from the sale of the Property deposited into a segregated account controlled by the Liquidating Trustee.  Those proceeds may not be used or disbursed absent further Court order.

6.      Other terms of the sale shall be as specified in the Contract and in the Sale Motion.

7.      With respect to the transactions consummated pursuant to this Order, this Order is and shall be sole and sufficient evidence of the transfer of title to the Buyer, and the sale transaction consummated pursuant to this Order (including the reconveyance and termination described in Paragraph 4 of this Order) shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title insurers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title; and each of the foregoing persons and entities is hereby directed to accept this Order as sole and sufficient evidence of such transfer of title free and clear of all liens, and shall rely upon this Order in consummating the transactions contemplated hereby.

8.      Notice of entry of this Order shall be made upon the following entities: (i) via ECF, and (ii) via U.S. Mail on the Office of the United States Trustee, 300 Las Vegas Blvd So., #4300, Las Vegas, NV 89101.  Any docketed Certificate of Service indicating service of the Notice of Entry of this Order was made to "all ECF-registered parties in this case" and the Office of the U.S. Trustee by mail shall be sufficient proof for all entities, including title companies and title underwriters, that service of the Notice of Entry of this Order was properly made.

9.      The stay otherwise imposed by Bankruptcy Rule 6004(h) is hereby waived, and the Liquidating Trustee may immediately take any action necessary consummate the above-referenced sale without further order of this Court.

**IT IS SO ORDERED.**

# # #

-4-

Respectfully submitted by:

_____/s/ Robert E. Atkinson_____
ROBERT E. ATKINSON, ESQ.
Nevada Bar No. 9958
*Attorney for Brian Shapiro, Trustee of the*
*WFI Liquidating Trust*

## CERTIFICATION re: RULE 9021

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

☐ The court has waived the requirements set forth in LR 9021(b)(1).

☒ No party appeared at the hearing or filed an objection to the motion.

☐ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

☐ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

###

# EXHIBIT A



TEXAS ASSOCIATION OF REALTORS®

# COMMERCIAL CONTRACT - IMPROVED PROPERTY

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS® IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2014

**1. PARTIES:** Seller agrees to sell and convey to Buyer the Property described in Paragraph 2. Buyer agrees to buy the Property from Seller for the sales price stated in Paragraph 3. The parties to this contract are:

Seller: <u>WFI Liquidating Trust, Successor-in-Trust to Western Funding, Inc.</u>

Address: <u>8965 South Eastern Ave., Ste. 260, Las Vegas, NV  89123</u>
Phone: <u>(702)614-0600</u> E-mail: <u>robert@nv-lawfirm.com</u>
Fax: <u>(702)614-0647</u> Other: _____

Buyer: <u>Abida Insurance Agency, Inc.</u>
<u>Adeel Hashmi</u>
Address: <u>10765 Gulf Freeway, Houston, TX</u>
Phone: <u>(281)827-7666</u> E-mail: _____
Fax: _____ Other: _____

**2. PROPERTY:**

A. "Property" means that real property situated in _____<u>Harris</u>_____ County, Texas at
_____<u>9805 Gulf Freeway, Houston, 77034</u>_____
*(address)* and that is legally described on the attached Exhibit _____<u>A</u>_____ or as follows:
- Parcel ID: 034-203-003-0235
- TR 189A SOUTH HOUSTON GARDENS SEC 6
- Mailing Address:  9905 Gulf Freeway, Houston, TX  77034

B. Seller will sell and convey the Property together with:
(1) all buildings, improvements, and fixtures;
(2) all rights, privileges, and appurtenances pertaining to the Property, including Seller's right, title, and interest in any minerals, utilities, adjacent streets, alleys, strips, gores, and rights-of-way;
(3) Seller's interest in all leases, rents, and security deposits for all or part of the Property;
(4) Seller's interest in all licenses and permits related to the Property;
(5) Seller's interest in all third party warranties or guaranties, if transferable, relating to the Property or any fixtures;
(6) Seller's interest in any trade names, if transferable, used in connection with the Property; and
(7) all Seller's tangible personal property located on the Property that is used in connection with the Property's operations except: _____ .
Any personal property not included in the sale must be removed by Seller prior to closing.

*(Describe any exceptions, reservations, or restrictions in Paragraph 12 or an addendum.)*
*(If mineral rights are to be reserved an appropriate addendum should be attached.)*
*(If the Property is a condominium, attach Commercial Contract Condominium Addendum (TAR-1930).)*

**3. SALES PRICE:** At or before closing, Buyer will pay the following sales price for the Property:

A. Cash portion payable by Buyer at closing . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ <u>175,000.00</u>

B. Sum of all financing described in Paragraph 4 . . . . . . . . . . . . . . . . . . . . . . . $ _____

C. Sales price (sum of 3A and 3B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ <u>175,000.00</u>

(TAR-1801) 4-1-14    Initialed for Identification by Seller ____, ____ and Buyer ____, ____    Page 1 of 14

Commercial Contract - Improved Property concerning _____ 9805 Gulf Freeway, Houston, 77034 _____

**4. FINANCING:** Buyer will finance the portion of the sales price under Paragraph 3B as follows:

☐ A.  <u>Third Party Financing</u>: One or more third party loans in the total amount of $ _____ . This contract:
    ☐  (1) is <u>not</u> contingent upon Buyer obtaining third party financing.
    ☐  (2) is contingent upon Buyer obtaining third party financing in accordance with the attached Commercial Contract Financing Addendum (TAR-1931).

☐ B.  <u>Assumption</u>: In accordance with the attached Commercial Contract Financing Addendum (TAR-1931), Buyer will assume the existing promissory note secured by the Property, which balance at closing will be $ _____ .

☐ C.  <u>Seller Financing</u>: The delivery of a promissory note and deed of trust from Buyer to Seller under the terms of the attached Commercial Contract Financing Addendum (TAR-1931) in the amount of $ _____ .

**5. EARNEST MONEY:**

A.  Not later than 3 days after the effective date, Buyer must deposit $ <u>2,500.00</u> as earnest money with <u>North American Title Company</u> (title company) at <u>2525 Bay Area Blvd., Houston, 77058</u> (address) <u>Brittany Ramos</u> (closer). If Buyer fails to timely deposit the earnest money, Seller may terminate this contract or exercise any of Seller's other remedies under Paragraph 15 by providing written notice to Buyer before Buyer deposits the earnest money.

B.  Buyer will deposit an additional amount of $ _____ with the title company to be made part of the earnest money on or before:
    ☐  (i) _____ days after Buyer's right to terminate under Paragraph 7B expires; or
    ☐  (ii) _____ .
Buyer will be in default if Buyer fails to deposit the additional amount required by this Paragraph 5B within 3 days after Seller notifies Buyer that Buyer has not timely deposited the additional amount.

C.  Buyer may instruct the title company to deposit the earnest money in an interest-bearing account at a federally insured financial institution and to credit any interest to Buyer.

**6. TITLE POLICY, SURVEY, AND UCC SEARCH:**

A.  <u>Title Policy</u>:

    (1) Seller, at Seller's expense, will furnish Buyer an Owner's Policy of Title Insurance (the title policy) issued by any underwriter of the title company in the amount of the sales price, dated at or after closing, insuring Buyer against loss under the title policy, subject only to:
        (a) those title exceptions permitted by this contract or as may be approved by Buyer in writing; and
        (b) the standard printed exceptions contained in the promulgated form of title policy unless this contract provides otherwise.

    (2) The standard printed exception as to discrepancies, conflicts, or shortages in area and boundary lines, or any encroachments or protrusions, or any overlapping improvements:
    ☒  (a) will not be amended or deleted from the title policy.
    ☐  (b) will be amended to read "shortages in areas" at the expense of   ☐ Buyer  ☐ Seller.

    (3) Within <u>5</u> days after the effective date, Seller will furnish Buyer a commitment for title insurance (the commitment) including legible copies of recorded documents evidencing title exceptions. Seller authorizes the title company to deliver the commitment and related documents to Buyer at Buyer's address.

Commercial Contract - Improved Property concerning _____ 9805 Gulf Freeway, Houston, 77034 _____

B. Survey: Within__10__ days after the effective date:

☒ (1) Buyer will obtain a survey of the Property at Buyer's expense and deliver a copy of the survey to Seller. The survey must be made in accordance with the: (i) ALTA/ACSM Land Title Survey standards, or (ii) Texas Society of Professional Surveyors' standards for a Category 1A survey under the appropriate condition. Seller will reimburse Buyer $500.00 _____ (insert amount) of the cost of the survey at closing, if closing occurs.

☐ (2) Seller, at Seller's expense, will furnish Buyer a survey of the Property dated after the effective date. The survey must be made in accordance with the: (i) ALTA/ACSM Land Title Survey standards, or (ii) Texas Society of Professional Surveyors' standards for a Category 1A survey under the appropriate condition.

☐ (3) Seller will deliver to Buyer and the title company a true and correct copy of Seller's most recent survey of the Property along with an affidavit required by the title company for approval of the existing survey. If the existing survey is not acceptable to the title company, Seller, at Seller's expense, will obtain a new or updated survey acceptable to the title company and deliver the acceptable survey to Buyer and the title company within 20 days after Seller receives notice that the existing survey is not acceptable to the title company. The closing date will be extended daily up to 20 days if necessary for Seller to deliver an acceptable survey within the time required. Buyer will reimburse Seller _____ (insert amount) of the cost of the new or updated survey at closing, if closing occurs.

C. UCC Search:

☐ (1) Within_____ days after the effective date, Seller, at Seller's expense, will furnish Buyer a Uniform Commercial Code (UCC) search prepared by a reporting service and dated after the effective date. The search must identify documents that are on file with the Texas Secretary of State and the county where the Property is located that relate to all personal property on the Property and show, as debtor, Seller and all other owners of the personal property in the last 5 years.

☒ (2) Buyer does not require Seller to furnish a UCC search.

D. Buyer's Objections to the Commitment, Survey, and UCC Search:

(1) Within__10__ days after Buyer receives the commitment, copies of the documents evidencing the title exceptions, any required survey, and any required UCC search, Buyer may object to matters disclosed in the items if: (a) the matters disclosed are a restriction upon the Property or constitute a defect or encumbrance to title to the real or personal property described in Paragraph 2 other than those permitted by this contract or liens that Seller will satisfy at closing or Buyer will assume at closing; or (b) the items show that any part of the Property lies in a special flood hazard area (an "A" or "V" zone as defined by FEMA). If Paragraph 6B(1) applies, Buyer is deemed to receive the survey on the earlier of: (i) the date Buyer actually receives the survey; or (ii) the deadline specified in Paragraph 6B.

(2) Seller may, but is not obligated to, cure Buyer's timely objections within 15 days after Seller receives the objections. The closing date will be extended as necessary to provide such time to cure the objections. If Seller fails to cure the objections by the time required, Buyer may terminate this contract by providing written notice to Seller within 5 days after the time by which Seller must cure the objections. If Buyer terminates, the earnest money, less any independent consideration under Paragraph 7B(1), will be refunded to Buyer.

(3) Buyer's failure to timely object or terminate under this Paragraph 6D is a waiver of Buyer's right to object except that Buyer will not waive the requirements in Schedule C of the commitment.

(TAR-1801) 4-1-14        Initialed for Identification by Seller ____ and Buyer ____        Page 3 of 14

Commercial Contract - Improved Property concerning _____ 9805 Gulf Freeway, Houston, 77034 _____

7.  **PROPERTY CONDITION:**

A. Present Condition: Buyer accepts the Property in its present condition except that Seller, at Seller's expense, will complete the following before closing: _____
_____ .

B. Feasibility Period: Buyer may terminate this contract for any reason within _____ 10 _____ days after the effective date (feasibility period) by providing Seller written notice of termination. *(Check only one box.)*

☒ (1) If Buyer terminates under this Paragraph 7B, the earnest money will be refunded to Buyer less $ 100.00 _____ that Seller will retain as independent consideration for Buyer's unrestricted right to terminate. Buyer has tendered the independent consideration to Seller upon payment of the amount specified in Paragraph 5A to the title company. The independent consideration is to be credited to the sales price only upon closing of the sale. If no dollar amount is stated in this Paragraph 7B(1) or if Buyer fails to deposit the earnest money, Buyer will not have the right to terminate under this Paragraph 7B.

☐ (2) Not later than 3 days after the effective date, Buyer must pay Seller $ _____ as independent consideration for Buyer's right to terminate by tendering such amount to Seller or Seller's agent. If Buyer terminates under this Paragraph 7B, the earnest money will be refunded to Buyer and Seller will retain the independent consideration. The independent consideration will be credited to the sales price only upon closing of the sale. If no dollar amount is stated in this Paragraph 7B(2) or if Buyer fails to timely pay the independent consideration, Buyer will not have the right to terminate under this Paragraph 7B.

C. Inspections, Studies, or Assessments:

(1) During the feasibility period, Buyer, at Buyer's expense, may complete or cause to be completed any and all inspections, studies, or assessments of the Property (including all improvements and fixtures) desired by Buyer.

(2) Seller, at Seller's expense, will turn on all utilities necessary for Buyer to make inspections, studies, or assessments.

(3) Buyer must:
(a) employ only trained and qualified inspectors and assessors;
(b) notify Seller, in advance, of when the inspectors or assessors will be on the Property;
(c) abide by any reasonable entry rules or requirements of Seller;
(d) not interfere with existing operations or occupants of the Property; and
(e) restore the Property to its original condition if altered due to inspections, studies, or assessments that Buyer completes or causes to be completed.

(4) Except for those matters that arise from the negligence of Seller or Seller's agents, Buyer is responsible for any claim, liability, encumbrance, cause of action, and expense resulting from Buyer's inspections, studies, or assessments, including any property damage or personal injury. Buyer will indemnify, hold harmless, and defend Seller and Seller's agents against any claim involving a matter for which Buyer is responsible under this paragraph. This paragraph survives termination of this contract.

D. Property Information:

(1) Delivery of Property Information: Within _____ days after the effective date, Seller will deliver to Buyer: *(Check all that apply.)*

Commercial Contract - Improved Property concerning _____ 9805 Gulf Freeway, Houston, 77034 _____

- ☐ (a) a current rent roll of all leases affecting the Property certified by Seller as true and correct;
- ☐ (b) copies of all current leases pertaining to the Property, including any modifications, supplements, or amendments to the leases;
- ☐ (c) a current inventory of all personal property to be conveyed under this contract and copies of any leases for such personal property;
- ☐ (d) copies of all notes and deeds of trust against the Property that Buyer will assume or that Seller will not pay in full on or before closing;
- ☐ (e) copies of all current service, maintenance, and management agreements relating to the ownership and operation of the Property;
- ☐ (f) copies of current utility capacity letters from the Property's water and sewer service provider;
- ☐ (g) copies of all current warranties and guaranties relating to all or part of the Property;
- ☐ (h) copies of fire, hazard, liability, and other insurance policies that currently relate to the Property;
- ☐ (i) copies of all leasing or commission agreements that currently relate to the tenants of all or part of the Property;
- ☐ (j) a copy of the "as-built" plans and specifications and plat of the Property;
- ☐ (k) copies of all invoices for utilities and repairs incurred by Seller for the Property in the 24 months immediately preceding the effective date;
- ☐ (l) a copy of Seller's income and expense statement for the Property from _____ to _____ ;
- ☐ (m) copies of all previous environmental assessments, geotechnical reports, studies, or analyses made on or relating to the Property;
- ☐ (n) real & personal property tax statements for the Property for the previous 2 calendar years; and
- ☐ (o) Tenant reconciliation statements including, operating expenses, insurance and taxes for the Property from _____ to _____ ; and
- ☐ (p) _____
  _____
  _____ .

   (2) <u>Return of Property Information</u>: If this contract terminates for any reason, Buyer will, not later than 10 days after the termination date: *(Check all that apply.)*
- ☐ (a) return to Seller all those items described in Paragraph 7D(1) that Seller delivered to Buyer in other than an electronic format and all copies that Buyer made of those items;
- ☐ (b) delete or destroy all electronic versions of those items described in Paragraph 7D(1) that Seller delivered to Buyer or Buyer copied; and
- ☐ (c) deliver copies of all inspection and assessment reports related to the Property that Buyer completed or caused to be completed.
   This Paragraph 7D(2) survives termination of this contract.

E. <u>Contracts Affecting Operations</u>: Until closing, Seller: (1) will operate the Property in the same manner as on the effective date under reasonably prudent business standards; and (2) will not transfer or dispose of any part of the Property, any interest or right in the Property, or any of the personal property or other items described in Paragraph 2B or sold under this contract. After the feasibility period ends, Seller may not enter into, amend, or terminate any other contract that affects the operations of the Property without Buyer's written approval.

8. **LEASES:**

A. Each written lease Seller is to assign to Buyer under this contract must be in full force and effect according to its terms. Seller may not enter into any new lease, fail to comply with any existing lease, or make any amendment or modification to any existing lease without Buyer's written consent. Seller must disclose, in writing, if any of the following exist at the time Seller provides the leases to the Buyer or subsequently occur before closing:
(1) any failure by Seller to comply with Seller's obligations under the leases;

Commercial Contract - Improved Property concerning _____ 9805 Gulf Freeway, Houston, 77034 _____

(2) any circumstances under any lease that entitle the tenant to terminate the lease or seek any offsets or damages;
(3) any non-occupancy of the leased premises by a tenant;
(4) any advance sums paid by a tenant under any lease;
(5) any concessions, bonuses, free rents, rebates, brokerage commissions, or other matters that affect any lease; and
(6) any amounts payable under the leases that have been assigned or encumbered, except as security for loan(s) assumed or taken subject to under this contract.

B. Estoppel Certificates: Within _____ days after the effective date, Seller will deliver to Buyer estoppel certificates signed not earlier than _____ by each tenant that leases space in the Property. The estoppel certificates must include the certifications contained in the current version of TAR Form 1938 – Commercial Tenant Estoppel Certificate and any additional information requested by a third party lender providing financing under Paragraph 4 if the third party lender requests such additional information at least 10 days prior to the earliest date that Seller may deliver the signed estoppel certificates.

9. **BROKERS:**

A. The brokers to this sale are:

| | |
|---|---|
| Principal Broker: Zann Commercial Brokerage, Inc. | Cooperating Broker: _____ |
| Agent: Sherry Palermo | Agent: _____ |
| Address: 2525 Bay Area Blvd., Ste. 160 Houston, TX 77058 | Address: _____ |
| Phone & Fax: (281)280-8088    (281)280-0815 | Phone & Fax: _____ |
| E-mail: s.palermo@zann.com | E-mail: _____ |
| License No.: _____ | License No.: _____ |

Principal Broker: *(Check only one box.)*
☒ represents Seller only.
☐ represents Buyer only.
☐ is an intermediary between Seller and Buyer.

Cooperating Broker represents Buyer.

B. Fees: *(Check only (1) or (2) below.)*
*(Complete the Agreement Between Brokers on page 14 only if (1) is selected.)*

☐ (1) Seller will pay Principal Broker the fee specified by separate written commission agreement between Principal Broker and Seller. Principal Broker will pay Cooperating Broker the fee specified in the Agreement Between Brokers found below the parties' signatures to this contract.

☒ (2) At the closing of this sale, Seller will pay:

Principal Broker a total cash fee of:
☒ __6.000__ % of the sales price.
☐ _____ .

Cooperating Broker a total cash fee of:
☐ _____ % of the sales price.
☐ _____ .

The cash fees will be paid in _____ Harris _____ County, Texas. Seller authorizes the title company to pay the brokers from the Seller's proceeds at closing.

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          9805 Gulf Free

Commercial Contract - Improved Property concerning _____ 9805 Gulf Freeway, Houston, 77034 _____

> NOTICE: Chapter 62, Texas Property Code, authorizes a broker to secure an earned commission with a lien against the Property.

C. The parties may not amend this Paragraph 9 without the written consent of the brokers affected by the amendment.

## 10. CLOSING:

A. The date of the closing of the sale (closing date) will be on or before the later of:
   (1) ☐ _____ days after the expiration of the feasibility period.
     ☐ _____ (specific date).
     ☒ 15 days after entry of Bankruptcy Court's Order Approving Sale. _____ .
   (2) 7 days after objections made under Paragraph 6D have been cured or waived.

B. If either party fails to close by the closing date, the non-defaulting party may exercise the remedies in Paragraph 15.

C. At closing, Seller will execute and deliver to Buyer, at Seller's expense, a ☒ general ☐ special warranty deed. The deed must include a vendor's lien if any part of the sales price is financed. The deed must convey good and indefeasible title to the Property and show no exceptions other than those permitted under Paragraph 6 or other provisions of this contract. Seller must convey the Property:
   (1) with no liens, assessments, or Uniform Commercial Code or other security interests against the Property which will not be satisfied out of the sales price, unless securing loans Buyer assumes;
   (2) without any assumed loans in default; and
   (3) with no persons in possession of any part of the Property as lessees, tenants at sufferance, or trespassers except tenants under the written leases assigned to Buyer under this contract.

D. At closing. Seller, at Seller's expense, will also deliver to Buyer:
   (1) tax statements showing no delinquent taxes on the Property;
   (2) a bill of sale with warranties to title conveying title, free and clear of all liens, to any personal property defined as part of the Property in Paragraph 2 or sold under this contract;
   (3) an assignment of all leases to or on the Property;
   (4) to the extent that the following items are assignable, an assignment to Buyer of the following items as they relate to the Property or its operations:
     (a) licenses and permits;
     (b) maintenance, management, and other contracts; and
     (c) warranties and guaranties;
   (5) a rent roll current on the day of the closing certified by Seller as true and correct;
   (6) evidence that the person executing this contract is legally capable and authorized to bind Seller;
   (7) an affidavit acceptable to the title company stating that Seller is not a foreign person or, if Seller is a foreign person, a written authorization for the title company to: (i) withhold from Seller's proceeds an amount sufficient to comply applicable tax law: and (ii) deliver the amount to the Internal Revenue Service together with appropriate tax forms; and
   (8) any notices, statements, certificates, affidavits, releases, and other documents required by this contract, the commitment, or law necessary for the closing of the sale and the issuance of the title policy, all of which must be completed and executed by Seller as necessary.

E. At closing, Buyer will:
   (1) pay the sales price in good funds acceptable to the title company;
   (2) deliver evidence that the person executing this contract is legally capable and authorized to bind Buyer;
   (3) sign and send to each tenant in the Property a written statement that:
     (a) acknowledges Buyer has received and is responsible for the tenant's security deposit; and
     (b) specifies the exact dollar amount of the security deposit;

Commercial Contract - Improved Property concerning _____ 9805 Gulf Freeway, Houston, 77034 _____

    (4) sign an assumption of all leases then in effect; and
    (5) execute and deliver any notices. statements, certificates, or other documents required by this contract or law necessary to close the sale.

  F.  Unless the parties agree otherwise, the closing documents will be as found in the basic forms in the current edition of the State Bar of Texas Real Estate Forms Manual without any additional clauses.

**11. POSSESSION:** Seller will deliver possession of the Property to Buyer upon closing and funding of this sale in its present condition with any repairs Seller is obligated to complete under this contract, ordinary wear and tear excepted. Any possession by Buyer before closing or by Seller after closing that is not authorized by a separate written lease agreement is a landlord-tenant at sufferance relationship between the parties.

**12. SPECIAL PROVISIONS:** The following special provisions apply and will control in the event of a conflict with other provisions of this contract. *(If special provisions are contained in an Addendum, identify the Addendum here and reference the Addendum in Paragraph 22D.)*

  - Sale is subject to and conditioned upon Bankruptcy Court's Order Approving Sale.

  - Subject property is recognized as 9905 Gulfreeway, Houston, Texas with the United States Postal Service and 9805 Gulf Freeway, Houston, Texas with the Harris County Appraisal District.

**13. SALES EXPENSES:**

  A.  <u>Seller's Expenses:</u> Seller will pay for the following at or before closing:
    (1) releases of existing liens, other than those liens assumed by Buyer, including prepayment penalties and recording fees;
    (2) release of Seller's loan liability, if applicable;
    (3) tax statements or certificates;
    (4) preparation of the deed and any bill of sale;
    (5) one-half of any escrow fee;
    (6) costs to record any documents to cure title objections that Seller must cure; and
    (7) other expenses that Seller will pay under other provisions of this contract.

  B.  <u>Buyer's Expenses:</u> Buyer will pay for the following at or before closing:
    (1) all loan expenses and fees;
    (2) preparation fees of any deed of trust:
    (3) recording fees for the deed and any deed of trust;
    (4) premiums for flood and hazard insurance as may be required by Buyer's lender;
    (5) one-half of any escrow fee; and
    (6) other expenses that Buyer will pay under other provisions of this contract.

Commercial Contract - Improved Property concerning _____ 9805 Gulf Freeway, Houston, 77034 _____

## 14. PRORATIONS:

A. Prorations:

    (1) Interest on any assumed loan, taxes, rents, and any expense reimbursements from tenants will be prorated through the closing date.

    (2) If the amount of ad valorem taxes for the year in which the sale closes is not available on the closing date, taxes will be prorated on the basis of taxes assessed in the previous year. If the taxes for the year in which the sale closes vary from the amount prorated at closing, the parties will adjust the prorations when the tax statements for the year in which the sale closes become available. This Paragraph 14A(2) survives closing.

    (3) If Buyer assumes a loan or is taking the Property subject to an existing lien, Seller will transfer all reserve deposits held by the lender for the payment of taxes, insurance premiums, and other charges to Buyer at closing and Buyer will reimburse such amounts to Seller by an appropriate adjustment at closing.

B. Rollback Taxes: If Seller changes the use of the Property before closing or if a denial of a special valuation on the Property claimed by Seller results in the assessment of additional taxes, penalties, or interest (assessments) for periods before closing, the assessments will be the obligation of Seller. If this sale or Buyer's use of the Property after closing results in additional assessments for periods before closing, the assessments will be the obligation of Buyer. This Paragraph 14B survives closing.

C. Rent and Security Deposits: At closing, Seller will tender to Buyer all security deposits and the following advance payments received by Seller for periods after closing: prepaid expenses, advance rental payments, and other advance payments paid by tenants. Rents prorated to one party but received by the other party will be remitted by the recipient to the party to whom it was prorated within 5 days after the rent is received. This Paragraph 14C survives closing.

## 15. DEFAULT:

A. If Buyer fails to comply with this contract, Buyer is in default and Seller, as Seller's sole remedy(ies), may terminate this contract and receive the earnest money, as liquidated damages for Buyer's failure except for any damages resulting from Buyer's inspections, studies or assessments in accordance with Paragraph 7C(4) which Seller may pursue, or
*(Check if applicable)*
☐ enforce specific performance, or seek such other relief as may be provided by law.

B. If, without fault, Seller is unable within the time allowed to deliver the estoppel certificates, survey or the commitment, Buyer may:

    (1) terminate this contract and receive the earnest money, less any independent consideration under Paragraph 7B(1), as liquidated damages and as Buyer's sole remedy; or

    (2) extend the time for performance up to 15 days and the closing will be extended as necessary.

C. Except as provided in Paragraph 15B, if Seller fails to comply with this contract, Seller is in default and Buyer may:

    (1) terminate this contract and receive the earnest money, less any independent consideration under Paragraph 7B(1), as liquidated damages and as Buyer's sole remedy; or

    (2) enforce specific performance, or seek such other relief as may be provided by law, or both.

## 16. CASUALTY LOSS AND CONDEMNATION:

A. If any part of the Property is damaged or destroyed by fire or other casualty after the effective date, Seller must restore the Property to its previous condition as soon as reasonably possible and not later than the closing date. If, without fault, Seller is unable to do so, Buyer may:

Commercial Contract - Improved Property concerning _____ 9805 Gulf Freeway, Houston, 77034 _____

      (1) terminate this contract and the earnest money, less any independent consideration under Paragraph 7B(1), will be refunded to Buyer;

      (2) extend the time for performance up to 15 days and closing will be extended as necessary; or

      (3) accept at closing: (i) the Property in its damaged condition; (ii) an assignment of any insurance proceeds Seller is entitled to receive along with the insurer's consent to the assignment; and (iii) a credit to the sales price in the amount of any unpaid deductible under the policy for the loss.

B. If before closing, condemnation proceedings are commenced against any part of the Property, Buyer may:

      (1) terminate this contract by providing written notice to Seller within 15 days after Buyer is advised of the condemnation proceedings and the earnest money, less any independent consideration under Paragraph 7B(1), will be refunded to Buyer; or

      (2) appear and defend the condemnation proceedings and any award will, at Buyer's election, belong to: (a) Seller and the sales price will be reduced by the same amount; or (b) Buyer and the sales price will not be reduced.

**17. ATTORNEY'S FEES:** If Buyer, Seller, any broker, or the title company is a prevailing party in any legal proceeding brought under or with relation to this contract or this transaction, such party is entitled to recover from the non-prevailing parties all costs of such proceeding and reasonable attorney's fees. This Paragraph 17 survives termination of this contract.

**18. ESCROW:**

A. At closing, the earnest money will be applied first to any cash down payment, then to Buyer's closing costs, and any excess will be refunded to Buyer. If no closing occurs, the title company may require payment of unpaid expenses incurred on behalf of the parties and a written release of liability of the title company from all parties.

B. If one party makes written demand for the earnest money, the title company will give notice of the demand by providing to the other party a copy of the demand. If the title company does not receive written objection to the demand from the other party within 15 days after the date the title company sent the demand to the other party, the title company may disburse the earnest money to the party making demand, reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and the title company may pay the same to the creditors.

C. The title company will deduct any independent consideration under Paragraph 7B(1) before disbursing any earnest money to Buyer and will pay the independent consideration to Seller.

D. If the title company complies with this Paragraph 18, each party hereby releases the title company from all claims related to the disbursal of the earnest money.

E. Notices under this Paragraph 18 must be sent by certified mail, return receipt requested. Notices to the title company are effective upon receipt by the title company.

F. Any party who wrongfully fails or refuses to sign a release acceptable to the title company within 7 days after receipt of the request will be liable to the other party for liquidated damages in an amount equal to the sum of: (i) three times the amount of the earnest money; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit.

G. ☐ Seller ☐ Buyer intend(s) to complete this transaction as a part of an exchange of like-kind properties in accordance with Section 1031 of the Internal Revenue Code, as amended. All expenses in connection with the contemplated exchange will be paid by the exchanging party. The other party will not incur any expense or liability with respect to the exchange. The parties agree to cooperate fully and in good faith to arrange and consummate the exchange so as to comply to the maximum extent

Commercial Contract - Improved Property concerning _____ 9805 Gulf Freeway, Houston, 77034 _____

feasible with the provisions of Section 1031 of the Internal Revenue Code. The other provisions of this contract will not be affected in the event the contemplated exchange fails to occur.

**19. MATERIAL FACTS:** To the best of Seller's knowledge and belief: *(Check only one box.)*

☐ A. Seller is not aware of any material defects to the Property except as stated in the attached Commercial Property Condition Statement (TAR-1408).

☐ B. Except as otherwise provided in this contract, Seller is not aware of:
    (1) any subsurface: structures, pits, waste, springs, or improvements;
    (2) any pending or threatened litigation, condemnation, or assessment affecting the Property;
    (3) any environmental hazards or conditions that materially affect the Property;
    (4) whether the Property is or has been used for the storage or disposal of hazardous materials or toxic waste, a dump site or landfill, or any underground tanks or containers;
    (5) whether radon, asbestos containing materials, urea-formaldehyde foam insulation, lead-based paint, toxic mold (to the extent that it adversely affects the health of ordinary occupants), or other pollutants or contaminants of any nature now exist or ever existed on the Property;
    (6) any wetlands, as defined by federal or state law or regulation, on the Property;
    (7) any threatened or endangered species or their habitat on the Property;
    (8) any present or past infestation of wood-destroying insects in the Property's improvements;
    (9) any contemplated material changes to the Property or surrounding area that would materially and detrimentally affect the ordinary use of the Property;
    (10) any material physical defects in the improvements on the Property; or
    (11) any condition on the Property that violates any law or ordinance.

*(Describe any exceptions to (1)-(11) in Paragraph 12 or an addendum.)*

**20. NOTICES:** All notices between the parties under this contract must be in writing and are effective when hand-delivered, mailed by certified mail return receipt requested, or sent by facsimile transmission to the parties addresses or facsimile numbers stated in Paragraph 1. The parties will send copies of any notices to the broker representing the party to whom the notices are sent.

☒ A. Seller also consents to receive any notices by e-mail at Seller's e-mail address stated in Paragraph 1.
☒ B. Buyer also consents to receive any notices by e-mail at Buyer's e-mail address stated in Paragraph 1.

**21. DISPUTE RESOLUTION:** The parties agree to negotiate in good faith in an effort to resolve any dispute related to this contract that may arise. If the dispute cannot be resolved by negotiation, the parties will submit the dispute to mediation before resorting to arbitration or litigation and will equally share the costs of a mutually acceptable mediator. This paragraph survives termination of this contract. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

**22. AGREEMENT OF THE PARTIES:**

A. This contract is binding on the parties, their heirs, executors, representatives, successors, and permitted assigns. This contract is to be construed in accordance with the laws of the State of Texas. If any term or condition of this contract shall be held to be invalid or unenforceable, the remainder of this contract shall not be affected thereby.

B. This contract contains the entire agreement of the parties and may not be changed except in writing.

C. If this contract is executed in a number of identical counterparts, each counterpart is an original and all counterparts, collectively, constitute one agreement.

Commercial Contract - Improved Property concerning _____ 9805 Gulf Freeway, Houston, 77034 _____

   D. Addenda which are part of this contract are: *(Check all that apply.)*
   ☐ (1)  Property Description Exhibit identified in Paragraph 2;
   ☐ (2)  Commercial Contract Condominium Addendum (TAR-1930);
   ☐ (3)  Commercial Contract Financing Addendum (TAR-1931);
   ☐ (4)  Commercial Property Condition Statement (TAR-1408);
   ☐ (5)  Commercial Contract Addendum for Special Provisions (TAR-1940);
   ☐ (6)  Addendum for Seller's Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards (TAR-1906);
   ☐ (7)  Notice to Purchaser of Real Property in a Water District (MUD);
   ☐ (8)  Addendum for Coastal Area Property (TAR-1915);
   ☐ (9)  Addendum for Property Located Seaward of the Gulf Intracoastal Waterway (TAR-1916);
   ☒ (10) Information About Brokerage Services (TAR-2501); and
   ☒ (11) <u>Seller's Key Terms</u> _____ .

   *(Note: Counsel for the Texas Association of REALTORS® (TAR) has determined that any of the foregoing addenda which are promulgated by the Texas Real Estate Commission (TREC) or published by TAR are appropriate for use with this form.)*

   E. Buyer  ☒ may   ☐ may not assign this contract. If Buyer assigns this contract, Buyer will be relieved of any future liability under this contract only if the assignee assumes, in writing, all of Buyer's obligations under this contract.

23. **TIME:** Time is of the essence in this contract. The parties require strict compliance with the times for performance. If the last day to perform under a provision of this contract falls on a Saturday, Sunday, or legal holiday, the time for performance is extended until the end of the next day which is not a Saturday, Sunday, or legal holiday.

24. **EFFECTIVE DATE:** The effective date of this contract for the purpose of performance of all obligations is the date the title company receipts this contract after all parties execute this contract.

25. **ADDITIONAL NOTICES:**

   A. Buyer should have an abstract covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a title policy.

   B. If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fees of the district before final execution of this contract.

   C. Notice Required by §13.257, Water Code: "The real property, described below, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned purchaser hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in the notice or at closing of purchase of the real property." The real property is described in Paragraph 2 of this contract.

   D. If the Property adjoins or shares a common boundary with the tidally influenced submerged lands of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included as part of this contract.

(TAR-1801) 4-1-14          Initialed for Identification by Seller ____  _____ and Buyer ____  _____          Page 12 of 14

Commercial Contract - Improved Property concerning _____ 9805 Gulf Freeway, Houston, 77034 _____

E. If the Property is located seaward of the Gulf Intracoastal Waterway, §61.025, Texas Natural Resources Code, requires a notice regarding the seaward location of the Property to be included as part of this contract.

F. If the Property is located outside the limits of a municipality, the Property may now or later be included in the extra-territorial jurisdiction (ETJ) of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and ETJ. To determine if the Property is located within a municipality's ETJ, Buyer should contact all municipalities located in the general proximity of the Property for further information.

G. If apartments or other residential units are on the Property and the units were built before 1978, federal law requires a lead-based paint and hazard disclosure statement to be made part of this contract.

H. Section 1958.154, Occupations Code requires Seller to provide Buyer a copy of any mold remediation certificate issued for the Property during the 5 years preceding the date the Seller sells the Property.

I. Brokers are not qualified to perform property inspections, surveys, engineering studies, environmental assessments, or inspections to determine compliance with zoning, governmental regulations, or laws. Buyer should seek experts to perform such services. Buyer should review local building codes, ordinances and other applicable laws to determine their effect on the Property. Selection of experts, inspectors, and repairmen is the responsibility of Buyer and not the brokers. Brokers are not qualified to determine the credit worthiness of the parties.

26. **CONTRACT AS OFFER:** The execution of this contract by the first party constitutes an offer to buy or sell the Property. Unless the other party accepts the offer by 5:00 p.m., in the time zone in which the Property is located, on _____ , the offer will lapse and become null and void.

**READ THIS CONTRACT CAREFULLY. The brokers and agents make no representation or recommendation as to the legal sufficiency, legal effect, or tax consequences of this document or transaction. CONSULT your attorney BEFORE signing.**

Seller: WFI Liquidating Trust, Successor-in-Trust to Western Funding,                Buyer: Abida Insurance Agency, Inc.

_____                Adeel Hashmi

By: _____                By: Adeel Hashmi
By (signature): _____ 8-12-14           By (signature): _____
Printed Name: Brian D. Shapiro                     Printed Name: Adeel Hashmi
Title: Liquidating Trustee                          Title: _____

By: _____                By: _____
By (signature): _____                    By (signature): _____
Printed Name: _____                       Printed Name: _____
Title: _____                              Title: _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

Commercial Contract - Improved Property concerning _____ 9805 Gulf Freeway, Houston, 77034 _____

## AGREEMENT BETWEEN BROKERS
*(use only if Paragraph 9B(1) is effective)*

Principal Broker agrees to pay _____ (Cooperating Broker) a fee when the Principal Broker's fee is received. The fee to be paid to Cooperating Broker will be:

- ☐ $ _____ , or
- ☐ _____ % of the sales price, or
- ☐ _____ % of the Principal Broker's fee.

The title company is authorized and directed to pay Cooperating Broker from Principal Broker's fee at closing. This Agreement Between Brokers supersedes any prior offers and agreements for compensation between brokers.

Principal Broker: _____    Cooperating Broker: _____

By: _____    By: _____

## ATTORNEYS

| | |
|---|---|
| Seller's attorney: _____ | Buyer's attorney: _____ |
| Address: _____ | Address: _____ |
| Phone & Fax: _____ | Phone & Fax: _____ |
| E-mail: _____ | E-mail: _____ |

Seller's attorney requests copies of documents, notices, and other information:
- ☐ the title company sends to Seller.
- ☐ Buyer sends to Seller.

Buyer's attorney requests copies of documents, notices, and other information:
- ☐ the title company sends to Buyer.
- ☐ Seller sends to Buyer.

## ESCROW RECEIPT

The title company acknowledges receipt of:
- ☑ A. the contract on this day _____ (effective date):
- ☐ B. earnest money in the amount of $_____ in the form of _____
  on _____

Title company: _____    Address: _____

By: _____    Phone & Fax _____

Assigned file number (GF#): _____    E-mail: _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com    9905 Gulf Free

# KEY TERMS

9905 Gulf Freeway, Houston TX

1.  Seller is WFI LIQUIDATING TRUST, successor-in-interest to Western Funding, Inc.

2.  The signatory for the Seller is Brian D. Shapiro, Liquidating Trustee.

3.  Price is $~~180,000~~. 175,000.00

4.  Open escrow with $2,500. ~~There will be Buyer financing.~~

5.  Close of escrow date within 15 days after entry of the Bankruptcy Court's Order Approving Sale

6.  Seller is a bankruptcy estate & has no knowledge of the condition of the Property.

7.  THE PROPERTY IS BEING SOLD IN "AS IS" CONDITION WITHOUT ANY WARRANTY, EXPRESS OR IMPLIED, EXCEPT AS TO TITLE.

8.  Sale is subject to and conditioned upon Bankruptcy Court approval of the fully-executed sale agreement.

9.  The Bankruptcy Court, District of Nevada shall have sole jurisdiction to interpret the agreement, and both Buyer and Seller consent to the jurisdiction of the Bankruptcy Court to enter a final sale order.

10. At the sale hearing, the Bankruptcy Court may accept overbids from any third party (on identical terms except for price). The Trustee will request that any overbids start at $185,000, and be all-cash offers.

11. Seller shall bear the cost of filing a motion to approve the sale, which shall also state that such a sale is free and clear of any and all liens. Any and all liens that exist shall attach to the proceeds of the sale (except minor liens and property taxes, which shall be satisfied through closing).

12. Trustee will not file the sale motion until (i) end of due diligence, and (ii) all lender contingencies satisfied/waived (lender to provide letter of satisfaction/waiver to Seller's agent).



Approved by the Texas Real Estate Commission for Voluntary Use          10-10-11
*Texas law requires all real estate licensees to give the following information about
brokerage services to prospective buyers, tenants, sellers and landlords.*

# Information About Brokerage Services

Before working with a real estate broker, you should know that the duties of a broker depend on whom the broker represents. If you are a prospective seller or landlord (owner) or a prospective buyer or tenant (buyer), you should know that the broker who lists the property for sale or lease is the owner's agent. A broker who acts as a subagent represents the owner in cooperation with the listing broker. A broker who acts as a buyer's agent represents the buyer. A broker may act as an intermediary between the parties if the parties consent in writing. A broker can assist you in locating a property, preparing a contract or lease, or obtaining financing without representing you. A broker is obligated by law to treat you honestly.

**IF THE BROKER REPRESENTS THE OWNER:**
The broker becomes the owner's agent by entering into an agreement with the owner, usually through a written - listing agreement, or by agreeing to act as a subagent by accepting an offer of subagency from the listing broker. A subagent may work in a different real estate office. A listing broker or subagent can assist the buyer but does not represent the buyer and must place the interests of the owner first. The buyer should not tell the owner's agent anything the buyer would not want the owner to know because an owner's agent must disclose to the owner any material information known to the agent.

**IF THE BROKER REPRESENTS THE BUYER:**
The broker becomes the buyer's agent by entering into an agreement to represent the buyer, usually through a written buyer representation agreement. A buyer's agent can assist the owner but does not represent the owner and must place the interests of the buyer first. The owner should not tell a buyer's agent anything the owner would not want the buyer to know because a buyer's agent must disclose to the buyer any material information known to the agent.

**IF THE BROKER ACTS AS AN INTERMEDIARY:**
A broker may act as an intermediary between the parties if the broker complies with The Texas Real Estate License Act. The broker must obtain the written consent of each party to the transaction to act as an intermediary. The written consent must state who will pay the broker and, in conspicuous bold or underlined print, set forth the broker's obligations as an intermediary. The broker is required to treat each party honestly and fairly and to comply with The Texas Real Estate License Act. A broker who acts as an intermediary in a transaction:

(1) shall treat all parties honestly;

(2) may not disclose that the owner will accept a price less than the asking price unless authorized in writing to do so by the owner;

(3) may not disclose that the buyer will pay a price greater than the price submitted in a written offer unless authorized in writing to do so by the buyer; and

(4) may not disclose any confidential information or any information that a party specifically instructs the broker in writing not to disclose unless authorized in writing to disclose the information or required to do so by The Texas Real Estate License Act or a court order or if the information materially relates to the condition of the property.

With the parties' consent, a broker acting as an intermediary between the parties may appoint a person who is licensed under The Texas Real Estate License Act and associated with the broker to communicate with and carry out instructions of one party and another person who is licensed under that Act and associated with the broker to communicate with and carry out instructions of the other party.

**If you choose to have a broker represent you,** you should enter into a written agreement with the broker that clearly establishes the broker's obligations and your obligations. The agreement should state how and by whom the broker will be paid. You have the right to choose the type of representation, if any, you wish to receive. Your payment of a fee to a broker does not necessarily establish that the broker represents you. If you have any questions regarding the duties and responsibilities of the broker, you should resolve those questions before proceeding.

Real estate licensee asks that you acknowledge receipt of this information about brokerage services for the licensee's records.

_____    _____    _____
Buyer, Seller, Landlord or Tenant                                        Date

Texas Real Estate Brokers and Salespersons are licensed and regulated by the Texas Real Estate Commission (TREC). If you have a question or complaint regarding a real estate licensee, you should contact TREC at P O Box 12188 Austin, Texas 78711-2188 , 512-936-3000 (http://www.trec.texas.gov)

(TAR-2501) 10-10-11                                                                TREC No. OP-K

Zann Companies, 2525 Bay Area Blvd. #160 Houston, TX 77058
Phone: (555)555-5555          Fax:                   Robert Zannelli                          Center Street

Produced with ZipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

